# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC<br><br>Defendants, and<br><br>FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC,<br><br>Relief Defendants. | Civil Action File No. 1:25-cv- |

## PLAINTIFF'S EMERGENCY MOTION
## FOR ASSET FREEZE AND OTHER EQUITABLE RELIEF

The Securities and Exchange Commission ("Commission") hereby moves this Court for an emergency order (1) freezing the assets of Defendants Edwin Brant Frost IV ("Frost") and First Liberty Building & Loan, LLC ("First Liberty") (collectively "Defendants") and Relief Defendants First Liberty Capital Partners LLC, First National Investments LLC, MyHealthAI Capital LLC,

The Legacy Advisory Group Inc., and The Liberty Group LLC (collectively "Relief Defendants"); (2) appointing a receiver over First Liberty and the Relief Defendants; (3) directing Defendants and Relief Defendants to provide an accounting of the use of investor funds; (4) prohibiting Defendants and Relief Defendants from altering, concealing, or destroying relevant documents and (5) expediting discovery.  Both the Defendants and Relief Defendants have consented to the entry of such an order imposing this preliminary relief.

As grounds for this motion, the Commission shows as follows:

1. Between 2014 and June 2025, Defendants raised at least $140 million from approximately 300 investors through the sale of loan participation agreements and promissory notes which offered annual returns of 8% to 18%.

2. Defendants represented to investors that their funds would be used to make short-term small business loans at relatively high interest rates ("Bridge Loans").

3. Defendants represented to investors that these Bridge Loans and interest thereon would be repaid by borrowers via Small Business Administration ("SBA") or other commercial loans, which Defendants claimed they would help broker.

4. Initially, Defendants solicited and sold these investments to "friends and family" in the form of either loan participation agreements or promissory notes.

5. These agreements and notes offered investors the opportunity to make an investment that would be pooled with other investor funds and then lent to specific borrowers.

6. Beginning in 2024, Defendants started a more widespread public solicitation of potential investors, advertising the opportunity to invest in promissory notes via radio advertising, internet podcasts, and the First Liberty website.

7. All the investments, whether offered as a loan participation agreement or a promissory note, were purportedly to fund Bridge Loans.

8. Defendants, however, did not use investor funds as represented.

9. While some investor funds were used to make Bridge Loans, those loans did not perform as represented.

10. Of the Bridge Loans Defendants actually made, only a few have been paid in full.

11. Most Bridge Loans have ultimately defaulted and ceased making interest payments.

12. Defendants, however, have continued to make interest payments to investors on the defaulted loans.

13. Since at least 2021 Defendants have had to use funds raised from new investors to make those interest payments.

14. Most, if not all, of the funds raised through the publicly advertised offering were either misappropriated or used to make Ponzi-style payments to existing investors.

15. In addition to failing to use investor funds as represented, *i.e.*, to make Bridge Loans, Defendants made other misrepresentations when soliciting new investments.

16. Specifically, Frost knowingly misrepresented the success of the Bridge Loan program to investors.

17. Frost told some investors that First Liberty had only ever had one Bridge Loan default.

18. Frost told other potential investors that very few loans had defaulted.

19. In reality, a significant portion of the Bridge Loans issued by First Liberty were in default when Frost made these statements.

20. Frost also misappropriated investor funds for his personal use.

21. For example, Frost used investor funds to make payments to himself and his family members in excess of $5 million.

22. Frost further used investor funds to pay for the operations of the Relief Defendants.

23. The Relief Defendants received proceeds from this scheme without providing any value in return and were thus unjustly enriched thereby.

24. As recently as May 24, 2025, Frost withdrew $100,000 investor funds for his personal use.

The Defendants, by virtue of their conduct, directly or indirectly, have engaged and, unless enjoined, will engage in violations of Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. The Commission seeks permanent injunctions and civil penalties against each Defendant and an accounting, an order preventing the destruction of documents and expediting discovery, disgorgement and prejudgment interest, and an asset freeze as to each Defendant and Relief Defendant.

The Commission also seeks the appointment of a receiver over First Liberty and the Relief Defendants. The appointment of a receiver is appropriate to "marshal[] and preserve[] [assets] against further misappropriation and dissipation." *SEC v. Wencke*, 622 F.2d 1363, 1372 (9th Cir. 1980). The Commission recommends that the Court appoint S. Gregory Hays as the receiver in this matter.

This is brought as an emergency motion because there is an imminent danger the Defendants and Relief Defendants will further dissipate assets that might otherwise be available for an award of disgorgement for the benefit of the defrauded investors. Immediate action by this Court is necessary to prevent the dissipation and

removal of assets, which remain in the control of the Defendants and Relief Defendants, for the benefit of defrauded investors.

WHEREFORE, and for the reasons more fully set forth in the brief in support of this motion and the July 10, 2025 Declaration of Tiffany Kunkle, the Commission requests that the Court enter the consent order, attached hereto as Exhibit A, which imposes permanent injunctions against Defendants and imposes against Defendants and Relief Defendants an asset freeze and an accounting, prohibits Defendants and Relief Defendants from destroying documents, and expedites discovery.  Defendants and Relief Defendants consent to the entry of the order as well as the order appointing a received is attached hereto as Exhibit B.  The Commission also requests that the Court enter the order, attached hereto as Exhibit C, which appoints S. Gregory Hays as receiver over First Liberty and the Relief Defendants.

Respectfully submitted this 10th day of July, 2025,

*/s/ Kristin W. Murnahan*
M. Graham Loomis
Regional Trial Counsel
United States Securities & Exchange Commission
950 E. Paces Ferry Road NE, Suite 900
Atlanta, GA 30326
404-842-7622
Georgia Bar No. 457868
loomism@sec.gov

Kristin W. Murnahan

Senior Trial Counsel
United States Securities & Exchange Commission
950 E. Paces Ferry Road NE, Suite 900
404-842-7655
Atlanta, GA 30326
Georgia Bar No. 759054
murnahank@sec.gov

COUNSEL FOR PLAINTIFF

## **CERTIFICATION OF COMPLIANCE**

   This is to certify that the foregoing was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 (B).

             */s/ Kristin W. Murnahan*
             Kristin W. Murnahan