## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : : : | |
| Plaintiff, : : : | Civil Action File No. 1:25-cv-3826-MLB |
| v. : : : | |
| EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC, : : : : | |
| Defendants, and : : : | |
| FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENT S LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC, : : : : : : : : | |
| Relief Defendants. : | |

### RECEIVER'S FIRST STATUS REPORT

S. Gregory Hays, as Court-Appointed Receiver ("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in the above-captioned case (the **"Case"** or "**Receivership**"), by and through counsel, hereby files this *First Status Report* (the "**First Repor**t") and respectfully shows as follows:

## I.   INTRODUCTION

1. The Case commenced on July 11, 2025, with the filing of a complaint (the "**Complaint**") by the Securities and Exchange Commission (the "**SEC**") against Defendants Edwin Brant Frost IV ("**Frost**") and First Liberty Building & Loan, LLC ("**First Liberty**") (together, "**Defendants**") and Relief Defendants First Liberty Capital Partners LLC, First National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC (collectively, the "**Relief Defendants**"). In the Complaint, the SEC alleges that Frost engaged in investment fraud through First Liberty to the detriment of potentially hundreds of investors and other parties.

2. Based on the record in the Case, the Court determined that the appointment of a receiver in this action was necessary and appropriate for the purposes of marshaling and preserving all assets of First Liberty, First Liberty Capital Partners LLC, First National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC ("**Receivership Entities**") and the assets of Defendant Frost that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; and/or (c) may otherwise be includable as assets of the estates of the Defendants (collectively, the "**Recoverable Assets**"). *See* Appointment Order, p. 1.

3.      On July 11, 2025, the Court entered the Appointment Order appointing S. Gregory Hays as the Receiver.

4.      Although the first quarterly report of the Receiver is not due under the Appointment Order until thirty (30) days after the end of the next calendar quarter, the Receiver determined, based upon the circumstances of this Receivership and the significant public interest in this case, that this First Report should be filed to provide an initial status report regarding the Receivership.

## II.     FIRST REPORT

5.      Since the entry of the Appointment Order, the Receiver has begun the process of discharging the duties of the Receiver under the Appointment Order.

### A. **Retention of Professionals**.

6.      The Receiver sought and obtained approval to retain the Law Offices of Henry F. Sewell, Jr., LLC as counsel, Hays Financial Consulting, LLC as forensic accountant, and Stretto, Inc. ("**Stretto**") as administrative and claims agent for the Receiver (collectively, the "**Receiver's Professionals**"). The Receiver's Professionals are Retained Personnel as such term is defined in the Appointment Order.

B. **Communications**.

7. The Receiver has: a) issued correspondence to investors who have already been identified by the Receiver[1]; and b) already sent emails to all—over 200—known email addresses for investors. Incident to discharging the duties of the Receiver under the Appointment Order, the Receiver has attempted to respond to all calls and emails regarding this matter and been available to the media in order to communicate with investors.

8. To facilitate the administration of the Receivership and provide information to investors and other parties-in-interest, the Receiver as established a website for the case that can be accessed at www.firstlibertyreceivership.com (the "**Website**"). The Website provides free access to all pleadings in the Case and allows interested parties to subscribe to receive recurring notifications of pleadings filed on the docket in the Case. In order to limit costs and the administrative burden on the Receivership, all parties are encouraged to search the Website first before attempting to contact the Receiver directly.

9. If direct contact with the Receiver is necessary or if a party has information about—or that may lead to the recovery of—Receivership Assets, the

---

[1] A copy of this letter is posted at the Receiver's Website.

Receiver has established the following as a Receivership email and phone number incident to which investors and other parties can communicate with the Receiver: FirstLibertyInquiries@stretto.com and 404-926-0060.

### C. **Proofs of Claim**.

10.  While there is no need for investors to contact the Receiver about obtaining a proof of claim form at this time, investors are encouraged to collect and compile all documentation related to their claim so that such documentation is available when the claim form is posted to the Website and distributed by the Receiver to investors. Because of the significant amounts of investor money paid to the Receivership Entities, the number of investors, and the period of time during which the offering was conducted, this will be a complicated Receivership that will require the cooperation of investors and the Receiver hopes that the investors will fully cooperate with him in administering this Case.

11.  At an appropriate time in the near future, the Receiver will establish claim procedures in this case and will provide investors with a claim form with instructions as to how to file a claim and set a bar date for filing claims.  Information about the claims procedures will be posted on the Website.

