## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br>      Plaintiff, <br><br> v. <br><br> EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC, <br><br>      Defendants, and <br><br> FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTH AI CAPITAL, LLC, THE LEGACY ADVISORY GROUP INC., AND THE LIBERTY GROUP LLC, <br><br>      Relief Defendants. | Civil Action No. <br> <u>1:25-cv-03826-MLB</u> |

## <u>MEMORANDUM OF LAW IN SUPPORT OF BAY POINT CAPITAL PARTNERS II, LP'S MOTION TO INTERVENE</u>

Bay Point Capital Partners II, LP ("<u>Bay Point</u>" or "<u>Movant</u>"), by and through its undersigned counsel, moves to intervene (the "<u>Motion</u>") as a party in this lawsuit pursuant to Federal Rule of Civil Procedure[1] 24, respectfully showing the Court as follows:

---

[1] Hereafter shortened to "<u>Federal Rule</u>" for the convenience of the Court.

## I.    __INTRODUCTION__

Bay Point has an interest in three loans totaling more than $10,000,000 made by Relief Defendant First Liberty Capital Partners LLC ("First Liberty Capital") to different borrowers that were thereafter included in separate loan participation agreements with Bay Point. First Liberty Capital has defaulted under the loan participation agreements by failing to remit to Bay Point its participation share of the loan payments made by borrowers. Additionally, Bay Point has properly exercised its rights to take over the administration of the loans, such that all monies owed pursuant to these loans are due and owed to Bay Point up to its participation share.

On July 10, 2025, the Securities and Exchange Commission ("SEC") initiated the above captioned lawsuit (the "Lawsuit"), seeking, among other things, to freeze First Liberty Capital's assets and to appoint a receiver over First Liberty Capital and the other defendants, which the Court granted on the same date.  Bay Point brings this Motion to protect its vested financial and contractual interests arising from the loan participation agreements and the loans to which the agreements apply and to prevent the SEC or any receiver from freezing any assets belonging to Bay Point, from directing any assets belonging to Bay Point away from Bay Point, and from preventing Bay Point from pursuing its monies owed to it pursuant to the loan participation agreements.  Bay Point has discussed this matter with the Receiver's

counsel in an effort to consensually resolve this issue without court intervention, but could not reach an agreement.

Accordingly, Bay Point seeks to intervene in this action as a matter of right pursuant to Federal Rule 24(a)(2), or in the alternative, by permission pursuant to Federal Rule 24(b)(1)(B).

## I.   FACTUAL BACKGROUND

On or about December 19, 2022, First Liberty Capital made a loan to 2406 Cancer Care, LLC ("Cancer Care") in the original principal amount of $6,500,000 (the "Cancer Care Loan"), which was evidenced by certain documents, including a promissory note and security agreement (together with all other documents executed in connection with the Cancer Care Loan, the "Cancer Care Loan Documents"). On or about February 10, 2023, First Liberty Capital made a loan to Full Circle, LLC ("Full Circle") in the original principal amount of $2,750,000 (the "Full Circle Loan"), which was evidenced by certain documents, including a promissory note and security agreement (together with all other documents executed in connection with the Full Circle Loan, the "Full Circle Loan Documents"). And on or about March 31, 2023, First Liberty Capital made a loan to Stone Capital Group, LLC ("Stone Capital" and together with Cancer Care and Full Circle, the "Borrowers" and each a "Borrower") in the original principal amount of $3,750,000 (the "Stone Capital Loan") (the term "Loans" shall mean the Stone Capital Loan, the Cancer

Care Loan and Full Circle Loan). The Stone Capital Loan was evidenced by certain documents, including a promissory note and security agreement (together with all other documents executed in connection with the Stone Capital Loan, the "Stone Capital Loan Documents" and together with the Cancer Care Loan Documents and the Full Circle Loan Documents, the "Loan Documents").

