**EXHIBIT 1**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

EDWIN BRANT FROST IV and
FIRST LIBERTY BUILDING &
LOAN, LLC,

      Defendants and,

FIRST LIBERTY CAPITAL
PARTNERS LLC, FIRST NATIONAL
INVESTMENTS LLC, MYHEALTH
AI CAPITAL, LLC, THE LEGACY
ADVISORY GROUP INC., AND THE
LIBERTY GROUP LLC,

      Relief Defendants.

---

BAY POINT CAPITAL PARTNERS
II, LP,

      Intervening Plaintiff

v.

FIRST LIBERTY CAPITAL
PARTNERS LLC

      Defendant

Civil Action No.

1:25-cv-03826-MLB

# COMPLAINT[1]

Plaintiff Bay Point Capital Partners II, LP ("Plaintiff" or "Bay Point") files this Complaint for declaratory relief against Defendant First Liberty Capital Partners, LLC ("Defendant" or "First Liberty Capital"), respectfully showing this Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Bay Point is a limited partnership organized and existing under the laws of the state of Delaware with its principal office in Fulton County, Georgia.

2.      First Liberty Capital is a limited liability company organized and existing under the laws of the state of Georgia with its principal office located at P.O. Box 2567, Newnan, Georgia, 30264. First Liberty Capital may be served with process through its registered agent Keith Logue at 3423 Weymouth Court, Marietta, Georgia, 30062.

3.      Jurisdiction and venue are proper in this Court under 28 U.S.C. § 1367(a).

## Introduction

4.      Through various participation agreements, Bay Point purchased an interest in three loans made by First Liberty Capital to different borrowers (the

---

[1] If Bay Point's Motion to Intervene filed simultaneously herewith is granted, Bay Point will file a verified complaint with financial information current as of the date of the complaint.

"Loans"). The face value of the Loans exceeds $10 million and Bay Point's interest in these loans exceeds $5 million.

5.      As described below, First Liberty Capital has defaulted under the loan participation agreements by failing to remit to Bay Point its participation share of the loan payments made by borrowers. Counsel for First Liberty Capital has represented that it has ceased all operations and that it will not be making any further distributions to participants such as Bay Point, even if payments are received from the borrowers under the Loans. As a result, Bay Point exercised its right to replace First Liberty Capital as the administrator of the Loans. Through this action, Bay Point seeks declaratory judgment as to its rights to enforce the participation agreements and a temporary and permanent injunction precluding First Liberty Capital from administering the Loans and from retaining funds received on account of the Loans.

## **FACTUAL BACKGROUND**

### *The Cancer Care Loan*

6.      On or about December 19, 2022, First Liberty Capital made a loan to 2406 Cancer Care, LLC ("Cancer Care") in the original principal amount of $6,500,000 (the "Cancer Care Loan").

7.      The Cancer Care Loan was evidenced by certain documents, including a promissory note and security agreement (together with all other documents

3

executed in connection with the Cancer Care Loan, the "Cancer Care Loan Documents").

8.    Pursuant to the Cancer Care Loan Documents, Cancer Care granted First Liberty Capital a blanket security interest in all assets of Cancer Care (the "Cancer Care Security Interest").

9.    On or about December 19, 2022, Bay Point and First Liberty Capital entered into that certain Loan Participation Agreement (the "Cancer Care Loan Participation Agreement") whereby Bay Point purchased a percentage share of the Principal Payments (defined therein) due from Cancer Care. A true and accurate copy of the Cancer Care Loan Participation Agreement is attached hereto as **Exhibit A** and incorporated by reference.

10.    Pursuant to the Cancer Care Loan Participation Agreement, Bay Point purchased 46.15% of the Principal Payments, with interest accruing at the rate of 16.0% per annum. *See* Ex. A at § 2(B), (C).

11.    Pursuant to the Cancer Care Loan Participation Agreement, Bay Point also purchased a 46.15% share of the Cancer Care Loan Documents, including "all notes and other instruments evidencing indebtedness of Borrower in the Loan, together with all security interests in the Property securing such indebtedness." *See* Ex. A at § 2(D).

12. Pursuant to the Cancer Care Loan Participation Agreement, Bay Point is "the legal and equitable owner of the above [46.15%] Share in the [Cancer Care] Loan, related [Cancer Care Loan D]ocuments, and Property and . . . possess[es] all applicable rights, privileges and remedies, subject to" the Cancer Care Loan Participation Agreement. *See* Ex. A at § 2(D).

13. Pursuant to the Cancer Care Loan Participation Agreement, First Liberty Capital was obligated to "remit [Bay Point's] percentage of the Payments and any shared Borrower Fees not later than the close of the tenth business day following receipt of any Payments or Borrower Fees." *See* Ex. A at § 12(B).

14. Pursuant to the Cancer Care Loan Participation Agreement, all terms of the Cancer Care Loan Participation Agreement survive First Liberty Capital's removal as administrator, including the guaranties and the Cancer Care Security Interest to the extent described in Section 7 of the Cancer Care Loan Participation Agreement. *See* Ex. A at §§ 7, 20(C).

### *The Full Circle Loan*

15. On or about February 10, 2023, First Liberty Capital made a loan to Full Circle, LLC ("Full Circle") in the original principal amount of $2,750,000 (the "Full Circle Loan").

5

16.     The Full Circle Loan was evidenced by certain documents, including a promissory note and security agreement (together with all other documents executed in connection with the Full Circle Loan, the "Full Circle Loan Documents").

17.     Pursuant to the Full Circle Loan Documents, Full Circle granted First Liberty Capital a blanket security interest in all assets of Full Circe and a security interest in other real property collateral (collectively, the "Full Circle Security Interest"). First Liberty Capital perfected the Full Circle Security Interest by recording that certain UCC financing statement with the Georgia Secretary of State on February 16, 2023 at file no. 147-2023-000097 (the "Full Circle Financing Statement") and by recording that certain security deed in the land records of Walton County, Georgia on February 16, 2023 at Deed Book 5270, Page 14 (the "Full Circle Security Deed") and by recording that certain security deed in the land records of Walton County, Georgia on February 16, 2023 at Deed Book 5270, Page 38 (the "Timeless Acquisitions Security Deed").

18.     On or about February 10, 2023, Bay Point and First Liberty Capital entered into that certain Loan Participation Agreement (the "Full Circle Loan Participation Agreement") whereby Bay Point purchased a percentage share of the Principal Payments (defined therein) due from Full Circle. A true and accurate copy of the Full Circle Loan Participation Agreement is attached hereto as **Exhibit B** and incorporated by reference.

19.     Pursuant to the Full Circle Loan Participation Agreement, Bay Point purchased 36.36% of the Principal Payments, with interest accruing at the rate of 16.0% per annum. *See* Ex. B at § 2(B), (C).

20.     Pursuant to the Full Circle Loan Participation Agreement, Bay Point also purchased a 36.36% share of the Full Circle Loan Documents, including "all notes and other instruments evidencing indebtedness of Borrower in the Loan, together with all security interests in the Property securing such indebtedness." *See* Ex. B at § 2(D).

21.     Pursuant to the Full Circle Loan Participation Agreement, Bay Point is "the legal and equitable owner of the above [36.36%] Share in the [Full Circle] Loan, related [Full Circle Loan D]ocuments, and Property and . . . possess[es] all applicable rights, privileges and remedies, subject to" the Full Circle Loan Participation Agreement. *See* Ex. B at § 2(D).

22.     Pursuant to the Full Circle Loan Participation Agreement, First Liberty Capital was obligated to "remit [Bay Point's] percentage of the Payments and any shared Borrower Fees not later than the close of the tenth business day following receipt of any Payments or Borrower Fees." *See* Ex. B at § 12(C).

23.     Pursuant to the Full Circle Loan Participation Agreement, all terms of the Full Circle Loan Participation Agreement survive First Liberty Capital's removal as administrator, including the guaranties and the Full Circle Security Interest to the

extent described in Section 7 of the Full Circle Loan Participation Agreement. *See* Ex. B at §§ 7, 20(C).

*The Stone Capital Loan*

24.　On or about March 31, 2023, First Liberty Capital made a loan to Stone Capital Group, LLC ("Stone Capital" and together with Cancer Care and Full Circle, the "Borrowers") in the original principal amount of $3,750,000 (the "Stone Capital Loan") (the term "Loans" defined above shall mean the Stone Capital Loan, the Full Circle Loan, and the Cancer Care Loan).

25.　The Stone Capital Loan was evidenced by certain documents, including a promissory note and security agreement (together with all other documents executed in connection with the Stone Capital Loan, the "Stone Capital Loan Documents" and together with the Cancer Care Loan Documents and the Full Circle Loan Documents, the "Loan Documents").

26.　Pursuant to the Stone Capital Loan Documents, Stone Capital granted First Liberty Capital a blanket security interest in all assets of Stone Capital and a security interest in other real property collateral (collectively, the "Stone Capital Security Interest" and together with the Cancer Care Security Interest and the Full Circle Security Interest, the "Security Interests"). First Liberty Capital perfected the Stone Capital Security Interest by recording that certain mortgage in the land records of Walton County, Florida on May 31, 2023 at Instrument No. 20230019300, Book

3291, Page 987 (the "Stone Capital Florida Mortgage") and by recording that certain mortgage in the land records of Jefferson Parrish, Louisiana on May 30, 2023 at Book 5031, Page 71 (the "Stone Capital Louisiana Mortgage" and together with the Cancer Care Financing Statement, the Full Circle Financing Statement, the Full Circle Security Deed, the Timeless Acquisitions Security Deed, the Stone Capital Florida Mortgage, and the Stone Capital Louisiana Mortgage, the "Security Instruments").

27.    On or about February 10, 2023, Bay Point and First Liberty Capital entered into that certain Loan Participation Agreement (the "Stone Capital Loan Participation Agreement" and together with the Cancer Care Loan Participation Agreement and the Full Circle Loan Participation Agreement, the "Participation Agreements") whereby Bay Point purchased a percentage share of the Principal Payments (defined therein) due from Stone Capital. A true and accurate copy of the Stone Capital Loan Participation Agreement is attached hereto as **Exhibit C** and incorporated by reference.

28.    Pursuant to the Stone Capital Loan Participation Agreement, Bay Point purchased 37.33% of the Principal Payments, with interest accruing at the rate of 16.0% per annum. *See* Ex. C at § 2(b), (c).

29.    Pursuant to the Stone Capital Loan Participation Agreement, Bay Point also purchased a 37.33% share of the Stone Capital Loan Documents, including "all

notes and other instruments evidencing indebtedness of Borrower in the Loan, together with all security interests in the Property securing such indebtedness." *See* Ex. C at § 2(d).

30.    Pursuant to the Stone Capital Loan Participation Agreement, Bay Point is "the legal and equitable owner of the above [37.33%] Share in the [Stone Capital] Loan, related [Stone Capital Loan D]ocuments, and Property and . . . possess[es] all applicable rights, privileges and remedies, subject to" the Stone Capital Loan Participation Agreement. *See* Ex. C at § 2(d).

31.    Pursuant to the Stone Capital Loan Participation Agreement, First Liberty Capital was obligated to "remit [Bay Point's] percentage of the Payments and any shared Borrower Fees not later than the close of the tenth business day following receipt of any Payments or Borrower Fees." *See* Ex. C at § 11(c).

32.    Pursuant to the Stone Capital Loan Participation Agreement, all terms of the Stone Capital Loan Participation Agreement survive First Liberty Capital's removal as administrator, including the guaranties and the Stone Capital Security Interest to the extent described in Section 7 of the Stone Capital Loan Participation Agreement. *See* Ex. C at §§ 7, 19(C).

### *First Liberty Capital's Defaults*

33.    After executing the Participation Agreements, Bay Point became aware that First Liberty Capital had ceased all operations, was under investigation by the

Securities and Exchange Commission ("SEC"), and would not be remitting to Bay Point any payments received on account of or pursuant to the Loans or the Loan Documents.

34.    According to a notice published on First Liberty Capital's website:

We regret to inform you that as of Friday, June 27, 2025, First Liberty has ceased all business operations. First Liberty will no longer be accepting promissory note investments or bridge loan participations, and it will not be making any new bridge loans. Interest payments on existing promissory notes, bridge loan participation interests, and other investment programs are indefinitely suspended. First Liberty is cooperating with federal authorities as part of an effort to accomplish an orderly wind-up of the business. First Liberty employees are not authorized to make any further communications at this time regarding the ongoing situation, and no one at the company will be available to answer phone calls or respond to email inquiries. First Liberty hopes to provide additional information and updates in the near future regarding the status of the company's efforts to effectuate an orderly wind-up of the business.

*See* https://firstlibertyga.com/ (last accessed July 8, 2025).

35.    On July 1, 2025, Bay Point, through counsel, sent a letter to First Liberty Capital notifying it of its default under the Cancer Care Loan Participation Agreement and electing to remove First Liberty Capital as administrator of the Cancer Care Loan pursuant to Section 20(C) of the Cancer Care Loan Participation Agreement ("Cancer Care Loan Notice of Default"). A true and accurate copy of the Cancer Care Loan Notice of Default is attached hereto as **Exhibit D** and incorporated by reference.

11

36.    On July 1, 2025, Bay Point, through counsel, sent a letter to First Liberty Capital notifying it of its default under the Full Circle Loan Participation Agreement and electing to remove First Liberty Capital as administrator of the Full Circle Loan pursuant to Section 20(C) of the Full Circle Loan Participation Agreement ("Full Circle Loan Notice of Default"). A true and accurate copy of the Full Circle Loan Notice of Default is attached hereto as **Exhibit E** and incorporated by reference.

37.    On July 1, 2025, Bay Point, through counsel, sent a letter to First Liberty Capital notifying it of its default under the Stone Capital Loan Participation Agreement and electing to remove First Liberty Capital as administrator of the Stone Capital Loan pursuant to Section 19(C) of the Stone Capital Loan Participation Agreement ("Stone Capital Loan Notice of Default" and together with the Cancer Care Loan Notice of Default and the Full Circle Loan Notice of Default, the "Notices of Default"). A true and accurate copy of the Stone Capital Loan Notice of Default is attached hereto as **Exhibit F** and incorporated by reference.

38.    On July 2, 2025, Bay Point sent a letter to Cancer Care, notifying it that Bay Point had assumed administration of the Cancer Care Loan pursuant to the Cancer Care Loan Participation Agreement, directing all future payments under the Cancer Care Loan to be made to Bay Point instead of First Liberty Capital, and attaching a copy of the Cancer Care Loan Participation Agreement and the Cancer

Care Loan Notice of Default ("Cancer Care Notice Directing Payment"). A true and accurate copy of the Cancer Care Notice Directing Payment is attached hereto as **Exhibit G** and incorporated by reference.

39.    On July 2, 2025, Bay Point sent a letter to Full Circle, notifying it that Bay Point had assumed administration of the Full Circle Loan pursuant to the Full Circle Loan Participation Agreement, directing all future payments under the Full Circle Loan to be made to Bay Point instead of First Liberty Capital, and attaching a copy of the Full Circle Loan Participation Agreement and the Full Circle Loan Notice of Default ("Full Circle Notice Directing Payment"). A true and accurate copy of the Full Circle Notice Directing Payment is attached hereto as **Exhibit H** and incorporated by reference.

40.    On July 2, 2025, Bay Point sent a letter to Stone Capital, notifying it that Bay Point had assumed administration of the Stone Capital Loan pursuant to the Stone Capital Loan Participation Agreement, directing all future payments under the Stone Capital Loan to be made to Bay Point instead of First Liberty Capital, and attaching a copy of the Stone Capital Loan Participation Agreement and the Stone Capital Loan Notice of Default ("Stone Capital Notice Directing Payment" and together with the Cancer Care Notice Directing Payment and the Full Circle Notice Directing Payment, the "Borrower Notices Directing Payment"). A true and accurate

copy of the Stone Capital Notice Directing Payment is attached hereto as **Exhibit I**

and incorporated by reference.

    41.    First Liberty Capital has defaulted under the terms of the Participation

Agreements by failing to remit payments to Bay Point as and when due.[2]

---

[2] Principal and accrued but unpaid interest, outstanding under the Cancer Care Loan are approximately:

| | |
|---|---|
| Principal | $  3,000,000.00 |
| Interest | $  751,666.67 |
| TOTAL: | $  3,751,666.67 |

Principal, accrued but unpaid interest, and late charges outstanding under the Full Circle Loan are approximately:

| | |
|---|---|
| Principal | $  1,000,000.00 |
| Interest | $  19,111.11 |
| Fees | $  26,850.00 |
| TOTAL: | $  1,045,961.11 |

Principal and accrued but unpaid interest outstanding under the Stone Capital Loan are approximately:

| | |
|---|---|
| Principal | $  1,400,000.00 |
| Interest | $  26,755.56 |
| TOTAL: | $  1,426,755.56 |

These amounts are all based upon estimated information currently available to Bay Point. In the event Bay Point's Motion to Intervene is granted and Bay Point is permitted to file its Complaint, Bay Point will include updated amounts owed by Borrowers.

42.    The aforementioned outstanding principal, accrued but unpaid interest, and fees outstanding under the Loan Documents are exclusive of costs of collection and attorneys' fees available under the Participation Agreements and applicable law.

43.    Additional interest, fees, costs and charges have continued to accrue and continue to accrue under the Participation Agreements from July 10, 2025 going forward.

## PROCEDURAL HISTORY

44.    On July 10, 2025, the SEC initiated this action by filing its *Complaint* ("SEC Complaint") against Defendants Edwin Brant Frost IV ("Frost") and First Liberty Building & Loan, LLC ("FLBL") and against Relief Defendants First Liberty Capital, First Liberty National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC (together with Frost and FLBL, the "Defendants" or the "First Liberty Parties"), bringing claims for (i) violations of Section 15 of the Securities Act [15 U.S.C. § 77q(a)(1)], (ii) violations of Sections 17(a)(2) and (a)(3) of the Securities Act [15 U.S.C. §§ 77a(2) and (a)(3)], and (iii) violations of Section 10(b) and Rule 10b-5 of the Exchange Act [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]. *See* Dkt. No. 1 at ¶¶ 140-150.

45.    Contemporaneously with its Complaint, the SEC also filed *Plaintiff's Emergency Motion for Asset Freeze and Other Equitable Relief* ("Receivership Motion"), seeking (i) permanent injunctions imposing an asset freeze and an

accounting on Defendants, prohibiting Defendants from destroying documents, and expediting discovery and (ii) the appointment of a receiver over Defendants. *See* Dkt. No. 2 at 6. Defendants consented to the relief sought in the Receivership Motion. *See* Dkt. No. 2-3.

46.    On July 10, 2025, the Court granted the Receivership Motion and entered a *Consent Judgment* ("Judgment") against Defendants and the *Order Appointing Receiver* ("Receivership Order"), appointing S. Gregory Hays ("Receiver") as receiver in this action. *See* Dkt. Nos. 5, 6.

47.    Pursuant to the Receivership Order, "[a]ll civil legal proceedings of any nature . . . involving . . . any Receivership Property[3] wherever located [or] . . . the Receivership Entities,[4] including subsidiaries and partnership . . ." "are stayed until further Order of this Court." Dkt. No. 6 at ¶ 32.

48.    This stay of litigation includes an injunction against "commencing or continuing any such legal proceeding." Dkt. No. 6 at ¶ 33.

---

[3] As defined in the Receivership Order, the Receivership Property includes "all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly." Dkt. No. 6 at ¶ 6(A).

[4] As defined in the Receivership Order, the Receivership Entities include all Defendants other than Frost. *See* Dkt No. 6 at ¶ 1.

