## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action File No. 1:25-cv-03826-MLB** |
| **EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC** | |
| **Defendants, and** | |
| **FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC,** | |
| **Relief Defendants.** | |

### BRIEF IN OPPOSITION TO MOTION TO INTERVENE

One of Defendants' victims, Bay Point Capital Partners II, LP ("Bay Point"), has moved the Court to intervene in this Commission enforcement action in an effort to procure more favorable treatment of its claims at the expense of other victims. Specifically, Bay Point claims that it should be entitled to collect loan payments directly from certain borrowers because it invoked a contractual provision in its loan participation agreements prior to the appointment of the receiver in this

matter.  Even assuming that intervention is available (something that is at least questionable), the Court nevertheless should reject Bay Point's attempt to circumvent the claims process and improve its position at the expense of other investors.

I.    **FACTS**

   **A. Procedural Background**

   On July 11, 2025, the Commission filed this enforcement action alleging that Defendants, Edwin Brant Frost IV and various entities that he controlled, had engaged in a massive securities offering fraud amounting to a Ponzi scheme.  [Dkt. 1].  The Commission moved for an asset freeze and for the appointment of a receiver.  [Dkt. 2.]  Contemporaneously with the filing of the complaint, Defendants consented, without admitting or denying the allegations of the complaint, to:  1) the entry of a permanent injunction prohibiting them from violating the antifraud provisions of the securities laws, 2) an asset freeze over the Defendants and Relief Defendants; and 3) the appointment of a receiver.  [Dkt. 2-2 & 2-3.]  The same day, the Court entered an order freezing the assets of the Defendants and Relief Defendants and an order appointing S. Gregory Hays as the receiver over Defendant First Liberty Building & Loan, LLC ("First Liberty") and the Relief Defendants (collectively "Receivership entities").  [Dkt. 5 & 6.]

### B.  The Allegations

The Commission's complaint alleges that the Defendants offered investors the opportunity to fund certain high interest bridge loans.  These investments were formalized either through a loan participation agreement or a promissory note. Defendants represented that the interest and principal on these investments would be repaid by the borrowers via Small Business Administration or other commercial loans, which Defendants claimed they would help broker.  Investors were not involved in identifying the borrower, brokering the loan, or directing the use of loan funds and expected profits to be derived solely from the efforts of Defendants.

After signing a loan participation agreement or a promissory note, investors, including Bay Point, transferred money directly to First Liberty.  That money was then pooled together and purportedly used to make loans.  While Defendants did use some investor funds to make bridge loans, most loans defaulted, and the borrowers stopped making interest or principal payments on those loans.  Yet, First Liberty continued paying "interest" on those loans.  Since at least 2021, Defendants have used funds raised from new investors to make interest payments to other investors.

### C. Bay Point's Involvement as an Investor

Bay Point invested in three loans offered by First Liberty.  Each of Bay Point's investments is memorialized by a loan participation agreement.  While Bay

Point negotiated certain terms in the loan participation agreement, each loan participation agreement into which they entered contains many of the same provisions as the loan participation agreements entered into by other investors in both the loans in which Bay Point invested as well as the other loans First Liberty offered.  [*Compare* Dkt. No. 2-5 at 30-37 *with* Dkt. No. 18-2 at 24-48.]

All of Bay Point's investment were made after First Liberty was operating as a Ponzi scheme.  [Dkt. No. 2-5 at 6-9.]  Bay Point's first investment was made in December 2022, its second investment was made in February 2023, and its third investment was made in March 2023.  In total, Bay Point invested $5,400,000 with First Liberty.  At the time First Liberty ceased operations, Bay Point had received over $2,380,000 from First Liberty pursuant to the terms of its investment agreements, which amounts to approximately 44% of the principal it invested with First Liberty.  [Sept. 29, 2025 Declaration of Tiffany Kunkle ("Kunkle Dec.") ¶¶ 3-7.]

