UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC,<br><br>Defendants, and<br><br>FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC,<br><br>Relief Defendants. | Civil Action File No.<br>1:25-cv-3826-MLB |

## AFFIDAVIT OF S. GREGORY HAYS

Affiant, **S. GREGORY HAYS**, being first duly sworn, deposes and states under oath as follows:

1. My name is S. Gregory Hays and I am: a) over twenty-one years of age; b) of sound mind; c) have personal knowledge of the facts stated herein and am otherwise competent to testify to the facts contained in this affidavit (the "**Affidavit**"); and d) authorized to make this Affidavit.

2. I am the Court-Appointed Receiver ("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in the above-captioned case (the "**Case**" or "**Receivership**") for the purposes of marshaling and preserving all assets of First Liberty Building & Loan, LLC, First Liberty Capital Partners LLC ("**First Liberty**"), First National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC ("**Receivership Entities**").

3. This Affidavit is offered in support of the *Memorandum in Opposition by Receiver to Bay Point Capital Partners II, LP's Motion to Intervene* (the "**Objection**") filed contemporaneously herewith. In *Bay Point Capital Partners II, LP's Motion to Intervene* [Doc. No. 18] (the "**Motion**"), Bay Point asserts that it invested in three separate bridge loans made by First Liberty as follows: (i) a loan made on or about December 19, 2022 to 2406 Cancer Care, LLC ("**Cancer Care**") in the original principal amount of $6,500,000; (ii) a loan to Full Circle, LLC ("**Full Circle**") in the original principal amount of $2,750,000 (the "**Full Circle Loan**"); and (iii) a loan to Stone Capital Group, LLC ("**Stone Capital**" and collectively with Cancer Care and Full Circle, the "**Borrowers**") in the original principal amount of $3,750,000 (the "**SC1 Loan**") (collectively, the "**Three Bridge Loans**"). Bay Point alleges it is entitled to take control of and enforce the Three Bridge Loans pursuant to certain Participation Agreements entered into with First Liberty.

2

4. As of the filing of this Affidavit, the records available to the Receivership are incomplete. Although I have access to certain bank records, I continue to investigate the money flows in and out of the Receivership Entities and at a point in the future, likely several months from now, will be able to provide a detailed analysis to the Court. However, I am not in a position to provide this information to the Court at this time. Accordingly, the statements contained herein are preliminary and subject to revision.

5. The Motion does not account for the investments made by Bay Point or any distributions it might have received. Accordingly, in reviewing the Motion, I directed my staff to review and investigate, to the extent possible, payments received from and made to Bay Point. Attached hereto as Exhibit "A" is a schedule showing money received from and paid to Bay Point based on the bank information currently available to the Receiver. In total, Bay Point invested $5,400,000 with First Liberty and received at least $2,077,288.53 from First Liberty through 2024. All of Bay Point's funds were deposited into one account and comingled with other funds and all payments made to Bay Point came from that same account which contained funds received from both investors and borrowers.

6. I also directed my staff to investigate when payments were received from the Borrowers in order to see if there was some correlation between the payments made to Bay Point and the payments received from the Borrowers. Based

3

on the information available to me, the last payment made on account of the Full Circle Loan was made on May 28, 2024 in the amount of $22,500. Full Circle has advised my counsel that it disputes liability to the Receivership and I have directed my counsel to investigate this matter and follow up with counsel for Full Circle. I could not locate any payments made on account of the SC1 Loan from the records currently in my possession; however, the SC1 Loan and certain related loans have been tied up in enforcement litigation pending in Florida and Louisiana since well before my appointment. I have recently met with the principal of Cancer Care which has just recently started making interest payments to the Receivership. Cancer Care has alleged it made other payments to First Liberty, but I have not yet verified those payments and I have directed my attorneys to investigate and enforce this loan or, in the alternative, seek a work out or resolution of the loans of Cancer Care.

7.  As of the filing of this Affidavit, I have not yet been able to (i) confirm that the monies received from Bay Point were actually transferred to the specified Borrowers or (ii) to link any specific payments from borrowers to payments made to Bay Point. There is also no evidence in the company records available to me that Bay Point's investments were ever segregated or that Bay Point demanded the segregation of its investments prior to seeking to enforce its remedies under the Participation Agreements in June, 2025.

8. I also reviewed company records to determine whether there were other participating investors in the Three Bridge Loans at issue and located a list contained in the company records showing the investors in certain of the loans made by Frist Liberty including the Three Bridge Loans. I have not attached this list to this Affidavit to protect the privacy of the investors listed therein and because I have not verified that these investors actually made the investments listed. It will likely be several more months before the Receivership will be able to verify actual amounts invested by individual investors.

9. With respect to the Cancer Care loan in the amount of $6.5 Million, company records indicate that there were twenty-eight investors overall, including Bay Point and at least two insiders. Although Bay Point had the largest single investment, its investment was less than 50% of the overall loan total. Similarly, with respect to the SC1 Loan, there are twenty-five investors including Bay Point and at least one insider and, although Bay Point holds the largest single loan, its investment total is less than half of the total amount of the loan. Finally, with respect to Stone Capital, there are fifteen investors, including Bay Point (but no apparent insiders) and Bay Point's investment, while the single largest investment appears to be less than half of the total amount invested. Again, as I stated above, this is based solely on a list contained in the company records and I have not verified any of the other investor amounts.

10. In summary, the investigation to date indicates that funds received by and paid to Bay Point were commingled and pooled together by First Liberty as part of a common fund. Bay Point appears to have already received a return of approximately forty percent of the amount invested by it and I do not yet know how that compares to the pre-Receiver returns made to other investors. Determining and allocating returns to the investors in this case will require further investigation and will not likely be possible for several more months.

