IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br>v.<br><br>EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC,<br><br>Defendants, and<br><br>FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC,<br><br>Relief Defendants. | Civil Action File No.<br><br>1:25-cv-3826-MLB |

## MOTION FOR LEAVE OF COURT TO INITIATE ACTION AGAINST RECEIVERSHIP ESTATE

COME NOW Movants Riverdawg, LLC ("**Riverdawg**"), No Free, LLC ("**No Free**"), and Holt Knob Holdings, LLC ("**Holt Knob**" and collectively with Riverdawg and No Free, the "**Movants**") and file this *Motion for Leave of Court to Initiate Action Against Receivership Estate* showing the Court as follows:

1

I.  The Receivership Action

1.  On July 10, 2025, the Securities and Exchange Commission ("**SEC**") filed a Complaint against First Liberty and other parties, thereby initiating the above-styled action (the "**Receivership Action**").

2.  On July 11, 2025, this Court entered the *Order Appointing Receiver* (Doc. No. 6) (the "**Receivership Order**") *inter alia*: (i) appointing S. Gregory Hays as the Receiver for the estate of First Liberty Building & Loan, LLC, First Liberty Capital Partners LLC, First National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC (the "**Receivership Entities**"), and (ii) staying "all civil legal proceedings of any nature… involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) the Receivership Entities…; or, (d) the Receivership Entities' past or present officers, directors, managers, agents, or general or limited partners…." Receivership Order at 16.

3.  The Receivership Order granted the Receiver "all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the Receivership Entities… in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Federal Rule of Civil Procedure 66." Receivership Order at 3.

4. The Receiver has the sole authority and ability to pursue and preserve the claims of the estate of the Receivership Entities. Pursuant to the Receivership Order, "[t]he Receiver shall assume and control the operation of the Receivership Entities and shall pursue and preserve all of their claims. Receivership Order at 4.

5. The Receiver has the power and duty "to pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate." Receivership Order at 5.

6. Through Movants' own due diligence, Movants first learned of First Liberty's closure following receipt of the public notice (the "**Public Notice**") issued by First Liberty on or about June 27, 2025, stating as follows:

> We regret to inform you that as of Friday, June 27, 2025, First Liberty has ceased all business operations. First Liberty will no longer be accepting promissory note investments or bridge loan participations, and it will not be making any new bridge loans. Interest payments on existing promissory notes, bridge loan participation interests, and other investment programs are indefinitely suspended. First Liberty is cooperating with federal authorities as part of an effort to accomplish an orderly wind-up of the business. First Liberty employees are not authorized to make any further communications at this time regarding the ongoing situation, and no one at the company will be available to answer phone calls or respond to email inquiries. First Liberty hopes to provide additional information and updates in the near future regarding the status of the company's efforts to effectuate an orderly wind-up of the business.

7. Based on Movants' review of such Public Notice, Movants were put on notice of First Liberty's default of its obligations under the Purported Loans (as defined below) to Movants. The Public Notice stated that First Liberty payments are suspended. Therefore, Movants were unable to make payment to First Liberty.

8. As a result of the Receivership Order, the Receiver stands in the shoes of First Liberty and the other Receivership Entities.

II.   First Liberty's Purported Loans to Movants

9. Movants entered into transactions with Receivership Entities which were purportedly styled as loans. Movants do not concede that the transactions were actually bona-fide business loans.

10. Movants operated in good faith with respect to all their dealings with Frost and the Receivership Entities. To the extent that the Purported Loans were not actually bona-fide business loans, Movants were acting in good faith and had no knowledge of the nefarious activities of Frost and the Receivership Entities.

11. To the extent that the Purported Loans were actually bona-fide business loans, Movants constitute innocent bona-fide good faither borrowers. Movants did not know that Frost and the Receivership Entities were operating a Ponzi scheme. At the times that the Movants conducted the Purported Loans transactions with First Liberty, the Movants had no reason to believe that First Liberty was anything other than a legitimate lender.

