| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE** | : | |
| **COMMISSION,** | : | **Civil Action File No.** |
| **Plaintiff,** | : | **1:25-cv-3826-MLB** |
| **v.** | : | |
| **EDWIN BRANT FROST IV and** | : | |
| **FIRST LIBERTY BUILDING & LOAN, LLC,** | : | |
| **Defendants, and** | : | |
| **FIRST LIBERTY CAPITAL PARTNERS** | : | |
| **LLC, et. al.,** | : | |
| **Relief Defendants.** | : | |

## MEMORANDUM IN OPPOSITION BY RECEIVER TO MOTION FOR LEAVE OF COURT TO INITIATE ACTION AGAINST RECEIVERSHIP ESTATE AND MOTION FOR EXPEDITED HEARING THEREON

S. Gregory Hays, not individually, but as Court-Appointed Receiver ("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in the above-captioned case (the "**Receivership**"), by and through counsel, hereby files this *Memorandum in Opposition by Receiver to Motion for Leave of Court to Initiate Action Against Receivership Estate* (the "**Objection**") to oppose, at this time, the *Motion for Leave of Court to Initiate Action Against Receivership Estate* [Doc. No. 29] and *Motion for Expedited Hearing* [Doc. No. 30] (the "**Motions**") that were filed by Riverdawg, LLC ("**Riverdawg**"), No Free, LLC ("**No Free**"), and Holt Knob Holdings, LLC ("**Holt Knob**" and collectively with Riverdawg and No Free, the "**Movants**"), respectfully showing as follows:

## I. INTRODUCTION

1.      The Movants are entities owned and/or controlled by Dr. Jerry Williams ("**Dr. Williams**"), who is a physician and real estate developer. These entities each entered into loan agreements with the Receivership, each of which was personally guaranteed by Dr. Williams. Indeed, Dr. Williams executed various loan documents to receive -- and actually did receive -- monies under the terms of the loan documents signed by Dr. Williams, who agreed to pay the obligations due under such loan documents.

2.      There is no doubt that Dr. Williams received a substantial amount of money from the Receivership Entities. The Receiver has determined that as of September 11, 2025, Dr. Williams and his affiliated entities owe the Receivership Estate $4,320,931.08 plus continuing interest. The contention of Dr. Williams in the Motions that the monies advanced to him were not as a result of legitimate loans is contradicted by the very documents he executed and is nothing more than a meritless attempt to avoid his obligations to the Receivership Entities and the Investors herein.

3.      In reviewing the allegations made by Dr. Williams, particularly with respect to his claim that the cross-collateralized security deed for real property located in North Carolina was defective, the Receiver's investigation revealed that a title insurance policy in the amount of $2.5 Million was issued to First Liberty in

connection with this deed. The Receiver has made a claim and demand for indemnification against this policy and believes the Motions should be held in abeyance until the title company can retain counsel.

4.      Under the circumstances, the Motions should be denied or held in abeyance pending involvement of counsel for the title company.

## II.    FACTUAL BACKGROUND

### a.  Loans to Entities Owned or Controlled by Dr. Williams.

5.      Entities owned or controlled by Dr. Williams received a significant amount of proceeds from the comingled pool of funds maintained by the Receivership Entities.

6.      No Free, an entity owned and controlled by Dr. Williams, entered into a loan ("**Loan 1**") dated December 28, 2023, in the amount of $250,000.00 that was funded by the Receivership Entities, guaranteed by Dr. Williams, and secured by a condominium at 285 Centennial Park Drive, Commercial Unit No. 2. Loan 1 was renewed with the balance rolled into a loan in the amount of $500,000.00 dated June 11, 2024 ("**Loan 2**") that was funded by the Receivership Parties and guaranteed by Dr. Williams. In conjunction with Loan 2, Dr. Williams executed a Modification of Promissory Note that contains a cross-default and cross-collateralization provision for obligations of all entities related to the No Free by common ownership and/or control.

7.     RiverDawg, an entity owned and controlled by Dr. Williams, entered a loan dated September 18, 2024 ("**Loan 3**") in the amount of $760,000.00 that was funded by the Receivership Entities and guaranteed by Jerry Williams and Urgent Care 247, LLC ("**UC**"), an entity owned and controlled by Dr. Williams. The Promissory Note executed by Dr. Williams on behalf of RiverDawg incident to Loan 3: a) has a cross-default and cross-collateralization provision for obligations of all entities related to the RiverDawg by common ownership and/or control; and b) indicates that the loan is secured by certain property at 7934 Hiawassee Wilderness Trial in Hiawassee Georgia. Loan 3 is also secured by a Deed to Secure Debt, Assignment of Rents and Security Agreement dated September 17, 2024, for certain property in the County of Towns, Georgia. Title Insurance was issued in connection with this loan.

