# Exhibit "B"

```
Deed Book 67478 Page 128
Filed and Recorded 01/02/2024 01:14:00 PM
2024-0000702
CHÉ ALEXANDER
Clerk of Superior Court
Fulton County, GA
Participant IDs: 1927649461
```

Tax Parcel No. 14007800030922

Upon recording, please return to:

**Spencer Gandy, Esq.**
**Spencer Gandy LLC**
**3865 Wieuca Terrace NE**
**Atlanta, Georgia 30342**

## DEED TO SECURE DEBT, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

**This Deed to Secure Debt is exempt from intangible tax upon filing as the loan secured hereby has a maturity of less than three years as provided in OCGA Sections 48-6-60 et. seq.**

THIS DEED TO SECURE DEBT, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT (hereinafter referred to as this "Deed") made this __28__ day of **December, 2023**, by and between **NO FREE, LLC, a Georgia limited liability company** ("Grantor"), whose address is 1004 Memorial Lane, Suite 200, Savannah, GA 31410 and **First Liberty Capital Partners LLC ("Grantee")**, whose address is P. O. Box 2567, Newnan, GA 30264.

### WITNESSETH:

THAT, WHEREAS, Grantor is justly indebted to Grantee in the sum of **Two Hundred Fifty Thousand Dollars ($250,000.00)** in lawful money of the United States, or, if this instrument is a construction mortgage, so much of said sum as may be advanced and outstanding from time to time, and has agreed to pay the same, with interest thereon, according to the terms of a certain promissory note (hereinafter referred to as the "Note") given by Grantor to Grantee, bearing even date herewith, with final payment being due on **December 28, 2024**;

NOW, THEREFORE, in consideration of the premises and of the sum hereinabove set forth and in order to secure the indebtedness and other obligations of Grantor hereinafter set forth, Grantor has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto Grantee and the successors, successors-in-title and assigns of Grantee the following property (the "Property"), to-wit:

**That real property described in Exhibit "A" attached hereto and by this reference incorporated herein;**

**This Deed is subject to those matters set forth in Exhibit "B" attached hereto and by this reference incorporated herein.**

TOGETHER WITH all and singular, the improvements, fixtures, easements, hereditaments, rights, members and appurtenances thereunto belonging or in anywise appertaining, including, without limitation: the buildings and improvements now or hereafter erected thereon, and the fixtures, attachments, appliances, equipment, machinery, furnishings and other articles affixed or attached to said buildings and improvements or used or intended to be used with or in connection with the use, operation or enjoyment of the Property, including, without

1



limitation, all building materials, electrical, plumbing, heating and air conditioning systems (including window units), all built-in appliances, cabinets and lighting fixtures, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of, any of the foregoing (all of the foregoing is hereinafter collectively referred to as the "Improvements and Personal Property"); and all minerals, shrubs, trees or other emblements now or hereafter on said Property or under or above the same or any part or parcel thereof, and all leasehold estates, usufructuary interests, and rights of Grantor in the Property, and all rights of Grantor as lessor or landlord under any lease or sublease letting or demising all or any portion of the Property or the Improvements and Personal Property, including, without limitation, the interest of Grantor in all rents and security deposits paid or to be paid thereunder; and all right of claim of Grantor with respect to the proceeds of insurance which Grantor now has or may hereafter acquire in the Property and the Improvements and Personal Property and any and all awards made for the taking by eminent domain, by any proceeding or purchase in lieu thereof, of the whole or any part of the Property and the Improvements and Personal Property; and if this is a construction mortgage all right, title and interest of Grantor in and to all construction materials, equipment, supplies and contracts.

TO HAVE AND TO HOLD all of the Property, the Improvements and Personal Property, property rights, leases, contract rights, claims and other items set forth in the preceding paragraph (all of which are collectively referred to as the "Premises") to the use, benefit and behoof of Grantee, forever, in fee simple.

