# Exhibit "D"

# PROMISSORY NOTE

$700,000.00                                                                                September 17, 2024

      RIVERDAWG, LLC, a Georgia limited liability company ("Borrower") whose address is 1004 Memorial Lane, Suite 200, Savannah, GA 31410 and **FIRST LIBERTY CAPITAL PARTNERS, LLC**, a Georgia limited liability company (hereinafter, together with any subsequent holder hereof, sometimes called "**Lender**" or "**Holder**"), whose address is P. O. Box 2567, Newnan, GA 30264, agree as follows:

    A.    Borrower has requested that Lender make a loan in the original principal amount of **Seven Hundred Thousand Dollars ($700,000.00)** (the "**Loan**"), and Lender hereby agrees to make the Loan to Borrower upon the terms and conditions contained herein.

    B.    The principal amount of the Loan shall be allocated by Lender to an account established for Borrower, and Loan proceeds shall be disbursed from time to time on terms and conditions as established by Lender as to timing, amount and other conditions of disbursements.

    **THEREFORE, FOR VALUE RECEIVED,** Borrower hereby promises to pay to the order of Lender or Holder, the principal sum of **Seven Hundred Thousand Dollars ($700,000.00)** together with interest from the date hereof until paid in full, on the unpaid principal balance from time to time outstanding at the rate hereinafter set out, payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. Said principal and interest shall accrue and be payable as follows:

    1.    **Interest.**    Interest shall accrue at the rate of sixteen percent (16%) per annum computed on the basis of a 360 day year. Interest shall be computed on the entire principal amount of the Loan from the date of the Loan, notwithstanding that a portion of the Loan proceeds may be held by Lender for future disbursement to or on behalf of Borrower.

    2.    **Payments.**

        a.    **Monthly Payments.** Borrower shall make monthly payments of interest only on the outstanding principal balance with the first payment due at closing in the amount of $4,044.43. Thereafter, Borrower shall make monthly payments in the amount of $9,333.33 commencing on November 1, 2024, and continuing thereafter on the 1st day of each successive month until September 18, 2025 (the "**Maturity Date**"), at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges and accruals due hereunder shall be due and payable for all purposes in full in a single **BALLOON PAYMENT**. All such payments shall be made at the office of Lender by federal wire transfer or electronic funds transfer, or such other place and to such other person as the Lender or any subsequent holder hereof may from time to time designate in writing.

        b.    **Minimum Interest.** Borrower may prepay this Loan at any time, provided however, that Borrower agrees to pay the full amount of all Interest that would have been due under this Loan, plus outstanding principal and any other unpaid charges and accruals hereunder, which shall be deposited as an Interest Reserve at closing and deducted from Loan proceeds. During and after the seventh month, prepayment shall require payment of outstanding principal plus accrued interest and any other unpaid charges and accruals due hereunder.

        c.    **Interest Reserve.** A six month evergreen interest reserve in the amount of $55,999.98 (the "**Evergreen Reserve**") and shall be held by Lender as additional security for Borrower's obligations under the Loan. Lender, in its sole discretion, may use the Evergreen Reserve to pay

1

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



Principal, Interest, fees, charges, or other accruals as provided for under this Loan, fund legal fees and costs, pay or satisfy any indemnity liability or obligating, or satisfy any other condition or even increasing the credit risk to the Borrower. If there is no Event of Default, any unused portion of the Reserve Accounts established hereunder shall be applied to the amount due upon repayment of this Loan.

d.  **Loan Extension.** Borrower shall have the right to extend the Maturity Date of the Loan for an additional six (6) months upon notice to Lender prior to maturity and payment to Lender of an extension fee of 2.5% of the Loan principal amount, but only in the event the Loan has been paid as agreed to date.

3.  **Late Charge/Post Default Interest.** Borrower further agrees to pay a "late charge" of five percent (5%) of any amount due hereunder (but not in excess of the maximum amount allowed by any applicable law, rule or regulation) if paid more than three (3) days after the due date thereof, to cover the extra expense involved in handling delinquent payments. These provisions shall not be deemed to excuse a late payment or be deemed a waiver of any other rights Lender may have including the right to declare the entire unpaid principal and interest immediately due and payable. Notwithstanding any provision to the contrary herein, from and after the maturity of this Loan (whether by acceleration or otherwise) or an Event of Default, interest on principal (but not on unpaid interest) shall be computed at the rate of twenty-four percent (24.0%) (the "**Default Rate**").

