# Exhibit "E"

Case 1:25-cv-03826-MLB     Document 34-5     Filed 11/10/25     Page 1 of 11

Tax Parcel No. 0064-011; 0064-012; 0064-010

Upon recording, please return to:

Spencer Gandy, Esq.
Spencer Gandy LLC
3865 Wieuca Terrace NE
Atlanta, Georgia 30342

Towns County, Georgia
Clerk's Office Superior Court
File for Record ___9-18___
20_24_, at ___2:40___ P M
Recorded ___9-18___ 20_24_
In Book No. __734__ Page __460__
Cecil Dye, Clerk    469

## DEED TO SECURE DEBT,
## ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

This Deed to Secure Debt is exempt from intangible tax upon filing as the loan secured hereby has a maturity of less than three years as provided in OCGA Sections 48-6-60 et. seq.

THIS DEED TO SECURE DEBT, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT (hereinafter referred to as this "Deed") made this 17th day of September, 2024, by and between **RIVERDAWG, LLC** a Georgia limited liability company ("Grantor"), whose address is 1004 Memorial Lane, Suite 200, Savannah, GA 31410 and First Liberty Capital Partners LLC ("Grantee"), whose address is P. O. Box 2567, Newnan, GA 30264.

## W I T N E S S E T H:

THAT, WHEREAS, Grantor is justly indebted to Grantee in the sum of Seven Hundred Thousand Dollars ($700,000.00) in lawful money of the United States, and has agreed to pay the same, with interest thereon, according to the terms of a certain modification to promissory note (hereinafter referred to as the "Note") given by Grantor to Grantee, bearing even date herewith, with final payment being due on **September 28, 2025**;

NOW, THEREFORE, in consideration of the premises and of the sum hereinabove set forth and in order to secure the indebtedness and other obligations of Grantor hereinafter set forth, Grantor has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto Grantee and the successors, successors-in-title and assigns of Grantee the following property (the "Property"), to-wit:

That real property described in Exhibit "A" attached hereto and by this reference incorporated herein;

TOGETHER WITH all and singular, the improvements, fixtures, easements, hereditaments, rights, members and appurtenances thereunto belonging or in anywise appertaining, including, without limitation: the buildings and improvements now or hereafter erected thereon, and the fixtures, attachments, appliances, equipment, machinery, furnishings and other articles affixed or attached to said buildings and improvements or used or intended to be used with or in connection with the use, operation or enjoyment of the Property, including, without limitation, all building materials, electrical, plumbing, heating and air conditioning systems (including window units), all built-in appliances, cabinets and lighting fixtures, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of, any of the foregoing (all of the foregoing is hereinafter collectively referred to as the "Improvements and Personal Property"); and all minerals, shrubs, trees or other emblements now or hereafter on said Property or under or above the same or any part or parcel thereof, and all leasehold estates, usufructuary interests, and rights of Grantor in the Property, and all rights of Grantor as lessor or landlord under any lease or sublease letting or demising all or any portion of the Property or the Improvements

-1-



and Personal Property, including, without limitation, the interest of Grantor in all rents and security deposits paid or to be paid thereunder; and all easements, and appurtenances thereunto belonging or in any ways appertaining, and the reversion or reversions, remainder and remainders, rents, issues, and profits thereof and also all the estate, right, title, interest, claim, and demand whatsoever of Grantor of, in, and to the same and of, in, and to every part and parcel thereof; and all right of claim of Grantor with respect to the proceeds of insurance which Grantor now has or may hereafter acquire in the Property and the Improvements and Personal Property and any and all awards made for the taking by eminent domain, by any proceeding or purchase in lieu thereof, of the whole or any part of the Property and the Improvements and Personal Property; and if this is a construction mortgage all right, title and interest of Grantor in and to all construction materials, equipment, supplies and contracts.

TO HAVE AND TO HOLD all of the Property, the Improvements and Personal Property, property rights, leases, contract rights, claims and other items set forth in the preceding paragraph (all of which are collectively referred to as the "Premises") to the use, benefit and behoof of Grantee, forever, in fee simple.

Grantor warrants that Grantor has good title to the Premises and is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that the Premises are unencumbered except as may be herein expressly provided; and the Grantor will forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

This instrument is a deed passing legal title to the Premises pursuant to the laws of the State of Georgia governing loan or security deeds and security agreements and is not a mortgage, as "mortgage" is defined for the purpose of the real property law of the State of Georgia, but does constitute a "construction mortgage" as defined in Section 11-9-313(1)(c) of the Official Code of Georgia if so indicated hereinabove, and is made and intended to secure (i) the payment of the indebtedness evidenced by the Note and any modifications, extensions, renewals or consolidations thereof and substitutions therefor, either in whole or in part; (ii) any and all additional advances made by Grantee to protect or preserve the Premises or the security interest created hereby on the Premises, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Grantor's obligations hereunder or for any other purpose provided herein (whether or not the original Grantor remains the owner of the Premises at the time of such advance); (iii) the performance of all obligations of Grantor under this Deed; (iv) the performance of all obligations of Grantor under any loan agreement (including, without limitation, any construction loan agreement), guaranty and other agreements, documents or instruments evidencing, securing or otherwise relating to the indebtedness evidenced or guarantied by the Note (the Note, this Deed, and any and all other such loan agreements, guarantees, agreements, documents and instruments are hereinafter collectively referred to as the "Loan Documents"); and (v) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Grantee, now existing or hereafter coming into existence, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due to become due, and all renewals, modifications, consolidations and extensions thereof and substitutions therefor, either in whole or in part. All of the foregoing secured hereby are collectively described herein as the "Secured Indebtedness."

