## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

       **Plaintiff,**

v.

EDWIN BRANT FROST IV and
FIRST LIBERTY BUILDING &
LOAN, LLC,

       **Defendants, and**

FIRST LIBERTY CAPITAL
PARTNERS LLC, FIRST
NATIONAL INVESTMENTS LLC,
MYHEALTHAI CAPITAL LLC,
THE LEGACY ADVISORY
GROUP INC., and THE LIBERTY
GROUP LLC,

       **Relief Defendants.**

Civil Action File No.

1:25-cv-3826-MLB

## AMENDED MOTION TO ESTABLISH SUMMARY PROCEEDINGS TO DETERMINE INVALIDITY OF CROSS-COLLATERALIZATION PROVISIONS, ESTABLISH PROCEDURE TO OBTAIN PAYOFF COMMITMENTS, AND STAY RECEIVER'S EFFORT TO COLLECT ON CLAIMS

COME NOW Movants Riverdawg, LLC ("**Riverdawg**"), No Free, LLC ("**No Free**"), and Holt Knob Holdings, LLC ("**Holt Knob**" and collectively with Riverdawg and No Free, the "**Movants**") and file this *Motion to Establish Summary Proceedings to Determine Invalidity of Cross-Collateralization Provisions,*

1

*Establish Procedure to Obtain Payoff Commitments, and Stay Receiver's Effort to Collect on Claims* (the "**Motion**"). Movants have filed a *Motion for Leave of Court to Initiate Action Against Receivership Estate* (Doc. No. 29) (the "**Motion for Leave**"). Pursuant to such Motion for Leave, Movants seek leave to initiate an action against the Receivership Estate[1] in order to *inter alia* determine any amount due by Movants to Receivership Estate on transactions defined as certain Loans (the "**Declaratory Relief Action**"). Movants reserve the right to assert all claims allowed in a civil action against or by the Receiver[2] (the "**Reserved Claims**"). Movants file this Motion to request, in general, that the Court: (i) determine that cross collateralization does not exist on loans made by Receivership Entities to Movants, (ii) establish procedures to obtain payoff commitments for Movants, and (iii) stay the Receiver's effort to collect on claims relating to Movants. The more detailed request for relief follows.

Movants do not file this Motion in order to evade liability. Rather, Movants file this Motion in order to put mechanisms in place so that the Receiver will have funds placed in the Court registry to fund any obligations that Movants owe to the Receiver. The Receiver asserts that all of the Movant's loans are cross-collateralized

---

[1] Capitalized terms not otherwise defined herein should have the meaning prescribed to the same in the Motion for Leave.

[2] These claims include but are not limited to the Reserved Claims to be Determined Later as described in <u>Appendix A</u> which is affixed to this Motion and adopted herein by this reference. Movants also reserve the right to oppose the amounts that the Receiver claims due by Movants.

and cross-defaulted. This position by the Receiver is impeding the Movants' ability to borrow funds to pay toward any obligations due to the Receivership Estate. Movants have a better ability to borrow funds to refinance the debt in separate borrowing transactions. The Receiver's request for payment of all the distinct debts at one time does not facilitate Movant's ability to borrow.

As stated, Movants do not file this Motion in order to evade payment of any liability. Dr. Jerry Williams is a personal guarantor on all the loans. Movants have not and do not state that any obligation due will not be paid. In fact, any amount that is determined is owing will be paid. However, disputes exist over the correct amounts due and the circumstances under which it must be paid. By this Motion, Movants seek authority to pay the amounts claimed due by the Receiver on each respective loan rather than all loans at once. Movants seek authority to pay such amounts into the registry of the Court and receive a release of the collateral in return. In short, Movants seek authority to refinance the loans and escrow the money until any amount due is adjudicated.

### *Relief Requested in this Summary Proceeding*

In this Summary Proceeding, Movants seek a judicial determination and declaration (I) that each Movant is not obligated for any indebtedness of the other Movants under the Loans and that any cross-collateralization between the Loans is invalid, void, and unenforceable, (II) that the North Carolina Deed of Trust is void

and unenforceable because no debt due by Holt Knob exists under the provisions of the Loan Documents, (III) that the North Carolina Deed of Trust is void and unenforceable because it did not include a description of the real property or otherwise reference the property to be conveyed, (IV) that the Court require the Receiver to accept pay-off amounts on each of the loans at a refinance closing that does not include any pay-off of the other loans, whereby the proceeds from any refinance closing be paid into the registry of the Court until the Movants' Reserved Claims have been adjudicated and the amount of any liability is fixed, and (V) that the Court stay the Receiver's effort to collect on claims relating to Movants, as the Movants have requested the Receiver to provide payoffs and the only responses have included invalid cross-collateralization calculations. Therefore it is inequitable for the Receiver to attempt to collect when Movants have made efforts to pay.

