**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | : | |
| COMMISSION, | : | Civil Action File No. |
|     Plaintiff, | : | 1:25-cv-3826-MLB |
|         v. | : | |
| EDWIN BRANT FROST IV and | : | |
| FIRST LIBERTY BUILDING & LOAN, LLC, | : | |
|     Defendants, and | : | |
| FIRST LIBERTY CAPITAL PARTNERS | : | |
| LLC, et. al., | : | |
|     Relief Defendants. | : | |

**MEMORANDUM IN OPPOSITION BY RECEIVER TO MOTION TO
ESTABLISH SUMMARY PROCEEDINGS TO DETERMINE INVALIDITY
OF CROSS-COLLATERALIZATION PROVISIONS, ESTABLISH
PROCEDURE TO OBTAIN PAYOFF COMMITMENTS, AND STAY
RECEIVER'S EFFORT TO COLLECT ON CLAIMS**

S. Gregory Hays, not individually, but as Court-Appointed Receiver

("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc.

No. 6] ("**Appointment Order**") that was entered in the above-captioned case (the

"**Receivership**"), by and through counsel, hereby files this *Memorandum in*

*Opposition by Receiver to Amended Motion to Establish Summary Proceedings to*

*Determine Invalidity of Cross-Collateralization Provisions, Establish Procedure to*

*Obtain Payoff Commitments, and Stay Receiver's Efforts to Collect on Claims* (the

"**Objection**"*)* to oppose and object to the *Amended Motion to Establish Summary*

*Proceedings to Determine Invalidity of Cross-Collateralization Provisions,*

*Establish Procedure to Obtain Payoff Commitments, and Stay Receiver's Efforts to Collect on Claims* [Doc No. 36] (the "**Motion**") that was filed by Riverdawg, LLC ("**Riverdawg**"), No Free, LLC ("**No Free**"), and Holt Knob Holdings, LLC ("**Holt Knob**" and collectively with Riverdawg and No Free, the "**Movants**"),[1] respectfully showing as follows:

## PRELIMINARY MATTERS

1.    On October 16, 2025, Movants filed a *Motion for Leave of Court to Initiate Action Against Receivership Estate* [Doc. No. 29] and *Motion for Expedited Hearing* [Doc. No. 30] (the "**Prior Motions**"). Since the Prior Motions have not been granted, the Motion is not only inappropriate, but premature as the Movants have not yet obtained leave to pursue the relief requested in the Motion.

2.    On October 30, 2025, the Receiver filed a *Memorandum in Opposition by Receiver to Motion for Leave of Court to Initiate Action Against Receivership Estate* [Doc. No. 31] (the "**Prior Objection**") that is incorporated herein by reference. As noted in the Prior Objection, the Receiver believes that the Movant's claims and allegations have implicated one or more title insurance policies which

---

[1] On November 10, 2024, the Movants filed their original *Motion to Establish Summary Proceedings to Determine Invalidity of Cross-Collateralization Provisions, Establish Procedure to Obtain Payoff Commitments, and Stay Receiver's Efforts to Collect on Claims* [Doc No. 34]. The Court indicated that this Motion would likely be stricken due to failure to comply with the local rules of this Court and the Movants then filed the instant Motion.

may provide coverage for the Movants' claim. The Receiver argued that no action should be taken with respect to the Prior Motions until the title company, Commonwealth,[2] has retained counsel and has had an opportunity to be heard in this matter.

3.    Just prior to the filing of this Objection, on November 25, 2025, the Receiver was advised by Commonwealth that it had accepted the Receiver's claim subject to certain reservations of rights and would be imminently appointing counsel in this matter to defend the Receiver's interests. Counsel for the Receiver advised counsel for Movants of this development and urged a short continuance in order to allow coverage counsel to appear and participate in the establishment of procedures to resolve the Movants' claims. This request for a short continuance to determine whether consensual procedures could be reached upon appearance of counsel appointed by Commonwealth was summarily rejected by the Movants.

