# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　Plaintiff,<br><br>v.<br><br>EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC,<br><br>　　Defendants, and<br><br>FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTH AI CAPITAL, LLC, THE LEGACY ADVISORY GROUP INC., AND THE LIBERTY GROUP LLC,<br><br>　　Relief Defendants. | Civil Action No.<br>1:25-cv-03826-MLB |

## REPLY IN SUPPORT OF BAY POINT'S MOTION TO INTERVENE

Bay Point Capital Partners II, LP ("Bay Point" or "Movant"),[1] by and through its undersigned counsel, files this reply ("Reply") in support of Bay Point's *Motion to Intervene* (Dkt. No. 18) (the "Motion") and in response to the *Brief in Opposition to Motion to Intervene* (Dkt. No. 25) (the "SEC Response") filed by Plaintiff

---

[1] Capitalized terms used but not defined herein shall have the same meaning as defined in the Motion.

Securities and Exchange Commission ("SEC") and the *Memorandum in Opposition by Receiver to Bay Point Capital Partners II, LP's Motion to Intervene* (Dkt. No. 26) (the "Receiver Response") filed by S. Gregory Hays, as Court-Appointed Receiver ("Receiver").

The SEC and the Receiver oppose the Motion on the alleged grounds that Bay Point is similarly situated to other creditors and should not be permitted to separately pursue certain assets. This argument misstates the facts and purpose of Bay Point's Motion. Bay Point Seeks to intervene to protect its own vested financial and contractual interests and to ***prevent the SEC and the Receiver from freezing assets that belong to Bay Point***. Under these circumstances, and under established precedential authority from this District, intervention is permitted and necessary to protect Bay Point's assets. Accordingly, the Motion should be granted.

**I.      Section 21(g) Does Not Bar Intervention.**

As shown in the Motion, Bay Point is not required to show standing to intervene in this lawsuit. Regardless, Bay Point has in fact shown standing because it has been injured both by Borrowers and by the entry of the Receivership Order. *See* Dkt. No. 18-1 at 10-12. Citing Section 21(g) of the Securities Exchange Act, both the SEC and the Receiver argue that Bay Point requires the consent of the SEC

to intervene.[2] *See* SEC Resp. at 4-9; Receiver Resp. at ¶ 31. This argument fails. In fact, courts that have examined this issue under similar circumstances, including the Northern District of Georgia, have disagreed with the SEC and Receiver's position and permitted intervention in SEC enforcement actions under very similar circumstances to those presented here. This Court should reach the same conclusion.

Section 21(g) of the Securities Exchange Act of 1934 provides "no action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission." 15 U.S.C. § 78u(g). Notably, not a single case cited by the SEC in support of its position that Section 21(g) operates as a bar to intervention are binding on this Court, and the only binding case on this point that the SEC cites (in a footnote) from this district holds the opposite. *See* SEC Resp. at 9 n.2 (citing *SEC v. Torchia*, No. 1:15-cv-3904-WSD, 2016 U.S. Dist. LEXIS 186075, at *5-7 (N.D. Ga. Jul. 1, 2016)).

In *Torchia,* the intervenors sought to intervene for the purpose of preventing the receiver's proposed sale of life insurance policies the intervenors owned, arguing that the sale of the policies was not authorized. 2016 U.S. Dist. LEXIS 186075, at

---

[2] The Receiver also argues that Bay Point lacks standing to intervene, but such argument is adequately addressed in the Motion and does not require any further reply. *See* Receiver Resp. at ¶¶ 42-45.

*1. Just as it does here, the SEC opposed the *Torchia* intervenors' motion for intervention arguing that Section 21(g) barred third parties from intervening in SEC enforcement actions. In analyzing the arguments of the parties, Judge Duffy acknowledged that there is a split of authority among federal courts that have addressed whether Section 21(g) bars intervention, found that there was no binding authority on this issue, and then determined that "Section 21(g) does not represent an impenetrable wall to intervention in the instant case." *Id.* at 6. (quoting *SEC v. Kings Real Estate Inv. Trust*, 222 F.R.D. 660, 666-67 (D. Kan. 2004)); *but see U.S. SEC v. Solomon RC Ali*, 1:18-CV-1832-RWS, 2019 U.S. Dist. LEXIS 181087, at *4 (N.D. Ga. Jan. 31, 2019) (distinguishing *Torchia* and holding SEC consent is required to bring third party complaint).[3] Judge Duffy then held that the intervenors were permitted to intervene as a matter of right, over the objection of the SEC, because the scope of the proposed intervention was sufficiently limited and would "not unnecessarily complicate [the] action." *Torchia*, 2016 U.S. Dist. LEXIS 186075, at *7.

