**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE** | : | |
| **COMMISSION,** | : | **Civil Action File No.** |
| **Plaintiff,** | : | **1:25-cv-3826-MLB** |
| **v.** | : | |
| **EDWIN BRANT FROST IV and** | : | |
| **FIRST LIBERTY BUILDING & LOAN, LLC,** | : | |
| **Defendants, and** | : | |
| **FIRST LIBERTY CAPITAL PARTNERS** | : | |
| **LLC, et. al.,** | : | |
| **Relief Defendants.** | : | |

**MEMORANDUM IN OPPOSITION BY RECEIVER TO MOTION FOR LEAVE OF COURT TO INITIATE ACTION AGAINST RECEIVERSHIP ESTATE**

S. Gregory Hays, not individually, but as Court-Appointed Receiver ("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in the above-captioned case (the "**Receivership**"), by and through counsel, hereby files this *Memorandum in Opposition by Receiver to Motion for Leave to Initiate Action Against Receivership Estate* (the "**Objection**") to object to the *Motion for Leave to Initiate Action Against Receivership Estate* [Doc. No. 44] (the "**Motion**")[1] that was filed by Full Circle LLC ("**Full Circle**"), Timeless Acquisitions LLC ("**Timeless Acquisitions**"), David

---

[1] The Receiver objects to the Motion to the extent that the exhibits referenced in the Motion do not appear to have been filed with the Motion.

Pike, David Pike II, and Christie Pike (collectively the "**Movants**") respectfully showing as follows:

## I.    <u>INTRODUCTION</u>

1.    While the Motion seeks leave to initiate an action against the Receivership Estate, other than broad allegations of fraud that are not detailed with particularity as required, the Motion fails to identify any: a) basis to obtain leave; b) claim to be asserted against the Receivership Estate; or c) fraud in the entry of the loan documents or any basis to avoid the interest of the Receivership in the Collateral (as defined below).

2.    Movants Full Circle and Timeless Acquisitions are entities owned and/or controlled by David Pike, David Pike II, and Christie Pike. There is no doubt that Movants—by and through Full Circle—received the benefit of a substantial amount of investor funds from the Receivership Entities. Indeed, the Movants executed various loan documents to enable Full Circle to receive—and actually received— actual monies under the terms of certain loan documents which enabled them to acquire certain real estate.  Notably, the Motion fails to: a) identify a breach of any specific provision of such loan documents by First Liberty Capital Partner, LLC ("**First Liberty**"); b) demonstrate that the security interest of First Liberty in the Collateral was obtained via fraud or c) offer to return any of the investor funds received by Movants.

3.     The Receiver submits that the Movants are fully aware of their duty to satisfy their obligations. Instead of satisfying the amount due pursuant to the loan documents and to return investor funds, the Movants have decided to attempt to avoid such obligations. This is now a collection matter that should be resolved in the same manner as other defaulted obligations due to the Receivership Entities without the Movants receiving preferential treatment.

4.     As a collection matter and part of efforts by the Receiver to collect under the Full Circle Loan and the respective guarantees, it should be noted that documentation underlying the Full Circle Loan provides for the assessment of attorney's fees as part of the debt, in addition to principal, interest, and costs. The Receiver intends to enforce these provisions and further advises that attorney's fees related to this collection matter are being added to the principal, interest, and costs due.

5.     The Receiver further notes that the confusion referenced in paragraphs 38-43 of the Motion as result of the allegations by Bay Point Capital Partners II, LP ("**Bay Point**") is a prime example of the danger resulting from the relief sought in the motion [Doc. No. 18] that was filed by Bay Point in this Receivership. Indeed, the interference by Bay Point has already delayed the Receiver in seeking to foreclose on the Collateral for the benefit of the Receivership.

6.     The Receiver does not oppose ultimately permitting the Movant to seek

relief in this Court. Indeed, the Receiver intends to propose procedures to this Court in connection with the hearing scheduled for December 15, 2025 to litigate and resolve borrower claims. However, in its present form, Movant has failed to identify the specific claims it is asserting and, to the extent that Movant is seeking injunctive relief against the Receiver, to identify the security or bond to be posted while such injunction is in place. The Receiver therefore does oppose granting this Motion in its current form and shows that Movant should be required to comply with the procedures to ultimately be established by this Court.

7.     Under the circumstances, the Motion should be denied.

## II.    FACTUAL BACKGROUND

### a.    Loan to Full Circle.

8.     Full Circle received a significant amount of investor funds from the Receivership Entities which were used for the benefit of Full Circle and its owners.

