# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br>v.<br><br>EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC,<br><br>    Defendants, and<br><br>FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC,<br><br>    Relief Defendants. | Civil Action File No.<br><br>1:25-cv-3826-MLB |

## SUPPLEMENTARY REVISED REQUEST FOR RELIEF IN SUPPORT OF MOTION TO ESTABLISH SUMMARY PROCEEDINGS TO DETERMINE OBLIGATIONS

COME NOW Movants Riverdawg, LLC ("**Riverdawg**"), No Free, LLC ("**No Free**"), and Holt Knob Holdings, LLC ("**Holt Knob**" and collectively with Riverdawg and No Free, the "**Movants**") and file this *Supplementary Revised Request for Relief in Support of Motion to Establish Summary Proceedings to Determine Obligations* (the "**Supplement**"). Movants file this Supplement to

1

request, in general, that the Court establish certain procedures for the resolution of Movants' claims. The more detailed request for relief follows.

## Introduction and Update

In their prior pleadings, Movants disclosed to the Court, *inter alia*, that: (a) the Receiver was making it difficult for Movants to refinance the obligations asserted by the Receiver because the Receiver is asserting that all obligations are cross-collateralized, (b) it was difficult for the Movants to obtain refinancing of all the asserted obligations at once, and (c) that the cross-collateralization provisions were invalid under applicable Georgia law. Movants have continued their efforts to obtain a business resolution of these financial disputes. As a result, Movants have obtained a commitment for refinance funding for all of the obligations asserted by the Receiver.

Refinance of the entirety of the asserted obligations will moot the legal dispute over cross-collateralization. It will also moot the dispute over the North Carolina Deed of Trust. This is a good result for both the Receiver and Movants, but business disputes still remain between the Receiver and Movants. This pleading seeks to establish procedures for resolution of such issues.

### *Relief Requested in this Supplementary Revised Request for Relief*

In this Supplementary Revised Request for Relief, Movants seek an order instituting the following terms and provisions: In short, Movants seek to deposit into

escrow of this Court funds designated for payment of all the loan obligations asserted by the Receiver, and the Receiver should be required to cancel security deeds and other liens held relating to the Loans (defined below). This result is akin to a "bonding off" of the First Liberty liens on Movants' properties. Movants will pay cash to bond off the liens until resolution of the amount due.

## Factual Background

I. <u>The Receivership Action</u>

1. On July 10, 2025, the Securities and Exchange Commission ("**SEC**") filed a Complaint against First Liberty Capital Partners LLC ("**First Liberty**") and other parties, thereby initiating the above-styled action (the "**Receivership Action**").

2. On July 11, 2025, this Court entered the *Order Appointing Receiver* (Doc. No. 6) (the "**Receivership Order**") *inter alia*: appointing S. Gregory Hays as the Receiver for the estate of First Liberty Building & Loan, LLC, First Liberty Capital Partners LLC, First National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC (the "**Receivership Entities**").

3. As a result of the Receivership Order, the Receiver stands in the shoes of First Liberty and the other Receivership Entities.

4. The SEC's allegations in this Receivership Action state that Frost and First Liberty B&L made numerous representations to investors. Likewise, Frost and

First Liberty made misrepresentations to Movants and have caused harm and damage to Movants.

5. On October 16, 2025, Movants filed a *Motion for Leave of Court to Initiate Action Against Receivership Estate* (Doc. No. 29) and a *Motion for Expedited Hearing on Motion for Leave of Court to Initiate Action Against Receivership Estate* (Doc. No. 30).

6. On November 13, 2025, Movants filed an *Amended Motion to Establish Summary Proceedings to Determine Invalidity of Cross-Collateralization Provisions, Establish Procedure to Obtain Payoff Commitments, and Stay Receiver's Effort to Collect on Claims* (Doc. No. 36).

7. On November 28, 2025, Movants filed a *Motion for Expedited Hearing on Summary Proceeding (the Motion to Determine Invalidity of Cross-Collateralization Provisions, Establish Procedure to Obtain Payoff Commitments, and Stay Receiver's Effort to Collect on Claims)* (Doc. No. 47).

