## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | Civil Action File No. |
| | : | 1:25-cv-3826-MLB |
| v. | : | |
| | : | |
| EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC, | : | |
| | : | |
| Defendants, and | : | |
| | : | |
| FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC, | : | |
| | : | |
| Relief Defendants. | : | |

## SECOND QUARTERLY REPORT OF RECEIVER

S. Gregory Hays, as Court-Appointed Receiver ("**Receiver**") pursuant to the

*Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment**

**Order**") that was entered in the above-captioned case (the **"Case"** or

"**Receivership**"), by and through counsel, hereby files this *Second Quarterly Report*

*of Receiver* (the "**Repor**t") for the period of October 1, 2025, through December 31,

2025 (the "**Reporting Period**") and respectfully shows as follows:[1]

## I. INTRODUCTION

1.      The Receiver continues to make substantial progress in identifying, securing, and recovering assets for the benefit of the estate arising from the Receivership (the "**Receivership Estate**"). To date, the Receiver has taken possession of $887,917.51 in bank accounts of the Receivership Entities, seized and sought the liquidation of certain Receivership Assets, analyzed, evaluated, and initiated collection efforts with regard to the loans made by the Receivership Entities. At the conclusion of the Reporting Period, the Receivership Estate held $3,587,550.70. This sum includes $2,397,680.61 tendered to the Receivership by 2406 Cancer Care LLC, purportedly in full and final satisfaction of its loan from First Liberty. The Receiver has disputed that this tender constitutes full payment but continues to hold this amount. The circumstances surrounding this tender are explained in more detail below.

2.      During the Reporting Period, the litigation underlying this Receivership was stayed pursuant to Administrative Order 25-01 [Doc. No. 27] entered October

---

[1] The Receiver previously filed an initial status report on July 21, 2025 [Doc. No. 14] and a First Quarterly Report of Receiver on October 30, 2025 [Doc. No. 32] for the period from July 11, 2025, through September 30, 2025 (the "**First Quarterly Report**"). Capitalized, but undefined terms used herein shall have the meaning ascribed to such terms in the First Quarterly Report.

1, 2025, in light of the lapse in appropriations until the entry of Administrative Order 25-03 [Doc. No. 35] that was entered on November 13, 2025. While certain matters were delayed as a result of such stay, the Receiver continued to progress in the administration of the Receivership.

3.      During the Reporting Period, the Receiver and the professionals of the Receiver continued to communicate with parties with knowledge of Receivership Assets.

4.      The First Quarterly Report contains a detailed report regarding the Receiver's activities during the third quarter of 2025 and contains a listing and description of all assets known to the Receiver that is supplemented by this Report. This Report should be read in conjunction with the First Report and is intended to supplement same. The Receiver has attempted to avoid repetition and duplication from the First Quarterly Report herein.

5.       The Receiver continues to search for additional assets and will report on the discovery of additional assets to the Court in subsequent reports. However, the Receiver has not identified or located any additional material assets since the filing of the First Quarterly Report.

6.      The Receiver will continue to investigate the claims that the Receivership Estate may have against third parties, gather relevant information and

documents among records of the Receivership Entities and report efforts and activities in status reports and other court filings until such time as the Court may discharge the Receiver of his duties.

## II. SIGNIFICANT DEVELOPMENTS SINCE THE FILING OF THE FIRST QUARTERLY REPORT.

### A. Continued Progress on Funds Tracing Database.

7.     As noted in the First Report, the Receivership Entities did not properly manage their finances or business operations or maintain in financial records in a readily usable manner. The Receiver continues to organize these records and obtain information from third parties, such as banks, lawyers and public records to understand the operations and transactions of the Receivership Entities with various third parties, insiders and affiliates.

8.     In particular, the Receiver continues to actively reconstruct information from records from financial institutions and various third parties and to import this information into a database (the "**Funds Tracing Database**") that currently has data from 19 bank accounts including approximately 48,000 separate transactions within 29,000 bank transactions. The difference is that multiple ACH transfers and deposits are often grouped together into a single bank transactions. Preparation and finalizing the Funds Tracing Database has been delayed by the slow production of financial transaction documents by several banks and by the sheer volume of information the

Receiver has received. The volume of data received from Truist Bank, for example, is immense.

9.    Due to these issues, the Receiver has requested, and has been granted, an extension until March 7, 2026 to file the Accounting required by the Appointment Order. Based on the status of his review of the financial information, the Receiver anticipates filing that Accounting on March 7 and does not intend to seek any further extensions of this deadline.

### B. Sale of Newnan Office and Vehicles

10.    Immediately upon his appointment as Receiver, the Receiver marshaled control of certain real property located at 14 Greenville St, Newnan, GA 30263 (the "**Newnan Office**") and secured the turnover of ownership and control of certain vehicles. The Receiver sought authorization, pursuant to pleadings at Docket Nos. 23 and 24, to employ an auctioneer (the "**Auctioneer**") to sell such property and such authorization was granted pursuant to an order [Doc. No. 38] dated November 20, 2025.

11.    With respect to the vehicles, the Auctioneer initiated marketing efforts and scheduled the assets to be auctioned. On January 22, 2026, the Auctioneer confirmed that high bids for the vehicles totaled a gross amount of $159,800 with 263 registered bidders. A summary of the vehicles and sale amounts is provided

below:

    a) 2021 Cadillac Escalade: $60,250.00

    b) 2011 Land Rover Range Rover Sport: $23,400.00

    c) 2006 Ashton Martin: $42,150.00

    d) 2011 Land Rover Range Rover Sport: $11,400.00

    e) 2017 Land Rover Range Rover: $22,600.00

12.     The Auctioneer provided the Receiver a full accounting and Seller Settlement as set forth in **Exhibit B** attached hereto. As detailed in the Seller Settlement, the net proceeds from the sale of the vehicles was $138,883.42.

13.     With respect to the Newnan Office, the Auctioneer also conducted a sale of the Newnan Office between January 17, 2026 and January 27, 2026. The auction was very successful, with 106 registered bidders. Ultimately, the high bid for the Newnan Office was $606,000, which was significantly higher than the amount the Receiver anticipated. Out of this purchase price, there is a $24,240 commission and $1,000 advertising reimbursement, leaving $580,760. The Receiver estimates approximately $2,000 in closing expenses, mainly real estate taxes. There is one lien against the Newnan Office in the approximate amount of $160,000 that will have to be released as a condition of closing. The Receiver is currently in negotiations with this lienholder regarding resolution of the lien and is actively

working with the auctioneer and purchaser during the ownership transfer process. Once the property closes, the Receiver will obtain a full settlement from the Auctioneer.

14.    In addition to the Receiver's engagement with the purchaser and Auctioneer, the Receiver is working with the current tenants at the building during the transition of ownership. The Receiver has continued to collect rent and maintain utilities at the property. The property remains secured and the Receiver continues routine inspection of the property.

15.    This sale of the Newnan Building should close in February.

16.    The Receiver will include the final totals recovered by the Receiver in the next quarterly report.

### C. Settlement of Curepoint Claim

17.    The First Quarterly Report noted that the Receiver was contesting a claim held by First Liberty in the Curepoint Bankruptcy Case. Ultimately, the Receiver reached a negotiated resolution of this claim to increase the amount of the allowed claim in the Curepoint Bankruptcy Case by $275,000, subject to approval of the District Court. After the Receiver prepared and filed a motion in the Receivership [Doc. No. 66] for approval of a settlement of the allowed claim as to Curepoint in the Curepoint Bankruptcy Case, such settlement was approved pursuant

to an order entered on December 22, 2025 [Doc. No. 68]. This settlement will increase the Receivership Estate's estimated recovery from the Curepoint Bankruptcy Case by approximately $100,000 and the Liquidating Trustee in the Curepoint Bankruptcy Case filed a report in the Curepoint Bankruptcy Case indicating the Receiver will receive a distribution of $216,216,93.

