**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | Civil Action File No. |
| | : | 1:25-cv-3826-MLB |
| v. | : | |
| | : | |
| EDWIN BRANT FROST IV and | : | |
| FIRST LIBERTY BUILDING & LOAN, LLC, | : | |
| | : | |
| Defendants, and | : | |
| | : | |
| FIRST LIBERTY CAPITAL PARTNERS | : | |
| LLC, FIRST NATIONAL INVESTMENTS | : | |
| LLC, MYHEALTHAI CAPITAL LLC, | : | |
| THE LEGACY ADVISORY GROUP INC., | : | |
| and THE LIBERTY GROUP LLC, | : | |
| | : | |
| Relief Defendants. | : | |

## THIRD QUARTERLY REPORT OF RECEIVER

S. Gregory Hays, as Court-Appointed Receiver ("**Receiver**") pursuant to the

*Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment**

**Order**") that was entered in the above-captioned case (the **"Case"** or

"**Receivership**"), by and through counsel, hereby files this *Third Quarterly Report*

*of Receiver* (the "**Repor**t") for the period of January 1, 2026, through March 31,

2026 (the "**Reporting Period**") and respectfully shows as follows:[1]

## I. INTRODUCTION

1.      The Receiver continues to progress in the administration of the Receivership and identifying, securing, and recovering assets for the benefit of the estate arising from the Receivership (the "**Receivership Estate**"). To date, the Receiver has taken possession of $896,455.40 in bank accounts of the Receivership Entities, seized and sought the liquidation of certain Receivership Assets, analyzed, evaluated, and initiated collection efforts with regard to the loans made by the Receivership Entities. At the conclusion of the Reporting Period, the Receivership Estate held $4,495,642.02. This sum includes the amount of $2,397,680.61 that was wired to the Receivership by 2406 Cancer Care LLC ("**Cancer Care**"). The circumstances surrounding this tender are explained in more detail below.

2.      During the Reporting Period, the Receiver and the professionals of the Receiver continued to communicate with parties with knowledge of Receivership Assets.

---

[1] The Receiver previously filed an initial status report on July 21, 2025 [Doc. No. 14], a First Quarterly Report of Receiver on October 30, 2025 [Doc. No. 32] for the period from July 11, 2025, through September 30, 2025 (the "**First Quarterly Report**"), and a Second Quarterly Report of Receiver on October 30, 2025 [Doc. No. 73] for the period from October 1, 2025, through December 31, 2025 (the "**Second Quarterly Report**"). Capitalized, but undefined terms used herein shall have the meaning ascribed to such terms in the Second Quarterly Report.

3.      The First Quarterly Report and Second Quarterly Report contain detailed reports regarding the Receiver's activities during the third and fourth quarters of 2025 and contain a listing and description of all assets known to the Receiver that is supplemented by this Report. This Report should be read in conjunction with prior reports and is intended to supplement same. The Receiver has attempted to avoid here repetition and duplication from the prior reports.

4.      The Receiver continues to search for additional assets and will report on the discovery of additional assets to the Court in subsequent reports.

5.      The Receiver will continue to investigate the claims that the Receivership Estate may have against third parties, gather relevant information and documents among records of the Receivership Entities and report efforts and activities in status reports and other court filings until such time as the Court may discharge the Receiver of his duties.

## II. SIGNIFICANT DEVELOPMENTS SINCE THE FILING OF THE SECOND QUARTERLY REPORT.

### A. Accounting and Funds Tracing Database.

6.      As noted in prior reports, the Receivership Entities did not properly manage their finances or business operations or maintain in financial records in a readily usable manner. As a result, it was necessary for the Receiver to reconstruct information from records from financial institutions and various third parties and to

import this information into a database (the "**Funds Tracing Database**") that currently has data from 19 bank accounts and approximately 48,000 separate transactions. The Receiver can now report to the Court that since his last report, he has procured all of the backup data for the First Liberty accounts at Truist Bank in an electronic format and can now trace receipts and disbursements from those accounts. While the Receiver continues to organize the records of the Receivership Entities, obtain information from third parties, such as banks, lawyers and public records to understand the operations and transactions of the Receivership Entities with various third parties, insiders and affiliates, and update the Funds Tracing Database, substantial progress was made with respect to the Funds Tracing Database.

7.    During the Reporting Period, the Receiver used the Funds Tracing Database to prepare and filed on March 23, 2026, a Sworn Statement and Accounting [Doc. No. 80] as required by the Appointment Order (the "**Accounting**").

### B. Sale of Newnan Office and Vehicles

8.    As noted in the Second Quarterly Report, the Receiver marshaled control of certain real property located at 14 Greenville St, Newnan, GA 30263 (the "**Newnan Office**") and secured the turnover of ownership and control of certain vehicles. The Court entered an order [Doc. No. 38] authorizing the Receiver to

employ an auctioneer (the "**Auctioneer**") to sell such property. The sale of the vehicles was detailed in the Second Quarterly Report.

9.      With respect to the Newnan Office, the Auctioneer conducted a sale of the Newnan Office between January 17, 2026 and January 27, 2026. The auction was very successful, with 106 registered bidders. Ultimately, the high bid for the Newnan Office was $606,000, which was significantly higher than the amount the Receiver anticipated. The sale of the Newnan Office closed on February 24, 2026. A copy of the Settlement Statement for that transaction is attached as **Exhibit A** hereto. Out of the purchase price, the Auctioneer was paid a commission of $24,240 and reimbursed for advertising expenses of $1,000 and property taxes of $2,454 were paid. The net proceeds of $578,306 ("**Net Proceeds**") are in the possession of the Receiver.

10.     There was one lien asserted against the Newnan Office in the amount of $166,326.74 which was disputed by the Receiver (the "**Disputed Lien**"). This lien was asserted by an investor who also received substantial distributions from the Receivership Entities. Ultimately, the Receiver agreed with that investor to have the investor release its lien against the Newnan Property with such investor reserving a claim against the Net Proceeds to be resolved at a later date and upon further investigation of the disbursements made to that investor.

