**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Civil Action File No. |
| | : | 1:25-cv-3826-MLB |
| v. | : | |
| | : | |
| EDWIN BRANT FROST IV and | : | |
| FIRST LIBERTY BUILDING & LOAN, LLC, | : | |
| | : | |
| Defendants, and | : | |
| | : | |
| FIRST LIBERTY CAPITAL PARTNERS | : | |
| LLC, FIRST NATIONAL INVESTMENTS | : | |
| LLC, MYHEALTHAI CAPITAL LLC, | : | |
| THE LEGACY ADVISORY GROUP INC., | : | |
| and THE LIBERTY GROUP LLC, | : | |
| | : | |
| Relief Defendants. | : | |

**LIQUIDATION PLAN**

S. Gregory Hays, as Court-Appointed Receiver ("**Receiver**") pursuant to the

*Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment**

**Order**") that was entered in the above-captioned case (the **"Case"** or

"**Receivership**"), by and through counsel, hereby submits this Liquidation Plan

setting forth the plan of the Receiver for the fair, reasonable, and efficient recovery

and liquidation of all remaining, recovered, and recoverable property of the estate in

this Receivership (the "**Estate**") in accordance with the duties of the Receiver under the Appointment Order.[1]

## LIQUIDATION PLAN

1.     Pursuant to paragraphs 52 and 53 of the Appointment Order, the Receiver has formulated a preliminary plan of liquidation for the recovered and recoverable assets of the Estate based on the investigation and analysis of the value, condition, and saleability of each of those assets. The Receiver will seek Court approval prior to selling all real property and personal property (outside the ordinary court of business) and deposit the sale proceeds in the Receiver's fiduciary account for the Estate. In the reconciliation of this fiduciary account, the Receiver will keep track of the net sale proceeds to be attributed to each liquidated asset.

2.     The Reports contain a listing and description of all assets known to the Receiver. This Liquidation Plan should be read in conjunction with the Reports and is intended to summarize the plan of liquidation of such assets.

---

[1] The Receiver previously filed an initial status report on July 21, 2025 [Doc. No. 14], a First Quarterly Report of Receiver [Doc. No. 32] for the period from July 11, 2025, through September 30, 2025 (the "**First Report**"), a Second Quarterly Report of Receiver [Doc. No. 73] for the period from October 1, 2025, through December 31, 2025 (the "**Second Report**"), and Third Quarterly Report of Receiver [Doc. No. 85] (the "**Third Repor**t" and collectively, the "**Reports**") for the period of January 1, 2026, through March 31, 2026. Capitalized, but undefined terms used herein shall have the meaning ascribed to such terms in the Third Report.

## I.  Liquidated Assets.

3.      As reported in the Third Report, the Receiver has taken possession of $896,455.40 in bank accounts of the Receivership Entities, seized and sought the liquidation of certain Receivership Assets, analyzed, evaluated, and initiated collection efforts with regard to the loans made by the Receivership Entities. As of March 31, 2026, the Receivership Estate held $4,495,642.02 in cash-on-hand in the fiduciary accounts for the Receivership Estate. This sum includes the amount of $2,397,680.61 that was wired to the Receivership by 2406 Cancer Care LLC ("**Cancer Care**"). The circumstances surrounding this tender are explained in the Third Report.

4.      The Receiver has not located any other cash or cryptocurrency attributable to the Receivership Entities or their investors.  If the Receiver locates such assets, those assets will be liquidated as necessary and transferred to the fiduciary account of the Estate.

## II. Expansion of the Receivership

5.      The Receiver has filed a *Motion by Receiver to Expand Receivership With Brief in Support Thereof* (Doc No. 84) (the "**Motion to Expand**"). In the Motion to Expand, the Receiver proposes to add ten (10) entities to the Receivership

to be treated as Receivership Entities under the Appointment Order. As indicated in the Third Report, the Receiver took possession of $283,165.96 in affiliated bank accounts at Truist Bank. The affiliated entities holding these bank accounts are the same entities to be added pursuant to the Motion to Expand referenced above. The Receiver took possession of these funds to ensure their safekeeping. In the event that the Motion to Expand is granted, assets added to the Estate will be detailed in a subsequent report.

### III.      Newnan Office and Vehicles

6.      As noted in the Second Report, the Receiver marshaled control of certain real property located at 14 Greenville St, Newnan, GA 30263 (the "**Newnan Office**") and secured the turnover of ownership and control of certain vehicles. The Court entered an order [Doc. No. 38] authorizing the Receiver to employ an auctioneer to sell such property.