D. **Insurance**

12. The Receiver has contacted First Liberty's insurance and requested that the Receiver be named as an additional insured to ensure that any insurance proceeds are recovered by the Receiver.

13. The Receiver is taking steps to confirm the existence of insurance on all property in the Receivership Estate and will further take steps to ensure that insurance is obtained for any uninsured property.

E. **Investigation**

14. The Receiver's investigation is still in its very early stages; however, the Receiver and the Receiver's Professionals are working to gather as much information as possible to gain a clear understanding of pertinent matters.

15. Incident to such investigation, the Receiver and the Receiver's Professionals have: a) begun investigating the assets of the Receivership; b) already collected records, computers, and removed all important documents from the offices of First Liberty located at 14 Greenville St, Newnan, GA 30263 (the "**Newnan Office**"); c) begun interviewing and communicating with parties with knowledge of any Receivership Assets; d) communicated with the former professionals of First Liberty; e) obtained access to the QuickBooks files and other accounting records of

First Liberty and f) contacted many of the known borrowers from First Liberty to ascertain the status of their loans and any available collateral.

16. While the Receiver and the Receiver's Professionals are still gathering information and reviewing financial, investment and banking records, as well as other business records obtained from the Defendants, and interviewing the former employees and other parties with relevant information, the Receiver has already discovered a number of irregularities with loans and is working to understand complicated transactions that were not well documented or tracked properly. The poor condition of the collected records indicates that extensive tracing with bank records will be required.

### i. Investors

17. Since the Receiver has not yet located a complete schedule of investors with contact information for investors, the Receiver is attempting to compile an accurate list of investors from bank records, computer files, paper records and verifying information from investors in a claims process.

### ii. Borrowers

18. The loan files recovered by the Receiver are incomplete and not organized in any reliable way. The failure of First Liberty to properly file loan documents further complicates the review by the Receiver.

19. In general, the loan files are problematic since First Liberty: a) poorly maintained records; b) had issues that were not disclosed to investors; c) continued paying interest on loans that were paid off and did not return capital to investors; and d) carried loans on books when the loans never paid any interest.

20. The Receiver has not yet located a clear list of borrowers and amounts payable and certain reports reviewed by the Receiver do not appear to be accurate. For example, loan schedules indicate that certain loans have been paid off even though the principal balance was not repaid. Furthermore, certain reports appear to have incorrect loan payoff figures.

21. Notwithstanding the condition of the records of First Liberty, the Receiver has advised borrowers, and reiterates this demand in this Report, that all borrowers must continue to pay loans in accordance with their applicable loan documents. Persons and entities which borrowed money and still owe money to First Liberty should continue to make required payments on their loans and should expect the Receiver to fully enforce and collect all loans to the fullest extent possible. All payments should be sent directly to the Receiver at the address set forth in Paragraph 26 below.

### iii. Business Records

22.     While the Receiver has discovered a notable absence of current paper documents at the Newnan Office, the Receiver did find stacks of unopened mail from financial institutions and desks and filing cabinets with dated records.

23.     The Receiver immediately shut off outside access to First Liberty's server and email system. The Receiver is currently in the process of having the data on the computers located at the Newnan office forensically analyzed and preserved.

### iv. Donations and Political Contributions

24.     First Liberty routinely used investor funds to make charitable donations and gifts as well as campaign contributions to political candidates.

25.     In particular, the Receiver and the Receiver's Professionals have already identified a number of contributions to political candidates. First Liberty appears to have directly, indirectly or through the Frost family made almost 1,000 political "donations" totaling over $1 million using investor funds. There has also been extensive coverage of these campaign contributions in the media. With regard to such contributions, Secretary of State Brad Raffensperger is urging any political entity that accepted contributions from First Liberty, the Frost Family, or any of their affiliates to return those contributions to the Receiver so that victims may be made whole.

26. Several campaign contributions have already been returned to the Receiver and the Receiver has been contacted by other politicians requesting instructions as to how to return such funds. Any politician wishing to return campaign contributions or other disbursement received from the Defendants or Frost family should return them directly to the Receiver at Suite 555, 2964 Peachtree Road NW, Atlanta, Georgia 30305. The Receiver plans to deposit all such funds in a segregated account. When the Receiver has obtained sufficient information to report on these campaign contributions, the Receiver will file a report detailing the campaign contributions and the extent to which such contributions have been voluntarily returned.

27. The Receiver intends to closely scrutinize the improper use of investor funds used as charitable donations or campaign contributions and to seek the return of all such funds to the fullest extent permitted by applicable law.