Contemporaneously with the making of each of the Loans, Bay Point and First Liberty Capital entered into separate loan participation agreements, (the "Cancer Care Loan Participation Agreement", the "Full Circle Loan Participation Agreement", and the "Stone Capital Loan Participation Agreement" respectively, and together, the "Participation Agreements"), whereby Bay Point purchased a percentage share of the Principal Payments (defined therein) due from each Borrower. Bay Point purchased a 46.15% share of the Cancer Care Loan, a 36.36% share of the Full Circle Loan, and a 37.33% share of the Stone Capital Loan. Pursuant to the Participation Agreements, Bay Point was entitled to receive its percentage share of the Principal Payments, with interest accruing at the rate of 16.0% per annum. In addition to its share of the Principal Payments, Bay Point also purchased its percentage share of the Loan Documents, including "all notes and other instruments evidencing indebtedness of Borrower in the Loan, together with all security interests in the Property securing such indebtedness" and became "the legal and equitable owner of [its] Share in the Loan[s], related [Loan D]ocuments,

and Property and . . . possess[ed] all applicable rights, privileges and remedies, subject to" the Participation Agreements.

The Participation Agreements provide that First Liberty Capital "may be removed as the [Loans'] administrator under" certain conditions (each a "Qualifying Event"), including:

(1) First Liberty Capital fails to comply with its fiduciary, contractual or legal obligations under the Participation Agreements or under state or federal law.

(2) First Liberty Capital petitions for or becomes subject to bankruptcy.

(3) First Liberty Capital commits any act of insolvency.

(4) First Liberty Capital is declared insolvent, is taken over, or otherwise closed by a governmental regulatory agency which has jurisdiction over First Liberty Capital.

Upon the occurrence of any Qualifying Event, Bay Point has the contractual right to notify First Liberty Capital and "assume the administration of the [Loans] and related guarantees and security agreements as well as demand any documentation or writings reasonably necessary to evidence proof of [Bay Point's] security interest and perfection." Bay Point further has the right to notify and communicate with [Borrowers], and to direct them to pay any amounts due under the [Loans] directly to [Bay Point]."

Bay Point recently became aware that First Liberty Capital was being investigated by the SEC and had ceased all operations and would not be remitting to

Bay Point any payments received on account of or pursuant to the Loans or the Loan Documents. According to a notice published on First Liberty's website:

> We regret to inform you that as of Friday, June 27, 2025, First Liberty has ceased all business operations. First Liberty will no longer be accepting promissory note investments or bridge loan participations, and it will not be making any new bridge loans. Interest payments on existing promissory notes, bridge loan participation interests, and other investment programs are indefinitely suspended. First Liberty is cooperating with federal authorities as part of an effort to accomplish an orderly wind-up of the business. First Liberty employees are not authorized to make any further communications at this time regarding the ongoing situation, and no one at the company will be available to answer phone calls or respond to email inquiries. First Liberty hopes to provide additional information and updates in the near future regarding the status of the company's efforts to effectuate an orderly wind-up of the business.

Both the stated intent to cease making payments to Bay Point pursuant to the Participation Agreements and the acknowledgement of the closure of First Liberty's business as a result of a federal investigation are Qualifying Events.

On July 1, 2025, Bay Point, through counsel, sent letters to First Liberty Capital notifying it of its default under the Participation Agreements and electing to remove First Liberty Capital as administrator of the Loans pursuant to the Participation Agreements (the "Cancer Care Loan Notice of Default", the "Full Circle Loan Notice of Default", and the "Stone Capital Loan Notice of Default" respectively, and together, the "Notices of Default"). The next day, Bay Point sent letters to the Borrowers, notifying each Borrower that Bay Point had assumed administration of the respective Loans pursuant to the applicable Participation

Agreement, directing all future payments under the Loans to be made to Bay Point instead of First Liberty Capital, and attaching a copy of the applicable Participation Agreement and Notice of Default (the "Cancer Care Loan Notice Directing Payment", the "Full Circle Loan Notice Directing Payment", and the "Stone Capital Loan Notice Directing Payment" respectively, and together, the "Borrower Notices Directing Payment").