## COUNT I – DECLARATORY RELIEF[5]

49.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

50.    Pursuant to O.C.G.A. § 9-4-1, et. seq. and/or 28 U.S.C. § 2201, Bay Point seeks a judgment declaring the rights, status, and other legal relations existing between the parties.

51.    An actual controversy has arisen and now exists between Bay Point and First Liberty Capital as to their legal rights and duties for which Bay Point seeks a judicial declaration of rights as to such matters, as well as further necessary or proper relief, including injunctive relief.

52.    There is a dispute surrounding Bay Point's right to administer the Loans.

53.    As set forth in the Participation Agreements, Bay Point has the right to remove First Liberty Capital as administrator of the Loans upon the occurrence of one or more conditions, including: (1) First Liberty Capital's failure to comply with its fiduciary, contractual or legal obligations as provided under the Participation

---

[5] Bay Point also has breach of contract claims against First Liberty arising out of First Liberty's breach of the Participation Agreements. In light of the Receivership Order, Bay Point is not asserting these claims at this time but reserves all rights relating to such claims.

Agreements or by state or federal law; (2) First Liberty Capital petitions for or becomes subject to bankruptcy; (3) First Liberty Capital commits any act of insolvency; or (4) First Liberty Capital is declared insolvent, is taken over, or otherwise closed by a governmental regulatory agency which has jurisdiction over First Liberty Capital (each a "Qualifying Event"). *See* Ex. A at § 20(A); Ex. B at § 20(A); Ex. C at § 19(a).

54.    Pursuant to the Participation Agreements, upon the occurrence of a Qualifying Event, Bay Point has the right to notify Borrowers that it has removed First Liberty Capital as administrator of the Loans and assumed administration of the Loans. *See* Ex. A at § 20(C); Ex. B at § 20(C); Ex. C at § 19(c). All remaining terms of the Participation Agreements survive First Liberty Capital's removal as administrator until obligations to Bay Point are satisfied in full. *See id.*

55.    One or more Qualifying Events has occurred, entitling Bay Point to: (1) remove First Liberty Capital as administrator of the Loans; (2) assume administration of the Loans; (3) notify Borrowers of the same; and (4) assume the benefits of the Loan Participation Agreements from First Liberty Capital, including the right to pursue the guaranties and Security Interests for each of the Loans upon a default.

56.    Bay Point notified Borrowers through the Borrower Notices Directing Payment that it had removed First Liberty Capital as administrator of the Loans and

assumed administration of the Loans and demanded future payments under the Loans be directed to Bay Point. *See* Exs. G, H, I.

57.    Based upon the forgoing, Bay Point requests the Court determine that Bay Point is the rightful administrator of the Loans pursuant to the Participation Agreements, that all future payments under the Loans should be directed to Bay Point, and that Bay Point has the right to assume all rights of First Liberty Capital set forth in the Participation Agreements.

58.    Bay Point further requests an award of costs.

## COUNT II – ATTORNEYS' FEES AND COSTS

59.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

60.    Pursuant to the Participation Agreements, First Liberty Capital is required to pay Bay Point all costs, including reasonable attorneys' fees and expenses, incurred by Bay Point in enforcing performance or collecting any payments due under the Participation Agreements. *See* Ex. A at § 22; Ex. B at § 22; Ex. C at § 21.

61.    Moreover, Bay Point hereby gives notice pursuant to O.C.G.A. § 13-1-11 that First Liberty Capital has ten (10) days after receipt of this notice to cure completely the defaults under the Participation Agreements and identified in this notice to avoid incurring the obligation to pay Bay Point's attorneys' fees.

62.     Further, as shown by the above, First Liberty Capital has acted in bad faith, has been stubbornly litigious, and has caused Bay Point undue trouble and expense.

63.     Accordingly, Bay Point is entitled to recover its expenses of litigation, including reasonable attorneys' fees, under O.C.G.A. § 13-6-11.

**WHEREFORE**, Bay Point respectfully requests that the Court grant judgment in its favor and against First Liberty Capital, as follows:

(i)     As to Count I: Judgment in its favor declaring the legal relations between the parties as requested above;

(ii)    As to Count II: An award of Bay Point's attorneys' fees, costs, and expenses in connection with enforcing its rights under the Participation Agreements to the fullest extent permitted under Georgia Law; and

(iii)   For such other and further relief as this Court deems just, proper, and equitable.

Submitted this ___ day of _____ 2025.

                                    **THOMPSON HINE LLP**

                                    */s/ Alexandra C. Nelson*
                                    Alexandra C. Nelson
                                    Georgia Bar No. 241352
                                    Austin B. Alexander
                                    Georgia Bar No. 926059

Two Alliance Center, Suite 1600
3560 Lenox Road
Atlanta, Georgia 30326
Telephone: 404-541-2900
Facsimile: 404-541-2905
*alexandra.nelson@thompsonhine.com*
*austin.alexander@thompsonhine.com*

*Attorneys for Plaintiff Bay Point*
*Capital Partners II, LP*

## <u>CERTIFICATE OF COUNSEL REGARDING FONT SIZE</u>

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D), and the attachments are consistent with Local Rule 5.1(B).

*/s/ Alexandra C. Nelson*
Alexandra C. Nelson
Georgia Bar No. 241352

**EXHIBIT "A"**

DocuSign Envelope ID: 84C82B77-27F3-4A23-8925-E3954D2A728A

## LOAN PARTICIPATION AGREEMENT

**DATE AND PARTIES.** The date of this Loan Participation Agreement (Agreement) is December 19, 2022. The parties and their addresses are:

**ORIGINATING LENDER (Seller):**

    **FIRST LIBERTY CAPITAL PARTNERS, LLC**
    **P. O. Box 2567**
    **Newnan, GA 30263**

**PARTICIPANT (Purchaser):**

    **BAY POINT CAPITAL PARTNERS II, LP**
    **3050 Peachtree Road NW**
    **Suite 740**
    **Atlanta, GA 30305**

**1. LOAN BACKGROUND INFORMATION.** A Promissory Note evidencing a Loan from Originating Lender to Borrower was executed in favor of Seller as follows:

| | |
|---|---|
| **A. Borrower Name and Address:** | **2406 CANCER CARE, LLC a Delaware limited liability company** |
| **B. Date of Loan:** | December 19, **2022** |
| **D. Loan Amount:** | **Six Million Five Hundred Thousand Dollars ($6,500,000.00)** |
| **E. Outstanding Principal Balance:** | **Six Million Five Hundred Thousand Dollars ($6,500,000.00)** |
| **F. Due Date:** | **December 18, 2023, subject to six month extension as provided in the Promissory Note.** |

**2. SALE OF PARTICIPATION.**

    **A. Purchase of Participation.** Purchaser agrees to purchase a **Three Million Dollar ($3,000,000.00)** participation in the Loan from Seller on the terms and conditions hereinafter stated. This sale is made without recourse to Seller.

    **B. Purchaser's Share of Borrower Principal Payments.** Purchaser's percentage of all Principal Payments is **46.15%.**

DocuSign Envelope ID: 84C82B77-27F3-4A23-8925-E3954D2A728A

**C.  Purchaser's Interest Rate.**    Purchaser's Interest Rate shall be **16.0%** per annum, paid monthly, plus annualized interest in the amount of 9% paid upon maturity of the Loan, its refinance, default or acceleration.

**D.  Purchaser's Interest in Loan Documents.**  This Agreement includes the sale to Purchaser of a Share in all notes and other instruments evidencing indebtedness of Borrower in the Loan, together with all security interests in the Property securing such indebtedness.  Purchaser and Seller agree that Purchaser will be considered for all purposes the legal and equitable owner of the above Share in the Loan, related documents, and Property and will possess all applicable rights, privileges and remedies, subject to other provisions of this Agreement.

**3. PAYMENTS.** Seller will receive all Payments and apply them to Borrower's account. Payments received by Seller under the Loan will be held for the benefit of Seller and Purchaser until the payments are actually paid to and received by Purchaser. Seller's contribution to the Loan is "first in, last out" and, in the event of a shortfall in Borrower's payment of any amounts owing under the Note, Seller shall not receive any payment under the Note until the shortage owed to Purchaser is paid.  If Seller must refund any part of a Payment that was remitted to Purchaser to Borrower or any other person, Purchaser shall remit to Seller immediately the amount received by Purchaser relating to such refunded Payment.

**4. EXPENSES.** Seller may at its discretion make additional advances for taxes, insurance premiums and other items deemed necessary by Seller to collect, enforce, or protect the Loan and any Property securing the Loan including, but not limited to, attorneys' fees, court costs and disbursements.   Purchaser's share of such expenses is **46.15%.**

**5. BORROWER FEES.**   Borrower Fees shall belong to Seller, except that if Purchaser does not timely receive any payment of interest or principal when due, then Purchaser shall be entitled to receive a pro rata portion of any late fee received by Seller. All Borrower Fees have been or shall be paid to Seller as collected from Borrower.  Purchaser shall likewise be entitled to receive its pro rata share of any default interest received by Seller.

**6. ORIGINATION AND ADMINISTRATIVE FEES.**  Seller  will  bear  all  costs  of  origination, administering and servicing the Loan and shall be compensated by the **2%** differential between the **18%** per annum interest rate paid by Borrower to Seller and the **16%** per annum interest rate paid to by Seller to Purchaser.

**7. SECURITY.** The Loan is secured by the Guaranty Agreements of Erich G. Randolph, Aaron O. Williams and Phillip E. Miles and the following Property, all of which is evidenced by security agreements, and/or other instruments in favor of Seller.  Dr. Randolph's liability under his Guaranty is limited to a maximum of $1,000,000.00.   A   security interest in the Property is assigned and sold to Purchaser, subject to other provisions within this Agreement, in proportion to Purchaser's Investment and is held by Seller for the benefit of Purchaser. Upon full payment of Purchaser's Investment plus interest thereon the security interest given to Purchaser will be null and void.

Property description:  See Exhibit A attached hereto and incorporated herein by this reference.

DocuSign Envelope ID: 84C82B77-27F3-4A23-8925-E3954D2A728A

**8. UNRELATED CREDIT OF BORROWER.** If Borrower requests or continues other credit unrelated to the Loan, Seller and Purchaser agree that they will not provide this credit without first obtaining the consent of the other.

**9. DEFINITIONS.** In this Agreement, pertinent terms and their definitions are as follows.

**A. Borrower Fees.** Borrower Fees include, but are not limited to, commitment fees, servicing fees, late charges, prepayment penalties and other similar fees received from Borrower and not defined as a Payment.

**B. Default.** Default includes all definitions of the term used in any Loan Documents and other related instruments evidencing the Borrower's indebtedness.

**C. Loan.** Loan means Borrower's obligation as described in this Agreement and includes, but is not limited to, all extensions, renewals, modifications and re-financings of Borrower's obligation as well as all collateral and assurances of repayment taken in connection with the Loan.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Obligor.** Obligor includes all borrowers, co-makers, guarantors and endorsers of the Loan.

**F. Payments.** Payments includes principal, interest, and other charges received by Seller with respect to the Loan from whatever source derived including, but not limited to, all sums realized from any endorser, guarantor, or other person liable with respect to the Loan; all sums realized from the exercise by Seller of any rights pursuant to a lien or right of set-off with respect to any deposit balance or other property of the Borrower; any insurance proceeds or casualty awards; and any proceeds from the sale, liquidation, exchange, or substitution of the Property.

**G. Purchaser's Interest Rate.** Purchaser's Interest Rate means the rate specified in this Agreement.

**10. DOCUMENTATION OF LOAN.** Except as required for recording, Seller will hold all writings concerning the Loan, including all security instruments and guaranties, and will maintain records pertaining to the Loan. Purchaser acknowledges receipt of all copies of Loan Documents which Purchaser specifically requested and deemed reasonably necessary to fully evaluate the quality of the Loan before consenting to this Agreement. All Loan Documents are available at Seller's office for Purchaser's inspection and copying at normal lobby hours upon reasonable advance notice and at such other times as Seller may permit. Unless otherwise agreed, Seller will from time to time provide Purchaser with complete and current credit information regarding the following: Loan accrual status; status of principal and interest payments; financial statements, Property values and lien status; and any factual information bearing on the Borrower's continuing credit worthiness.

**11. INTENTIONALLY OMITTED.**

**12. ADMINISTRATION.**

**A. Loan Servicing.** Seller may administer the Loan and any related security and guaranties as though it were the sole owner and holder thereof. Except as provided below, Seller will make all decisions concerning the servicing of the Loan and any related security and guaranties, acceleration, foreclosure, acquisition of other security or guaranties, deficiency judgments, purchase at foreclosure sales, and administration and disposition of acquired security. Seller will not, without Purchaser's written consent, reduce principal or interest with respect to the Loan or release or allow for the substitution of any Property, outside the normal course of dealing with Borrower so as to substantially reduce the possibility of repayment of the Loan. Seller will not, without Purchaser's written consent, renew, extend or consent to the revision of the provisions of any note or security documents covered or waive any claim against Obligor.

DocuSign Envelope ID: 84C82B77-27F3-4A23-8925-E3954D2A728A

**B. Seller's Duty to Purchaser.** Seller will use the same degree of care in servicing and collecting the Loan as it would for its own accounts. Seller will not be liable to Purchaser for any action taken or omitted or for any error in judgment, except for bad faith or willful misconduct.

**C. Participation Payments.** Seller will remit Purchaser's percentage of the Payments and any shared Borrower Fees not later than the close of the tenth business day following receipt of any Payments or Borrower Fees. If shared, Expenses and Administrative Fees will be charged to and payable by Purchaser from time to time as they are incurred or as otherwise agreed. Unless otherwise agreed, such charges will be deducted from the amount of any Payments or Borrower Fees to be remitted to Purchaser from time to time, but will not exceed the total amount to be remitted to Purchaser at any one time. At Seller's option, and upon reasonable notice to Purchaser, Seller may demand full payment of any outstanding Expenses or Administrative Fees due Seller. If Seller must refund any part of a Payment that was remitted to Purchaser to Borrower or any other person, Purchaser shall remit to Seller immediately the amount received by Purchaser.

**13. FAILURE TO REMIT PAYMENTS.** If Seller fails to remit amounts received from Borrower that are due and payable to Purchaser as specified in this Agreement then all of the following applies.

**A. Purchaser's Duty.** Purchaser will not be responsible for any Expenses or Administrative Fees incurred by Seller until all amounts owing Purchaser are paid in full with applicable interest.

**B. Seller's Penalty.** Seller will pay to Purchaser, in addition to the full amount of any late amounts due and payable to Purchaser, a penalty on the late amounts equal to any penalty specified on the Promissory Note or, if none is specified, the Promissory Note rate.

**14. FUNDING OF THE PARTICIPATION.** Purchaser will pay to Seller on demand (in immediately available funds as agreed to herein) the amount agreed to in this Agreement.

**15. SELLER'S REPRESENTATIONS.** Seller represents that the Borrower is not in default on principal or interest payments; and that the terms of the Loan have not been renegotiated or compromised due to the deteriorating financial condition of Borrower.

**16. PURCHASER'S WARRANTIES.** Purchaser hereby represents and warrants to Seller that at the time Purchaser executes this Agreement, Purchaser has received all authorizations of its manager, members, board of directors, shareholders, stockholders and such other bodies or persons as are necessary to authorize Purchaser's purchase of the agreed upon Share, that such authorization was reflected in the appropriate minutes thereof and continues to be an official record of Purchaser, and that Purchaser has the financial ability to perform its obligations under this Agreement.

**17. LIABILITY AND DISCLAIMER OF WARRANTIES.** Purchaser acknowledges that it has made an independent investigation of the Loan, and has satisfied itself with respect to the credit standing of any Obligor of the Loan, the value of any security for the Loan, the validity and enforceability of the Loan agreement, the Promissory Note and any guaranty and security and all other matters in connection with the Loan. Purchaser acknowledges that it is not relying upon Seller's judgment, and that Seller has made no warranty of any kind, express or implied, in connection with the Loan or any of the foregoing. Unless otherwise agreed, Seller makes no warranties or representations regarding the legality, perfection, enforceability, or priority of any security interests, mortgages, guaranties, or similar documents issued in connection with the Loan. Purchaser agrees to share the risks of collection of the Loan and of the adequacy of the Property in proportion to Purchaser's Share. Purchaser releases Seller from any liability under state or federal securities laws arising from the failure of Seller to register the Purchaser's Share in the Loan.

DocuSign Envelope ID: 84C82B77-27F3-4A23-8925-E3954D2A728A

Purchaser and Seller acknowledge that based on their independent evaluations, Purchaser's Share in the Loan is either not a security under a federal or state law or, if a security, is exempt from registration or qualification.

**18. NOTIFICATION.** Seller and Purchaser will promptly notify each other should either receive actual notice or knowledge of any loss of Property or change in financial condition of any Obligor under the Loan, which will have a material adverse effect upon continuation of payments under the Loan or its repayment on default. All notices will be sent by first-class mail and sent to the address shown in this Agreement.

**19. DEFAULT AND LIQUIDATION OF LOAN.** Subject to **Paragraph 3 PAYMENTS**, and the "first in, last out" nature of Seller's interest in the Loan, in the event of Default, or if Seller in its sole discretion should otherwise accelerate and liquidate the Loan, all Payments collected and received by Seller will be applied as follows: first, to Expenses; second, to the unpaid principal amount of the Purchaser's portion of the Loan at the time of Default; third, to the respective accrued interest, fees, and other charges due to Purchaser under this Agreement, and Fourth, to Seller. Upon Borrower's Default, all Payments and Borrower Fees received from Borrower, whether designated for repayment of the Loan or undesignated, will be deemed intended for the repayment of the Loan in accordance with this Agreement.

**20. REMOVAL OF SELLER AS ADMINISTRATOR.** The Seller may be removed as the Loan's administrator under the following terms and conditions.

**A. Qualifying Events.** Upon the occurrence of any of the following events, Purchaser may notify Seller and assume the administration of the Loan and related guarantees and security agreements as well as demand any documentation or writings reasonably necessary to evidence proof of Purchaser's security interest and perfection.

(1) Seller fails to comply with Seller's fiduciary, contractual or legal obligations as provided under this Agreement or by state or federal law.

(2) Seller petitions for or becomes subject to bankruptcy.

(3) Seller commits any act of insolvency.

(4) Seller is declared insolvent, is taken over, or otherwise closed by a governmental regulatory agency which has jurisdiction over Seller.

**B. Multiple Participants.** In the event of multiple participants in the Loan, the participating lender with the then largest share will have the option to assume administration. If any participant possessing this option does not exercise its right upon the demand of the other participants, the option will then pass to the participant with the next largest share. Unless otherwise agreed, participants possessing equal shares in the Loan will share equally in administration.

**C. Purchaser Rights.** Purchaser will have the right to notify and communicate with all Obligors of the Loan, and to direct them to pay any amounts due under the Loan directly to Purchaser or such other participant assuming administration of the Loan. Seller will join in this notice to Obligor upon request by Purchaser. Unless otherwise agreed, all remaining terms of this Agreement will survive Seller's removal as administrator until Purchaser's Investment is satisfied in full or the Loan is repurchased by Seller as provided in this Agreement.

**D. Loan Repayment.** Upon the occurrence of any of the events in this section, all Payments received from Borrower, whether designated for repayment of the Loan or undesignated, will be deemed intended for the repayment of the Loan in accordance with this Agreement.