## II.    ARGUMENT

### A. Section 21(g) of the Exchange Act Prohibits Intervention in SEC Enforcement Actions without Commission Consent.

Section 21(g) of the Exchange Act, 15 U.S.C. § 77u(g), arguably bars third parties from intervening in enforcement actions by the Commission.  Section 21(g) states:

Notwithstanding the provisions of section 1407(a) of Title 28, or any other provision of law, no action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

Many district courts have held that section 21(g) creates an "impenetrable wall" between Commission enforcement actions and private actions that have the same questions of fact. *SEC v. Wozniak*, 1993 WL 34702, at *1–2 (N.D. Ill. Feb. 8, 1993) ("Only SEC's consent can open a door in that wall to permit a private party…to have access to this federal court in [an SEC enforcement action]."); *see also*, *SEC v. Nadel*, 2009 WL 3126266, at *1 (M.D. Fla. Sept. 24, 2009) (quoting *SEC v. Cogley*, 2001 WL 1842476, at *5 (S.D. Ohio Mar. 21, 2001)) ("[A]fter reviewing the legislative history, and reviewing other cases that have discussed this issue, this Court comes to the inescapable conclusion that Section 21(g) bars intervention."); *SEC v. Univ. Lab Techs., Inc.*, 2009 WL 723243, at *3 (S.D. Fla. Mar. 18, 2009) ("[Allowing intervention] opens the door to a serious, substantial evisceration of Section 21(g)."); *SEC v. Homa*, 2000 WL 1468726, at *1 (N.D. Ill. Sept. 28, 2000) ("Because the plain language of 15 U.S.C. § 78u(g) clearly bars [the proposed intervenor from] joining the SEC's enforcement action as a party, the Court denies the motion to intervene.").

Here, because the Commission has not consented to the proposed intervention, the plain text of section 21(g) and its legislative history mandate that the motion for leave to intervene should be denied.

Bay Point seeks to join this case under Federal Rule of Civil Procedure 24. The opening clause of 21(g) states, however, that "notwithstanding…any other provision of law," a Commission enforcement action may not be consolidated with private litigation.  "[A]ny other provision of law" necessarily includes Rule 24, which was enacted under the Rules Enabling Act.  28 U.S.C. § 2072; Fed. R. Civ. Pro. 24.  In addition, the operative language, "consolidated or coordinated," is best interpreted as including intervention because the language applies to *all* means of consolidating or coordinating private actions with Commission actions (*e.g.,* cross-claims, counterclaims and third-party claims).  *Homa*, 2000 WL 1468726, at *1.[1]

The Supreme Court has endorsed the broad interpretation of Section 21(g), albeit in *dicta*.  *Parklane Hosiery Co.*, 439 U.S. 322, 331-32 (1979).  In that case, the Court noted that allowing a judgment obtained by the Commission to

---

[1] *See e.g.*, *SEC v. Abdallah*, 2015 U.S. Dist. LEXIS 44396, at *7 (N.D. Ohio Mar. 30, 2015) (stating that "cross-claims are barred by the language of Section 21(g)); *SEC v. One or More Unknown Traders in the Common Stock of Certain Issuers*, 530 F. Supp. 2d 192, 194-95 (D.D.C. 2008) ("Courts have routinely held that [Section 21(g)] bars both cross-claims and counterclaims."); *SEC v. Thrasher*, 1995 U.S. Dist. LEXIS 10775, at *4 (S.D.N.Y. Aug. 2, 1995) (concluding that Section 21(g) bars third-party claims in SEC actions).

collaterally estop a defendant in subsequent litigation would not reward the plaintiff for sitting out the Commission action, "since the [plaintiff] probably could not have joined in the injunctive action brought by the SEC even had he so desired." *Id.* Citing section 21(g), the Court emphasized that "consolidation of a private action with one brought by the SEC without its consent is prohibited by statute." *Id.* at 332 n.17.