11. Based on information currently available to me, I have concluded that: a) the relief sought in the Motion will severely prejudice and complicate the Receivership by interfering with current loan collection and investigative efforts being pursued by my office; b) Bay Point's funds appear to have been comingled with other investor funds and, as such, were part of common fund against which other investors certainly hold claims; c) Bay Point has already received a return of approximately forty percent of its principal investment and I do not currently know how that compares to other pre-Receiver investor returns, with the possible result that Bay Point could receive a higher return than other investors if its Motion is granted; d) granting the Motion could be prejudicial to the sixty-five other investors in these loans whose interests may not be protected by Bay Point and who may also be unaware of this Motion as well of other investors in the Receivership; and e) Bay

Point should participate in the claims process just like every other similarly situated investor. For those reasons, I recommend to the Court that the Motion be denied.

_____
S. Gregory Hays

Sworn and subscribed before me
This 30th day of September, 2025

_____
Notary Public
My commission expires: 3 /14 /2026

# EXHIBIT A

## Exhibit A

| Date | Transaction Type | Name | Received From | Paid To | Memo |
|---|---|---|---|---|---|
| 12/21/22 | Wire | BAY POINT CAPITAL PARTNERS II LP | $3,000,000.00 | | 2406 CANCER CARE, LLC CUREPOINT - LOAN CLOSING |
| 01/05/23 | ACH | Bay Point Investments | | $13,333.30 | |
| 01/30/23 | ACH | Bay Point Investments | | $39,999.90 | |
| 02/10/23 | Wire | BAYPOINT ADVISORS | | $20,000.00 | |
| 02/10/23 | Wire | BAY POINT CAPITAL PARTNERS II LP | $1,000,000.00 | | NORMAL RECOVERY - LOAN CLOSING BAY POINT CAPITAL - FULL CIRCLE LLC |
| 02/28/23 | ACH | Bay Point Investments | | $39,999.90 | |
| 02/28/23 | ACH | Bay Point Investments | | $7,999.92 | |
| 03/31/23 | ACH | Bay Point Investments | | $40,000.00 | |
| 03/31/23 | ACH | Bay Point Investments | | $13,333.33 | |
| 04/28/23 | ACH | Bay Point Investments | | $40,000.00 | |
| 04/28/23 | ACH | Bay Point Investments | | $13,333.33 | |
| 05/15/23 | Wire | BAY POINT CAPITAL PARTNERS II LP | $1,400,000.00 | | STONE CAPITAL GROUP, LLC PART. FUNDING WITH BAY POINT ADVISORS |
| 05/18/23 | Wire | BAYPOINT ADVISORS | | $28,000.00 | |
| 05/30/23 | ACH | Bay Point Investments | | $40,000.00 | |
| 05/30/23 | ACH | Bay Point Investments | | $18,666.67 | |
| 05/30/23 | ACH | Bay Point Investments | | $13,333.33 | |
| 06/29/23 | ACH | Bay Point Investments | | $40,000.00 | |
| 06/29/23 | ACH | Bay Point Investments | | $13,333.33 | |
| 06/29/23 | ACH | Bay Point Investments | | $9,955.52 | |
| 08/01/23 | ACH | Bay Point Investments | | $72,000.00 | |
| 09/05/23 | ACH | Bay Point Investments | | $72,000.00 | |
| 09/29/23 | ACH | Bay Point Investments | | $72,000.00 | |
| 11/01/23 | ACH | Bay Point Investments | | $72,000.00 | |
| 11/30/23 | ACH | Bay Point Investments | | $72,000.00 | |
| 01/02/24 | ACH | Bay Point Investments | | $72,000.00 | |
| 01/31/24 | ACH | Bay Point Investments | | $72,000.00 | |
| 02/15/24 | Wire | BAYPOINT ADVISORS | | $10,000.00 | NORMAL RECOVERY , EXTENSION FEE |
| 03/01/24 | ACH | Bay Point Investments | | $72,000.00 | |
| 03/29/24 | ACH | Bay Point Investments | | $72,000.00 | |
| 05/02/24 | ACH | Bay Point Investments | | $72,000.00 | |
| 05/07/24 | ACH | Bay Point Investments | | $72,000.00 | |
| 06/03/24 | ACH | Bay Point Investments | | $72,000.00 | |
| 06/07/24 | ACH | Bay Point Investments | | $30,000.00 | |
| 07/01/24 | ACH | Bay Point Investments | | $72,000.00 | |
| 08/01/24 | ACH | Bay Point Investments | | $72,000.00 | |
| 08/13/24 | Wire | BAY POINT INVESTMENTS | | $10,000.00 | |
| 08/30/24 | ACH | Bay Point Investments | | $72,000.00 | |
| 10/31/24 | ACH | Bay Point Investments | | $72,000.00 | |
| 11/29/24 | ACH | Bay Point Investments | | $72,000.00 | |
| 12/19/24 | Wire | BAY POINT INVESTMENTS | | $300,000.00 | |
| 12/30/24 | ACH | Bay Point Investments | | $72,000.00 | |
| 05/07/25 | Wire | BAYPOINT ADVISORS | | $10,000.00 | EXTENSION FEE - NORMAL RECOVERY |
| 06/13/25 | Wire | BAYPOINT ADVISORS | | $30,000.00 | LOAN EXTENSION FEE 2406 CANCER CARE |
| | | | $5,400,000.00 | $2,077,288.53 | |