### A.   *The First Purported Loan (First Liberty to No Free)*

12. On or about December 28, 2023, Movant No Free executed and delivered to First Liberty: (i) a Promissory Note in the original principal amount of $250,000.00 (as amended or modified, the "**First Note**"), and (ii) a Deed to Secure Debt, Assignment of Rents and Security Agreement recorded in the records of the Clerk of Superior Court of Fulton County, Georgia (as amended or modified, the "**First Security Deed**"), evidencing No Free's intent to borrow funds from First Liberty as lender (the "**First Purported Loan**"). Pursuant to such instruments, No Free granted First Liberty a security interest in certain real property located in Fulton County, Georgia (the "**Fulton Property**") to secure the First Purported Loan.

13. On or about June 11, 2024, No Free executed and delivered to First Liberty (i) a Modification to Promissory Note, and (ii) a Modification to Deed to Secure Debt, Assignment of Rents and Security Agreement (collectively, the "**First Loan Modification**") whereby No Free and First Liberty intended to modify the First Purported Loan and First Security Deed to increase the principal amount to $500,000.00.

14. On or about June 11, 2024, No Free received additional funds from First Liberty at the time of the purported modifications of the First Purported Loan.

5

B.  *The Second Purported Loan (First Liberty to Riverdawg)*

15.  On or about September 17, 2024, Movant Riverdawg executed and delivered to First Liberty: (i) a Promissory Note in the original principal amount of $700,000.00 (as amended or modified, the "**Second Note**"), and (ii) a Deed to Secure Debt, Assignment of Rents and Security Agreement recorded in the records of the Clerk of Superior Court of Towns County, Georgia (as amended or modified, the "**Second Security Deed**"), evidencing Riverdawg's intent to borrow funds from First Liberty as lender (the "**Second Purported Loan**"). Pursuant to such instruments, Riverdawg granted First Liberty a security interest in certain real property located in Towns County, Georgia (collectively, the "**Towns Properties**") to secure the Second Purported Loan.

16.  The Second Note states that the maturity date of the Second Purported Loan is September 18, 2025. The Second Security Deed executed and delivered in conjunction with the Second Note states that the maturity date is September 28, 2025. Therefore, a conflict exists between the two documents and such conflict is resolved against First Liberty as the drafter of the documents. Therefore, the maturity date of the Second Purported Loan originally was actually September 28, 2025, to the extent that an actual loan existed.

17.  Pursuant to the terms of the Second Note, Riverdawg had the right to extend the maturity date of the purported Second Purported Loan for an additional

six (6) months upon notice to First Liberty. Riverdawg issued such notice to First Liberty regarding Riverdawg's exercise of its right to extend the maturity date by letter dated September 17, 2025. A true and correct copy of such September 17, 2025 letter is attached hereto and incorporated herein as **Exhibit "A"**.

    C.   *The Third Purported Loan (First Liberty to Riverdawg)*

18.   On or about December 9, 2024, Movant Riverdawg executed and delivered to First Liberty a Promissory Note in the original principal amount of $355,000.00 (as amended or modified, the "**Third Note**") evidencing Riverdawg's intent to borrow funds from First Liberty as lender (the "**Third Purported Loan**"). The Receivership Entities, represented that this Third Purported Loan would be "rolled up" with and included in the Fourth Purported Loan described below.

    D.   *The Fourth Purported Loan (First Liberty to No Free)*

19.   On or about December 19, 2024, Movant No Free executed and delivered to First Liberty: (i) a Promissory Note in the original principal amount of $3,500,000.00 (as amended or modified, the "**Fourth Note**") evidencing No Free's intent to borrow funds from First Liberty as lender (the "**Fourth Purported Loan**"). (The First Note, Second Note, Third Note, and Fourth Note are collectively referred to herein as the "**Purported Notes**"). (The First Purported Loan, Second Purported Loan, Third Purported Loan, and Fourth Purported Loan are collectively referred to herein as the "**Purported Loans**").

20. <u>The Bryan County, Georgia Security Deed</u>. On or about December 19, 2024, Movant No Free executed and delivered to First Liberty Building and Loan, as lender, that certain Commercial Deed to Secure Debt and Security Agreement recorded in the records of the Clerk of Superior Court of Bryan County, Georgia (as amended or modified, the "**Bryan Security Deed**"). Pursuant to such instrument, No Free granted First Liberty Building and Loan a security interest in certain real property located in Bryan County, Georgia (the "**Bryan Property**") to secure the Fourth Purported Loan. The Bryan Security Deed purports to secure No Free's indebtedness to First Liberty Building and Loan in the sum of $3,500,000.00 pursuant to the Fourth Note.