8.     RiverDawg entered into another loan dated December 9, 2024 ("**Loan 4**"), in the amount of $355,000.00 that was funded by the Receivership Entities and guaranteed by Jerry Williams and UC. The Promissory Note related to Loan 4: a) indicates that it is secured by Unit 32 and Unit 44 of the Overlook at Baxter Condominiums; and b) has a cross-default and cross-collateralization provision for obligations of all entities related to the RiverDawg by common ownership and/or control.

9.     No Free entered into another loan dated December 19, 2024 ("**Loan 5**"

and collectively with Loan 1, Loan 2, Loan 3, and Loan 4, the "**Williams' Loans**") in the amount of $3,500,000.00 for the purpose of constructing a home in Highlands, North Carolina that was funded by the Receivership Entities and guaranteed by Jerry Williams and UC. The Promissory related to Loan 5: a) contains a cross-default and cross-collateralization provision for obligations of all entities related to the no Free by common ownership and/or control; and b) indicates that the obligation is secured by security agreements conveying security interests in Arnolds's Point and a lot in Highlands Country Club in NC. Security for Loan 5 includes a certified Commercial Deed to Secure Debt and Security Agreement dated December 19, 2024, for two parcels known as Arnold's Point, a North Carolina Deed of Trust on Lot 14 Bittersweet Hills, Highlands, NC (the "**North Carolina Parcel**" or "**Land**") from Holt Knob Holdings, LLC, and Title Insurance.

10.     More specifically, the North Carolina Parcel is subject to ALTA LOAN POLICY OF TITLE INSURANCE issued by COMMONWEALTH LAND TITLE INSURANCE COMPANY ("**Commonwealth**"), Policy Number: AV24009884-LP dated January 29, 2025 in the amount of $2,500,000 (the "**Policy**"). Pursuant to the Policy, the Title encumbered by the Insured Mortgage is vested in Holt Knob, a North Carolina limited liability company. Furthermore, the Insured Mortgage and its assignments, if any, are described as a Deed of Trust executed by Holt Knob Holdings, LLC to The Neumann Law Office, PLLC, Trustee for First Liberty

Building and Loan dated December 19, 2024, in the amount of $3,500,000.00, and recorded on January 29, 2025 at 12:21 PM at Book CRP N-43, Page 2363 in the Macon County Registry (the "**North Carolina Deed**"). The Land described therein is "all of Lot 14, Bittersweet Hills, containing 0.78 acres, as shown on Plat Card 12937, Macon County Registry."

11.     The Williams' Loans contain cross-default and cross-collateralization provisions that are important security for the obligations due to the Receivership Entities. The Receiver submits that the amount of collateral for the Williams' Loans should not be reduced until the Williams' Loans are paid.

12.     Prior to the appointment of the Receiver, the First Liberty Entities prepared a payoff for Dr. Williams indicating that the payoff for the Williams' Loans above was $3,804,645.56 as of May, 2025 with a per diem of $913.12 if not paid by May 31, 2025.

   b.  **Appointment of Receiver and Review of loans.**

13.     On July 11, 2025, the: a) SEC filed a complaint (the "**Complaint**") against Defendants Edwin Brant Frost IV ("**Frost**") and First Liberty Building & Loan, LLC (together, "**Defendants**") and the Relief Defendants (as defined in the Appointment Order); and b) the District Court entered the Appointment Order to appoint the Receiver for the purposes of marshaling and preserving all assets of the Receivership Entities and the assets of Defendant Frost that: i) are attributable to

funds derived from investors or clients of the Defendants; ii) are held in constructive trust for the Defendants; and/or iii) may otherwise be includable as assets of the estates of the Defendants.

14.     The Appointment Order provides that the District Court takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated of the Receivership Entities, including the Defendant in this case. *See* Appointment Order, p. 2. The Appointment Order further defines "Receivership Property" as all "property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind." *See* Appointment Order ¶ 6(A). The interest of the Receivership Entities in the North Carolina Parcel is Receivership Property.

15.     The Appointment Order includes essential provisions to empower the Receiver to analyze and investigate assets, administer assets for the benefit of the Receivership and harmed investors and creditors, and develop a fair and reasonable liquidation plan for all investors.

16.     To provide the Receiver with the ability to fulfill the duties of the Receiver without being hindered or obstructed by litigation against property of the Receivership, in addition to freezing the Receivership Property, the District Court

entered an injunction against interference with the Receiver (the "**Injunction**") and stay (the "**Stay**") of all civil legal proceedings involving any Receivership Property or the Receivership Entities until further order of the District Court. *See* Appointment Order ¶¶ 32-34. The Injunction protects against action that would "[d]issipate or otherwise diminish the value of any Receivership Property." *See* Appointment Order ¶ 32(C). Furthermore, the Stay under Section VII of the Appointment Order stays all litigation matters other than the litigation subject to the Receivership and clearly provides that no further actions should be taken against any assets or entities subject to the Appointment Order until further order of the District Court.