Grantor warrants that Grantor has good title to the Premises, and is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that the Premises are unencumbered except as may be herein expressly provided; and the Grantor will forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

This instrument is a deed passing legal title to the Premises pursuant to the laws of the State of Georgia governing loan or security deeds and security agreements and is not a mortgage, as "mortgage" is defined for the purpose of the real property law of the State of Georgia, but does constitute a "construction mortgage" as defined in Section 11-9-313(1)(c) of the Official Code of Georgia if so indicated hereinabove, and is made and intended to secure (i) the payment of the indebtedness evidenced by the Note and any modifications, extensions, renewals or consolidations thereof and substitutions therefor, either in whole or in part; (ii) any and all additional advances made by Grantee to protect or preserve the Premises or the security interest created hereby on the Premises, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Grantor's obligations hereunder or for any other purpose provided herein (whether or not the original Grantor remains the owner of the Premises at the time of such advance); (iii) the performance of all obligations of Grantor under this Deed; (iv) the performance of all obligations of Grantor under any loan agreement (including, without limitation, any construction loan agreement), guaranty and other agreements, documents or instruments evidencing, securing or otherwise relating to the indebtedness evidenced or guaranteed by the Note (the Note, this Deed, and any and all other such loan agreements, guarantees, agreements, documents and instruments are hereinafter collectively referred to as the "Loan Documents"); and (v) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Grantee, now existing or hereafter coming into existence, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due to become due, and all renewals, modifications, consolidations and extensions thereof and substitutions therefor, either in whole or in part. All of the foregoing secured hereby are collectively described herein as the "Secured Indebtedness."

AND GRANTOR FURTHER COVENANTS AND AGREES WITH GRANTEE as follows:

1. Payment of Secured Indebtedness. Grantor shall pay to Grantee the Secured Indebtedness with interest thereon as in the Note, the Loan Documents and this Deed provided.

2. Payment of Other Items. Grantor shall pay, when due and payable, (a) all taxes, assessments, general or special and other charges levied on, or assessed, placed or made against the Premises, this Deed or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby; (b) premiums on policies of fire and other hazard insurance covering the Premises, as required in Article 3 herein; (c) premiums on all collaterally pledged life insurance policies, if any; (d) premiums for mortgage insurance, if this Deed and the Note are so insured; and (e) ground rents or other lease rentals, if any, payable by Grantor. Grantor shall pay to Grantee, together with and in addition to the payments of principal and interest payable under the Loan Documents, on the installment-paying dates thereof, until the Secured Indebtedness is fully paid or until notification from Grantee to the contrary, an amount reasonably sufficient (as estimated by Grantee) to provide Grantee with funds on hand to pay taxes, assessments, insurance premiums, rents and other charges next due so that Grantee will have sufficient funds on hand to pay same thirty (30) days before the date on which they become past due. In no event shall Grantee be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided. Grantor shall furnish to Grantee, at least thirty (30) days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums and rents next due, and Grantee shall pay said charges to the amount of the then unused credit therefor as and when they become severally due and payable. An official receipt therefor shall be conclusive evidence of such payment and of the validity of such charges. Grantee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefor in excess of the then amount of credit for said charges. The excess amount advanced shall be immediately due and payable to Grantee and bear interest at the rate

2



of 12.50% per annum from date of advancement. Grantee may apply credits held by it for the above charges, on account of any delinquent installments of principal or interest or any other payments maturing or due under this Deed, and the amount of credit existing at any time shall be reduced by the amount so paid or applied. The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under and subject to all of the provisions hereof, provided that nothing contained in this paragraph shall be deemed to authorize or to constitute Grantee's consent to the transfer of the Premises or any portion thereof or any interest therein, including a security interest. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it.