4.  **Loan Documents and Collateral.**

    (a)  **Grant of Security Interest.** Borrower hereby grants to Lender a continuing security interest in all of its right, title, and interest in, to, and under the collateral described below to secure the payment and performance of the obligations set forth in this Loan, and authorizes and approves the filing of security instruments, including – but not limited to – UCC Financing Statements (the "**Security Interest**"). "*Collateral*" shall mean the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Lender is giving to Borrower a security interest for the payment of this Loan and performance of all other obligations under the Loan:

    All assets of Borrower, now owned or hereafter acquired, including, without limitations, all of Borrower's presently owned and hereafter acquired personal and fixture property wherever located, including, without limitation, all accounts, chattel paper, inventory, instruments, investment property, equipment, documents, deposit accounts, commercial tort claims, letters-of-credit rights, general intangibles including payment intangibles, patents, software, trademarks, tradenames, customer lists, supporting obligations, all proceeds and products of all the foregoing, including without limitation, insurance proceeds, lock box contents and proceeds.

    (b) **Security and Perfection.** The Parties acknowledge and agree that this will be secured and perfected by: (1) the Deed to Secure Debt granted in favor of Lender for the real property and improvements located at 7934 Hiawassee Wilderness Trials, Hiawassee, GA 30456, (2) the Unconditional Guarantees of Dr. Jerry Williams and Urgent Care 247 LLC, (3) the Evergreen Reserve, (4) the UCC-1 Financing Statement, and (5) all other transactional documents providing security to Lender for this Loan and all other obligations pursuant to the cross-collateral provisions set forth below (collectively, the "**Security Documents**" and together with this Loan and related transactional documents, the "**Loan Documents**").

5.  **Loan Oversight.** Borrower agrees that the principal purpose of the Loan is to purchase and expand an existing Urology Clinic. Borrower shall provide Lender with monthly financials and

2
*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



such information as Lender may request from time to time regarding application of loan proceeds and performance under the Loan documents.

6.  **Cross-Default and Cross-Collateralization.**

(a) Lender or its affiliates has made or may make other loans to Borrower or its affiliates (as used herein the term "*affiliates*" shall include any and all entities related to Lender and Borrower by common ownership and/or control) evidenced by various notes, leases, and deeds to secure debt (a "deed" to secure debt as used herein to include mortgages, security agreements, fixture filings, pledges and other documents securing the Loan or other obligations). Any event of default or default as defined in this Loan, any, any note, any lease, any deed to secure debt or other obligation from Borrower or its affiliates to Lender or its affiliates shall be an event of default or default under this Loan and all of the notes, leases, or deeds to secure debt from Borrower or its affiliates to Lender or its affiliates.

(b) Lender has made or may make other loans to Borrower evidenced by various notes, leases or deeds to secure debt. The real property and any other property described in said other deeds to secure debt is and shall be security for each and every other note, lease or other obligation executed by Borrower and its affiliates in favor of Lender and its affiliates, or any advance made thereunder, or any renewal or extension thereof. Further, the real property described herein is and shall be further security for each and every note, lease or other obligation executed by the Borrower and its affiliates in favor of the Lender and its affiliates. This paragraph shall apply notwithstanding the fact that the outstanding balance of any one or more of said loans exceeds the original face amount of the notes, leases or other obligations evidencing said debt.

(c) Nothing contained within this section, shall in any way impair the rights of the Lender granted in any note, any lease, any deed to secure debt or other obligation. Further, each and every note, lease, deed to secure debt or other obligation executed between Lender and its affiliates to Borrower and its affiliates is and shall remain a separate obligation of Borrower, and each and every note, lease, deed to secure debt or other obligation is and shall be separately enforceable according to its terms until all outstanding indebtedness owing from Borrower and its affiliates to Lender and its affiliates has been paid in full. Further, Lender or its affiliates may, at its sole discretion, institute separate or collective proceedings with respect to each note, lease, deed to secure debt or other obligation simultaneously or in such order and at such times as Lender or its affiliates may elect. The pendency of any proceeding with respect to any any note, any lease, any deeds to secure debt or other obligation shall not be grounds for abatement of or hindering, delaying or preventing any proceeding in respect to any other note, lease, deed to secure debt or other obligation. Event of default or default under each note, any lease, any deed to secure debt or other obligation shall constitute a separate cause of action.