AND GRANTOR FURTHER COVENANTS AND AGREES WITH GRANTEE as follows:

1. Payment of Secured Indebtedness. Grantor shall pay to Grantee the Secured Indebtedness with interest thereon as in the Note, the Loan Documents and this Deed provided.

2. Grantor Warrants. Grantor warrants that Grantor is lawfully seized of the indefeasible estate in fee simple mortgaged by this Loan Documents and has the right to grant, bargain, convey, sell, and mortgage the Premises. Grantor also warrants that the Premises is unencumbered, except for encumbrances of record, and that Grantor will not encumber the Premises with any other mortgage, deed of trust, security agreement, or other lien document that creates a security interest in or encumbrance on the Premises. Grantor shall not sell, convey, transfer, mortgage, pledge, lien, charge, lease, or further encumber any interest in or any part of the Premises without the prior written consent of Grantee in its sole discretion. If any person should obtain any interest in all or any part of the Premises pursuant to the execution or enforcement of any lien, security interest, or other right, whether superior, equal, or subordinate to this Deed to Secure Debt or the lien hereof, such event shall be deemed to be a transfer by Grantor. Grantor shall not, without the prior written consent of Grantee in its sole discretion further assign the rents from the Premises, nor enter into any agreement to do any act to amend, modify, extend, terminate, or cancel, accept the surrender, subordinate, accelerate the payment of rent, or change the terms of any renewal option of any lease now or hereafter covering the Premises or any part thereof.

Grantor shall pay, when due and payable, all taxes, assessments, general or special, liens, encumbrances, lease payments, ground rents, utilities, and other charges levied on, or assess, placed, or made against the Premises, this instrument, or the Secured Indebtedness, or any interest of the Grantee in the Premises or the obligations secured hereby; Grantor shall promptly deliver to Grantee receipts showing payment in full of all of the above items. Grantor will defend title to the Premises against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Grantee, as requested by Grantee, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Premises.



-2-

In the event of the passage, after the date of this instrument, of any law or ordinance of the United States, this State, or any political subdivision thereof, wherein the Premises are situated, providing for any tax, assessment, or charge against the interest of the Grantee in the Premises or the obligations secured hereby, which is to be paid by Grantee, shall be the obligation of the Grantor and shall become immediately due and payable and, in the event payment thereof is not made forthwith by the Grantor, Grantee may take, or cause to be taken, such action as is provided for herein in the case of any other default in the payment of the indebtedness.

3. Payment of Other Items. Grantor shall pay, when due and payable, (a) all taxes, assessments, general or special and other charges levied on, or assessed, placed or made against the Premises, this Deed or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby; (b) premiums on policies of fire and other hazard insurance covering the Premises, as required in Article 5 herein; (c) premiums on all collaterally pledged life insurance policies, if any; (d) premiums for mortgage insurance, if this Deed and the Note are so insured; and (e) ground rents or other lease rentals, if any, payable by Grantor. Grantor shall pay to Grantee, together with and in addition to the payments of principal and interest payable under the Loan Documents, on the installment-paying dates thereof, until the Secured Indebtedness is fully paid or until notification from Grantee to the contrary, an amount reasonably sufficient (as estimated by Grantee) to provide Grantee with funds on hand to pay taxes, assessments, insurance premiums, rents and other charges next due so that Grantee will have sufficient funds on hand to pay same thirty (30) days before the date on which they become past due. In no event shall Grantee be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided. Grantor shall furnish to Grantee, at least thirty (30) days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums and rents next due, and Grantee shall pay said charges to the amount of the then unused credit therefor as and when they become severally due and payable. An official receipt therefor shall be conclusive evidence of such payment and of the validity of such charges. Grantee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefor in excess of the then amount of credit for said charges. The excess amount advanced shall be immediately due and payable to Grantee and bear interest at the rate of 12.50% per annum from date of advancement. Grantee may apply credits held by it for the above charges, on account of any delinquent installments of principal or interest or any other payments maturing or due under this Deed, and the amount of credit existing at any time shall be reduced by the amount so paid or applied. The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under and subject to all of the provisions hereof, provided that nothing contained in this paragraph shall be deemed to authorize or to constitute Grantee's consent to the transfer of the Premises or any portion thereof or any interest therein, including a security interest. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it.