## Statement of Jurisdiction

"The district court has broad powers and wide discretion to determine relief in an equity receivership." *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992). "This discretion derives from the inherent powers of an equity court to fashion relief." *Id*. A summary proceeding is appropriate for the relief requested here. "In granting relief, it is appropriate for the district court to use summary proceedings." *Id*. "Summary proceedings are inappropriate when parties would be deprived of a full and fair opportunity to present their claims and defenses." *Id*. at 1567. "[C]ourts

have held that it is appropriate to adjudicate in summary proceedings property claimed by a receiver from non-parties." *SEC v. Torchia*, No. 1:15-cv-3904-WSD, 2017 U.S. Dist. LEXIS 216285, at 10 (N.D. Ga. Feb. 2, 2017).

## Factual Background

I.    The Receivership Action

1.    On July 10, 2025, the Securities and Exchange Commission ("**SEC**") filed a Complaint against First Liberty Capital Partners LLC ("**First Liberty**") and other parties, thereby initiating the above-styled action (the "**Receivership Action**").

2.    On July 11, 2025, this Court entered the *Order Appointing Receiver* (Doc. No. 6) (the "**Receivership Order**") *inter alia*: (i) appointing S. Gregory Hays as the Receiver for the estate of First Liberty Building & Loan, LLC, First Liberty Capital Partners LLC, First National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC (the "**Receivership Entities**").

3.    As a result of the Receivership Order, the Receiver stands in the shoes of First Liberty and the other Receivership Entities.

4.    The SEC's allegations in this Receivership Action state that Frost and First Liberty B&L represented to investors that their funds would be used to make short-term small business loans at relatively high interest rates ("**Bridge Loans**"), and that Frost and First Liberty B&L did not use investor funds as represented. While

some investor funds were used to make Bridge Loans, those loans did not perform as represented.

5.      The SEC's allegations in this Receivership Action state that much of the funds raised were either misappropriated or used to make Ponzi-style payments to existing investors.

6.      The SEC's allegations in this Receivership Action state that a significant portion of the Bridge Loans issued by First Liberty were in default when Frost made statements to Investors. As will be established below, prior to the Receivership Action, Movants did timely pay each and every payment due First Liberty under the documents signed by Movants.

7.      Movants engaged Frost and the Receivership Entities based on Frost's representations. Movants are all owned by Dr. Jerry Willaims. Movants were in need of financing in order to fund a legal battle which Dr. Williams was involved in at the time to protect an ownership interest in real estate. Such ownership interest was won by virtue of a ruling on summary judgment. But this successful ruling came by virtue of a re-hearing before the Court of Appeals of Georgia. Dr. Williams' team at Jones Day won the case which was against the State of Georgia. Dr. Williams was required to expend large sums to fund this years-long legal battle. This litigation also consumed much of Dr. Williams' own time.

8.      On or about June 27, 2025, First Liberty posted a Public Notice (the "**Public Notice**") stating as follows:

> We regret to inform you that as of Friday, June 27, 2025, First Liberty has ceased all business operations. First Liberty will no longer be accepting promissory note investments or bridge loan participations, and it will not be making any new bridge loans. Interest payments on existing promissory notes, bridge loan participation interests, and other investment programs are indefinitely suspended. First Liberty is cooperating with federal authorities as part of an effort to accomplish an orderly wind-up of the business. First Liberty employees are not authorized to make any further communications at this time regarding the ongoing situation, and no one at the company will be available to answer phone calls or respond to email inquiries. First Liberty hopes to provide additional information and updates in the near future regarding the status of the company's efforts to effectuate an orderly wind-up of the business.

A true and correct copy of such Public Notice is attached hereto and incorporated herein as **Exhibit "A"**. Through Movants' own due diligence, on June 30, 2025, Movants first learned of First Liberty's shut-down following review of the Public Notice. As described below in more detail, it was only through Movants' own due diligence that Movants much later were able to learn of the existence of the Receivership Action. Movants had wired a payment to First Liberty on the morning of June 30, 2025 in the amount of $9,333.33 before learning of the Public Notice.