4.    As of the filing of this Response, the Prior Motions have not been adjudicated and no procedures have been established for the resolution of the Movants' claims. In the instant Motion, the Movants are also apparently seeking broad, injunctive and declaratory relief against the Receiver without actually

---

[2] Capitalized terms used, but not defined herein shall have the meaning ascribed to such term in the Prior Objection.

bringing an action for such relief or complying with F.R.C.P. 57 or 65.

5.    To avoid taking any action or position that may waive or impair coverage, this Objection is limited and will not address the North Carolina Deed or certain other legal issues. The Receiver anticipates the imminent appearance of insurance counsel and will proffer a procedure to litigate the claims of Dr. Jerry Williams ("**Dr. Williams**") and the Movants once Commonwealth has become formally involved. The Receiver reserves all rights to raise issues and objections in this matter after the Commonwealth is heard on this matter.

6.    Although each of the Movants is owned and/or controlled by Dr. Williams, Dr. Williams was not included in the Motion as one of the Movants. To be clear, once procedures are established, these procedures will include a lawsuit against Dr. Williams on his personal guaranty.

7.    Notwithstanding the procedure in which this matter was brought before the Court, it should be noted that this is a collection matter and part of efforts by the Receiver to collect under the Williams Loans and the respective guarantees. The documentation underlying the Williams Loans provide for the assessment of attorney's fees as part of the debt, in addition to principal, interest, and costs. The Receiver has already provided notice of the intention of the Receiver to enforce these provisions and further advises that attorney's fees related to this collection matter

are being added to the principal, interest, and costs due.

8.    Documentation available to the Receiver confirms that Dr. Williams and the Movants received a substantial amount of investor money from First Liberty Capital Partners, LLC ("**First Liberty**" or "**Lender**") pursuant to the terms of the Williams Loans. Dr. Williams and the Movants netted millions from their relationship with First Liberty and, as such, the Receiver rejects the characterization of Dr. Williams and the Movants as "victims" as alleged in the Motion. Since Movants continue to question whether the Williams Loans were "actually bona-fide business loans," it is necessary to escalate the investigation of the basis upon which Dr. Williams and the Movants received millions from First Liberty. As such, the Receiver requests that Dr. Williams and Movants provide all information regarding any allegation that any specific funds paid by First Liberty to Dr. Willams and/or any of the Movants may not constitute proceeds of a legitimate loan. Further, the Receiver intends to investigate the actual uses of the loan proceeds by Dr. Williams and to conduct extensive discovery with respect to the claims raised by Dr. Williams.

9.    The Receiver objects to the attempt by Dr. Williams and the Movants to extend the maturity dates and otherwise stay the collection of the Williams Loans. Without accounting for default(s) and any applicable acceleration, by the terms of the respective notes, certain Williams Loans have already matured and all of the

Williams Loans will have matured by December 18, 2025. Dr. Williams entered the Williams Loans on behalf of No Free and Riverdawg with the knowledge that balance due on each loan was due on or before the respective maturity date of such loan. Dr. Williams and the Movants should not be allowed to use the fact of the Receivership as a pretext to avoid or limit their pre-Receivership agreements.

10.    The Receiver further objects to the Motion to the extent that it seeks to broadly stay any efforts to collect on any claims of the Receivership and submits that there is no basis to stay such collection efforts.

11.    The Receiver also objects to the use of any summary proceedings to the extent that: a) such procedures foreclose any rights of the Receiver to discovery and due process; b) Commonwealth objects; or c) such proceedings may be used to limit the investigation of the Receiver or to preclude the full recovery of obligations due to the Receivership. To the extent that the Movant seeks injunctive or declaratory relief against the Receiver, it should be done in accordance with F.R.C.P. 57 and 65 and through an action seeking such relief.

12.    Neither this Objection nor any later appearance, pleading, claim, or suit shall waive: a) any stay or injunction arising from the appointment of the Receiver; or b) any other sanctions, rights, claims, actions, defenses, setoffs, or recoupments to which Receiver is or may be entitled, under agreements, in law, in equity, or

otherwise, all of which rights, claims, actions, defenses, setoffs, and recoupments are expressly reserved.