Both the SEC and the Receiver omit the fact that several courts have reached the same conclusion as the *Torchia* court and "have interpreted section 21(g) more narrowly, allowing for intervention in certain circumstances." *See SEC v. Falor*, 270 F.R.D. 372, 374-75 (N.D. Ill. 2010) (collecting cases). These courts have found that

---

[3] Bay Point's proposed complaint is not a third-party complaint.

> the purpose of [Section 21(g)] is simply to exempt the Commission from the compulsory consolidation and coordination provisions applicable to multidistrict litigation. It does not say that no one may intervene in an action brought by the SEC without its consent. It does not mention Fed. R. Civ. P. 24, nor does Rule 24 contain any clause giving special privileges to the SEC.

*SEC v. Flight Transp. Corp.*, 699 F.2d 943, 950 (8th Cir. 1983). Other courts in this Circuit have also concluded that Section 21(g) does not serve as an absolute bar to intervention. *See SEC v. Bkcoin Mgmt., LLC*, 23-CV-20719-SCOLA/GOODMAN, 2024 U.S. Dist. LEXIS 90262, at *9-15 (S.D. Fla. May 17, 2024) (acknowledging "split of authority as to whether Section 21(g) acts as an absolute bar to intervention in SEC enforcement actions" but holding that Section 21(g) did not act as absolute bar to intervention).

Several courts closely examining when Section 21(g) should operate as a bar to intervention versus when it should not have concluded that Section 21(g) was not meant to bar every intervention, only those where the intervenors are attempting to recover from the same defendants as the SEC under a different legal or factual theory, such that the intervenor is trying to "consolidate" a separate claim with the SEC action. *See SEC v. Hollinger Int'l,* Case No. 04 C 0336, 2004 U.S. Dist. LEXIS 3240, *11 (N.D. Ill. March 1, 2004) (holding Section 21(g) is not an absolute bar to intervention, particularly where the intervenor was not attempting to recover damages from defendant, but only attempting to protect its own interests); *SEC v. Prudential Sec.,* 171 F.R.D. 1, 5 (D.C. Ct. 1997) (permitting intervention where

5

purpose for which the intervenors sought intervention was not at odds with the SEC's purpose, even though intervention would prolong the claim resolution process).

Here, the scope of Bay Point's proposed intervention does not seek damages against the Receiver or any defendant[4] and thus Bay Point is not seeking to "consolidate" a separate claim with the SEC action. Rather, Bay Point simply seeks declaratory relief determining that (i) Bay Point is the rightful administrator of the Loans; (ii) all future payments under the Loans should be directed to Bay Point; and (iii) Bay Point has the right to assume all rights of First Liberty Capital under the Participation Agreements. *See* Dkt. No. 18-2 at ¶ 57. Like in *Torchia*, "[t]he scope of discovery will be limited, and the relevant information will be easily accessible by the Receiver." *Torchia*, 2016 U.S. Dist. LEXIS 186075, at *7. Under these circumstances, and pursuant to established precedent in this district, Section 21(g) does not bar Bay Point from intervening.

## II. **Bay Point Meets the Requirements for Intervention as of Right under Rule 24.**

As shown in the Motion, Bay Point meets the requirements for intervention as a matter of right. *See* Fed. R. Civ. Proc. 24(a)(2). The four requirements for

---

[4] Bay Point's proposed complaint includes a count for attorneys' fees under O.C.G.A. §§ 13-1-11 and/or 13-6-11. *See* Dkt. No. 18-2 at ¶¶ 59-63. To the extent that seeking this relief would prevent intervention, Bay Point consents to withdrawing this claim and seeking only injunctive relief.

intervention as a matter of right are: (1) timeliness; (2) an interest in the property or transaction at issue in the litigation; (3) the impediment or impairment of the ability to protect that interest; and (4) lack of adequate representation in the litigation. *See Amerisure Mut. Ins. Co. v. Reeves Young, LLC*, No. 1:22-CV-02739-JPB, 2023 U.S. Dist. LEXIS 153884, at *5 (N.D. Ga. Aug. 31, 2023) (citing *Stone v. First Union Corp.*, 371 F.3d 1305, 1308-09 (11th Cir. 2004)). The Receiver argues that Bay Point meets none of these four requirements, but the SEC only argues that Bay Point does not meet the third and fourth requirements. *See* SEC Resp. at 11-16; Receiver Resp. at ¶¶ 48-52. None of these arguments have any merit.