9.     On or about February 10, 2023, First Liberty made a loan to Full Circle in the original principal amount of $2,750,000 (the "**Full Circle Loan**") that had an original maturity date of February 9, 2024. While paragraph 24 of the Motion alleges that the maturity date was extended, such extension is disputed as the payment to extend the maturity does not appear in the records of the First Liberty and Movants did not attach any documents evidencing such an extension. A copy of the Promissory Note executed by Full Circle is attached as Exhibit "A".

10.     Bay Point purportedly invested in a portion of the Full Circle Loan.

11.     The Full Circle Loan is secured by certain real estate located in Walton County (the "**Collateral**") and guarantees by David Pike, David Pike II, and Christie Pike.   There is no legitimate dispute that First Liberty property perfected a security interest in the Collateral which is now held by the Receiver.

12.     The Closing Statement dated February 10, 2023, which was signed and agreed to by Full Circle, related to the Full Circle Loan provides for disbursements in the total amount of $1,455,730, including the payoff of a prior note to Briskin, Cross, & Sandford, LLC in the amount of $1,034,730 (which cleared a pre-existing lien against the Collateral) , an interest reserve, and certain fees. On April 7, 2023, Full Circle received an additional transfer in the amount of $78,630. While the documents underlying the Full Circle Loan do not detail how the remaining proceeds of the Full Circle Loan would be disbursed, the Motion suggests that there was concern as to the business plan of Full Circle. The Movants question whether such concerns were legitimate.

13.     The last payment received on the Full Circle Loan was on May 28, 2024.   Full Circle has failed and refused to make any payments or even attempt any payments since the appointment of the Receiver.

14.     Paragraph 25 of the Motion readily admits that the obligation arising from the Full Circle Loan remains outstanding.

**b. The Motion fails to set forth any breach by First Liberty of any provision of any loan documents or fraud as to the Movants.**

15.     The Motion fails to allege any: a) fraud in the entry of the loan documents; or b) breach by First Liberty of any specific provision of any loan documents.

16.     While paragraph 26 of the Motion alleges that Full Circle was unable to access $1,294,270 of the Full Circle Loan, the Motion fails to identify any provision of the loan documents requiring the disbursement of such proceeds.

17.     Furthermore, contrary to the allegation in paragraph 18 of the Motion characterized as to the "first piece" of the purported fraud as to the Movants, records available to the Receiver indicate that the First Liberty had sufficient funds for the Full Circle Loan. More specifically, records available to the Receiver indicate that participants invested at least $2,675,000 related to the Full Circle Loan.

18.     The Motion provides no basis for the allegation in paragraph 36 of the Motion that the interest in the Collateral was obtained via fraud and it appears that Movants are falsely claiming to be victims in order to retain the benefits of the funds advance by First Liberty without having to pay back loans they agreed to pay.

19.     Under the circumstances, the Motion also fails to allege a legitimate basis to release the interest of First Liberty in the Collateral prior to full payment of the obligations arising from the Full Circle Loan.

### c. **Appointment of Receiver and Review of loans.**

20.     On July 11, 2025, the: a) SEC filed a complaint (the "**Complaint**") against Defendants Edwin Brant Frost IV ("**Frost**") and First Liberty Building & Loan, LLC (together, "**Defendants**") and the Relief Defendants (as defined in the Appointment Order); and b) the District Court entered the Appointment Order to appoint the Receiver for the purposes of marshaling and preserving all assets of the Receivership Entities and the assets of Defendant Frost that: i) are attributable to funds derived from investors or clients of the Defendants; ii) are held in constructive trust for the Defendants; and/or iii) may otherwise be includable as assets of the estates of the Defendants.

21.     The Appointment Order provides that the District Court takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated of the Receivership Entities, including the Defendant in this case. *See* Appointment Order, p. 2. The Appointment Order further defines "Receivership Property" as all "property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind." *See* Appointment Order ¶ 6(A). The interest of the Receivership Entities in the Collateral is Receivership Property.

22.     The Appointment Order includes essential provisions to empower the Receiver to analyze and investigate assets, administer assets for the benefit of the Receivership and harmed investors and creditors, and develop a fair and reasonable liquidation plan for all investors.

23.     To provide the Receiver with the ability to fulfill the duties of the Receiver without being hindered or obstructed by litigation against property of the Receivership, in addition to freezing the Receivership Property, the District Court entered an injunction against interference with the Receiver (the "**Injunction**") and stay (the "**Stay**") of all civil legal proceedings involving any Receivership Property or the Receivership Entities until further order of the District Court. *See* Appointment Order ¶¶ 32-34. The Injunction protects against action that would "[d]issipate or otherwise diminish the value of any Receivership Property." *See* Appointment Order ¶ 32(C). Furthermore, the Stay under Section VII of the Appointment Order stays all litigation matters other than the litigation subject to the Receivership and clearly provides that no further actions should be taken against any assets or entities subject to the Appointment Order until further order of the District Court.