II. First Liberty's Loans to Movants

8. Movants entered into transactions with Receivership Entities which were styled as loans. Movants do not concede that the transactions were actually bona-fide business loans because the Receivership Entities actually were not operating a legitimate lending business. As alleged by the SEC, Frost and the

Receivership Entities constituted a ponzi scheme.[1] Because Frost and the Receivership Entities did not take money from others legitimately (i.e., investors), the Receivership Entities could not make legitimate loan to Movants.[2] Movants' loan transactions with the Receivership Entities are summarized in Movants' prior pleadings. Such transactions are summarized, for the convenience of the Court, in **Exhibit "A"** to this Supplement.

9. The First Note, Second Note, Third Note, and Fourth Note referred to in Exhibit "A" are collectively referred to herein as the "**Notes**"). (The First Loan, Second Loan, Third Loan, and Fourth Loan are collectively referred to herein as the "**Loans**".

III. <u>Movants' Payments to the Receivership Entities</u>

10. As stated in prior pleadings, Movants fulfilled all payment obligations due by them under the terms of the Notes until even after the Public Notice of the closure of the business of the Receivership Entities.

---

[1] Movants operated in good faith with respect to all their dealings with Frost and the Receivership Entities. Movants had no knowledge of the nefarious activities of Frost and the Receivership Entities.

[2] To the extent that the Loans were actually bona-fide business loans, Movants constitute innocent bona-fide good faither borrowers. Movants did not know that Frost and the Receivership Entities were operating a Ponzi scheme.

IV.     Movants' Dealings with the Receiver

11.     Since learning of the existence of the Receivership, Movants have attempted to obtain a working relationship with the Receiver. In July 2025, following the entry of the Receivership Order, Movants requested the Receiver to provide payoff information for each of the Loans. The Receiver continuously promised to provide such payoff information over a subsequent period of approximately six weeks, but the Receiver never delivered. To be clear, the Receiver promised the Movants a statement of the debt (pay-off) on six occasions but never delivered on these promises.

12.     Holt Knob specifically requested a payoff amount needed in order to obtain a release of the Deed of Trust (the "**Lot Release**") recorded in North Carolina. The Receiver promised and agreed to provide a Lot Release. Holt Knob, together with its prior attorney, conveyed to the Receiver the urgency of the need for the Lot Release. This urgency is based on the fact that construction has been ongoing on the North Carolina parcel. Holt Knob advised the Receiver that the Lot Release was required in order to obtain a construction loan. Despite this knowledge, and despite the assurances of the Receiver and his counsel to Movants and Movants' prior counsel, the Receiver has never provided a Lot Release for the North Carolina Deed of Trust.

13. Instead, the Receiver issued a "draft" demand letter on or about September 10, 2025 (the "**Receiver Draft Notice of Intent**"). The Receiver Draft Notice of Intent stated that all of the Loans were in default. Most importantly, the Receiver Draft Notice of Intent also stated that all of the Loans were subject to "cross-collateralization" and "cross default provisions." In other words, the Receiver attempted to hold up on the lot release of the North Carolina Deed of Trust based on all the other Loans. Moreover, the Receiver claimed interest accrual on amounts that included interest accrual on interest reserves that did not exist. Movants contest the amount that was purportedly due on these Loans.

**The Proposed Stipulation**

On or about December 1, 2025, Movants advised the Receiver that Movants had obtained a loan commitment for financing to borrow money to satisfy the entirety of the Receiver's claims. Movants proposed that the funds from the closing on the Movant's loan from a third-party lender be held in escrow until the amount of any debt due is determined. The Receiver, through counsel, agreed to the concept. Movants' counsel therefore prepared a proposed stipulation. On December 3, 2025, the Movants delivered a Stipulation to the Receiver. A true and correct copy of the Stipulation is attached hereto as **Exhibit "B"**.

Thereafter, on December 10, 2026, the Receiver (through counsel) advised Movants that Receiver would not sign off on the Stipulation (and previously-agreed

escrow provision). Therefore, Movants request that the Court order the imposition of the terms. Without limitation, the terms are fair. The terms are equitable.