### D. Intervention in Receivership and Procedures Order

18.     To provide the Receiver with the ability to fulfill the duties of the Receiver without being hindered or obstructed by litigation against property of the Receivership, in addition to freezing the Receivership Property, the District Court entered an injunction against interference with the Receiver (the "**Injunction**") and stay (the "**Stay**") of all civil legal proceedings involving any Receivership Property or the Receivership Entities until further order of the District Court. *See* Appointment Order ¶¶ 32-34. The Injunction protects against action that would "[d]issipate or otherwise diminish the value of any Receivership Property." See Appointment Order ¶ 32(C). Furthermore, the Stay under Section VII of the Appointment Order stays all litigation matters other than the litigation subject to the Receivership and clearly provides that no further actions should be taken against any assets or entities subject to the Appointment Order until further order of the District Court.

19.    Incident to the collection of loans, certain borrowers have asserted that they were damaged in connection with loans they received from the Receivership Entities and sought to assert offsets and claims against the Receivership Estate for such damages. The Receiver believes that these offsets and claims are meritless attempts to avoid the repayment of substantial investor funds advanced to these borrowers and has contested these claims and demanded payment.

20.    However, during the fourth quarter, certain borrowers sought to intervene in the Receivership, including, but not limited to Riverdawg, LLC (“**Riverdawg**”), No Free, LLC (“**No Free**”), and Holt Knob Holdings, LLC (“**Holt Knob**” and collectively with Riverdawg and No Free, the “**Williams Parties**”) incident to a certain Motion for Leave of Court to Initiate Action Against Receivership Estate [Doc. No. 29] (the “**Williams Motion**”) among other pleadings to seek relief [Doc. Nos. 34 and 36] and to otherwise enter this action, Full Circle LLC (“**Full Circle**”), Timeless Acquisitions LLC (“**Timeless Acquisitions**”), David Pike, David Pike II, and Christie Pike (collectively the “**Full Circle Parties**”) incident to a certain Motion for Leave to Initiate Action Against Receivership Estate [Doc. No. 44] (the “**Full Circle Motion**”). These borrowers essentially sought relief from the stay contained in the Appointment Order and sought to assert damage claims and offset rights against their debts to the Receivership Entities.

21.    In addition, Bay Point Capital Partners II, LP ("**Bay Point**"), an investor, sought to intervene pursuant to Bay Point Capital Partners II, LP's Motion to Intervene [Doc. No. 18] (the "**Bay Point Motion**"). Bay Point asserted certain rights to directly collect and administer loans that it contended were funded by its investments. The Receiver and the SEC vigorously contested this motion. After discussions between the parties, Bay Point agreed that the Bay Point Motion would be held in abeyance and a Consent Order [Doc. No. 69] was entered confirming this on January 23, 2026.

22.    In response to the intervention of the Williams Parties and Full Circle, the Receiver prepared and filed a motion [Doc. No. 59] to establish procedures to enter the action to resolve claims arising from loan obligations. The Court held a hearing on the matter on December 15, 2025. At that hearing, the Receiver outlined the terms and conditions that should be imposed upon any borrower seeking to challenge all or part of their loans with First Liberty. Among the terms requested by the Receiver were:

a) The stay contained in the Appointment Order would be lifted only for actions in the District Court and would not permit borrowers to bring claims in other Courts;

b) An expedited discovery process;

c) A sworn statement from each borrower as to what they received from First Liberty and what they paid to First Liberty with supporting documents;

d) A sworn summary of the uses of all funds received from First Liberty with supporting documents;

e) Copies of all loan documents and other supporting documents included in any complaint; and

f) A sworn statement as to the particulars of any claim and the asserted for damages for same ---- a statement that First Liberty was a fraudulent scheme as alleged by the SEC would ***not*** be sufficient.

23.    A proposed form of Order was drafted and circulated to all counsel by the Receiver and then submitted to the Court. The Court entered this Order [Doc. No. 70] on January 27, 2026 which contained these and other terms. The Receiver anticipates that several lawsuits will be filed either by borrowers or by the Receiver seeking to adjudicate loan claims in the first quarter of 2026. Although the Receiver continues to assert that the borrowers are simply seeking to avoid their obligations to repay investor funds, the borrowers do have a right to be heard on their claims and this process should significantly expedite the process of resolving these claims.

III.    STATUS OF CLAIMS PROCESS

24.    **THE RECEIVER PLANS ON ESTABLISHING A CLAIMS PROCESS IN THE FIRST QUARTER OF 2026. ALL INVESTORS WILL BE PROVIDED NOTICE AND AMPLE TIME TO COMPLETE A CLAIM FORM WHICH WILL BE PROVIDED BY THE RECEIVER. INVESTORS SHOULD PRESERVE ALL OF THEIR RECORDS RELATING TO THEIR INVESTMENTS, INCLUDING RECEIPTS, SUBSCRIPTION AGREEMENTS, CHECKS AND PROOF OF ALL AMOUNTS INVESTED. INVESTORS ARE ENCOURAGED TO SUBSCRIBE TO THE RECEIVER WEBSITE TO ENSURE THEY RECEIVE NOTICES.**

25.    The Receiver continues to maintain a website that can be accessed at www.firstlibertyreceivership.com (the "**Website**"). The Website provides free access to all pleadings in the Case and allows interested parties to subscribe to receive recurring notifications of pleadings filed on the docket in the Case. For example, each of the pleadings referred to in this Report can be easily accessed at this website. In order to limit costs and the administrative burden on the Receivership, all parties are encouraged to search the Website first before attempting to contact the Receiver directly.

26.    To the extent that inquiries are not addressed by referencing the Website, the Receiver has established an email and phone number incident to which investors and other parties can communicate with the Receiver: FirstLibertyInquiries@stretto.com and 404-926-0060. The Receiver continues to respond to investor inquiries on a routine basis.

## IV.    STATUS OF LOAN COLLECTION EFFORTS

27.    As noted in the First Report, the primary asset of the Receivership consists of approximately sixty (60) individual, defaulted loans. In some cases, individual borrowers hold several loans in their or affiliate names. The Receiver has not identified any additional loans since the filing of the First Report and has not identified any new loans.

28.    The primary activity of the Receiver over the next several months will continue to be the enforcement and collection of these loans. The Receiver continues to anticipate that the process of collecting these loans will be an expensive and protracted process which will take many months and may require protracted litigation. The Receiver anticipates that many of the borrowers and guarantors will have not sufficient assets to pay back their loans to the Receivership.

29.    All of the loan agreements reviewed to date by the Receiver provide for default interest, the collection of attorney's fees and litigation expenses and the

Receiver will seek to recover those expenses to the fullest extent possible along with default interest. The Receiver cannot predict, at this point, the amounts which may be recovered on these loans.