### C. Agreement with Bankers Life

11.    The Georgia Secretary of State announced an agreement with Bankers life to repay nearly $6.7 million to more than 40 investors (the "**Bankers Life Investors**") who lost money in the collapse of the Receivership Entities. The Receiver will account for such restitution in the claims process to be administered in the Receivership. However, the payment to the Bankers Life Investors will benefit the remaining investors by reducing the total amount of claims which will ultimately exist in this case.

### D. Intervention in Receivership and Procedures Order

12.    As further detailed in the Second Quarterly Report, incident to efforts by the Receiver to collect outstanding loans and administer the assets of the Receivership, certain borrowers have asserted that they were damaged in connection with loans they received from the Receivership Entities and sought to assert offsets and claims against the Receivership Estate for such damages. The Receiver believes that these offsets and claims are meritless attempts to avoid the repayment of substantial investor funds advanced to these borrowers and has contested these claims and demanded payment; however, during the fourth quarter, certain borrowers sought to intervene in the Receivership to assert such claims.

13.    After the Receiver prepared and filed a motion [Doc. No. 59] to

establish procedures to enter the action to resolve claims arising from loan obligations and the Court held a hearing on the matter, the Court entered an Order [Doc. No. 70] (the "**Procedures Order**") on January 27, 2026 to establish procedures that a borrower must satisfy as a condition to enter the Receivership. The Receiver anticipates that several lawsuits will be filed either by borrowers or by the Receiver seeking to adjudicate loan claims. The Receiver continues to assert that the borrowers seeking to enter the Receivership are simply seeking to avoid their obligations to repay funds that: a) were originally raised from investors funds; and b) such borrowers and their guarantors agreed would be repaid pursuant to the terms of certain promissory notes, guarantees, and other written documents.

### E.  Expansion of the Receivership

14.     Contemporaneously with the filing of this Report, the Receiver has filed a *Motion by Receiver to Expand Receivership With Brief in Support Thereof* (Doc No. 84) (the "**Motion to Expand**"). In the Motion to Expand, the Receiver proposes to add ten (10) entities to the Receivership to be treated as Receivership Entities under the Appointment Order. A copy of the Motion to Expand has been posted at the Receiver's web site at www.firstlibertyreceivership.com (the "**Website**").

## III.       STATUS OF CLAIMS PROCESS

15.    **THE RECEIVER IS PREPARING A CLAIMS PROCESS THAT WILL BE SUBMITTED TO THE COURT FOR APPROVAL. ALL INVESTORS WILL BE PROVIDED NOTICE AND AMPLE TIME TO COMPLETE A CLAIM FORM WHICH WILL BE PROVIDED BY THE RECEIVER. INVESTORS SHOULD PRESERVE ALL OF THEIR RECORDS RELATING TO THEIR INVESTMENTS, INCLUDING RECEIPTS, SUBSCRIPTION AGREEMENTS, CHECKS AND PROOF OF ALL AMOUNTS INVESTED. INVESTORS ARE ENCOURAGED TO SUBSCRIBE TO THE RECEIVER WEBSITE TO ENSURE THEY RECEIVE NOTICES.**

16.    The Receiver continues to maintain the Website, which provides free access to all pleadings in the Case and allows interested parties to subscribe to receive recurring notifications of pleadings filed on the docket in the Case. For example, each of the pleadings referred to in this Report can be easily accessed at this website. In order to limit costs and the administrative burden on the Receivership, all parties are encouraged to search the Website first before attempting to contact the Receiver directly.

8

17.     To the extent that inquiries are not addressed by referencing the Website, the Receiver has established an email and phone number incident to which investors and other parties can communicate with the Receiver: FirstLibertyInquiries@stretto.com and 404-926-0060. The Receiver continues to respond to investor inquiries on a routine basis.

## IV.     STATUS OF LOAN COLLECTION EFFORTS

18.     As further detailed in prior reports, the primary asset of the Receivership consists of approximately sixty (60) individual, defaulted loans. In some cases, individual borrowers hold several loans in their or affiliate names.

19.     The primary activity of the Receiver will continue to be the enforcement and collection of these loans. The Receiver continues to anticipate that the process of collecting these loans will be an expensive and protracted process which will take many months and will require litigation. The Receiver anticipates that many of the borrowers and guarantors will have not sufficient assets to pay back their loans to the Receivership.

20.     All of the loan agreements reviewed to date by the Receiver provide for default interest, the collection of attorney's fees and litigation expenses and the Receiver will seek to recover those expenses to the fullest extent possible along with default interest. The Receiver cannot predict, at this point, the amounts which may

be recovered on these loans.

21.    As previously indicated by the Receiver, borrowers and guarantors who owe money to the Receivership Entities should continue to make required payments on their loans and otherwise comply with any other obligations to the Receivership Entities. Such parties should expect the Receiver to fully enforce and collect all loans to the fullest extent possible. All payments should be sent directly to the Receiver at Suite 555, 2964 Peachtree Road NW, Atlanta, Georgia 30305. Wire instructions are also available upon request. **The Receiver expects and demands strict compliance by the Borrowers and any guarantors with the terms of the documentation underlying their obligations.**

22.    The Receiver has continued to focus efforts on larger loans that appear to be collectible. There are a number of loans that the Receiver is still evaluating and for which he is collecting information. Certain loans have received far more attention than other loans for this reason and the Receiver will continue to manage his enforcement activities (and related expenses) based on likelihoods of recovery.

## A. Curepoint LLC (CP 1), Daniel Dooley, Philip Miles, Mark Miles, and Physician Financial Partners, LLC

23.    As noted in the Second Quarterly Report, the Receiver reached a final settlement with Liquidating Bankruptcy Trustee for Curepoint LLC ("**Curepoint**") that has been approved by this Court and the Bankruptcy Court in the Curepoint

Bankruptcy Case. On or about March 23, 2026, the Receiver received a distribution of $205,358.97. This settlement will still leave a substantial deficiency that the Receiver will seek to recover from the guarantors of the loans to Curepoint.