7.      The sale of the vehicles was detailed in the Second Report and resulted in net proceeds of $138,883.42 being paid to the Receiver. A summary of the vehicles and sale amounts is provided below:

a) 2021 Cadillac Escalade: $60,250.00;

b) 2011 Land Rover Range Rover Sport: $23,400.00;

c) 2006 Ashton Martin: $42,150.00;

d) 2011 Land Rover Range Rover Sport: $11,400.00; and

e) 2017 Land Rover Range Rover: $22,600.00.

8. With respect to the sale of the Newnan Office, the sale of the Newnan Office that was detailed in the Third Report and resulted in net proceeds of $578,306 being paid to the Receiver. There was one lien asserted against the Newnan Office in the amount of $166,326.74 that was disputed by the Receiver. This lien was asserted by an investor who also received substantial distributions from the Receivership Entities. Ultimately, the Receiver agreed with that investor to have the investor release its lien against the Newnan Property with such investor reserving a claim against the proceeds to be resolved at a later date and upon further investigation of the disbursements made to that investor.

## IV.   LOANS

9. As detailed in the Reports, the primary asset of the Receivership consists of approximately sixty (60) individual, defaulted loans. In some cases, individual borrowers hold several loans in their or affiliate names. The Receiver continues to anticipate that the process of collecting these loans will be an expensive and protracted process which will take many months and will require litigation. The Receiver anticipates that many of the borrowers and guarantors will have not sufficient assets to pay back their loans to the Receivership.

10. All of the loan agreements reviewed to date by the Receiver provide for default interest, the collection of attorney's fees and litigation expenses and the Receiver will seek to recover those expenses to the fullest extent possible along with default interest. The Receiver cannot predict, at this point, the amounts that may be recovered on these loans and there are a number of loans that the Receiver is still evaluating and for which the Receiver is collecting information.

## A. Curepoint LLC (CP 1), Daniel Dooley, Philip Miles, Mark Miles, and Physician Financial Partners, LLC

11. As noted in the Second Report, the Receiver reached a final settlement with Liquidating Bankruptcy Trustee for Curepoint LLC ("**Curepoint**") that has been approved by this Court and the Bankruptcy Court in the Curepoint Bankruptcy Case. On or about March 23, 2026, the Receiver received a distribution of $205,358.97. This settlement will still leave a substantial deficiency that the Receiver will seek to recover from the guarantors of the loans to Curepoint.

## B. 2406 Cancer Care LLC, Erich G. Randolph, and Philip Miles (CP 2)

12. As detailed in the Reports, Cancer Care entered certain loans secured by certain collateral and guarantees by Eric Randolph, Aaron Williams, and Philip Miles. The amount due by Cancer Care includes an obligation involving Moneyline Ventures, LLC.

13. Cancer Care has disputed certain amounts due under the obligations

due to the Receivership Entities and tendered a payment to the Receiver on December 30, 2025, in the amount of $2,397,680.61. While Cancer Care has alleged that such amount would satisfy the obligation of Cancer Care to the Receivership Entities if approved by the Court, the Receiver has disputed that this tender constitutes full payment of the obligations of Cancer Care and continues to hold this amount.

14.    The Receiver has had discussions with counsel for Cancer Care about a resolution of this matter, but no resolution has been reached as of this filing.

## C. Urohealth, LLC and Philip Miles

15.    As detailed in the Reports, UroHealth, LLC ("**Uro**"), another entity owned or controlled by Philip Miles, entered loans secured by certain collateral and a guaranty by Philip Miles. Mr. Miles has retained counsel to represent him in this case. The Receiver has been in contact with that counsel and has requested additional information from the borrower.

## D. ZeroHolding, LLC, Mark Miles, and Philip Miles

16.    As detailed in the Reports, ZeroHolding, LLC (the "**Zero**"), which is the debtor in Chapter 11 Case No. 22-56502-JWC pending in the United States Bankruptcy Court for the Northern District of Georgia, entered a loan that references guarantees by Mark Miles and Philip Miles. The Receiver continues to investigate

this obligation.