### F. Assets and Recoverable Assets

28. The cash assets of the Receivership Assets held with financial institutions in the amount of approximately $1.2 million have been frozen and are in the process of being moved to a Qualified Settlement Fund under the administration of the Receiver in accordance with the Receiver Order.

29. The Receiver has communicated with a party who had a contract to purchase the Newnan Office prior to the entry of the Appointment Order and is currently evaluating such transaction.

30. The Receiver and the Receiver's Professionals are in the process of marshalling assets and have already filed the complaint and Appointment Order with 24 other federal district courts districts to aid the potential recovery of assets.

31. The Receiver and the Receiver's Professionals have also begun compiling avenues of potential recoveries for the benefit of the Receivership and has identified real estate owned by First Liberty which can be sold by the Receiver.

32. The Receiver and the Receiver's Professionals are also examining assets that may be recovered from Frost and other parties, including, but not limited to assets: a) attributable to funds derived from investors or clients of the Receivership Entities, Defendants; b) held in constructive trust for the Receivership Entities; and/or c) that may otherwise be includable as Recoverable Assets, as that term is defined in the Appointment Order.

**G. Pending Litigation**

33. The Receiver and the Receiver's Professionals are in the process of examining ongoing litigation and disputes that may impact the Receivership Assets. Such matters include the following:

a) A foreclosure action to foreclose on a house in *First Liberty Capital Partners, LLC v. Christopher Ridgeway, et al.*, CA No. 2024-CA-192838426 (Walton County, FLA) in which First Liberty has a $1.5 million mortgage against a property secured by a $1.5 million promissory note where the property may be worth at least $7.0 million;

b) A foreclosure action to foreclose on a house in *First Liberty Capital Partners, LLC v. Stone Capital Group, LLC, et al.*, CA No. 853982 (Jefferson Parish, LA) in which First Liberty has a mortgage that secures the $1.5 promissory note referenced along with another $3.75 million promissory note;

c) In connection with the above foreclosures, two replevin/foreclosures were brought based on equipment leases that First Liberty also signed with Stone Clinical Laboratories, LLC. The two cases are: (i) *First Liberty Leasing Stone SPE 1, LLC v. Stone Clinical Laboratories, LLC, et al.*, CA No. 2024-CA-198164441 (Walton Country, FLA), and (ii) *First Liberty Leasing Stone SPE 1, LLC v. Stone Biotechnologies, LLC, et al.*, CA No. 856-304 (Jefferson Parish, LA);

d) A replevin action to take possession of a large, expensive piece of equipment called a grinder that was security for a First Liberty loan to Fibretech in a case

12

styled *First Liberty Capital Partners, LLC v. Fibretech LLC, et al.*, CA No. 25-CV-001062-340 (Franklin County, NC);

e) An action in which Tie & Timber Tech, LLC defaulted on its note to First Liberty; and

f) The Chapter 11 bankruptcy case of Curepoint, LLC in Case No. 22-56501-PMB pending in the United States Bankruptcy Court for the Northern District of Georgia.

### III. CONCLUSION

34. This Receivership is in its very early stages and the Receiver is not yet in a position to estimate either how long this Receivership will take to administer or the potential recovery to investors in this case. The primary purpose of this First Report is to simply assure the Court, investors and parties in interest that the Receiver has begun the challenging process of collecting assets and investigating the

affairs and transactions of the Receivership entities.

Respectfully submitted this 21st day of July, 2025.

                LAW OFFICES OF HENRY F. SEWELL JR., LLC

                */s/ Henry F. Sewell, Jr.*
                Henry F. Sewell, Jr.
                Georgia Bar No. 636265
                Counsel for the Receiver

Law Offices of Henry F. Sewell, Jr.
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

## **CERTIFICATE OF SERVICE, FONT AND MARGINS**

I hereby certify that I electronically filed the foregoing using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record.

I further certify that I prepared this document in 14-point Times New Roman font and complied with the margin and type requirements of this Court.

Dated: July 21, 2025.

                                    Respectfully submitted,

                                    LAW OFFICES OF HENRY F. SEWELL JR., LLC

                                    ***/s/ Henry F. Sewell, Jr.***
                                    Henry F. Sewell, Jr.
                                    Georgia Bar No. 636265
                                    Buckhead Centre
                                    2964 Peachtree Road NW, Suite 555
                                    Atlanta, GA 30305
                                    (404) 926-0053
                                    hsewell@sewellfirm.com
                                    *COUNSEL FOR THE RECEIVER*