Following delivery of the Notices of Default and Borrower Notices Directing Payment, Bay Point learned that the SEC initiated this Lawsuit, which seeks to freeze all of First Liberty Capital's assets. Bay Point seeks to intervene in this Lawsuit to ensure that the SEC does not freeze, or do anything to adversely impact, assets belonging to or owed to Bay Point.

## II.    PROCEDURAL HISTORY

On July 10, 2025, the SEC filed its *Complaint* ("SEC Complaint") against Defendants Edwin Brant Frost IV ("Frost") and First Liberty Building & Loan, LLC ("FLBL") and against Relief Defendants First Liberty Capital, First Liberty National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC (together with Frost and FLBL, the "Defendants" or the "First Liberty Parties"), bringing claims for (i) violations of Section 15 of the Securities Act [15 U.S.C. § 77q(a)(1)], (ii) violations of Sections 17(a)(2) and (a)(3) of the Securities Act [15 U.S.C. §§ 77a(2) and (a)(3)], and (iii) violations of Section

10(b) and Rule 10b-5 of the Exchange Act [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]. *See* Dkt. No. 1 at ¶¶ 140-150. Contemporaneously with its Complaint, the SEC also filed *Plaintiff's Emergency Motion for Asset Freeze and Other Equitable Relief* ("Receivership Motion"), seeking (i) permanent injunctions imposing an asset freeze and an accounting on Defendants, prohibiting Defendants from destroying documents, and expediting discovery; and (ii) the appointment of a receiver over Defendants. *See* Dkt. No. 2 at 6. Defendants consented to the relief sought in the Receivership Motion. *See* Dkt. No. 2-3. On the same date, the Court granted the Receivership Motion and entered a *Consent Judgment* ("Judgment") against Defendants and the *Order Appointing Receiver* ("Receivership Order"), appointing S. Gregory Hays ("Receiver") as receiver in this action. *See* Dkt. Nos. 5, 6.

Pursuant to the Receivership Order, "[a]ll civil legal proceedings of any nature . . . involving . . . any Receivership Property[2] wherever located [or] . . . the Receivership Entities,[3] including subsidiaries and partnership . . ." "are stayed until

---

[2] As defined in the Receivership Order, the Receivership Property includes "all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly." Dkt. No. 6 at ¶ 6(A).

[3] As defined in the Receivership Order, the Receivership Entities include all Defendants other than Frost. *See* Dkt No. 6 at ¶ 1.

further Order of this Court." Dkt. No. 6 at ¶ 32. This stay of litigation includes an injunction against "commencing or continuing any such legal proceeding." Dkt. No. 6 at ¶ 33.

### III.    ARGUMENT AND CITATION OF AUTHORITY

Bay Point should be allowed to intervene in this Lawsuit to ensure that this Lawsuit does not adversely impact assets belonging to or owed to Bay Point. Federal Rule 24 governs a non-party's ability to intervene, either as a matter of right or with court permission.

Intervention as of right requires the non-party to meet one of two requirements: either (1) a federal statute grants an unconditional right to intervene or (2) the interested non-party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "Once a party establishes all the prerequisites to intervention as a matter of right, 'the trial court has no discretion to deny the intervention.'" *Fla. Med. Ass'n v. HEW*, No. 3:78-cv-178-J-34MCR, 2011 U.S. Dist. LEXIS 109451, at *29 (M.D. Fla. Sept. 26, 2011) (citing *Loyd v. Ala. Dep't of Corrections*, 176 F.3d 1336, 1340-41 (11th Cir. 1999)). "It has been the traditional attitude of the federal courts to allow intervention where no one would be hurt and greater justice would be attained."

*United States v. Dekalb Cty.*, No. 1:10-cv-4039-WSD, 2011 U.S. Dist. LEXIS 154837, at *20 (N.D. Ga. Oct. 11, 2011) (citation omitted).

Permissive intervention also requires the non-party to meet one of two requirements: either (1) a federal statute grants a conditional right to intervene or (2) the interested non-party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention further requires the court to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Bay Point meets either standard. In accordance with Federal Rule 24(c), Bay Point accompanies this Motion with a copy of its proposed complaint against First Liberty Capital. Copies of the documents referenced above are attached to the proposed complaint.