**21. ASSIGNMENT.** Neither Purchaser nor Seller may sell, pledge, assign, sub-participate, or otherwise transfer its interest in the Loan, Loan security, Loan guaranty or rights or obligations under this Agreement without the prior written consent of the other party which will not be unreasonably withheld, except that Seller

DocuSign Envelope ID: 84C82B77-27F3-4A23-8925-E3954D2A728A

may sell other participations in the Loan without Purchaser's consent. The duties and benefits of this Agreement will bind and benefit the permitted successors and assigns of Seller and Purchaser. Upon receipt by Purchaser of a bona fide offer from a third party to purchase, sub-participate or otherwise acquire Purchaser's interest in the Loan, Purchaser will notify Seller of the offer and provide Seller with the right of first refusal. Seller will respond to Purchaser's offer in a timely manner. If Seller elects not to obtain Purchaser's interest, with Seller's consent Purchaser may transfer its interest to such third party.

**22. ATTORNEYS' FEES AND COSTS.** If any lawsuit or proceeding is brought by Seller or Purchaser to enforce the terms of this Agreement, the unsuccessful party will pay the prevailing party all its court costs and reasonable attorneys' fees incurred in bringing or defending such action.

### 23. GENERAL PROVISIONS.

**A. Partnership, Joint Venture, Agency, Trust.** Purchaser and Seller agree that this Agreement is not intended and is not to be construed to create a partnership, joint venture, agency, or trust relationship.

**B. Sale of Percentage.** This Agreement constitutes a sale of a percentage ownership interest in the Loan and is not and shall not be construed as an extension of credit by Purchaser to Seller. If federal or state laws or regulations, or a judicial decision, now or later provides that the purchase of a participation interest is an extension of credit, Purchaser and Seller agree that this Agreement shall constitute a security agreement under the Uniform Commercial Code and hereby grants to Purchaser a security interest in the Loan. Purchaser shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including but not limited to rights upon default. Seller authorizes Purchaser to file one or more financing statements against Seller with respect to the Loan from time to time.

**C. Applicable Law.** This Agreement is governed by the laws of Georgia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**D. Amendment, Integration And Severability.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by Purchaser and Seller. This Agreement is the complete and final expression of the agreement. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**E. Remedies.** Nothing in this Agreement will be construed to limit Purchaser's or Seller's remedies to those described in this Agreement. Purchaser and Seller are allowed all Remedies at law or in equity.

**F. Interpretation.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**G. Confidentiality.** Purchaser acknowledges that all information relating to the Loan is confidential and solely for Purchaser's use. Purchaser agrees not to share it with any other party.

DocuSign Envelope ID: 84C62B77-27F3-4A23-8925-E3954D2A728A

**SIGNATURES.** By signing, Purchaser and Seller agree to the terms contained in this Agreement. Purchaser also acknowledges receipt of a copy of this Agreement.

**PURCHASER:**

**BAY POINT CAPITAL PARTNERS II, LP**

By:    **Bay Point Advisors, LLC**
       **Its: General Partner**

       By: _Charles Andros_
       Its: Manager                        **(SEAL)**

**SELLER:**

**FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company**

By: _Brant Frost IV / Manager_ (SEAL)
     **Brant Frost IV, its Manager**

DocuSign Envelope ID: 84C82B77-27F3-4A23-8925-E3954D2A728A

<u>**EXHIBIT "A"**</u>

All assets, properties and rights of the Debtor, of every type and description, whether real, personal or mixed, tangible or intangible, and wherever located, including but not limited to all furniture, fixtures and equipment, machinery, inventory, disposables, consumables, office and other supplies, replacement and component parts, accounts, accounts receivable and other assets, documents, general intangibles, now existing or hereafter acquired, replacements and proceeds of the foregoing, which assets include but are not limited to, the following:

2009 refurbished in 2019 Elekta Linear Accelerator, 6/10 MV, Agility MLC, LCS Integrity 3.2, iViewGT, XVI, VMAT, Precise table.

2017 Elekta Infinity Dual Modality Digital accelerator with integrated mulit leaf colinator, with 3D Conformal Radiotherapy IMRT VMAT XVI.

GE 2014 refurbished in 2019 LightSpeed RT Wide Board 16 Slice CT, Serial #1560HMI,

HDR Equipment for Brachytherapy

together with: (i) all proceeds of the foregoing, including, without limitation, all cash, checks, drafts, accounts receivable, chattel paper, leases and instruments received by Debtor in connection with any sale, lease, exchange or disposition of any of the foregoing, and (ii) all books, records (including computer software) and documents at any time evidencing or relating to any of the foregoing or any proceeds of the foregoing.

**EXHIBIT "B"**

DocuSign Envelope ID: B99EF064-35F0-463C-8296-994BF308C9AB

## LOAN PARTICIPATION AGREEMENT

**DATE AND PARTIES.** The date of this Loan Participation Agreement (Agreement) is February 10, 2023. The parties and their addresses are:

**ORIGINATING LENDER (Seller):**

> **FIRST LIBERTY CAPITAL PARTNERS, LLC**
> **P. O. Box 2567**
> **Newnan, GA 30263**

**PARTICIPANT (Purchaser):**

> **BAY POINT CAPITAL PARTNERS II, LP**
> **3050 Peachtree Road NW**
> **Suite 740**
> **Atlanta, GA 30305**

**1. LOAN BACKGROUND INFORMATION.**   A Promissory Note evidencing a Loan from Originating Lender to Borrower was executed in favor of Seller as follows:

| | |
|---|---|
| **A. Borrower Name and Address:** | **Full Circle, LLC, a Georgia limited liability company.** |
| **B. Date of Loan:** | **February 10, 2023.** |
| **D. Loan Amount:** | **Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000.00).** |
| **E. Outstanding Principal Balance:** | **Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000.00)** |
| **F. Due Date:** | **February 9, 2024.** |

**2. SALE OF PARTICIPATION.**

**A. Purchase of Participation.**   Purchaser agrees to purchase a **One Million Dollar ($1,000,000.00)** participation in the Loan from Seller on the terms and conditions hereinafter stated.   This sale is made without recourse to Seller.

**B. Purchaser's Share of Borrower Principal Payments.**      Purchaser's percentage of all Principal Payments is **36.36%**.

**C.  Purchaser's Interest Rate.**    Purchaser's Interest Rate shall be **16.0%** per annum , paid monthly.

DocuSign Envelope ID: B99EF064-35F0-463C-8296-994BF308C9AB

**D. Purchaser's Interest in Loan Documents.** This Agreement includes the sale to Purchaser of a Share in all notes and other instruments evidencing indebtedness of Borrower in the Loan, together with all security interests in the Property securing such indebtedness. Purchaser and Seller agree that Purchaser will be considered for all purposes the legal and equitable owner of the above Share in the Loan, related documents, and Property and will possess all applicable rights, privileges and remedies, subject to other provisions of this Agreement.

**3. PAYMENTS.** Seller will receive all Payments and apply them to Borrower's account. Payments received by Seller under the Loan will be held for the benefit of Seller and Purchaser until the payments are actually paid to and received by Purchaser. Purchaser's pay out position is "first out". Seller's contribution to the Loan is "first in, last out" and, in the event of a shortfall in Borrower's payment of any amounts owing under the Note, Seller shall not receive any payment under the Note until the shortage owed to Purchaser is paid. If Seller must refund any part of a Payment that was remitted to Purchaser to Borrower or any other person, Purchaser shall remit to Seller immediately the amount received by Purchaser relating to such refunded Payment. In addition to any other payments made to Purchaser hereunder, Seller shall pay to Purchaser 2% of Purchaser's participation amount, that is, $20,000.00, at closing, and 1% of the Purchaser's participation amount, that is, $10,000.00, if and when the Loan is extended.

**4. EXPENSES.** Seller may at its discretion make additional advances for taxes, insurance premiums and other items deemed necessary by Seller to collect, enforce, or protect the Loan and any Property securing the Loan including, but not limited to, attorneys' fees, court costs and disbursements. Purchaser's share of such expenses is **36.36%.**

**5. BORROWER FEES.** Borrower Fees shall belong to Seller, except that if Purchaser does not timely receive any payment of interest or principal when due, then Purchaser shall be entitled to receive a pro rata portion of any late fee received by Seller. All Borrower Fees have been or shall be paid to Seller as collected from Borrower. Purchaser shall likewise be entitled to receive its pro rata share of any default interest received by Seller.

**6. ORIGINATION AND ADMINISTRATIVE FEES.** Seller will bear all costs of origination, administering and servicing the Loan and shall be compensated by the **2%** differential between the **18%** per annum interest rate paid by Borrower to Seller and the **16%** per annum interest rate paid to by Seller to Purchaser.

**7. SECURITY.** The Loan is secured by the Guaranty Agreements of David Pike, David Pike II, and Christie Pike Nelson, and the following Property, all of which is evidenced by deeds to secure debt and security agreements, UCC and/or other instruments in favor of Seller. A security interest in the Property is assigned and sold to Purchaser, subject to other provisions within this Agreement, in proportion to Purchaser's Investment and is held by Seller for the benefit of Purchaser. Upon full payment of Purchaser's Investment plus interest thereon the security interest given to Purchaser will be null and void.

Property description: See Exhibit A attached hereto and incorporated herein by this reference.

DocuSign Envelope ID: B99EF064-35F0-463C-8296-994BF308C9AB

**8. UNRELATED CREDIT OF BORROWER.**  If Borrower requests or continues other credit unrelated to the Loan, Seller and Purchaser agree that they will not provide this credit without first obtaining the consent of the other.

**9. DEFINITIONS.**  In this Agreement, pertinent terms and their definitions are as follows.

**A. Borrower Fees.**  Borrower Fees include, but are not limited to, commitment fees, servicing fees, late charges, prepayment penalties and other similar fees received from Borrower and not defined as a Payment.

**B. Default.**  Default includes all definitions of the term used in any Loan Documents and other related instruments evidencing the Borrower's indebtedness.

**C. Loan.**  Loan means Borrower's obligation as described in this Agreement and includes, but is not limited to, all extensions, renewals, modifications and re-financings of Borrower's obligation as well as all collateral and assurances of repayment taken in connection with the Loan.

**D. Loan Documents.**  Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Obligor.**  Obligor includes all borrowers, co-makers, guarantors and endorsers of the Loan.

**F. Payments.**  Payments includes principal, interest, and other charges received by Seller with respect to the Loan from whatever source derived including, but not limited to, all sums realized from any endorser, guarantor, or other person liable with respect to the Loan; all sums realized from the exercise by Seller of any rights pursuant to a lien or right of set-off with respect to any deposit balance or other property of the Borrower; any insurance proceeds or casualty awards; and any proceeds from the sale, liquidation, exchange, or substitution of the Property.

**G. Purchaser's Interest Rate.**  Purchaser's Interest Rate means the rate specified in this Agreement.

**10. DOCUMENTATION OF LOAN.**  Except as required for recording, Seller will hold all writings concerning the Loan, including all security instruments and guaranties, and will maintain records pertaining to the Loan.  Purchaser acknowledges receipt of all copies of Loan Documents which Purchaser specifically requested and deemed reasonably necessary to fully evaluate the quality of the Loan before consenting to this Agreement.  All Loan Documents are available at Seller's office for Purchaser's inspection and copying at normal lobby hours upon reasonable advance notice and at such other times as Seller may permit. Unless otherwise agreed, Seller will from time to time provide Purchaser with complete and current credit information regarding the following: Loan accrual status; status of principal and interest payments; financial statements, Property values and lien status; and any factual information bearing on the Borrower's continuing credit worthiness.

**11. INTENTIONALLY OMITTED.**

**12. ADMINISTRATION.**

**A. Loan Servicing.**  Seller may administer the Loan and any related security and guaranties as though it were the sole owner and holder thereof.  Except as provided below, Seller will make all decisions concerning the servicing of the Loan and any related security and guaranties, acceleration, foreclosure, acquisition of other security or guaranties, deficiency judgments, purchase at foreclosure sales, and administration and disposition of acquired security.  Seller will not, without Purchaser's written consent, reduce principal or interest with respect to the Loan or release or allow for the substitution of any Property, outside the normal course of dealing with Borrower so as to substantially reduce the possibility of repayment of the Loan.  Seller will not, without Purchaser's written consent, renew, extend or consent to the revision of the provisions of any note or security documents covered or waive any claim against Obligor.

DocuSign Envelope ID: B99EF064-35F0-463C-8296-994BF308C9AB

**B. Seller's Duty to Purchaser.** Seller will use the same degree of care in servicing and collecting the Loan as it would for its own accounts. Seller will not be liable to Purchaser for any action taken or omitted or for any error in judgment, except for bad faith or willful misconduct.

**C. Participation Payments.** Seller will remit Purchaser's percentage of the Payments and any shared Borrower Fees not later than the close of the tenth business day following receipt of any Payments or Borrower Fees. If shared, Expenses and Administrative Fees will be charged to and payable by Purchaser from time to time as they are incurred or as otherwise agreed. Unless otherwise agreed, such charges will be deducted from the amount of any Payments or Borrower Fees to be remitted to Purchaser from time to time, but will not exceed the total amount to be remitted to Purchaser at any one time. At Seller's option, and upon reasonable notice to Purchaser, Seller may demand full payment of any outstanding Expenses or Administrative Fees due Seller. If Seller must refund any part of a Payment that was remitted to Purchaser to Borrower or any other person, Purchaser shall remit to Seller immediately the amount received by Purchaser.

**13. FAILURE TO REMIT PAYMENTS.** If Seller fails to remit amounts received from Borrower that are due and payable to Purchaser as specified in this Agreement then all of the following applies.

**A. Purchaser's Duty.** Purchaser will not be responsible for any Expenses or Administrative Fees incurred by Seller until all amounts owing Purchaser are paid in full with applicable interest.

**B. Seller's Penalty.** Seller will pay to Purchaser, in addition to the full amount of any late amounts due and payable to Purchaser, a penalty on the late amounts equal to any penalty specified on the Promissory Note or, if none is specified, the Promissory Note rate.

**14. FUNDING OF THE PARTICIPATION.** Purchaser will pay to Seller on demand (in immediately available funds as agreed to herein) the amount agreed to in this Agreement.

**15. SELLER'S REPRESENTATIONS.** Seller represents that the Borrower is not in default on principal or interest payments; and that the terms of the Loan have not been renegotiated or compromised due to the deteriorating financial condition of Borrower.

**16. PURCHASER'S WARRANTIES.** Purchaser hereby represents and warrants to Seller that at the time Purchaser executes this Agreement, Purchaser has received all authorizations of its manager, members, board of directors, shareholders, stockholders and such other bodies or persons as are necessary to authorize Purchaser's purchase of the agreed upon Share, that such authorization was reflected in the appropriate minutes thereof and continues to be an official record of Purchaser, and that Purchaser has the financial ability to perform its obligations under this Agreement.

**17. LIABILITY AND DISCLAIMER OF WARRANTIES.** Purchaser acknowledges that it has made an independent investigation of the Loan, and has satisfied itself with respect to the credit standing of any Obligor of the Loan, the value of any security for the Loan, the validity and enforceability of the Loan agreement, the Promissory Note and any guaranty and security and all other matters in connection with the Loan. Purchaser acknowledges that it is not relying upon Seller's judgment, and that Seller has made no warranty of any kind, express or implied, in connection with the Loan or any of the foregoing. Unless otherwise agreed, Seller makes no warranties or representations regarding the legality, perfection, enforceability, or priority of any security interests, mortgages, guaranties, or similar documents issued in connection with the Loan. Purchaser agrees to share the risks of collection of the Loan and of the adequacy of the Property in proportion to Purchaser's Share. Purchaser releases Seller from any liability under state or federal securities laws arising from the failure of Seller to register the Purchaser's Share in the Loan.

DocuSign Envelope ID: B99EF064-35F0-463C-8296-994BF308C9AB

Purchaser and Seller acknowledge that based on their independent evaluations, Purchaser's Share in the Loan is either not a security under a federal or state law or, if a security, is exempt from registration or qualification.

**18. NOTIFICATION.** Seller and Purchaser will promptly notify each other should either receive actual notice or knowledge of any loss of Property or change in financial condition of any Obligor under the Loan, which will have a material adverse effect upon continuation of payments under the Loan or its repayment on default. All notices will be sent by first-class mail and sent to the address shown in this Agreement.

**19. DEFAULT AND LIQUIDATION OF LOAN.** Subject to **Paragraph 3 PAYMENTS**, and the "first in, last out" nature of Seller's interest in the Loan, in the event of Default, or if Seller in its sole discretion should otherwise accelerate and liquidate the Loan, all Payments collected and received by Seller will be applied as follows: first, to Expenses; second, to the unpaid principal amount of the Purchaser's portion of the Loan at the time of Default; third, to the respective accrued interest, fees, and other charges due to Purchaser under this Agreement, and Fourth, to Seller. Upon Borrower's Default, all Payments and Borrower Fees received from Borrower, whether designated for repayment of the Loan or undesignated, will be deemed intended for the repayment of the Loan in accordance with this Agreement.

**20. REMOVAL OF SELLER AS ADMINISTRATOR.** The Seller may be removed as the Loan's administrator under the following terms and conditions.

**A. Qualifying Events.** Upon the occurrence of any of the following events, Purchaser may notify Seller and assume the administration of the Loan and related guarantees and security agreements as well as demand any documentation or writings reasonably necessary to evidence proof of Purchaser's security interest and perfection.

**(1)** Seller fails to comply with Seller's fiduciary, contractual or legal obligations as provided under this Agreement or by state or federal law.

**(2)** Seller petitions for or becomes subject to bankruptcy.

**(3)** Seller commits any act of insolvency.

**(4)** Seller is declared insolvent, is taken over, or otherwise closed by a governmental regulatory agency which has jurisdiction over Seller.

**B. Multiple Participants.** In the event of multiple participants in the Loan, the participating lender with the then largest share will have the option to assume administration. If any participant possessing this option does not exercise its right upon the demand of the other participants, the option will then pass to the participant with the next largest share. Unless otherwise agreed, participants possessing equal shares in the Loan will share equally in administration.

**C. Purchaser Rights.** Purchaser will have the right to notify and communicate with all Obligors of the Loan, and to direct them to pay any amounts due under the Loan directly to Purchaser or such other participant assuming administration of the Loan. Seller will join in this notice to Obligor upon request by Purchaser. Unless otherwise agreed, all remaining terms of this Agreement will survive Seller's removal as administrator until Purchaser's Investment is satisfied in full or the Loan is repurchased by Seller as provided in this Agreement.

**D. Loan Repayment.** Upon the occurrence of any of the events in this section, all Payments received from Borrower, whether designated for repayment of the Loan or undesignated, will be deemed intended for the repayment of the Loan in accordance with this Agreement.

**21. ASSIGNMENT.** Neither Purchaser nor Seller may sell, pledge, assign, sub-participate, or otherwise transfer its interest in the Loan, Loan security, Loan guaranty or rights or obligations under this Agreement without the prior written consent of the other party which will not be unreasonably withheld, except that Seller

DocuSign Envelope ID: B99EF064-35F0-463C-8296-994BF308C9AB

may sell other participations in the Loan without Purchaser's consent. The duties and benefits of this Agreement will bind and benefit the permitted successors and assigns of Seller and Purchaser. Upon receipt by Purchaser of a bona fide offer from a third party to purchase, sub-participate or otherwise acquire Purchaser's interest in the Loan, Purchaser will notify Seller of the offer and provide Seller with the right of first refusal. Seller will respond to Purchaser's offer in a timely manner. If Seller elects not to obtain Purchaser's interest, with Seller's consent Purchaser may transfer its interest to such third party.

**22. ATTORNEYS' FEES AND COSTS.** If any lawsuit or proceeding is brought by Seller or Purchaser to enforce the terms of this Agreement, the unsuccessful party will pay the prevailing party all its court costs and reasonable attorneys' fees incurred in bringing or defending such action.