Congress enacted Section 21(g) to allow efficient resolution of Commission actions. *Nadel*, 2009 WL 3126266, at *1; *Univ. Lab Techs., Inc.*, 2009 WL 723243, at *3; *Cogley*, 2001 WL 1842476, at *5. The Senate Report on the 1975 amendments to the Securities and Exchange Act of 1934 that added section 21(g) identifies Congress's concern in passing the law: "Private actions frequently will involve more parties and more issues than the Commission's enforcement action, thus greatly increasing the need for extensive pretrial discovery." S. REP. 94-75, at 76 (1975) *reprinted in* 1975 U.S.C.C.A.N. 179, 254. "The Senate Committee in charge of [section 21(g)] observed that Commission enforcement actions and private suits for damages, though both civil in nature, 'are very different.'" *Aaron v. SEC*, 446 U.S. 680, 718 n.9 (1980) (Blackmun, J., conc. in part, diss. in part). Allowing third parties to intervene in Commission enforcement actions drains the resources of agency with excessive tangential litigation costs and impedes the Commission's mission, which is to protect all the defrauded investors and the

public at large.  *See SEC v. Everest Mgmt. Corp.,* 475 F.2d 1236, 1240 (2d Cir. 1972); *Nadel*, 2009 WL 3126266, at *1.

Indeed, when passing Section 21(g), Congress expressly referred to a case in which the Second Circuit Court of Appeals refused to allow intervention in a Commission enforcement action on policy grounds. S. REP. 94-75, at 76 (citing *Everest Mgmt. Corp.,* 475 F.2d 1236).  In denying the fraud victim's motion to intervene, the court in *Everest* held that "the complicating effect of the additional issues and the additional parties outweighs any advantage of a single disposition of the common issues." *Everest Mgmt. Corp.*, 475 at 1240.  By citing an intervention case in the Senate report, Congress signaled that using 21(g) to bar intervention fulfills the purpose of the law and allows for speedy resolution of agency action. Allowing defrauded investors to intervene would establish "a dangerous precedent," and "would undermine the efficient administration of this receivership and divert resources and the Receiver's efforts from activities intended to benefit the entire Receivership Estate." *Nadel*, 2009 WL 3126266, at *1.

Here, Bay Point claims that it has a right to payments from certain borrowers because it invoked a contractual provision in the three loan participation agreements it entered with First Liberty.  According to Bay Point, it should be allowed to "administer" those loans because it invoked this provision prior to the entry of the receivership order.  This proposed relief goes directly against the entire purpose of

the receivership.  Allowing Bay Point to segregate out assets from the receivership estate at the same time the receiver is marshalling assets and preparing a claims process, is an obvious "complicating effect" creating additional issues and unnecessary encumbrances, and it is exactly what section 21(g) is designed to avoid.  *Everest Mgmt. Corp.*, 475 F.2d at 1240.[2]

### B. Intervention Is Not Appropriate Under Rule 24.

Even those Courts that have not barred intervention under Section 21(g) have often disallowed intervention in Commission enforcement actions under Rule 24. *See SEC v. Prudential Securities*, 171 F.R.D. 1, 3-7 (D.C. Cir. 1997) (noting that although Section 21(g) may bar intervention in some circumstances, it did not bar post-judgment intervention, which was nevertheless unavailable under Rule 24); *SEC v. Falor*, 270 F.R.D. 372, 376-77 (N.D. Ill. 2010) (holding that judgment

---

[2] Not all courts have construed the phrase "consolidated and coordinated" in Section 21(g) of the Exchange Act to bar all forms of intervention.  *See, e.g.*, *SEC v. Torchia*, 2016 WL 7423189, at *2 (N.D. Ga. Jul. 1, 2016) (Duffey, J.).  In that case, the intervenors sought to intervene for the limited purpose of preventing the receiver's proposed sale of life insurance policies that the intervenors claimed to own and sought "to assert [claims] solely against the Receiver." *Id.* at *1.  Given the limited scope of the intervention, the court permitted intervention because "the scope of discovery will be limited, and the relevant information will be easily accessible by the Receiver." *Id.* at *2.  In contrast, Bay Point's motion in this case seeks to intervene "as a party to the Lawsuit *with full rights and participation*." [Dkt No. 18-1 at 20 (emphasis added)].

creditor of defendants could not intervene because their right to intervene was speculative); *SEC v. Callahan*, 2 F. Supp. 3d 427, 437-39 (E.D.N.Y. 2014) (holding that intervention by a lender was inappropriate under Rule 24 because intervention would inhibit the work of the receiver); *SEC v. TLC Investments and Trade Co.*, 147 F. Supp. 2d 1031, 1040 (C.D. Cal. 2001) (holding that the Receiver adequately protected the interests of victims who sought to intervene).  The same policies that underlie the broad interpretation of Section 21(g) compel the same result here.  *See Everest Mgmt. Corp.,* 475 F.2d at 1240 (affirming the denial of intervention under Rule 24 in part because of the additional resources that would need to be expended by the Commission).