21. <u>The North Carolina Deed of Trust</u>. On or about the time of the Fourth Purported Loan, on or about December 19, 2024, Movant Holt Knob executed and delivered to First Liberty a document titled "North Carolina Deed of Trust" (the "**Deed of Trust**") regarding certain originally unidentified property in Macon County, North Carolina. Such Deed of Trust purports to grant certain rights to First Liberty as beneficiary via and through The Neumann Law Office, PLLC Attorneys at Law (the "**Trustee**") as Trustee. A true and correct copy of the Deed of Trust which Holt Knob executed at closing is attached hereto and incorporated herein as **Exhibit "B"**.

22.  After the execution and delivery of the Deed of Trust by Holt Knob to First Liberty, the Deed of Trust was recorded on January 29, 2025, in the records of the Register of Deeds of Macon County, North Carolina (the "**Recorded Deed of Trust**"). A true and correct copy of the Recorded Deed of Trust is attached hereto and incorporated herein as **Exhibit "C"**.

23.  A legal description is attached to the Recorded Deed of Trust as Exhibit "A" referencing a parcel of oral property (the "**North Carolina Parcel**"). However, such legal description was not referenced or mentioned in, attached to, incorporated by, or otherwise included at all in the Deed of Trust which was signed by Holt Knob.

24.  Both the actual Deed of Trust and Recorded Deed of Trust state that Holt Knob, as Grantor, is indebted to First Liberty in the principal sum of $3,500,000 pursuant to a promissory note of even date therewith. However, no such promissory note by which Holt Knob is indebted to First Liberty exists. Therefore, the Recorded Deed of Trust is unenforceable with respect to any indebtedness purportedly owed to First Liberty. Pursuant to the terms of the Recorded Deed of Trust itself, the Recorded Deed of Trust is "null and void" because no debt is secured thereby.

25.  The Recorded Deed of Trust is also void or otherwise unenforceable because the document, as signed, did not grant First Liberty a lien on any real property. In fact, the Recorded Deed of Trust states that Holt Knob, as grantor, grants the Trustee rights in land "more particularly described as follows: _____."

9

Accordingly, the instrument is clear on its face that there is conveyance of <u>no</u> real property to the Trustee pursuant to the Recorded Deed of Trust.

26. Upon information and belief, at or around the time of recording, some person (yet to be identified) added an Exhibit A to the back of the Deed of Trust signed by Holt Knob. This exhibit is referred to nowhere in the text of the Deed of Trust or the Recorded Deed of Trust. Therefore, the exhibit cannot become grafted into the instrument. In other words, the instrument does not state that a legal description is attached hereto. The instrument does not state that a legal description is "incorporated herein". The legal description on the exhibit is therefore not part of the Recorded Deed of Trust under any circumstances.

27. Further, and as stated above, the legal description page was not present at the time the Deed of Trust was signed. Simply adding an exhibit to the Deed of Trust at the last minute before recordation does not cure the ambiguity created by virtue of the fact that the Deed of Trust lacked a legal description of the real property to be conveyed at the time that it was executed. Therefore, such an exhibit cannot be added later.

28. The Recorded Deed of Trust is null and void, invalid, and unenforceable. In North Carolina, when a Deed of Trust fails to identify land in its description, the deed is void. *Carrow v. Davis*, 248 N.C. 740 (1958); *In re Hudson*, 182 N.C. App. 499 (2007); *Overton v. Boyce*, 289 N.C. 291, 294 (1976). "A deed is

void for vagueness of description unless it identifies with certainty the land sought to be conveyed." *Carrow v. Davis*, 248 N.C. 740, 742 (1958). The Supreme Court of North Carolina established that a deed "is void unless it contains a description of the land sufficient to identify it." *Overton v. Boyce*, 289 N.C. 291, 293 (1976). Further, North Carolina interprets contracts within the four corners of the agreement. "Parol evidence may not be introduced to remove a patent ambiguity since to do so would … create a description by adding to the words of the instrument." *Overton v. Boyce*, 289 N.C. 291, 294 (1976). "Parol evidence is not admissible… to enlarge the scope of the description in the deed." *Id*. citing *State v. Brooks*, 279 N.C. 45 (1971). The North Carolina Supreme Court has said that "[i]t is also a rule of construction that an ambiguity in a written contract is to be inclined against the party who prepared the writing." *Jones v. Palace Realty Co.*, 226 N.C. 303 (1946), citing *Wilkie v. Ins. Co.*, 146 N.C. 513 (1908).