17.    Since being appointed, the Receiver has endeavored to marshal and preserve the assets of the Receivership Entities. Incident thereto, the Receiver investigated the loans made by the Receivership Entities, including the Williams' Loans.

18.    On September 11, 2025, in response to Dr. Williams demand for a payoff, the Receiver provided Dr. Williams with a written loan payoff. After reviewing this matter further and, in particular, searching bank records for all receipts and disbursements and calculating all interest and fees due under the loans, the Receiver determined that the amount due across all loans as of that date was $4,320,931.08 which such amount continued to accrue interest at $2,331.19 per day.

Instead of making arrangements to refinance or pay this debt, Dr. Williams has apparently chosen to litigate with the Receiver.

19.     Neither this Objection nor any later appearance, pleading, claim, or suit shall waive: a) any stay or injunction arising from the appointment of the Receiver; or b) any other sanctions, rights, claims, actions, defenses, setoffs, or recoupments to which Receiver is or may be entitled, under agreements, in law, in equity, or otherwise, all of which rights, claims, actions, defenses, setoffs, and recoupments are expressly reserved.

**ARGUMENT AND CITATION OF AUTHORITY**

20.     "The district court has broad powers and wide discretion to determine relief in an equity receivership." *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted) (noting that to "'allow any individual to elevate his position over that of other investors similarly 'victimized' by asserting claims for restitution and/or reclamation of specific assets . . . would create inequitable results, in that certain investors would recoup 100% of their investment while others would receive substantially less . . .'"). Indeed, "'a court sitting in equity has the discretionary authority to deny state law remedies as inimical to the receivership' . . . It is well-established that 'equitable principles may supersede rights an investor would have under other law to recover its assets.'" *Sec. & Exch. Comm'n v. Torchia*, No. 1:15-CV-3904-WSD, 2016 WL 2996902, at *4 (N.D. Ga. May 25, 2016) (citation

omitted). Here, the contract claims sought to be pursued by the Movants are inimical to the Receivership.

21.     The Receiver submits that granting the Motions at this time would cause disruption and result in an inequitable administration, and perhaps unnecessary expense.

22.     As Dr. Williams was well aware when he first asserted his claim that the North Carolina Deed was defective, First Liberty had procured a lender's title insurance policy for this deed at the time it was delivered in the amount of $2,500,000. Dr. Williams knew, or had to know, that this matter would be tendered to the Commonwealth for coverage. He should not now be heard to complain of any delay as the Receiver takes steps to make a claim against Commonwealth.

23.     Within one day of the filing of the Motions, the Receiver notified Commonwealth of this claim.

24.     The Receiver believes that Commonwealth is obligated to defend the interests of the Receivership Estate with respect to the North Carolina Deed. As of the filing of this Response, the Receiver has just learned that a claims adjuster has been assigned to this claim by Commonwealth. The Receiver intends to promptly follow up with Commonwealth and with any counsel they may appoint.

25.     The Receiver has further notified the lawyers who prepared and filed the deed of Dr. Williams' claims and has demanded indemnification from them and

that they notify their respective carriers of this matter. It is the Receiver's understanding, however, that if Commonwealth accepts coverage, the title company will take the lead in defending the claim.

26.     The Receiver believes that no action should be taken with respect to this Motions until the title company has retained counsel and had an opportunity to be heard. The Receiver is concerned, first, about not taking any action or position that the title company may claim is a waiver or impairment of coverage and, second, does not want use Receivership assets to defend an insured claim.

27.     The Receiver acknowledges that Dr. Williams' claims will have to be litigated and that this Court is the appropriate venue in which to litigate such claims, but respectfully submits the stay should remain in place pending appointment of counsel by Commonwealth and a determination of whether this is an insured claim.

28.     The Receiver will advise the Court once the title company has obtained counsel and will proffer a procedure to litigate Dr. Williams' claims once Commonwealth has become formally involved.

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court deny the Motions at this time or hold the Motions in abeyance and for

such other and further relief as this Court deems just and proper.

Respectfully submitted this 30th day of October, 2025.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com
Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
*Counsel for Receiver*

**CERTIFICATE OF COUNSEL REGARDING FONT SIZE AND
CERTIFICATE OF SERVICE**

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D), and the attachments are consistent with Local Rule 5.1(B).

Counsel further certifies certify that I have this day electronically filed the foregoing *Memorandum in Opposition by Receiver to Motion for Leave of Court to Initiate Action Against Receivership Estate and Motion for Expedited Hearing* with the Clerk of Court via the CM/ECF system, and further certify that a true and correct copy of the same has been served by email as follows:

JONES & WALDEN LLC
c/o Leon S. Jones, Esq.
699 Piedmont Avenue NE
Atlanta, Georgia 30308          Sent electronically to LJones@joneswalden.com

This 30th day of October, 2025.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com
Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
*Counsel for Receiver*