3. Insurance. (a) Grantor shall keep the Premises insured for the benefit of Grantee against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke, and such other hazards (so-called "All Risk Coverage"), including flood, as Grantee may from time to time require, all in amounts approved by Grantee not to be less than 100% of the full replacement cost. Grantor shall also maintain (1) comprehensive public liability insurance, to include workmen's compensation insurance, covering all liabilities incident to the construction, ownership, possession and operation of the Premises, and naming Grantee as an additional insured thereunder, in an amount acceptable to Grantee; (2) rent insurance against loss of income arising out of any hazard against which the Premises are required to be insured under subparagraph (a) above in an amount not less than one (1) year's gross rental income from the Premises; and (3) such other insurance on the Premises or any replacements or substitutions therefor and in such amounts as may from time to time be reasonably required by Grantee against other insurable casualties which at the time are commonly insured against in the case of properties of similar character and location, due regard being given to the height and type of the improvements, their construction, location, use and occupancy, or any replacements or substitutions therefor including, without limitation, boiler insurance and flood hazard insurance, if applicable. All such insurance shall be written in form and by companies approved by Grantee; and regardless of the types or amounts of insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insurance against any loss or damage to the Premises, with loss payable to Grantee, without contribution by Grantee, pursuant to the New York Standard or other mortgagee clause satisfactory to Grantee. If Grantee, by reason of such insurance, receives any money for loss or damage, such amount may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the repair or replacement of the Premises or any part thereof, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the proper application of any amount paid over to Grantor.

(b) Not less than 30 days prior to the expiration date of each policy of insurance required of Grantor hereunder, and of each policy of insurance held as additional collateral to secure the Secured Indebtedness, Grantor shall deliver to Grantee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Grantee.

(c) In the event of a foreclosure of this Deed, the purchaser of the Premises shall succeed to all the rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Grantee, with respect to the Premises.

4. Maintenance and Inspection. Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises or any part thereof. Grantor shall promptly repair, restore, replace or rebuild any part of the Premises, now or hereafter encumbered by this Deed, which may be affected by a proceeding of the character referred to in Article 7 herein. No part of the Premises now or hereafter conveyed as security by or pursuant to this Deed, shall be removed, demolished or materially altered without the prior written consent of Grantee. Grantor shall complete, within a reasonable time, and pay for any building, structure or other improvement at any time in the process of construction on the property herein conveyed. Grantor shall not initiate, join in or consent to any change in the private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof. Grantee and any persons authorized by Grantee shall have the right to enter and inspect the Premises at all reasonable times.

5. Leases and Assignment of Rents. Grantor shall faithfully perform the covenants of Grantor as lessor under any present and future leases, affecting all or any portion of the Premises, and neither do nor neglect to do, nor permit to be done, anything which may cause the termination of said leases, or any of them, or which may diminish or impair their value, or the rents provided for therein, or the interest of Grantor or Grantee therein or thereunder. Grantor, without first obtaining the written consent of Grantee thereto, shall not (a) assign the rents, or any part thereof, from the Premises, (b) consent to the cancellation or surrender of any lease of the Premises, or any part thereof, now existing or hereafter to be made, (c) modify any such lease so as to shorten the unexpired term thereof, or so as to decrease the amount of the rent payable thereunder, or (d) collect rents from the Premises for more than one month in advance. Grantor shall procure and deliver to Grantee at the time of executing this Deed, or at any time within thirty (30) days after notice and demand, estoppel letters or certificates from each lessee, tenant or occupant in possession of the Premises, as required by, and in form and substance satisfactory to, Grantee and deliver to Grantee a recorded assignment of all of the lessor's interest in said leases, in form and substance satisfactory to Grantee (in addition to the

3



conveyance hereunder), and proof of due service of copy of said assignment on each lessee, either personally or by prepaid registered mail, return receipt requested.