7.  **Representations and Warranties.** Borrower makes the following representations and warranties, all of which shall survive the execution and delivery of this Loan. Unless otherwise specified, such representations and warranties shall be deemed made as of the date hereof.

(a) <u>Valid Existence and Power</u>. Borrower is a legal entity, duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and is duly qualified or licensed to transact business in all places where the failure to be so qualified would have a material adverse effect on the Borrower. Borrower has the power to make and perform its obligations under this Loan and Loan Documents, instruments or other documents executed by it in connection therewith or relating thereto including, but not limited to, the Security Documents, written resolution of the Borrower, and other documents contemplated thereby (such agreements, instruments and documents executed by Borrower and any other party in connection with this Loan or relating thereto, collectively, the "Transaction Documents" and each, a "Transaction Document") and all such Transaction Documents will constitute the legal, valid and binding obligations of the Borrower, enforceable in accordance with their

3
*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



respective terms. Borrower has not changed the jurisdiction of its organization within the five (5) years preceding the date hereof.

(b) <u>Authority</u>. The execution, delivery and performance of this Loan, and any Transaction Documents, have been duly authorized by all necessary actions of the Borrower, and do not and will not violate any provision of law or regulation, or any writ, order or decree of any court or governmental or regulatory authority or agency or any provision of the governing instruments of Borrower, and do not and will not, with the passage of time or the giving of notice, result in a breach of, or constitute a default or require any consent under, or result in the creation of any lien or other encumbrance upon any property or assets of Borrower pursuant to, any law, regulation, instrument or agreement to which Borrower is a party, or by which Borrower or its properties may be subject, bound or affected.

(c) <u>Financial Condition</u>. The Borrower is Solvent, and after consummation of the transactions set forth in this Agreement and the other documents, Borrower will be Solvent. "Solvent" means that Borrower has cash flow and/or capital sufficient to carry on its business and transactions in which it is currently engaged and all business and transactions in which it is about to engage, is able to pay its debts as they mature, and has assets having a fair value greater than its liabilities, at fair valuation.

(d) <u>Authorizations</u>. All authorizations, consents, approvals and licenses required under applicable law or regulation for the ownership or operation of the property owned or operated by the Borrower, or for the conduct of any business in which it is engaged have been duly issued and are in full force and effect, and it is not in default, nor has any event occurred which with the passage of time or the giving of notice, or both, would constitute a default, under any of the terms or provisions of any part thereof, or under any order, decree, ruling, regulation, closing agreement or other decision or instrument of any governmental commission, bureau or other administrative agency or public regulatory body having jurisdiction over the Borrower, which default would have a material adverse effect on Borrower. Except as noted herein, no approval, consent, or authorization of, or filing or registration with, any governmental commission, bureau or other regulatory authority or agency is required with respect to the execution, delivery or performance of any Transaction Document or this Loan.

(e) <u>Full Disclosure</u>. There is no material fact which is known, or which should be known by Borrower that Borrower not disclosed to Lender which could have a material adverse effect on Borrower. No agreement, document, Transaction Document, certificate, or statement delivered by Borrower to Lender contains any untrue statement of a material fact or omits to state any material fact which is known, or which should be known by Borrower necessary to keep the other statements from being misleading.

(f) <u>Sophistication</u>. The Borrower is sophisticated in financial matters, the terms of this Loan were negotiated between sophisticated parties. Moreover, the Borrower represents and warrants that the funds received shall only be used for business and commercial purposes and not for personal, family, consumer or household purposes. Borrower acknowledges and agrees that this Loan does not constitute a consumer transaction, and as such, Borrower hereby releases, waives and forfeits any claim, cause of action or lawsuit on the basis that the transactions contemplated by this Loan constitute a consumer transaction under the law or statute of any jurisdiction, including – but not limited to – Georgia or the laws of the state in which the Borrower or any Collateral is located.