4. Cross-Collateralization. This Deed to Secure Debt shall secure all obligations, debts and liabilities, plus interest and other accruals thereon, of Grantor or its affiliated entities (the "Grantor's Affiliates") and Payee or its affiliated entities (the "Grantee's Affiliates"). Such agreements and obligations shall be referred to as "Affiliated Agreements." The cross collateralization provided for herein secures all claims by Grantee and Grantee's Affiliates against Grantor and Grantor's Affiliates, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor or Grantor's Affiliates may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligations to repay such amounts may be or hereafter may become otherwise unenforceable. This section is specifically intended by the Parties to be a cross-collateralization provision so the collection rights, collateral and other property set forth in one agreement secures the debts and obligations of all the other agreements, and vice-versa.

Grantee shall have the right, in its sole discretion, to determine the order in which Grantee's rights in or remedies against the Note and any other related obligation documents and the collateral securing the same are to be exercised, which types of the collateral or which portions of the collateral are to be proceeded against and the order of application for proceeds of the collateral and against particular Note(s), loans or other obligations of Grantor to Grantee. Any collateral surplus due to liquidation hereunder can be applied to any and all loans and/or obligations of a Grantor in the order determined by Grantee in its sole discretion. For purposes hereon, Grantor agrees and acknowledges that a default under any Note made by Grantee in favor of a Grantor shall constitute a default under any other Note made by the Grantee in favor of the Grantor.



-3-

5. Insurance. (a) Grantor shall keep the Premises insured for the benefit of Grantee against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke, and such other hazards (so-called "All Risk Coverage"), including flood, as Grantee may from time to time require, all in amounts approved by Grantee not to be less than 100% of the full replacement cost. Grantor shall also maintain (1) comprehensive public liability insurance, to include workmen's compensation insurance, covering all liabilities incident to the construction, ownership, possession and operation of the Premises, and naming Grantee as an additional insured thereunder, in an amount acceptable to Grantee; (2) rent insurance against loss of income arising out of any hazard against which the Premises are required to be insured under subparagraph (a) above in an amount not less than one (1) year's gross rental income from the Premises; and (3) such other insurance on the Premises or any replacements or substitutions therefor and in such amounts as may from time to time be reasonably required by Grantee against other insurable casualties which at the time are commonly insured against in the case of properties of similar character and location, due regard being given to the height and type of the improvements, their construction, location, use and occupancy, or any replacements or substitutions therefor including, without limitation, boiler insurance and flood hazard insurance, if applicable. All such insurance shall be written in form and by companies approved by Grantee; and regardless of the types or amounts of insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insurance against any loss or damage to the Premises, with loss payable to Grantee, without contribution by Grantee, pursuant to the New York Standard or other mortgagee clause satisfactory to Grantee. Grantor shall immediately notify Grantee of cancellation or termination of the insurance. Grantee shall have the right to hold the policies and renewals. If Grantee, by reason of such insurance, receives any money for loss or damage, such amount may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the repair or replacement of the Premises or any part thereof, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the proper application of any amount paid over to Grantor.

(b) Not less than 30 days prior to the expiration date of each policy of insurance required of Grantor hereunder, and of each policy of insurance held as additional collateral to secure the Secured Indebtedness, Grantor shall deliver to Grantee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Grantee.

(c) In the event of a foreclosure of this Deed, the purchaser of the Premises shall succeed to all the rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Grantee, with respect to the Premises.

6. Maintenance and Inspection. Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises or any part thereof. Grantor shall promptly repair, restore, replace or rebuild any part of the Premises, now or hereafter encumbered by this Deed, which may be affected by a proceeding of the character referred to in Article 7 herein. No part of the Premises now or hereafter conveyed as security by or pursuant to this Deed, shall be removed, demolished or materially altered without the prior written consent of Grantee. Grantor shall complete, within a reasonable time, and pay for any building, structure or other improvement at any time in the process of construction on the property herein conveyed. Grantor shall not initiate, join in, or consent to any change in the private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof. Grantee and any persons authorized by Grantee shall have the right to enter and inspect the Premises at all reasonable times.

7. Leases and Assignment of Rents. Grantor shall faithfully perform the covenants of Grantor as lessor under any present and future leases, affecting all or any portion of the Premises, and neither do nor neglect to do, nor permit to be done, anything which may cause the termination of said leases, or any of them, or which may diminish or impair their value, or the rents provided for therein, or the interest of Grantor or Grantee therein or thereunder. Grantor, without first obtaining the written consent of Grantee thereto, shall not (a) assign the rents, or any part thereof, from the Premises, (b) consent to the cancellation or surrender of any lease of the Premises, or any part thereof, now existing or hereafter to be made, (c) modify any such lease so as to shorten the unexpired term thereof, or so as to decrease the amount of the rent payable thereunder, or (d) collect rents from the Premises for more than one month in advance. Grantor shall procure and deliver to Grantee at the time of executing this Deed, or at any time within thirty (30) days after notice and demand, estoppel letters or certificates from each lessee, tenant or occupant in possession of the Premises, as required by, and in form and substance satisfactory to, Grantee and deliver to Grantee a recorded assignment of all of the lessor's interest in said leases, in form and substance satisfactory to Grantee (in addition to the conveyance hereunder), and proof of due service of copy of said assignment on each lessee, either personally or by prepaid registered mail, return receipt requested.