9.      Based on Movants' review of such Public Notice, Movants were put on notice of First Liberty's default of its obligations under the Loans (as defined below) to Movants. The Public Notice stated that First Liberty payments are suspended.

Therefore, after making the payment on the morning of June 30, 2025, the payment could not be reversed. Movants also were unable to make further payment to First Liberty due to First Liberty's shut-down.

II.    First Liberty's Loans to Movants

10.    Movants entered into transactions with Receivership Entities which were styled as loans. Movants do not concede that the transactions were actually bona-fide business loans because the Receivership Entities actually were not operating a legitimate lending business. As alleged by the SEC, Frost and the Receivership Entities constituted a ponzi scheme. Because Frost and the Receivership Entities did not take money from others legitimately (i.e., investors), the Receivership Entities could not make legitimate loan to Movants.

11.    Movants operated in good faith with respect to all their dealings with Frost and the Receivership Entities. To the extent that the Loans were not actually bona-fide business loans, Movants were acting in good faith and had no knowledge of the nefarious activities of Frost and the Receivership Entities.

12.    To the extent that the Loans were actually bona-fide business loans, Movants constitute innocent bona-fide good faither borrowers. Movants did not know that Frost and the Receivership Entities were operating a Ponzi scheme. At the times that the Movants conducted the Loans transactions with First Liberty, the

Movants had no reason to believe that First Liberty was anything other than a legitimate lender.

   *A.    The First Loan (First Liberty to No Free)*

   13.    On or about December 28, 2023, Movant No Free executed and delivered to First Liberty: (i) a Promissory Note in the original principal amount of $250,000.00 (as amended or modified, the "**First Note**"), and (ii) a Deed to Secure Debt, Assignment of Rents and Security Agreement recorded at Deed Book 67478, Page 128 in the records of the Clerk of Superior Court of Fulton County, Georgia (as amended or modified, the "**First Security Deed**"), evidencing No Free's intent to borrow funds from First Liberty as lender (the "**First Loan**"). Pursuant to such instruments, No Free granted First Liberty a security interest in certain real property located in Fulton County, Georgia, having map parcel no. 14007800030922 (the "**Fulton Property**") to secure the First Loan. A true and correct copy of the First Security Deed is attached hereto and incorporated herein as **Exhibit "B"**.

   14.    On or about June 11, 2024, No Free executed and delivered to First Liberty (i) a Modification to Promissory Note, and (ii) a Modification to Deed to Secure Debt, Assignment of Rents and Security Agreement (collectively, the "**First Loan Modification**") whereby No Free and First Liberty intended to modify the First Loan and First Security Deed to increase the principal amount to $500,000.00.

A true and correct copy of the First Loan Modification is attached hereto and incorporated herein as **Exhibit "C"**.

15.    On or about June 11, 2024, No Free received additional funds from First Liberty at the time of the First Loan Modification. Upon information and belief, the Modification to the First Security Deed was not recorded following execution and delivery to First Liberty.

B.    *The Second Loan (First Liberty to Riverdawg)*

16.    On or about September 17, 2024, Movant Riverdawg executed and delivered to First Liberty: (i) a Promissory Note in the original principal amount of $700,000.00 (as amended or modified, the "**Second Note**"), and (ii) a Deed to Secure Debt, Assignment of Rents and Security Agreement recorded at Deed Book 734, Page 460 in the records of the Clerk of Superior Court of Towns County, Georgia (as amended or modified, the "**Second Security Deed**"), evidencing Riverdawg's intent to borrow funds from First Liberty as lender (the "**Second Loan**"). Pursuant to such instruments, Riverdawg granted First Liberty a security interest in certain real property located in Towns County, Georgia, having map parcel nos. 0064 010, 0064 011, and 0064 012 (collectively, the "**Towns Properties**") to secure the Second Loan. True and correct copies of the Second Note and the Second Security Deed are attached hereto and incorporated herein as **Exhibits "D" and "E"**, respectively.

17.    The Second Note states that the maturity date of the Second Loan is September 18, 2025. The Second Security Deed executed and delivered in conjunction with the Second Note states that the maturity date is September 28, 2025. Therefore, a conflict exists between the two documents and such conflict is resolved against First Liberty as the drafter of the documents. Therefore, the maturity date of the Second Loan was actually September 28, 2025.