## FACTUAL BACKGROUND

13.    It is undisputed that: a) Dr. Williams caused No Free and Riverdawg to enter the Williams Loans to receive—and actually did receive substantial funds from First Liberty—with knowledge of the terms and conditions of each of the Williams Loans; b) Dr. Williams personally guaranteed the payment of each of the Williams Loans;[3] and c) without accounting for default(s) and any applicable acceleration, by the terms of the respective notes underlying the Williams Loans, Loan 1 and Loan 2 to No Free matured on June 10, 2025, Loan 3 to Riverdawg matured on September 18, 2025, Loan 4 to Riverdawg will mature on December 9, 2025, and Loan 5 to No Free will mature on December 18, 2025. The funds received by Dr. Williams and these entities were monies collected from investors in First Liberty.

14.    It is further undisputed that the Williams Loans agreed to by Dr. Williams contain standard cross-default and cross-collateralization provisions (the "**Cross-Default and Cross-Collateralization Provisions**"). For example, Paragraph 6(a) of the promissory note underlying Loan 5 provides the following

---

[3] In addition to Dr. Williams, Urgent Care 247, LLC ("**UC**"), an entity owned and controlled by Dr. Williams, also guaranteed Loan 3, Loan 4, and Loan 5.

cross-default provision:

> Lender has made or may make other loans to Borrower (as used herein the term "Borrower" shall include any and all entities related to Borrower by common ownership and/or control) evidenced by various Notes, and Deeds to Secure Debt (Deed to Secure Debt as used herein to include Mortgages, Security Agreements and Pledges of stock, member interest in limited liability company or other assets). Any event of default as defined in any Deed to Secure Debt from Borrower to Lender given to secure any loan from Lender to Borrower or any breach of terms, provisions, conditions or covenants contained in the Note or Notes, Deed to Secure Debt or Deeds to Secure Debt, or any other loan documents executed in connection with any other loan or loans from Lender or Borrower shall be an event of default under the terms, provisions, conditions, and covenants of any and all other loans from the Lender to Borrower. Further, an event of default hereunder shall also constitute an event of default under any and all Deeds to Secure Debt, Notes, and any other loan document executed in connection with any other loan from Lender to Borrower.

15.    Paragraph 6(b) of the promissory note underlying Loan 5 further provides the following standard cross-collateralization provision:

> Lender has made or may make other loans to Borrower evidenced by various Notes and Deeds to Secure Debt. The real property and any other property described in said other Deeds to Secure Debt is and shall be security for each and every other Note, executed by Borrower in favor of Lender, or any advance made thereunder, or any renewal or extension thereof; further, the real property described herein is and shall be further security for each and every Note executed by the Borrower in favor of the Lender. This paragraph shall apply notwithstanding the fact that the outstanding balance of any one or more of said loans exceeds the original face amount of the Note or Notes evidencing said loans.

16.    Although the language used in the Cross-Default and Cross-

Collateralization Provisions differs slightly between certain loans as noted on page 23 of the Motion, the overall intent and purpose of the Cross-Default and Cross-Collateralization Provisions remains the same as such provisions unambiguously provide that, pursuant to the cross default provision, a default by the Borrower (either No Free or Riverdawg) or any entity related to the Borrower (either No Free or Riverdawg) by common ownership and/or control is a default of all obligations due by such parties and, pursuant to the cross-collateral provision, collateral under one loan shall serve as collateral for the other loans. Indeed, it is clear from the Cross-Default and Cross-Collateralization Provisions that the parties intended the Williams Loans to be treated and administered together since all of the loans are also the personal responsibility of Dr. Williams.

17.    The Cross-Default and Cross-Collateralization Provisions are important security for the obligations due to the Receivership and collateral for the Williams Loans should not be reduced or released until all of the Williams Loans are paid in full.

18.    On September 11, 2025, in response to a request by Dr. Williams demand for a payoff, the Receiver provided Dr. Williams with a detailed, written loan payoff. After reviewing this matter further and, in particular, searching bank records for all receipts and disbursements and calculating all interest and fees due

under the loans, the Receiver determined that the amount due across all loans was $4,320,931.08, as of September 11, 2025. Such amount continues to accrue interest at $2,331.19 per day and does not include applicable attorney's fees. Since the Movants have already received the requested payoff, the request in the Motion to establish a procedure to obtain payoff commitments appears to be unnecessary. A copy of the detailed pay off request delivered to Dr. Williams and his counsel on September 11, 2025 is attached as **Exhibit "A"** hereto.