### A. Bay Point's Motion is Timely.

Bay Point filed the Motion less than two months after the Receivership was initiated, which this district has held to be timely. *See, e.g., United States v. Dekalb Cnty.*, No. 1:10-cv-4039-WSD, 2011 U.S. Dist. LEXIS 154837, at *17-22 (N.D. Ga. Oct. 11, 2011). The Receiver, citing to a decision from outside this district, argues that this length of time is untimely. *See* Receiver Resp. at ¶ 48 (citing *SEC v. Marin*, No. 1:19-mc-20493-UU-O'SULLIVAN, 2019 U.S. Dist. LEXIS 92492, at *3 (S.D. Fla. May 31, 2019)). Notably, in *SEC v. Marin,* the parties had already participated in an evidentiary hearing and briefed issues of personal jurisdiction, neither of which has occurred in this case, and thus the bases for untimeliness present in that case are not present here. Moreover, any delay in the filing of the Motion was a result of

attempted negotiation with the Receiver for a consensual modification of the stay imposed by the Receivership Order and acknowledgement of Bay Point's rights under the Participation Agreements.[5] Even if two months were not considered timely, the Receiver should not be able to manufacture delay through attempted negotiation. And to reward such tactics by finding the Motion untimely would chill potential consensual resolutions in the future and encourage intervenors to file their motions immediately. Therefore, the Court should find that the Motion is timely.

### B. Bay Point has an Interest in the Property.

Bay Point has a significant interest in the property that is the subject of this Lawsuit as outlined in its Motion (*see* Dkt. No. 18-1 at 14-15), including an interest in the Participation Agreements and in specific funds received from and owed by the Borrowers, which justify intervention. *See Twin Pines Coal Co. v. Colonial Pipeline Co.*, No. 2:09-cv-01403-SLB, 2012 U.S. Dist. LEXIS 98256, at *6 (N.D. Ala. July 16, 2012) (holding contract interest meets this requirement); *Devonshire Park, LLC v. FDIC*, No. 8:08-CV-2083-T-27AEP, 2009 U.S. Dist. LEXIS 133963, at *7 (M.D. Fla. Oct. 5, 2009) (holding that intervenor's minority interest in loan pursuant to loan participation agreement meets this requirement); *Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (holding interest in

---

[5] The Receivership Order provides that the injunction against interference with the receivership may be modified by "the express written agreement of the Receiver." Dkt. No. 6 at ¶ 29.

specific funds meets this requirement). The Receiver argues, without citation to authority, that Bay Point does not have an interest in any property at issue in this Receivership. *See* Receiver Resp. at ¶ 49. This bare assertion is insufficient to defeat Bay Point's Motion and can be deemed a waiver of this argument by the Receiver. *See Bennett St. Props., L.P. v. Cincinnati Ins. Co.*, No. 1:22-cv-940-MLB, 2024 U.S. Dist. LEXIS 213540, at *3 n.2 (N.D. Ga. Sept. 6, 2024) (holding that objections not supported "with authority or developed argument" are "forfeited" and disregarded by the Court); *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."). Therefore, the Court should find that Bay Point has sufficient interest in property relevant to this Lawsuit.

    **C.**    **<u>Bay Point is Unable to Protect its Interest in the Property without Intervention.</u>**

As shown in the Motion, the injunction imposed by the Receivership Order significantly hampers Bay Point's ability to recover its assets to which it is contractually entitled under the Participation Agreements. The Receiver and the SEC argue that Bay Point is able to protect its interest through a forthcoming receivership claims process. Receiver Resp. at ¶¶ 50-51; SEC Resp. at 11-13. This argument fails to account for the fact that Bay Point seeks to collect assets belonging either to it or the Borrowers, not Receivership Property .