24.     Since being appointed, the Receiver has endeavored to marshal and preserve the assets of the Receivership Entities. Incident thereto, the Receiver investigated the loans made by the Receivership Entities, including the Full Circle

Loan. The analysis of the Receiver indicates that: a) the payoff of the Full Circle Loan as of December 4, 2025, is $2,110,774.29; and b) the interest of First Liberty in the Collateral is Receivership Property that was received in exchange for the Full Circle Loan that was used, in part, to satisfy a substantial prior encumbrance on the Collateral.   A detailed calculation of the balance owed to the Receivership Estate is attached hereto as Exhibit "B".

25.    The Receiver initially requested that Movants make the Collateral available for inspection.   Movants refused to cooperate in this regard and the Receiver sent a representative of his to the property unannounced.   The Receiver discovered that the Movants were operating some sort of car wash at the Collateral and had made no effort to improve the Collateral.    Just a few days after this inspection, the instant motion was filed.

26.    The Receiver has requested proof of insurance for the Collateral. Movants have failed to provide any proof of insurance for the Collateral.

27.    The relief sought in the Motion would dissipate or otherwise diminish the value of Receivership Property by seeking, without any legitimate basis, to reduce the amount due to the Receivership and restrict the ability to liquidate the Collateral.  Such relief would be fundamentally unfair for various reasons, including that the Full Circle Loan allowed for the payment of a prior encumbrance on the Collateral.

28. Neither this Objection nor any later appearance, pleading, claim, or suit shall waive: a) any stay or injunction arising from the appointment of the Receiver; or b) any other sanctions, rights, claims, actions, defenses, setoffs, or recoupments to which Receiver is or may be entitled, under agreements, in law, in equity, or otherwise, all of which rights, claims, actions, defenses, setoffs, and recoupments are expressly reserved.

## ARGUMENT AND CITATION OF AUTHORITY

29. "The district court has broad powers and wide discretion to determine relief in an equity receivership." *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted) (noting that to "'allow any individual to elevate his position over that of other investors similarly 'victimized' by asserting claims for restitution and/or reclamation of specific assets . . . would create inequitable results, in that certain investors would recoup 100% of their investment while others would receive substantially less . . .'"). Indeed, "'a court sitting in equity has the discretionary authority to deny state law remedies as inimical to the receivership' . . . It is well-established that 'equitable principles may supersede rights an investor would have under other law to recover its assets.'" *Sec. & Exch. Comm'n v. Torchia*, No. 1:15-CV-3904-WSD, 2016 WL 2996902, at *4 (N.D. Ga. May 25, 2016) (citation omitted). Here, the unsubstantiated claims sought to be pursued by the Movants are inimical to the Receivership.

30.    The Receiver submits that granting the Motion would cause disruption, result in an inequitable administration, cause conflict, confusion and unnecessary expense in the enforcement of loans, harm the Receivership and otherwise cause injustice. Under the circumstances, the Motion fails to assert a legitimate basis for the relief sought for at least eight reasons.

31.    First, the Motion fails to set forth a legitimate basis for relief from the Stay or Injunction.

32.    Second, the Motion fails to set forth a legitimate basis for leave to initiate an action in conjunction with this Receivership.

33.    Third, the Motion fails to identify a viable claim to be asserted against the Receivership Estate.

34.    Fourth, the Motion fails to demonstrate that the interests of the Receivership will be adequately protected during any stay either by providing adequate insurance or posting a bond.

35.    Fifth, the position that First Liberty did not have the proceeds to satisfy the Full Circle Loan appears to be entirely without merit not only because First Liberty was making other loans during the same time period, but also because First Liberty actually raised the funds related to the Full Circle Loan by receiving approximately $2.67 million from investors who purchased specific interests in the Full Circle Loan.

36.    Sixth, the Motion fails to plead fraud as to the Movants with particularity or the required specificity.

37.    Seventh, the Movants: a) fail to demonstrate that any interest in the Collateral was obtained via fraud or may otherwise be avoided; and b) should not be allowed to strip away collateral prior to the full payment of Full Circle Loan.

38.    Eighth, the Movants are unable to demonstrate fraud in the inducement. Notably, fraud that "constitutes a ground for voiding a contract under OCGA § 13–5–5 must be fraud which induced the parties to enter the contract." *Leventhal v. Seiter*, 208 Ga. App. 158, 162–63 (1993) (noting that to demonstrate fraud and misrepresentation in the procurement of the contract, it must be shown that defendant exercised due care to discover the fraud and that "'false representations were made, which were known to be false and which were made with the intention to deceive'"). "Fraud in the inducement, or inceptive fraud to enter into a contract, provides the remedy of rescission and recovery of any additional damages after repayment of the contract payment." *Woodhull Corp. v. Saibaba Corp.*, 234 Ga. App. 707, 711 (1998). "A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must **promptly**, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." O.C.G.A. § 13-4-60 (emphasis added). "Georgia courts have found a delay of six months to be unreasonable."