**<u>Movants' Proposed Terms for Resolution of the Claims</u>.**

Movants request that the Court order the following terms to apply to resolution of claims between the Receiver and Movants (the "**Proposed Terms**"):

1. <u>Deposit to Escrow</u>. The Movants shall, in conjunction with the closing of any refinance transaction, deposit the Release Amount (as defined below) into the registry of the Court or other interest-bearing escrow account.

2. <u>Release of Liens</u>. The Receiver agrees that at the closing of the Movants' refinance, the Receiver shall: (a) cancel the Security Deeds described above and any related liens on the Movants' properties, or (b) at the option of the Receiver, deliver such documents evidencing such cancellations to any attorney closing any such refinance.

3. <u>Deference of Prosecution</u>. The Receiver shall be required to defer prosecution of any claims against the Movants through February 15, 2026.

4. <u>Receiver's Reservation of Rights</u>. Except as set forth herein, the Receiver reserves all rights with respect to the Movants.

5. <u>Movants' Reservation of Rights</u>. Except as set forth herein, the Movants reserve all rights and claims related to the Receivership Entities, the Receiver, and the Asserted Obligations including but not limited to the right to prosecute their *Motion for Leave to File Action Against Receivership Estate* (Doc. No. 29 in the Receivership Action).

6. <u>The Release Amount</u>. The Release Amount shall mean $4,407,185.11 (the "**Escrowed Funds**"), which is the total amount of the Receiver's demand.

**Argument**

Movants have diligently worked to obtain financing of all of the Asserted Obligations. Movants have done so based on: (a) the Receiver's request that the Movants obtain funding in the amount of all of the asserted obligations, and (b) Movants' understanding that depositing funds into escrow would be sufficient for the Receiver to cancel any security deeds relating to the Loans while the amount owed is determined later. Movants now have the ability to obtain financing for this purpose.

As the Court is aware, Movants have previously sought to pay the debts back in parts (without cross-collateralization). The Receiver has objected and stated that Movants must obtain financing to satisfy all the claims. Movants request that the Court exercise its equitable powers to enforce the Proposed Terms so that the Movants' claims and an accurate amount owed by Movants may be determined later and in due course. Movants' claims against First Liberty and defenses to the claims made by the Receiver include but are not limited to the claims set forth on **Exhibit "C"** which is attached hereto and adopted herein.

To the extent that the Court finds that any Movant is indebted to First Liberty under the Loans, the Escrowed Fund will be used to satisfy such claims. However, the Escrowed Fund should only be used to pay the amount due after taking Movants' defenses and counterclaim into account. This is because such Movants are entitled

to exercise the equitable right of recoupment to deduct (offset) Movants' claims against any debt such Movant owes. Such claims arise from the same transaction(s) as any debt owed by such Movants to First Liberty under the Loans. Therefore, the doctrine of recoupment applies.

The Court has requested the Receiver to promulgate proposed procedures for the resolution of disputes in this Receivership Action. To date, the Receiver has not filed any document announcing the Receiver's proposal. However, after Movants inquired, the Receiver advised Movants that (a) Movants should be required to pay all the obligations claimed by the Receiver, and (b) then Movants should submit a claim along with investors and others. Of course, the problem with this demand is that it ignores Movants' right of recoupment (i.e., the right to offset). The Receiver first notified Movants of this position on the afternoon of Wednesday, December 11, 2025. And the Receiver only stated this after Movants had been operating under the belief that the Receiver would honor the stipulation that the Movants submitted to the Receiver one week earlier.

Aside from the fact that the Receiver changed his position, the law supports the Movants' rights to recoupment. And Movants should not required to "pay" irrevocably the entirety of a highly-disputed debt. "The district court has broad powers and wide discretion to determine relief in an equity receivership." *Bendall v. Lancer Mgmt. Group, LLC*, 523 Fed. Appx. 554, 557 (11th Cir. 2013) (quoting

*S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992). Federal receiverships serve as a creature of the district court which serves as "a means to reach some legitimate end sought through the exercise of the power of the court of equity." *In re Wiand*, No. 8:10-CV-71-T-17MAP, 2011 U.S. Dist. LEXIS 113212, at *21 (M.D. Fla. Sept. 29, 2011) (citation and quotation marks omitted).