30.    Persons and entities that borrowed money and still owe money to the Receivership Entities should continue to make required payments on their loans and should expect the Receiver to fully enforce and collect all loans to the fullest extent possible. All payments should be sent directly to the Receiver at Suite 555, 2964 Peachtree Road NW, Atlanta, Georgia 30305. Wire instructions are also available upon request. **The Receiver expects and demands strict compliance by the Borrowers with the terms of their loan agreements.**

31.    The Receiver understands that individual investors who executed Participation Agreements with the Receivership Entities were informed and believed that their investments were to be directed to particular loans. As noted in the First Quarterly Report, the Receiver's investigation continues to indicate that all funds received were pooled and comingled with other investor funds and that loans were made from a common fund.

32.    The Receiver reiterates from the First Quarterly Report that he has focused his early efforts on larger loans that appear to be collectible. There are a number of loans that the Receiver is still evaluating and for which he is collecting

information. Certain loans have received far more attention than other loans for this reason and the Receiver will continue to manage his enforcement activities (and related expenses) based on likelihoods of recovery.

**A. Curepoint LLC (CP 1), Daniel Dooley, Philip Miles, Mark Miles, and Physician Financial Partners, LLC**

33.     Curepoint LLC ("**Curepoint**") entered loans dated: a) November 1, 2019, in the amount of $3,650,000; b) November 22, 2019 in the amount of $900,000; c) May 20, 2021 in the amount of $1,500,000; and d) September 30, 2021 in the amount of $400,000. The security for such loans includes guarantees.

34.     As noted above, the Receiver reached a final settlement with Liquidating Bankruptcy Trustee for Curepoint that has been approved by this Court and the Bankruptcy Court in the Curepoint Bankruptcy Case. However, this settlement will still leave a substantial deficiency which the Receiver will seek to recover from the guarantors of the loans.

**B. 2406 Cancer Care LLC, Erich G. Randolph, and Philip Miles (CP 2)**

35.     Erich G. Randolph is the Manager of 2406 Cancer Care LLC ("**Cancer Care**"), which entered a loan dated December 19, 2022 in the amount of $6,500,000.00 that had an original maturity date of December 18, 2023 and was secured by furniture, fixtures, equipment, inventory, accounts receivable, and other assets and guarantees by Eric Randolph, Aaron Williams, and Philip Miles (the

"**CC1 Loan**"). Records available to the Receiver indicate that Cancer Care also entered into a loans dated December 20, 2023, in the amounts of:

     a) $475,000.00 that matured on December 20, 2024 and is secured by medical equipment and drawings, bonds, for or affecting the existing or proposed construction and equipping of the improvements located or to be located on certain property and guarantees by Eric Randolph and Philip Miles; and

     b) $750,000.00 that matured on December 20, 2024 and is secured by medical equipment and guarantees by Eric Randolph and Philip Miles.

36.    The amount due by Cancer Care includes an obligation involving Moneyline Ventures, LLC dated May 31, 2024 in the original principal amount of $2,000,000.

37.    Prior to the appointment of the Receiver, Cancer Care made significant payments in connection with the loans. Based upon his review of the records relating to this loan, the Receiver determined that the amount owed by Cancer Care as of December 4, 2025, was $4,477,680. Of this amount, approximately $2,000,000 is comprised of exit fees and "bonus" interest. Cancer Care has disputed the exit fee and "bonus" interest and, to settle the loan, tendered a payment to the Receiver on

December 30, 2025, in the amount of $2,397,680.61. The Receiver continues to hold this amount and has credited it against the amount owed, but disputes that it comprises payment in full of this loan. As of the filing of this Report, the parties are exploring a negotiated resolution of this claim and, if no resolution can be reached, the remaining balance due will be litigated.

## C. Urohealth, LLC and Philip Miles

38.     Philip Miles is the Manager of UroHealth, LLC ("**Uro**"), which entered a loan (the "**W. Robbins Loan**") date October 12, 2023, in the amount of $3,500,000 that had a maturity date of October 11, 2024 that is secured by all assets of Uro, furniture, equipment, and accounts receivable. The Promissory Note related thereto has a cross default and collateralization provision.

39.     Uro entered another loan (the "**Dublin Loan**") dated February 8, 2024, in the amount of $3,500,000 that had a maturity date of February 7, 2025, and is secured by all assets of Uro furniture, equipment, accounts receivable, and a guaranty by Philip Miles. The Promissory Note related thereto includes a Cross-Default and Cross-Collateralization provision. The Receiver continues to investigate these loans. Mr. Miles is also a guarantor of the Curepoint loan and Cancer Care loan. Mr. Miles has retained counsel to represent him in this case.

**D. ZeroHolding, LLC, Mark Miles, and Philip Miles**

40.    ZeroHolding, LLC (the "**Zero**") entered a loan dated August 12, 2019, in the amount of $1,000,000 that had an original maturity date of August 12, 2020. Zero is the debtor in Chapter 11 Case No. 22-56502-JWC pending in the United States Bankruptcy Court for the Northern District of Georgia (the "**Zero Bankruptcy Case**"). This Promissory Note related to this loan references guarantees by Mark Miles and Philip Miles. The Receiver continues to investigate this loan as well.

**E. Haven and Lisa Brown**

41.    Lisa Brown is the Manager of Haven Memory Care of Athens, LLC ("**HMCA**"), which entered a loan dated November 16, 2022 in the amount of $600,000.00 that had a maturity date of on May 16, 2024 and was secured by a Snellville facility, the residence of Lisa Brown, an option, and a guaranty by Lisa Brown.

42.    HMCA entered into another loan dated May 23, 2023 in the amount of $1,700,000.00 that had a maturity date of May 22, 2024 and is secured by the Athens and Snellville (released) facilities, the residence of Lisa Brown in Greensboro, GA, an assignment of an option to buy the properties, and a guaranty by Lisa Brown.

43.    Further, Lisa Brown is the sole Member of Haven Real Estate Holdings

of Athens LLC ("**HREHA**"), which entered a loan dated April 23, 2025 in the amount of $2,000,000.00 that has a maturity date of April 22, 2026 and is secured by all assets of borrower, the residence of Lisa Brown, a mortgage against HREHA, and guarantees by Lisa Brown and HMCA. The loan was for the purpose of purchasing 705 Whiteside Road in Athens by paying off an existing secured loan. Paragraph 6 of Promissory Note related to this loan is Cross-Default and Collateralization provision for all loans to Borrower or its affiliates, which is defined as any entity related to "Borrower by common ownership and /or control." The provision is also included as an exhibit to the Security Agreements. Documents do not appear to modify obligations of the related entities and paragraph 7 of the Promissory Note reaffirms obligations due to Lender without providing an amount due or modifying any maturity dates. Paragraph 5 of the Promissory Note provides that "Borrower shall provide Lender with quarterly financials and such information as Lender may request from time to time regarding application of loan proceeds and performance under the Loan documents." Paragraph 8(f) of the Promissory Note represents that the Borrower is sophisticated.

44.    The Receiver has sent notices of default on the loans and prepared a complaint against Lisa Brown as guarantor of the underlying obligations.

45.    Lisa Brown is also the Manager of Haven Winder (as defined below),

which entered the Construction Loan dated January 24, 2024 in the amount of $2,000,000.00 that had a maturity date of January 23, 2025 and was secured by three separate senior care facilities in Athens, Snellville, and Winder. The loan was guaranteed by HMCA, Lisa Brown, and Haven Memory Care of Snellville. The closing statement for the loan allocates funds for construction and does not allocate any proceeds to be used to acquire the Winder Property owned by First Liberty.