**B. 2406 Cancer Care LLC, Erich G. Randolph, and Philip Miles (CP 2)**

24.    As detailed in prior reports by the Receiver, Cancer Care entered certain loans secured by certain collateral and guarantees by Eric Randolph, Aaron Williams, and Philip Miles. The amount due by Cancer Care includes an obligation involving Moneyline Ventures, LLC.

25.    Cancer Care has disputed certain amounts due under the obligations due to the Receivership Entities and tendered a payment to the Receiver on December 30, 2025, in the amount of $2,397,680.61. While Cancer Care has alleged that such amount would satisfy the obligation of Cancer Care to the Receivership Entities if approved by the Court, the Receiver has disputed that this tender constitutes full payment of the obligations of Cancer Care and continues to hold this amount.

26.    The Receiver has had discussions with counsel for Cancer Care about a resolution of this matter. As of the filing of this Report, no resolution has been reached.

**C. Urohealth, LLC and Philip Miles**

11

27.    As detailed in prior reports by the Receiver, UroHealth, LLC ("**Uro**"), another entity owned or controlled by Philip Miles, entered loans secured by certain collateral and a guaranty by Philip Miles. Mr. Miles has retained counsel to represent him in this case. The Receiver has been in contact with that counsel and has requested additional information from the borrower.

## D. ZeroHolding, LLC, Mark Miles, and Philip Miles

28.    As detailed in prior reports by the Receiver, ZeroHolding, LLC (the "**Zero**"), which is the debtor in Chapter 11 Case No. 22-56502-JWC pending in the United States Bankruptcy Court for the Northern District of Georgia, entered a loan that references guarantees by Mark Miles and Philip Miles. The Receiver continues to investigate this obligation.

## E. Haven and Lisa Brown

29.    As detailed in prior reports by the Receiver, Lisa Brown caused certain entities owned and controlled by Ms. Brown, including Haven Memory Care of Athens, LLC ("**HMCA**"), Haven Real Estate Holdings of Athens LLC ("**HREHA**"), and Haven Real Estate Holdings of Winder, LLC ("**Haven Winder**"), to enter certain loans secured by certain collateral and guarantees.

30.    The Receiver has sent notices of default on the loans and prepared a complaint against the borrowers and Lisa Brown to recover the obligation due to the

Receivership Entities.

31.    As indicated in the Second Quarterly Report, the Receiver has attempted to negotiate with counsel for Ms. Brown to seek a negotiated resolution of these obligations. Ms. Brown has failed to come forward with any refinancing and the Receiver has determined that she been given more than sufficient time to resolve this matter. The Receiver anticipates litigation regarding this claim in the next quarter.

**F.  Product Design Innovations LLC-Chisel Fit**

32.    As detailed in prior reports by the Receiver, Product Design Innovations LLC entered a loan secured by a second lien on an Ocala FL residence owned by Mr. and Ms. Ellis and adjoining commercial property owned by Margaret Brown and a guaranty by Joseph K. Ellis. The Receiver did not receive a response to the default notice sent by the Receiver and is currently attempting to determine whether any recovery is possible on this loan.

**G. Dr. Jerry Williams, No Free, LLC and Riverdawg LLC**

33.    As further detailed in prior reports, Riverdawg, LLC ("**Riverdawg**") and No Free, LLC ("**No Free**"), entities owned or controlled by Jerry K. Williams ("**Dr. Williams**"), received a significant amount of proceeds from the Receivership Entities and agreed that such obligations would be repaid pursuant to the terms of

the documents underlying their obligations. Such obligations are secured by guarantees by Dr. Williams and Urgent Care 247, LLC aka Urgent Care 24/7 ("**UC**"), another entity owned or controlled by Dr. Williams, and collateral identified in pertinent documents (the "**Williams Collateral**"). The Receiver has concluded that the Williams Collateral is more than sufficient to pay the amounts due. Indeed, Dr. Williams represented to First Liberty that he had a net worth in excess of $200 Million.

34.    On March 11, 2026, the Receiver filed an Ancillary Complaint against Dr. Williams, UC, No Free, and Riverdawg to initiate Ancillary Case No. 1:26-cv-01349-MLB (the "**Williams Receiver Action**").

35.    Also on March 11, 2026, Riverdawg, No Free and Holt Knob Holdings, LLC, another entity owned or controlled by Dr. Williams, filed a complaint (the "**Williams Complaint**") against the Receiver to initiate related case no. 26-CV-1353 (the **Williams Action**"). Since the Williams Complaint was not filed in compliance with the Procedures Order, the Receiver moved on March 31, 2026, to dismiss the Williams Action.

36.    At present the Receiver's Motion to Dismiss remains pending and the Receiver anticipates requesting a hearing from the Court to move this matter forward. Copies of the pleadings filed in these ancillary matters are available at the

14

Website.

37.    The Receiver intends to vigorously enforce the rights of the Receivership Entities in the pending litigation. Default interest is accruing and legal collection fees will be added to the amount due.

## H. Tie and Timber Technologies, LLC

38.    As further detailed in prior reports, Tie and Timber Technologies, LLC ("**T3**") received a significant amount of proceeds from the Receivership Entities and agreed that such obligations would be repaid pursuant to the terms of the documents underlying the obligations of T3 to the Receivership Entities. Such obligations are secured by certain equipment and real property located at 301 S. Cyprus St., Mullins, SC (the "**T3 Collateral**").

39.    Sine T3 does not have the ability to maintain the T3 Collateral, the Receiver has secured the T3 Collateral and engaged onsite security personnel that reports to the Receiver's office daily. The Receiver has been unable to procure insurance for theT3 Collateral.

40.    The manager of T3 has agreed to cooperate with the Receiver in auctioning the T3 Collateral. Incident thereto, the Receiver has initiated preliminary efforts by an auctioneer and is preparing a motion to seek authority to sell the T3 Collateral via an auction and employ auctioneers to conduct the sale.