## E. Haven and Lisa Brown

17.    As detailed in the Reports, Lisa Brown caused certain entities owned and controlled by Ms. Brown, including Haven Memory Care of Athens, LLC ("**HMCA**"), Haven Real Estate Holdings of Athens LLC ("**HREHA**"), and Haven Real Estate Holdings of Winder, LLC ("**Haven Winder**"), to enter certain loans secured by certain collateral and guarantees. The Receiver has sent notices of default on the loans and prepared a complaint against the borrowers and Lisa Brown to recover the obligation due to the Receivership Entities.

18.    As indicated in the Third Report, the Receiver has attempted to negotiate with counsel for Ms. Brown to seek a negotiated resolution of these obligations. Ms. Brown has failed to come forward with any refinancing and the Receiver has determined that she been given more than sufficient time to resolve this matter.

## F. Product Design Innovations LLC-Chisel Fit

19.    As detailed in the Reports, Product Design Innovations LLC entered a loan secured by a second lien on an Ocala FL residence owned by Mr. and Ms. Ellis and adjoining commercial property owned by Margaret Brown and a guaranty by Joseph K. Ellis. The Receiver did not receive a response to the default notice sent by

the Receiver and is currently attempting to determine whether any recovery is possible on this loan.

**G. Dr. Jerry Williams, No Free, LLC and Riverdawg LLC**

20.    As further detailed in the Reports, Riverdawg, LLC ("**Riverdawg**") and No Free, LLC ("**No Free**"), entities owned or controlled by Jerry K. Williams ("**Dr. Williams**"), received a significant amount of proceeds from the Receivership Entities and agreed that such obligations would be repaid pursuant to the terms of the documents underlying their obligations. Such obligations are secured by guarantees by Dr. Williams and Urgent Care 247, LLC aka Urgent Care 24/7 ("**UC**"), another entity owned or controlled by Dr. Williams, and collateral identified in pertinent documents (the "**Williams Collateral**"). This matter is subject to pending litigation.

**H. Tie and Timber Technologies, LLC**

21.    As further detailed in the Reports, Tie and Timber Technologies, LLC ("**T3**") received a significant amount of proceeds from the Receivership Entities and agreed that such obligations would be repaid pursuant to the terms of the documents underlying the obligations of T3 to the Receivership Entities. Such obligations are secured by certain equipment and real property located at 301 S. Cyprus St., Mullins, SC (the "**T3 Collateral**"). The manager of T3 has agreed to cooperate with the

Receiver in auctioning the T3 Collateral. Incident thereto, the Receiver has initiated preliminary efforts by an auctioneer and is preparing a motion to seek authority to sell the T3 Collateral via an auction and employ auctioneers to conduct the sale.

## I.  David Pike and Full Circle LLC aka Normal Recovery

22.    As further detailed in the Reports, Full Circle LLC aka Normal Recovery ("**Full Circle**"), entered a loan secured by real property of Timeless Acquisitions LLC and Full Circle in Walton County, Georgia at the intersection of George Pike Sr. Parkway and Bethany Church Road (the "**Walton Collateral**"), all property of Full Circle, and guarantees by David Pike, David Pike II and Christie Pike Nelson. The Receiver is currently documenting a proposed settlement regarding this obligation.

## J.  FibRETech LLC and Rendell Schmidt

23.    As further detailed in the Reports, FibRETech LLC ("**FibRETech**") entered a loans secured by certain property and a guaranty by Rendell Schmidt. The only piece of collateral remaining is a horizontal grinder in North Carolina that cost approximately $365,0000. The Receiver is in the process of recovering the grinder with the intention of selling the grinder potentially in conjunction with the sale of the T3 Collateral and has also had negotiations with Mr. Schmidt's attorney regarding a resolution of his guaranty claim.

### K. Christopher Ridgeway and Stone Capital Group LLC

24.      As further detailed in the Reports, Stone Capital Group LLC ("**Stone**") entered loans secured by two personal residences of Christopher Ridgeway in Alys Beach, FL and Matarie LA, and all assets of Stone, a guaranty of Christopher Ridgeway and certain medical equipment A foreclosure was started on Alys Beach FL home and the matter is now tied up in arbitration. The Receiver is evaluating liquidation options regarding this matter.

### L. Specialty Surgery Center Inc., Harvey Cole, Atlanta Oculoplastic Surgery, Scott Honan

25.      As further detailed in the Reports, Specialty Surgery Center Inc. ("**Specialty**") entered loans that are secured by certain collateral and guarantees.