## A. Bay Point has Standing to Intervene

Although some courts require intervenors to independently show Article III standing, the Eleventh Circuit "has held that 'a party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of [Federal] Rule 24 as long as there exists a justiciable case and controversy between the parties already in the lawsuit.'" *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512, n.4 (11th Cir. 1996) (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir.

1989)); *Dekalb Cty.*, 2011 U.S. Dist. LEXIS 154837, at *16. Although the Court has already entered the Judgment, Bay Point still is not required to show independent standing because the receivership is ongoing. *See Davis v. Lifetime Cap., Inc.*, 560 F. App'x 477, 488-489 (6th Cir. 2014) (holding non-party "is not required to demonstrate Article III standing to intervene in the receivership proceeding" and noting that "the receivership context weakens rather than strengthens the argument for requiring a showing of constitutional standing").

Further, to the extent that a showing of standing is required, Bay Point has standing to assert its claims in this Lawsuit. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017) ("[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing. That includes cases in which both the plaintiff and the intervenor seek separate money judgments in their own names."); *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1290 (11th Cir. 2017) (citing *Town of Chester* at 439); *see also United States v. RaPower-3, LLC*, 341 F.R.D. 311, 316 (D. Utah 2022) (extending holding in *Town of Chester* to permissive intervenors and collecting cases). "The well-settled test for establishing Article III standing includes three basic requirements." *Salvors*, 861 F.3d at 1290.

> First, the plaintiff must have suffered an injury in fact -- an invasion of
> a legally protected interest which is (a) concrete and particularized, and
> (b) actual or imminent, not conjectural or hypothetical. Second, the
> plaintiff must establish a causal connection between its injury and the

defendant's conduct. Third, the plaintiff must show that it is likely --
and not merely speculative -- that a favorable decision by the court will
redress the injury.

*Id.* (quotation marks and internal citations omitted). Here, Bay Point has suffered an injury in fact because the Receivership Order (i) invades Bay Point's right to seek a declaratory judgment against First Liberty Capital to confirm its removal as administrator of the Loans and (ii) intercepts any payments made by Borrowers pursuant to the Loans, which are properly deemed Bay Point's property because Bay Point issued the notice of removal to First Liberty Capital and to Borrowers prior to entry of the Receivership Order. These injuries are concrete and actual, not conjectural or speculative. Further, First Liberty Capital's conduct in (i) both conducting the apparent ponzi scheme and in breaching the Participation Agreements and (ii) consenting to the entry of the Receivership Order caused Bay Point's injuries. Finally, a favorable decision by this Court, finding that the payments by the Borrowers and the Security Interests are properly deemed property of Bay Point first and assets of the receivership estate second, if at all, will redress Bay Point's injuries.

Therefore, Bay Point has standing to intervene and bring its claims against First Liberty Capital.

### B. <u>Bay Point Can Intervene as a Matter of Right</u>

Bay Point should be allowed to intervene as a matter of right under Federal Rule 24(a)(2) because Bay Point has an interest in ensuring that the Receivership Property does not include property owned by and belonging to Bay Point. If Bay Point is not permitted to intervene and the SEC freezes or redirects assets owned by Bay Point, Bay Point will suffer significant prejudice.

Federal Rule 24(a)(2) has four requisite showings: (1) that the motion to intervene is timely; (2) that the intervenor has an interest relating to the property or transaction which is the subject of the action; (3) that the intervenor is so situated that disposition of the action, as a practical matter, may impede or impair its ability to protect that interest; and (4) that the intervenor's interest is represented inadequately by the existing parties to the suit. *Amerisure Mut. Ins. Co. v. Reeves Young, LLC*, No. 1:22-CV-02739-JPB, 2023 U.S. Dist. LEXIS 153884, at *5 (N.D. Ga. Aug. 31, 2023) (citing *Stone v. First Union Corp.,* 371 F.3d 1305, 1308-09 (11th Cir. 2004)). All four factors weigh in favor of granting this motion to intervene.