**23. GENERAL PROVISIONS.**

**A. Partnership, Joint Venture, Agency, Trust.** Purchaser and Seller agree that this Agreement is not intended and is not to be construed to create a partnership, joint venture, agency, or trust relationship.

**B. Sale of Percentage.** This Agreement constitutes a sale of a percentage ownership interest in the Loan and is not and shall not be construed as an extension of credit by Purchaser to Seller. If federal or state laws or regulations, or a judicial decision, now or later provides that the purchase of a participation interest is an extension of credit, Purchaser and Seller agree that this Agreement shall constitute a security agreement under the Uniform Commercial Code and hereby grants to Purchaser a security interest in the Loan. Purchaser shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including but not limited to rights upon default. Seller authorizes Purchaser to file one or more financing statements against Seller with respect to the Loan from time to time.

**C. Applicable Law.** This Agreement is governed by the laws of Georgia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**D. Amendment, Integration And Severability.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by Purchaser and Seller. This Agreement is the complete and final expression of the agreement. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**E. Remedies.** Nothing in this Agreement will be construed to limit Purchaser's or Seller's remedies to those described in this Agreement. Purchaser and Seller are allowed all Remedies at law or in equity.

**F. Interpretation.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**G. Confidentiality.** Purchaser acknowledges that all information relating to the Loan is confidential and solely for Purchaser's use. Purchaser agrees not to share it with any other party.

DocuSign Envelope ID: B99EF064-35F0-463C-8296-994BF308C9AB

**SIGNATURES.** By signing, Purchaser and Seller agree to the terms contained in this Agreement. Purchaser also acknowledges receipt of a copy of this Agreement.

**PURCHASER:**

**BAY POINT CAPITAL PARTNERS II, LP**

> **By: Bay Point Advisors, LLC**
> **Its: General Partner**

> > **By:** _Charles Andros_____
> > **Its: Manager**                    (SEAL)

**SELLER:**

**FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company**

**By:** _Brant Frost IV / Manager_ (SEAL)
Brant Frost IV, its Manager

**EXHIBIT "C"**

DocuSign Envelope ID: F94AC950-0C4E-427C-8EAD-EDA33F57C4F5

**LOAN PARTICIPATION AGREEMENT**

**DATE AND PARTIES.** The date of this Loan Participation Agreement (Agreement) is March 31, 2023. The parties and their addresses are:

**ORIGINATING LENDER (Seller):**

**FIRST LIBERTY CAPITAL PARTNERS, LLC**
P. 0. Box 2567
Newnan, GA 30264

**PARTICIPANT (Purchaser):**

**BAY POINT CAPITAL PARTNERS II, LP**
3050 Peachtree Road NW
Suite 740
Atlanta, GA 30305

1. **LOAN BACKGROUND INFORMATION.** A Promissory Note evidencing a Loan from Originating Lender to Borrower was executed in favor of Seller as follows:

| | |
|---|---|
| A. Borrower Name and Address: | **Stone Capital Group, LLC**<br>**315 Serenoa Road, Suite A**<br>**Santa Rosa Beach, FL 32459** |
| B. Date of Loan: | **March 31, 2023** |
| D. Loan Amount: | **Three Million Seven Hundred Fifty and**<br>**00/100 Dollars ($3,750,000.00)** |
| E. Outstanding Principal Balance: | **Three Million Seven Hundred Fifty and**<br>**00/100 Dollars ($3,750,000.00)** |
| F. Due Date: | **March 31, 2024.** |

2. **SALE OF PARTICIPATION.**

a. **Purchase of Participation.** Purchaser agrees to purchase a **$1,400,000.00** participation in the Loan from Seller on the terms and conditions hereinafter stated. This sale is made without recourse to Seller.

b. **Purchaser's Share of Borrower Principal Payments.** Purchaser's percentage of all Principal Payments is **37.33%**.

DocuSign Envelope ID: F94AC950-0C4E-427C-8EAD-EDA33F57C4F5

c.  **Purchaser's Interest Rate.**    Purchaser's Interest Rate shall be **16.0%** per annum.  Borrower is obligated to pay a minimum of six months interest in the event of prepayment before the seventh month of the Loan term.

d.  **Purchaser's Interest in Loan Documents.**  This Agreement includes the sale to Purchaser of a Share in all notes and other instruments evidencing indebtedness of Borrower in the Loan, together with all security interests in the Property securing such indebtedness.  Purchaser and Seller agree that Purchaser will be considered for all purposes the legal and equitable owner of the above Share in the Loan, related documents, and Property and will possess all applicable rights, privileges and remedies, subject to other provisions of this Agreement.

**3. PAYMENTS.** Seller will receive all Payments and apply them to Borrower's account. Payments received by Seller under the Loan will be held for the benefit of Seller and Purchaser until the payments are actually paid to and received by Purchaser.  Seller's contribution to the Loan is "first in, last out" and, in the event of a shortfall in Borrower's payment of any amounts owing under the Note, Seller shall not receive any payment under the Note until the shortage owed to Purchaser is paid. If Seller must refund any part of a Payment that was remitted to Purchaser to Borrower or any other person, Purchaser shall remit to Seller immediately the amount received by Purchaser relating to such refunded Payment.  In addition to the interest payments, Seller will give to Purchaser **2%** of the Loan Fee at closing (**$28,000.00**), and will give to the Purchaser **1%** of the Extension Fee (**$14,000.00**) if the loan is extended.

**4. EXPENSES.** Seller may at its discretion make additional advances for taxes, insurance premiums and other items deemed necessary by Seller to collect, enforce, or protect the Loan and any Property securing the Loan including, but not limited to, attorneys' fees, court costs and disbursements.  Purchaser's share of such expenses is **37.33%**.

**5. BORROWER FEES.**   Borrower Fees shall belong to Seller, except that if Purchaser does not timely receive any payment of interest or principal when due, then Purchaser shall be entitled to receive a pro rata portion of any late fee received by Seller. All Borrower Fees have been or shall be paid to Seller as collected from Borrower. Purchaser shall likewise be entitled to receive its pro rata share of any default interest received by Seller.

**6. ORIGINATION AND ADMINISTRATIVE FEES.**    Seller will bear all costs of administering and servicing the Loan and shall be compensated by the **2%** differential between the **18%** per annum interest rate paid by Borrower to Seller and the **16%** per annum interest rate paid by Seller to Purchaser.

7.  **SECURITY.** The Loan is secured by (i) Guaranty Agreement of Christopher Ridgeway, (ii) Second Liens on residences in Alys Beach, FL and Metairie, LA, (iii) Security Agreement from Borrower conveying security interest in all furniture, fixtures, equipment, inventory, accounts receivable, and other assets as described therein, (iv) Six month interest reserve for Loan from Borrower.

**8. UNRELATED CREDIT OF BORROWER.** If Borrower requests or continues other credit unrelated to the Loan, Seller and Purchaser agree that they will not provide this credit without first obtaining the consent of the other.

**9. DEFINITIONS.** In this Agreement, pertinent terms and their definitions are as follows.

a. **Borrower Fees.** Borrower Fees include, but are not limited to, commitment fees, servicing fees, late charges, prepayment penalties and other similar fees received from Borrower and not defined as a Payment.

DocuSign Envelope ID: F94AC950-0C4E-427C-8EAD-EDA33F57C4F5

**b. Default.** Default includes all definitions of the term used in any Loan Documents and other related instruments evidencing the Borrower's indebtedness.

**c. Loan.** Loan means Borrower's obligation as described in this Agreement and includes, but is not limited to, all extensions, renewals, modifications and re-financings of Borrower's obligation as well as all collateral and assurances of repayment taken in connection with the Loan.

**d. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**e. Obligor.** Obligor includes all borrowers, co-makers, guarantors and endorsers of the Loan.

**f. Payments.** Payments includes principal, interest, and other charges received by Seller with respect to the Loan from whatever source derived including, but not limited to, all sums realized from any endorser, guarantor, or other person liable with respect to the Loan; all sums realized from the exercise by Seller of any rights pursuant to a lien or right of set-off with respect to any deposit balance or other property of the Borrower; any insurance proceeds or casualty awards; and any proceeds from the sale, liquidation, exchange, or substitution of the Property.

**f. Purchaser's Interest Rate.** Purchaser's Interest Rate means the rate specified in this Agreement.

**10. DOCUMENTATION OF LOAN.** Except as required for recording, Seller will hold all documents concerning the Loan, including all security instruments and guaranties, and will maintain records pertaining to the Loan. Purchaser acknowledges receipt of all copies of Loan Documents which Purchaser specifically requested and deemed reasonably necessary to fully evaluate the quality of the Loan before consenting to this Agreement. All Loan Documents are available at Seller's office for Purchaser's inspection and copying at normal lobby hours upon reasonable advance notice and at such other times as Seller may permit. Unless otherwise agreed, Seller will from time to time provide Purchaser with complete and current credit information regarding the following: Loan accrual status; status of principal and interest payments; financial statements; Property values and lien status; and any factual information bearing on the Borrower's continuing credit worthiness.

**11. ADMINISTRATION.**

**a. Loan Servicing.** Seller may administer the Loan and any related security and guaranties as though it were the sole owner and holder thereof. Except as provided below, Seller will make all decisions concerning the servicing of the Loan and any related security and guaranties, acceleration, foreclosure, acquisition of other security or guaranties, deficiency judgments, purchase at foreclosure sales, and administration and disposition of acquired security. Seller will not, without Purchaser's written consent, reduce principal or interest with respect to the Loan or release or allow for the substitution of any Property, outside the normal course of dealing with Borrower so as to substantially reduce the possibility of repayment of the Loan. Seller will not, without Purchaser's written consent, renew, extend or consent to the revision of the provisions of any note or security documents covered or waive any claim against Obligor.

**b. Seller's Duty to Purchaser.** Seller will use the same degree of care in servicing and collecting the Loan as it would for its own accounts. Seller will not be liable to Purchaser for any action taken or omitted or for any error in judgment, except for bad faith or willful misconduct.

**c. Participation Payments.** Seller will remit Purchaser's percentage of the Payments and any shared Borrower Fees not later than the close of the tenth business day following receipt of any Payments or Borrower Fees. If shared, Expenses and Administrative Fees will be charged to and payable by Purchaser from time to time as they are incurred or as otherwise agreed. Unless otherwise agreed, such charges will be deducted from the amount of any Payments or Borrower Fees to be remitted to Purchaser from time to time, but will not exceed the total amount to be remitted to Purchaser at any one time. At Seller's option, and upon reasonable notice to Purchaser, Seller may demand full payment of any outstanding Expenses or

DocuSign Envelope ID: F94AC950-0C4E-427C-8EAD-EDA33F57C4F5

Administrative Fees due Seller. If Seller must refund any part of a Payment that was remitted to Purchaser to Borrower or any other person, Purchaser shall remit to Seller immediately the amount received by Purchaser.

**12. FAILURE TO REMIT PAYMENTS.** If Seller fails to remit amounts received from Borrower that are due and payable to Purchaser as specified in this Agreement then all of the following applies.

    **a. Purchaser's Duty.** Purchaser will not be responsible for any Expenses or Administrative Fees incurred by Seller until all amounts owing Purchaser are paid in full with applicable interest.

    **b. Seller's Penalty.** Seller will pay to Purchaser, in addition to the full amount of any late amounts due and payable to Purchaser, a penalty on the late amounts equal to any penalty specified on the Promissory Note or, if none is specified, the Promissory Note rate.

**13. FUNDING OF THE PARTICIPATION.** Purchaser will pay to Seller on demand (in immediately available funds as agreed to herein) the amount agreed to in this Agreement.

**14. SELLER'S REPRESENTATIONS.** Seller represents that the Borrower is not in default on principal or interest payments; and that the terms of the Loan have not been renegotiated or compromised due to the deteriorating financial condition of Borrower.

**15. PURCHASER'S WARRANTIES.** Purchaser hereby represents and warrants to Seller that at the time Purchaser executes this Agreement, Purchaser has received all authorizations of its manager, members, board of directors, shareholders, stockholders and such other bodies or persons as are necessary to authorize Purchaser's purchase of the agreed upon Share, that such authorization was reflected in the appropriate minutes thereof and continues to be an official record of Purchaser, and that Purchaser has the financial ability to perform its obligations under this Agreement.

**16. LIABILITY AND DISCLAIMER OF WARRANTIES.** Purchaser acknowledges that it has made an independent investigation of the Loan, and has satisfied itself with respect to the credit standing of any Obligor of the Loan, the value of any security for the Loan, the validity and enforceability of the Loan agreement, the Promissory Note and any guaranty and security and all other matters in connection with the Loan. Purchaser acknowledges that it is not relying upon Seller's judgment, and that Seller has made no warranty of any kind, express or implied, in connection with the Loan or any of the foregoing. Unless otherwise agreed, Seller makes no warranties or representations regarding the legality, perfection, enforceability, or priority of any security interests, mortgages, guaranties, or similar documents issued in connection with the Loan. Purchaser agrees to share the risks of collection of the Loan and of the adequacy of the Property in proportion to Purchaser's Share. Purchaser releases Seller from any liability under state or federal securities laws arising from the failure of Seller to register the Purchaser's Share in the Loan. Purchaser and Seller acknowledge that based on their independent evaluations, Purchaser's Share in the Loan is either not a security under a federal or state law or, if a security, is exempt from registration or qualification.

**17. NOTIFICATION.** Seller and Purchaser will promptly notify each other should either receive actual notice or knowledge of any loss of Property or change in financial condition of any Obligor under the Loan, which will have a material adverse effect upon continuation of payments under the Loan or its repayment on default. All notices will be sent by first-class mail and sent to the address shown in this Agreement.

**18. DEFAULT AND LIQUIDATION OF LOAN.** Subject to **Paragraph 3 PAYMENTS,** and the "first in, last out" nature of Seller's interest in the Loan, in the event of Default, or if Seller in its sole discretion should otherwise accelerate and liquidate the Loan, all Payments collected and received by Seller will be applied ratably as follows: first, to Expenses; second, to the unpaid principal amount of the Loan in proportion to the respective unpaid investments of Seller and Purchaser in the Loan at the time of Default; and third, to the respective accrued interest and other charges of Seller and Purchaser. Upon Borrower's Default, all Payments and Borrower Fees received from Borrower, whether designated for repayment of the Loan or undesignated, will be deemed intended for the repayment of the Loan in accordance with this Agreement.

**19. REMOVAL OF SELLER AS ADMINISTRATOR.** The Seller may be removed as the Loan's administrator under the following terms and conditions.

**a. Qualifying Events.** Upon the occurrence of any of the following events, Purchaser may notify Seller and assume the administration of the Loan and related guarantees and security agreements as well as demand any documentation or writings reasonably necessary to evidence proof of Purchaser's security interest and perfection.

> i.Seller fails to comply with Seller's fiduciary, contractual or legal obligations as provided under this Agreement or by state or federal law.

ii.    Seller petitions for or becomes subject to bankruptcy.

iii.   Seller commits any act of insolvency.

iv.    Seller is declared insolvent, is taken over, or otherwise closed by a governmental regulatory agency which has jurisdiction over Seller.

**b. Multiple Participants.** In the event of multiple participants in the Loan, the participating lender with the then largest share will have the option to assume administration. If any participant possessing this option does not exercise its right upon the demand of the other participants, the option will then pass to the participant with the next largest share. Unless otherwise agreed, participants possessing equal shares in the Loan will share equally in administration.

**c. Purchaser Rights.** Purchaser will have the right to notify and communicate with all Obligors of the Loan, and to direct them to pay any amounts due under the Loan directly to Purchaser or such other participant assuming administration of the Loan. Seller will join in this notice to Obligor upon request by Purchaser. Unless otherwise agreed, all remaining terms of this Agreement will survive Seller's removal as administrator until Purchaser's Investment is satisfied in full or the Loan is repurchased by Seller as provided in this Agreement.

**d. Loan Repayment.** Upon the occurrence of any of the events in this section, all Payments received from Borrower, whether designated for repayment of the Loan or undesignated, will be deemed intended for the repayment of the Loan in accordance with this Agreement.

**20. ASSIGNMENT.** Neither Purchaser nor Seller may sell, pledge, assign, sub-participate, or otherwise transfer its interest in the Loan, Loan security, Loan guaranty or rights or obligations under this Agreement without the prior written consent of the other party which will not be unreasonably withheld, except that Seller may sell other participations in the Loan without Purchaser's consent. The duties and benefits of this Agreement will bind and benefit the permitted successors and assigns of Seller and Purchaser. Upon receipt by Purchaser of a bona fide offer from a third party to purchase, sub-participate or otherwise acquire Purchaser's interest in the Loan, Purchaser will notify Seller of the offer and provide Seller with the right of first refusal. Seller will respond to Purchaser's offer in a timely manner. If Seller elects not to obtain Purchaser's interest, with Seller's consent Purchaser may transfer its interest to such third party.

DocuSign Envelope ID: F94AC950-0C4E-427C-8EAD-EDA33F57C4F5

**21. ATTORNEYS' FEES AND COSTS.** If any lawsuit or proceeding is brought by Seller or Purchaser to enforce the terms of this Agreement, the unsuccessful party will pay the prevailing party all its court costs and reasonable attorneys' fees incurred in bringing or defending such action.

**22. GENERAL PROVISIONS.**

**a. Partnership, Joint Venture, Agency, Trust.** Purchaser and Seller agree that this Agreement is not intended and is not to be construed to create a partnership, joint venture, agency, or trust relationship.

**b. Sale of Percentage.** This Agreement constitutes a sale of a percentage ownership interest in the Loan and is not and shall not be construed as an extension of credit by Purchaser to Seller. If federal or state laws or regulations, or a judicial decision, now or later provides that the purchase of a participation interest is an extension of credit, Purchaser and Seller agree that this Agreement shall constitute a security agreement under the Uniform Commercial Code and hereby grants to Purchaser a security interest in the Loan. Purchaser shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including but not limited to rights upon default. Seller authorizes Purchaser to file one or more financing statements against Seller with respect to the Loan from time to time.

**c. Applicable Law.** This Agreement is governed by the laws of Georgia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**d. Amendment, Integration And Severability.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by Purchaser and Seller. This Agreement is the complete and final expression of the agreement. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**e. Remedies.** Nothing in this Agreement will be construed to limit Purchaser's or Seller's remedies to those described in this Agreement. Purchaser and Seller are allowed all Remedies at law or in equity.

**f. Interpretation.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**g. Confidentiality.** Purchaser acknowledges that all information relating to the Loan is confidential and solely for Purchaser's use. Purchaser agrees not to share it with any other party.

**SIGNATURES.** By signing, Purchaser and Seller agree to the terms contained in this Agreement. Purchaser also acknowledges receipt of a copy of this Agreement.