Moreover, Bay Point cannot satisfy the requirements of Rule 24(a) of the Federal Rules of Civil Procedure. To intervene as of right, a party must establish that:

(1) his application to intervene is timely;

(2) he has an interest relating to the property or transaction which is the subject of the action;

(3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and

(4) his interest is represented inadequately by the existing parties to the suit.

*Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (citing *Athens Lumber Co. v. FEC*, 690 F.2d 1364, 1366 (11th Cir. 1982)). The proposed intervenor, Bay Point, has the burden to show that each of these four elements are met.  *See CFTC*

*v. Heritage Cap. Advisory Servs., Ltd.*, 736 F.2d 384, 386 (7th Cir. 1984); *see also*

*Little River Transport, LLC v. Oink Oink*, LLC, 2023 WL 3791781, at *4 (S.D. Fla.

April 13, 2023) (providing that proposed intervenor "bears the burden of

establishing each of these four requirements.") (citing *Purcell v. BankAtlantic Fin.

Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996)). "Failure to satisfy even one of [Rule

24(a)'s] requirements is sufficient to warrant denial of a motion to intervene as a

matter of right." *Heritage Cap. Advisory Servs., Ltd.*, 736 F.2d at 386.  Bay Point

cannot satisfy at least two of these elements.

> 1. *Bay Point Cannot Show that Disposition of this Action May Impair or Impede Its Ability to Protect Its Interest*

Courts have repeatedly held that a receivership claims process is the

appropriate forum for considering interests of creditors and shareholders.  *See e.g.,*

*SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992); *SEC v. Homa*, 17 Fed. App'x 441,

446 (7th Cir. 2001).  In *Homa*, the court affirmed denial of intervention as of right

where the proposed intervenor could pursue its claim with the receiver, who was

overseen by the district court:

> In *Heritage Capital*, this court rejected a claim of intervention as
> of right because the party wishing to intervene could "assert [its]
> claim in the claims procedure established by the receiver and
> supervised by the district court." As noted in that case, "there is no
> question that [the proposed intervenor] may obtain district court
> review of any unfavorable decision of the receiver before the
> receiver disburses funds to other creditors." Likewise, [putative
> intervenor's] claim would not be impaired, because a forum is

> available under the Receiver's proposed claims procedure, with
> rights of appeal to the district court.

*Homa*, 17 F. App'x at 446 (internal citations omitted); *see also SEC v. JCS Enters.,*

*Inc.*, 2015 WL 13950381, at *1 (S.D. Fla. Nov. 3, 2015) (denying motion to

intervene because, among other reasons, proposed intervenor, "does not provide

evidence that the disposition of the action through the Receivership may impede or

impair his ability to protect his interest. Courts have repeatedly held that a

receivership claims process is the appropriate forum for considering interests of

secured creditors and allowing secured creditors to protect their interest."); *CFTC v.*

*Chilcott Portfolio Mgmt., Inc.*, 725 F.2d 584, 586-87 (10th Cir. 1984) (discussing *A*

*Treatise on the Law and Practice of Receivers*, § 541(a), (3rd Ed. 1959), and

affirming district court denial of motion to intervene because the court was "not

impressed by [proposed intervenor's] argument.  Like the district court, we believe

the claims procedures set up by the Receiver will permit [proposed intervenor] to

protect his claimed interest in the assets presently under the control of the

Receiver.").  The prevailing law simply does not support Bay Point's largely

unsupported contention that the claims process is insufficient to protect its interests.

[*See* Dkt. No. 18-1 at 15-16.]

The claims process, and the Court's oversight of the receiver, ensure

protection of the interests of Bay Point, other investors, and creditors.  As

demonstrated by the law cited above, Bay Point's proposed intervention is a

significant departure from how claims in a receivership matter are typically handled. Bay Point's contention that it should be treated differently than other investors simply because it notified First Liberty of its desire to administer the loans in which it was a participant is without merit. As such, the request for intervention should be denied.