29. Holt Knob has requested that the Receiver cancel the Deed of Trust on the North Carolina Parcel. A true and correct copy of Holt Knob's request for release of the North Carolina Parcel is attached hereto labeled as **Exhibit "D"** and incorporated by this reference. Holt Knob has received no written response to such request from the Receiver.

III.     Movants' Payments to the Receivership Entities

30.     No Free timely made all payments due per the terms of the First Note and First Loan Modification until No Free's knowledge and review of the Public Notice.

31.     Riverdawg timely made all payments due per the terms of the Second Note until Riverdawg's knowledge and review of the Public Notice.

32.     Riverdawg timely made all payments due per the terms of the Third Note until Riverdawg's knowledge and review of the Public Notice.

33.     No Free timely made all payments due per the terms of the Fourth Note until No Free's knowledge and review of the Public Notice.

34.     As stated, Movants fulfilled any and all payment obligations due by them under the terms of the Purported Notes through the time of the Public Notice.

35.     The Public Notice stated that loan servicing was not occurring. As a result, Movants were unable to make payment on the Purported Loans after knowledge of the Public Notice.

IV.     Movants' Due Diligence Post-Receivership Action

36.     After learning of the Public Notice, Movants made much effort to determine the status of First Liberty. Movants contacted numerous agencies and officials. As a result, Movants eventually learned, through Movants' own due diligence, of the existence of the Receivership.

37. Upon learning of the existence of the Receivership, Movants first attempted to obtain a working relationship with the Receiver. For example, Movants requested loan statements from the Receiver and Receiver's counsel.

38. In July 2025, following the entry of the Receivership Order, Movants requested the Receiver to provide payoff information for each of the Purported Loans. The Receiver responded to Movants' request and continuously promised to provide such payoff information over a subsequent period of approximately six weeks.

39. Without limitation of the foregoing paragraph, Movants specifically requested a payoff amount needed in order to obtain a release of the Deed of Trust (the "**Lot Release**") on the North Carolina Parcel. Movants, together with an attorney for Movants, conveyed to the Receiver the urgency of the need for the Lot Release. This urgency is based on the fact that construction had been ongoing in North Carolina. Holt Knob had been in need of financing to obtain funds to continue construction of a residential unit on the North Carolina Parcel.

40. Movants advised the Receiver that the Lot Release was required in order to obtain a construction loan. Despite this knowledge, and despite the Receiver's assurances that it would do so, the Receiver has failed and refused to provide a Lot Release for the Deed of Trust.

41. Movants did receive correspondence from the Receiver on or about September 10, 2025, via letter from Receiver's counsel (the "**Receiver Draft Notice of Intent**"). The Receiver provided a "loan payoff" as of September 10, 2025. However, the Receiver Draft Notice of Intent stated that all of the Purported Loans are in default. The Receiver Draft Notice of Intent claimed interest due at a default rate. The Receiver Draft Notice of Intent also stated that all of the Purported Loans were subject to "cross-collateralization" and "cross default provisions." In other words, the Receiver attempted to hold up on the Lot Release of the Deed of Trust on the North Carolina Parcel based on all the other Purported Loans.

42. As of the date of the filing of this Motion, the Receiver Draft Notice of Intent is the only correspondence that Movants have received from the Receiver.

43. Movants: (a) dispute the calculation of interest, fees, and charges on the Purported Loans, (b) dispute cross-collateralization of the Purported Loans, (c) seek an immediate resolution to determine the amount due on the Purported Loans, and (d) Holt Knob seeks a release of the Deed of Trust on the North Carolina Parcel.

44. Movants seek an immediate resolution to the amount owed on the Purported Loans: (a) because the Deed places a cloud on the title of the North Carolina Parcel in the midst of ongoing construction on the property, and (b) because of any purported interest carry and the time-value of money.