Grantor hereby absolutely assigns and transfers to Grantee all the rents, issues and profits of the Premises, and hereby gives to and confers upon Grantee the right, power and authority to collect such rents, issues and profits. Grantor irrevocably appoints Grantee its true and lawful attorney-in-fact, at the option of Grantee at any time and from time to time, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in the name of Grantor or Grantee, for all such rents, issues and profits and apply the same to the Secured Indebtedness.

Notwithstanding anything contained herein to the contrary, this assignment is intended and shall be construed to create, an absolute, present assignment from Grantor to Grantee. The rents, issues and profits of the Premises are hereby assigned absolutely by Grantor to Grantee. It is the further intent of Grantee and Grantor that the rents, issues and profits absolutely assigned are no longer, during the term of this Deed, property of Grantor or property of the estate of Grantor as defined in 11 U.S.C. § 541 and shall not constitute collateral, cash or otherwise, of Grantor.

Although this assignment constitutes a present and current assignment of all rents, issues and profits of the Premises, so long as Grantor is not in default hereunder, Grantee shall not demand that such rents, issues and profits be paid directly to Grantee, and Grantor shall have a revocable license to collect, but no more than one (1) month prior to accrual, all such rents, issues and profits from the Premises; provided that such revocable license shall ipso facto terminate without further action by Grantee and without notice to Grantor upon the occurrence of a Default.

6. Additional Documentation. Grantor shall execute and deliver and pay the costs of preparation and recording thereof to Grantee and to any subsequent holder from time to time, upon demand, any further instrument or instruments, including, but not limited to, security deeds, security agreements, financing statements, assignments, and renewal and subscription notes and guaranties, so as to reaffirm, to correct and to perfect the evidence of the obligation hereby secured and the legal security title of Grantee to all or any part of the Premises intended to be hereby conveyed, whether now conveyed, later substituted for, or acquired subsequent to the date of this Deed and extensions or modifications thereof. Grantor, upon request, shall certify by a writing, duly acknowledged, to Grantee or to any proposed assignee of this Deed, the amount of principal and interest then owing on the Secured Indebtedness and whether or not any offsets or defenses exist against the Secured Indebtedness, within 6 days in case the request is made personally, or within 10 days after the mailing of such request in case the request is made by mail.

7. Condemnation. In the event all or any part of the Premises is taken by eminent domain by any public or quasi-public authority or corporation, or in the event all or any portion of the Premises is purchased from Grantor under threat of such taking, then all of the award of payment arising from said taking or purchase shall be paid to Grantee. Grantee shall have the right to retain said award or payment toward payment of the Secured Indebtedness, or to pay over said amount, in whole or in part, to Grantor, but Grantee shall not be obligated to see to the application of any amount paid over to Grantor. If prior to the receipt by Grantee of such award or payment, the Premises shall have been sold on foreclosure of this Deed, Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this Deed shall have been sought or recovered or denied, and of attorneys' fees in the sum of 15% of the aggregate amount due hereunder, and all costs and disbursements incurred by Grantee in connection with the collection of such award of payment.

8. Financial Statements. Grantor shall deliver to Grantee, at any time within 30 days after notice and demand by Grantee, (i) a statement in such reasonable detail as Grantee may request, certified by the Grantor or an executive officer of a corporate Grantor, of the leases relating to the Premises, and (ii) a statement in such reasonable detail as Grantee may request certified by a certified public accountant or, at the option of Grantee, by Grantor or an executive officer or treasurer of a corporate Grantor, of the income from and expenses of any one or more of the following: (a) the conduct of any business on the Premises, (b) the operation of the Premises, or (c) the leasing of the Premises or any part thereof, for the last 12 month period prior to the giving of such notice, and, on demand, Grantor shall furnish to Grantee executed counterparts of any such leases and convenient facilities for the audit and verification of any such statement. Grantor and any Guarantor of the Secured Indebtedness shall deliver to Grantee financial reports and statements in form and substance acceptable to Grantee within 90 days following fiscal year end and within 30 days of request(s) made by Grantee from time to time.