8. <u>Affirmative Covenants</u>.

(a) <u>Prohibition on Additional Debts</u>. Borrower will not incur any additional debts without the prior written approval of the Lender.

(b) <u>Reporting and Access</u>. Before the tenth (10th) day of the following month, the Borrower agrees to provide to the Lender a monthly profit and loss, balance sheet and cash flow statements, accounts receivable aging report for the accounts, accounts payable aging reports, inventory

4
*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



reports for finished goods, inventory reports for non-finished goods, bank statements and other financial information reasonably requested by Lender. Once completed, Borrower agrees to provide reviewed or audited annual and/or quarterly financial statements, if applicable, and income tax returns, payroll tax returns, and proof of payment of its tax liabilities to Internal Revenue Service or other state or local revenue agency, whether paid with the returns. Lender shall also provide unlimited online viewing access to Borrower's bank accounts and will not cutoff online access to Lender at any time.

(c) <u>Insurance</u>. Borrower, at Borrower's sole expense, shall carry reasonable insurance in such coverages and amounts for the protection of credit exposure and its Collateral that the Borrower deems adequate. At a minimum, Lender shall carry a comprehensive commercial general liability insurance policy with minimum limits of at least $1,000,000.00 for bodily injury for each person and $2,000,000.00 per occurrence and property and casualty damage of $1,000,000.00 each occurrence. Any insurance policies shall name Lender as an additional insured, a loss payee, a certificate holder and/or a mortgagee, and a certification of insurance shall be provided to the Lender evidencing that Lender is an additional insured, a loss payee, a certificate holder and/or a mortgagee. The Borrower agrees that none of the insurance policies required under this Paragraph shall be cancelable without the insurance company giving notice to the Lender. If Borrower fails to acquire any insurance required by this Paragraph, Lender may, at its option, cause such insurance to be issued, and in such event, Borrower agrees to pay the premium for such insurance as a chargeable cost or through the any Evergreen Reserve.

(d) <u>Existence; Conduct of Business</u>. Borrower will do or will cause to be done all things necessary to preserve, renew and maintain in full force and effect its legal existence and its respective rights, licenses, permits, privileges, franchises, patents, copyrights, trademarks, and trade names material to the conduct of its business and will continue to engage in the same business as presently conducted or such other businesses that are reasonably related thereto.

(e) <u>Compliance with Laws, Etc</u>. Borrower will comply with all laws, rules, regulations and requirements of any governmental authority applicable to its business and properties, including without limitation, all laws, rules, regulations, codes, ordinances, orders, decrees, judgments, injunctions, notices or binding agreements issued, promulgated or entered into by or with any governmental authority, relating in any way to the environment, preservation or reclamation of natural resources, as well as the Employee Retirement Income Security Act of 1974 and the Occupational Safety and Health Act of 1970, both as amended from time to time and any respective successor statute thereof.

(f) <u>Taxes</u>. Borrower will file all federal and state income and other tax returns which are required to be filed and will pay all taxes as shown on said returns and all taxes, including, without limitation, withholding, FICA and ad valorem taxes, shown on all assessments received by it to the extent that such taxes have become due. Except for as otherwise disclosed to Lender, Borrower is not subject to any federal, state or local tax Liens, nor has the Borrower received any notice of deficiency or other official notice to pay any taxes which have not been disclosed by the Borrower to Lender prior to entering into this Loan. Borrower shall pay all sales and excise taxes payable by it.

(g) <u>Further Assurances and Cooperation</u>. Borrower shall take such further action and provide to Lender such further assurances as may be reasonably requested to ensure compliance with the intent of this Loan and any affiliated agreements. Borrower agrees to cooperate in executing any amendments to this Loan deemed necessary to confirm the intent of the Parties, including – but not limited to – correcting any clerical mistakes such as page numbers, typos, missing initials, *etc.*, and Borrower agrees to execute and deliver such other and further instruments as may be necessary to implement fully the terms of this Loan. The Borrower further acknowledges and agrees that the presence of clerical mistakes in the Loan is not material and do not affect the enforceability of this Loan.