Grantor hereby absolutely assigns and transfers to Grantee all the rents, issues and profits of the Premises, and hereby gives to and confers upon Grantee the right, power and authority to collect such rents, issues and profits. Grantor irrevocably appoints Grantee its true and lawful attorney-in-fact, at the option of Grantee at any time and from time to time, to demand, receive and enforce payment, to give receipts,



-4-

releases and satisfactions, and to sue, in the name of Grantor or Grantee, for all such rents, issues and profits and apply the same to the Secured Indebtedness.

Notwithstanding anything contained herein to the contrary, this assignment is intended and shall be construed to create, an absolute, present assignment from Grantor to Grantee. Grantor agrees that this assignment is immediately effective between the parties to this Loan Documents and effective as to third parties on the recording of this Deed. The rents, issues and profits of the Premises are hereby assigned absolutely by Grantor to Grantee. It is the further intent of Grantee and Grantor that the rents, issues and profits absolutely assigned are no longer, during the term of this Deed, property of Grantor or property of the estate of Grantor as defined in 11 U.S.C. § 541 and shall not constitute collateral, cash or otherwise, of Grantor.

Although this assignment constitutes a present and current assignment of all rents, issues and profits of the Premises, so long as Grantor is not in default hereunder, Grantee shall not demand that such rents, issues and profits be paid directly to Grantee, and Grantor shall have a revocable license to collect, but no more than one (1) month prior to accrual, all such rents, issues and profits from the Premises; provided that such revocable license shall ipso facto terminate without further action by Grantee and without notice to Grantor upon the occurrence of a Default.

Upon acceleration under Section 2 hereof or abandonment of the Premises, Grantee in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Premises and to collect the rents of the Premises, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Premises and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed. The receiver shall be liable to account only for those rents actually received.

The foregoing rights may be exercised by the Grantee as a matter of right, without consideration of the value of the Premises conveyed as security for the amount due the Grantee, or the solvency of any person or corporation liable for the payment of such amounts.

8.    Additional Documentation. Grantor shall execute and deliver and pay the costs of preparation and recording thereof to Grantee and to any subsequent holder from time to time, upon demand, any further instrument or instruments, including, but not limited to, security deeds, security agreements, financing statements, assignments, and renewal and subscription notes and guaranties, so as to reaffirm, to correct and to perfect the evidence of the obligation hereby secured and the legal security title of Grantee to all or any part of the Premises intended to be hereby conveyed, whether now conveyed, later substituted for, or acquired subsequent to the date of this Deed and extensions or modifications thereof. Grantor, upon request, shall certify by a writing, duly acknowledged, to Grantee or to any proposed assignee of this Deed, the amount of principal and interest then owing on the Secured Indebtedness and whether or not any offsets or defenses exist against the Secured Indebtedness, within 6 days in case the request is made personally, or within 10 days after the mailing of such request in case the request is made by mail.

9.    Condemnation. In the event all or any part of the Premises is taken by eminent domain by any public or quasi-public authority or corporation, or in the event all or any portion of the Premises is purchased from Grantor under threat of such taking, then all of the award of payment arising from said taking or purchase shall be paid to Grantee. Grantor authorizes Grantee to intervene in Grantor's name in any of the above described actions or claims. Grantee shall have the right to retain said award or payment toward payment of the Secured Indebtedness, or to pay over said amount, in whole or in part, to Grantor, but Grantee shall not be obligated to see to the application of any amount paid over to Grantor. If prior to the receipt by Grantee of such award or payment, the Premises shall have been sold on foreclosure of this Deed, Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this Deed shall have been sought or recovered or denied, and of attorneys' fees in the sum of 15% of the aggregate amount due hereunder, and all costs and disbursements incurred by Grantee in connection with the collection of such award of payment.

10.    Financial Statements. Grantor shall deliver to Grantee, at any time within 30 days after notice and demand by Grantee, (i) a statement in such reasonable detail as Grantee may request, certified by the Grantor or an executive officer of a corporate Grantor, of the leases relating to the Premises, and (ii) a statement in such reasonable detail as Grantee may request certified by a certified public accountant or, at the option of Grantee, by Grantor or an executive officer or treasurer of a corporate Grantor, of the income from and expenses of any one or more of the following: (a) the conduct of any business on the Premises, (b) the operation of the Premises, or (c) the leasing of the Premises or any part thereof, for the last 12 month period prior to the giving of such notice, and, on demand, Grantor shall furnish to Grantee executed counterparts of any such leases and convenient facilities for the audit and verification of any such statement. Grantor and any Guarantor of the Secured Indebtedness shall deliver to Grantee financial reports and statements in form and substance acceptable to Grantee within 90 days following fiscal year end and within 30 days of request(s) made by Grantee from time to time.