18.    Pursuant to the terms of the Second Note, Riverdawg had the right to extend the maturity date of the purported Second Loan for an additional six (6) months upon notice to First Liberty. Riverdawg issued such notice to First Liberty regarding Riverdawg's exercise of its right to extend the maturity date by letter dated September 17, 2025. A true and correct copy of such September 17, 2025 letter is attached hereto and incorporated herein as **Exhibit "F"**.

*C.    The Third Loan (First Liberty to Riverdawg)*

19.    On or about December 9, 2024, Movant Riverdawg executed and delivered to First Liberty a Promissory Note in the original principal amount of $355,000.00 (as amended or modified, the "**Third Note**") evidencing Riverdawg's intent to borrow funds from First Liberty as lender (the "**Third Loan**"). A true and correct copy of the Third Note is attached hereto and incorporated herein as **Exhibit "G"**. At the time of the Third Loan, the parties intended that the Third Loan would be rolled up (and recharacterized) into the Fourth Loan (described below).

### D.   The Fourth Loan (First Liberty to No Free)

20.    On or about December 19, 2024, Movant No Free executed and delivered to First Liberty: (i) a Promissory Note in the original principal amount of $3,500,000.00 (as amended or modified, the "**Fourth Note**") evidencing No Free's intent to borrow funds from First Liberty as lender (the "**Fourth Loan**"). A true and correct copy of the Fourth Note is attached hereto and incorporated herein as **<u>Exhibit "H"</u>**. (The First Note, Second Note, Third Note, and Fourth Note are collectively referred to herein as the "**Notes**"). (The First Loan, Second Loan, Third Loan, and Fourth Loan are collectively referred to herein as the "**Loans**"). First Liberty breached its contractual obligations under the Fourth Loan because First Liberty did not fully fund the Fourth Loan.

### i.   The Bryan County, Georgia Security Deed

21.    As part of the Fourth Loan transaction, on or about December 19, 2024, Movant No Free executed and delivered to First Liberty Building and Loan, as lender, that certain Commercial Deed to Secure Debt and Security Agreement recorded on January 15, 2025, at Deed Book 1703, Page 811 in the records of the Clerk of Superior Court of Bryan County, Georgia (as amended or modified, the "**Bryan Security Deed**"). Pursuant to such instrument, No Free granted First Liberty Building and Loan a security interest in certain real property located in Bryan County, Georgia, having map parcel no. 067 001 (the "**Bryan Property**") to secure

the Fourth Loan. A true and correct copy of the Bryan Security Deed is attached hereto and incorporated herein as **Exhibit "I"**. No Free delivered the Bryan Security Deed to secure No Free's indebtedness to First Liberty Building and Loan in the sum of $3,500,000.00 pursuant to the Fourth Note.

ii.    The North Carolina Deed of Trust

22.    Also, as part of the Fourth Loan transaction, on or about December 19, 2024, Movant Holt Knob executed and delivered to First Liberty a document titled "North Carolina Deed of Trust" (the "**Deed of Trust**"). At the time that Holt Knob executed and delivered such Deed of Trust, the Deed of Trust did not identify property subject to such Deed of Trust. The Deed of Trust purports to grant certain rights to First Liberty as beneficiary via and through The Neumann Law Office, PLLC Attorneys at Law (the "**Trustee**") as Trustee. A true and correct copy of the Deed of Trust which Holt Knob executed at closing is attached hereto and incorporated herein as **Exhibit "J"**.

23.    After the execution and delivery of the Deed of Trust by Holt Knob to First Liberty, the Deed of Trust was recorded on January 29, 2025, at Book CRP N-43, Page 2363 in the records of the Register of Deeds of Macon County, North Carolina (the "**Recorded Deed of Trust**"). A true and correct copy of the Recorded Deed of Trust is attached hereto and incorporated herein as **Exhibit "K"**.

13

24.     A legal description is attached to the Recorded Deed of Trust as Exhibit A. However, such legal description was not referenced or mentioned in, attached to, incorporated by, or otherwise included at all in the Deed of Trust which was signed by Holt Knob.

25.     Both the actual Deed of Trust and Recorded Deed of Trust state that Holt Knob, as Grantor, is indebted to First Liberty in the principal sum of $3,500,000 pursuant to a promissory note of even date therewith. However, no such promissory note by which Holt Knob is indebted to First Liberty exists.