19.    On October 17, 2025, the Receiver issued a default notice to Dr. Williams, No Free, and Riverdawg, which is attached to the Amended Motion as Exhibit "L" as a result of: a) the failure to satisfy Loan 2 or Loan 3 by their applicable maturity dates; and b) the Cross Default and Cross Collateralization Provisions that led to defaults under Loan 4 and Loan 5. Such notice further referenced additional defaults as a result of the failure to provide financial information.

20.    Instead of making arrangements to refinance or pay the outstanding debt, or even provide the missing financial information, Dr. Williams has apparently chosen to litigate with the Receiver.

21.    The Receiver expressly rejects Movants' contentions that they are seeking to pay the obligations owed to the Receivership Estate. The Movants have had months to make arrangements to pay their loans and have failed to do so. The

detailed Payoff was provided over sixty days ago and the Default Notice sent over thirty (30) days ago and yet the Movants have not made *any* payments on such balances to the Receiver. Further, Dr. Williams has consistently represented to the Receiver that he is a person of substantial wealth who has the financial wherewithal to pay the loans in full. This Motion and the Prior Motions are nothing more than cynical attempts by Dr. Williams to use the existence of this Receivership to reduce his obligations to return investor funds to the Receiver. If he had a sincere intent to repay his obligations, as he claims in the Motion, Dr. Williams would have already done so.

**ARGUMENT AND CITATION OF AUTHORITY**

**A. The Instant Motion should be held in Abeyance Pending Resolution of the Prior Motions.**

22.    As noted above, Movant filed the Prior Motions to establish procedures to litigate Movants' claims. Since the Movants' claims may implicate coverage under certain title insurance policies, the Receiver made a timely claim for coverage and has now been advised that counsel will shortly be appointed to represent the interests of the Receiver with respect to certain issues.

23.    The Receiver has kept the Movants advised as to the status of the title claim and has consistently advised the Movants that once counsel appointed by the title company appears, the Receiver would consult with such counsel to propose

procedures to resolve the Movants' claims. The Movants, who are represented by sophisticated counsel, knew, or should have known, that their claims could implicate substantial title insurance policies procured by First Liberty as lender at the time certain of the loans were made to the Movants. The Receiver has acted to preserve this coverage and to involve appointed counsel in establishing procedures to resolve issues related to the North Carolina Deed.

24.     For reasons never explained in the instant Motions, the Movants have apparently chosen to ignore to their Prior Motions to establish procedures to resolve their claims and now seek broad, summary relief on the merits of their claim, apparently without regard to the Prior Motions and without compliance with the rules of Civil Procedure and applicable law.

25.     The instant Motion is premature and should be denied until such time as the Court resolves the Prior Motions. The Receiver anticipates that once counsel appointed by the title company appears, the Receiver will quickly propose procedures to the Court --- or proceed with litigation in this Court --- to address the Movants' claims with respect to the North Carolina Deed and to enforce the Movants' and Dr. Williams' obligations to the Receivership Estate.

**B. The Movants must comply with F.R.C.P. 65 and the standards established therein in order to obtain injunctive relief.**

26.     In the instant Motion, the Movants seek an injunction against the

Receiver to restrain the Receiver from enforcing loan obligations against the Movants and presumably Dr. Williams. No mention is made of F.R.C.P. 65 in the Motion or of the standards and burdens for obtaining injunctive relief.

27.    The Movants do not state how long such an injunction must remain in place, do not request an evidentiary hearing or provide any evidence and, glaringly, do not propose any bond to protect the Receivership Estate even as the Movants (and Dr. Williams) continue to fail and refuse to pay their lawful obligations to the Receivership Estate.   Simply put, the Motion is woefully deficient with respect to the request for an injunction against the Receiver and should be summarily denied.