The receivership claims process is limited to addressing the property of the receivership, and the property that Bay Point seeks to collect against either belongs to the Borrowers or to Bay Point, taking it out of that process. Although "[c]ourts have repeatedly held that a receivership claims process is the appropriate forum for considering interests of secured creditors and allowing secured creditors to protect their interest," this is true only for claims made against and secured by receivership property. *See SEC v. JCS Enter., Inc.*, No. 14-CV-80468-MIDDLEBROOKS/BRANNON, 2015 U.S. Dist. LEXIS 201567, at *3-4 (S.D. Fla. Nov. 3, 2015) (citing *SEC v. Elliott*, 953 F.3d 1560, 1566 (11th Cir. 1992)). Here, Bay Point is not asserting its interest as a secured creditor of First Liberty or any other defendant; it is a direct secured creditor of the Borrowers as a result of purchasing an interest in the Participation Agreements and is seeking to enforce those Security Interests, which is a priority interest of Bay Point under the terms of the Participation Agreements. In addition, Bay Point is an administrator of the Loans pursuant to the express and unambiguous terms of the Participation Agreements. Any potential claims process cannot properly protect this interest because it falls outside the receivership estate.[6]

---

[6] Additionally, if the Loans are paid to the receivership estate, but other loans being collected by the Receiver are not, Bay Point is at risk for having to subsidize fees incurred by the Receiver and its counsel in attempting to collect other loans in which Bay Point has no interest.

### D. Bay Point is Not Adequately Represented by the SEC or the Receiver.

As shown in the Motion, Bay Point is not adequately represented by the Receiver, the SEC, or any other existing party to this Lawsuit. The Receiver and the SEC argue that they are presumed to adequately represent all parties, including Bay Point, and that Bay Point has not rebutted this presumption because Bay Point stands in the same shoes as other investors. Receiver Resp. at ¶ 52; SEC Resp. at 13-16. These arguments fail.

As an initial matter, the SEC and the Receiver cite to no binding authority that such a presumption has ever been applied in this Circuit. Regardless, even if such a presumption exists here, Bay Point has rebutted it because Bay Point is not similarly situated to the defrauded investors that the SEC and the Receiver are here to protect. Unlike the defrauded investors, Bay Point holds an ownership interest in the Loans and in the right to enforce those loan obligations against the Borrowers, the guarantors, and the collateral for the Loans. Further, the SEC and the Receiver are adverse to Bay Point to the extent that they seek to take property belonging to Bay Point and combine it with receivership assets and distribute it to other creditors. *CFTC v. Giddens*, No. 1:11-cv-2038-WSD, 2012 U.S. Dist. LEXIS 23728, at *20 (N.D. Ga. Feb. 24, 2012) (finding interest not adequately protected when CFTC "[sought] to return to the victims of [defendants'] alleged fraud the funds invested with [defendant], which could have the practical effect of preventing [intervenor]

from obtaining the return of some or most of the specific funds in which he claims an interest"). Under these facts, it is unquestionable that Bay Point's interests are not adequately protected by the Receiver or the SEC.

Therefore, Bay Point meets each of the four requirements for intervention as a matter of right.

### III. The SEC and the Receiver Have Not Shown Why Bay Point Should Not be Permitted to Intervene, in the Alternative.

Even if the Court finds that Bay Point cannot intervene as a matter of right, Bay Point should still be permitted to intervene permissively in this receivership. *See* Fed. R. Civ. Proc. 24(b)(1)(B). The elements for permissive intervention are: (1) timeliness and (2) a common question of law or fact with the pending proceedings. *Amerisure,* 2023 U.S. Dist. LEXIS 153884 at *8. The Court also "consider[s] whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *SEC v. Mohamed*, No. 1:22-CV-03252-ELR, 2023 U.S. Dist. LEXIS 176203, at *4 (N.D. Ga. July 10, 2023); Fed. R. Civ. P. 24(b)(3). The SEC and Receiver argue that Bay Point's claims have no common questions of law or fact with the receivership and that intervention would delay and prejudice these proceedings. *See* SEC Resp. at 16-19; Receiver Resp. at ¶¶ 53-56. The Receiver also argues that the Motion is untimely. Receiver Resp. at ¶ 55. These arguments each fail.