12

*Payne v. DOCO Fed. Credit Union*, No. 1:15-CV-152 (LJA), 2016 WL 9753973, at *7 (M.D. Ga. July 1, 2016) (citation omitted). Here, the vague fraud alleged in the Motion is unrelated to a misrepresentation in the procurement of the contract underlying the Full Circle Loan. Even if, for purposes of argument, the "fraud" was related to the entry of such contract, the Movants failed to return the value received promptly.

39.    As noted above, the Receiver, in accordance with this Court's Order dated December 3, 2025, intends to submit detailed procedures to the Court to resolve borrower claims.  The Receiver requests that the instant Motion be denied pending approval of such procedures by this Court.

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court deny the Motion and award the Receiver such other and further relief as this Court deems just and proper.

Respectfully submitted this 9th day of December, 2025.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com; Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
*Counsel for Receiver*

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE AND <u>CERTIFICATE OF SERVICE</u>

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D), and the attachments are consistent with Local Rule 5.1(B).

Counsel further certifies certify that I have this day electronically filed the foregoing *Memorandum in Opposition by Receiver to Motion for Leave to Initiate Action Against Receivership Estate* with the Clerk of Court via the CM/ECF system, and further certify that a true and correct copy of the same has been served by U.S. Mail, properly addressed and postage pre-paid, upon the following:

GUILNIETTE HENDERSON LLC
c/o Timothy J. Guilmette, Esq.
1355 Peachtree Street
Suite 1125
Atlanta, GA 30309        Sent electronically to tim@guilmettehenderson.com

This 9th  day of December, 2025.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com
Phone: (404) 926-0053
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
*Counsel for Receiver*

**EXHIBIT A**

**PROMISSORY NOTE**

## PROMISSORY NOTE

**$2,750,000.00**                                                          **February 10, 2023**

     **Full Circle, LLC, a Georgia limited liability company** ("**Borrower**") whose address is 2322 George L. Pike Pkwy., Monroe, GA 30655, and **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (hereinafter, together with any subsequent holder hereof, sometimes called "**Lender**" or "**Holder**"), whose address is 14 Greenville Street, Newnan, GA 30263, agree as follows:

     A.     Borrower has requested that Lender make a loan in the original principal amount of **Two Million Seven Hundred Fifty Thousand and 00/100 Dollars ($2,750,000.00)** (the "**Loan**").

     B.     Lender has agreed and hereby agrees to make the Loan to Borrower upon the terms and conditions contained herein. The Loan proceeds shall be disbursed from time to time on terms and conditions as established by Lender as to timing, amount and other conditions of disbursements in its sole discretion.

     **THEREFORE, FOR VALUE RECEIVED,** Borrower hereby promises to pay to the order of Lender or Holder, the principal sum of **Two Million Seven Hundred Fifty Thousand and 00/100 Dollars ($2,750,000.00)**, together with interest from the date hereof until paid in full, on the unpaid principal balance from time to time outstanding at the rate hereinafter set out, payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. Said principal and interest shall accrue and be payable as follows:

     1.     **Interest**.     Simple Interest shall accrue at the rate of eighteen percent (18%) per annum. Simple Interest shall be computed by multiplying the principal amount by the per annum rate set forth above.

     2.     **Payments**.

     a.     Monthly Payments.  Borrower shall pay at closing partial interest for the month of February in the amount of **$24,750.00**. Thereafter, Borrower shall make monthly payments of interest only on the outstanding principal balance in the amount of **$41,250.00**, commencing on **April 1, 2023**, and continuing thereafter until **February 9, 2024** (the "**Maturity Date**") at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges due hereunder shall be due and payable for all purposes in full in a single **BALLOON PAYMENT**. A six month extension option would be available with an additional 2.5% fee. **Lender has authority at its discretion to extend the maturity date if deemed in the best interest of the borrower and the project**. All such payments shall be made at the office of Lender by federal wire transfer or electronic funds transfer, or such other place and to such other person as the Lender or any subsequent holder hereof may from time to time designate in writing.

     b.     Minimum Interest. Borrower may prepay this Note at any time, provided however, that Borrower agrees to pay a minimum of six month's interest, as calculated above, plus outstanding principal and any other unpaid charges hereunder, if prepaid prior to the seventh month. During and after the seventh month, prepayment shall require payment of outstanding principal plus accrued interest and any other unpaid charges due hereunder.