In its role as overseeing receiverships as a court of equity, courts often look to bankruptcy case law, where appropriate, when evaluating such relief. *See Bendall* at 557 ("Given that a primary purpose of both receivership and bankruptcy proceedings is to promote the efficient and orderly administration of estates for the benefit of creditors, we will apply cases from the analogous context of bankruptcy law, where instructive, due to limited case law in the receivership context.") (case citations omitted). In the bankruptcy context, creditors may utilize the twin equitable doctrines of setoff and recoupment. *See Untied States v. Acorn Tech. Fund., L.P.*, No. 03-0070, 2006 U.S. Dist. LEXIS 3507, at *21 (E.D. Penn. Jan. 31, 2006) ("Recoupment is an equitable doctrine of state contract law only") (citation omitted); *see also* 11 U.S.C. § 553 ("Setoff").

The doctrine of recoupment, as applied in bankruptcy cases, "derives from the rule that the trustee takes the bankrupt's property subject to the equites therein" and, unlike setoff, "[r]ecoupment involves the offsetting of competing claims by a debtor and creditor which arise out of a single transaction or contract." *Gunnells v. Aetna*

*Life insurance (In re Gunnells)*, No. A90-10133-SWC, 1991 Bankr. LEXIS 2240, at *5–6 (Bankr. N.D. Ga. April 23, 1991) (citations omitted). Here, the doctrine of recoupment is aptly appropriate to address the Receiver's attempt to apply default interest and other penalties as it relates to these loans.

## Conclusion

For the foregoing reasons, the Movants request that the Court grant the relief requested herein by ordering the implementation of the Proposed Terms and grant such other and further relief as the Court determines just and equitable. Movants also reserve all their rights to seek to file an action against the Receiver as set forth in prior pleadings. Movants also request an emergency hearing per Movants' prior and pending requests for such.

RESPECTFULLY SUBMITTED this 12th day of December, 2025.

**JONES & WALDEN LLC**

*/s/ Leon S. Jones*
Leon S. Jones
Georgia Bar No. 003980
699 Piedmont Avenue NE
Atlanta, Georgia 30308
(404) 564-9300
LJones@joneswalden.com
*Attorney for Movants*

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br>v.<br><br>EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC,<br><br>    Defendants, and<br><br>FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC,<br><br>    Relief Defendants. | Civil Action File No.<br><br>1:25-cv-3826-MLB |

**CERTIFICATE OF SERVICE, FONT AND MARGINS**

I certify that on the date below, I electronically filed the foregoing **Supplementary Revised Request for Relief in Support of Motion to Establish Summary Proceedings to Determine Obligations** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

- **Austin Bruce Alexander**  austin.alexander@thompsonhine.com,kelly.thomas@thompsonhine.com,ECFdocket@thompsonhine.com

13

- **Madison Graham Loomis**  loomism@sec.gov,JeffriesJ@sec.gov, jorjoladzeN@sec.gov,applewhitet@sec.gov
- **Joshua A. Mayes**  jmayes@robbinsfirm.com,jenglish@robbinsfirm.com, bboyd@robbinsfirm.com,randerson@robbinsfirm.com,dbutler@robbinsfirm.com,sbacon@robbinsfirm.com
- **Kristin Wilhelm Murnahan**  murnahank@sec.gov,jorjoladzen@sec.gov, applewhitet@sec.gov
- **Alexandra C. Nelson**  alexandra.nelson@thompsonhine.com,tracey.nero@thompsonhine.com,kelly.thomas@thompsonhine.com,dwayne.lunde@thompsonhine.com,ECFDocket@thompsonhine.com
- **Jane Ashley Ravry**  jaravry@robbinsfirm.com,DButler@robbinsfirm.com, jenglish@robbinsfirm.com,bboyd@robbinsfirm.com,randerson@robbinsfirm.com,sbacon@robbinsfirm.com
- **Henry Francis Sewell, Jr**  hsewell@sewellfirm.com

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

This 12th day of December, 2025.

                                                **JONES & WALDEN LLC**

                                                */s/ Leon S. Jones*
Leon S. Jones
Georgia Bar No. 003980
699 Piedmont Avenue NE
Atlanta, GA 30308
(404) 564-9300
LJones@joneswalden.com
*Attorney for Movants*