46.    The Receiver is in discussions with counsel for Ms. Brown to seek a negotiated resolution of this loan. Ms. Brown, through counsel, has represented to the Receiver that she is in the process of procuring replacement financing for at least the Athens loans and that she has, in fact, received a proposal to refinance the debt from a bank in Athens, Georgia. The Receiver has provided her with time to complete this refinancing. If no resolution is reached by February 5, the Receiver will seek relief through the Procedures Order.

**F. Product Design Innovations LLC-Chisel Fit**

47.    Product Design Innovations LLC entered a loan dated August 23, 2023 in the principal amount of $1,950,000.00 secured by a second lien on an Ocala FL residence owned by Mr. and Ms. Ellis and adjoining commercial property owned by Margaret Brown and a guaranty by Joseph K. Ellis. The Receiver has sent a default notice on these loans. The Receiver did not receive a response and is currently

attempting to determine whether any recovery is possible on this loan.

**G. Dr. Jerry Williams, No Free, LLC and RiverDawg LLC**

48.     Entities owned or controlled by Dr. Williams received a significant amount of proceeds from the comingled pool of funds maintained by the Receivership Entities.

49.     An entity owned and controlled by Jerry Williams, No Free, entered into a loan dated December 28, 2023, in the amount of $250,000.00 ("**Williams Loan 1**") that was funded by the Receivership Entities, guaranteed by Dr. Williams, and secured by a condominium at 285 Centennial Park Drive, Commercial Unit No. 2. Such loan was renewed with the balance rolled into a loan in the amount of $500,000.00 dated June 11, 2024 ("**Williams Loan 2**") that was funded by the Receivership Parties and guaranteed by Dr. Williams. In conjunction with Williams Loan 2, Dr. Williams executed a Modification of Promissory Note that contains a cross-default and cross-collateralization provision for obligations of all entities related to the No Free by common ownership and/or control.

50.     Another entity owned and controlled by Jerry Williams, RiverDawg, entered a loan dated September 18, 2024 ("**Williams Loan 3**") in the amount of $760,000.00 that was funded by the Receivership Entities and guaranteed by Jerry Williams and Urgent Care 247, LLC ("**UC**"), an entity owned and controlled by Dr.

Williams. The Promissory Note executed by Dr. Williams on behalf of RiverDawg incident to Williams Loan 3: a) has a cross-default and cross-collateralization provision for obligations of all entities related to the RiverDawg by common ownership and/or control; and b) indicates that the loan is secured by certain property at 7934 Hiawassee Wilderness Trial in Hiawassee Georgia. Loan 3 is also secured by a Deed to Secure Debt, Assignment of Rents and Security Agreement dated September 17, 2024, for certain property in the County of Towns, Georga and Title Insurance.

51.    RiverDawg entered into another loan dated December 9, 2024 ("**Williams Loan 4**"), in the amount of $355,000.00 that was funded by the Receivership Entities and guaranteed by Jerry Williams and UC. The Promissory Note related to Williams Loan 4: a) indicates that it is secured by Unit 32 and Unit 44 of the Overlook at Baxter Condominiums; and b) has a cross-default and cross-collateralization provision for obligations of all entities related to the RiverDawg by common ownership and/or control.

52.    No Free entered into another loan dated December 19, 2024 ("**Willaims Loan 5**" and collectively with Williams Loan 1, Williams Loan 2, Williams Loan 3, and Williams Loan 4, the "**Williams' Loans**") in the amount of $3,500,000.00 for the purpose of constructing a home in Highlands, North Carolina that was funded by

the Receivership Entities and guaranteed by Jerry Williams and UC. The Promissory related to Williams Loan 5: a) contains a cross-default and cross-collateralization provision for obligations of all entities related to the No Free by common ownership and/or control; and b) indicates that the obligation is secured by security agreements conveying security interests in property located in South Georgia referred to as Arnolds's Point, (the value of which, the Receiver is advised, far exceeds the amount of the Williams Loans) together with a lot in Highlands Falls Country Club in North Carolina. Security for Williams Loan 5 includes a certified Commercial Deed to Secure Debt and Security Agreement dated December 19, 2024, for two parcels known as Arnold's Point, a North Carolina Deed of Trust on property in Bittersweet Hills, Highlands, NC (the "**North Carolina Parcel**" or "**Land**"), and Title Insurance.

53.     The Receiver has issued a payoff and notice of default regarding the foregoing loans. Notwithstanding the extensive efforts by the Receiver to obtain an amicable resolution of these loans, Dr. Williams has declined to satisfy the outstanding obligations. Instead, Dr. Williams, as noted above, filed a *Motion for Leave of Court to Initiate Action Against Receivership Estate* [Doc. No. 29] in which Dr. Williams sought to strip away collateral from the foregoing loans and has challenged the legitimacy of the security deed for the Highlands Property.

54.    The Receiver has tendered notice of a claim to the title insurance company that insured the secured deed and notified the lawyers involved in this transaction to notify their malpractice carriers. The title company has appointed counsel who has appeared in this case.

55.    The Receiver has concluded that the collateral securing the Williams Parties' loans is more than sufficient to pay the amounts due. The Receiver therefore intends to vigorously enforce the Williams loans and with the Procedures Order now entered by the District Court, anticipates that this litigation will commence in early February. Default interest is accruing and legal collection fees will be added to the loans.

## H. Tie and Timber Technologies, LLC

56.    Tie and Timber Technologies, LLC ("**T3**" and also referred to as Precision Timberworks) was formed to engage in the business of manufacturing railroad ties and selling railroad ties and byproducts (including bark and wood chips), through a plant to be established in Mullin, South Carolina. A building was purchased and over $1 million was spent on equipment on a plan that was never operated.

57.    T3 entered a loan dated December 19, 2019 for $300,000.00 that had an extended maturity date of May 17, 2021 and was secured by a mortgage on

property in Marlon County, South Carolina, a Security Agreement on accounts receivable, and other assets, and a Guaranty from Eugene N. Martini. T3 also entered into a loan dated December 23, 2021 for $600,000.00 that had a maturity date of December 22, 2023 and was secured by a Security Agreement on property at 301 S. Cyprus St., Mullins, SC (the "**T3 Plant**") and a Guaranty from Eugene N. Martini.

58.     T3 also entered into a loan dated January 25, 2022 for $4,000,000.00 that had a maturity date of January 24, 2023 and was secured by a Security Agreement for 2 parcels in South Carolina, Guaranty by Eugene N. Martini, and Mortgage Deed to Secure Debt.

59.     T3 entered into a loan dated April 18, 2022 for $3,000,000.00 that had a maturity date of April 17, 2023 and was secured by a Security Agreement for two parcels in SC, Guaranty by Eugene N. Martini, and Mortgage Deed to Secure Debt.

60.     T3 entered into a loan dated August 24, 2022 for $2,500,000.00 that had a maturity date that was modified to August 24, 2022 and was secured by a Guaranty by Eugene N. Martini and possibly other documents.

61.     T3 entered into a loan dated February 15, 2023 for $2,500,000.00 that included a modification of the foregoing obligations and was secured by a February 15, 2023 Mortgage of Real Estate, Security Agreement, and Equity Option Agreement. There is a February 15, 2023 Agreement Regarding Recourse in which

the claims against the guarantor who died in 2002 were waived.

62.    The Receiver has secured and inspected the collateral securing this loan. The Receiver has onsite security personnel that reports to the Receiver's office daily. The Receiver has attempted to procure insurance for the collateral but has been unable to do so.