## I. David Pike and Full Circle LLC aka Normal Recovery

41. As further detailed in prior reports, Full Circle LLC aka Normal Recovery ("**Full Circle**"), entered a loan dated February 10, 2023 in the amount of $2,750,000.00 that originally matured on February 9, 2024 and is secured by real property of Timeless Acquisitions LLC and Full Circle in Walton County, Georgia at the intersection of George Pike Sr. Parkway and Bethany Church Road (the "**Walton Collateral**"), all property of Full Circle, and guarantees by David Pike, David Pike II and Christie Pike Nelson. It should be noted that the amount actually advanced by First Liberty to Full Circle was only $1,121,860 ($1,043,230 to pay off the prior loan and $78,630 for one draw) and First Liberty received one payment of $52,500 back. The Receiver has advertised the Walton Collateral for a May foreclosure sale. While the Receiver has been contacted by counsel about a proposed resolution the Receiver, no settlement has been reached as of the filing of this Report.

## J. FibRETech LLC and Rendell Schmidt

42. As further detailed in prior reports, FibRETech LLC ("**FibRETech**") entered a loans secured by certain property and a guaranty by Rendell Schmidt. The only piece of collateral remaining is a horizontal grinder in North Carolina that cost approximately $365,0000. The Receiver has retained counsel in North Carolina to

assist in this matter. The Receiver can now report that he has confirmed the location of the grinder in North Carolina and that his counsel is in the process of recovering the grinder with the intention of selling the grinder potentially in conjunction with the sale of the T3 Collateral.

**K. Christopher Ridgeway and Stone Capital Group LLC**

43.     As further detailed in prior reports, Stone Capital Group LLC ("**Stone**") entered loans secured by two personal residences of Christopher Ridgeway in Alys Beach, FL and Matarie LA, and all assets of Stone, a guaranty of Christopher Ridgeway and certain medical equipment A foreclosure was started on Alys Beach FL home and the matter is now tied up in arbitration.

44.     The Receiver is attempting to determine with prior counsel involved in this matter whether the Procedures Order can be utilized for a more efficient liquidation process here.

**L. Specialty Surgery Center Inc., Harvey Cole, Atlanta Oculoplastic Surgery, Scott Honan**

45.     As further detailed in prior reports, Specialty Surgery Center Inc. ("**Specialty**") entered loans that are secured by certain collateral and guarantees.

46.     A guarantor, Harvey Cole, has sought bankruptcy protection. The Receiver is currently analyzing his enforcement options and is weighing the cost of further enforcement actions against the availability of recoverable assets.

## M. Honan Preferred Equity and Scott C. Honan

47.     As further detailed in prior reports, entities owned by, controlled by, and/or related to Scott C. Honan, Honan Preferred Equity, L&S Regional One MOB I, LLC – Memphis, and Glenridge Point SPE LLC, a DE LLC (or Glenridge Lifehope SPE, a DE LLC), entered certain loans secured by certain collateral and guarantees. The Receiver is currently analyzing his enforcement options and is weighing the cost of further enforcement actions against the availability of recoverable assets.

## N. 11680 Royal Ridge SH, LLC and Scott C. Honan

48.     As further detailed in prior reports, 11680 Royal Ridge SH, LLC entered certain loans that are among the number of loans in which Mr. Honan is involved. The Receiver is currently analyzing his enforcement options and is weighing the cost of further enforcement actions against the availability of recoverable assets.

49.     The Receiver intends to depose Mr. Honan to determine whether there are any assets available to satisfy the several loans guaranteed by Mr. Honan.

## O. Global Onboard Partners LLC and Keri Adams

50.     The Receiver has now confirmed that the obligation of Global Onboard

Partners LLC Dixie Precast was satisfied prior to the appointment of the Receiver.

**P. Conquest Commercial Funding, LLC**

51.     As further detailed in prior reports, Conquest Commercial Funding, LLC ("**Conquest**") entered a loan guaranteed by Jorge Martinez. Mr. Martinez sought bankruptcy protection in Florida. The Receiver has been in contact with the Bankruptcy Trustee appointed to liquidate Mr. Martinez's assets and, based on currently available information, it does not appear that there will be any assets available for distribution. However, the Bankruptcy Trustee continues to investigate this matter and the Receiver has prepared a proof of claim to be filed in the bankruptcy case of Mr. Martinez. At present, the Receiver is uncertain about the collectability of this loan.

**Q. Ecofusion LLC, Ernest E. Jones, Jr. Joseph MA Coalla, and Ralph Reed**

52.     As further detailed in prior reports, Ecofusion LLC ("**Ecofusion**") entered a loan secured by all assets of the borrower and guarantees by Ernest E. Jones, Jr. Joseph Coalla, and possibly others. The Receiver is currently analyzing his enforcement options and is weighing the cost of further enforcement actions against the availability of recoverable assets.

**R. 2304 GP LLC, Brandi Kirkland, and Bret Tomlinson**

53.     As further detailed in prior reports, 2304 GP LLC ("**Grand Prairie**")

19

entered loans secured by certain collateral and guarantees by Brandi Kirkland and Bret Tomlinson. This matter had been settled prior to the appointment of the Receiver pursuant to which First Liberty was to be paid $100,000 out of a sale of the collateral and to receive certain replacement collateral. This agreement was breached by Ms. Kirkland and no money or substitute collateral was paid. During the course of the most recent reporting period, the Receiver learned that Ms. Kirkland was attempting to auction off First Liberty's collateral. The Receiver was able to stop this sale and Ms. Kirkland has now advised the Receiver that she was defrauded by Mr. Frost in this transaction. Although this claim is inconsistent with the documents she signed, the Receiver is reviewing this matter and, unless the matter can be resolved, the Receiver will direct First Liberty's counsel in the pre-Receivership litigation to enforce the settlement.