26.      A guarantor, Harvey Cole, has sought bankruptcy protection. The Receiver is currently analyzing his enforcement options and is weighing the cost of further enforcement actions against the availability of recoverable assets.

### M. Honan Preferred Equity and Scott C. Honan

27.      As further detailed in the Reports, entities owned by, controlled by, and/or related to Scott C. Honan, Honan Preferred Equity, L&S Regional One MOB I, LLC – Memphis, and Glenridge Point SPE LLC, a DE LLC (or Glenridge Lifehope SPE, a DE LLC), entered certain loans secured by certain collateral and guarantees. The Receiver is currently analyzing his enforcement options and is

11

weighing the cost of further enforcement actions against the availability of recoverable assets.

## N. 11680 Royal Ridge SH, LLC and Scott C. Honan

28.    As further detailed in the Reports, 11680 Royal Ridge SH, LLC entered certain loans that are among the number of loans in which Mr. Honan is involved. The Receiver is currently analyzing his enforcement options and is weighing the cost of further enforcement actions against the availability of recoverable assets.

## O. Conquest Commercial Funding, LLC

29.    As further detailed in the Reports, Conquest Commercial Funding, LLC ("**Conquest**") entered a loan guaranteed by Jorge Martinez. Mr. Martinez sought bankruptcy protection in Florida. While it does not appear that there will be any assets available for distribution in such bankruptcy case, the Receiver has prepared a proof of claim to be filed in the bankruptcy case of Mr. Martinez. At present, the Receiver is uncertain about the collectability of this loan.

## P. Ecofusion LLC, Ernest E. Jones, Jr. Joseph MA Coalla, and Ralph Reed

30.    As further detailed in the Reports, Ecofusion LLC ("**Ecofusion**") entered a loan secured by all assets of the borrower and guarantees by Ernest E. Jones, Jr. Joseph Coalla, and possibly others. The Receiver is currently analyzing his enforcement options and is weighing the cost of further enforcement actions

12

against the availability of recoverable assets.

**Q. 2304 GP LLC, Brandi Kirkland, and Bret Tomlinson**

31.    As further detailed in the Reports, 2304 GP LLC ("**Grand Prairie**") entered loans secured by certain collateral and guarantees by Brandi Kirkland and Bret Tomlinson and the obligation was subject to a settlement prior to the appointment of the Receiver. Ms. Kirkland has disputed an alleged breach of such settlement. The Receiver is reviewing this matter and, unless the matter can be resolved, the Receiver will proceed to litigate the matter.

**R. DI Development LLC, Brent E. Myers and Timothy L. Miller**

32.    As further detailed in the Reports, DI Development LLC entered a loan dated secured by real estate in Gainesville GA and Port St. Lucie FL and guarantees by Brent E. Myers and Timothy L. Miller. The Receiver continues to seek a resolution of this matter.

**S.  Emergent Testing Labs, LLC dba Lux Diagnostics, Jonathan Goss, and Kraken Enterprises, LLC**

33.    As further detailed in the Reports, Emergent Testing Labs, LLC dba Lux Diagnostics, ("**ETL**") and Kraken Enterprises, LLC ("**Kraken**"), entities owned by, controlled by, and/or related to Jonathan Goss, entered loans secured by certain collateral and guarantees by Jonathan Goss with the obligation of Kraken also being guaranteed by ETL. A very large IRS tax lien has been filed against Mr.

13

Goss that may impede any collection of these obligations.

34.     Mr. Goss has now made a settlement proposal to the Receiver that the Receiver is considering.

## T.  Undocumented Loans

35.     The Receiver continues to investigate whether additional loans exist or can be documented.

## U.  My Health AI

36.     The Receiver continues to investigate the loans involving My Health AI that were detailed in the Reports.

## V.  Other Assets

### A.  Winder Property

37.     As further detailed in the Reports, the most significant other asset held by the Receivership is certain real property located at 169 W. Athens St., Winder, Georgia (the "**Winder Property**") that is subject to an unsubstantiated claim by Haven Winder, which is controlled by Lisa Brown. The Receiver currently plans on filing a motion for authority to sell the Winder Property.

### B.  Miscellaneous Property Recovered

38.     The Receiver located in the Newnan Office twelve 20 Count 1 oz Buffalo Silver Round Coins. The Receiver has now recovered $18,499 from the sale

of these coins.