First, this Motion, filed less than two months after the SEC filed suit, is timely.[4] Due to the short time frame in which Bay Point filed its Motion, there is no

---

[4] The four factors to determine whether a motion to intervene are timely are: "(1) the length of time during which the movant knew or reasonably should have known of his interest in the case before he moves to intervene; (2) the extent of prejudice to the existing parties resulting from the would-be intervenor's failure to seek intervention as soon as he knew or should have known of his interest; (3) the extent

basis for any argument that the parties to this Lawsuit will suffer any prejudice by any delay. Indeed, discovery has only just begun and there is nothing for the Court to unwind. However, to the extent this motion is not granted, Bay Point could be severely prejudiced if any assets belonging to Bay Point are included in any freeze implemented by the SEC or in any receivership. *See, e.g., Dekalb Cty.,* 2011 U.S. Dist. LEXIS 154837 at *17-22 (finding motion to intervene timely despite being filed nine months after discovery of possible interest in case).

Second, Bay Point has a significant interest in the property that is the subject of this Lawsuit. Pursuant to the Receivership Order, the SEC has (i) frozen all assets in the possession of First Liberty Capital, which necessarily includes assets that belong to Bay Point, and (ii) enjoined Bay Point from receiving assets belonging to Bay Point. *See* Dkt. No. 6. "'Property interests [such as] existing contracts that are threatened by the potential' results in a case qualify an applicant for intervention as a matter of right." *Twin Pines Coal Co. v. Colonial Pipeline Co.*, No. 2:09-cv-01403-SLB, 2012 U.S. Dist. LEXIS 98256, at *6 (N.D. Ala. July 16, 2012) (collecting cases). Bay Point seeks to intervene to ensure that all assets belonging to Bay Point are not improperly tied up in this receivership action and to ensure that Bay Point's

---

of prejudice to the intervenor if his petition for leave is denied; and (4) any unusual circumstances militating for or against a determination of timeliness." *Kh Outdoor v. Fulton Cty.*, No. 1:03-CV-1855-HTW, 2008 U.S. Dist. LEXIS 135382, at *5 (N.D. Ga. Oct. 29, 2008); *Meek v. Metro. Dade Cty*, 985 F.2d 1471, 1478-79 (11th Cir. 1993). These factors weigh in favor of finding the Motion timely.

contract rights pursuant to the Participation Agreements with First Liberty Capital are not adversely impacted. Those same contract rights give Bay Point an interest in the specific funds to be paid by Borrowers, which the SEC seeks to intercept through the receivership. *See Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (citing *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52, 53-54 (5th Cir. 1970)) ("While a mere economic interest may be insufficient to support the right to intervene, an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund."). Here, Bay Point has an interest in specific funds received from the Borrowers, which justifies its intervention as of right. *See Devonshire Park, LLC v. FDIC*, No. 8:08-CV-2083-T-27AEP, 2009 U.S. Dist. LEXIS 133963, at *7 (M.D. Fla. Oct. 5, 2009) (holding that because intervenor "[held] a twenty-seven percent interest in the Loan [pursuant to a loan participation agreement], which is the basis of the cause of the action, the Court finds that [intervenor] has established a direct, substantial, and legally protectable interest in the [action between borrower and FDIC receiver]").

Third, Bay Point is significantly prejudiced by the inability to recover its assets to which it is contractually and legally entitled pursuant to the Receivership Order. The Receivership Order enjoins any litigation against First Liberty Capital and directs any payments under the Loans to be made to the Receiver. *See* Dkt. No. 6. Where a proposed intervenor has no other forum to bring its claims, intervention