PURCHASER:

BAY POINT CAPITAL PARTNERS II, LP

**Bay Point Advisors, LLC**
**It's: General Partner**

By: *Charles Andros* _____ (SEAL)
It's Manager

DocuSign Envelope ID: F94AC950-0C4E-427C-8EAD-EDA33F57C4F5

**SELLER:**

**FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company**

By: _____ (SEAL)

Brant Frost IV, its Manager

**EXHIBIT "D"**

Docusign Envelope ID: E5C06AAC-95EB-4E34-A848-A5DDCA1E4A30

# LAW OFFICES OF JOHN F. ISBELL LLC
## 3050 Peachtree Road NW, Suite 740
## Atlanta, Georgia 30305
## (404) 849-6665
## John@JFI-LAW.com

July 1, 2025

### VIA FEDERAL EXPRESS and EMAIL

First Liberty Capital Partners, LLC          Joshua Mayes, Esq.
P.O. Box 2567                                The Robbins Firm
Newnan, Georgia 30263                        500 14th Street, NW
Attn: Brant Frost, IV                        Atlanta, GA 30318
                                             jmayes@robbinsfirm.com

Re:    **NOTICE OF DEFAULT; REMOVAL OF SELLER AS ADMINISTRATOR**; that
       certain Participation Agreement dated December 19, 2022 ("Participation Agreement"), by
       and between First Liberty Capital Partners, LLC ("Seller") and Bay Point Capital Partners
       II, LP ("Purchaser") concerning a loan to 2406 Cancer Care, LLC, dated December 19,
       2022 (the "Loan");

Dear Mr. Frost:

       I represent Purchaser with respect to the Participation Agreement. We have been informed
that Seller has ceased all operations, is under investigation by the Securities and Exchange
Commission, and will not be forwarding to Seller any payments received on account of or
pursuant to the Loan or the documents memorializing the Loan.

       Pursuant to Paragraph 20 of the Participation Agreement, Purchaser is authorized to
"notify Seller and assume administration of the Loan and related guarantees and security
agreements" if any of the following occurs:

       (1)    Seller fails to comply with Seller's fiduciary, contractual, or legal
              obligations as provided under this Agreement or by state or federal law;
       (2)    Seller petitions for or becomes subject to bankruptcy;
       (3)    Seller commits any act of insolvency; or
       (4)    Seller is declared insolvent, is taken over, or otherwise closed by a
              governmental regulatory agency which has jurisdiction over Seller.

       On account of the circumstances summarized above, Participant is authorized to remove
Seller as the administrator of the Loan. **Participant hereby elects to remove Seller as the
administrator of the Loan. Pursuant to Paragraph 20(C) of the Participation Agreement,
Participant will inform all parties to the Loan of its election and will assume administration
of the Loan immediately.**

Docusign Envelope ID: E5C06AAC-95EB-4E34-A848-A5DDCA1E4A30

Pursuant to Paragraph 20 of the Participation Agreement, Participant demands all documents and writings related to the Loan, including without limitation the documents memorializing the loan, all security agreements, all documents perfecting the security interest in the Loan, communications with the parties to the Loan, and a payment history for the Loan. Further, Participant demands that Seller immediately forward to Participant all amounts received on account of the Loan for application in accordance with the terms of the Participation Agreement and demands that any monies received on account of the Loan from the date hereof be immediately forwarded to Participant.

This letter does not constitute a waiver of, nor shall it be construed to waive or otherwise prejudice in any respect, Lender's rights to exercise any rights or remedies that may be available to it under the Participation Agreement, any other agreement, at law, or in equity. Participant reserves all rights.

Sincerely,

John Isbell

John F. Isbell

cc:  Charles Andros

EXHIBIT "E"

Docusign Envelope ID: E5C08AAC-95EB-4E34-A848-A5DDCA1E4A30

# LAW OFFICES OF JOHN F. ISBELL LLC
## 3050 Peachtree Road NW, Suite 740
## Atlanta, Georgia 30305
## (404) 849-6665
## [John@JFI-LAW.com](mailto:John@JFI-LAW.com)

July 1, 2025

**VIA FEDERAL EXPRESS and EMAIL**

First Liberty Capital Partners, LLC    Joshua Mayes, Esq.
P.O. Box 2567    The Robbins Firm
Newnan, Georgia 30263    500 14th Street, NW
Attn: Brant Frost, IV    Atlanta, GA 30318
    jmayes@robbinsfirm.com

Re:    **NOTICE OF DEFAULT; REMOVAL OF SELLER AS ADMINISTRATOR**; that certain Participation Agreement dated February 10, 2023 ("Participation Agreement"), by and between First Liberty Capital Partners, LLC ("Seller") and Bay Point Capital Partners II, LP ("Purchaser") concerning a loan to Full Circle, LLC, dated February 10, 2023 (the "Loan");

Dear Mr. Frost:

I represent Purchaser with respect to the Participation Agreement. We have been informed that Seller has ceased all operations, is under investigation by the Securities and Exchange Commission, and will not be forwarding to Seller any payments received on account of or pursuant to the Loan or the documents memorializing the Loan.

Pursuant to Paragraph 20 of the Participation Agreement, Purchaser is authorized to "notify Seller and assume administration of the Loan and related guarantees and security agreements" if any of the following occurs:

(1)    Seller fails to comply with Seller's fiduciary, contractual, or legal obligations as provided under this Agreement or by state or federal law;
(2)    Seller petitions for or becomes subject to bankruptcy;
(3)    Seller commits any act of insolvency; or
(4)    Seller is declared insolvent, is taken over, or otherwise closed by a governmental regulatory agency which has jurisdiction over Seller.

On account of the circumstances summarized above, Participant is authorized to remove Seller as the administrator of the Loan. **Participant hereby elects to remove Seller as the administrator of the Loan. Pursuant to Paragraph 20(C) of the Participation Agreement, Participant will inform all parties to the Loan of its election and will assume administration of the Loan immediately.**

Docusign Envelope ID: E5C06AAC-95EB-4E34-A848-A5DDCA1E4A30

Pursuant to Paragraph 20 of the Participation Agreement, Participant demands all documents and writings related to the Loan, including without limitation the documents memorializing the loan, all security agreements, all documents perfecting the security interest in the Loan, communications with the parties to the Loan, and a payment history for the Loan. Further, Participant demands that Seller immediately forward to Participant all amounts received on account of the Loan for application in accordance with the terms of the Participation Agreement and demands that any monies received on account of the Loan from the date hereof be immediately forwarded to Participant.

This letter does not constitute a waiver of, nor shall it be construed to waive or otherwise prejudice in any respect, Lender's rights to exercise any rights or remedies that may be available to it under the Participation Agreement, any other agreement, at law, or in equity. Participant reserves all rights.

Sincerely,

John F. Isbell

cc:  Charles Andros

2

EXHIBIT "F"

Docusign Envelope ID: E5C06AAC-95EB-4E34-A848-A5DDCA1E4A30

# LAW OFFICES OF JOHN F. ISBELL LLC
## 3050 Peachtree Road NW, Suite 740
## Atlanta, Georgia 30305
## (404) 849-6665
## John@JFI-LAW.com

July 1, 2025

### VIA FEDERAL EXPRESS and EMAIL

First Liberty Capital Partners, LLC          Joshua Mayes, Esq.
P.O. Box 2567                                The Robbins Firm
Newnan, Georgia 30263                        500 14th Street, NW
Attn: Brant Frost, IV                        Atlanta, GA 30318
                                             jmayes@robbinsfirm.com

Re:    **NOTICE OF DEFAULT; REMOVAL OF SELLER AS ADMINISTRATOR**; that
       certain Participation Agreement dated March 31, 2023 ("Participation Agreement"), by and
       between First Liberty Capital Partners, LLC ("Seller") and Bay Point Capital Partners II,
       LP ("Purchaser") concerning a loan to Stone Capital Group, LLC, dated March 31, 2023
       (the "Loan");

Dear Mr. Frost:

       I represent Purchaser with respect to the Participation Agreement. We have been informed
that Seller has ceased all operations, is under investigation by the Securities and Exchange
Commission, and will not be forwarding to Seller any payments received on account of or
pursuant to the Loan or the documents memorializing the Loan.

       Pursuant to Paragraph 19 of the Participation Agreement, Purchaser is authorized to
"notify Seller and assume administration of the Loan and related guarantees and security
agreements" if any of the following occurs:

          (1)   Seller fails to comply with Seller's fiduciary, contractual, or legal
                obligations as provided under this Agreement or by state or federal law;
          (2)   Seller petitions for or becomes subject to bankruptcy;
          (3)   Seller commits any act of insolvency; or
          (4)   Seller is declared insolvent, is taken over, or otherwise closed by a
                governmental regulatory agency which has jurisdiction over Seller.

       On account of the circumstances summarized above, Participant is authorized to remove
Seller as the administrator of the Loan. **Participant hereby elects to remove Seller as the
administrator of the Loan. Pursuant to Paragraph 19(C) of the Participation Agreement,
Participant will inform all parties to the Loan of its election and will assume administration
of the Loan immediately.**

Docusign Envelope ID: E5C06AAC-95EB-4E34-A848-A5DDCA1E4A30

Pursuant to Paragraph 19 of the Participation Agreement, Participant demands all documents and writings related to the Loan, including without limitation the documents memorializing the loan, all security agreements, all documents perfecting the security interest in the Loan, communications with the parties to the Loan, and a payment history for the Loan. Further, Participant demands that Seller immediately forward to Participant all amounts received on account of the Loan for application in accordance with the terms of the Participation Agreement and demands that any monies received on account of the Loan from the date hereof be immediately forwarded to Participant.

This letter does not constitute a waiver of, nor shall it be construed to waive or otherwise prejudice in any respect, Lender's rights to exercise any rights or remedies that may be available to it under the Participation Agreement, any other agreement, at law, or in equity. Participant reserves all rights.

Sincerely,

John Isbell

John F. Isbell

cc:  Charles Andros

2

EXHIBIT "G"

Docusign Envelope ID: 37EAE73F-54FE-409E-87FD-6C37247172F0



**BAY POINT**

July 2, 2025

**Via FedEx and Email**

2406 Cancer Care, LLC
159 The Prado
Atlanta, Georgia 30309
Attn: Erich Randolph

Re:    That certain loan ("**Loan**") between First Liberty Capital Partners, LLC ("**Lender**") and
       2406 Cancer Care, LLC ("**Borrower**"); that certain Promissory Note executed by
       Borrower in favor of Lender on December 19, 2022, in the original principal amount of
       $6,500,000.00 (the "**Note**"); that certain Security Agreement  dated December 19, 2022,
       and executed by Borrower in favor of Lender ("**Security Agreement**" and with the Note
       and all other related loan documents, the "**Loan Documents**"); that certain Participation
       Agreement dated December 19, 2022 ("**Participation Agreement**"), by and between
       Lender and Bay Point Capital Partners II, LP ("**Purchaser**").

Dear Mr. Randolph:

Pursuant to the Participation Agreement, Purchaser purchased from Lender a portion of the Loan,
and subject to certain conditions, Lender remained the administrator of the Loan.   A copy of the
Participation Agreement is attached hereto as Exhibit A, for your reference.

Pursuant to the terms of the Participation Agreement, Lender may be removed as the administrator
of the Loan upon the conditions set forth in Paragraph 20 hereof.  Borrower is hereby advised that,
as is set forth in the correspondence attached hereto as Exhibit B, those conditions have occurred,
and Purchaser has exercised its right to become administrator of the Loan.

Please direct all future correspondence regarding the Loan to Purchaser.  Please also direct all
payments required to be made under the Loan Documents to Purchaser, in accordance with the
terms of the Participation Agreement, to the below address.  If you wish to pay by wire transfer or
otherwise have questions, please contact Kevin Brawner at 404-963-6031.

                          Sincerely,

                          **BAY POINT CAPITAL PARTNERS II, LP**

                          By:  BAY POINT ADVISORS, LLC, its General
                          Partner
                          ⎡Signed by:
                          By: _⎣_charles andros_____
                                          AEE31A8C84EB43C...
                          Name: Charles Andros
                          Title: Manager

Docusign Envelope ID: 37EAE73F-54FE-409E-87FD-6C37247172F0

cc:    2406 Cancer Care, LLC
12252 Styron Drive
Hampton, Georgia 30228
Attn:  Milton Jones
miltondjonesatty@gmail.com

Joshua Mayes, Esq.
The Robbins Firm
500 14th Street, NW
Atlanta, GA 30318
jmayes@robbinsfirm.com

# Exhibit A

DocuSign Envelope ID: 84C82B77-27F3-4A23-8925-E3954D2A728A

## LOAN PARTICIPATION AGREEMENT

**DATE AND PARTIES.** The date of this Loan Participation Agreement (Agreement) is December 19, 2022. The parties and their addresses are:

**ORIGINATING LENDER (Seller):**

> **FIRST LIBERTY CAPITAL PARTNERS, LLC**
> **P. O. Box 2567**
> **Newnan, GA 30263**

**PARTICIPANT (Purchaser):**

> **BAY POINT CAPITAL PARTNERS II, LP**
> **3050 Peachtree Road NW**
> **Suite 740**
> **Atlanta, GA 30305**

**1. LOAN BACKGROUND INFORMATION.** A Promissory Note evidencing a Loan from Originating Lender to Borrower was executed in favor of Seller as follows:

| | |
|---|---|
| **A. Borrower Name and Address:** | **2406 CANCER CARE, LLC a Delaware limited liability company** |
| **B. Date of Loan:** | December 19, 2022 |
| **D. Loan Amount:** | **Six Million Five Hundred Thousand Dollars ($6,500,000.00)** |
| **E. Outstanding Principal Balance:** | **Six Million Five Hundred Thousand Dollars ($6,500,000.00)** |
| **F. Due Date:** | **December 18, 2023, subject to six month extension as provided in the Promissory Note.** |

## 2. SALE OF PARTICIPATION.

**A. Purchase of Participation.** Purchaser agrees to purchase a **Three Million Dollar ($3,000,000.00)** participation in the Loan from Seller on the terms and conditions hereinafter stated. This sale is made without recourse to Seller.

**B. Purchaser's Share of Borrower Principal Payments.** Purchaser's percentage of all Principal Payments is **46.15%**.

DocuSign Envelope ID: 84C82B77-27F3-4A23-8925-E3954D2A728A

**C. Purchaser's Interest Rate.**    Purchaser's Interest Rate shall be **16.0%** per annum, paid monthly, plus annualized interest in the amount of 9% paid upon maturity of the Loan, its refinance, default or acceleration.

**D. Purchaser's Interest in Loan Documents.** This Agreement includes the sale to Purchaser of a Share in all notes and other instruments evidencing indebtedness of Borrower in the Loan, together with all security interests in the Property securing such indebtedness. Purchaser and Seller agree that Purchaser will be considered for all purposes the legal and equitable owner of the above Share in the Loan, related documents, and Property and will possess all applicable rights, privileges and remedies, subject to other provisions of this Agreement.

**3. PAYMENTS.** Seller will receive all Payments and apply them to Borrower's account. Payments received by Seller under the Loan will be held for the benefit of Seller and Purchaser until the payments are actually paid to and received by Purchaser. Seller's contribution to the Loan is "first in, last out" and, in the event of a shortfall in Borrower's payment of any amounts owing under the Note, Seller shall not receive any payment under the Note until the shortage owed to Purchaser is paid. If Seller must refund any part of a Payment that was remitted to Purchaser to Borrower or any other person, Purchaser shall remit to Seller immediately the amount received by Purchaser relating to such refunded Payment.

**4. EXPENSES.** Seller may at its discretion make additional advances for taxes, insurance premiums and other items deemed necessary by Seller to collect, enforce, or protect the Loan and any Property securing the Loan including, but not limited to, attorneys' fees, court costs and disbursements.    Purchaser's share of such expenses is **46.15%.**

**5. BORROWER FEES.**    Borrower Fees shall belong to Seller, except that if Purchaser does not timely receive any payment of interest or principal when due, then Purchaser shall be entitled to receive a pro rata portion of any late fee received by Seller. All Borrower Fees have been or shall be paid to Seller as collected from Borrower.  Purchaser shall likewise be entitled to receive its pro rata share of any default interest received by Seller.

**6. ORIGINATION AND ADMINISTRATIVE FEES.**    Seller   will   bear   all   costs   of   origination, administering and servicing the Loan and shall be compensated by the **2%** differential between the **18%** per annum interest rate paid by Borrower to Seller and the **16%** per annum interest rate paid to by Seller to Purchaser.

**7. SECURITY.** The Loan is secured by the Guaranty Agreements of Erich G. Randolph, Aaron O. Williams and Phillip E. Miles and the following Property, all of which is evidenced by security agreements, and/or other instruments in favor of Seller. Dr. Randolph's liability under his Guaranty is limited to a maximum of $1,000,000.00. A    security interest in the Property is assigned and sold to Purchaser, subject to other provisions within this Agreement, in proportion to Purchaser's Investment and is held by Seller for the benefit of Purchaser. Upon full payment of Purchaser's Investment plus interest thereon the security interest given to Purchaser will be null and void.

Property description: See Exhibit A attached hereto and incorporated herein by this reference.

**8. UNRELATED CREDIT OF BORROWER.** If Borrower requests or continues other credit unrelated to the Loan, Seller and Purchaser agree that they will not provide this credit without first obtaining the consent of the other.

**9. DEFINITIONS.** In this Agreement, pertinent terms and their definitions are as follows.

**A. Borrower Fees.** Borrower Fees include, but are not limited to, commitment fees, servicing fees, late charges, prepayment penalties and other similar fees received from Borrower and not defined as a Payment.

**B. Default.** Default includes all definitions of the term used in any Loan Documents and other related instruments evidencing the Borrower's indebtedness.

**C. Loan.** Loan means Borrower's obligation as described in this Agreement and includes, but is not limited to, all extensions, renewals, modifications and re-financings of Borrower's obligation as well as all collateral and assurances of repayment taken in connection with the Loan.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Obligor.** Obligor includes all borrowers, co-makers, guarantors and endorsers of the Loan.

**F. Payments.** Payments includes principal, interest, and other charges received by Seller with respect to the Loan from whatever source derived including, but not limited to, all sums realized from any endorser, guarantor, or other person liable with respect to the Loan; all sums realized from the exercise by Seller of any rights pursuant to a lien or right of set-off with respect to any deposit balance or other property of the Borrower; any insurance proceeds or casualty awards; and any proceeds from the sale, liquidation, exchange, or substitution of the Property.

**G. Purchaser's Interest Rate.** Purchaser's Interest Rate means the rate specified in this Agreement.

**10. DOCUMENTATION OF LOAN.** Except as required for recording, Seller will hold all writings concerning the Loan, including all security instruments and guaranties, and will maintain records pertaining to the Loan. Purchaser acknowledges receipt of all copies of Loan Documents which Purchaser specifically requested and deemed reasonably necessary to fully evaluate the quality of the Loan before consenting to this Agreement. All Loan Documents are available at Seller's office for Purchaser's inspection and copying at normal lobby hours upon reasonable advance notice and at such other times as Seller may permit. Unless otherwise agreed, Seller will from time to time provide Purchaser with complete and current credit information regarding the following: Loan accrual status; status of principal and interest payments; financial statements, Property values and lien status; and any factual information bearing on the Borrower's continuing credit worthiness.

**11. INTENTIONALLY OMITTED.**

**12. ADMINISTRATION.**

**A. Loan Servicing.** Seller may administer the Loan and any related security and guaranties as though it were the sole owner and holder thereof. Except as provided below, Seller will make all decisions concerning the servicing of the Loan and any related security and guaranties, acceleration, foreclosure, acquisition of other security or guaranties, deficiency judgments, purchase at foreclosure sales, and administration and disposition of acquired security. Seller will not, without Purchaser's written consent, reduce principal or interest with respect to the Loan or release or allow for the substitution of any Property, outside the normal course of dealing with Borrower so as to substantially reduce the possibility of repayment of the Loan. Seller will not, without Purchaser's written consent, renew, extend or consent to the revision of the provisions of any note or security documents covered or waive any claim against Obligor.

DocuSign Envelope ID: 84C82B77-27F3-4A23-8925-E3954D2A728A

**B. Seller's Duty to Purchaser.** Seller will use the same degree of care in servicing and collecting the Loan as it would for its own accounts. Seller will not be liable to Purchaser for any action taken or omitted or for any error in judgment, except for bad faith or willful misconduct.