### 2. Bay Point's Interests Are Adequately Protected

The Commission's and an equity receiver's adequate representation of all parties is *presumed* and must be rebutted by a proposed intervenor. *See CFTC v. Eustace*, 2005 WL 2862945, at *2 (E.D. Pa. Oct. 31, 2005) ("[O]nce a receiver has been appointed, and the parties seeking relief or intervention have the same goal, *i.e.*, protection of investors, there is a presumption that the receiver will adequately represent all parties."); *Ruthardt v. U.S.*, 303 F.3d 375, 386 (1st Cir. 2002) ("Adequacy is presumed, although rebuttably so, where a government agency is the representative party."). In *SEC v. Byers*, the court denied intervention, finding that the putative intervenors failed to show that the Commission and the federal receiver would not adequately represent their interests:

> The Proposed Intervenors have not shown that the Receiver and SEC are not adequately representing their interests in this case. The position of the Proposed Intervenors is no different from that of the other creditors and victims in this case, and, as set forth in my Prior Decision, [a]s a practical matter, it does not make sense to allow individual victims and creditors to intervene as parties. There are allegedly 1,400 victims who invested in approximately sixty securities offerings that raised more than $250 million. There are dozens of creditors with divergent claims

13

and interests. There is a complex web of some 120 Wextrust entities and affiliates operating throughout the world.  In these circumstances, it would not be efficient or effective to permit individual creditors to intervene as parties.

2009 WL 212780, at *1 (S.D.N.Y. Jan. 30, 2009) (internal citations omitted); *see also Chilcott Portfolio*, 725 F.2d at 587 ("Like the district court, we believe the claims procedures set up by the receiver will permit [the intervenor] to protect his claimed interest in assets presently under the control of the Receiver."); *SEC v. Behrens*, 2009 WL 2868221, at *1 (D. Neb. Sept. 1, 2009) ("[The intervenor] has not shown why the claims procedure instituted by the Receiver is insufficient to protect any legitimate interests she may have in the subject property.  The Receiver is obligated to consider her claims as well as those of other claimants, including the investors allegedly defrauded by the defendants. Disbursal of the assets is subject to the Court's approval."); *CFTC v. Lofgren*, 2003 WL 21639118, at *3 (N.D. Ill. July 9, 2003) (denying third-party's motion to intervene).

Further, the *Lofgren* court analyzed the interests of the government agency, the receiver, and the proposed intervenor:

Two potential parties represent [the intervenor's] interests, the CFTC and the Receiver. The CFTC's goal is to *protect the public at large and to stop and deter the future violations of the law*. These goals differ slightly from [the intervenor's] desire to *maximize his own recovery*. Thus, it would appear that the CFTC will adequately represent [the intervenor's] interests insofar as they are primarily concerned with preventing defendants from further dissipating the funds. On the other hand, the Receiver's interests could potentially conflict with [the intervenor's] goal of maximizing his own recovery. The Receiver [sic]

> is not concerned with maximizing [the intervenor's] individual recovery, but rather is concerned with *maximizing distribution to defrauded investors as a collective group*. In this sense it could be argued that the receiver will not adequately represent [the intervenor's] interests, particularly in this case, where the Receiver has indicated a hesitancy to distribute monies to [the intervenor].

2003 WL 21639118 at *3 (emphasis added). After recognizing the potential tension between the objectives of the proposed intervenors, on one side, and the receiver, on the other side, the *Lofgren* court found that "[t]his *potential* for inadequate representation *should not serve as sufficient grounds* for allowing intervention however." *Id*. (emphasis added). That court concluded that the proposed intervenor: "protects his interest by filing claims with the Receiver through the claims procedure established by the Receiver and supervised by this Court.  If [the proposed intervenor] disagrees with the Receiver's determinations he may challenge those determination in this Court by suing the Receiver directly, rather than by [intervention.]" *Id.*

Bay Point's argument for intervention is based on the faulty premise that it does not stand in the same shoes as other investors.  But it does.  Bay Point paid money to First Liberty and that money was pooled with other investors and then used to further Defendants' fraudulent scheme.  Just like the claims of the other investors, Bay Point's claims may proceed through the receivership process, with the oversight of the Court.  *See, e.g., Behrens*, 2009 WL 2378741 at *3 ("The court agrees with the [SEC] that [the intervenor] has not shown why the claims process

instituted by the district court and the receiver are [*sic*] inadequate to protect her legitimate interests in the subject property.  She has not shown why her claims should be treated any differently from the defendants' other creditors, and is not entitled to intervention as of right under Fed. R. Civ. P. 24(a)(2)."); *Lofgren,* 2003 WL 21639118 at *3.