V.  Relief Requested

45. Movants request the Court to enter an order authorizing Movants to commence an action against the Receivership Estate before this Court (the U.S. District Court N.D. Ga.; to be assigned to the Honorable Michael L. Brown) (the "**Declaratory Relief Action**") for purposes of determining, inter alia: (a) the amounts due, if any, on the Purported Loan (b) the amounts of any off-sets and recoupments allowable to Movants, (c) the amounts due to Movants based on the actions of the Receivership Entities, and (d) declaratory judgment that the cross-collateralization provisions included in the Purported Loans are not effective.

VI.  Jurisdiction

46. Movants believe this Court has ancillary jurisdiction over the proposed Declaratory Relief Action because the claims relate to the receivership property of First Liberty and claims held by the Receiver in such capacity. With respect to the proposed Declaratory Relief Action, "[f]ederal jurisdiction is based on the ancillary jurisdiction of the federal courts… part of their statutory 'supplemental jurisdiction.'" *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) *citing Pope V. Louisville, New Albany & Chicago Ry.*, 173 U.S. 573, 577 (1899). 28 U.S.C. § 959(a) permits suits against "trustees, receivers or managers of any property… without leave of the court appointing them, with respect to any of their acts or transactions in carrying on the business connected with such property." 28 U.S.C. § 959(a). The

Eleventh Circuit noted that this exception "is intended to permit actions redressing torts committed in furtherance of the debtor's business." *Carter v. Rodgers*, 220 F.3d 1249 (11th Cir. 2000).

47. Venue for the proposed Declaratory Relief Action is proper in this district pursuant to 28 U.S.C. § 1391.

48. Although it is Movants' belief that Movants may file the Declaratory Relief Action in this Court against the Receivership Estate, out of an abundance of caution, Movants respectfully request this Court grant leave to initiate such Declaratory Relief Action.

49. Movants request the Court for leave with urgency, as the Deed places a cloud on the title of the North Carolina Parcel and other assets of Movants as referenced in the documents executed in conjunction with the Purported Loans.

50. With this Court's permission, Movants seek to initiate the proposed Declaratory Relief Action immediately to resolve any amount due on the Purported Loans.

WHEREFORE, Movants request: (a) authorization to file the proposed Declaratory Relief Action, and (b) such other relief as the Court deems equitable and just.

This 16th day of October, 2025.

                                        **JONES & WALDEN LLC**

                                        */s/ Leon S. Jones*
                                        Leon S. Jones
                                        Georgia Bar No. 003980
                                        699 Piedmont Avenue NE
                                        Atlanta, Georgia 30308
                                        (404) 564-9300
                                        LJones@joneswalden.com
                                        Attorney for Movants

## CERTIFICATE OF SERVICE, FONT AND MARGINS

I certify that on the date below, I electronically filed the foregoing **Motion for Leave of Court to Initiate Action Against Receivership Estate** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

- **Austin Bruce Alexander**  austin.alexander@thompsonhine.com,kelly.thomas@thompsonhine.com,ECFdocket@thompsonhine.com
- **Madison Graham Loomis**  loomism@sec.gov,JeffriesJ@sec.gov, jorjoladzeN@sec.gov,applewhitet@sec.gov
- **Joshua A. Mayes**  jmayes@robbinsfirm.com,jenglish@robbinsfirm.com, bboyd@robbinsfirm.com,randerson@robbinsfirm.com,dbutler@robbinsfirm.com,sbacon@robbinsfirm.com
- **Kristin Wilhelm Murnahan**  murnahank@sec.gov,jorjoladzen@sec.gov, applewhitet@sec.gov
- **Alexandra C. Nelson**  alexandra.nelson@thompsonhine.com,tracey.nero@thompsonhine.com,kelly.thomas@thompsonhine.com,dwayne.lunde@thompsonhine.com,ECFDocket@thompsonhine.com
- **Jane Ashley Ravry**  jaravry@robbinsfirm.com,DButler@robbinsfirm.com, jenglish@robbinsfirm.com,bboyd@robbinsfirm.com,randerson@robbinsfirm.com,sbacon@robbinsfirm.com
- **Henry Francis Sewell, Jr**  hsewell@sewellfirm.com

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Respectfully submitted this 16th day of October, 2025.

    **JONES & WALDEN LLC**
    */s/ Leon S. Jones*
    Leon S. Jones
    Georgia Bar No. 003980
    699 Piedmont Avenue NE, Atlanta, GA 30308