9. Security Agreement. Grantor hereby grants to Grantee a security interest in the Improvements and Personal Property, including without limitation any and all property of similar type or kind hereafter located on or at the Property, for the purpose of securing the Secured Indebtedness. Grantor warrants, represents and covenants that the Improvements and Personal Property are not used or bought for personal family or household purposes. Notwithstanding anything contained herein to the contrary, all covenants and obligations of Grantor contained herein relating to the Premises shall be deemed to apply to the Improvements and Personal Property. This Deed constitutes a Security Agreement as that term is used in the Uniform Commercial Code of Georgia.

4

Deed Book 67478 Page 132

10. Default. Upon the occurrence of any one of the following events (herein called an "Event of Default" or "Default"):

(i) should Grantor fail to pay the Secured Indebtedness, or any part thereof, when and as the same shall become due and payable;

(ii) should any representation or warranty of Grantor (Grantor and each person primarily or secondarily liable to Grantee for the Secured Indebtedness hereinafter referred to as an "Obligor") herein contained, or contained in any instrument given by any Obligor to Grantee with respect to the Secured Indebtedness or the Premises, prove untrue, incomplete or misleading in any material aspect;

(iii) should the Premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the Premises is reduced or diminished in any manner whatsoever;

(iv) should any federal tax lien, execution, or claim of lien for labor or material be filed of record against any Obligor or the Premises and not be removed by payment or bond within 30 days from date of recording;

(v) should any claim of priority superior to this Deed by title, lien or otherwise be asserted in any legal or equitable proceeding;

(vi) should any Obligor become insolvent or should any Obligor make any assignment for the benefit of creditors, or should a receiver, liquidator or trustee of any Obligor or of any of any Obligor's property be appointed, or should any petition for the bankruptcy, reorganization or arrangement of any Obligor, pursuant to the Federal Bankruptcy Act or any similar statute, be filed, or should any proceeding be instituted against or on behalf of any Obligor alleging that any Obligor is insolvent or unable to pay such Obligor's debts as they become due, or should any Obligor be adjudicated a bankrupt or insolvent, or should any Obligor, if a corporation, be liquidated or dissolved or its charter expire or be revoked, or, if a partnership or business association, be dissolved or partitioned, or, if a trust, be terminated or expire;

(vii) should any Obligor fail to keep, observe, perform, carry out and execute in every particular the covenants, agreements, obligations and conditions set out in this Deed, or in the Note, or in any other Loan Document;

(viii) should any event occur under any instrument, deed or agreement, given or made by any Obligor to or with Grantee or any third party, which would authorize the acceleration of any debt owed by such Obligor to Grantee or to any such third party;

(ix) should Grantor sell or transfer the Premises or any portion thereof or any interest therein, including a security interest, without Grantee's prior written consent;

(x) if any Obligor is a corporation, partnership or other artificial entity, if there is any encumbrance, pledge, conveyance, transfer or assignment of any legal or beneficial interest whatsoever in such Obligor; or

(xi) if the financial responsibility of any Obligor becomes impaired in the sole opinion of Grantee or if Grantee otherwise deems itself to be insecure;

then and thereupon:

(i) Grantee may take possession of the Premises without the appointment of a receiver, or an application therefor, employ a managing agent of the Premises and let the same, either in its own name, or in the name of Grantor, and give notice to any lessees or tenants under any existing leases affecting the Premises to make all future payments directly to Grantee or its order and to attorn to Grantee or its order as lessor or landlord, and receive the rents, incomes, issues and profits of the Premises and apply the same, after payment of all reasonable charges and expenses, on account of the Secured Indebtedness.