(h) <u>Additional Collateral</u>. In the event that Lender believes, in its sole discretion, to be under-collateralized of insecure, Obligors, now existing or future acquired, shall immediately provide

5
*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



and deliver to Lender additional collateral, and Obligors and/or the new debtors will execute all documentation necessary to obligate the new debtor and/or to perfect a security interest in the collateral.

9. **Negative Covenants.**

(a) **Indebtedness.** The Borrower will not create, incur, assume or suffer to exist any additional indebtedness (other than business credit card debt and trade payables, each in the ordinary course of business consistent with past practice), except the indebtedness created pursuant to this Loan.

(b) **Fundamental Changes.** The Borrower shall not merge, reorganize, consolidate, or amalgamate with any other person or entity without the prior written consent of the Lender.

(c) **Sale of Assets.** The Borrower will not convey, sell, lease, assign, transfer or otherwise dispose of any of its assets, business, or property, whether now owned or hereafter acquired, except (i) for the sale or other disposition for fair market value of obsolete or worn-out property or other property not necessary for operations disposed of in the ordinary course of business, and (ii) the sale of inventory in the ordinary course of business.

10. **Events of Default.** The principal sum evidenced by this Loan, together with all accrued but unpaid interest thereon and all other agreed charges owing by Borrower hereunder, shall become immediately due and payable at the option of Lender upon the occurrence of any "Event of Default", as used and defined in any Loan Document, each of which shall constitute an "Event of Default" hereunder, *provided however*, that Borrower shall have five (5) days following notice of a monetary default in which to cure, and thirty (30) days following notice of a non-monetary in which to cure. Not in limitation of the foregoing but in addition thereto, the following shall constitute events of default under this Loan: (a) failure of Borrower (Borrower and each other person primarily or secondarily liable to Lender for the indebtedness evidenced by this Loan hereinafter collectively referred to as "Obligors") to make any payment of principal or interest or any other amount under this Loan when due or failure of Borrower to perform or observe any promise or agreement contained in this Loan; (b) the death of (if an individual), death of a general partner (if a partnership), or dissolution of (if a partnership or corporation), insolvency of, general assignment for the benefit of creditors by, any Obligor; (c) the commencement of a voluntary proceeding under any law relating to bankruptcy, insolvency, reorganization, arrangement, composition or readjustment of debt, dissolution, liquidation or debtor relief law or statute of any jurisdiction, whether now or hereafter in effect, including without limitation the filing of a petition under any chapter of the federal bankruptcy code by or against, or acquiescence in writing to same by, or failure to timely and diligently controvert any such involuntary proceeding by, any Obligor; (d) the filing of a proceeding for the appointment of a receiver, custodian, trustee, liquidator or similar official for Obligor or Obligor's property or consenting to the appointment of same; the failure of an involuntary petition for relief under the Federal Bankruptcy Code, as amended, to be dismissed within thirty (30) days after the commencement thereof or in which an order for relief is entered; (e) the making by any Obligor of a conveyance fraudulent as to creditors under any state or federal law; (f) entry of any judgment against, or issuance of a levy or writ of execution, attachment or garnishment against any of the property of, any Obligor; (g) the inability of any Obligor to pay debts as they become due or admit in writing to such effect; (h) the transfer by any Obligor of all or substantially all of his, her or its assets outside the ordinary course of business, or the waste, loss or dissipation of a substantial part of such person's assets; (i) if any Obligor is a partnership, the withdrawal or removal of any general partner of such partnership; (j) if any Obligor is a corporation, the transfer, directly or indirectly (including through any voting trust, irrevocable proxy, or the like), of the ownership or power to vote more than thirty percent (30%) of the voting stock of such corporation; (k) the suspension of the operation of any Obligor's present business; (l) the occurrence of any default or event authorizing acceleration as provided under any Loan Documents or any other agreement by and between the Lender, Obligors, any affiliated entities of the Obligors or any third party; (m) any statement, representation or warranty of any Obligor made orally or in writing in any document evidencing, securing or otherwise relating to the indebtedness evidenced by this Loan or in any