11.    Security Agreement. Grantor hereby grants to Grantee a security interest in the Improvements and Personal Property, including without limitation any and all property of similar type or kind hereafter located on or at the Property, for the purpose of securing the Secured



-5-

Indebtedness. Grantor warrants, represents and covenants that the Improvements and Personal Property are not used or bought for personal family or household purposes. Notwithstanding anything contained herein to the contrary, all covenants and obligations of Grantor contained herein relating to the Premises shall be deemed to apply to the Improvements and Personal Property. This Deed constitutes a Security Agreement as that term is used in the Uniform Commercial Code of Georgia.

12. Default. Upon the occurrence of any one of the following events (herein called an "Event of Default" or "Default"):

(i) should Grantor fail to pay the Secured Indebtedness, or any part thereof, when and as the same shall become due and payable;

(ii) should any representation or warranty of Grantor (Grantor and each person primarily or secondarily liable to Grantee for the Secured Indebtedness hereinafter referred to as an "Obligor") herein contained, or contained in any instrument given by any Obligor to Grantee with respect to the Secured Indebtedness or the Premises, prove untrue, incomplete or misleading in any material aspect;

(iii) should the Premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the Premises is reduced or diminished in any manner whatsoever;

(iv) should any federal tax lien, execution, or claim of lien for labor or material be filed of record against any Obligor or the Premises and not be removed by payment or bond within 30 days from date of recording;

(v) should any claim of priority superior to this Deed by title, lien or otherwise be asserted in any legal or equitable proceeding;

(vi) should any Obligor become insolvent or should any Obligor make any assignment for the benefit of creditors, or should a receiver, liquidator or trustee of any Obligor or of any of any Obligor's property be appointed, or should any petition for the bankruptcy, reorganization or arrangement of any Obligor, pursuant to the Federal Bankruptcy Act or any similar statute, be filed, or should any proceeding be instituted against or on behalf of any Obligor alleging that any Obligor is insolvent or unable to pay such Obligor's debts as they become due, or should any Obligor be adjudicated a bankrupt or insolvent, or should any Obligor, if a corporation, be liquidated or dissolved or its charter expire or be revoked, or, if a partnership or business association, be dissolved or partitioned, or, if a trust, be terminated or expire;

(vii) should any Obligor fail to keep, observe, perform, carry out and execute in every particular the covenants, agreements, obligations and conditions set out in this Deed, or in the Note, or in any other Loan Document;

(viii) should any event occur under any instrument, deed or agreement, given or made by any Obligor to or with Grantee or any third party, which would authorize the acceleration of any debt owed by such Obligor to Grantee or to any such third party;

(ix) should Grantor sell or transfer the Premises or any portion thereof or any interest therein, including a security interest, without Grantee's prior written consent;

(x) if any Obligor is a corporation, partnership or other artificial entity, if there is any encumbrance, pledge, conveyance, transfer or assignment of any legal or beneficial interest whatsoever in such Obligor; or

(xi) if the financial responsibility of any Obligor becomes impaired in the sole opinion of Grantee or if Grantee otherwise deems itself to be insecure;

then and thereupon:

(i) Grantee may take possession of the Premises without the appointment of a receiver, or an application therefor, employ a managing agent of the Premises and let the same, either in its own name, or in the name of Grantor, and give notice to any lessees or tenants under any existing leases affecting the Premises to make all future payments directly to Grantee or its order and to attorn to Grantee or its order as lessor or landlord, and receive the rents, incomes, issues and profits of the Premises and apply the same, after payment of all reasonable charges and expenses, on account of the Secured Indebtedness.

(ii) Grantee may pay any sums in any form or any manner deemed expedient by Grantee to protect the security of this instrument or to cure any Event of Default other than payment of interest or principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in



-6-

the hands of Grantee shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the rate of 12.5 % per annum, shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Grantee; and Grantee shall be subrogated to any encumbrance, lien, claim or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Grantee under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this Deed;

(iii)   Grantee may, at its option, declare the entire Secured Indebtedness immediately due, payable and collectible, without notice to Grantor, regardless of maturity, and thereupon, Grantee may sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises or any part thereof may be, to the highest bidder for cash, in order to pay the Secured Indebtedness, and all expenses of sale and of all proceedings in connection therewith, including 15% of the aggregate amount due as attorneys' fees, first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four consecutive weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which sheriff's advertisements are published in said county, all other notice being hereby waived by Grantor; and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the Default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantee, its agents, representatives, successors or assigns, may bid and purchase at such sale; and Grantor hereby constitutes and appoints Grantee or its assigns, agent or attorney-in-fact to make such recitals, sale and conveyance, and all of the acts of such attorney-in-fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns (and in the event of a deed in lieu of foreclosure, then as to such conveyance), shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, curtesy and all other exemptions of Grantor, or its successors in interest, in and to said Premises; and in the event of such a foreclosure sale, the proceeds of such sale shall be applied, in whatever order Grantee in its sole discretion may decide, to the outstanding principal amount of the Note, and interest then due thereon, and all amounts advanced by Grantee for taxes, assessments, fire insurance premiums and other charges, with interest at the rate of 12.5% per annum thereon from date of payment, together with all costs and charges for advertising, and commissions for selling the Premises, and 15% of the aggregate amount due, as attorneys' fees, and Grantee will pay over any surplus to Grantor (in the event of deficiency Grantor shall immediately on demand from Grantee pay over to Grantee, or its nominee, such deficiency); and Grantor agrees that possession of the Premises during the existence of the Secured Indebtedness by Grantor, or any person claiming under Grantor, shall be that of tenant under Grantee, or its assigns, and, in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily disposed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Grantee may have at law or in equity; and

(iv)   Grantee may exercise any and all of the remedies available to a secured party under the Georgia Uniform Commercial Code.