26.     As signed, the Deed of Trust did not grant First Liberty a lien on any real property. In fact, the Recorded Deed of Trust states that Holt Knob, as grantor, grants the Trustee rights in land "more particularly described as follows: _____." Accordingly, the instrument is clear on its face that there is conveyance of <u>no</u> real property to the Trustee pursuant to the Recorded Deed of Trust.

27.     Upon information and belief, at or around the time of recording, some person (yet to be identified) added an Exhibit A to the back of the Deed of Trust signed by Holt Knob. The text of the Deed of Trust and the Recorded Deed of Trust do not refer to an exhibit[3]. In other words, the instrument does not state that a legal

---

[3] As will be argued below, the exhibit cannot become grafted into the instrument.

description is attached hereto. The instrument does not state that a legal description is "incorporated herein".

III.    Movants' Payments to the Receivership Entities

28.    No Free timely made all payments due per the terms of the First Note and First Loan Modification until No Free's knowledge and review of the Public Notice. Riverdawg timely made all payments due per the terms of the Second Note until Riverdawg's knowledge and review of the Public Notice. Riverdawg timely made all payments due per the terms of the Third Note until Riverdawg's knowledge and review of the Public Notice. No Free timely made all payments due per the terms of the Fourth Note until No Free's knowledge and review of the Public Notice. As stated, Movants fulfilled any and all payment obligations due by them under the terms of the Notes through the time of the Public Notice. The Public Notice stated that loan servicing was not occurring. As a result, Movants were unable to make payment on the Loans after knowledge of the Public Notice.

IV.    Movants' Due Diligence Post-Receivership Action

29.    After learning of the Public Notice, Movants made much effort to determine the status of First Liberty. Movants contacted numerous agencies and officials. As a result, Movants eventually learned, through Movants' own due diligence, of the existence of the SEC's oversight actions. Upon later learning of the existence of the Receivership, Movants first attempted to obtain a working

relationship with the Receiver. For example, Movants requested loan information from the Receiver and Receiver's counsel. In July 2025, following the entry of the Receivership Order, Movants requested the Receiver to provide payoff information for each of the Loans. The Receiver received Movants' requests and continuously promised to provide such payoff information over a subsequent period of approximately six weeks.

30.    Without limitation of the foregoing paragraph, Holt Knob specifically requested a payoff amount needed in order to obtain a release of the Deed of Trust (the "**Lot Release**") recorded in North Carolina. The Receiver promised and agreed to provide a Lot Release. Holt Knob, together with its attorney, conveyed to the Receiver the urgency of the need for the Lot Release. This urgency is based on the fact that construction had been ongoing on the North Carolina parcel. Holt Knob had been in need of financing to obtain funds to continue construction of a residential unit on the North Carolina parcel.

31.    Holt Knob advised the Receiver that the Lot Release was required in order to obtain a construction loan. Despite this knowledge, and despite the assurances of the Receiver and his counsel to Movants and their counsel, the Receiver failed and refused to provide a Lot Release for the Deed of Trust.

32.    Movants received correspondence from the Receiver on or about September 10, 2025, via letter from Receiver's counsel (the "**Receiver Draft Notice**

**of Intent**"). The Receiver provided a "loan payoff" as of September 10, 2025. However, the Receiver Draft Notice of Intent stated that all of the Loans were in default. Most importantly, the Receiver Draft Notice of Intent also stated that all of the Loans were subject to "cross-collateralization" and "cross default provisions." In other words, the Receiver attempted to hold up on the Lot Release of the Deed of Trust based on all the other Loans. Moreover, the Receiver claimed interest accrual on amounts that included interest accrual on interest reserves that did not exist. In other words, the Receiver's claims for money perpetuated the wrongful actions of the Receivership Entities with respect to the Loans. Movants contest the amount that was purportedly due on these Loans.

V.    <u>The Receivers' Demand</u>

33.    On October 17, 2025, the Receiver issued a demand to Movants (the "**Receiver's Demand**"). A true and correct copy of the Receiver's Demand is attached hereto and incorporated herein as **<u>Exhibit "L"</u>**. Pursuant to the Receiver's Demand, the Receiver asserted that debts due by Movant were cross-collateralized and cross-defaulted. The Receiver's Demand also asserted a right to collect interest at a default rate of interest. The Receiver's Demand also asserted a right to collect interest on interest reserves which did not exist.

34.    As of the date of the filing of this Motion, Movants have not received a written explanation from the Receiver of the debts claimed due other than the

Receiver Draft Notice of Intent and the Receiver's Demand and payment instructions have not been provided. The Receiver Draft Notice of Intent and the Receiver's Demand are the only correspondence that Movants have received from the Receiver.