28.    There is no legal or factual basis for either the granting of such an injunction against the Receiver or for granting such an injunction based solely on the Movants' Motion. The request for injunctive relief should be denied or held in abeyance pending the establishment of procedures to address Movants' claims.

### C. The Cross Default and Cross Collateralization of the Movants Loans is Valid.

29.    The Cross Default and Cross Collateralization Provisions are standard cross-default and cross-collateralization clauses that: a) are unambiguous in each and every contract; b) tied together multiple loans entered into for the ultimate benefit of Dr. Williams; and c) provided First Liberty rights to recover in the event of default. Under the circumstances, there can be no question that the parties

intended that: a) a default under one loan is a default under the others; and c) collateral under any specific loan is collateral for all other obligations. While Movants argue that they have limited flexibility to refinance at this juncture, Dr. Williams was fully aware of such risk upon entering the Williams Loans and was also aware of the maturity dates of such loans. Indeed, the maturity dates and Cross Default and Cross Collateralization Provisions were clearly disclosed across all of the loans and agreed upon by Dr. Williams by and through No Free and Riverdawg. Moreover, the cross collateralization covers loans made to related entities and each ultimately for the benefit of Dr. Williams.

30.    As an initial matter, it should be noted that Dr. Williams is an individual who owns or controls a limited number of entities and is not a huge enterprise that owns or controls a significant number of entities. Under the circumstances, the determination of affiliates is not a difficult task and it is undisputed that the Movants are owned and/or controlled by Dr. Williams.

31.    Notably, the Motion fails to set forth any basis to avoid the cross-default portion of the Cross Default and Cross Collateralization Provisions. Even without consideration of language referring to "any and all entities related to Borrower by common ownership and/or control," the express default by No Fee under Loan 1 and Loan 2 led to a corresponding default under Loan 5 and the express default by

Riverdawg under Loan 3 led to a corresponding default under Loan 4. The non-payment related defaults are now in addition to the non-monetary defaults arising from the failure of Dr. Williams, Riverdawg or No Free to provide financial documentation as required under the loan agreements. Under the circumstances, there is no question that the Williams Loans and the related guarantees are in default.

32.    With regard to the cross-collateralization portion of the Cross Default and Cross Collateralization Provisions, the Motion cites on page 24 only authority related to guarantees. A cross-collateralization provision; however, is not a guarantee and is instead a provision allowing the use property as security for multiple loans. Under the circumstances, and given that in this case Dr. Williams was the ultimate guarantor of all of the loans the Receiver submits that the cross-collateralization is proper and valid.   Even if such authority could be applied, Loan 1, Loan 2, and Loan 5 would still be obligations of No Free that are secured by the same collateral and Loan 3 and Loan 4 would still be obligations of Riverdawg that are secured by the same collateral.  There can be no dispute, even under Movants' theory that Loans 1, 2 and 5 are properly cross-collateralized as to No Free and that Loans 3 and 4 are properly cross-collateralized as the No Free.   All of the loans are personally guaranteed by Dr. Williams who is the principal of the each of the entities.

33.    The ultimate relief sought by Dr. Williams and the Movants with

respect to the cross-collateralization of the loans is a declaration that the cross-collateralization is not enforceable. Movant makes no effort to comply with the standards for seeking a declaratory judgment and seems to believe that such dramatic relief should be granted without regard to the Receiver's right to discovery, compliance with applicable federal law and procedure, without any sort of evidentiary hearing and without regard to the pending Prior Motions which were ostensibly filed for the purpose of establishing procedures to address such claims. The request for relief with respect to the cross-collateralization is premature and not supported by authority and should be denied or held in abeyance pending resolution of the Pending Motions.

## CONCLUSION

34.    The Receiver does not consent to any summary proceedings with respect to the claims held by the Receivership Estate against Dr. Williams and his entities or the claims asserted by him. In particular, the Receiver objects to this Court conducting a summary proceeding with respect to: (a) declaratory relief sought by the Movants that the North Carolina Deed is invalid; (b) declaratory relief sought by the Movants that the loans made by First Liberty are not bona-fide enforceable loans; (c) declaratory relief sought by the Movants that the cross-default and cross-collateralization provisions of the loan documents are not enforceable and

(d) injunctive relief sought by Movants enjoining the Receiver from enforcing the loan agreements entered into by Movants.   These are complex matters which each require discovery from the Parties and likely third parties and ultimately evidentiary hearings before this Court in which the Movants will bear the burdens of proof and persuasion.