First, the Motion is timely. *See Mohamed*, 2023 U.S. Dist. LEXIS 176203, at *4 (finding permissive intervention request filed 6 months after SEC complaint was timely). And the Receiver's naked assertion that it is untimely should be disregarded. *See Bennett St. Props.*, 2024 U.S. Dist. LEXIS 213540, at *3 n.2; *McClain of Ga.*, 138 F.3d at 1422. Moreover, as set forth above, the two-month alleged delay was a result of attempted negotiation with the Receiver.

Second, although the SEC's claims arise under federal law and Bay Point's claims apply state contract law principles, Bay Point's claims are inherently related to this receivership because enforcement of the Loan Documents is the central issue to both sets of claims. *See Stooksbury v. Ross*, No. 3:09-CV-498, 2013 U.S. Dist. LEXIS 121158, at *11 (E.D. Tenn. Aug. 23, 2013) (granting permissive intervention and finding common questions of law or fact where promissory notes were claimed as receivership property and right to enforce notes was at issue).

Finally, Bay Point's intervention would not unduly delay or prejudice the adjudication of the receivership action or the SEC's claims. The SEC argues that allowing Bay Point to administer the Loans "would be highly detrimental to the other individuals who invested in those loans" because "those individuals would be left to rely on the efforts of Bay Point for any recovery." SEC Resp. at 17. However, as the administrator of the Loans, Bay Point would be obligated to recover on the Loans

13

for the benefit of all participants, and the excess recovery would be paid over to the receivership estate.

The SEC also argues that allowing intervention would prejudice other creditors and delay these proceedings by encouraging "[o]ther investors who signed loan participation agreements [to] rush to the Court" seeking intervention. SEC Resp. at 18. However, this argument fails for several reasons. The Participation Agreements specify that only the participant holding the largest share has the option to assume administration of the loan in the first instance, and, therefore, because Bay Point is the largest loan participant and has exercised its right to replace First Liberty as the loan administrator, no other participant will have that right. *See* Dkt. No. 18-2 at 29, 38, 46. Further, once Bay Point is declared the administrator of the Loans, then it will adequately represent the interests of any other participants in those Loans so that intervention would not be appropriate for any other party. Granting the Motion would not open any proverbial floodgates.

Both the SEC and the Receiver also argue that Bay Point's intervention would delay these proceedings by having to litigate Bay Point's claim. SEC Resp. at 18; Receiver Resp. at ¶¶ 36, 41, 56. Bay Point concedes that "[a]ny introduction of an intervenor in a case will necessitate its being permitted to actively participate, which will inevitably cause some delay." *Alamo Brewing Co. v. Old 300 Brewing, LLC*, No. SA-14-CA-285-FB, 2014 U.S. Dist. LEXIS 201851, at *15-16 (W.D. Tex. May

21, 2014). But where a "case is still in its preliminary stages," such "delay will not be great." *Id.* And because Bay Point's claims are narrow and solely a question of contract interpretation, the adjudication of its claim for declaratory relief will not require significant time or resources on the part of the SEC or the Receiver.

Therefore, the Court should grant Bay Point permission to intervene, in the alternative.

## IV. **Bay Point's Claim for Declaratory Relief is Not Futile**.

Both the SEC and the Receiver attempt to argue the merits of Bay Point's proposed claim for declaratory relief in their responses. The SEC argues that the claim is futile because the Court has the authority to outright deny the claim because it is "inimical to the receivership." SEC Resp. at 20-21. The Receiver argues that Bay Point has failed to show a condition precedent to the exercise of its right to remove First Liberty as administrator of the Loans under the Participation Agreements, i.e., a qualifying event. Receiver Resp. at ¶¶ 38-40. Neither argument has merit.

"The futility standard is comparable to that applicable to a motion to dismiss." *EEOC v. Coley's #101, LLC*, No. 1:11-CV-3465-VEH, 2012 U.S. Dist. LEXIS 94387, at *4-5 (N.D. Ala. July 9, 2012) (considering futility argument in context of motion to intervene). Here, Bay Point has stated a claim for declaratory relief under O.C.G.A. § 9-4-1, et. seq. and/or 28 U.S.C. § 2201. *See* Dkt. No. 18-2 at ¶¶ 49-58.