**3.**    **Late Charge/Post Default Interest**.    Borrower further agrees to pay a "late charge" of five percent (5%) of any amount due hereunder (but not in excess of the maximum amount allowed by any applicable law, rule or regulation) if paid more than three (3) days after the due date thereof, to cover the extra expense involved in handling delinquent payments.  These provisions shall not be deemed to excuse a late payment or be deemed a waiver of any other rights Lender may have including the right to declare the entire unpaid principal and interest immediately due and payable.  Notwithstanding any provision to the contrary herein, from and after the maturity of this Note (whether by acceleration or otherwise) or an Event of Default, interest on principal (but not on unpaid interest) shall be computed at the rate of 24.0% (the "**Default Rate**").

**4.**    **Loan Documents**.  Borrower represents, warrants, covenants and agrees that this Note is and shall at all times be secured and supported by (i) First Lien on the Property at George Pike Sr. Parkway and Bethany Church Road (ii) Guaranty Agreements of David Pike, David Pike II, and Christie Pike Nelson (iii)  Security Agreement from Borrower conveying security interest in all furniture, fixtures, equipment, inventory, accounts receivable, and other assets as described therein and (iv) other agreements, documents  and instruments executed by or on behalf of the Borrower in connection herewith.

**5.**    **Events of Default**.  The principal sum evidenced by this Note, together with all accrued but unpaid interest thereon and all other agreed charges owing by Borrower hereunder, shall become immediately due and payable at the option of Lender upon the occurrence of any "Event of Default", as used and defined in any  Loan Document, each of which shall constitute an "Event of Default" hereunder, ***provided however***, that Borrower shall have five (5) days following notice of a monetary default in which to cure, and thirty (30) days following notice of a non-monetary in which to cure.  Not in limitation of the foregoing but in addition thereto, the following shall constitute events of default under this Note:    failure of Borrower (Borrower and each other person primarily or secondarily liable to Lender for the indebtedness evidenced by this Note hereinafter collectively referred to as "Obligors") to make any payment of principal or interest or any other amount under this Note when due or failure of Borrower to perform or observe any promise or agreement contained in this Note; the death of (if an individual), death of a general partner (if a partnership), or dissolution of (if a partnership or corporation), insolvency of, general assignment for the benefit of creditors by, any Obligor; the commencement of a voluntary proceeding under any law relating to bankruptcy, insolvency, reorganization, arrangement, composition or readjustment of debt, dissolution, liquidation or debtor relief law or statute of any jurisdiction, whether now or hereafter in effect, including without limitation the filing of a petition under any chapter of the federal bankruptcy code by or against, or acquiescence in writing to same by, or failure to timely and diligently controvert any such involuntary proceeding by, any Obligor; the filing of a proceeding for the appointment of a receiver, custodian, trustee, liquidator or similar official for Obligor or Obligor's property or consenting to the appointment of same; the failure of an involuntary petition for relief under the Federal Bankruptcy Code, as amended, to be dismissed within thirty (30) days after the commencement thereof or in which an order for relief is entered; the making by any Obligor of a conveyance fraudulent as to creditors under any state or federal law; entry of any judgment against, or issuance of a levy or writ of execution, attachment or garnishment against any of the property of, any Obligor; the inability of any Obligor to pay debts as they become due or admit in writing to such effect; the transfer by any Obligor of all or substantially all of his, her or its assets outside the ordinary course of business, or the waste, loss or dissipation of a substantial part of such person's assets; if any Obligor is a partnership, the withdrawal or removal of any general partner of such partnership; if any Obligor is a corporation, the transfer, directly or indirectly (including through any voting trust, irrevocable proxy, or

2

the like), of the ownership or power to vote more than thirty percent (30%) of the voting stock of such corporation; the suspension of the operation of any Obligor's present business; the occurrence of any default or event authorizing acceleration as provided under any promissory note or other evidence of debt, loan agreement, security agreement, pledge agreement, assignment, mortgage, deed to secure debt, deed of trust, lease agreement or other agreement or contract between any Obligor and Lender or any third party; any statement, representation or warranty of any Obligor made orally or in writing in any document evidencing, securing or otherwise relating to the indebtedness evidenced by this Note or in any other writing or statement at any time furnished or made by any Obligor to Lender is false or misleading in a material respect as of the date furnished or made; revocation or termination of any guaranty executed in favor of Lender guaranteeing the indebtedness evidenced by this Note; the financial responsibility of any Obligor becomes impaired at any time in the sole opinion of Lender; or, the determination by Lender that it otherwise deems itself to be insecure.