63.    The manager of T3 has agreed to cooperate with the Receiver in auctioning the T3 collateral and the Receiver anticipates conducting an auction of the T3 collateral in the first quarter of 2026 and has identified an auctioneer to run this process.

## I. David Pike and Full Circle LLC aka Normal Recovery

64.    David Pike is the Managing Member of Full Circle LLC aka Normal Recovery ("**Full Circle**"), entered a loan dated February 10, 2023 in the amount of $2,750,000.00 that originally matured on February 9, 2024 and is secured by real property of Timeless Acquisitions LLC and Full Circle in Walton County, Georgia at the intersection of George Pike Sr. Parkway and Bethany Church Road, all property of Full Circle, and guarantees by David Pike, David Pike II and Christie Pike Nelson.

65.    Full Circle and Mr. Pike, similar to Dr. Williams, also sought to intervene in the Receivership. The Receiver intends to advertise the real estate

securing this loan for foreclosure shortly; however, the Receiver anticipates that Full Circle will contest the foreclosure and that these loans will be litigated pursuant to the Procedures Order.

## J.  FibRETech LLC and Rendell Schmidt

66.     Rendell Schmidt is the Managing Member of President of FibRETech LLC ("**FibRETech**"), which entered a loan dated August 16, 2021, in an amended amount of $165,000.00 that had a maturity date of August 15, 2022 and is secured by a second priority interest on 6635 Canyon Cove, Cumming GA, an interest reserve, and a guaranty by Rendell Schmidt. FibRETech also entered a loan dated July 26, 2022 in the amount of $4,000,000.00 in conjunction with an assignment of loan documents from Mobilization Funding II, LLC that had a maturity date of December 20, 2023 and is secured by an interest in lot 238 in Forsyth County, GA, all property of FibRETech, including accounts receivable, and lot 236 in Forsyth County, GA. The only piece of collateral remaining is a horizontal grinder in North Carolina that cost approximately $365,0000.

67.     The Receiver has retained counsel in North Carolina and is in the process of recovering with plans to sell the horizontal grinder in North Carolina.

## K. Christopher Ridgeway and Stone Capital Group LLC

68.     Christopher Ridgeway is the Chairman of Stone Capital Group LLC

("**Stone**"), which entered a loan dated March 31, 2023 in the amount of $3,750,000.00 that matured on March 30, 2024 and is secured by two personal residences of Christopher Ridgeway in Alys Beach, FL and Matarie LA, and all assets of Stone, and a guaranty of Christopher Ridgeway. Stone also entered a loan dated August 14, 2023 in the amount of $1,000,000.00 that is secured by two personal residences of Christopher Ridgeway in Alys Beach, FL and Matarie LA and medical equipment and the guaranty of Christopher Ridgeway. Stone entered a loan dated November 22, 2023 in the amount of $1,500,000.00 that matured on November 22, 2024 and is secured by two personal residences of Christopher Ridgeway in Alys Beach, FL and Matarie LA, and a guaranty of Christopher Ridgeway. A foreclosure was started on Alys Beach FL home and the matter is now tied up in arbitration.

69.    The Receiver is attempting to determine with prior counsel involved in this matter whether the Procedures Order can be utilized for a more efficient liquidation process here.

## L. Specialty Surgery Center Inc., Harvey Cole, Atlanta Oculoplastic Surgery, Scott Honan

70.    Specialty Surgery Center Inc. ("**Specialty**") entered a loan dated April 4, 2019 in the amount of $2,600,000.00 that was secured by interest in SCH Forsyth, LLC and guarantees by Harvey Cole, Atlanta Oculoplastic Surgery, Scott C. Honan,

individually, Scott C. Honan and John J. Honan as co-trustees of The Scott Honan and Descendants Trust. Specialty also entered a loan dated July 1, 2019 in the amount of $1,500,000.00 that was guaranteed by Harvey Cole and Atlanta Oculoplastic Surgery. Specialty entered a loan dated July 1, 2019 in the amount of $1,050,000.00 that was guaranteed by Harvey Cole, Atlanta Oculoplastic Surgery, Scott Honan.

71.    Harvey Cole has sought bankruptcy protection and the Receiver is currently analyzing his enforcement options with respect to this loan and is weighing the cost of further enforcement actions against the availability of recoverable assets.

**M. Honan Preferred Equity and Scott C. Honan**

72.    Scott C. Honan is the manager of Honan Preferred Equity ("**HPE**"), which entered a loan dated July 1, 2019 in the amount of $1,750,000.00 secured by certain limited liability company member interests and a guaranty by Scott C. Honan. HPE also entered into a loan dated September 24, 2019 in the amount of $600,000 secured by certain medical equipment and a guaranty by Scott C. Honan.

73.    L&S Regional One MOB I, LLC – Memphis entered a loan dated October 3, 2022 in the amount of $5,000,000.00 secured by membership interest in 11680 Royal Ridge SH, LLC, a GA LLC, 5009 Manna Petros HPE, LLC, a GA LLC, and 5009 Manna Petros SH, LLC, a GA LLC and a guaranty by Scott C.

Honan.

74.    Glenridge Point SPE LLC, a DE LLC (or Glenridge Lifehope SPE, a DE LLC) entered a loan dated May 31, 2022 in the amount of $3,500,000.00 secured by interests in Glenridge Lifehopc SH, LLC, a GA LLC, SHWMRH Investors, LLC, a GA LLC, and contracts and a guaranty by Scott C. Honan.

75.    The Receiver is currently analyzing his enforcement options with respect to this loan and is weighing the cost of further enforcement actions against the availability of recoverable assets.

## N. 11680 Royal Ridge SH, LLC and Scott C. Honan

76.    11680 Royal Ridge SH, LLC entered loans dated: a) January 22, 2021 in the amount of $4,750,000.00; b) June 29, 2021 in the amount of $4,500,000.00; c) November 22, 2021 in the amount of $2,850,000.00; and d) February 25, 2022 in the amount of $1,500,000.00.

77.    As noted herein, there are a number of loans in which Mr. Honan is involved. The Receiver is currently analyzing his enforcement options with respect to this loan and is weighing the cost of further enforcement actions against the availability of recoverable assets.

78.    The Receiver intends to depose Mr. Honan during the first quarter of 2026 to determine whether there are any assets available to satisfy the several loans

guaranteed by Mr. Honan.

**O. Global Onboard Partners LLC and Keri Adams**

79.    Global Onboard Partners LLC entered a modified loan dated December 21, 2020 in the amount of $350,000.00 secured by real property in Cobb County, Georgia that was guaranteed by Krik R. Adams. Since the last Report, the Receiver has confirmed the existence of a recorded security deed for Xazier Laucirica securing this obligation and will seek enforcement of that loan against this collateral.

**P.  Conquest Commercial Funding, LLC**

80.    Conquest Commercial Funding, LLC ("**Conquest**") entered a loan dated March 31, 2021, that was modified pursuant to a certain Loan Modification Agreement dated April 3, 2023, that set the principal amount of the obligation at $1,600,000. The loan was guaranteed by Jorge Martinez. At present, the Receiver is uncertain about the collectability of this loan.

**Q. Ecofusion LLC, Ernest E. Jones, Jr. Joseph MA Coalla, and Ralph Reed**

81.    Ecofusion LLC ("**Ecofusion**") entered a loan dated July 27, 2023 in the amount of $1,500,000.00 secured by all assets of the borrower and guarantees by Ernest E. Jones, Jr. Joseph Coalla, and possibly others.