## S. DI Development LLC, Brent E. Myers and Timothy L. Miller

54. As further detailed in prior reports, DI Development LLC entered a loan dated secured by real estate in Gainesville GA and Port St. Lucie FL and guarantees by Brent E. Myers and Timothy L. Miller. The Receiver continues to seek a resolution of this matter.

## T. Emergent Testing Labs, LLC dba Lux Diagnostics, Jonathan Goss, and Kraken Enterprises, LLC

55. As further detailed in prior reports, Emergent Testing Labs, LLC dba

Lux Diagnostics, ("**ETL**") and Kraken Enterprises, LLC ("**Kraken**"), entities owned by, controlled by, and/or related to Jonathan Goss, entered loans secured by certain collateral and guarantees by Jonathan Goss with the obligation of Kraken also being guaranteed by ETL. A very large IRS tax lien has been filed against Mr. Goss that may impede any collection of these obligations.

56.    The Receiver sent a default notices on these loans and counsel for the Receiver has discussed the matter with Mr. Goss. Mr. Goss has now made a settlement proposal to the Receiver that the Receiver is considering.

**U. Undocumented**

57.    The Receiver continues to investigate whether additional loans exist or can be documented. As of the date of this Report, no additional loans have been identified.

**V. My Health AI**

58.    The Receiver continues to investigate the loans involving My Health AI that were detailed in prior reports of the Receiver.

**V. Other Assets**

**A. Winder Property**

59.    As further detailed in prior reports, the most significant other asset held by the Receivership is certain real property located at 169 W. Athens St., Winder,

Georgia (the "**Winder Property**") that is subject to an unsubstantiated claim by Haven Winder, which is controlled by Lisa Brown.

60.    The Receiver has been in discussions with counsel for Ms. Brown about a resolution of her purported interests in this property. The Receiver currently plans on filing a motion for authority to sell the Winder Property.

61.    The Barrow County and City of Winder 2025 property taxes for the Winder Property have been paid.

## B.  Miscellaneous Property Recovered During Reporting Period

62.    The Receiver located in the Newnan Office twelve 20 Count 1 oz Buffalo Silver Round Coins. The Receiver is communicating with coin collectors and retailers to determine value. A coin retailer recently informed the Receiver that the current volatility in the precious metals markets is impacting the value.

63.    The Receiver also recovered and deposited $639.20 in cash from the Newnan Office during the cleanout of the space.

64.    The Receiver closed the remaining bank accounts of the Receivership Entities at Truist Bank and transferred $10,701.99 to Receiver bank accounts.

65.    The Receiver took possession of $283,165.96 in affiliated bank accounts at Truist Bank. The affiliated entities holding these bank accounts are the same entities to be added pursuant to the Motion to Expand referenced above. The

Receiver took possession of these funds to ensure their safekeeping.

66.    The Receiver sold miscellaneous furniture located at 14 Greenville Street for $500.

67.    The Receiver earned interest totaling $11,979.99 on deposits during the Reporting Period.

68.    An additional $250.00 in political contributions were returned.

## C. Other Liquidated and Unliquidated Claims

69.    During the Reporting Period, the Receiver continued to investigate whether the Receivership has liquidated and unliquidated claims against third parties, affiliates, insiders, and investors of the Receivership Entities who received net gains. The Receiver and the professionals of the Receiver have begun compiling avenues of potential recoveries for the benefit of the Receivership; however, the focus of the Receiver has been collection of the outstanding loans.

70.    As noted in prior reports, the Receiver has identified a number of contributions to political candidates. The Receivership Entities appears to have directly, indirectly or through the Frost family made almost 1,000 political "donations" totaling over $1 million using investor funds. There has been extensive media coverage of these campaign contributions since the appointment of the Receiver. With regard to such contributions, Secretary of State Brad Raffensperger

has urged any political entity that accepted contributions from Receivership Entities, the Frost Family, or any of their affiliates to return those contributions to the Receiver so that victims may be made whole.

71. Over $300,000 in campaign or charitable contributions have already been returned to the Receiver. Any politician wishing to return campaign contributions or other disbursement received from the Receivership Entities or Frost family should return them directly to the Receiver at Suite 555, 2964 Peachtree Road NW, Atlanta, Georgia 30305. The Receiver has deposited all such funds in a segregated account. When the Receiver has obtained sufficient information to report on these campaign contributions, the Receiver will file a report detailing the campaign contributions and the extent to which such contributions have been voluntarily returned.

72. The Receiver is also scrutinizing the improper use of investor funds used as charitable donations or campaign contributions and will seek the return of all such funds to the fullest extent permitted by applicable law.

73. The Receiver and the professionals of the Receiver also continue to examine assets that may be recovered from Frost and other parties, including, but not limited to assets: a) attributable to funds derived from investors or clients of the Receivership Entities or the Defendants; b) held in constructive trust for the

Receivership Entities; and/or c) that may otherwise be includable as Recoverable Assets, as that term is defined in the Appointment Order.

74.     The Receiver and his professionals will continue to analyze potential sources of recovery and gather evidence for purposes of developing and pursuing claims the Receivership Estate may have to recover funds or other assets belonging to or improperly transferred from the Receivership Entities, including without limitation turnover and fraudulent transfer actions, as is appropriate and authorized by the Court. Further, the Receiver is investigating the potential claims of the Receivership Entities against professionals and institutions that may have facilitated the alleged misconduct of Defendants or otherwise contributed to the damages alleged to have been sustained by investors. The Receiver will complete the investigation of those claims, and after consultation with the SEC, pursue those claims that the Receiver believes are meritorious and likely to result in a significant recovery for the Receivership Estate.