39.     The Receiver also recovered and deposited $639.20 in cash from the Newnan Office during the cleanout of the space.

40.     The Receiver also recovered and deposited $97,391.83 from Berkshire Hathaway Homestate Insurance Company for water damage at the Winder Property.

41.     The Receiver closed the remaining bank accounts of the Receivership Entities at Truist Bank and transferred $10,701.99 to Receiver bank accounts.

42.     The Receiver sold miscellaneous furniture located at 14 Greenville Street for $500.

43.     The Receiver earned interest totaling $11,979.99 on deposits through March 31, 2026 and an additional $4,367.36 in interest was earned through April 30, 2026.

44.     An additional $250.00 in political contributions were returned.

## C. Other Liquidated and Unliquidated Claims

45.     The Receiver continued to investigate whether the Receivership has liquidated and unliquidated claims against third parties, affiliates, insiders, and investors of the Receivership Entities who received net gains. The Receiver and the professionals of the Receiver have begun compiling avenues of potential recoveries for the benefit of the Receivership; however, the focus of the Receiver has been

collection of the outstanding loans.

46.    As noted in the Reports, the Receiver has identified a number of contributions to political candidates. The Receivership Entities appears to have directly, indirectly or through the Frost family made almost 1,000 political "donations" totaling over $1 million using investor funds. There has been extensive media coverage of these campaign contributions since the appointment of the Receiver. With regard to such contributions, Secretary of State Brad Raffensperger has urged any political entity that accepted contributions from Receivership Entities, the Frost Family, or any of their affiliates to return those contributions to the Receiver so that victims may be made whole.

47.    Over $300,000 in campaign or charitable contributions have already been returned to the Receiver. Any politician wishing to return campaign contributions or other disbursement received from the Receivership Entities or Frost family should return them directly to the Receiver at Suite 555, 2964 Peachtree Road NW, Atlanta, Georgia 30305. The Receiver has deposited all such funds in a segregated account. When the Receiver has obtained sufficient information to report on these campaign contributions, the Receiver will file a report detailing the campaign contributions and the extent to which such contributions have been voluntarily returned.

48. The Receiver is also scrutinizing the improper use of investor funds used as charitable donations or campaign contributions and will seek the return of all such funds to the fullest extent permitted by applicable law.

49. The Receiver and the professionals of the Receiver also continue to examine assets that may be recovered from Frost and other parties, including, but not limited to assets: a) attributable to funds derived from investors or clients of the Receivership Entities or the Defendants; b) held in constructive trust for the Receivership Entities; and/or c) that may otherwise be includable as Recoverable Assets, as that term is defined in the Appointment Order.

50. The Receiver and his professionals will continue to analyze potential sources of recovery and gather evidence for purposes of developing and pursuing claims the Receivership Estate may have to recover funds or other assets belonging to or improperly transferred from the Receivership Entities, including without limitation turnover and fraudulent transfer actions, as is appropriate and authorized by the Court. Further, the Receiver is investigating the potential claims of the Receivership Entities against professionals and institutions that may have facilitated the alleged misconduct of Defendants or otherwise contributed to the damages alleged to have been sustained by investors. The Receiver will complete the investigation of those claims, and after consultation with the SEC, pursue those

claims that the Receiver believes are meritorious and likely to result in a significant recovery for the Receivership Estate.

## I. CONCLUSION

The Receiver and the professionals of the Receiver appreciate the opportunity to assist the Court in this matter. Until further order of the Court, the Receiver and the professionals of the Receiver professionals will continue to implement this Liquidate Plan, as discussed herein, to fulfill the duties of the Receiver under the Appointment Order in the most cost-effective manner while seeking to maximize the ultimate recovery by the Estate. The Receiver will update this Plan of Liquidation in future quarterly status reports as the Receiver gains additional information concerning the value of the remaining assets and value and viability of potential claims.

Respectfully submitted this 7th day of May, 2026.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Counsel for the Receiver
Law Offices of Henry F. Sewell, Jr.
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053; hsewell@sewellfirm.com

## <u>CERTIFICATE OF SERVICE, FONT AND MARGINS</u>

I hereby certify that I electronically filed the foregoing using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record.

I further certify that I prepared this document in 14-point Times New Roman font and complied with the margin and type requirements of this Court.

Dated: May 7, 2026.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr. Georgia Bar No. 636265
Counsel for the Receiver
Law Offices of Henry F. Sewell, Jr.
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com