15

is appropriate. *See SEC v. Homa*, 17 F. App'x 441, 445-446 (7th Cir. 2001) (holding that intervention is inappropriate where alternative forum for litigation exists). And any claims process would not be sufficient because the property that Bay Point seeks to collect is not property of First Liberty Capital; it either belongs to the Borrowers or to Bay Point. *See SEC v. JCS Enter., Inc.*, No. 14-CV-80468-MIDDLEBROOKS/BRANNON, 2015 U.S. Dist. LEXIS 201567, at *3-4 (S.D. Fla. Nov. 3, 2015) (citing *SEC v. Elliott*, 953 F.3d 1560, 1566 (11th Cir. 1992)) (finding that "[c]ourts have repeatedly held that a receivership claims process is the appropriate forum for considering interests of secured creditors and allowing secured creditors to protect their interest" where claims are made against receivership property). Bay Point seeks authority to pursue property that is, pursuant to the Participation Agreements, not truly Receivership Property. Thus, the denial of this Motion will significantly impair Bay Point's ability to protect its interests.

Finally, no existing party in this action adequately represents Bay Point's interests. Rather, the SEC's interests are adverse to Bay Point, and the Defendants have already consented to the Judgment and the Receivership Order. *See* Dkt. No. 2-3 (defendants' consent to relief sought by SEC). According to the Complaint, the SEC seeks to protect the interests of the defrauded investors, not the interests of the loan participants. *See CFTC v. Giddens*, No. 1:11-cv-2038-WSD, 2012 U.S. Dist. LEXIS 23728, at *20 (N.D. Ga. Feb. 24, 2012) (finding interest not adequately

protected when CFTC "[sought] to return to the victims of [defendants'] alleged fraud the funds invested with [defendant], which could have the practical effect of preventing [intervenor] from obtaining the return of some or most of the specific funds in which he claims an interest"). Here, Bay Point seeks to protect its interest as a participant in three Loans, not as an investor in the apparent ponzi scheme.

Accordingly, Bay Point satisfies the prerequisites to intervene as a matter of right, and this Motion should be granted. *See Amerisure,* 2023 U.S. Dist. LEXIS 153884, at *5 ("If a party establishes each of the four requirements, the district court must allow him to intervene.") (citing *Chiles*, 865 F.2d at 1213).

### C. <u>Alternatively, Bay Point Should be Granted Permission to Intervene</u>

Alternatively, Bay Point should be able to intervene permissively under Federal Rule 24(b)(1), which gives courts the discretion to permit a non-party to intervene. *See* Fed. R. Civ. Proc. 24(b)(1). The elements for granting permissive intervention are: (1) timeliness and (2) a common question of law or fact with the pending proceedings. *Amerisure* at *8 (citing *Chiles*, 865 F.2d at 1213). "In deciding whether to allow permissive intervention, 'the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *SEC v. Mohamed*, No. 1:22-CV-03252-ELR, 2023 U.S. Dist. LEXIS 176203, at *4 (N.D. Ga. July 10, 2023) (quoting Fed. R. Civ. P. 24(b)(3)).

As discussed above, this Motion is timely. *Id.* at *4 (finding request for permissive intervention timely "because it was filed less than six (6) months after Plaintiff SEC brought the instant civil case and two (2) months after the Court issued the Scheduling Order for discovery"). Further, Bay Point's claims arising out of the Loans and Participation Agreements are inherently related to the SEC's claims brought in this Lawsuit and therefore share common questions of law or fact. *See Stooksbury v. Ross*, No. 3:09-CV-498, 2013 U.S. Dist. LEXIS 121158, at *11 (E.D. Tenn. Aug. 23, 2013) (granting permissive intervention and finding common questions of law or fact where promissory notes were claimed as receivership property and right to enforce notes was at issue). Additionally, as discussed above, the injunctions sought by the SEC and ordered in the Receivership Order – freezing of assets possessed by First Liberty Capital and preventing Bay Point from seeking monies owed to it – adversely impact Bay Point and its claims to the assets belonging to Bay Point but not in its possession due to actions of First Liberty Capital. Finally, allowing Bay Point to intervene will not unduly prejudice or delay the adjudication of the rights of the parties currently in this Lawsuit. *See Alamo Brewing Co. v. Old 300 Brewing, LLC*, No. SA-14-CA-285-FB, 2014 U.S. Dist. LEXIS 201851, at *15-16 (W.D. Tex. May 21, 2014) ("Any introduction of an intervenor in a case will necessitate its being permitted to actively participate, which will inevitably cause some delay. But, the case is still in its preliminary stages. At this early stage in the