**C. Participation Payments.** Seller will remit Purchaser's percentage of the Payments and any shared Borrower Fees not later than the close of the tenth business day following receipt of any Payments or Borrower Fees. If shared, Expenses and Administrative Fees will be charged to and payable by Purchaser from time to time as they are incurred or as otherwise agreed. Unless otherwise agreed, such charges will be deducted from the amount of any Payments or Borrower Fees to be remitted to Purchaser from time to time, but will not exceed the total amount to be remitted to Purchaser at any one time. At Seller's option, and upon reasonable notice to Purchaser, Seller may demand full payment of any outstanding Expenses or Administrative Fees due Seller. If Seller must refund any part of a Payment that was remitted to Purchaser to Borrower or any other person, Purchaser shall remit to Seller immediately the amount received by Purchaser.

**13. FAILURE TO REMIT PAYMENTS.** If Seller fails to remit amounts received from Borrower that are due and payable to Purchaser as specified in this Agreement then all of the following applies.

**A. Purchaser's Duty.** Purchaser will not be responsible for any Expenses or Administrative Fees incurred by Seller until all amounts owing Purchaser are paid in full with applicable interest.

**B. Seller's Penalty.** Seller will pay to Purchaser, in addition to the full amount of any late amounts due and payable to Purchaser, a penalty on the late amounts equal to any penalty specified on the Promissory Note or, if none is specified, the Promissory Note rate.

**14. FUNDING OF THE PARTICIPATION.** Purchaser will pay to Seller on demand (in immediately available funds as agreed to herein) the amount agreed to in this Agreement.

**15. SELLER'S REPRESENTATIONS.** Seller represents that the Borrower is not in default on principal or interest payments; and that the terms of the Loan have not been renegotiated or compromised due to the deteriorating financial condition of Borrower.

**16. PURCHASER'S WARRANTIES.** Purchaser hereby represents and warrants to Seller that at the time Purchaser executes this Agreement, Purchaser has received all authorizations of its manager, members, board of directors, shareholders, stockholders and such other bodies or persons as are necessary to authorize Purchaser's purchase of the agreed upon Share, that such authorization was reflected in the appropriate minutes thereof and continues to be an official record of Purchaser, and that Purchaser has the financial ability to perform its obligations under this Agreement.

**17. LIABILITY AND DISCLAIMER OF WARRANTIES.** Purchaser acknowledges that it has made an independent investigation of the Loan, and has satisfied itself with respect to the credit standing of any Obligor of the Loan, the value of any security for the Loan, the validity and enforceability of the Loan agreement, the Promissory Note and any guaranty and security and all other matters in connection with the Loan. Purchaser acknowledges that it is not relying upon Seller's judgment, and that Seller has made no warranty of any kind, express or implied, in connection with the Loan or any of the foregoing. Unless otherwise agreed, Seller makes no warranties or representations regarding the legality, perfection, enforceability, or priority of any security interests, mortgages, guaranties, or similar documents issued in connection with the Loan. Purchaser agrees to share the risks of collection of the Loan and of the adequacy of the Property in proportion to Purchaser's Share. Purchaser releases Seller from any liability under state or federal securities laws arising from the failure of Seller to register the Purchaser's Share in the Loan.

Purchaser and Seller acknowledge that based on their independent evaluations, Purchaser's Share in the Loan is either not a security under a federal or state law or, if a security, is exempt from registration or qualification.

**18. NOTIFICATION.** Seller and Purchaser will promptly notify each other should either receive actual notice or knowledge of any loss of Property or change in financial condition of any Obligor under the Loan, which will have a material adverse effect upon continuation of payments under the Loan or its repayment on default. All notices will be sent by first-class mail and sent to the address shown in this Agreement.

**19. DEFAULT AND LIQUIDATION OF LOAN.** Subject to **Paragraph 3 PAYMENTS**, and the "first in, last out" nature of Seller's interest in the Loan, in the event of Default, or if Seller in its sole discretion should otherwise accelerate and liquidate the Loan, all Payments collected and received by Seller will be applied as follows: first, to Expenses; second, to the unpaid principal amount of the Purchaser's portion of the Loan at the time of Default; third, to the respective accrued interest, fees, and other charges due to Purchaser under this Agreement, and Fourth, to Seller. Upon Borrower's Default, all Payments and Borrower Fees received from Borrower, whether designated for repayment of the Loan or undesignated, will be deemed intended for the repayment of the Loan in accordance with this Agreement.

**20. REMOVAL OF SELLER AS ADMINISTRATOR.** The Seller may be removed as the Loan's administrator under the following terms and conditions.

**A. Qualifying Events.** Upon the occurrence of any of the following events, Purchaser may notify Seller and assume the administration of the Loan and related guarantees and security agreements as well as demand any documentation or writings reasonably necessary to evidence proof of Purchaser's security interest and perfection.

(1) Seller fails to comply with Seller's fiduciary, contractual or legal obligations as provided under this Agreement or by state or federal law.

(2) Seller petitions for or becomes subject to bankruptcy.

(3) Seller commits any act of insolvency.

(4) Seller is declared insolvent, is taken over, or otherwise closed by a governmental regulatory agency which has jurisdiction over Seller.

**B. Multiple Participants.** In the event of multiple participants in the Loan, the participating lender with the then largest share will have the option to assume administration. If any participant possessing this option does not exercise its right upon the demand of the other participants, the option will then pass to the participant with the next largest share. Unless otherwise agreed, participants possessing equal shares in the Loan will share equally in administration.

**C. Purchaser Rights.** Purchaser will have the right to notify and communicate with all Obligors of the Loan, and to direct them to pay any amounts due under the Loan directly to Purchaser or such other participant assuming administration of the Loan. Seller will join in this notice to Obligor upon request by Purchaser. Unless otherwise agreed, all remaining terms of this Agreement will survive Seller's removal as administrator until Purchaser's Investment is satisfied in full or the Loan is repurchased by Seller as provided in this Agreement.

**D. Loan Repayment.** Upon the occurrence of any of the events in this section, all Payments received from Borrower, whether designated for repayment of the Loan or undesignated, will be deemed intended for the repayment of the Loan in accordance with this Agreement.

**21. ASSIGNMENT.** Neither Purchaser nor Seller may sell, pledge, assign, sub-participate, or otherwise transfer its interest in the Loan, Loan security, Loan guaranty or rights or obligations under this Agreement without the prior written consent of the other party which will not be unreasonably withheld, except that Seller

may sell other participations in the Loan without Purchaser's consent. The duties and benefits of this Agreement will bind and benefit the permitted successors and assigns of Seller and Purchaser. Upon receipt by Purchaser of a bona fide offer from a third party to purchase, sub-participate or otherwise acquire Purchaser's interest in the Loan, Purchaser will notify Seller of the offer and provide Seller with the right of first refusal. Seller will respond to Purchaser's offer in a timely manner. If Seller elects not to obtain Purchaser's interest, with Seller's consent Purchaser may transfer its interest to such third party.

**22. ATTORNEYS' FEES AND COSTS.** If any lawsuit or proceeding is brought by Seller or Purchaser to enforce the terms of this Agreement, the unsuccessful party will pay the prevailing party all its court costs and reasonable attorneys' fees incurred in bringing or defending such action.

### 23. GENERAL PROVISIONS.

**A. Partnership, Joint Venture, Agency, Trust.** Purchaser and Seller agree that this Agreement is not intended and is not to be construed to create a partnership, joint venture, agency, or trust relationship.

**B. Sale of Percentage.** This Agreement constitutes a sale of a percentage ownership interest in the Loan and is not and shall not be construed as an extension of credit by Purchaser to Seller. If federal or state laws or regulations, or a judicial decision, now or later provides that the purchase of a participation interest is an extension of credit, Purchaser and Seller agree that this Agreement shall constitute a security agreement under the Uniform Commercial Code and hereby grants to Purchaser a security interest in the Loan. Purchaser shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including but not limited to rights upon default. Seller authorizes Purchaser to file one or more financing statements against Seller with respect to the Loan from time to time.

**C. Applicable Law.** This Agreement is governed by the laws of Georgia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**D. Amendment, Integration And Severability.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by Purchaser and Seller. This Agreement is the complete and final expression of the agreement. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**E. Remedies.** Nothing in this Agreement will be construed to limit Purchaser's or Seller's remedies to those described in this Agreement. Purchaser and Seller are allowed all Remedies at law or in equity.

**F. Interpretation.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**G. Confidentiality.** Purchaser acknowledges that all information relating to the Loan is confidential and solely for Purchaser's use. Purchaser agrees not to share it with any other party.

DocuSign Envelope ID: 84C82B77-27F3-4A23-8925-E3954D2A728A

**SIGNATURES.** By signing, Purchaser and Seller agree to the terms contained in this Agreement. Purchaser also acknowledges receipt of a copy of this Agreement.

**PURCHASER:**

**BAY POINT CAPITAL PARTNERS II, LP**

By:   **Bay Point Advisors, LLC**
      **Its: General Partner**

        By: _Charles Andros_

        Its: Manager                          (SEAL)

**SELLER:**

      **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company**

By: _____ (SEAL)
      **Brant Frost IV, its Manager**

DocuSign Envelope ID: 84C82B77-27F3-4A23-8925-E3954D2A728A

## EXHIBIT "A"

All assets, properties and rights of the Debtor, of every type and description, whether real, personal or mixed, tangible or intangible, and wherever located, including but not limited to all furniture, fixtures and equipment, machinery, inventory, disposables, consumables, office and other supplies, replacement and component parts, accounts, accounts receivable and other assets, documents, general intangibles, now existing or hereafter acquired, replacements and proceeds of the foregoing, which assets include but are not limited to, the following:

2009 refurbished in 2019 Elekta Linear Accelerator, 6/10 MV, Agility MLC, LCS Integrity 3.2, iViewGT, XVI, VMAT, Precise table.

2017 Elekta Infinity Dual Modality Digital accelerator with integrated mulit leaf colinator, with 3D Conformal Radiotherapy IMRT VMAT XVI.

GE 2014 refurbished in 2019 LightSpeed RT Wide Board 16 Slice CT, Serial #1560HMI,

HDR Equipment for Brachytherapy

together with: (i) all proceeds of the foregoing, including, without limitation, all cash, checks, drafts, accounts receivable, chattel paper, leases and instruments received by Debtor in connection with any sale, lease, exchange or disposition of any of the foregoing, and (ii) all books, records (including computer software) and documents at any time evidencing or relating to any of the foregoing or any proceeds of the foregoing.

# Exhibit B

DocuSign Envelope ID: E5C06AAC-95EB-4E34-A848-A5DDCA1E4A30

**LAW OFFICES OF JOHN F. ISBELL LLC**
**3050 Peachtree Road NW, Suite 740**
**Atlanta, Georgia 30305**
**(404) 849-6665**
**John@JFI-LAW.com**

July 1, 2025

**VIA FEDERAL EXPRESS and EMAIL**

First Liberty Capital Partners, LLC      Joshua Mayes, Esq.
P.O. Box 2567                            The Robbins Firm
Newnan, Georgia 30263                    500 14th Street, NW
Attn: Brant Frost, IV                    Atlanta, GA 30318
                                         jmayes@robbinsfirm.com

Re:   **NOTICE OF DEFAULT; REMOVAL OF SELLER AS ADMINISTRATOR**; that
      certain Participation Agreement dated December 19, 2022 ("Participation Agreement"), by
      and between First Liberty Capital Partners, LLC ("Seller") and Bay Point Capital Partners
      II, LP ("Purchaser") concerning a loan to 2406 Cancer Care, LLC, dated December 19,
      2022 (the "Loan");

Dear Mr. Frost:

I represent Purchaser with respect to the Participation Agreement. We have been informed
that Seller has ceased all operations, is under investigation by the Securities and Exchange
Commission, and will not be forwarding to Seller any payments received on account of or
pursuant to the Loan or the documents memorializing the Loan.

Pursuant to Paragraph 20 of the Participation Agreement, Purchaser is authorized to
"notify Seller and assume administration of the Loan and related guarantees and security
agreements" if any of the following occurs:

  (1)   Seller fails to comply with Seller's fiduciary, contractual, or legal
        obligations as provided under this Agreement or by state or federal law;
  (2)   Seller petitions for or becomes subject to bankruptcy;
  (3)   Seller commits any act of insolvency; or
  (4)   Seller is declared insolvent, is taken over, or otherwise closed by a
        governmental regulatory agency which has jurisdiction over Seller.

On account of the circumstances summarized above, Participant is authorized to remove
Seller as the administrator of the Loan. **Participant hereby elects to remove Seller as the
administrator of the Loan. Pursuant to Paragraph 20(C) of the Participation Agreement,
Participant will inform all parties to the Loan of its election and will assume administration
of the Loan immediately.**

Docusign Envelope ID: E5C06AAC-95EB-4E34-A848-A5DDCA1E4A30

Pursuant to Paragraph 20 of the Participation Agreement, Participant demands all documents and writings related to the Loan, including without limitation the documents memorializing the loan, all security agreements, all documents perfecting the security interest in the Loan, communications with the parties to the Loan, and a payment history for the Loan. Further, Participant demands that Seller immediately forward to Participant all amounts received on account of the Loan for application in accordance with the terms of the Participation Agreement and demands that any monies received on account of the Loan from the date hereof be immediately forwarded to Participant.

This letter does not constitute a waiver of, nor shall it be construed to waive or otherwise prejudice in any respect, Lender's rights to exercise any rights or remedies that may be available to it under the Participation Agreement, any other agreement, at law, or in equity. Participant reserves all rights.

Sincerely,

DocuSigned by:

*John Isbell*

6D6CC80B776A406...

John F. Isbell

cc:  Charles Andros

2

EXHIBIT "H"

**BAY POINT**

July 2, 2025

**Via FedEx and Email**

Full Circle, LLC
2238 George L. Pike Pkwy.
Monroe, Georgia 30655
Attn:   David Pike, Chistie Pike, David Pike, II

Re:    That certain loan ("**Loan**") between First Liberty Capital Partners, LLC ("**Lender**") and
        Full Circle, LLC ("**Borrower**"); that certain Promissory Note executed by Borrower in
        favor of Lender on February 10, 2023, in the original principal amount of $2,750,000.00
        (the "**Note**"); that certain Security Agreement  dated February 10, 2023, and executed by
        Borrower in favor of Lender ("**Security Agreement**" and with the Note and all other
        related loan documents, the "**Loan Documents**"); that certain Participation Agreement
        dated March 31, 2023 ("**Participation Agreement**"), by and between Lender and Bay
        Point Capital Partners II, LP ("**Purchaser**").

To whom it may concern:

Pursuant to the Participation Agreement, Purchaser purchased from Lender a portion of the Loan,
and subject to certain conditions, Lender remained the administrator of the Loan.   A copy of the
Participation Agreement is attached hereto as Exhibit A, for your reference.

Pursuant to the terms of the Participation Agreement, Lender may be removed as the administrator
of the Loan upon the conditions set forth in Paragraph 20 hereof.  Borrower is hereby advised that,
as is set forth in the correspondence attached hereto as Exhibit B, those conditions have occurred,
and Purchaser has exercised its right to become administrator of the Loan.

Please direct all future correspondence regarding the Loan to Purchaser.  Please also direct all
payments required to be made under the Loan Documents to Purchaser, in accordance with the
terms of the Participation Agreement, to the below address.  If you wish to pay by wire transfer or
otherwise have questions, please contact Kevin Brawner at 404-963-6031.

Sincerely,

**BAY POINT CAPITAL PARTNERS II, LP**

By:  BAY POINT ADVISORS, LLC, its General
Partner

By:  _Signed by_ charles andros
Name: Charles Andros
Title: Manager

cc:     Full Circle, LLC
        2223 Geroge L. Pike Pkwy
        Monroe, Georgia 30655

        Joshua Mayes, Esq.
        The Robbins Firm
        500 14th Street, NW
        Atlanta, GA 30318
        jmayes@robbinsfirm.com

# Exhibit A

DocuSign Envelope ID: B99EF064-35F0-463C-8296-994BF308C9AB

## LOAN PARTICIPATION AGREEMENT

**DATE AND PARTIES.** The date of this Loan Participation Agreement (Agreement) is February 10, 2023. The parties and their addresses are:

**ORIGINATING LENDER (Seller):**

    **FIRST LIBERTY CAPITAL PARTNERS, LLC**
    **P. O. Box 2567**
    **Newnan, GA 30263**

**PARTICIPANT (Purchaser):**

    **BAY POINT CAPITAL PARTNERS II, LP**
    **3050 Peachtree Road NW**
    **Suite 740**
    **Atlanta, GA 30305**

**1. LOAN BACKGROUND INFORMATION.** A Promissory Note evidencing a Loan from Originating Lender to Borrower was executed in favor of Seller as follows:

| | |
|---|---|
| **A. Borrower Name and Address:** | **Full Circle, LLC, a Georgia limited liability company.** |
| **B. Date of Loan:** | **February 10, 2023.** |
| **D. Loan Amount:** | **Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000.00).** |
| **E. Outstanding Principal Balance:** | **Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000.00)** |
| **F. Due Date:** | **February 9, 2024.** |

**2. SALE OF PARTICIPATION.**

**A. Purchase of Participation.** Purchaser agrees to purchase a **One Million Dollar ($1,000,000.00)** participation in the Loan from Seller on the terms and conditions hereinafter stated. This sale is made without recourse to Seller.

**B. Purchaser's Share of Borrower Principal Payments.** Purchaser's percentage of all Principal Payments is **36.36%**.

**C. Purchaser's Interest Rate.** Purchaser's Interest Rate shall be **16.0%** per annum , paid monthly.

DocuSign Envelope ID: B99EF064-35F0-463C-8296-994BF308C9AB

**D. Purchaser's Interest in Loan Documents.**  This Agreement includes the sale to Purchaser of a Share in all notes and other instruments evidencing indebtedness of Borrower in the Loan, together with all security interests in the Property securing such indebtedness.  Purchaser and Seller agree that Purchaser will be considered for all purposes the legal and equitable owner of the above Share in the Loan, related documents, and Property and will possess all applicable rights, privileges and remedies, subject to other provisions of this Agreement.

**3. PAYMENTS.** Seller will receive all Payments and apply them to Borrower's account. Payments received by Seller under the Loan will be held for the benefit of Seller and Purchaser until the payments are actually paid to and received by Purchaser.  Purchaser's pay out position is "first out". Seller's contribution to the Loan is "first in, last out" and, in the event of a shortfall in Borrower's payment of any amounts owing under the Note, Seller shall not receive any payment under the Note until the shortage owed to Purchaser is paid.  If Seller must refund any part of a Payment that was remitted to Purchaser to Borrower or any other person, Purchaser shall remit to Seller immediately the amount received by Purchaser relating to such refunded Payment. In addition to any other payments made to Purchaser hereunder, Seller shall pay to Purchaser 2% of Purchaser's participation amount, that is, $20,000.00, at closing, and 1% of the Purchaser's participation amount, that is, $10,000.00, if and when the Loan is extended.

**4. EXPENSES.** Seller may at its discretion make additional advances for taxes, insurance premiums and other items deemed necessary by Seller to collect, enforce, or protect the Loan and any Property securing the Loan including, but not limited to, attorneys' fees, court costs and disbursements.   Purchaser's share of such expenses is **36.36%.**

**5. BORROWER FEES.**   Borrower Fees shall belong to Seller, except that if Purchaser does not timely receive any payment of interest or principal when due, then Purchaser shall be entitled to receive a pro rata portion of any late fee received by Seller.  All Borrower Fees have been or shall be paid to Seller as collected from Borrower.  Purchaser shall likewise be entitled to receive its pro rata share of any default interest received by Seller.