In due course, the Receivership claims process will be proposed by the Receiver (with the opportunity of all potential claimants, including Bay Point to file objections), and overseen and approved by the Court. The process will allow: (i) Bay Point and other creditors to assert their claims; and (ii) the Court to determine the value and priorities of those claims in a single, efficient process that comports with due process requirements.  This process protects Bay Point's interests, and the Motion should be denied.

## C. Bay Point's Request for Permissive Intervention Should Be Denied.

Permissive intervention can be appropriate if: (1) a movant's claim or defense and the main action have a question of law or fact in common, and; (2) the proposed intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b)(3).  Bay Point cannot meet either element.

First, Bay Point's contractual claims against certain receivership entities are not a claim or defense that has a common question of law or fact with the

Commission's enforcement action.  This matter was brought under the federal securities laws—it is not predicated on contract law.  As such, Bay Point cannot satisfy the first element.  Failure to satisfy one element is enough to reject permissive intervention. *See, e.g.*, *JCS Enters., Inc.*, 2015 WL 13950381, at *2. But Bay Point cannot satisfy the second element either.

Intervention would unduly delay and prejudice the adjudication of the rights of the parties in this case.  If the Court were to grant intervention and grant the relief Bay Point is requesting, other investors will be prejudiced.  Allowing Bay Point to administer the loans in which it participated would be highly detrimental to the other individuals who invested in those loans.  Rather than participating in a claims process overseen by this Court, those individuals would be left to rely on the efforts of Bay Point for any recovery.[3]

Moreover, to allow Bay Point to divert assets and property from the receivership will harm all investors.  Defendants were operating First Liberty as a

---

[3] Given that Bay Point negotiated certain terms in its investment agreements that favor it at the expense of other investors, it is virtually guaranteed that Bay Point's administration of these loans would be highly inequitable.  [*See* Kunkle Dec. ¶ 8.] Specifically, Bay Point negotiated a clause in two of its agreements that provides that its "payout position is 'first out'", meaning that Bay Point can administer the loans to pay itself back before any other investor receives a payment. [Dkt. No. 19-2 at 35 & 43.]   Additionally, under the terms of one of Bay Point's agreements, it is entitled to 25% annualized interest on its investment even though the agreement clearly states that the borrower is only obligated to pay 18% interest on the loan. [*Id*. at 26.]  The only way to fulfill that contractual provision would be to divert money from other investors.

Ponzi scheme at least as far back as 2021, and investor funds were pooled together and used not only to fund new loans, but also to pay interest on existing loans and loans that had defaulted.  Allowing Bay Point to isolate the payment streams and assets securitizing three loans when it received Ponzi payments in the form of interest payments from Defendants' pooled assets would prejudice other investors. Resolving Bay Point's claims in the same claims process as all other First Liberty investors will ensure that there is a fair and equitable distribution of Defendants' assets.

In addition to harming investors, allowing Bay Point to intervene will cause the Commission, the receiver and the Court to expend unnecessary resources. Other investors who signed loan participation agreements would rush to the Court seeking similar relief, causing significant delay in the Commission's case and expense to the Receivership Estate.  Requiring the Receiver to spend his scarce time and the receivership estate assets to litigate Bay Point's (and possibly others) intervention efforts would delay the administration of the receivership estate and waste its limited assets, and also frustrate the Commission's case.  As such, Bay Point cannot meet either element of permissive intervention, and the Motion should be denied. *See, e.g.*, *JCS Enters., Inc.*, 2015 WL 13950381, at *2 (denying permissive intervention because putative intervenor's proposed claims "would unduly delay the disposition of this matter … would potentially encourage other

non-party creditors to seek intervention … [and] allowing intervention by one party would inevitably cause delay in [the receivership process]").