(ii) Grantee may pay any sums in any form or any manner deemed expedient by Grantee to protect the security of this instrument or to cure any Event of Default other than payment of interest or principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of Grantee shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the rate of 12.5 % per annum, shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Grantee; and Grantee shall be subrogated to any encumbrance, lien, claim or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Grantee under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this Deed;

5



(iii) Grantee may, at its option, declare the entire Secured Indebtedness immediately due, payable and collectible, without notice to Grantor, regardless of maturity, and thereupon, Grantee may sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises or any part thereof may be, to the highest bidder for cash, in order to pay the Secured Indebtedness, and all expenses of sale and of all proceedings in connection therewith, including 15% of the aggregate amount due as attorneys' fees, first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four consecutive weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which sheriff's advertisements are published in said county, all other notice being hereby waived by Grantor; and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the Default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantee, its agents, representatives, successors or assigns, may bid and purchase at such sale; and Grantor hereby constitutes and appoints Grantee or its assigns, agent or attorney-in-fact to make such recitals, sale and conveyance, and all of the acts of such attorney-in-fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns (and in the event of a deed in lieu of foreclosure, then as to such conveyance), shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, curtesy and all other exemptions of Grantor, or its successors in interest, in and to said Premises; and in the event of such a foreclosure sale, the proceeds of such sale shall be applied, in whatever order Grantee in its sole discretion may decide, to the outstanding principal amount of the Note, and interest then due thereon, and all amounts advanced by Grantee for taxes, assessments, fire insurance premiums and other charges, with interest at the rate of 12.5% per annum thereon from date of payment, together with all costs and charges for advertising, and commissions for selling the Premises, and 15% of the aggregate amount due, as attorneys' fees, and Grantee will pay over any surplus to Grantor (in the event of deficiency Grantor shall immediately on demand from Grantee pay over to Grantee, or its nominee, such deficiency); and Grantor agrees that possession of the Premises during the existence of the Secured Indebtedness by Grantor, or any person claiming under Grantor, shall be that of tenant under Grantee, or its assigns, and, in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily disposed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Grantee may have at law or in equity; and

(iv) Grantee may exercise any and all of the remedies available to a secured party under the Georgia Uniform Commercial Code.

Grantee, in any action to foreclose this Deed, or upon any Event of Default, may apply for the appointment of a receiver of the rents, profits and other income of the Premises without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due the Grantee, or the solvency of any person or corporation liable for the payment of such amounts.

In case of any sale under this Deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, the Premises or any part thereof, may be sold in one parcel and as entirety, or in such parcels, manner or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless and until the entire Premises are sold or the Secured Indebtedness is paid in full.

11.  Waiver of Homestead; Time of the Essence. Grantor, for himself and family, hereby waives and renounces all homestead and exemption rights provided for by the Constitution and Laws of the United States or the State of Georgia, in and to the Premises as against the collection of the Secured Indebtedness, or any part thereof; and Grantor agrees that where, by the terms of this Deed, the Note, or any of the Loan Documents, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time stated enters into the consideration and is of the essence of the whole contract.

12.  Grantee's Right to Sue. Grantee shall have the right from time to time to sue for any sums, whether interest, principal or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this Deed or any of the Loan Documents, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Grantee thereafter to enforce any appropriate remedy against Grantor, including an action of foreclosure, or any other action, for a Default or Defaults by Grantor existing at the time such earlier action was commenced.

13.  Rights Cumulative. The rights of Grantee, granted and arising under the clauses and covenants contained in this Deed, the Note, and the other Loan Documents shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Grantee may have in law or equity, and none of them shall be in exclusion of the others, and all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under security deeds, and preservation of security as provided at law. No act of Grantee shall be construed as an election to proceed under any one provision herein or under the Note or any of the Loan Documents to the exclusion of any

6



other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

14. Notice. Any and all notices, elections or demands permitted or required to be given under this Deed shall be in writing, signed by or on behalf of the party giving such notice, election or demand, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt requested, or upon being deposited with an overnight commercial delivery service requiring proof of delivery, to the other party at the address of such other party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response, if given to Grantee, shall be addressed as follows:

First Liberty Capital Partners LLC
P. O. Box 2567
Newnan, GA 30264

and if given to Grantor shall be addressed as follows:

No Free, LLC
1004 Memorial Lane
Suite 200
Savannah, GA 31410

15. No Waiver. Any indulgence or departure at any time by the Grantee from any of the provisions hereof, or of any obligation hereby secured, shall not modify the same or relate to the future or waive future compliance therewith by the Grantor.