6
*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



other writing or statement at any time furnished or made by any Obligor to Lender is false or misleading in a material respect as of the date furnished or made; (n) revocation or termination of any guaranty executed in favor of Lender guaranteeing the indebtedness evidenced by this Loan; (o) the financial responsibility of any Obligor becomes impaired at any time in the sole opinion of Lender;(p) the determination by Lender that it otherwise deems itself to be insecure; (q) all or any portion of this Loan or Loan Documents shall at any time and for any reason be declared to be null and void, or a proceeding shall be commenced by Borrower, or by any governmental authority having jurisdiction over Borrower, seeking to establish the invalidity or unenforceability thereof (exclusive of questions of interpretation of any provision thereof), or the Borrower shall deny that it has any liability or obligations for the payment of any obligation purported to be created under this Loan or any of the Loan Documents; or (r) any representation or warranty made or deemed made by or on behalf of the Borrower in or in connection with this Loan, Loan Documents or any other document executed in connection therewith and any amendments or modifications hereof or waivers hereunder, or in any certificate, report, financial statement or other document submitted to the Lender by the Borrower, or any representative of the Borrower pursuant to or in connection with this Loan or any other Loan Documents executed in connection herewith shall prove to be incorrect in any material respect when made or deemed made or submitted.

11.  **Remedies.**

(a)  **Acceleration; Costs.** Upon the occurrence and during the continuation of any Event of Default, Lender may at its option without notice or demand of any kind declare this Loan immediately due and payable for the entire unpaid principal hereof plus accrued interest hereon. Borrower agrees to pay Lender all costs of collection of this Loan incurred by Lender, including but not limited to legal expenses and reasonable attorney's fees, paid or incurred by Lender on account of such collection, whether or not suit is filed with respect thereto and whether such cost or expense is paid or incurred, or to be paid or incurred, prior to or after entry of judgment.

(b)  **Cross-Collateralization Remedy.** Upon the occurrence of an Event of Default or default under this Loan or any affiliated agreements, such event of default shall be deemed an event of default under any and all agreements between the Parties, and Lender or its affiliates, in their sole discretion, shall be entitled to assert any and all rights and remedies against the Obligors, and collect against any collateral, property or guarantee as provided for under any agreement as set forth in Paragraph 6, above.

(c)  **Entry onto Real Property.** Lender is authorized to enter onto the real property or leased premises of the Borrower to take control of the Collateral or other property secured by the Loan Documents.

(d)  **ACH.** Borrower authorized Lender to initiate electronic debit or credit entries through the ACH system to any deposit account of Borrower, and the Borrower agrees to be bound by the ACH rules set forth by the National Automated Clearing House Association.

(e)  **Notice to Account Debtors.** Lender may affix Borrower's signature and send notices of assignment under Section 9-406 of the UCC to all the account debtors of Borrower, and the Borrower agrees and acknowledges that all such notices of assignment are authenticated and approved. Lender may take and endorse for deposit in the name of Borrower all payments received for any of Borrower's accounts and to deposit same for benefit of Lender.

(f)  **Receivership.** Lender may, in its sole discretion, seek place the Borrower into receivership, or other applicable state or federal law process, and request a court to appoint a receiver or trustee over the Borrower, and Borrower will not contest and consent to the appointment thereof.

(g)  **No Waiver.** No remedy conferred hereunder is intended to be exclusive of any other remedy and each and every such remedy shall be cumulative and shall be in addition to every other



remedy given hereunder or hereafter existing at law or in equity or by statute or otherwise. No course of dealing between Borrower and Lender or any delay or omission on the part of Lender in exercising its rights hereunder shall operate as a waiver of any rights of such holder, nor shall any waiver by Lender of any such right or rights on any one occasion be deemed a bar to, or waiver of, the same right or rights on any future occasion.

(h) <u>Borrower's Waivers</u>. Borrower hereby (i) waives demand, presentment for payment, notice of nonpayment, protest, notice of protest and all other notice, filing of suit, and diligence in collection of this Loan; (ii) agrees to any substitution, addition or release of any party or person primarily or secondarily liable hereon; (iii) agrees that Lender shall not be required first to institute any suit, or to exhaust its remedies against Borrower or any other person or party to become liable hereunder, or against any collateral in order to enforce payment of this Loan; (iv) consents to any extension, rearrangement, renewal, or postponement of time of payment of this Loan and to any other indulgence with respect hereto without notice, consent, or consideration to any of them; (v) agrees that, notwithstanding the occurrence of any of the foregoing (except with the express written release by Payee or any such person), Borrower shall be and shall remain directly and primarily liable for all sums due under this Loan; and (vi) waives all statutory appraisal rights.