Grantee, in any action to foreclose this Deed, or upon any Event of Default, may apply for the appointment of a receiver of the rents, profits and other income of the Premises without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due the Grantee, or the solvency of any person or corporation liable for the payment of such amounts.

In case of any sale under this Deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, the Premises or any part thereof, may be sold in one parcel and as entirety, or in such parcels, manner or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless and until the entire Premises are sold or the Secured Indebtedness is paid in full.

13.   **Waiver of Homestead; Time of the Essence.**  Grantor, for himself and family, hereby waives and renounces all homestead and exemption rights provided for by the Constitution and Laws of the United States or the State of Georgia, in and to the Premises as against the collection of the Secured Indebtedness, or any part thereof: and Grantor agrees that where, by the terms of this Deed, the Note, or any of the Loan Documents, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time stated enters into the consideration and is of the essence of the whole contract.

14.   **Grantee's Right to Sue.**  Grantee shall have the right from time to time to sue for any sums, whether interest, principal or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this Deed or any of the Loan Documents, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Grantee thereafter to enforce any appropriate remedy against Grantor, including an action of foreclosure, or any other action, for a Default or Defaults by Grantor existing at the time such earlier action was commenced.



-7-

15. Rights Cumulative. The rights of Grantee, granted and arising under the clauses and covenants contained in this Deed, the Note, and the other Loan Documents shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Grantee may have in law or equity, and none of them shall be in exclusion of the others, and all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under security deeds, and preservation of security as provided at law. No act of Grantee shall be construed as an election to proceed under any one provision herein or under the Note or any of the Loan Documents to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

16. Notice. Any and all notices, elections or demands permitted or required to be given under this Deed shall be in writing, signed by or on behalf of the party giving such notice, election or demand, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt requested, or upon being deposited with an overnight commercial delivery service requiring proof of delivery, to the other party at the address of such other party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response, if given to Grantee, shall be addressed as follows:

> First Liberty Capital Partners LLC
> P. O. Box 2567
> Newnan, GA 30264

and if given to Grantor shall be addressed as follows:

> RIVERDAWG, LLC
> 1004 Memorial Lane
> Suite 200
> Savannah, GA 31410

17. No Waiver. Any indulgence or departure at any time by the Grantee from any of the provisions hereof, or of any obligation hereby secured, shall not modify the same or relate to the future or waive future compliance therewith by the Grantor.

18. Definitions. The words "Grantor" and "Grantee" whenever used herein shall include all individuals, corporations (and if a corporation, its officers, employees, agents or attorneys) and any and all other persons or entities, and the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes or guaranties and the grammatical construction of sentences shall conform thereto. If more than one party shall execute this Deed, the term "Grantor" shall mean all parties signing, and each of them, all of whom shall be jointly and severally liable hereunder, and each agreement, obligation and Secured Indebtedness of Grantor shall be and mean the several as well as joint undertaking of each of them.

19. Severability. The parties agree that the provisions of this Deed are severable, and in the event any clause, phrase, sentence or paragraph shall be declared by a court of competent jurisdiction to be invalid or unenforceable, then the parties declare that the remaining clauses, phrases, sentences and paragraphs of this Deed shall remain in full force and effect.

20. Waiver of Grantor's Rights. BY EXECUTING THIS INSTRUMENT GRANTOR EXPRESSLY ACKNOWLEDGES THAT UPON GRANTOR'S DEFAULT HEREUNDER, GRANTEE IS GIVEN THE RIGHT TO ACCELERATE THE DEBT SECURED HEREBY AND TO SELL THE PROPERTY CONVEYED HEREBY AT PUBLIC AUCTION PURSUANT TO THE POWER OF SALE CONTAINED HEREIN, AND GRANTOR HEREBY EXPRESSLY WAIVES ANY RIGHTS TO NOTICE AND HEARING BEFORE SUCH SALE UNDER POWER BY GRANTEE, OTHER THAN THE REQUIRED ADVERTISEMENT ONCE A WEEK FOR FOUR WEEKS PLUS GRANTOR'S INHERENT LEGAL RIGHT TO SEEK A COURT INJUNCTION. GRANTOR MAKES THIS WAIVER KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY, AFTER HAVING BEEN GIVEN FULL EXPLANATION OF GRANTEE'S RIGHTS HEREUNDER PLUS THE OPPORTUNITY TO CONSULT AN ATTORNEY OF GRANTOR'S OWN CHOOSING BEFORE EXECUTING THIS INSTRUMENT AND INITIALLING THIS PARAGRAPH.