35.    First Liberty and the Receivership Entities charged Movants interest on certain interest reserves that did not exist. The Receiver has acknowledged that Movants had paid this interest on certain non-existent interest reserves but the Receiver has not attempted to correct this or to adjust the Receiver's Demand based on such facts.

## Argument and Citation to Authority

I.    <u>The Asserted Cross-Collateralization and Cross-Default Under First Liberty's Loans Documents Are Unenforceable.</u>

The Receiver's Demand states that all of the Loans were subject to "cross-collateralization" and "cross default provisions."[4] The cross-collateralization provisions are unenforceable. As an initial matter, the loan documents use differing and ambiguous language to identify the obligors.

The cross-collateralization provision in the Second Loan states "Lender or its affiliates has made or may make other loans to Borrower or its affiliates (as used

---

[4] Additionally, the First Quarterly Report of Receiver (Doc. No. 32) (the "**Report**") states "In conjunction with Williams Loan 2, Dr. Williams executed a Modification of Promissory Note that contains a cross-default and cross-collateralization provision for obligations of all entities related to the No Free by common ownership and/or control."

herein the term '*affiliates*' shall include any and all entities related to Lender and Borrower by common ownership and/or control)…." However, the cross-collateralization provision in the Fourth Loan states "Lender has made or may make other loans to Borrower (as used herein the term 'Borrower' shall include any and all entities related to Borrower by common ownership and/or control)…."

Not only does this language present confusion as to which parties constitute "affiliates," but the ambiguous language differs in each cross-collateralization provision. The provisions regarding cross-collateralization and cross-default unenforceable because they do not state the names of the obligors.

Georgia Courts hold that where the name of the principal debtor is omitted from a document, it is unenforceable as a matter of law. This is because the document fails to satisfy the statute of frauds "even where the intent of the parties is manifestly obvious". *Fontaine v. Gordon Contractors Bldg. Supply*, 255 Ga. App. 839, 567 S.E.2d 324 (2002). "This Court is not authorized to determine the identity of the principal debtor by inference as this would entail consideration of impermissible parol evidence." *Roden Elec. Supply v. Faulkner*, 240 Ga. App. 556, 524 S.E.2d 247 (1999). "The guarantor's liability may not be extended by implication or interpretation." *Legacy Cmtys. Grp., Inc. v. Branch Banking & Tr. Co.*, 316 Ga. App. 496, 729 S.E.2d 612 (2012). The cross-collateralization provisions fail to clearly

identify the other debtors (obligors) and are therefore unenforceable under Georgia law.

Each of the notes attempts to make the obligor under such note responsible for the debts of other third parties. However, the notes do not specifically name such third parties. The same is also true with respect to the Security Deeds. Each Security Deed states that the encumbered property should serve as collateral for the debt of another in addition to the debt of the grantor under the Security Deeds. Otherwise stated, the loan documents attempt to make certain loans cross-collateralized. Based on this language in the documents, the Receiver asserts that each of the Movants is obligated for the debts of the other two Movants. This is the position that the Receiver takes in his Demand Letter.

The problem for the Receiver is that the cross-collateralization provisions in the First Liberty documents are unenforceable. The problem for the Receivership Estate (and its creditors) is that the Receiver's position is actually impending a successful recovery from the Movants.

Each Movant obtained money from the Receivership Entities in separate transactions. First Liberty advanced the funds in chunks. First Liberty advanced the funds to different borrowers. Movants currently need to borrow money to refinance any obligations due to First Liberty's Receiver. Movants have the ability to obtain financing to pay off certain of the obligations claimed by the Receiver. But it is much

more difficult to obtain a refinance on all of the different debts of the different Movants all at the same time. The respective Movants received the funds in "chunks". Movants need the ability to re-pay any obligations due in "chunks". By insisting on recovery of the "whole enchilada" at once, the Receiver is impairing Movant's ability to obtain lending to refinance.