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court: 1) deny the Motion at this time or hold the Motion in abeyance pending resolution of the Pending Motions; and 2) grant the Receiver such other and further relief as this Court deems just and proper.

Respectfully submitted this 28th day of November, 2025.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com
Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
*Counsel for Receiver*

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE AND <u>CERTIFICATE OF SERVICE</u>

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D), and the attachments are consistent with Local Rule 5.1(B).

Counsel further certifies certify that I have electronically filed the foregoing *Memorandum in Opposition by Receiver to Motion to Establish Summary Proceedings to Determine Invalidity of Cross-Collateralization Provisions, Establish Procedure to Obtain Payoff Commitments, and Stay Receiver's Efforts to Collect on Claims* with the Clerk of Court via the CM/ECF system, and further certify that a true and correct copy of the same has been served by email as follows:

JONES & WALDEN LLC
c/o Leon S. Jones, Esq.
699 Piedmont Avenue NE
Atlanta, Georgia 30308          Sent electronically to LJones@joneswalden.com

This 28th day of November, 2025.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com
Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
*Counsel for Receiver*

EXHIBIT A

PAYOFF CALCULATION TENDERED TO MOVANTS BY THE RECEIVER
ON SEPTEMBER 11, 2025

First Liberty
Loans to Dr. Jerry Williams and Related Entities
Loan Payoff as of 09/10/2025

**Loan # 1**

| | | |
|---|---|---|
| Principal | | $500,000.00 |
| Late Charges June 2025 | | $125.00 |
| Unpaid Interest 6/1/2025 to 6/10/2025 | | $2,500.00 |
| Default Interest 6/11/2025 to 09/10/2025 | | $29,666.67 |
| Interest Reserve | | ($45,000.00) |
| Payoff | | $487,291.67 |
| | Per Diem | $333.33 |

**Loan # 2**

| | | |
|---|---|---|
| Principal | | $700,000.00 |
| Late Charges (Jul 2025 - Sep 2025) | | $1,400.00 |
| Unpaid Interest as of: 09/10/2025 | | $21,666.28 |
| Interest Reserve | | ($56,000.00) |
| Payoff | | $667,066.28 |
| | Per Diem | $319.46 |

**Loan # 3**

| | | |
|---|---|---|
| Principal | | $355,000.00 |
| Late Charges (Jan 2025 - Sept 2025) | | $2,130.00 |
| Unpaid Interest as of: 09/10/2025 | | $41,260.42 |
| Interest Reserve | | ($28,400.00) |
| Payoff | | $369,990.42 |
| | Per Diem | $175.41 |

**Loan # 4**

| | | |
|---|---|---|
| Principal | | $3,299,289.40 |
| Late Charges | | $14,746.45 |
| Unpaid Interest as of: 09/10/2025 | | $322,546.87 |
| Interest & Construction Reserve | | ($840,000.00) |
| Payoff | | $2,796,582.72 |
| | Per Diem | $1,502.98 |

**Total - All Loans**

| | | |
|---|---|---|
| Principal | | $4,854,289.40 |
| Late Charges | | $18,401.45 |
| Unpaid Interest as of: 09/10/2025 | | $387,973.57 |
| Default Interest 6/11/2025 to 09/10/2025 | | $29,666.67 |
| Interest Reserve | | ($969,400.00) |
| Payoff | | $4,320,931.08 |
| | Per Diem | $2,331.19 |

| Loan # 1a | | | Loan Fees & Reserves | $36,400.00 |
|---|---|---|---|---|
| | Rate | 18% | Wire Amount | $213,600.00 |
| | Start Date | 12/28/2023 | Loan Amount | $250,000.00 |
| | Interest Only Pmt | $3,750.00 | | |
| | Loan Amount | $250,000.00 | | |