"Under both federal and Georgia law, a declaratory judgment is available only in a case of 'actual controversy.'" *Taylor v. Opteum Fin. Servs., LLC*, No. 1:18-cv-3896-ELR-JKL, 2018 U.S. Dist. LEXIS 222109, at *16 (N.D. Ga. Oct. 28, 2018) (citing 28 U.S.C. § 2201(a) and O.C.G.A. § 9-4-2(a)). "The issue is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The facts in Bay Point's proposed complaint make clear that there is an actual controversy over who has the authority to administer the Loans, Bay Point or First Liberty through the Receiver.

Further, the SEC's argument that the Court should deny Bay Point's contractual rights as inimical to the receivership is misplaced. Although the Eleventh Circuit has recognized "[a] district court['s] . . . broad powers and wide discretion to determine the appropriate relief in an equity receivership," such discretion is still based on certain principles. *See SEC v. Elliott*, 953 F.2d 1560, 1569-70 (11th Cir. 1992); *see also SEC v. Detroit Mem'l Partners, LLC*, No. 1:13-cv-1817-WSD, 2016 U.S. Dist. LEXIS 154474, at *24 (N.D. Ga. Nov. 8, 2016) ("The tension between a court's requirement to do equity and respect property rights has been addressed, in general terms, by courts in the past."). The *Torchia* case cited by the SEC and the Receiver dealt with insurance policies, not real property rights or loan documents,

and the existence of the Security Interests separates Bay Point from other non-loan-participant defrauded investors. "The United States Supreme Court has said that 'a receiver appointed by a federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the State.'" *Detroit Mem'l Partners*, 2016 U.S. Dist. LEXIS 154474, at *24-25 (quoting *Marshall v. New York*, 254 U.S. 380, 385 (1920)). "The Supreme Court [also] said . . . that 'to the extent that one debt is secured and another is not there is manifestly an inequality of rights between the secured and unsecured creditors, which cannot be affected by the principle of equality of distribution'" and in doing so found "that the holder of a pre-receivership lien . . . had priority over general creditors." *Id. at 25.* (quoting *Ticonic Nat'l Bank v. Sprague*, 303 U.S. 406, 412 (1938)). Because Bay Point's contract claims involve pre-receivership liens, treating Bay Point differently from the defrauded investors with only unsecured claims cannot be inimical to the receivership.

## V. Conclusion

For the reasons stated above and in the Motion, the Court should grant the Motion and allow Bay Point to intervene in this Lawsuit or, alternatively, lift the injunction against litigation to allow Bay Point to bring a declaratory judgment action against First Liberty Capital to determine the parties' rights under the Loans pursuant to the Participation Agreements.

Respectfully submitted this 1st day of December 2025.

**THOMPSON HINE LLP**

*/s/ Alexandra C. Nelson*

Alexandra C. Nelson
Georgia Bar No. 241352
Austin B. Alexander
Georgia Bar No. 926059
Two Alliance Center, Suite 1600
3560 Lenox Road
Atlanta, Georgia 30326
Telephone: 404-541-2900
Facsimile:  404-541-2905
*alexandra.nelson@thompsonhine.com*
*austin.alexander@thompsonhine.com*

*Attorneys for Movant Bay Point Capital Partners II, LP*

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D), and the attachments are consistent with Local Rule 5.1(B).

*/s/ Alexandra C. Nelson*
Alexandra C. Nelson
Georgia Bar No. 241352

# CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing REPLY IN SUPPORT OF BAY POINT'S MOTION TO INTERVENE with the Clerk of Court via the CM/ECF system, and further certify that a true and correct copy of the same has been served by U.S. Mail, properly addressed and postage pre-paid, upon the following:

Kristin Willhelm Murnahan
Madison Graham Loomis
U.S. Securities and Exchange Commission
Atlanta Regional Office
950 E. Paces Ferry Road, Suite 900
Atlanta, GA 20549
*murnahank@sec.gov*
*loomism@sec.gov*

Joshua A. Mayes
Jane Ashley Ravry
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, GA 30318
*jmayes@robbinsfirm.com*
*jaravry@robbinsfirm.com*

Henry Francis Sewell, Jr.
Law Offices of Henry F. Sewell, Jr. LLC
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
*hsewell@sewellfirm.com*

This 1st day of December 2025.

*/s/ Alexandra C. Nelson*
Alexandra C. Nelson
Georgia Bar No. 241352