6.      **Remedies.**  If this Note is payable on demand, all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall be due and payable in full upon demand by Lender, whether or not any event of default has occurred and whether or not Lender reasonably deems itself to be insecure.  If any event of default under this Note should occur, all unpaid amounts of any or all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall, at the option of Lender and without notice or demand, become immediately due and payable and Lender shall have and be entitled to exercise, from time to time, all the rights and remedies available to it as provided elsewhere in this Note, in any other agreement or contract between Borrower and Lender and under applicable law.  All of Lender's rights and remedies shall be cumulative, and any failure of Lender to exercise any such right or remedy shall not be construed as a waiver of the right to exercise the same or any other right or remedy at any time and from time to time thereafter.

7.      **Notices**.  Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Note shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or three (3) days after being deposited in the United States mail, postage prepaid, certified with return receipt requested, if mailed to the addresses set forth  in the beginning of this Note or at such other address within the continental United States for either party as such party may designate by notice to the other given in accordance with the provisions of this paragraph; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof.  Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt.  Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice has been received shall also constitute receipt.

8.      **Acceleration**.  Time is of the essence in the performance of all obligations under this Note. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at its option and as often as it may desire, may declare all liabilities, obligations and indebtedness due Lender, including without limitation this Note to be immediately due and payable without demand, notice or presentment, and may exercise any other remedy available to Lender hereunder, at law or in equity.

9.      **Costs of Collection**.     Borrower agrees that if, and as often as, this Note is given to an attorney for collection or to defend or enforce any of Lender's arising from or relating to this Note, Borrower will pay to Lender its reasonable attorney's fees actually incurred, together with all court costs and other expenses paid or incurred by Lender; provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

3

10.    **Maximum Legal Rate**. Borrower and Lender agree that no payment of interest or other consideration made or agreed to be made by Borrower to Lender pursuant to this Note shall, at any time, be in excess of the maximum rate of interest permissible by law. In the event such payments of interest or other consideration provided for in this Note shall result in an effective rate of interest which, for any period of time, is in excess of the limit of the usury or any other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied to principal immediately upon receipt of such monies by Lender hereof with the same force and effect as though the payer had specifically designated such and Lender had agreed to accept such extra payments as a principal payment, without premium. This provision shall control every other obligation of the Borrower and Lender under this Note.

11.    **Miscellaneous.**

(a)    With respect to any and all obligations, to the extent permitted by applicable laws Borrower waives the following: (1) all rights or exemption of property from levy or sale under execution or other process for the collection of debts under the constitution or laws of the United States or any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold Borrower on any obligation; (3) all statutory provisions and requirements for the benefit of the Borrower now or hereafter in force (to the extent that same may be waived); (4) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Lender and Borrower shall be adverse parties. Borrower agrees to pay all filing fees and taxes and all costs of collecting or securing or attempting to collect or secure any obligations, including but not limited to reasonable attorney's fees.

(b)    The obligations and liabilities of Borrower under this Note are continuing, absolute, and unconditional, and shall remain in full force and effect until all amounts due hereunder have been paid in full and all obligations of Borrower have been discharged without regard to and without being released, discharged, impaired, modified or in any way affected by, the occurrence from time to time of any event, circumstance or condition, including without limitation any one or more of the following, whether or not with notice to or consent of Borrower: (1) any assignment or transfer this Note or of any interest hereunder; (2) any consent, extension, indulgence or other action or inaction (including without limitation any lack of diligence or failure to mitigate damages) under, or in respect of, this Note or other agreement, or any exercise or non-exercise of any right, remedy, power or privilege under, or in respect of, this Note or agreement; or (5) the failure, omission, delay or lack of diligence on the part of the Holder or any assignee or successor thereto, to enforce, assert or exercise any right, power, privilege or remedy conferred upon the Lender by this Note or other agreement.

(c)    The Lender, may, but shall not be required to, apply to the payment of the debt evidenced hereby, on or after the maturity of said debt, whether by acceleration or otherwise, any money or credit held by the Lender on deposit, in trust or otherwise, for the account of the Borrower or any of them.

(d)    Lender shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid, unless in writing and signed by the Holder. All rights and remedies of the Lender under the terms of this Note and under any statutes or rules of law shall be cumulative and may be exercised successively or concurrently. Borrower agrees that the Lender shall be entitled to all the rights of a holder in due course of negotiable instruments. Any provision of this Note which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof.

4

(e)     The liabilities and obligations of each person or entity who or which is a Borrower are joint and several.

(f)     Borrower warrants and agrees that the proceeds of this Note will be used for business purposes (other than agricultural purposes) only, and not for personal, family or household purposes.

(g)     Borrower and Lender intend and believe that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of Borrower and Lender that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender hereof under the remainder of this Note shall continue in full force and effect.

**12.     Governing Law**. This Note shall be governed by and construed in accordance with the laws of the State of Georgia.