82.    The Receiver is currently analyzing his enforcement options with respect to this loan and is weighing the cost of further enforcement actions against

the availability of recoverable assets.

## R. 2304 GP LLC, Brandi Kirkland, and Bret Tomlinson

83.    2304 GP LLC ("**Grand Prairie**") entered a loan dated December 22, 2021 in the amount of $2,000,000.00 secured by a second priority Deed of Trust and separate Assignment of Rents and Leases on 2304 -2307 Oak Lane, Grand Prairie, Texas 75051, a fourth priority Deed to Secure Debt, Assignment of Rents and Security Agreement on 1800 Water Place, Marietta, Cobb County, Georgia and guarantees by Brandi Kirkland and Bret Tomlinson. Grand Prairie also entered into a loan dated January 3, 2022 in the amount of $100,000.00 that was guaranteed by Brandi Kirkland and Bret Tomlinson.

84.    This loan was tied up in pre-Receivership litigation and the Receiver is evaluating recommendations from counsel as to how to proceed and a determination of whether the Procedures Order can be utilized to move this matter forward.

## S.  DI Development LLC, Brent E. Myers and Timothy L. Miller

85.    DI Development LLC entered a loan dated April 20, 2022 in the amount of $375,000.00 secured by real estate in Gainesville GA and Port St. Lucie FL and guarantees by Brent E. Myers and Timothy L. Miller. The loan is in default and the Receiver has tendered a demand for payment to the borrower and the guarantors of its obligation.

**T. Dixie Precast and Franklin Lamar Brown**

86.     Dixie Precast entered a loan dated January 30, 2025 in the amount of $363,000.00 that was guaranteed by Franklin Lamar Brown. The Receiver has determined that this loan was satisfied prior to the appointment of the Receiver.

**U. Emergent Testing Labs, LLC dba Lux Diagnostics, Jonathan Goss, and Kraken Enterprises, LLC**

87.     Jonathan Goss is the President of Emergent Testing Labs, LLC dba Lux Diagnostics, ("**ETL**"), which entered a loan dated March 28, 2024 in the amount of $950,000.00 that had a maturity date of March 27, 2025 and was secured by a purported: a) 1st lien on a residence on Monument Rd. in Jasper, GA; a) 2nd lien position on three additional properties owned by the principal: 2 Corporate Drive, Atlanta; 13 Corporate Drive, Atlanta; and 4153 Roswell Rd., Atlanta; and c) 2nd lien position on a residence at 5265 Peachtree Dunwoody Rd., Sandy Springs, GA. The loan was guaranteed by Jonathan Goss. Paragraph 6 of the Promissory Note of ETL is a Cross-Default and Cross-Collateralization provision for obligations of ETL and any entities related to ETL by common ownership or control. Jonathan Goss is also the Manager of Kraken Enterprises, LLC ("**Kraken**"), which entered a loan dated October 25, 2024 in the amount of $135,000.00 that had a maturity date of April 25, 2025 and was secured by: a) a security interest on the facility at 13 Corporate Square in Atlanta, GA; and b) a guaranty by Jonathan Goss and ETL.

88.    The Receiver sent a default notices on these loans, but has not received a response. The Receiver has further learned that a very large IRS tax lien has been filed against the guarantor of this loan which may impede any collection of the loan. The Receiver is currently analyzing his enforcement options with respect to this loan and is weighing the cost of further enforcement actions against the availability of recoverable assets.

**V. VIMAEC LLC, Arol Wolford and Charles de Andreade**

89.    VIMAEC LLC entered a loan dated August 27, 2020 in the amount of $450,000.00 that was guaranteed by Arol Wolford and Charles de Andreade. The Receiver has confirmed that this loan was satisfied prior to the appointment of the Receiver.

**W.Imperial Independent Media, LLC - Zachary Freeman**

90.    Imperial Independent Media, LLC entered a loan dated June 15, 2023 in the amount of $90,000.00 secured by a second on a personal residence in Franklin, TN and a guaranty by Zachary Freeman. The Receiver has confirmed that this loan was satisfied prior to the appointment of the Receiver.

**X. Undocumented**

91.    The Receiver continues to investigate whether additional loans exist or can be documented. As of the date of this Report, no additional loans have been

identified.

## Y. My Health AI

92.     There are four loans involving My Health AI in the total principal amount of $8,725,000. The Receiver has been informed that these loans were made as part of an investment in this entity by the Receivership Entities. This entity was supposedly developing software for use in the healthcare business. At present, there does not appear to be any collateral securing this loan and this appears to be a total loss, although the Receiver continues to investigate.

## V. Other Assets

### A. Winder Property

93.     The most significant other asset held by the Receiver is certain real property located at 169 W. Athens St., Winder, Georgia (the "**Winder Property**"). The property was acquired by First Liberty Capital pursuant to a deed in lieu of foreclosure in connection with a defaulted loan made on this property.

94.     The Receiver's claim to the Winder Property is contested by Haven Real Estate Holdings of Winder, LLC ("**Haven Winder**") that filed on July 9, 2025, just prior to the appointment of the Receiver, a certain *Verified Complaint for Specific Performance* (the "**Winder Complaint**") against First Liberty Capital, LLC to initiate Case No. 2025000831 in the Superior Court of Coweta County (the

"**Winder Action**"). Haven Winder also filed a Notice of Lis Pendens (the "**Lis Pendens**") related to the Winder Property just prior to the Appointment Order being entered. The Winder Action has been stayed.

95.    The Receiver has been contacted by several parties who are interested in purchasing this property.

96.    Haven Winder is also controlled by Lisa Brown, who is the owner of HREHA and HMCA. As noted above, the Receiver has been in discussions with counsel for Ms. Brown about a resolution of her purported interests in this property. The Receiver currently plans on filing a motion for authority to sell the Winder Property if a resolution is not reached with Ms. Brown by February 5, 2026.

97.    The Barrow County and City of Winder 2025 property taxes for the Winder Property have been paid.

### B.  Miscellaneous Property

98.    The Receiver took possession of a Patek Phillip from Mr. Frost which watch he acquired for $20,000. The Receiver had several watch retailers examine the watch and ultimately sold the watch to the highest bidder for $10,000.

99.    The Receiver located in the Newnan Office twelve 20 Count 1 oz Buffalo Silver Round Coins. The Receiver is communicating with coin collectors and retailers to determine value. Current estimates are over $23,000.

100.   The Receiver also recovered and deposited $639.20 in cash from the Newnan Office during the cleanout of the space.

**C. Other Liquidated and Unliquidated Claims**

101.   During the Reporting Period, the Receiver continued to investigate whether the Receivership has liquidated and unliquidated claims against third parties, affiliates, insiders, and investors of the Receivership Entities who received net gains. The Receiver and the professionals of the Receiver have begun compiling avenues of potential recoveries for the benefit of the Receivership; however, the focus of the Receiver has been collection of the outstanding loans.

102.   As noted in the prior Report, the Receiver has identified a number of contributions to political candidates. The Receivership Entities appears to have directly, indirectly or through the Frost family made almost 1,000 political "donations" totaling over $1 million using investor funds. There has been extensive media coverage of these campaign contributions since the appointment of the Receiver. With regard to such contributions, Secretary of State Brad Raffensperger has urged any political entity that accepted contributions from Receivership Entities, the Frost Family, or any of their affiliates to return those contributions to the Receiver so that victims may be made whole.