## VI.     CASH ON HAND AND ACCRUED EXPENSES OF ESTATE

75.     As of March 31, 2026 (the end of the Reporting Period), the Receiver held a total of $4,495,642.02 in cash-on-hand in the fiduciary accounts for the Receivership Estate. The Standardized Fund Accounting Report for the Reporting Period, setting forth the receipts and disbursements of the Receivership Estate for

the Reporting Period is attached as **Exhibit B.**

76.    During the Reporting Period, the Receivership Estate has incurred administrative expenses in the form of fees and costs of the Receiver and his Court-approved professionals, including Counsel, the Forensic Accountant, and Stretto, for the work they performed or the costs they incurred in connection with fulfilling the duties of the Receiver under the Appointment Order. The Receivership has also incurred fees and expenses by professionals employed in the ordinary course of business.

77.    The Receiver filed on November 14, 2025, an initial application for approval of certain fees and expenses incurred from July 11, 2025, through September 30, 2025 [Doc. No. 37]. Such application was approved pursuant to an order [Doc. No. 42] that was entered on November 24, 2025. Incident thereto, the Receiver paid $103,670.66 to the Receiver, $89,410.62 to Counsel for the Receiver, $110,715.82 to the Forensic Accountant for the Receiver, and $7,340.72 to Stretto as the administrative and claims agent for the Receiver.

78.    The Receiver filed on February 3, 2026, a second application for approval of certain fees and expenses incurred from October 1, 2025, through December 31, 2025 [Doc. No. 75]. Such application was approved pursuant to an order [Doc. No. 76] that was entered on February 6, 2026. Incident thereto, the

Receiver paid $46,040.40 to the Receiver, $87,343.94 to Counsel for the Receiver, $92,144.05 to the Forensic Accountant for the Receiver, and $5,012.80 to Stretto as the administrative and claims agent for the Receiver. The Receiver also paid fees and expenses of professionals employed in the ordinary course of business in the total amount of $101,418.49 for the period between October 1, 2025, through December 31, 2025.

79.    The Receiver filed on April 20, 2026, a third application for approval of certain fees and expenses incurred from January 1, 2026, through March 31, 2026 [Doc. No. 81]. Such application was approved pursuant to an order [Doc. No. 82] that was entered on April 21, 2026. Incident thereto, the Receiver paid $50,529.60 to the Receiver, $61,019.60 to Counsel for the Receiver, $140,857.02 to the Forensic Accountant for the Receiver, and $7,719.44 to Stretto as the administrative and claims agent for the Receiver. The Receiver paid fees and expenses of professionals employed in the ordinary course of business in the total amount of $47,909.76 for the period between from January 1, 2026, through March 31, 2026.

## VII.    CONCLUSION

80.    The Receiver and the professionals of the Receiver appreciate the opportunity to assist the Court in this matter. Until further order of the Court, the Receiver and the professionals of the Receiver professionals will continue their

efforts, as discussed herein, to fulfill the duties of the Receiver under the Appointment Order in the most cost-effective manner while seeking to maximize the ultimate recovery by the Receivership Estate.

Respectfully submitted this 30th day of April, 2026.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Counsel for the Receiver
Law Offices of Henry F. Sewell, Jr.
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

## CERTIFICATE OF SERVICE, FONT AND MARGINS

I hereby certify that I electronically filed the foregoing using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record.

I further certify that I prepared this document in 14-point Times New Roman font and complied with the margin and type requirements of this Court.

Dated: April 30, 2026.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr. Georgia Bar No. 636265
Counsel for the Receiver
Law Offices of Henry F. Sewell, Jr.
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

EXHIBIT A

# A. Settlement Statement

**U.S. Department of Housing and Urban Development**

OMB Approval No. 2502-0265

| **B. Type of Loan** | | | | |
|---|---|---|---|---|
| 1. ☐ FHA   2. ☐ RHS   3. ☒ Conv. Unins.<br>4. ☐ VA   5. ☐ Conv. Ins. | 6. File Number<br>26-0183B | | 7. Loan Number | 8. Mortgage Insurance Case Number |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| TERRI  DAVIDSON INGRAM<br>9 E. Broad Street<br>Newnan, GA 30263 | FIRST NATIONAL INVESTMENTS LLC<br>P.O. Box 2567<br>Newnan, GA 30264 | The Peoples Bank |

| G. Property Location | H. Settlement Agent |
|---|---|
| 14 Greenville Street & 9 E. Broad Street<br>Newnan, GA 30263 | HARTLEY, ROWE & FOWLER, P.C |

| | Place of Settlement<br>12301 VETERANS MEMORIAL HIGHWAY<br>DOUGLASVILLE, GA 30134<br>770-920-2000 | I. Settlement Date<br>02/24/2026<br>DD:   02/24/2026 |

| **J. SUMMARY OF BORROWER'S TRANSACTION:** | | **K. SUMMARY OF SELLER'S TRANSACTION:** | |
|---|---|---|---|
| **100.  GROSS AMOUNT DUE FROM BORROWER** | | **400.  GROSS AMOUNT DUE TO SELLER** | |
| 101.  Contract sales price | 606,000.00 | 401.  Contract sales price | 606,000.00 |
| 102.  Personal property | | 402.  Personal property | |
| 103.  Settlement charges to borrower (line 1400) | 11,755.00 | 403. | |
| 104.  PAYOFF TO SERVISFIRST BANK | 87,343.00 | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106.  City/town taxes          to | | 406.  City/town taxes          to | |
| 107.  County taxes          to | | 407.  County taxes          to | |
| 108.  Assessments          to | | 408.  Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120.  GROSS AMOUNT DUE FROM BORROWER** | 705,098.00 | **420.  GROSS AMOUNT DUE TO SELLER** | 606,000.00 |
| **200.  AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500.  REDUCTIONS IN AMOUNT TO SELLER** | |
| 201.  Deposit or earnest money | 60,600.00 | 501.  Excess Deposit (see instructions) | 60,600.00 |
| 202.  Principal amount of new loan(s) | 644,176.64 | 502.  Settlement charges to seller (line 1400) | 25,240.00 |
| 203.  Existing loan(s) taken subject to | | 503.  Existing loans taken subject to | |
| 204. | | 504.  Payoff of first mortgage loan | |
| 205. | | 505.  Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507.  2025 Coweta County Taxes | 2,132.65 |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210.  City/town taxes          to | | 510.  City/town taxes          to | |
| 211.  County taxes      01/01  to  02/24 | 321.36 | 511.  County taxes      01/01  to  02/24 | 321.36 |
| 212.  Assessments          to | | 512.  Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516.  Disbursement to Escrow for Bates Payoff | 166,326.74 |
| 217. | | 517.  Disbursement to Receiver for First National Investments LLC | 351,379.25 |
| 218. | | 518. | |
| 219. | | 519. | |
| **220.  TOTAL PAID BY / FOR BORROWER** | 705,098.00 | **520.  TOTAL REDUCTION AMOUNT DUE SELLER** | 606,000.00 |
| **300.  CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600.  CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301.  Gross amount due from borrower (line 120) | 705,098.00 | 601.  Gross amount due to seller (line 420) | 606,000.00 |
| 302.  Less amounts paid by/for borrower (line 220) | 705,098.00 | 602.  Less reduction amount due to seller (line 520) | 606,000.00 |
| 303.  **CASH**          FROM          **BORROWER** | | 603.  **CASH**          TO          **SELLER** | |