proceeding, any delay will not be great and is outweighed by the fact that it is in the interest of the parties to grant the intervention. The record does not contain information that would support a finding that the State's intervention will cause undue delay.") (internal quotation marks and footnotes omitted). To the contrary, intervention will aid in the resolution of the Lawsuit and ensure that monies belonging to Bay Point are not improperly tied up. And Bay Point has no other available remedy against First Liberty Capital pursuant to the stay of Litigation in the Receivership Order. *See Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 595 n.20 (11th Cir. 1991) (noting that "denial of a motion for permissive intervention" is not abuse of discretion only because intervenor "has other adequate means of asserting its rights"); *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 294 (11th Cir. 2020) (same). And Bay Point is not adequately represented by any existing party to this Lawsuit. *See In re Pinchuk*, No. 13-MC-22857-GOODMAN, 2014 U.S. Dist. LEXIS 205593, at *16 (S.D. Fla. Jan. 27, 2014) ("Although the issue of whether the intervenors' interests are adequately represented by other parties is a required element of the analysis for intervention of right, it is also a factor to be balanced in a permissive intervention assessment.") (citation omitted); *see also New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) ("In acting on a request for permissive intervention, it is proper to consider, among other things, whether the intervenors' interests are adequately represented by

other parties' and whether they will significantly contribute to full development of the underlying factual issues in the suit.") (internal quotation marks omitted).

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant the Motion and allow Bay Point to intervene in this Lawsuit. Alternatively, Bay Point requests that the Court lift the injunction against litigation to allow Bay Point to bring a declaratory judgment action against First Liberty Capital to determine the parties' rights under the Loans pursuant to the Participation Agreements.

WHEREFORE, Bay Point respectfully requests that the Court:

(a) Permit Bay Point to intervene as a party in this Lawsuit, with full rights and participation;

(b) Accept Bay Point's Complaint attached to the Motion as **Exhibit 1**, and permit Bay Point to file its Complaint and permit service on First Liberty Capital and the SEC; and

(c) Award such other and further relief as this Court deems just and proper.

Respectfully submitted this 4th day of September 2025.

**THOMPSON HINE LLP**

*/s/ Alexandra C. Nelson*
Alexandra C. Nelson (GA Bar No. 241352)
Austin B. Alexander (GA Bar No. 926059)
Two Alliance Center, Suite 1600
3560 Lenox Road
Atlanta, Georgia 30326
Telephone: 404-541-2900
Facsimile:  404-541-2905
*alexandra.nelson@thompsonhine.com*

*austin.alexander@thompsonhine.com*

*Attorneys for Plaintiff Bay Point Capital*
*Partners II, LP*

## **<u>CERTIFICATE OF COUNSEL REGARDING FONT SIZE</u>**

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D), and the attachments are consistent with Local Rule 5.1(B).

*/s/ Alexandra C. Nelson*
Alexandra C. Nelson
Georgia Bar No. 241352

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF BAY POINT CAPITAL PARTNERS II, LP'S MOTION TO INTERVENE with the Clerk of Court via the CM/ECF system, and further certify that a true and correct copy of the same has been served by U.S. Mail, properly addressed and postage pre-paid, upon the following:

Kristin Willhelm Murnahan
Madison Graham Loomis
U.S. Securities and Exchange Commission
Atlanta Regional Office
950 E. Paces Ferry Road, Suite 900
Atlanta, GA 20549
murnahank@sec.gov
loomism@sec.gov

Joshua A. Mayes
Jane Ashley Ravry
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, GA 30318
jmayes@robbinsfirm.com
jaravry@robbinsfirm.com

Henry Francis Sewell, Jr.
Law Offices of Henry F. Sewell, Jr. LLC
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
hsewell@sewellfirm.com

This 4th day of September 2025.

*/s/ Alexandra C. Nelson*
Alexandra C. Nelson
Georgia Bar No. 241352