**6. ORIGINATION AND ADMINISTRATIVE FEES.**   Seller   will   bear   all   costs   of   origination, administering and servicing the Loan and shall be compensated by the **2%** differential between the **18%** per annum interest rate paid by Borrower to Seller and the **16%** per annum interest rate paid to by Seller to Purchaser.

**7. SECURITY.** The Loan is secured by the Guaranty Agreements of David Pike, David Pike II, and Christie Pike Nelson,  and the following Property, all of which is evidenced by deeds to secure debt and security agreements, UCC and/or other instruments in favor of Seller.   A  security interest in the Property is assigned and sold to Purchaser, subject to other provisions within this Agreement, in proportion to Purchaser's Investment and is held by Seller for the benefit of Purchaser. Upon full payment of Purchaser's Investment plus interest thereon the security interest given to Purchaser will be null and void.

Property description:  See Exhibit A attached hereto and incorporated herein by this reference.

DocuSign Envelope ID: B99EF064-35F0-463C-8296-994BF308C9AB

**8. UNRELATED CREDIT OF BORROWER.** If Borrower requests or continues other credit unrelated to the Loan, Seller and Purchaser agree that they will not provide this credit without first obtaining the consent of the other.

**9. DEFINITIONS.** In this Agreement, pertinent terms and their definitions are as follows.

**A. Borrower Fees.** Borrower Fees include, but are not limited to, commitment fees, servicing fees, late charges, prepayment penalties and other similar fees received from Borrower and not defined as a Payment.

**B. Default.** Default includes all definitions of the term used in any Loan Documents and other related instruments evidencing the Borrower's indebtedness.

**C. Loan.** Loan means Borrower's obligation as described in this Agreement and includes, but is not limited to, all extensions, renewals, modifications and re-financings of Borrower's obligation as well as all collateral and assurances of repayment taken in connection with the Loan.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Obligor.** Obligor includes all borrowers, co-makers, guarantors and endorsers of the Loan.

**F. Payments.** Payments includes principal, interest, and other charges received by Seller with respect to the Loan from whatever source derived including, but not limited to, all sums realized from any endorser, guarantor, or other person liable with respect to the Loan; all sums realized from the exercise by Seller of any rights pursuant to a lien or right of set-off with respect to any deposit balance or other property of the Borrower; any insurance proceeds or casualty awards; and any proceeds from the sale, liquidation, exchange, or substitution of the Property.

**G. Purchaser's Interest Rate.** Purchaser's Interest Rate means the rate specified in this Agreement.

**10. DOCUMENTATION OF LOAN.** Except as required for recording, Seller will hold all writings concerning the Loan, including all security instruments and guaranties, and will maintain records pertaining to the Loan. Purchaser acknowledges receipt of all copies of Loan Documents which Purchaser specifically requested and deemed reasonably necessary to fully evaluate the quality of the Loan before consenting to this Agreement. All Loan Documents are available at Seller's office for Purchaser's inspection and copying at normal lobby hours upon reasonable advance notice and at such other times as Seller may permit. Unless otherwise agreed, Seller will from time to time provide Purchaser with complete and current credit information regarding the following: Loan accrual status; status of principal and interest payments; financial statements, Property values and lien status; and any factual information bearing on the Borrower's continuing credit worthiness.

**11. INTENTIONALLY OMITTED.**

**12. ADMINISTRATION.**

**A. Loan Servicing.** Seller may administer the Loan and any related security and guaranties as though it were the sole owner and holder thereof. Except as provided below, Seller will make all decisions concerning the servicing of the Loan and any related security and guaranties, acceleration, foreclosure, acquisition of other security or guaranties, deficiency judgments, purchase at foreclosure sales, and administration and disposition of acquired security. Seller will not, without Purchaser's written consent, reduce principal or interest with respect to the Loan or release or allow for the substitution of any Property, outside the normal course of dealing with Borrower so as to substantially reduce the possibility of repayment of the Loan. Seller will not, without Purchaser's written consent, renew, extend or consent to the revision of the provisions of any note or security documents covered or waive any claim against Obligor.

DocuSign Envelope ID: B99EF064-35F0-463C-8296-994BF308C9AB

**B. Seller's Duty to Purchaser.** Seller will use the same degree of care in servicing and collecting the Loan as it would for its own accounts. Seller will not be liable to Purchaser for any action taken or omitted or for any error in judgment, except for bad faith or willful misconduct.

**C. Participation Payments.** Seller will remit Purchaser's percentage of the Payments and any shared Borrower Fees not later than the close of the tenth business day following receipt of any Payments or Borrower Fees. If shared, Expenses and Administrative Fees will be charged to and payable by Purchaser from time to time as they are incurred or as otherwise agreed. Unless otherwise agreed, such charges will be deducted from the amount of any Payments or Borrower Fees to be remitted to Purchaser from time to time, but will not exceed the total amount to be remitted to Purchaser at any one time. At Seller's option, and upon reasonable notice to Purchaser, Seller may demand full payment of any outstanding Expenses or Administrative Fees due Seller. If Seller must refund any part of a Payment that was remitted to Purchaser to Borrower or any other person, Purchaser shall remit to Seller immediately the amount received by Purchaser.

**13. FAILURE TO REMIT PAYMENTS.** If Seller fails to remit amounts received from Borrower that are due and payable to Purchaser as specified in this Agreement then all of the following applies.

**A. Purchaser's Duty.** Purchaser will not be responsible for any Expenses or Administrative Fees incurred by Seller until all amounts owing Purchaser are paid in full with applicable interest.

**B. Seller's Penalty.** Seller will pay to Purchaser, in addition to the full amount of any late amounts due and payable to Purchaser, a penalty on the late amounts equal to any penalty specified on the Promissory Note or, if none is specified, the Promissory Note rate.

**14. FUNDING OF THE PARTICIPATION.** Purchaser will pay to Seller on demand (in immediately available funds as agreed to herein) the amount agreed to in this Agreement.

**15. SELLER'S REPRESENTATIONS.** Seller represents that the Borrower is not in default on principal or interest payments; and that the terms of the Loan have not been renegotiated or compromised due to the deteriorating financial condition of Borrower.

**16. PURCHASER'S WARRANTIES.** Purchaser hereby represents and warrants to Seller that at the time Purchaser executes this Agreement, Purchaser has received all authorizations of its manager, members, board of directors, shareholders, stockholders and such other bodies or persons as are necessary to authorize Purchaser's purchase of the agreed upon Share, that such authorization was reflected in the appropriate minutes thereof and continues to be an official record of Purchaser, and that Purchaser has the financial ability to perform its obligations under this Agreement.

**17. LIABILITY AND DISCLAIMER OF WARRANTIES.** Purchaser acknowledges that it has made an independent investigation of the Loan, and has satisfied itself with respect to the credit standing of any Obligor of the Loan, the value of any security for the Loan, the validity and enforceability of the Loan agreement, the Promissory Note and any guaranty and security and all other matters in connection with the Loan. Purchaser acknowledges that it is not relying upon Seller's judgment, and that Seller has made no warranty of any kind, express or implied, in connection with the Loan or any of the foregoing. Unless otherwise agreed, Seller makes no warranties or representations regarding the legality, perfection, enforceability, or priority of any security interests, mortgages, guaranties, or similar documents issued in connection with the Loan. Purchaser agrees to share the risks of collection of the Loan and of the adequacy of the Property in proportion to Purchaser's Share. Purchaser releases Seller from any liability under state or federal securities laws arising from the failure of Seller to register the Purchaser's Share in the Loan.

DocuSign Envelope ID: B99EF064-35F0-463C-8296-994BF308C9AB

Purchaser and Seller acknowledge that based on their independent evaluations, Purchaser's Share in the Loan is either not a security under a federal or state law or, if a security, is exempt from registration or qualification.

**18. NOTIFICATION.**  Seller and Purchaser will promptly notify each other should either receive actual notice or knowledge of any loss of Property or change in financial condition of any Obligor under the Loan, which will have a material adverse effect upon continuation of payments under the Loan or its repayment on default.  All notices will be sent by first-class mail and sent to the address shown in this Agreement.

**19. DEFAULT AND LIQUIDATION OF LOAN.**  Subject to **Paragraph 3 PAYMENTS**, and the "first in, last out" nature of Seller's interest in the Loan, in the event of Default, or if Seller in its sole discretion should otherwise accelerate and liquidate the Loan, all Payments collected and received by Seller will be applied as follows:  first, to Expenses; second, to the unpaid principal amount of the Purchaser's portion of the Loan at the time of Default; third, to the respective accrued interest, fees, and other charges due to Purchaser under this Agreement, and Fourth, to Seller.  Upon Borrower's Default, all Payments and Borrower Fees received from Borrower, whether designated for repayment of the Loan or undesignated, will be deemed intended for the repayment of the Loan in accordance with this Agreement.

**20. REMOVAL OF SELLER AS ADMINISTRATOR.**  The Seller may be removed as the Loan's administrator under the following terms and conditions.

**A. Qualifying Events.**  Upon the occurrence of any of the following events, Purchaser may notify Seller and assume the administration of the Loan and related guarantees and security agreements as well as demand any documentation or writings reasonably necessary to evidence proof of Purchaser's security interest and perfection.

**(1)** Seller fails to comply with Seller's fiduciary, contractual or legal obligations as provided under this Agreement or by state or federal law.

**(2)** Seller petitions for or becomes subject to bankruptcy.

**(3)** Seller commits any act of insolvency.

**(4)** Seller is declared insolvent, is taken over, or otherwise closed by a governmental regulatory agency which has jurisdiction over Seller.

**B. Multiple Participants.**  In the event of multiple participants in the Loan, the participating lender with the then largest share will have the option to assume administration.  If any participant possessing this option does not exercise its right upon the demand of the other participants, the option will then pass to the participant with the next largest share.  Unless otherwise agreed, participants possessing equal shares in the Loan will share equally in administration.

**C. Purchaser Rights.**  Purchaser will have the right to notify and communicate with all Obligors of the Loan, and to direct them to pay any amounts due under the Loan directly to Purchaser or such other participant assuming administration of the Loan. Seller will join in this notice to Obligor upon request by Purchaser.  Unless otherwise agreed, all remaining terms of this Agreement will survive Seller's removal as administrator until Purchaser's Investment is satisfied in full or the Loan is repurchased by Seller as provided in this Agreement.

**D. Loan Repayment.**  Upon the occurrence of any of the events in this section, all Payments received from Borrower, whether designated for repayment of the Loan or undesignated, will be deemed intended for the repayment of the Loan in accordance with this Agreement.

**21. ASSIGNMENT.**  Neither Purchaser nor Seller may sell, pledge, assign, sub-participate, or otherwise transfer its interest in the Loan, Loan security, Loan guaranty or rights or obligations under this Agreement without the prior written consent of the other party which will not be unreasonably withheld, except that Seller

DocuSign Envelope ID: B99EF064-35F0-463C-8296-994BF308C9AB

may sell other participations in the Loan without Purchaser's consent. The duties and benefits of this Agreement will bind and benefit the permitted successors and assigns of Seller and Purchaser. Upon receipt by Purchaser of a bona fide offer from a third party to purchase, sub-participate or otherwise acquire Purchaser's interest in the Loan, Purchaser will notify Seller of the offer and provide Seller with the right of first refusal. Seller will respond to Purchaser's offer in a timely manner. If Seller elects not to obtain Purchaser's interest, with Seller's consent Purchaser may transfer its interest to such third party.

**22. ATTORNEYS' FEES AND COSTS.** If any lawsuit or proceeding is brought by Seller or Purchaser to enforce the terms of this Agreement, the unsuccessful party will pay the prevailing party all its court costs and reasonable attorneys' fees incurred in bringing or defending such action.

**23. GENERAL PROVISIONS.**

**A. Partnership, Joint Venture, Agency, Trust.** Purchaser and Seller agree that this Agreement is not intended and is not to be construed to create a partnership, joint venture, agency, or trust relationship.

**B. Sale of Percentage.** This Agreement constitutes a sale of a percentage ownership interest in the Loan and is not and shall not be construed as an extension of credit by Purchaser to Seller. If federal or state laws or regulations, or a judicial decision, now or later provides that the purchase of a participation interest is an extension of credit, Purchaser and Seller agree that this Agreement shall constitute a security agreement under the Uniform Commercial Code and hereby grants to Purchaser a security interest in the Loan. Purchaser shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including but not limited to rights upon default. Seller authorizes Purchaser to file one or more financing statements against Seller with respect to the Loan from time to time.

**C. Applicable Law.** This Agreement is governed by the laws of Georgia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**D. Amendment, Integration And Severability.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by Purchaser and Seller. This Agreement is the complete and final expression of the agreement. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**E. Remedies.** Nothing in this Agreement will be construed to limit Purchaser's or Seller's remedies to those described in this Agreement. Purchaser and Seller are allowed all Remedies at law or in equity.

**F. Interpretation.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**G. Confidentiality.** Purchaser acknowledges that all information relating to the Loan is confidential and solely for Purchaser's use. Purchaser agrees not to share it with any other party.

DocuSign Envelope ID: B99EF064-35F0-463C-8296-994BF308C9AB

**SIGNATURES.** By signing, Purchaser and Seller agree to the terms contained in this Agreement. Purchaser also acknowledges receipt of a copy of this Agreement.

**PURCHASER:**

**BAY POINT CAPITAL PARTNERS II, LP**

**By: Bay Point Advisors, LLC**
**Its: General Partner**

By: _Charles Andros_____
**Its: Manager**                              **(SEAL)**

**SELLER:**

**FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company**

By: _____ **(SEAL)**
**Brant Frost IV, its Manager**

# Exhibit B

Docusign Envelope ID: E5C06AAC-95EB-4E34-A848-A5DDCA1E4A30

# LAW OFFICES OF JOHN F. ISBELL LLC
## 3050 Peachtree Road NW, Suite 740
## Atlanta, Georgia 30305
## (404) 849-6665
## John@JFI-LAW.com

July 1, 2025

**VIA FEDERAL EXPRESS and EMAIL**

First Liberty Capital Partners, LLC          Joshua Mayes, Esq.
P.O. Box 2567                                The Robbins Firm
Newnan, Georgia 30263                        500 14th Street, NW
Attn: Brant Frost, IV                        Atlanta, GA 30318
                                             jmayes@robbinsfirm.com

Re:   **NOTICE OF DEFAULT; REMOVAL OF SELLER AS ADMINISTRATOR**; that certain Participation Agreement dated February 10, 2023 ("Participation Agreement"), by and between First Liberty Capital Partners, LLC ("Seller") and Bay Point Capital Partners II, LP ("Purchaser") concerning a loan to Full Circle, LLC, dated February 10, 2023 (the "Loan");

Dear Mr. Frost:

I represent Purchaser with respect to the Participation Agreement. We have been informed that Seller has ceased all operations, is under investigation by the Securities and Exchange Commission, and will not be forwarding to Seller any payments received on account of or pursuant to the Loan or the documents memorializing the Loan.

Pursuant to Paragraph 20 of the Participation Agreement, Purchaser is authorized to "notify Seller and assume administration of the Loan and related guarantees and security agreements" if any of the following occurs:

(1)   Seller fails to comply with Seller's fiduciary, contractual, or legal obligations as provided under this Agreement or by state or federal law;
(2)   Seller petitions for or becomes subject to bankruptcy;
(3)   Seller commits any act of insolvency; or
(4)   Seller is declared insolvent, is taken over, or otherwise closed by a governmental regulatory agency which has jurisdiction over Seller.

On account of the circumstances summarized above, Participant is authorized to remove Seller as the administrator of the Loan. **Participant hereby elects to remove Seller as the administrator of the Loan. Pursuant to Paragraph 20(C) of the Participation Agreement, Participant will inform all parties to the Loan of its election and will assume administration of the Loan immediately.**

Pursuant to Paragraph 20 of the Participation Agreement, Participant demands all documents and writings related to the Loan, including without limitation the documents memorializing the loan, all security agreements, all documents perfecting the security interest in the Loan, communications with the parties to the Loan, and a payment history for the Loan. Further, Participant demands that Seller immediately forward to Participant all amounts received on account of the Loan for application in accordance with the terms of the Participation Agreement and demands that any monies received on account of the Loan from the date hereof be immediately forwarded to Participant.

This letter does not constitute a waiver of, nor shall it be construed to waive or otherwise prejudice in any respect, Lender's rights to exercise any rights or remedies that may be available to it under the Participation Agreement, any other agreement, at law, or in equity. Participant reserves all rights.

Sincerely,

*John Isbell*

John F. Isbell

cc: Charles Andros

2

EXHIBIT "I"

Docusign Envelope ID: 37EAE73F-54FE-409E-87FD-6C37247172F0



**BAY POINT**

July 2, 2025

<u>**Via FedEx and Email**</u>

Stone Capital Group, LLC
315 Serenoa Road, Ste A
Santa Rosa Beach, Florida 32459
Attn: Christopher Ridgeway

Re:    That certain loan ("**<u>Loan</u>**") between First Liberty Capital Partners, LLC ("**<u>Lender</u>**") and
       Stone Capital Group, LLC ("**<u>Borrower</u>**"); that certain Promissory Note executed by
       Borrower in favor of Lender on March 31, 2023, in the original principal amount of
       $3,750,000.00 (the "**<u>Note</u>**"); that certain Security Agreement dated March 31, 2023, and
       executed by Borrower in favor of Lender ("**<u>Security Agreement</u>**" and with the Note and
       all other related loan documents, the "**<u>Loan Documents</u>**"); that certain Participation
       Agreement dated March 31, 2023 ("**<u>Participation Agreement</u>**"), by and between Lender
       and Bay Point Capital Partners II, LP ("**<u>Purchaser</u>**").

Dear Mr. Ridgeway:

Pursuant to the Participation Agreement, Purchaser purchased from Lender a portion of the Loan,
and subject to certain conditions, Lender remained the administrator of the Loan.  A copy of the
Participation Agreement is attached hereto as Exhibit A, for your reference.

Pursuant to the terms of the Participation Agreement, Lender may be removed as the administrator
of the Loan upon the conditions set forth in Paragraph 19 hereof.  Borrower is hereby advised that,
as is set forth in the correspondence attached hereto as Exhibit B, those conditions have occurred,
and Purchaser has exercised its right to become administrator of the Loan.

Please direct all future correspondence regarding the Loan to Purchaser.  Please also direct all
payments required to be made under the Loan Documents to Purchaser, in accordance with the
terms of the Participation Agreement, to the below address. If you wish to pay by wire transfer
or otherwise have questions, please contact Kevin Brawner at 404-963-6031.