### D. Intervention Would Be Futile

The Court should also deny the motion to intervene because Bay Point's ultimate goal, a declaration that it is entitled to administer various loans, is futile. While normally courts are hesitant to decide a motion to intervene on the ultimate merits of the claim of the intervenor, they will do so if the allegations are frivolous on their face. *Anderson v. City of Alpharetta*, 770 F.2d 1575, 1580 (11th Cir. 1985) (affirming denial of an application to intervene where the intervenors' claims were, among other deficiencies, "futile" and would be "promptly dismissed for lack of standing").

Bay Point's requested declaratory relief is futile because Bay Point is no different than any other defrauded investor and thus not entitled to preferential treatment. *SEC v. Elliott,* 953 F.3d at 1569-70 (to "allow any individual to elevate his position over that of other investors ... would create inequitable results, in that certain investors would recoup 100% of their investment while others would receive substantially less."). The fact that Bay Point supposedly exercised its contractual right to administer these loans before the appointment of the receivership does not alter this conclusion because this Court's equitable powers permit it to suspend state

law claims that may harm the receivership or create preferential treatment vis á viz other investors.

The decision in *SEC v. Torchia*, 2016 WL 2996902 (N.D. Ga. May 25, 2016), is instructive. There, certain buyers who had purchased life insurance policies from the receivership entity (Credit Nation) before the appointment of a receiver asked the Court to order the receiver to transfer title of those policies to them. Credit Nation had retained title of those policies after the sale so that it could service the policies on behalf for the buyers. Judge Duffey rejected that argument, opining:

> Even where life insurance policy investors may well be the actual beneficiaries and may well have valid legal claims, a court sitting in equity has the discretionary authority to deny state law remedies as inimical to the receivership. It is well-established that equitable principles may supersede rights an investor would have under other law to recover its assets through tracing.

2016 WL 2996902 at *4 (citations and quotations omitted). *See also*, *Liberte Capital Group LLC v. Capwill*, 148 Fed. Appx. 426, 434 (6th Cir. 2005) ("[A] court sitting in equity has the discretionary authority to deny state law remedies as inimical to the receivership."); *United States v. Vanguard Inv. Co., Inc.*, 6 F.3d 222, 226 (4th Cir. 1993) (same).

Similarly, this Court has the discretion to deny Bay Point's state law contract claims to administer the loans at issue. Such claims are inimical to the receivership because, if granted, Bay Point would undoubtedly use the loan proceeds to pay

itself back before any other investor receive a payment and would likely claim entitlement to 25% annualized interest on its investment, even though the agreement clearly states that the borrower is only obligated to pay 18% interest on the loan.  Such actions would divert money from other investors.

Finally, the fact that Bay Point's funds were used to acquire a specific asset within the receivership estate does not give Bay Point a priority claim to that asset. *SEC v. Hyatt* 2016 WL 2766285 at \*9-10 (N.D. Ill May 13, 2016) ("Calculating distributions based on the investor contracts would be particularly unfair in this case, as it would result in some investors receiving more money than others simply because the fraudulent contract they signed entitled them to a greater return on their investment.")  Enforcing the terms of Bay Point's contract would be inequitable as it would "elevate the position of [certain] victims on the basis of the actions of the defrauders." *United States v. Durham*, 86 F.3d 70, 72 (5th Cir. 1996) (internal quotations and citation omitted).

## III.    CONCLUSION

For the foregoing reasons, the Court should deny the motion to intervene.

Dated:  September 30, 2025.

Respectfully submitted,

*/s/ Kristin W. Murnahan*
Kristin Murnahan
Senior Trial Counsel
Georgia Bar No. 759054

Email:  murnahank@sec.gov

M. Graham Loomis
Supervisory Trial Counsel
Georgia Bar No. 457868
loomism@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
950 East Paces Ferry Road, NE, Suite 900
Atlanta, GA 30326
Tel:(404) 842-7600
Tel:(404)-842-7666

## <u>CERTIFICATION OF COMPLIANCE</u>

This is to certify that the foregoing was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 (B).

<u>*/s/ Kristin W. Murnahan*</u>
Kristin W. Murnahan

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system which will send notice of such filing to counsel of record.

This 30th day of September 2025.


*/s/ Kristin W. Murnahan*
Kristin W. Murnahan