16. Definitions. The words "Grantor" and "Grantee" whenever used herein shall include all individuals, corporations (and if a corporation, its officers, employees, agents or attorneys) and any and all other persons or entities, and the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes or guaranties and the grammatical construction of sentences shall conform thereto. If more than one party shall execute this Deed, the term "Grantor" shall mean all parties signing, and each of them, all of whom shall be jointly and severally liable hereunder, and each agreement, obligation and Secured Indebtedness of Grantor shall be and mean the several as well as joint undertaking of each of them.

17. Severability. The parties agree that the provisions of this Deed are severable, and in the event any clause, phrase, sentence or paragraph shall be declared by a court of competent jurisdiction to be invalid or unenforceable, then the parties declare that the remaining clauses, phrases, sentences and paragraphs of this Deed shall remain in full force and effect.

18. **Waiver of Grantor's Rights.** BY EXECUTING THIS INSTRUMENT GRANTOR EXPRESSLY ACKNOWLEDGES THAT UPON GRANTOR'S DEFAULT HEREUNDER, GRANTEE IS GIVEN THE RIGHT TO ACCELERATE THE DEBT SECURED HEREBY AND TO SELL THE PROPERTY CONVEYED HEREBY AT PUBLIC AUCTION PURSUANT TO THE POWER OF SALE CONTAINED HEREIN, AND GRANTOR HEREBY EXPRESSLY WAIVES ANY RIGHTS TO NOTICE AND HEARING BEFORE SUCH SALE UNDER POWER BY GRANTEE, OTHER THAN THE REQUIRED ADVERTISEMENT ONCE A WEEK FOR FOUR WEEKS PLUS GRANTOR'S INHERENT LEGAL RIGHT TO SEEK A COURT INJUNCTION. GRANTOR MAKES THIS WAIVER KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY, AFTER HAVING BEEN GIVEN FULL EXPLANATION OF GRANTEE'S RIGHTS HEREUNDER PLUS THE OPPORTUNITY TO CONSULT AN ATTORNEY OF GRANTOR'S OWN CHOOSING BEFORE EXECUTING THIS INSTRUMENT AND INITIALLING THIS PARAGRAPH.

19. Prior Deeds. If a default by Grantor should occur under any one or more of the documents evidencing or securing a debt that is secured by the deeds to secure debt listed below (the "Prior Deeds"), if any, such default shall constitute a Default hereunder, whereupon Grantee, at Grantee's option and without notice or demand to Grantor, may proceed immediately to exercise any and all rights and remedies provided hereunder, or may make any payments or perform any acts necessary to correct any such default, or may pay all or part of the debt secured by any one or more of the Prior Deeds. Any payment so made or costs so incurred in connection with Grantee's action pursuant to this

7



paragraph shall be treated as though made or incurred pursuant to the provisions of Paragraph 2 hereof, shall bear interest as set forth in Paragraph 2 hereof, and shall be secured hereby. Grantor hereby assigns to Grantee all surplus funds which, upon foreclosure of a Prior Deed, may come into the hands of the person performing such foreclosure, and Grantor hereby directs that such surplus funds be paid over to Grantee to be applied upon payment of the debt secured hereby. Grantor will pay or cause to be paid as and when due all payments on the debts and other obligations secured by the Prior Deeds. Grantor represents and warrants to Grantee that as of the date of this Deed, Grantor is not in default under any of the Prior Deeds and no event exists which, with the giving of notice or passage of time, or both, would constitute a default under any of the Prior Deeds.