12. <u>ACH Provision</u>. In order to recoup any unpaid Interest or any obligations owing under this Loan upon an Event of Default, Borrower authorizes Lender to initiate electronic debit or credit entries through the ACH system to any deposit account of Borrower, and Borrower agrees to execute any ACH forms required by any financial institution in order to effectuate an ACH. The Borrower agrees to be bound by the ACH rules set forth by the National Automated Clearing House Association (the "NACHA").

13. <u>Notices</u>. Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Loan shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or three (3) days after being deposited in the United States mail, postage prepaid, certified with return receipt requested, if mailed to the addresses set forth in the beginning of this Loan or at such other address within the continental United States for either party as such party may designate by notice to the other given in accordance with the provisions of this paragraph; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice has been received shall also constitute receipt.

14. <u>Acceleration</u>. Time is of the essence in the performance of all obligations under this Loan. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at its option and as often as it may desire, may declare all liabilities, obligations and indebtedness due Lender, including without limitation this Loan to be immediately due and payable without demand, notice or presentment, and may exercise any other remedy available to Lender hereunder, at law or in equity.

15. <u>Costs of Collection</u>. Borrower agrees that if, and as often as, this Loan is given to an attorney for collection or to defend or enforce any of Lender's arising from or relating to this Loan, Borrower will pay to Lender attorney's fees in the amount of 15% of the principal balance due, together with all court costs and other expenses paid or incurred by Lender; provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

16. <u>Maximum Legal Rate</u> Borrower and Lender agree that no payment of interest or other consideration made or agreed to be made by Borrower to Lender pursuant to this Loan shall, at any time,

8
*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



be in excess of the maximum rate of interest permissible by law. In the event such payments of interest or other consideration provided for in this Loan shall result in an effective rate of interest which, for any period of time, is in excess of the limit of the usury or any other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied to principal immediately upon receipt of such monies by Lender hereof with the same force and effect as though the payer had specifically designated such and Lender had agreed to accept such extra payments as a principal payment, without premium. This provision shall control every other obligation of the Borrower and Lender under this Loan.

17. **Miscellaneous.**

(a) With respect to any and all obligations, to the extent permitted by applicable laws Borrower waives the following: (1) all rights or exemption of property from levy or sale under execution or other process for the collection of debts under the constitution or laws of the United States or any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold Borrower on any obligation; (3) all statutory provisions and requirements for the benefit of the Borrower now or hereafter in force (to the extent that same may be waived); (4) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Lender and Borrower shall be adverse parties. Borrower agrees to pay all filing fees and taxes and all costs of collecting or securing or attempting to collect or secure any obligations, including but not limited to attorney's fees.

(b) The obligations and liabilities of Borrower under this Loan are continuing, absolute, and unconditional, and shall remain in full force and effect until all amounts due hereunder have been paid in full and all obligations of Borrower have been discharged without regard to and without being released, discharged, impaired, modified or in any way affected by, the occurrence from time to time of any event, circumstance or condition, including without limitation any one or more of the following, whether or not with notice to or consent of Borrower: (1) any assignment or transfer this Loan or of any interest hereunder; (2) any consent, extension, indulgence or other action or inaction (including without limitation any lack of diligence or failure to mitigate damages) under, or in respect of, this Loan or other agreement, or any exercise or non-exercise of any right, remedy, power or privilege under, or in respect of, this Loan or agreement; or (5) the failure, omission, delay or lack of diligence on the part of the Lender or any assignee or successor thereto, to enforce, assert or exercise any right, power, privilege or remedy conferred upon the Lender by this Loan or other agreement.

(c) The Lender, may, but shall not be required to, apply to the payment of the debt evidenced hereby, on or after the maturity of said debt, whether by acceleration or otherwise, any money or credit held by the Lender on deposit, in trust or otherwise, for the account of the Borrower or any of them.