21. Prior Deeds. "NOT APPLICABLE"



-8-

22. **Indemnity.** Grantor shall protect, indemnify and save harmless Grantee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including attorneys' fees and expenses) imposed upon or incurred by Grantee by reason of (a) any claim for brokerage fees or other such commissions relating to the Premises or the Secured Indebtedness, or (b) the condition of the Premises, or (c) any default by Grantor under this Deed, the Note, or any other Loan Documents, or (d) failure to pay recording, mortgage, intangibles or similar taxes, fees or charges relating to the indebtedness evidenced by the Note or any one or more of the Loan Documents, or (e) the Loan Documents or any claim or demand whatsoever which may be asserted by reason of any alleged action, obligation or undertaking to be performed or discharged by Grantee pursuant to this Deed or any other document evidencing, securing, or in any way relating to the Secured Indebtedness or pursuant to any matter contemplated in the Loan Documents. In the event Grantee incurs any liability, loss or damage by reason of the foregoing, or in the defense of any claim or demand arising out of or in connection with the foregoing, the amounts of such liability, loss or damage shall be added to the Secured Indebtedness, shall bear interest at the interest rate specified in the Note from the date incurred until paid and shall be payable on demand.

23. **Future Advances.** Grantee, at its option, may make future advances to Grantor in accordance with the Note, provided, however, that nothing contained herein shall constitute an obligation to do so. Such future advances, with interest at the rate payable from time to time on the outstanding principal under the Note, shall be secured by this Deed when evidenced by the Note or by any other instrument indicating that such advances are secured by this Deed or when advanced under the terms of this Deed. Grantee may make such future advances (a) at the request of Grantor, whether or not there is any obligation to make future advances, or (b) to pay, with or without the consent or request of Grantor, any amounts which may be due under this Deed or under any other mortgage or lien affecting the Deeded Premises.

24. **Assignment.** This Deed shall be assignable and/or able to be sold to a third party by Grantee, in its sole discretion, and without the consent of the Grantor. Grantee shall be able to retain the economic benefit of such assignment or sale. Grantor hereby consents to any such assignment and agree to execute any necessary documents or other instruments as may be necessary to effectuate the assignment and/or sale to any third party purchaser or assignee.

IN WITNESS WHEREOF, this Deed has been duly executed and sealed by Grantor the day and year first above written.

Signed, sealed and delivered, this 17th day of September, 2024, in the presence of:

_____
Unofficial Witness

_____
Notary Public

(NOTARY SEAL)

My Commission Expires: 7-20-2026

GRANTOR:

RIVERDAWG, LLC, a Georgia limited liability company

By: _____ (SEAL)
Jerry K. Williams, Jr., M.D.
its Managing Member

-9-

# Exhibit A

The Land referred to herein below is situated in the County of Towns, State of Georgia, and is described as follows:

PARCEL ONE - TRACT ONE:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 50, 19TH DISTRICT, 1ST SECTION, TOWNS COUNTY, GEORGIA AS DESCRIBED IN A PLAT OF SURVEY FOR GARLAND THOMAS PREPARED BY B. KEITH ROCHESTER & ASSOCIATES, REGISTERED SURVEYORS, DATED OCTOBER 11, 1978 AND RECORDED IN PLAT BOOK 5, PAGE 308, CLERK'S OFFICE TOWNS COUNTY, GEORGIA RECORDS. BEGINNING AT AN IRON PIN (SAID IRON PIN BEING THE NORTHWEST CORNER OF SAID LOT); THENCE NORTH 54 30 23 EAST FOR A DISTANCE OF 473.02 FEET TO AN IRON PIN; THENCE NORTH 54 30 23 EAST FOR A DISTANCE OF 33.56 FEET TO A POINT IN THE CENTER OF THE HIAWASSEE RIVER; THENCE ALONG AND WITH THE CENTER OF SAID RIVER, SOUTH 12 00 29 EAST FOR A DISTANCE OF 111.99 FEET TO A POINT; THENCE LEAVING SAID RIVER SOUTH 60 02 30 WEST FOR A DISTANCE OF 28.18 FEET TO AN IRON PIN; THENCE SOUTH 60 02 30 WEST FOR A DISTANCE OF 274.98 FEET TO AN IRON PIN; THENCE SOUTH 60 02 30 WEST FOR A DISTANCE OF 150 FEET TO AN IRON PIN; THENCE NORTH 45 57 30 WEST FOR A DISTANCE OF 60 FEET TO THE POINT OF BEGINNING. SAID TRACT CONTAINS 0.898 ACRES AND IS SHOWN ON SAID PLAT OF SURVEY AS LOT B-6.

ALSO CONVEYED IS AN UNOBSTRUCTED RIGHT OF INGRESS AND EGRESS ALONG SUBDIVISION ROADS TO THE PROPERTY HEREIN CONVEYED. THIS CONVEYANCE SHALL BE CONSTRUED TO BE A COVENANT RUNNING WITH THE LAND AND SHALL NOT BE DEFEATED FOR LACK OF USE OR MAINTENANCE. THIS CONVEYANCE IS MADE SUBJECT TO ALL EXISTING EASEMENTS FOR RIGHTS OF WAY AND UTILITIES.