II.    The Recorded Deed of Trust is Void Because the Note Which the Deed Purports to Secure Does Not Exist.

The Recorded Deed of Trust purportedly is given to secure indebtedness in the amount of $3,500,000.00 pursuant to an unidentified promissory note. The Deed of Trust does not identify such a note. In fact, there is no such note by which Holt Knob is indebted to First Liberty. Therefore, the Recorded Deed of Trust is unenforceable with respect to any indebtedness purportedly owed to First Liberty. Therefore, pursuant to the terms of the Recorded Deed of Trust itself, the deed is "null and void" because no debt is secured thereby.  "Simply put, because the deed of trust did not properly 'identify the obligation secured,' it is invalid." *In re Enderle*, 110 N.C. App. 773, 775 (1993) (quoting *Walston v. Twiford*, 248 N.C. 691, 693 (1958). The Statute of Frauds "requires that all contracts to sell or convey any lands … shall be void unless said contract … be put in writing" and that "the writing must contain a description of the land." *In re Hudson*, 182 N.C. App. 499, 503 (2007).

The Recorded Deed of Trust does not secure any indebtedness owed. Therefore, the Recorded Deed of Trust is null and void. Therefore, the Deed of Trust is unenforceable and should be cancelled.

III.  <u>The Recorded Deed of Trust is Void Because the Deed Which Holt Knob Executed Did Not Include a Legal Description of or Otherwise Reference the Property to be Conveyed.</u>

The Recorded Deed of Trust is also void or otherwise unenforceable because the Deed of Trust, as signed, did not grant First Liberty a lien on any real property. The Recorded Deed of Trust states that Holt Knob, as grantor, grants the Trustee rights in land "more particularly described as follows: _____." Accordingly, the Recorded Deed of Trust is clear on its face that there is conveyance of <u>no</u> real property to the Trustee pursuant to the Recorded Deed of Trust.

In North Carolina, when a Deed of Trust fails to identify land in its description, the deed is void.[5] *Carrow v. Davis*, 248 N.C. 740 (1958); *In re Hudson*, 182 N.C. App. 499 (2007); *Overton v. Boyce*, 289 N.C. 291, 294 (1976). "A deed is void for

---

[5] The Deed of Trust was made with respect to unspecified property in North Carolina. Therefore, North Carolina law applies to the interpretation of the Deed of Trust. Georgia Courts "follow the course mapped out centuries ago, to wit, that as to contracts affecting realty the law of the State where the land lies will be applied, and to all kinds of personal property it is governed by the lex domicilii of the owner." *Clark v. Baker*, 186 Ga. 65, 69, 196 S.E. 750, 757-58 (1938). Under Georgia conflict of law principles, "the parties' interests in any real property should be determined under the law of the jurisdiction in which it is located while interests in personal property should be determined under the law of the owner's domicile at the time the property was acquired." *Mbatha v. Cutting,* 356 Ga. App. 743, 750, 848 S.E.2d 920, 926 (2020).

vagueness of description unless it identifies with certainty the land sought to be conveyed." *Carrow v. Davis*, 248 N.C. 740, 742 (1958). The Supreme Court of North Carolina established that a deed "is void unless it contains a description of the land sufficient to identify it." *Overton v. Boyce*, 289 N.C. 291, 293 (1976).

Further, North Carolina interprets contracts within the four corners of the agreement. "Parol evidence may not be introduced to remove a patent ambiguity since to do so would … create a description by adding to the words of the instrument." *Overton v. Boyce*, 289 N.C. 291, 294 (1976). "Parol evidence is not admissible… to enlarge the scope of the description in the deed." *Id*. citing *State v. Brooks*, 279 N.C. 45 (1971). The North Carolina Supreme Court has said that "[i]t is also a rule of construction that an ambiguity in a written contract is to be inclined against the party who prepared the writing." *Jones v. Palace Realty Co.,* 226 N.C. 303 (1946), citing *Wilkie v. Ins. Co.*, 146 N.C. 513 (1908). First Liberty prepared the Deed. The Deed of Trust signed at closing identified no property. Therefore, Holt Knob granted the Trustee (and First Liberty as beneficiary) rights as to no property.

Upon information and belief, at the time of recording, some person (yet to be identified) added an Exhibit A to the back of the Deed of Trust signed by Holt Knob. This exhibit is referred to nowhere in the text of the Deed of Trust or the Recorded Deed of Trust. Therefore, the exhibit cannot become grafted into the instrument. In other words, the instrument does not state that a legal description is attached hereto.

The instrument does not state that a legal description is "incorporated herein". The legal description on the exhibit is therefore not part of the deed under any circumstances.