All Interest paid on Loan # 1 and $250,000 principal rolled into Loan # 1b.

| Loan # 1b | | | Loan Fees & Reserves | $39,942.00 |
|---|---|---|---|---|
| | Rate | 18% | Wire Amount | $210,058.00 |
| | Start Date | 6/11/2024 | Loan Amount | $250,000.00 |
| | Monthly Interest Only Pmt | $7,500.00 | | |
| | Loan Amount | $500,000.00 | | |
| | Interest Reserve | $45,000.00 | | |
| | Interest Paid Through: | 5/31/2025 (1) | | |
| | Unpaid interest 6/1/2025 thru 6/10/2025 | $2,500.00 | | |

| | | |
|---|---|---|
| Principal | $500,000.00 | |
| Late Charges June 2025 | $125.00 | |
| Unpaid Interest at maturity | $2,500.00 | |
| Default Interest 6/11/2025 through 09/10/2025 | $29,666.67 | (2) |
| Interest Reserve | ($45,000.00) | |
| Payoff | $487,291.67 | |

(1) Receiver did not locate $7,500 payment dated 6/23/2025 shown on Dr. Williams payment report.
(2) See below calculation.

| Loan # 1 Default Interest | | |
|---|---|---|
| | Default Rate | 24% |
| | Start Date | 6/11/2025 |
| | Loan Amount | $500,000.00 |
| | Default Interest 6/11/2025 as of 09/10/2025 | $29,666.67 |
| | Per Diem | $333.33 |

Loan # 2

| | |
|---|---|
| Rate | 16% |
| Start Date | 9/18/2024 |
| Monthly Interest Only Pmt | $9,333.33 |
| Loan Amount | $700,000.00 |
| Interest Reserve | $56,000.00 |
| Interest Paid Through: | 6/30/2025 |
| Unpaid Interest July 2025 thru Aug 2025 | $18,791.11 |
| Unpaid Sept 2025 Interest as of: 09/10/2025 | $2,875.16 |
| Per Diem | $319.46 |

| | |
|---|---|
| Principal | $700,000.00 |
| Late Charges (Jul 2025 - Sep 2025) | $1,400.00 |
| Unpaid Interest as of: 09/10/2025 | $21,666.28 |
| Interest Reserve | ($56,000.00) |
| Payoff | $667,066.28 |

| | |
|---|---|
| Loan Fees & Reserves | $99,023.43 |
| Wire Amount | $600,976.57 |
| Loan Amount | $700,000.00 |

Loan # 3

| | | | | |
|---|---|---|---|---|
| Rate | 16% | Loan Fees & Reserves | $52,476.16 |
| Start Date | 12/09/24 | Wire Amount 12/12/24 | $252,523.84 |
| Monthly Interest Only Pmt | $4,733.33 | Wire Amount 11/20/24 | $50,166.00 |
| Loan Amount | $355,000.00 | Unexplained | ($166.00) |
| Interest Reserve | $28,400.00 | Loan Amount | $355,000.00 |
| Interest Paid Through: | n/a | | |
| Unpaid Interest Jan 2025 thru Aug 2025 | $39,681.69 (1) | | |
| Unpaid Sept 2025 Interest as of: 09/10/2025 | $1,578.73 | | |
| Per Diem | $175.41 | | |

| | |
|---|---|
| Principal | $355,000.00 |
| Late Charges (Jan 2025 - Sept 2025) | $2,130.00 |
| Unpaid Interest as of: 09/10/2025 | $41,260.42 |
| Interest Reserve | ($28,400.00) |
| Payoff | $369,990.42 |

(1) December 2024 partial month interest charged as loan fee.