**13.     Waiver of Jury Trial. TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION WITH THIS NOTE OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF EITHER PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. BORROWER AGREES THAT LENDER MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT OF BORROWER TO IRREVOCABLY WAIVE BORROWER'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN BORROWER AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.**

**14.     Venue**. Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Note or any agreements or transactions contemplated hereby may be brought in the courts of the State of Georgia or of the United States of America for the Northern District of Georgia and hereby expressly submits to the personal jurisdiction and venue of such courts for the purposes thereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum. Borrower hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by

5

registered or certified mail, postage prepaid, to the address of Borrower last provided to Holder in connection with the Loan, such service to become effective ten (10) days after such mailing.

      **IN WITNESS WHEREOF,** Borrower has caused this Note to be executed, sealed, and delivered as of the date first set forth above.

                      **BORROWER**

                      **Full Circle, LLC, a Georgia limited liability company**

                      By:_____(Seal)
                         **David Pike, Managing Member**

                      By:_____(Seal)
                       **David Pike, II, Managing Member**

                      By:_____(Seal)
                      **Christie Pike Nelson, Managing Member**

**FIRST LIBERTY CAPITAL PARTNERS, LLC**
PO Box 2567
Newnan, GA 30264

## LOAN CLOSING STATEMENT

**DATE OF TRANSACTION:  February 10, 2023**

**BORROWER: Full Circle, LLC a Georgia limited liability company**

**LENDER:     FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company**

## SCHEDULE OF LOAN ADVANCES

| | |
|---|---|
| **TOTAL LOAN AMOUNT** | **$2,750,000.00** |

### DISBURSEMENTS

| | |
|---|---|
| Loan Fee to First Liberty Capital Partners, LLC | $137,500.00 |
| Six Month Interest Reserve to First Liberty Capital Partners, LLC | $247,500.00 |
| Partial Month's Interest (February) | $24,750.00 |
| Legal and Recording Fees | $8,500.00 |
| Document Fee | $2,750.00 |
| Payoff of Previous Note (to Briskin, Cross, & Sanford, LLC) | $1,034,730.00 |
| **DISBURSEMENTS** | **$1,455,730.00** |
| **BALANCE AVAILABLE BORROWER** | **$1,294,270.00** |
| **TOTAL DISBURSEMENTS** | **$2,750,000.00** |

**"BORROWER"**

Full Circle, LLC ,a Georgia limited liability company

By: _____ (Seal)

By: _____

By: _____

"LENDER"

FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company

By: _____ (Seal)
    Brant Frost IV, Manager

## AMENDMENT TO PROMISSORY NOTE

### February 5, 2024

ORIGINAL NOTE DATED: February 10, 2023

BORROWER: Full Circle, LLC, a Georgia limited liability company
2322 George L. Pike Parkway
Monroe, GA 30655

LENDER OR HOLDER:  First Liberty Capital Partners, LLC, a Georgia limited liability company
14 Greenville St.
Newnan, GA 30263

ORIGINAL AMOUNT OF LOAN:  $2,750,000.00

TERMS:  Remain the same as the original note, except that a 2.5% exit fee will be added at closing.

NEW MATURITY DATE: August 9, 2024

Borrower:

Full Circle, LLC, a Georgia limited liability company

By: _____
David Pike, Sr., Managing Member

Lender:

First Liberty Capital Partners, LLC, a Georgia limited liability company

By: _____
Brant Frost IV/Manager



## AMENDMENT TO PROMISSORY NOTE

### May 6, 2025

**ORIGINAL NOTE DATED:** February 10, 2023

**BORROWER:** Full Circle, LLC, a Georgia limited liability company
2322 George L. Pike Parkway
Monroe, GA 30655

**LENDER OR HOLDER:** First Liberty Capital Partners, LLC, a Georgia limited liability company
14 Greenville St.
Newnan, GA 30263

**ORIGINAL AMOUNT OF LOAN:** $2,750,000.00

**TERMS:** Remain the same as the original note, except that a 2.5% exit fee will be added at closing, and a 1% extension fee to be paid with the signing of this extension.