103.   Over $300,000 in campaign or charitable contributions have already

been returned to the Receiver. Any politician wishing to return campaign contributions or other disbursement received from the Receivership Entities or Frost family should return them directly to the Receiver at Suite 555, 2964 Peachtree Road NW, Atlanta, Georgia 30305. The Receiver has deposited all such funds in a segregated account. When the Receiver has obtained sufficient information to report on these campaign contributions, the Receiver will file a report detailing the campaign contributions and the extent to which such contributions have been voluntarily returned.

104.    The Receiver is also scrutinizing the improper use of investor funds used as charitable donations or campaign contributions and will seek the return of all such funds to the fullest extent permitted by applicable law.

105.    The Receiver and the professionals of the Receiver also continue to examine assets that may be recovered from Frost and other parties, including, but not limited to assets: a) attributable to funds derived from investors or clients of the Receivership Entities or the Defendants; b) held in constructive trust for the Receivership Entities; and/or c) that may otherwise be includable as Recoverable Assets, as that term is defined in the Appointment Order.

106.    The Receiver and his professionals will continue to analyze potential sources of recovery and gather evidence for purposes of developing and pursuing

claims the Receivership Estate may have to recover funds or other assets belonging to or improperly transferred from the Receivership Entities, including without limitation turnover and fraudulent transfer actions, as is appropriate and authorized by the Court. Further, the Receiver is investigating the potential claims of the Receivership Entities against professionals and institutions that may have facilitated the alleged misconduct of Defendants or otherwise contributed to the damages alleged to have been sustained by investors. The Receiver will complete the investigation of those claims, and after consultation with the SEC, pursue those claims that the Receiver believes are meritorious and likely to result in a significant recovery for the Receivership Estate.

## VI.      CASH ON HAND AND ACCRUED EXPENSES OF ESTATE

107.   As of December 31, 2025 (the end of the Reporting Period), the Receiver held a total of $3,587,550.70 in cash-on-hand in the fiduciary accounts for the Receivership Estate. The Standardized Fund Accounting Report for the Reporting Period, setting forth the receipts and disbursements of the Receivership Estate for the Reporting Period is attached as **Exhibit A.**

108.   During the Reporting Period, the Receivership Estate has incurred administrative expenses in the form of fees and costs of the Receiver and his Court-approved professionals, including Counsel, the Forensic Accountant, and Stretto, for

the work they performed or the costs they incurred in connection with fulfilling the duties of the Receiver under the Appointment Order. The Receivership has also incurred fees and expenses by professionals employed in the ordinary course of business.

109.    On November 14, 2025, the Receiver filed an initial application for approval of fees expenses incurred by the Receiver, Counsel, the Forensic Accountant, and Stretto incurred from July 11, 2025, through September 30, 2025 [Doc. No. 37]. Such application was approved pursuant to an ORDER GRANTING UNOPPOSED INITIAL INTERIM APPLICATION FOR AN ORDER APPROVING AND AUTHORIZING PAYMENT OF FEES AND EXPENSES OF RECEIVER AND PROFESSIONALS OF THE RECEIVER [Doc. No. 42] that was entered on November 24, 2025. Incident thereto, the Receiver paid $103,670.66 to the Receiver, $89,410.62 to Counsel for the Receiver, and $110,715.82 to the Forensic Accountant for the Receiver, and $7,340.72 to Stretto as the administrative and claims agent for the Receiver. The Receiver also paid fees and expenses of professionals employed in the ordinary course of business in the total amount of $101,418.49 as of December 31, 2025.

## VII.    CONCLUSION

110.    The Receiver and the professionals of the Receiver appreciate the

opportunity to assist the Court in this matter. Until further order of the Court, the Receiver and the professionals of the Receiver professionals will continue their efforts, as discussed herein, to fulfill the duties of the Receiver under the Appointment Order in the most cost-effective manner while seeking to maximize the ultimate recovery by the Receivership Estate.

Respectfully submitted this 30th day of January, 2026.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Counsel for the Receiver
Law Offices of Henry F. Sewell, Jr.
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

## <u>CERTIFICATE OF SERVICE, FONT AND MARGINS</u>

I hereby certify that I electronically filed the foregoing using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record.

I further certify that I prepared this document in 14-point Times New Roman font and complied with the margin and type requirements of this Court.

Dated: January 30, 2026.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr. Georgia Bar No. 636265
Counsel for the Receiver
Law Offices of Henry F. Sewell, Jr.
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

EXHIBIT A

# EXHIBIT A

**STANDARDIZED FUND ACCOUNTING REPORT for**
**Receivership in SEC v. Edwin Brant Frost IV and First Liberty Building & Loan LLC**
**Receivership; Civil Court Docket No. 1:25-cv-3826-MLB**
**Reporting Period 10/01/2025 to 12/31/2025**

| FUND ACCOUNTING (See Instructions:) | | Detail (for Current Period) | Subtotal (From Prior Period) | Grand Total (All Periods) |
|---|---|---|---|---|
| **Line 1** | **Beginning Balance** | $1,460,895.91 | | $0.00 |
| | *Increases in Fund Balance:* | | | |
| **Line 2** | **Business Income** | $12,882.75 | $4,800.00 | $17,682.75 |
| **Line 3** | **Cash and Securities** | $0.00 | $887,917.51 | $887,917.51 |
| **Line 4** | **Interest/Dividends Income** | $17,199.78 | $30,000.00 | $47,199.78 |
| **Line 5** | **Business Asset Liquidation** | $2,417,680.61 | $0.00 | $2,417,680.61 |
| **Line 6** | **Personal Asset Liquidation** | $130,950.99 | $0.00 | $130,950.99 |
| **Line 7** | **Third-Party Litigation Income** | $0.00 | $0.00 | $0.00 |
| **Line 8** | **Miscellaneous - Other (Attorney Escrows & Donations)** | $15,900.00 | $565,036.75 | $580,936.75 |
| | *Total Funds Available (Lines 1-8)* | *$4,055,510.04* | | *$4,082,368.39* |
| | *Decreases in Fund Balance:* | | | |
| **Line 9** | **Disbursements to Investors** | $0.00 | $0.00 | $0.00 |
| **Line 10** | **Disbursements for Receivership Operations** | | | |
| *Line 10a* | *Disbursements to Receiver or Other Professionals* | $412,556.31 | $0.00 | $412,556.31 |
| *Line 10b* | *Business Asset Expenses* | $55,403.03 | $26,858.35 | $82,261.38 |
| *Line 10c* | *Personal Asset Expenses (Includes monthly budget for Defendant(s))* | $0.00 | $0.00 | $0.00 |
| *Line 10d* | *Investment Expenses* | $0.00 | $0.00 | $0.00 |
| *Line 10e* | *Third-Party Litigation Expenses* | | | |
| | 1. Attorney Fees | $0.00 | $0.00 | $0.00 |
| | 2. Litigation Expenses | $0.00 | $0.00 | $0.00 |
| | *Total Third-Party Litigation Expenses* | *$0.00* | *$0.00* | *$0.00* |
| *Line 10f* | *Tax Administrator Fees and Bonds* | $0.00 | $0.00 | $0.00 |
| *Line 10g* | *Federal and State Tax Payments* | $0.00 | $0.00 | $0.00 |
| | **Total Disbursements for Receivership Operations** | **$467,959.34** | **$26,858.35** | **$494,817.69** |
| **Line 11** | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| *Line 11a* | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administration | $0.00 | $0.00 | $0.00 |
| | Independent Distribution Consultant (IDC) | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | *Total Plan Development Expenses* | *$0.00* | *$0.00* | *$0.00* |
| *Line 11b* | *Distribution Plan Implementation Expenses* | | | |
| | 1. Fees: | | | |
| | Fund Administration | $0.00 | $0.00 | $0.00 |
| | IDC | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Investor Identification | | | |
| | Notice/Publishing Approved Plan | $0.00 | $0.00 | $0.00 |
| | Claimant Identification | $0.00 | $0.00 | $0.00 |
| | Claims Processing | $0.00 | $0.00 | $0.00 |
| | Web Site Maintenance/Call Center | $0.00 | $0.00 | $0.00 |
| | 4. Fund Administrator Bond | $0.00 | $0.00 | $0.00 |
| | 5. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | $0.00 | $0.00 | $0.00 |
| | *Total Plan Implementation Expenses* | *$0.00* | *$0.00* | *$0.00* |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | | |

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| **Line 12** | **Disbursements to Court/Other:** | | | |
| *Line 12a* | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | $0.00 | $0.00 | $0.00 |
| *Line 12b* | *Federal Tax Payments* | $0.00 | $0.00 | $0.00 |
| | **Total Disbursement to Court/Other:** | $0.00 | $0.00 | $0.00 |
| | **Total Funds Disbursed (Line 9-11):** | $467,959.34 | $26,858.35 | $494,817.69 |
| **Line 13** | **Ending Balance (As of 12/31/2025):** | **$3,587,550.70** | | **$3,587,550.70** |
| **Line 14** | **Ending Balance of Fund - Net Assets** | | | |
| *Line 14a* | *Cash & Cash Equivalents* | $3,587,550.70 | $0.00 | $3,587,550.70 |
| *Line 14b* | *Investments* | $0.00 | $0.00 | $0.00 |
| *Line 14c* | *Other Assets or Uncleared Funds (Frozen Accounts)* | $0.00 | $0.00 | $0.00 |
| | **Total Ending Balance of Fund - Net Assets** | **$3,587,550.70** | **$0.00** | **$3,587,550.70** |

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| **OTHER SUPPLEMENTAL INFORMATION:** | | | | |
| | **Report of Items NOT To Be Paid by the Fund:** | | | |
| **Line 15** | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| *Line 15a* | *Plan Development Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | $0.00 | $0.00 | $0.00 |
| | Fund Administrator | $0.00 | $0.00 | $0.00 |
| | IDC | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | *Total Plan Development Expenses Not Paid by the Fund* | *$0.00* | *$0.00* | *$0.00* |
| *Line 15b* | *Plan Implementation Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | $0.00 | $0.00 | $0.00 |
| | IDC | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan | $0.00 | $0.00 | $0.00 |
| | Claimant Identification | $0.00 | $0.00 | $0.00 |
| | Claims Processing | $0.00 | $0.00 | $0.00 |
| | Web Site Maintenance/Call Center | $0.00 | $0.00 | $0.00 |
| | 4. Fund Administrator Bond | $0.00 | $0.00 | $0.00 |
| | 5. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | 6. FAIR Reporting Expenses | $0.00 | $0.00 | $0.00 |
| | Total Plan Implementation Expenses Not Paid by the Fund | $0.00 | $0.00 | $0.00 |
| *Line 15c* | *Tax Administrator Fees & Bonds Not Paid by the Fund* | $0.00 | $0.00 | $0.00 |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | |
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund:** | | | |
| *Line 16a* | *Investment Expenses/CRIS Fees* | $0.00 | $0.00 | $0.00 |
| *Line 16b* | *Federal Tax Payments* | $0.00 | $0.00 | $0.00 |
| | **Total disbursements to Court/Other Not Paid by Fund:** | | | |
| **Line 17** | **DC & State Tax Payments** | $0.00 | $0.00 | $0.00 |
| **Line 18** | **No. of Claims:** | | | |
| Line 18a | # of Claims Received This Reporting Period | | | 0 |
| Line 18b | # of Claims Received Since Inception of Fund | | | 0 |
| **Line 19** | **No. of Claimants/Investors:** | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | | | 0 |
| Line 19b | # of claimants/Investors Paid Since Inception of Fund | | | 0 |

Receiver:

By: _____
   (signature)

_____
   (printed name)
_____
   (title)
Date:_____

EXHIBIT B



EXHIBIT B

www.BullseyeAuctions.com

6470 East John Crossing  |  Suite 160  |  Johns Creek, GA 30097

770-544-7479

www.BullseyeAuctions.com

# Seller Settlement

<table>
<tr><td colspan="2"><b>Seller Information</b></td></tr>
<tr><td align="right"><b>Seller Name:</b></td><td>S. Gregory Hays, Receiver</td></tr>
<tr><td align="right"><b>Company Name:</b></td><td>First Liberty Building & Loan, LLC</td></tr>
<tr><td align="right"><b>Address:</b></td><td>2964 Peachtree Road</td></tr>
<tr><td align="right"></td><td>Suite 555</td></tr>
<tr><td align="right"><b>City, State & Zip:</b></td><td>Atlanta, GA 30305</td></tr>
<tr><td align="right"><b>Email Address:</b></td><td>ghays@haysconsulting.net</td></tr>
<tr><td align="right"><b>Phone:</b></td><td>404-926-0060</td></tr>
</table>

<table>
<tr><td colspan="2"><b>Auction Information</b></td></tr>
<tr><td align="right"><b>Auction:</b></td><td>Aston Marton, Escalade and Range Rovers</td></tr>
<tr><td align="right"><b>Date:</b></td><td>Thursday, January 22, 2026</td></tr>
<tr><td align="right"><b>Time:</b></td><td>11:00 AM EST</td></tr>
<tr><td align="right"><b>Location:</b></td><td>5395 Webb Parkway, NW</td></tr>
<tr><td align="right"></td><td>Lilburn, GA  30047</td></tr>
</table>

## Expenses

| Date | Amount | Merchant | Description |
|---|---|---|---|
| 1/20/2026 | $5.78 | Speedway | Fuel |
| 1/12/2026 | $149.99 | EstateSales.org | Advertising |
| 1/22/2026 | $350.00 | BidWrangler | Online Auction Access |
| 9/28/2025 | $200.32 | Internet Promotinons | Advertising |
| | | Aston Martin: | |
| 7/30/2025 | $650.00 | Most Wanted Towing | Towing |
| 8/8/2025 | $300.00 | Brad Wilson | Detailing |
| | | Cadillac Escalade: | |
| 1/1/2026 | $990.00 | Most Wanted Towing | Towing & Storage |
| 12/30/1899 | $400.00 | American Street Machines | Storage |
| | | 2017 Range Rover: | |
| 1/20/2026 | $890.00 | Most Wanted Towing | Towing & Storage |
| | | 2011 Range Rover: | |
| 1/19/2026 | $300.00 | American Street Machines | Storage |
| | | 2011 Range Rover: | |
| 1/19/2026 | $300.00 | Amerian Street Machines | Storage |
| 1/20/2026 | $400.49 | Auto Zone | Batteries |
| **Total of Expenses:** | **$4,936.58** | | |

## Summary

| | |
|---|---|
| Auction Gross: | $159,800.00 |
| Auctioneer Commissions: | -$15,980.00 |
| Adjusted Auction Gross: | $143,820.00 |
| Total Auction Expenses: | -$4,936.58 |
| **Auction Net to Seller:** | **$138,883.42** |