form HUD-1 (3/86) ref Handbook 4305.2

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT    SETTLEMENT STATEMENT    PAGE 2

| L. SETTLEMENT CHARGES: | File Number: 26-0183B | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. **TOTAL SALES/BROKER'S COMMISSION based on price $** 606,000.00 @ 4.00 = 24,240.00 | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $ 24,240.00 to Bullseye Auction & Appraisal | | | |
| $ to | | | |
| $ to | | | |
| 702. $ to | | | |
| $ to | | | |
| $ to | | | |
| 703. Commission paid at Settlement | | | 24,240.00 |
| 704. Marketing Expense Reimbursemen to Bullseye Auction & Appraisal | | | 1,000.00 |
| 800. **ITEMS PAYABLE IN CONNECTION WITH LOAN** P.O.C. | | | |
| 801. Loan Origination Fee % The Peoples Bank | | 6,327.00 | |
| 802. Loan Discount % | | | |
| 803. Appraisal Fee to | | | |
| 804. Credit Report to | | | |
| 805. Lender's Inspection Fee to | | | |
| 806. Mtg. Ins. Application Fee to | | | |
| 807. Assumption Fee to | | | |
| 808. Appraisal Review Fee The Peoples Bank | | 355.00 | |
| 809. Lereta Flood Cert Fee X2 The Peoples Bank | | 19.00 | |
| 810. Future Release Fee The Peoples Bank | | 104.00 | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| 815. | | | |
| 900. **ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest from to @$ /day | | | |
| 902. Mortgage Insurance Premium to | | | |
| 903. Hazard Insurance Premium yrs. to | | | |
| 904. | | | |
| 905. | | | |
| 1000. **RESERVES DEPOSITED WITH LENDER FOR** | | | |
| 1001. Hazard Insurance mo. @$ / mo. | | | |
| 1002. Mortgage Insurance mo. @$ / mo. | | | |
| 1003. City property taxes mo. @$ / mo. | | | |
| 1004. County property taxes mo. @$ / mo. | | | |
| 1005. Annual Assessments mo. @$ / mo. | | | |
| 1006. mo. @$ / mo. | | | |
| 1007. mo. @$ / mo. | | | |
| 1008. Aggregate Reserve for Hazard/Flood Ins, City/Count | | | |
| 1100. **TITLE CHARGES** | | | |
| 1101. Settlement or closing fee to | | | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to Hartley Rowe & Fowler | | 600.00 | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to Hartley Rowe & Fowler | | 1,750.00 | |
| (includes above item No: ) | | | |
| 1108. Title insurance to CATIC Title Insurance Company | | 1,893.00 | |
| (includes above item No: ) | | | |
| 1109. Lender's coverage 644,176.64 --- 1,393.00 | | | |
| 1110. Owner's coverage 606,000.00 --- 500.00 | | | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| 1200. **GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording fees Deed $ ; Mortgage $ ; Releases $ | | | |
| 1202. City/county/stamps Deed $ ; Mortgage $ | | | |
| 1203. State tax/stamps Deed $ 606.00 ; Mortgage $ | | 606.00 | |
| 1204. Recording Fees | | 101.00 | |
| 1205. | | | |
| 1300. **ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey to | | | |
| 1302. Pest inspection to | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1400. **TOTAL SETTLEMENT CHARGES** (enter on lines 103 and 502, Sections J and K) | | 11,755.00 | 25,240.00 |

form HUD-1 (3/86) ref Handbook 4305.2

EXHIBIT B

**STANDARDIZED FUND ACCOUNTING REPORT for**
**Receivership in SEC v. Edwin Brant Frost IV and First Liberty Building & Loan LLC**
**Receivership; Civil Court Docket No. 1:25-cv-3826-MLB**
**Reporting Period 01/01/2026 to 03/31/2026**