                                    Sincerely,

                                    **BAY POINT CAPITAL PARTNERS II, LP**

                                    By:  BAY POINT ADVISORS, LLC, its General
                                    Partner

                                    By: _____
                                    Name: Charles Andros
                                    Title: Manager

Docusign Envelope ID: 37EAE73F-54FE-409E-87FD-6C37247172F0

cc:    William H. Crawford, Esq.
Thompson, Crawford, Brown & Smiley
1330 Thomasville Road
Tallahassee, Florida 32303
william@tcslawfirm.net

Joshua Mayes, Esq.
The Robbins Firm
500 14th Street, NW
Atlanta, GA 30318
jmayes@robbinsfirm.com

# Exhibit A

# LOAN PARTICIPATION AGREEMENT

**DATE AND PARTIES.** The date of this Loan Participation Agreement (Agreement) is March 31, 2023. The parties and their addresses are:

**ORIGINATING LENDER (Seller):**

> **FIRST LIBERTY CAPITAL PARTNERS, LLC**
> **P. O. Box 2567**
> **Newnan, GA 30264**

**PARTICIPANT (Purchaser):**

> **BAY POINT CAPITAL PARTNERS II, LP**
> **3050 Peachtree Road NW**
> **Suite 740**
> **Atlanta, GA 30305**

1. **LOAN BACKGROUND INFORMATION.** A Promissory Note evidencing a Loan from Originating Lender to Borrower was executed in favor of Seller as follows:

| | |
|---|---|
| **A. Borrower Name and Address:** | **Stone Capital Group, LLC**<br>**315 Serenoa Road, Suite A**<br>**Santa Rosa Beach, FL 32459** |
| **B. Date of Loan:** | **March 31, 2023** |
| **D. Loan Amount:** | **Three Million Seven Hundred Fifty and**<br>**00/100 Dollars ($3,750,000.00)** |
| **E. Outstanding Principal Balance:** | **Three Million Seven Hundred Fifty and**<br>**00/100 Dollars ($3,750,000.00)** |
| **F. Due Date:** | **March 31, 2024.** |

2. **SALE OF PARTICIPATION.**

a. **Purchase of Participation.** Purchaser agrees to purchase a **$1,400,000.00** participation in the Loan from Seller on the terms and conditions hereinafter stated. This sale is made without recourse to Seller.

b. **Purchaser's Share of Borrower Principal Payments.** Purchaser's percentage of all Principal Payments is **37.33%**.

DocuSign Envelope ID: F94AC950-0C4E-427C-8EAD-EDA33F57C4F5

**c.    Purchaser's Interest Rate.**    Purchaser's Interest Rate shall be **16.0%** per annum.    Borrower is obligated to pay a minimum of six months interest in the event of prepayment before the seventh month of the Loan term.

**d.    Purchaser's Interest in Loan Documents.** This Agreement includes the sale to Purchaser of a Share in all notes and other instruments evidencing indebtedness of Borrower in the Loan, together with all security interests in the Property securing such indebtedness. Purchaser and Seller agree that Purchaser will be considered for all purposes the legal and equitable owner of the above Share in the Loan, related documents, and Property and will possess all applicable rights, privileges and remedies, subject to other provisions of this Agreement.

**3. PAYMENTS.** Seller will receive all Payments and apply them to Borrower's account. Payments received by Seller under the Loan will be held for the benefit of Seller and Purchaser until the payments are actually paid to and received by Purchaser. Seller's contribution to the Loan is "first in, last out" and, in the event of a shortfall in Borrower's payment of any amounts owing under the Note, Seller shall not receive any payment under the Note until the shortage owed to Purchaser is paid. If Seller must refund any part of a Payment that was remitted to Purchaser to Borrower or any other person, Purchaser shall remit to Seller immediately the amount received by Purchaser relating to such refunded Payment. In addition to the interest payments, Seller will give to Purchaser **2%** of the Loan Fee at closing (\$28,000.00), and will give to the Purchaser **1%** of the Extension Fee (\$14,000.00) if the loan is extended.

**4. EXPENSES.** Seller may at its discretion make additional advances for taxes, insurance premiums and other items deemed necessary by Seller to collect, enforce, or protect the Loan and any Property securing the Loan including, but not limited to, attorneys' fees, court costs and disbursements. Purchaser's share of such expenses is **37.33%**.

**5. BORROWER FEES.** Borrower Fees shall belong to Seller, except that if Purchaser does not timely receive any payment of interest or principal when due, then Purchaser shall be entitled to receive a pro rata portion of any late fee received by Seller. All Borrower Fees have been or shall be paid to Seller as collected from Borrower. Purchaser shall likewise be entitled to receive its pro rata share of any default interest received by Seller.

**6. ORIGINATION AND ADMINISTRATIVE FEES.**    Seller will bear all costs of administering and servicing the Loan and shall be compensated by the **2%** differential between the **18%** per annum interest rate paid by Borrower to Seller and the **16%** per annum interest rate paid by Seller to Purchaser.

7.  **SECURITY.** The Loan is secured by (i) Guaranty Agreement of Christopher Ridgeway,
(ii) Second Liens on residences in Alys Beach, FL and Metairie, LA, (iii) Security Agreement from Borrower conveying security interest in all furniture, fixtures, equipment, inventory, accounts receivable, and other assets as described therein, (iv) Six month interest reserve for Loan from Borrower.

**8. UNRELATED CREDIT OF BORROWER.** If Borrower requests or continues other credit unrelated to the Loan, Seller and Purchaser agree that they will not provide this credit without first obtaining the consent of the other.

**9. DEFINITIONS.** In this Agreement, pertinent terms and their definitions are as follows.

**a. Borrower Fees.** Borrower Fees include, but are not limited to, commitment fees, servicing fees, late charges, prepayment penalties and other similar fees received from Borrower and not defined as a Payment.

DocuSign Envelope ID: F94AC950-0C4E-427C-8EAD-EDA33F57C4F5

**b. Default.** Default includes all definitions of the term used in any Loan Documents and other related instruments evidencing the Borrower's indebtedness.

**c. Loan.** Loan means Borrower's obligation as described in this Agreement and includes, but is not limited to, all extensions, renewals, modifications and re-financings of Borrower's obligation as well as all collateral and assurances of repayment taken in connection with the Loan.

**d. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**e. Obligor.** Obligor includes all borrowers, co-makers, guarantors and endorsers of the Loan.

**f. Payments.** Payments includes principal, interest, and other charges received by Seller with respect to the Loan from whatever source derived including, but not limited to, all sums realized from any endorser, guarantor, or other person liable with respect to the Loan; all sums realized from the exercise by Seller of any rights pursuant to a lien or right of set-off with respect to any deposit balance or other property of the Borrower; any insurance proceeds or casualty awards; and any proceeds from the sale, liquidation, exchange, or substitution of the Property.

**f. Purchaser's Interest Rate.** Purchaser's Interest Rate means the rate specified in this Agreement.

**10. DOCUMENTATION OF LOAN.** Except as required for recording, Seller will hold all documents concerning the Loan, including all security instruments and guaranties, and will maintain records pertaining to the Loan. Purchaser acknowledges receipt of all copies of Loan Documents which Purchaser specifically requested and deemed reasonably necessary to fully evaluate the quality of the Loan before consenting to this Agreement. All Loan Documents are available at Seller's office for Purchaser's inspection and copying at normal lobby hours upon reasonable advance notice and at such other times as Seller may permit. Unless otherwise agreed, Seller will from time to time provide Purchaser with complete and current credit information regarding the following: Loan accrual status; status of principal and interest payments; financial statements, Property values and lien status; and any factual information bearing on the Borrower's continuing credit worthiness.

**11. ADMINISTRATION.**

**a. Loan Servicing.** Seller may administer the Loan and any related security and guaranties as though it were the sole owner and holder thereof. Except as provided below, Seller will make all decisions concerning the servicing of the Loan and any related security and guaranties, acceleration, foreclosure, acquisition of other security or guaranties, deficiency judgments, purchase at foreclosure sales, and administration and disposition of acquired security. Seller will not, without Purchaser's written consent, reduce principal or interest with respect to the Loan or release or allow for the substitution of any Property, outside the normal course of dealing with Borrower so as to substantially reduce the possibility of repayment of the Loan. Seller will not, without Purchaser's written consent, renew, extend or consent to the revision of the provisions of any note or security documents covered or waive any claim against Obligor.

**b. Seller's Duty to Purchaser.** Seller will use the same degree of care in servicing and collecting the Loan as it would for its own accounts. Seller will not be liable to Purchaser for any action taken or omitted or for any error in judgment, except for bad faith or willful misconduct.

**c. Participation Payments.** Seller will remit Purchaser's percentage of the Payments and any shared Borrower Fees not later than the close of the tenth business day following receipt of any Payments or Borrower Fees. If shared, Expenses and Administrative Fees will be charged to and payable by Purchaser from time to time as they are incurred or as otherwise agreed. Unless otherwise agreed, such charges will be deducted from the amount of any Payments or Borrower Fees to be remitted to Purchaser from time to time, but will not exceed the total amount to be remitted to Purchaser at any one time. At Seller's option, and upon reasonable notice to Purchaser, Seller may demand full payment of any outstanding Expenses or

Administrative Fees due Seller. If Seller must refund any part of a Payment that was remitted to Purchaser to Borrower or any other person, Purchaser shall remit to Seller immediately the amount received by Purchaser.

**12. FAILURE TO REMIT PAYMENTS.** If Seller fails to remit amounts received from Borrower that are due and payable to Purchaser as specified in this Agreement then all of the following applies.

**a. Purchaser's Duty.** Purchaser will not be responsible for any Expenses or Administrative Fees incurred by Seller until all amounts owing Purchaser are paid in full with applicable interest.

**b. Seller's Penalty.** Seller will pay to Purchaser, in addition to the full amount of any late amounts due and payable to Purchaser, a penalty on the late amounts equal to any penalty specified on the Promissory Note or, if none is specified, the Promissory Note rate.

**13. FUNDING OF THE PARTICIPATION.** Purchaser will pay to Seller on demand (in immediately available funds as agreed to herein) the amount agreed to in this Agreement.

**14. SELLER'S REPRESENTATIONS.** Seller represents that the Borrower is not in default on principal or interest payments; and that the terms of the Loan have not been renegotiated or compromised due to the deteriorating financial condition of Borrower.

**15. PURCHASER'S WARRANTIES.** Purchaser hereby represents and warrants to Seller that at the time Purchaser executes this Agreement, Purchaser has received all authorizations of its manager, members, board of directors, shareholders, stockholders and such other bodies or persons as are necessary to authorize Purchaser's purchase of the agreed upon Share, that such authorization was reflected in the appropriate minutes thereof and continues to be an official record of Purchaser, and that Purchaser has the financial ability to perform its obligations under this Agreement.

**16. LIABILITY AND DISCLAIMER OF WARRANTIES.** Purchaser acknowledges that it has made an independent investigation of the Loan, and has satisfied itself with respect to the credit standing of any Obligor of the Loan, the value of any security for the Loan, the validity and enforceability of the Loan agreement, the Promissory Note and any guaranty and security and all other matters in connection with the Loan. Purchaser acknowledges that it is not relying upon Seller's judgment, and that Seller has made no warranty of any kind, express or implied, in connection with the Loan or any of the foregoing. Unless otherwise agreed, Seller makes no warranties or representations regarding the legality, perfection, enforceability, or priority of any security interests, mortgages, guaranties, or similar documents issued in connection with the Loan. Purchaser agrees to share the risks of collection of the Loan and of the adequacy of the Property in proportion to Purchaser's Share. Purchaser releases Seller from any liability under state or federal securities laws arising from the failure of Seller to register the Purchaser's Share in the Loan. Purchaser and Seller acknowledge that based on their independent evaluations, Purchaser's Share in the Loan is either not a security under a federal or state law or, if a security, is exempt from registration or qualification.

**17. NOTIFICATION.** Seller and Purchaser will promptly notify each other should either receive actual notice or knowledge of any loss of Property or change in financial condition of any Obligor under the Loan, which will have a material adverse effect upon continuation of payments under the Loan or its repayment on default. All notices will be sent by first-class mail and sent to the address shown in this Agreement.

**18. DEFAULT AND LIQUIDATION OF LOAN.** Subject to **Paragraph 3 PAYMENTS,** and the "first in, last out" nature of Seller's interest in the Loan, in the event of Default, or if Seller in its sole discretion should otherwise accelerate and liquidate the Loan, all Payments collected and received by Seller will be applied ratably as follows: first, to Expenses; second, to the unpaid principal amount of the Loan in proportion to the respective unpaid investments of Seller and Purchaser in the Loan at the time of Default; and third, to the respective accrued interest and other charges of Seller and Purchaser. Upon Borrower's Default, all Payments and Borrower Fees received from Borrower, whether designated for repayment of the Loan or undesignated, will be deemed intended for the repayment of the Loan in accordance with this Agreement.

**19. REMOVAL OF SELLER AS ADMINISTRATOR.** The Seller may be removed as the Loan's administrator under the following terms and conditions.

**a. Qualifying Events.** Upon the occurrence of any of the following events, Purchaser may notify Seller and assume the administration of the Loan and related guarantees and security agreements as well as demand any documentation or writings reasonably necessary to evidence proof of Purchaser's security interest and perfection.

> i. Seller fails to comply with Seller's fiduciary, contractual or legal obligations as provided under this Agreement or by state or federal law.

ii.    Seller petitions for or becomes subject to bankruptcy.

iii.    Seller commits any act of insolvency.

iv.    Seller is declared insolvent, is taken over, or otherwise closed by a governmental regulatory agency which has jurisdiction over Seller.

**b. Multiple Participants.** In the event of multiple participants in the Loan, the participating lender with the then largest share will have the option to assume administration. If any participant possessing this option does not exercise its right upon the demand of the other participants, the option will then pass to the participant with the next largest share. Unless otherwise agreed, participants possessing equal shares in the Loan will share equally in administration.

**c. Purchaser Rights.** Purchaser will have the right to notify and communicate with all Obligors of the Loan, and to direct them to pay any amounts due under the Loan directly to Purchaser or such other participant assuming administration of the Loan. Seller will join in this notice to Obligor upon request by Purchaser. Unless otherwise agreed, all remaining terms of this Agreement will survive Seller's removal as administrator until Purchaser's Investment is satisfied in full or the Loan is repurchased by Seller as provided in this Agreement.

**d. Loan Repayment.** Upon the occurrence of any of the events in this section, all Payments received from Borrower, whether designated for repayment of the Loan or undesignated, will be deemed intended for the repayment of the Loan in accordance with this Agreement.

**20. ASSIGNMENT.** Neither Purchaser nor Seller may sell, pledge, assign, sub-participate, or otherwise transfer its interest in the Loan, Loan security, Loan guaranty or rights or obligations under this Agreement without the prior written consent of the other party which will not be unreasonably withheld, except that Seller may sell other participations in the Loan without Purchaser's consent. The duties and benefits of this Agreement will bind and benefit the permitted successors and assigns of Seller and Purchaser. Upon receipt by Purchaser of a bona fide offer from a third party to purchase, sub-participate or otherwise acquire Purchaser's interest in the Loan, Purchaser will notify Seller of the offer and provide Seller with the right of first refusal. Seller will respond to Purchaser's offer in a timely manner. If Seller elects not to obtain Purchaser's interest, with Seller's consent Purchaser may transfer its interest to such third party.

**21. ATTORNEYS' FEES AND COSTS.** If any lawsuit or proceeding is brought by Seller or Purchaser to enforce the terms of this Agreement, the unsuccessful party will pay the prevailing party all its court costs and reasonable attorneys' fees incurred in bringing or defending such action.

**22. GENERAL PROVISIONS.**

      **a.**    **Partnership, Joint Venture, Agency, Trust.** Purchaser and Seller agree that this Agreement is not intended and is not to be construed to create a partnership, joint venture, agency, or trust relationship.

**b. Sale of Percentage.** This Agreement constitutes a sale of a percentage ownership interest in the Loan and is not and shall not be construed as an extension of credit by Purchaser to Seller. If federal or state laws or regulations, or a judicial decision, now or later provides that the purchase of a participation interest is an extension of credit, Purchaser and Seller agree that this Agreement shall constitute a security agreement under the Uniform Commercial Code and hereby grants to Purchaser a security interest in the Loan. Purchaser shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including but not limited to rights upon default. Seller authorizes Purchaser to file one or more financing statements against Seller with respect to the Loan from time to time.

**c. Applicable Law.** This Agreement is governed by the laws of Georgia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**d. Amendment, Integration And Severability.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by Purchaser and Seller. This Agreement is the complete and final expression of the agreement. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**e. Remedies.** Nothing in this Agreement will be construed to limit Purchaser's or Seller's remedies to those described in this Agreement. Purchaser and Seller are allowed all Remedies at law or in equity.

**f. Interpretation.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**g. Confidentiality.** Purchaser acknowledges that all information relating to the Loan is confidential and solely for Purchaser's use. Purchaser agrees not to share it with any other party.

**SIGNATURES.** By signing, Purchaser and Seller agree to the terms contained in this Agreement. Purchaser also acknowledges receipt of a copy of this Agreement.

**PURCHASER:**

**BAY POINT CAPITAL PARTNERS II, LP**

    **Bay Point Advisors, LLC**
    **It's: General Partner**

By:_____*Charles Andros*_____(SEAL)
     **It's Manager**

DocuSign Envelope ID: F94AC950-0C4E-427C-8EAD-EDA33F57C4F5

**SELLER:**

**FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company**

By: _____(SEAL)

Brant Frost IV, its Manager

# Exhibit B

Docusign Envelope ID: E5C06AAC-95EB-4E34-A848-A5DDCA1E4A30

# LAW OFFICES OF JOHN F. ISBELL LLC
## 3050 Peachtree Road NW, Suite 740
## Atlanta, Georgia 30305
## (404) 849-6665
## John@JFI-LAW.com

July 1, 2025

**VIA FEDERAL EXPRESS and EMAIL**

First Liberty Capital Partners, LLC          Joshua Mayes, Esq.
P.O. Box 2567                                The Robbins Firm
Newnan, Georgia 30263                        500 14th Street, NW
Attn: Brant Frost, IV                        Atlanta, GA 30318
                                             jmayes@robbinsfirm.com

Re:   **NOTICE OF DEFAULT; REMOVAL OF SELLER AS ADMINISTRATOR**; that certain Participation Agreement dated March 31, 2023 ("Participation Agreement"), by and between First Liberty Capital Partners, LLC ("Seller") and Bay Point Capital Partners II, LP ("Purchaser") concerning a loan to Stone Capital Group, LLC, dated March 31, 2023 (the "Loan");

Dear Mr. Frost:

     I represent Purchaser with respect to the Participation Agreement. We have been informed that Seller has ceased all operations, is under investigation by the Securities and Exchange Commission, and will not be forwarding to Seller any payments received on account of or pursuant to the Loan or the documents memorializing the Loan.

     Pursuant to Paragraph 19 of the Participation Agreement, Purchaser is authorized to "notify Seller and assume administration of the Loan and related guarantees and security agreements" if any of the following occurs:

     (1)   Seller fails to comply with Seller's fiduciary, contractual, or legal obligations as provided under this Agreement or by state or federal law;
     (2)   Seller petitions for or becomes subject to bankruptcy;
     (3)   Seller commits any act of insolvency; or
     (4)   Seller is declared insolvent, is taken over, or otherwise closed by a governmental regulatory agency which has jurisdiction over Seller.

     On account of the circumstances summarized above, Participant is authorized to remove Seller as the administrator of the Loan. **Participant hereby elects to remove Seller as the administrator of the Loan. Pursuant to Paragraph 19(C) of the Participation Agreement, Participant will inform all parties to the Loan of its election and will assume administration of the Loan immediately.**

Docusign Envelope ID: E5C06AAC-95EB-4E34-A848-A5DDCA1E4A30

Pursuant to Paragraph 19 of the Participation Agreement, Participant demands all documents and writings related to the Loan, including without limitation the documents memorializing the loan, all security agreements, all documents perfecting the security interest in the Loan, communications with the parties to the Loan, and a payment history for the Loan. Further, Participant demands that Seller immediately forward to Participant all amounts received on account of the Loan for application in accordance with the terms of the Participation Agreement and demands that any monies received on account of the Loan from the date hereof be immediately forwarded to Participant.

This letter does not constitute a waiver of, nor shall it be construed to waive or otherwise prejudice in any respect, Lender's rights to exercise any rights or remedies that may be available to it under the Participation Agreement, any other agreement, at law, or in equity. Participant reserves all rights.

Sincerely,

John Isbell

6D6CC80B776A406...

John F. Isbell

cc:  Charles Andros