PRIOR DEEDS: "NOT APPLICABLE"

20. **Indemnity.** Grantor shall protect, indemnify and save harmless Grantee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including attorneys' fees and expenses) imposed upon or incurred by Grantee by reason of (a) any claim for brokerage fees or other such commissions relating to the Premises or the Secured Indebtedness, or (b) the condition of the Premises, or (c) any default by Grantor under this Deed, the Note, or any other Loan Documents, or (d) failure to pay recording, mortgage, intangibles or similar taxes, fees or charges relating to the indebtedness evidenced by the Note or any one or more of the Loan Documents, or (e) the Loan Documents or any claim or demand whatsoever which may be asserted by reason of any alleged action, obligation or undertaking to be performed or discharged by Grantee pursuant to this Deed or any other document evidencing, securing, or in any way relating to the Secured Indebtedness or pursuant to any matter contemplated in the Loan Documents. In the event Grantee incurs any liability, loss or damage by reason of the foregoing, or in the defense of any claim or demand arising out of or in connection with the foregoing, the amounts of such liability, loss or damage shall be added to the Secured Indebtedness, shall bear interest at the interest rate specified in the Note from the date incurred until paid and shall be payable on demand.

IN WITNESS WHEREOF, this Deed has been duly executed and sealed by Grantor the day and year first above written.

Signed, sealed and delivered, this
29 day of December, 2023, in
the presence of:

_____
Unofficial Witness

**GRANTOR:**

**NO FREE, LLC, a Georgia limited liability company**

By: _____ (SEAL)
Jerry K. Williams, Jr., M.D.
its Managing Member

_____
Notary Public

(NOTARY SEAL)

My Commission Expires:
1/27/2025

8

Deed Book 57379 Pg 401

## EXHIBIT "A"

### (Legal Description of 285 Centennial Park Drive, Commercial Unit No. 2)

All that tract or parcel of land lying and being in Land Lot 78 of the 14th District of Fulton County, Georgia, being more particularly described as follows:

That certain Condominium Number CU-2, and rights appurtenant thereto as described in that certain Declaration of Condominium for MUSEUM TOWER AT CENTENNIAL HILL CONDOMINIUM, dated June 7, 2002, recorded November 7, 2002, in Deed Book 33475, Page 596, *et. seq.* records of Fulton County, Georgia, and as depicted by that certain plat recorded in Condominium Plat Book 15, Pages 110-111, aforesaid records; and in accordance with those floor plans found in Condominium Floor Plan Book 23, Pages 74-101, as amended, together with said Unit's appurtenant percentage of undivided interest in the common elements of MUSEUM TOWER AT CENTENNIAL HILL CONDOMINIUM, as provided by said Declaration, which Declaration, plat, plans and allied instruments and amendments executed thereto, are incorporated herein by reference as a part of the description of the property described hereby.

H:/SALE/285 Centennial Olympic Park/SELLER CLOSING DOCS 4/10/2017.doc

Deed Book 67478 Page 137
CHÉ ALEXANDER
Clerk of Superior Court

## Exhibit B

1. Taxes for 2024 and subsequent years, a lien not yet due and payable.

2. All matters as shown on Plat at Condo Plat Book 15, Pages 110-111.

3. All matters as shown on Plat at Floor Plan Book 23, Pages 74-101.

4. Decorative Driveway Agreement at Deed Book 32524, page 534.

5. Covenants at Deed Book 30124, page 638, as amended in Deed Book 32876, 257; Deed Book 33829, page 526.

6. Covenants at Deed Book 33475, page 596, as amended at Deed Book 33825, page 200; Deed Book 34131, page 567; Deed Book 34251, page 39; Deed Book 34795, page 261; Deed Book 37135, page 268, Deed Book 37135, page 272; Deed Book 45179, page 253.

7. Permitted title exceptions at Deed Book 57379, page 399.

4