(d) Lender shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid, unless in writing and signed by the Holder. All rights and remedies of the Lender under the terms of this Loan and under any statutes or rules of law shall be cumulative and may be exercised successively or concurrently. Borrower agrees that the Lender shall be entitled to all the rights of a holder in due course of negotiable instruments. Any provision of this Loan which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof.

(e) The liabilities and obligations of each person or entity who or which is a Borrower are joint and several.

9
*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



(f)   Borrower warrants and agrees that the proceeds of this Loan will be used for business purposes (other than agricultural purposes) only, and not for personal, family or household purposes.

(g)   Borrower and Lender intend and believe that each provision in this Loan comports with all applicable local, state and federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Loan is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Loan to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of Borrower and Lender that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Loan shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender hereof under the remainder of this Loan shall continue in full force and effect.

18.   **Governing Law.** This Loan, and any dispute related to or arising from this Loan, shall be governed by and construed in accordance with the laws of the State of Georgia. Borrower acknowledges that the negotiation of the provisions of this Loan and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give Borrower, nor shall any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Loan or said Loan Documents to become effective and valid and binding obligations of the Borrower. Borrower acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Borrower acknowledges further that the negotiation, execution, and delivery of this Loan and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Borrower hereby submits itself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with the Loan or any of the Loan Documents. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a waiver by Lender of any of the foregoing.

19.   **Waiver of Jury Trial.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS LOAN OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION WITH THIS LOAN OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS LOAN OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF EITHER PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. BORROWER AGREES THAT LENDER MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING,



VOLUNTARY AND BARGAINED AGREEMENT OF BORROWER TO IRREVOCABLY WAIVE BORROWER'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN BORROWER AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

20. **Venue**. Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Loan or any agreements or transactions contemplated hereby may be brought in the courts of the State of Georgia or of the United States of America for the Northern District of Georgia and hereby expressly submits to the personal jurisdiction and venue of such courts for the purposes thereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum. Borrower hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the address of Borrower last provided to Holder in connection with the Loan, such service to become effective ten (10) days after such mailing.

21. **Assignment**. Borrower may not assign any of its rights under this Loan without the prior written consent of the Lender, any such purported assignment without such consent being null and void. Lender shall be permitted to assign any of its rights under this Loan to a third party without providing notice to Borrower or Borrower's written consent.

22. **Amendment**. This Loan contains the entire agreement of the Parties and supersedes, replaces and extinguishes any prior agreements between the Parties. This Loan may not be modified except by a written agreement executed by Lender and Borrower.

23. **Severability**. If, in any action before any court or agency legally empowered to enforce any provision contained herein, any provision hereof is found to be unenforceable, then such provision shall be deemed modified to the extent necessary to make it enforceable by such court or agency. If any such provision is not enforceable as set forth in the preceding sentence, the unenforceability of such provision shall not affect the other provisions of this Loan, and this Loan shall be construed as if such unenforceable provision had never been contained herein.

24. **Electronic Signatures**. The Parties agree that the use of any electronic signatures is the legally binding equivalent of a handwritten signature and has the same validity and binding effect of a handwritten signature. The Borrower further agrees that it will not, at any time, repudiate the validity of this Loan or argue that its electronic signature is not legally binding. Borrower will also not object to the admissibility of this Loan in the form of an electronic record, the admissibility of a paper copy of an electronic version of the Loan, or a paper copy of the Loan bearing an electronic signature on the grounds that it is an electronic record or has an electronic signature that is not an original or not in its original form.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]
[SIGNATURE PAGE TO FOLLOW]



11
*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*

IN WITNESS WHEREOF, Borrower has caused this Note to be executed, sealed, and delivered as of the date first set forth above.

BORROWER

RIVERDAWG LLC,
a Georgia limited liability company

By: _____ (Seal)
Name: Dr. Jerry K. Williams
Title: Manager

STATE OF Georgia           )
                           )   ACKNOWLEDGEMENT
COUNTY OF Towns            )

I, as a notary public for the state of Georgia, do hereby certify that Dr. Jerry Williams, in his capacity as Manager of RiverDawg LLC, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this 17th day of September, 2024.

Notary Public for Towns Co. GA
My commission expires: 7-20-2026

[Notary Seal: PAMELA KENDALL FLOYD, NOTARY PUBLIC, TOWNS COUNTY, GA]