PARCEL ONE - TRACT TWO:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 50, 19TH DISTRICT, 1ST SECTION, TOWNS COUNTY, GEORGIA, CONTAINING 0.974 ACRES, MORE OR LESS AND BEING LOT "B"-5 OF HIAWASSEE WILDERNESS SUBDIVISION AS SHOWN ON A PLAT OF SURVEY BY NORTHSTAR LAND SURVEYING, INC., DATED MAY 17, 2004, RECORDED IN PLAT BOOK 32, PAGE 124, TOWNS COUNTY RECORDS WHICH DESCRIPTION ON SAID PLAT IS INCORPORATED HEREIN BY REFERENCE.

THE PROPERTY IS CONVEYED TOGETHER WITH AND SUBJECT TO A NON-EXCLUSIVE, PERPETUAL, EASEMENT FOR INGRESS, EGRESS AND UTILITIES, 40' IN WIDTH, ALONG THE SUBDIVISION ACCESS ROAD, BEING PARTIALLY SHOWN ON THE ABOVE REFERENCED PLAT OF SURVEY.

PARCEL TWO:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 50 OF THE 19TH DISTRICT, 1ST SECTION, TOWNS COUNTY, GEORGIA AND DESCRIBED IN A PLAT OF SURVEY BY B. KEITH ROCHESTER & ASSOCIATES, INC., SURVEYING CONSULTANTS AS PREPARED FOR DAVID C. & LYDIA GAYLE ADAMS DATED 8/8/78, AND RECORDED IN PLAT BOOK 6, PAGE 4, CLERK'S OFFICE, TOWNS COUNTY, GEORGIA. SAID PROPERTY IS MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT A CONCRETE MONUMENT WHICH IS THE LAND LOT CORNER COMMON TO LAND LOTS 35, 36, 49 AND 50 OF THE 19TH DISTRICT, 1ST SECTION OF TOWNS COUNTY, GEORGIA; THENCE SOUTH 00° 15' 00 SECONDS EAST FOR A DISTANCE OF 460.24 FEET TO A POINT IN THE CENTER OF HIAWASSEE RIVER AND THE TRUE POINT OF BEGINNING; THENCE SOUTH 00° 15 MINUTES 00 SECONDS EAST FOR A DISTANCE OF 420.37 FEET TO AN IRON PIN; THENCE SOUTH 89° 46 MINUTES 17 SECONDS WEST FOR A DISTANCE OF 637.15 FEET TO AN IRON PIN; THENCE NORTH 56° 39 MINUTES 43 SECONDS WEST FOR A DISTANCE OF 161.77 FEET TO AN IRON PIN, THENCE NORTH 00° 36 MINUTES 42 SECONDS EAST FOR A DISTANCE OF 125.92 FEET TO AN IRON PIN; THENCE NORTH 17° 25 MINUTES 43 SECONDS WEST FOR A DISTANCE OF 175.49 FEET TO AN IRON PIN; THENCE NORTH 60° 02 MINUTES 30 SECONDS EAST FOR A DISTANCE OF 303.16 FEET TO A POINT IN THE CENTER OF HIAWASSEE RIVER (SAID POINT IS EVIDENCED BY IRON PIN SET BACK 28.18 FEET FROM THE CENTER OF SAID RIVER); THENCE ALONG AND WITH THE CENTER OF HIAWASSEE RIVER, THE FOLLOWING COURSES AND DISTANCES; SOUTH 12° 00 MINUTES 29 SECONDS EAST FOR A DISTANCE OF 148.12 FEET TO A POINT; THENCE SOUTH 17° 02 MINUTES 48 SECONDS EAST FOR A DISTANCE OF 216.83 FEET TO A POINT; THENCE SOUTH 49° 58 MINUTES 45 SECONDS EAST FOR A DISTANCE OF 51.76 FEET TO A POINT; THENCE NORTH 73° 00 MINUTES 22 SECONDS EAST FOR A DISTANCE OF 111.71 FEET TO A POINT; THENCE NORTH 56° 24 MINUTES 03 SECONDS EAST FOR A DISTANCE OF 224.90 FEET TO A POINT; THENCE NORTH 48° 02 MINUTES 30 SECONDS EAST FOR A DISTANCE OF 175.95 FEET AND THE POINT OF BEGINNING. SAID TRACT CONTAINS 5.693 ACRES, MORE OR LESS.

ALSO CONVEYED IS A NON-EXCLUSIVE RIGHT OF INGRESS AND EGRESS ALONG EXISTING SUBDIVISION ROADS LEADING TO SAID PROPERTY. THIS SHALL BE CONSTRUCTED AS AN EASMENT RUNNING WITH THE LAND AND SHALL NOT BE DEFEATED FOR LACK OF USE OR MAINTENANCE.

GRANTOR GRANTS TO GRANTEE A PERPETUAL WATER RIGHT TO THE SPRING AND RESERVIOR AT THE SPRING WHICH LIES APPROXIMATELY 800 FEET FROM THE SOUTH LINE OF THE PROPERTY.