Further, and as stated above, the legal description page was not present at the time the Deed of Trust was signed. So it cannot be added later. The Statute of Frauds "requires that all contracts to sell or convey any lands … shall be void unless said contract … be put in writing" and that "the writing must contain a description of the land." *In re Hudson*, 182 N.C. App. 499, 503 (2007). Where a legal description was added later in recording, this act does not cure the ambiguity. In *In re Hudson*, the petitioner argued that since the executed deed of trust contained no description of real property, it did not meet the provisions of the Statute of Frauds and was void. In that case, the deed did not include a description of the real property at the time of execution, but such description was added to the deed later without respondents' knowledge. The N.C. Court held as follows:

> [R]espondents intended to convey some real property as security for their loan, and… the deed as recorded includes the missing legal descriptions of the property. However, petitioner provides no legal authority for its assertion that a deed lacking legal descriptions of the real property to be conveyed can be cured unilaterally by recording said deed with novel legal descriptions unseen by the other party.

*Id*. at 504. In this case, someone slap-dashed an exhibit to the purported Deed of Trust after execution. This does not "cure" the problem.

The Recorded Deed of Trust does not grant an interest in any property. Therefore, the Recorded Deed of Trust is null and void and should be cancelled.

IV.    <u>The Court Should Use Its Equitable Power to (a) Deny the Receiver's Attempt Cross-Collateralize the Loans and (b) Stay Enforcement of the Loans Pending Resolution of the Matters Set Forth Herein and Determination of the Amount Due.</u>

As set forth above, this Court has equitable powers in its adjudication of this Receivership Action. *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992). Here, the Movants have sought to obtain pay-offs on each of the Loans. The Receiver has asserted cross-collateralization. The Receiver seeks to charge interest on non-existent interest reserves. First Liberty breached its contractual obligations to fund under the Fourth Loan. The amount due is in dispute. It would be inequitable for the Receiver to enforce the claims until this matter is adjudicated.

## CONCLUSION

For the foregoing reasons, the Movants request that the Court grant the relief requested herein.

RESPECTFULLY SUBMITTED this 13th day of November, 2025.

**JONES & WALDEN LLC**
*/s/ Leon S. Jones*
Leon S. Jones
Georgia Bar No. 003980
699 Piedmont Avenue NE
Atlanta, Georgia 30308
(404) 564-9300
LJones@joneswalden.com
*Attorney for Movants*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | **Civil Action File No.** |
| **v.** | **1:25-cv-3826-MLB** |
| **EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC,** | |
| **Defendants, and** | |
| **FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC,** | |
| **Relief Defendants.** | |

**CERTIFICATE OF SERVICE, FONT AND MARGINS**

I certify that on the date below, I electronically filed the foregoing **Amended Motion to Establish Summary Proceedings to Determine Invalidity of Cross-Collateralization Provisions, Establish Procedure to Obtain Payoff Commitments, and Stay Receiver's Effort to Collect on Claims** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

- **Austin Bruce Alexander**  austin.alexander@thompsonhine.com,kelly.thomas@thompsonhine.com,ECFdocket@thompsonhine.com
- **Madison Graham Loomis**  loomism@sec.gov,JeffriesJ@sec.gov,jorjoladzeN@sec.gov,applewhitet@sec.gov
- **Joshua A. Mayes**  jmayes@robbinsfirm.com,jenglish@robbinsfirm.com,bboyd@robbinsfirm.com,randerson@robbinsfirm.com,dbutler@robbinsfirm.com,sbacon@robbinsfirm.com
- **Kristin Wilhelm Murnahan**  murnahank@sec.gov,jorjoladzen@sec.gov,applewhitet@sec.gov
- **Alexandra C. Nelson**  alexandra.nelson@thompsonhine.com,tracey.nero@thompsonhine.com,kelly.thomas@thompsonhine.com,dwayne.lunde@thompsonhine.com,ECFDocket@thompsonhine.com
- **Jane Ashley Ravry**  jaravry@robbinsfirm.com,DButler@robbinsfirm.com,jenglish@robbinsfirm.com,bboyd@robbinsfirm.com,randerson@robbinsfirm.com,sbacon@robbinsfirm.com
- **Henry Francis Sewell, Jr**  hsewell@sewellfirm.com

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

This 13th day of November, 2025.

**JONES & WALDEN LLC**

*/s/ Leon S. Jones*
Leon S. Jones
Georgia Bar No. 003980
699 Piedmont Avenue NE
Atlanta, GA 30308
(404) 564-9300
LJones@joneswalden.com
*Attorney for Movants*