**Loan # 4a**

| | | | |
|---|---|---|---|
| | | Loan Fees & Reserves | $1,087,166.00 |
| Rate | 15% | Wire Amount | $1,162,123.40 |
| Start Date | 12/19/24 | Loan Amount | $2,249,289.40 |
| Monthly Interest Only Pmt | $28,116.12 | | |
| Loan Amount | $2,249,289.40 | | |
| Interest & Construction Reserve | $840,000.00 | | |
| Interest Paid Through: | n/a | | |
| Unpaid Interest Jan 2025 thru Aug 2025 | $235,019.48 | | |
| Unpaid Sept 2025 Interest as of: 09/10/2025 | $9,316.16 | | |
| Per Diem | $1,035.13 | | |

| | |
|---|---|
| Principal | $2,249,289.40 |
| Late Charges (Feb 2025 - Sept 2025) | $11,246.45 |
| Unpaid Interest as of: 09/10/2025 | $244,335.64 |
| Interest & Construction Reserve | ($840,000.00) |
| Payoff | $1,664,871.49 |

**Loan # 4b**

| | | | |
|---|---|---|---|
| | | Loan Fees & Reserves | $0.00 |
| Rate | 15% | Wire Amount | $850,000.00 |
| Start Date | 02/27/25 | Loan Amount | $850,000.00 |
| Monthly Interest Only Pmt | $10,625.00 | | |
| Loan Amount | $850,000.00 | | |
| Interest & Construction Reserve | $0.00 | | |
| Interest Paid Through: | n/a | | |
| Unpaid Interest 2/27/25 - 2/28/25 | $758.93 | | |
| Unpaid Interest Mar 2025 Thru Aug 2025 | $65,775.70 | | |
| Unpaid Sept 2025 Interest as of: 09/10/2025 | $3,437.00 | | |
| Per Diem | $381.89 | | |

| | |
|---|---|
| Principal | $850,000.00 |
| Late Charges (Apr 2025 - Sept 2025) | $3,187.50 |
| Unpaid Interest as of: 09/10/2025 | $69,971.64 |
| Interest Reserve | $0.00 |
| Payoff | $923,159.14 |

Loan # 4c

| | | |
|---|---|---|
| Rate | 15% | |
| Start Date | 05/22/25 | |
| Monthly Interest Only Pmt | $1,250.00 | |
| Loan Amount | $100,000.00 | |
| Interest & Construction Reserve | $0.00 | |
| Interest Paid Through: | n/a | |
| Unpaid Interest 5/22/25 - 5/31/25 | $403.23 | |
| Unpaid Interest June 2025 Thru Aug 2025 | $3,797.07 | |
| Unpaid Sept 2025 Interest as of: 09/10/2025 | $389.24 | |
| Per Diem | $43.25 | |

| | |
|---|---|
| Loan Fees & Reserves | $0.00 |
| Wire Amount | $50,000.00 |
| Wire Amount | $50,000.00 |
| Loan Amount | $100,000.00 |

| | |
|---|---|
| Principal | $100,000.00 |
| Late Charges (July 2025 - Sept 2025) | $187.50 |
| Unpaid Interest as of: 09/10/2025 | $4,589.54 |
| Interest Reserve | $0.00 |
| Payoff | $104,777.04 |

Loan # 4d

| | | |
|---|---|---|
| Rate | 15% | |
| Start Date | 06/13/25 | |
| Monthly Interest Only Pmt | $1,250.00 | |
| Loan Amount | $100,000.00 | |
| Interest Reserve | $0.00 | |
| Interest Paid Through: | n/a | |
| Unpaid Interest 6/13/25 - 6/30/25 | $750.00 | |
| Unpaid Interest July 2025 Thru Aug 2025 | $2,515.63 | |
| Unpaid Sept 2025 Interest as of: 09/10/2025 | $384.43 | |
| Per Diem | $42.71 | |

| | |
|---|---|
| Loan Fees & Reserves | $0.00 |
| Wire Amount | $100,000.00 |
| Loan Amount | $100,000.00 |

| | |
|---|---|
| Principal | $100,000.00 |
| Late Charges (Aug 2025 - Sept 2025) | $125.00 |
| Unpaid Interest as of: 09/10/2025 | $3,650.06 |
| Interest Reserve | $0.00 |
| Payoff | $103,775.06 |

Loan # 4 Total

| | |
|---|---|
| Principal | $3,299,289.40 |
| Late Charges | $14,746.45 |
| Unpaid Interest as of: 09/10/2025 | $322,546.87 |
| Interest Reserve | ($840,000.00) |
| Payoff | $2,796,582.72 |