**NEW MATURITY DATE:** November 6, 2025

Borrower:

Full Circle, LLC, a Georgia limited liability company

By: _____
David Pike, Sr., Managing Member

Lender:

First Liberty Capital Partners, LLC, a Georgia limited liability company

By: _____
Brant Frost IV/Manager

**EXHIBIT B**

**BALANCE DUE CALCULATION**

First Liberty Capital Partners LLC

Loan to Full Circle, LLC

| Date | Principal Balance | Loan Pay Down | Interest Owed | Interest Paid | Interest Reserve | Default Interest | Late Charge | Extension Fee | Exit Fee | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| 2/10/2023 | $1,470,378.95 | | | | | | | | | (1) |
| 4/1/2023 | $1,470,378.95 | $     - | $  22,055.68 | $  2,694.32 | $  19,361.36 | $     - | $     - | $     - | $     - | (2) |
| 5/1/2023 | $1,470,378.95 | - | 22,055.68 | - | 22,055.68 | - | - | - | - | |
| 6/1/2023 | $1,470,378.95 | - | 22,055.68 | - | 22,055.68 | - | - | - | - | |
| 7/1/2023 | $1,470,378.95 | - | 22,055.68 | - | 22,055.68 | - | - | - | - | |
| 8/1/2023 | $1,470,378.95 | - | 22,055.68 | - | 22,055.68 | - | - | - | - | |
| 9/1/2023 | $1,470,378.95 | - | 22,055.68 | - | 22,055.68 | - | - | - | - | |
| 10/1/2023 | $1,470,378.95 | - | 22,055.68 | - | 22,055.68 | - | - | - | - | |
| 11/1/2023 | $1,470,378.95 | - | 22,055.68 | 7,500.00 | 14,555.68 | - | - | - | - | |
| 12/1/2023 | $1,470,378.95 | - | 22,055.68 | 7,500.00 | 14,555.68 | - | - | - | - | |
| 1/1/2024 | $1,470,378.95 | - | 22,055.68 | 7,500.00 | 14,555.68 | - | - | - | - | |
| 2/1/2024 | $1,470,378.95 | - | 22,055.68 | 7,500.00 | 14,555.68 | - | - | - | - | |
| 3/1/2024 | $1,470,378.95 | - | 22,055.68 | 7,500.00 | 14,555.68 | - | - | - | - | (3) |
| 4/1/2024 | $1,470,378.95 | - | 22,055.68 | 7,500.00 | 14,555.68 | - | - | - | - | (3) |
| 5/1/2024 | $1,470,378.95 | - | 22,055.68 | 7,500.00 | 8,470.48 | - | 304.26 | - | - | (3) |
| 6/1/2024 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 7/1/2024 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 8/1/2024 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 9/1/2024 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 10/1/2024 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 11/1/2024 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 12/1/2024 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 1/1/2025 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 2/1/2025 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 3/1/2025 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 4/1/2025 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 5/1/2025 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 5/6/2025 | $1,470,378.95 | - | - | - | - | - | - | 14,703.79 | - | (4) |
| 6/1/2025 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 7/1/2025 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 8/1/2025 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 9/1/2025 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 10/1/2025 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 11/1/2025 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 12/1/2025 | $1,470,378.95 | - | 22,055.68 | - | - | 7,351.89 | 1,102.78 | - | - | |
| 12/4/2025 | $1,470,378.95 | - | 2,845.89 | - | - | - | - | - | 36,759.47 | (5) |
| | | $     - | $ 730,683.33 | $ 55,194.32 | $ 247,500.00 | $ 139,685.91 | $ 21,257.16 | $ 14,703.79 | $ 36,759.47 | |

| Loan Payoff as of 12/04/2025 | | Applicable Interest Rates | | |
|---|---|---|---|---|
| Principal | $ 1,470,378.95 | Interest Rate | 18.0% | |
| Net Interest Owed | 427,989.01 | Default Interest | 6.0% | (6) |
| Default Interest | 139,685.91 | Late Fee Rate | 5.0% | |
| Late Charge | 21,257.16 | Extension fee Rate | 1.0% | |
| Extension Fee | 14,703.79 | Exit Fee Rate | 2.5% | |
| Exit Fee | 36,759.47 | | | |
| **Payoff** | **$ 2,110,774.29** | | | |

**Notes:**

(1) Principal balance calculated as follows:

|  |  |
|---|---|
| Payoff of Previous Note | $ 1,034,730.00 |
| 4/7/23 Draw | 78,630.00 |
| Six Month Interest Reserve | 247,500.00 |
| Partial Month's Interest (February 23) | 24,750.00 |
| Loan Fee (5%) (Adjusted) | 73,518.95 |
| Legal and Recording Fees | 8,500.00 |
| Document Fee | 2,750.00 |
|  | $ 1,470,378.95 |

(2) Interest Paid on April 1, 2023 = Partial Month Interest (February 2023) of $24,750 credited at loan closing less recalculated monthly interest of $22,055.68

(3) Interest payment of $22,500 received on or about May 28, 2023 was applied to March, April and May 2023 interest payments.

(4) Unpaid 1% extension fee per terms of Amendment to Promissory Note dated May 6, 2025.

(5) Partial month interest to date specified.

(6) Default interest per Promissory Note is 24% or an additional 6% added to the stated interest rate.