| FUND ACCOUNTING (See Instructions:) | | Detail (for Current Period) | Subtotal (From Prior Period) | Grand Total (All Periods) |
|---|---|---|---|---|
| **Line 1** | **Beginning Balance** | $3,587,550.70 | | $0.00 |
| | *Increases in Fund Balance:* | | | |
| **Line 2** | **Business Income** | $3,459.00 | $17,682.75 | $21,141.75 |
| **Line 3** | **Cash and Securities** | $294,507.15 | $887,917.51 | $1,182,424.66 |
| **Line 4** | **Interest/Dividends Income** | $11,979.99 | $47,199.78 | $59,179.77 |
| **Line 5** | **Business Asset Liquidation** | $784,164.96 | $2,417,680.61 | $3,201,845.57 |
| **Line 6** | **Personal Asset Liquidation** | $159,800.00 | $130,950.99 | $290,750.99 |
| **Line 7** | **Third-Party Litigation Income** | $0.00 | $0.00 | $0.00 |
| **Line 8** | **Miscellaneous - Other (Attorney Escrows & Donations)** | $250.00 | $580,936.75 | $581,186.75 |
| | *Total Funds Available (Lines 1-8)* | *$4,841,711.80* | | *$5,336,529.49* |
| | *Decreases in Fund Balance:* | | | |
| **Line 9** | **Disbursements to Investors** | $0.00 | $0.00 | $0.00 |
| **Line 10** | **Disbursements for Receivership Operations** | | | |
| *Line 10a* | *Disbursements to Receiver or Other Professionals* | $299,823.53 | $412,556.31 | $712,379.84 |
| *Line 10b* | *Business Asset Expenses* | $46,246.25 | $82,261.38 | $128,507.63 |
| *Line 10c* | *Personal Asset Expenses (Includes monthly budget for Defendant(s))* | $0.00 | $0.00 | $0.00 |
| *Line 10d* | *Investment Expenses* | $0.00 | $0.00 | $0.00 |
| *Line 10e* | *Third-Party Litigation Expenses* | | | |
| | 1. Attorney Fees | $0.00 | $0.00 | $0.00 |
| | 2. Litigation Expenses | $0.00 | $0.00 | $0.00 |
| | *Total Third-Party Litigation Expenses* | *$0.00* | *$0.00* | *$0.00* |
| *Line 10f* | *Tax Administrator Fees and Bonds* | $0.00 | $0.00 | $0.00 |
| *Line 10g* | *Federal and State Tax Payments* | $0.00 | $0.00 | $0.00 |
| | **Total Disbursements for Receivership Operations** | **$346,069.78** | **$494,817.69** | **$840,887.47** |
| **Line 11** | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| *Line 11a* | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administration | $0.00 | $0.00 | $0.00 |
| | Independent Distribution Consultant (IDC) | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | *Total Plan Development Expenses* | *$0.00* | *$0.00* | *$0.00* |
| *Line 11b* | *Distribution Plan Implementation Expenses* | | | |
| | 1. Fees: | | | |
| | Fund Administration | $0.00 | $0.00 | $0.00 |
| | IDC | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Investor Identification | | | |
| | Notice/Publishing Approved Plan | $0.00 | $0.00 | $0.00 |
| | Claimant Identification | $0.00 | $0.00 | $0.00 |
| | Claims Processing | $0.00 | $0.00 | $0.00 |
| | Web Site Maintenance/Call Center | $0.00 | $0.00 | $0.00 |
| | 4. Fund Administrator Bond | $0.00 | $0.00 | $0.00 |
| | 5. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | $0.00 | $0.00 | $0.00 |
| | *Total Plan Implementation Expenses* | *$0.00* | *$0.00* | *$0.00* |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | | |

| Line 12 | **Disbursements to Court/Other:** | | | |
|---|---|---|---|---|
| Line 12a | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | $0.00 | $0.00 | $0.00 |
| Line 12b | *Federal Tax Payments* | $0.00 | $0.00 | $0.00 |
| | **Total Disbursement to Court/Other:** | $0.00 | $0.00 | $0.00 |
| | **Total Funds Disbursed (Line 9-11):** | $346,069.78 | $494,817.69 | $840,887.47 |
| Line 13 | **Ending Balance (As of 03/31/2026):** | $4,495,642.02 | | $4,495,642.02 |
| Line 14 | **Ending Balance of Fund - Net Assets:** | | | |
| Line 14a | *Cash & Cash Equivalents* | $4,495,642.02 | $0.00 | $4,495,642.02 |
| Line 14b | *Investments* | $0.00 | $0.00 | $0.00 |
| Line 14c | *Other Assets or Uncleared Funds (Frozen Accounts)* | $0.00 | $0.00 | $0.00 |
| | **Total Ending Balance of Fund - Net Assets** | $4,495,642.02 | $0.00 | $4,495,642.02 |

**OTHER SUPPLEMENTAL INFORMATION:**

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | **Report of Items NOT To Be Paid by the Fund:** | | | |
| Line 15 | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| Line 15a | *Plan Development Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | $0.00 | $0.00 | $0.00 |
| | Fund Administrator | $0.00 | $0.00 | $0.00 |
| | IDC | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | *Total Plan Development Expenses Not Paid by the Fund* | *$0.00* | *$0.00* | *$0.00* |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | $0.00 | $0.00 | $0.00 |
| | IDC | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan | $0.00 | $0.00 | $0.00 |
| | Claimant Identification | $0.00 | $0.00 | $0.00 |
| | Claims Processing | $0.00 | $0.00 | $0.00 |
| | Web Site Maintenance/Call Center | $0.00 | $0.00 | $0.00 |
| | 4. Fund Administrator Bond | $0.00 | $0.00 | $0.00 |
| | 5. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | 6. FAIR Reporting Expenses | $0.00 | $0.00 | $0.00 |
| | Total Plan Implementation Expenses Not Paid by the Fund | $0.00 | $0.00 | $0.00 |
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | $0.00 | $0.00 | $0.00 |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | |
| Line 16 | **Disbursements to Court/Other Not Paid by the Fund:** | | | |
| Line 16a | *Investment Expenses/CRIS Fees* | $0.00 | $0.00 | $0.00 |
| Line 16b | *Federal Tax Payments* | $0.00 | $0.00 | $0.00 |
| | **Total disbursements to Court/Other Not Paid by Fund:** | | | |
| Line 17 | **DC & State Tax Payments** | $0.00 | $0.00 | $0.00 |
| Line 18 | **No. of Claims:** | | | |
| Line 18a | # of Claims Received This Reporting Period | | | 0 |
| Line 18b | # of Claims Received Since Inception of Fund | | | 0 |
| Line 19 | **No. of Claimants/Investors:** | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | | | 0 |
| Line 19b | # of claimants/Investors Paid Since Inception of Fund | | | 0 |

Receiver:

By: */s/ S. Gregory Hays*

  (signature)

S. Gregory Hays

(printed name)

Receiver

(title)

Date: April 17, 2026