**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC,<br><br>    Defendants, and<br><br>FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC,<br><br>    Relief Defendants. | :<br>:<br>:<br>:<br>:<br>: CIVIL ACTION NO.<br>:<br>: 1:25-cv-03826-MLB<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**BRIEF IN SUPPORT OF**
**MOVANTS LISA BROWN'S AND HAVEN REAL ESTATE**
**HOLDINGS OF WINDER, LLC'S MOTION TO INTERVENE AS**
**OF RIGHT, OR IN THE ALTERNATIVE, PERMISSIVELY,**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24,**
**AND FOR LIMITED MODIFICATION OF THE LITIGATION STAY**

**INTRODUCTION**

Movants Lisa Brown ("Brown") and Haven Real Estate Holdings of Winder,

LLC ("HREHW") (collectively, "Movants") submit this Brief in Support of their

1

Motion to Intervene as of Right, or in the Alternative, Permissively, Pursuant to Federal Rule of Civil Procedure 24, and for Limited Modification of the Litigation Stay, filed concurrently herewith. By this Motion, Movants seek leave to intervene in the above-captioned receivership action, and a limited modification of the litigation stay set forth at paragraphs 32–34 of the Order Appointing Receiver [Doc. 6] for the limited purpose of permitting this intervention and the assertion of the property-based interests described below.

Movants did not participate in the alleged Ponzi scheme orchestrated by Edwin Brant Frost IV ("Frost") and First Liberty Building & Loan, LLC ("FLB&L") through its affiliate First Liberty Capital Partners, LLC ("FLCP"), they are among its victims. The Order Appointing Receiver [Doc. 6] draws no distinction between defrauded borrowers and scheme participants, and the Court-appointed Receiver has exploited that breadth to Movants' grave prejudice.

In the eleven months since the Receiver's appointment, the Receiver has inflated the claimed indebtedness by approximately $1,334,197 in unsubstantiated interest and penalties, raising the base obligation from $2,442,471.65 to a claimed $3,776,668.82. He has refused to negotiate in good faith. He has refused to honor FLCP's written commitment to deed the property located at 169 West Athens Street, Winder, Georgia 30680 (the "Winder Property") to Brown's wholly owned entity, HREHW, upon completion of renovations, and he has affirmatively interfered with

a $3,955,000.00 arm's-length sale that would have retired Movants' loan obligations in full and returned substantial funds to defrauded investors. In the Receiver's submissions to this Court, he has now expressly designated the Winder Property as an asset "To be auctioned" in furtherance of his stated objective to "untangle and administer" the receivership's loan portfolio.

Movants hold a direct equitable interest in the Winder Property arising from HREHW's purchase of the property, Brown's substantial renovations that increased its value by over 300 percent, and Movants' documented reliance on FLCP's express written representations that title would be conveyed to HREHW upon completion of renovations and closing of a Small Business Administration ("SBA") refinancing loan. That interest is recognized under Georgia law, and it is precisely the kind of property-based interest Rule 24(a)(2) protects.

Pursuant to Federal Rule of Civil Procedure 24(c), Movants attach hereto as Exhibit 27 their Proposed Intervenor Petition setting out the limited relief for which intervention is sought.

## I.  FACTUAL BACKGROUND

### A. The Parties and the Alleged Ponzi Scheme

Brown is a registered nurse of twenty-five years, a medical entrepreneur, and the owner and operator of Haven Memory Care of Athens, LLC ("HMC of Athens"), which operates a memory care facility at 705 Whitehead Road, Athens, Georgia

30606 (the "Athens Location"). Brown is among the few, and possibly the only, solvent, profitable borrowers in FLCP's loan portfolio. *See* Doc. 59, Ex. 18, ¶ 1 (describing the receivership's portfolio of "approximately sixty (60) individual, defaulted loans").

HREHW is a Georgia limited liability company wholly owned by Brown, formed by Certificate of Organization dated January 23, 2024.

The Securities and Exchange Commission ("SEC") has sued FLB&L and Frost, alleging an approximately $140 million Ponzi scheme. *See* Ex. 2. According to the SEC, FLB&L solicited investor funds by misrepresenting the nature and safety of bridge loans made through FLCP and related entities, then deployed those funds to make loans to borrowers under false pretenses. Movants did not perpetrate the scheme, they were induced by the deceptive practices of Frost, his businesses, and the employees who facilitated his scheme.

**B. The Four Loan Transactions**

Between November 2022 and April 2025, three entities wholly owned by Brown executed four promissory notes payable to FLCP.

On November 16, 2022, HMC of Athens executed a $600,000 note (the "First Loan") to fund improvements to the Athens Location. Ex. 3.

On May 23, 2023, HMC of Athens executed a second note for $1,700,000 (the "Second Loan") to fund further improvements and working capital. Ex. 4.

On January 24, 2024, HREHW executed a $2,000,000 note (the "Third Loan") to fund the purchase and renovation of the Winder Property. Ex. 5.

On April 23, 2025, Haven Real Estate of Athens, LLC ("HRE of Athens") executed a $2,000,000 note (the "Fourth Loan") to fund additional improvements at the Athens Location and to refinance existing debt, including a $1,177,486.67 payoff to Bank of the Ozarks. The Fourth Loan documents contain cross-default and cross-collateralization provisions linking all four loans, together with deeds to secure debt against the Athens Location, the Snellville location, and Brown's personal residence in Greensboro, Greene County, Georgia. Ex. 13.

The four notes reflect $6,300,000 in nominal principal. Movants' base obligation, calculated on actual economic benefit received and absent the Receiver's imposed interest and penalties, is approximately $2,442,471.65 after a $2,503,497.00 payoff made to FLCP from the May 19, 2025 sale of the Snellville location. Exs. 12.

## C. FLCP's Misrepresentations Concerning SBA Refinancing

FLCP, through Frost, induced each loan with the same material misrepresentation, namely, that the bridge loans would be wrapped into a single SBA loan upon completion of the renovations. Movants relied on that representation in entering each note, in undertaking substantial renovations, and in permitting FLCP to pay off Movants' existing Bank of the Ozarks debt. The course of dealing began

on October 11, 2022, when Frost sent Brown a text message representing the Winder Property's then-current loan as $750,000 and approximate value as $1,700,000, and inviting Brown to "take over" the facility. Ex. 8. On July 24, 2023, Frost again texted Brown, "I really need you to take over [the Winder] facility . . . there is $1M+ in future value for you there if you can help me." Ex. 9.

In a January 31, 2024 email, Frost confirmed in writing that FLCP would hold title to the Winder Property only temporarily, stating in pertinent part, "I'd have her deed it to us, and then we'll deed it to you after the renovations are complete and at the close of the SBA loan." Ex. 6. Approximately one week later, on February 5, 2024, Brown and Frost jointly executed and transmitted vacate notices to the existing tenants of the Winder Property. Those notices were issued on letterhead identifying "Lisa Brown, Haven Senior Living" and "Brant Frost IV, First Liberty Building & Loan" as co-signatories. Ex. 22. On February 9, 2024, the prior owner of the Winder Property executed a Warranty Deed in Lieu of Foreclosure to FLCP, recorded at Barrow County Deed Book 2819, Page 638. FLCP took legal title through that deed-in-lieu, the very mechanism Frost described one week earlier, and held title with the express commitment to convey to HREHW upon completion of the renovations. Ex. 21. In a June 2, 2025 email, sent in connection with HREHW's efforts to sell the Winder Property to a third-party buyer, Frost reconfirmed the arrangement, writing

6

that "the buyers broker knows it's in our name and u/c to you. He said he saw no issues as long as his buyers receive the title at closing free of encumbrances." Ex. 7.

The SBA refinancing never came. FLCP never intended to deliver it. Beginning in May 2025, Brown, in writing, repeatedly requested payoff statements after multiple verbal requests. Ex. 29. FLCP repeatedly refused to provide them, leaving Brown without the information she needed to assess her exposure or make informed financial decisions.

**D. HREHW's Acquisition, Possession, and Renovation of the Winder Property**

HREHW acquired the equitable interest in the Winder Property in February 2024. At the time of acquisition, the Winder Property operated as a 22-unit personal care home with a loan balance of $750,000 and an estimated value of approximately $1,700,000. Ex. 8. Brown personally invested substantial capital, professional expertise, and direct managerial effort in transforming the property into a 36-unit assisted living facility, adding fourteen units and significantly upgrading the facility's amenities and operations.

As reflected in the Real Estate Purchase Agreement executed May 23, 2025, the improvements increased the Winder Property's value to approximately $3,955,000, an appreciation exceeding 300 percent. Ex. 10.

HREHW was identified as the party under contract for the Winder Property, exercised dominion and control over it, executed joint vacate notices with FLCP,

7

and invested Brown's professional reputation in the property's preparation to operate as a care facility.

## E.  The Pending Sale and the Receiver's Interference

The $3,955,000 purchase price reflected in the executed Winder Purchase Agreement was more than sufficient to retire Movants' obligations to FLCP in full and to return material funds to defrauded investors. The Purchase Agreement, at Modifications Item 7, expressly conditioned closing on the Seller's acquisition of "good and marketable title" within ten (10) days of the Effective Date. Ex. 10 (Modifications Item 7).

The sale should have been the end of the matter. The Receiver, however, refused to provide clear title and refused to honor FLCP's prior written commitment to deed the property to HREHW. The resulting title defect prevented the buyer from satisfying its closing contingency and obtaining title insurance. On July 16, 2025, the buyer terminated the agreement. Ex. 11. The Receiver's interference cost the receivership estate, the defrauded investors, and Movants a $3,955,000 recovery.

## F.  The Receiver's Conduct and Inflation of the Claimed Indebtedness

On July 11, 2025, this Court appointed S. Gregory Hays as Receiver. Ex. 1. Receiver's counsel, Henry F. Sewell, Jr., Esq., assumed negotiations with Movants. Despite repeated demands evidenced by Movants' counsel's August 15, 2025 letter and August 22, 2025 letter, the Receiver refused to provide timely payoff statements

8

as required by O.C.G.A. § 44-14-3 and O.C.G.A. § 11-9-210. In the August 15 letter, Movants' counsel transmitted an accounting calculating the outstanding balance at $743,888.14 based on principal and simple interest at 18% per annum. Ex. 14. The August 22 letter demanded a payoff statement by August 27, 2025; the Receiver missed the deadline, and on August 27 instead placed the onus on Movants to provide their own payoff statement. Ex. 14. Movants' counsel set a renewed seven-day deadline on September 8. Ex. 14. The Receiver finally responded on September 23, 2025, more than a month after the initial request, with payoff letters totaling $3,565,232.33, including $82,687.50 in penalties and $1,165,565.71 in interest. Ex. 15. The Receiver supplied no contemporaneous documentation justifying the charges and offered no explanation of how he calculated them. Ex. 15.

The Receiver's subsequent conduct has compounded the harm. He has refused to honor FLCP's original deeding commitment. He has demanded payments and penalties without substantiation, as set forth in the November 30, 2025 Athens Payoff Calculation. Ex. 20. He has repeatedly threatened foreclosure on the Athens Location and Brown's personal residence. Ex. 23. He has stated an intent, through his Motion to Establish Procedures, to "untangle and administer" the receivership's loan portfolio. Ex. 18 (Doc. 59, ¶ 1). He has since formally reiterated that enforcement posture in his Sworn Statement and Accounting, advising borrowers that they "should expect the Receiver to fully enforce and collect all loans to the

9

fullest extent possible," identifying unpaid loans as "the primary assets of the Receivership," and expressly designating the Winder Property itself as an unliquidated Receivership asset "To be auctioned." Ex. 30 ¶¶ 14, 16 & Ex. A. The Receiver has refused to negotiate in good faith.

### G. Movants' Good-Faith Negotiation Efforts and the Procedures Order

Throughout the months following the Receiver's appointment, Movants pursued resolution rather than litigation. Movants' counsel provided a detailed loan accounting on August 15, 2025, demanded a payoff statement on August 22, 2025, renewed that demand on September 8, 2025, received the Receiver's belated payoff letters on September 23, 2025, offered on October 1, 2025 to pay off the loans if the Receiver would honor the original deeding agreement, attempted further settlement negotiations regarding the Winder Property on October 16, 2025, and continued forbearance and refinancing discussions through November and December 2025. Ex. 14. On January 6, 2026, the Receiver terminated a scheduled foreclosure sale on the Athens Location. Ex. 16.

On December 3, 2025, this Court entered an Order directing the consideration of procedures for third parties to intervene in this action. On December 14, 2025, the Receiver filed his Response and Motion to Establish Procedures [Doc. 59]. Ex. 18. Following a hearing on December 15, 2025, this Court entered its Order Establishing Procedures to Enter Action to Resolve Claims Arising From Loan Obligations Due

to the Receivership [Doc. 70] on January 27, 2026 (the "Procedures Order"). Ex. 19. Movants previously filed in this Court the Affidavit of Lisa M. Brown dated September 22, 2025, and the Affidavit of Kevin E. Epps dated October 15, 2025, each of which sets forth, under oath, the facts pertinent to this motion and each of which is incorporated herein by reference. Exs. 25, 26.

The Court has stayed all civil proceedings involving Receivership Property and the Receivership Entities under Section VII of the Order Appointing Receiver [Doc. 6, ¶¶ 32–34]. The stay encompasses HREHW's Verified Complaint for Specific Performance, filed in the Superior Court of Coweta County, Civil Action No. SUV2025000831, together with the contemporaneously-recorded Notice of Lis Pendens. Ex. 17. By this motion, Movants respectfully request a limited modification of the Section VII stay solely to permit the relief sought herein.

## II. ARGUMENT

### A. The Motion Is Timely Under the Stallworth Four-Factor Framework

Under *Stallworth v. Monsanto Co.*, timeliness turns on (1) the length of time the movant knew of her interest, (2) prejudice to existing parties from any delay, (3) prejudice to the movant if intervention is denied, and (4) the presence of unusual circumstances. 558 F.2d 257, 263–66 (5th Cir. 1977). *Stallworth* is binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209–10 (11th Cir. 1981) (en banc). The Eleventh Circuit has emphasized that timeliness "must have

11

accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (citation omitted). Each factor favors granting this motion.

### 1. The interval between the Receiver's appointment and the filing of this motion reflects diligence, not delay.

Approximately ten months elapsed between the Receiver's appointment on July 11, 2025 [Doc. 6] and the filing of this motion. During that period, Movants demanded loan accounting and payoff statements, made multiple settlement offers, attempted forbearance and refinancing negotiations, pursued a $3,955,000 third-party sale that would have ended the dispute on terms favorable to every stakeholder, and filed two affidavits placing the Court on notice of their position. Exs. 10, 11, 14, 25, 26. Movants then awaited the outcome of the Court's December 3, 2025, Order and the resulting Procedures Order [Doc. 70] before formalizing their intervention. A delay measured in months, where the litigation has not advanced to a stage at which the existing parties would be disadvantaged, does not render intervention untimely. *See Georgia v. United States Army Corps of Engineers*, 302 F.3d 1242, 1259–60 (11th Cir. 2002) (granting intervention after discovery "largely complete").

### 2. The existing parties suffer no prejudice attributable to delay.

The relevant question is whether existing parties have suffered prejudice flowing from the timing of intervention. *Stallworth*, 558 F.2d at 264–65; *Meek v.*

*Metropolitan Dade County*, 985 F.2d 1471, 1478–79 (11th Cir. 1993), *abrogated on other grounds by Dillard v. Chilton Cnty. Bd. of Educ.*, 495 F.3d 1324 (11th Cir. 2007). They have not. The Receiver has actively managed the estate throughout this period, has staked out his positions, and has pursued his liquidation strategy unimpeded. Movants do not seek to extract funds from the estate, they seek participation rights in a fair-market disposition that would *increase* recovery for defrauded investors beyond what a discount liquidation would yield. Movants' intervention facilitates the receivership's stated objective rather than obstructing it.

### 3. *Movants face severe, concrete prejudice if denied intervention.*

The harms to Movants are not speculative. The Receiver's refusal to provide clear title destroyed a $3,955,000 sale that would have retired the loan obligations and protected Movants' equitable interest. Ex. 11. The Receiver has imposed approximately $1,334,197 in *unsubstantiated* interest and penalties, the difference between Movants' $2,442,471.65 base obligation and the Receiver's claimed $3,776,668.82 demand, and has now formally designated the Winder Property as an asset "To be auctioned" while continuing to assert the inflated demand. Exs. 14, 15, 20, 30. Without intervention, Movants cannot challenge the Receiver's valuation, his calculation of the indebtedness, or his liquidation strategy. *See Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1295 (11th Cir. 2017)

13

(intervention proper where would-be intervener "be practically disadvantaged by his exclusion from the proceedings" (citation omitted)).

### 4. Unusual circumstances justify the timing of this motion.

The Receiver's affirmative interference with the pending $3,955,000 sale changed the legal landscape, eliminating the mechanism by which Movants could have resolved this dispute without judicial intervention. The entry of the Procedures Order on January 27, 2026 [Doc. 70] is a recent development that itself bears on the procedural framework available to Movants. As explained in Part II.F below, Movants' intervention is consistent with, and in important respects outside the contemplated scope of, the Procedures Order. The timing of this motion, only months after the Procedures Order's entry, falls comfortably within any reasonable timeliness inquiry.

### B. Movants Hold a Direct, Substantial, and Legally Protectable Interest in the Winder Property

Rule 24(a)(2) requires an interest that is direct, substantial, and legally protectable, but not necessarily identical to the claims in the main action. The interest must derive from a legal right recognized by substantive law, not from a mere economic stake. *Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506, 1509 (11th Cir. 1988); *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005). Movants' interest meets that standard under three independent equitable theories recognized by Georgia law.

14

Georgia's constructive-trust statute provides that "[a] constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." O.C.G.A. § 53-12-132(a); *Ansley v. Raczka-Long*, 293 Ga. 138, 141 (2013) (constructive trust "is a remedy created by a court in equity to prevent unjust enrichment" (citation omitted)). Although a constructive trust "generally may not be imposed based solely on a broken verbal promise to hold or transfer the land for the benefit of another," it will be imposed where the promise "was fraudulently made 'with the intention of being broken and for the purpose of thereby obtaining title.'" *Parris v. Leifels*, 280 Ga. 135, 136 (2006) (citation omitted). Frost induced HREHW into the deed-in-lieu mechanism by his January 31, 2024 written representation that FLCP would hold title only temporarily and then "deed it to [HREHW] after the renovations are complete and at the close of the SBA loan," and reconfirmed the arrangement in June 2025. Ex. 6; *See* Ex. 7. The SBA refinancing never came as FLCP never intended to deliver it, and, once Movants committed their capital and labor to renovations that increased the property's value by more than 300 percent, the Receiver refused to honor the deeding commitment. Exs. 6, 7, 10. "[T]he mere failure to comply with a promise to perform an act in the future is not fraud in a legal sense, . . . [but] when the failure to perform the promised act is coupled with the

15

present intention not to perform, fraud, in the legal sense, is present." *Murray v. Murray*, 299 Ga. 703, 705 (2016) (citation omitted); *see also* O.C.G.A. §§ 23-2-56, 23-2-57.

Independently, Georgia's equitable-estoppel statute precludes the Receiver from denying Movants' equitable interest. "In order for an equitable estoppel to arise, there shall generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his or her injury." O.C.G.A. § 24-14-29; *DIP Lending I, LLC v. Cleveland Avenue Props., LLC*, 345 Ga. App. 155, 159 (2018). Movants acted in good faith and with reasonable diligence in reliance on Frost's written representations, executed joint vacate notices to tenants of the Winder Property, invested capital and professional reputation in the renovations, and accepted the deed-in-lieu mechanism Frost proposed. Exs. 6, 7, 8, 9, 22. FLCP's intended deception, or at minimum gross negligence amounting to constructive fraud, estops the Receiver, who stands in FLCP's shoes, from denying HREHW's equitable interest.

Independently again, Frost's written promise to deed the Winder Property to HREHW was "reasonably [calculated] to induce action or forbearance," and did induce HREHW to accept the deed-in-lieu structure, expend capital and professional

16

effort on renovations, and forbear from alternative financing. O.C.G.A. § 13-3-44(a); Exs. 6, 7. Injustice can be avoided only by enforcement of that promise.

## C. Disposition of This Action Will Practically Impair Movants' Ability to Protect Their Interest

Rule 24(a) requires only that disposition of the action *may* practically impair the movant's ability to protect her interest. *Stone v. First Union Corp.*, 371 F.3d 1305, 1308 (11th Cir. 2004). The threshold is met here several times over.

The Order Appointing Receiver authorizes the Receiver to "list for sale or lease . . . cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estate." Doc. 6, ¶ 38. If the Receiver proceeds to sell the Winder Property without Movants' participation, the equitable interest Movants assert in the asset itself will be extinguished. Movants will be relegated, at most, to a contested and uncertain claim in the receivership estate, a substantially diminished position both economically and procedurally, compared to the property-based interest Movants now hold. Practical impairment extends beyond title. The Receiver controls marketing, timing, and price. Movants, who have demonstrated their ability to attract a $3,955,000 arm's-length offer, will have no opportunity to influence the variables that determine sale price and, ultimately, the funds available to satisfy the obligations and benefit defrauded investors. The Receiver's interference with the prior sale removed the one

17

mechanism by which Movants could maximize recovery. Absent intervention, they will have no replacement.

**D. No Existing Party Adequately Represents Movants' Interest**

A presumption of adequate representation arises where the movant and an existing party share the same ultimate objective. *United States v. City of Miami*, 278 F.3d 1174, 1178 (11th Cir. 2002). That presumption is "weak and can be overcome if the [movants] present some evidence to the contrary." *Stone*, 371 F.3d at 1311 (citing *Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999)). The presumption is overcome "[1] if no collusion . . . between the representative and an opposing party, [2] if the representative does not have or represent an interest adverse to the proposed intervener, and [3] the representative does not fail in fulfillment of his duty." *Id.* (quoting *Clark*, 168 F.3d at 461). The burden is "minimal." *Id.*

The Receiver's interests are squarely *adverse* to Movants'. The Receiver seeks a quick discount liquidation, Movants seek a fair-market sale and recognition of an equitable interest. The Receiver has demonstrated this conflict in concrete ways by interfering with Movants' $3,955,000 sale by refusing clear title, inflating the claimed indebtedness by approximately $1,334,197 in unsubstantiated charges, refusing to honor FLCP's original deeding commitment, threatening foreclosure on Movants' other properties, and refusing to negotiate in good faith over an eleven-

18

month period. Exs. 6, 7, 11, 14, 15, 20, 23. Nor does any other party represent Movants as the SEC represents the public interest in securities enforcement, and the Defendants and Relief Defendants are the alleged perpetrators of the scheme. *Cf. Athens Lumber Co. v. FEC*, 690 F.2d 1364, 1366 (11th Cir. 1982) (presumption arises where movant and party share the same objective). The structural divergence between the Receiver's liquidation objectives and Movants' property-based equitable claims defeats the presumption.

**E. Movants Satisfy Article III Standing for the In Rem Relief They Seek**

Movants do not seek a separate money judgment from the receivership estate through this Motion to Intervene. *Cf. Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 435 (2017) (intervenor must show Article III standing only for relief beyond that requested by plaintiff). Their claims are *in rem* requesting a declaration of equitable interest in the Winder Property and enforcement of FLCP's pre-receivership deeding commitment. The disposition of the Winder Property is already before the Court by virtue of the Receiver's liquidation mandate, Doc. 6, ¶ 38, and Movants seek to participate in that disposition, not to add a new claim against the estate. Movants satisfy Article III through injury-in-fact, i.e., the destroyed $3,955,000 sale, the threatened liquidation, and the inflated demand, through traceability to the Receiver's conduct, and through redressability in declaratory and participatory relief. *See Laroe* at 438.

**F. In the Alternative, Permissive Intervention Is Warranted Under Rule 24(b)(1)(B)**

If the Court determines that any element of Rule 24(a) is wanting, the same factual record warrants permissive intervention under Rule 24(b)(1)(B), which authorizes intervention by a party that "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The SEC's Complaint alleges that FLB&L, through FLCP and related entities, "solicited investor funds by misrepresenting the nature and safety of [its] bridge loans, then deployed those funds to make loans to borrowers." Doc. 1. Movants' assertion of an equitable interest in the Winder Property turns on the same FLCP conduct, the same Frost representations, the same renovation expenditures funded with bridge-loan disbursements, and the same course of dealing the SEC has placed at issue. The Receiver himself characterizes the loan portfolio as the receivership's "primary asset" and the loans as "made with investor funds." Doc. 59, ¶ 1. The factual nexus is direct, and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Receiver is at the loan-administration stage, not the merits stage of the main SEC action. The Procedures Order has already opened the door to structured Borrower participation, and Movants' intervention will draw on the same factual record.

**G. The Procedures Order Does Not Displace Rule 24 Intervention for the Property-Based Relief Movants Seek**

The Procedures Order opens a procedural channel for "Borrowers" to enter the case to resolve "Claims Arising From Loan Obligations." Doc. 70, title; *id.*, ¶ 3 ("[i]f sued by the Receiver in this Court, a Borrower may assert counterclaims against the Receivership Estate"); *id.*, ¶ 4 ("[a] Borrower shall be entitled to initiate litigation against the Receivership Estate, without first seeking permission from this Court, subject to and in compliance with the Procedures set forth herein"). The Procedures Order's disclosure requirements, directed at counterclaims, defenses, fraud allegations, recoupment, and damage claims, make plain that it is designed to manage the orderly litigation of monetary disputes about the Loans. *See id.*, ¶ 5(b)(v)–(viii). The Procedures Order is not a Rule 24 substitute, and it does not foreclose Rule 24 intervention for relief outside its scope. Movants' intervention differs from the Borrower disputes the Procedures Order was crafted to manage in three respects.

*First*, Movants do not seek monetary recovery from the Receivership Estate through this Motion. They do not assert that the estate owes them any sum, do not assert affirmative damage claims under Procedures Order ¶ 5(b)(viii), and do not seek to offset their loan obligations or recover excess funds under ¶ 5. Their relief is *in rem*, not *in personam*. *Second*, Movants assert a property-based equitable interest in identified real property, the Winder Property, that is, in equity, not property of the

21

Receivership Estate to begin with. Where a party takes legal title with notice of, and a contemporaneous commitment to honor, an existing equitable obligation to convey the property to another, equity will impress the property with a constructive trust and treat the legal titleholder as a trustee for the equitable owner. *See* O.C.G.A. § 53-12-132; *Ansley*, 293 Ga. at 141; *Parris*, 280 Ga. at 136. Recognition of HREHW's equitable interest does not deplete the Receivership Estate, it identifies what the Receivership Estate never beneficially held in the first place. *Third*, the relief Movants seek is participatory and declaratory, not monetary. Movants ask only that they be permitted to participate as parties in determinations affecting the Winder Property, that the Court declare the parties' respective interests, and that the Court enforce the conveyance commitment FLCP made before the Receiver was appointed. None of these requests falls within the categories of relief the Procedures Order requires Borrowers to channel through a Verified Complaint or Verified Counterclaim. *See* Doc. 70, ¶ 5(b)(i)–(xi).

The Procedures Order itself reserves all rights not specifically modified. *Id.*, ¶ 4. The Procedures Order modified the Order Appointing Receiver only "for the limited purpose of establishing the . . . Procedures pursuant to which Borrowers may enter the Case to seek to have disputes regarding their Loans addressed." *Id.*, ¶ 5. Rule 24 remains available for relief outside that limited purpose.

The Eleventh Circuit has confirmed that an equity-receivership court's "broad powers and wide discretion to determine relief" do not reach pre-existing, state-law property rights. *SEC v. Wells Fargo Bank, N.A.*, 848 F.3d 1339, 1343 (11th Cir. 2017). The governing rule is that "a receiver appointed by a federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the state." *Wells Fargo*, 848 F.3d at 1343 (quoting *Marshall v. New York*, 254 U.S. 380, 385 (1920)). Movants' equitable interest in the Winder Property, recognized as a constructive trust under O.C.G.A. § 53-12-132, reinforced by equitable estoppel under O.C.G.A. § 24-14-29 and promissory estoppel under O.C.G.A. § 13-3-44, is precisely such a pre-existing privilege. The Procedures Order cannot extinguish it.

The Eleventh Circuit has further held that, although a receivership court may employ summary procedures, those procedures must afford affected parties "a meaningful opportunity to argue the facts and their claims and defenses." *SEC v. Torchia*, 922 F.3d 1307, 1319 (11th Cir. 2019). In *Torchia*, the court reversed a receivership order requiring investors to remit "fictitious profits" where the receiver failed to substantiate his calculations and the investors had no opportunity to challenge them. *Id.* at 1317–18. The same defect appears here. The Receiver has demanded $3,776,668.82, including $1,165,565.71 in interest and $82,687.50 in penalties, with no contemporaneous documentation or explanation. Exs. 15, 20. Rule

23

intervention provides the forum in which Movants are entitled to challenge those calculations. *Accord SEC v. Elliott*, 953 F.2d 1560, 1579 (11th Cir. 1992) (granting intervention to similarly situated borrower).

### H. The Court Should Grant a Limited Modification of the Section VII Litigation Stay

The Court has stayed all civil legal proceedings involving Receivership Property and the Receivership Entities. Doc. 6, ¶¶ 32–34. The Procedures Order modified that stay "for the limited purpose of establishing the . . . Procedures pursuant to which Borrowers may enter the Case." Doc. 70, ¶ 5. Movants respectfully request a similarly limited modification of the stay to permit (i) the Court to hear and decide this Motion, and (ii) Movants to assert the property-based intervenor relief described above and in the Proposed Intervenor Petition attached as Exhibit 27. The modification will not lift the stay as to any other matter, will not waive any of the Receiver's reserved rights under Doc. 6 or Doc. 70, and will not waive any of Movants' rights under Doc. 6 or Doc. 70.

### III.    CONCLUSION

Movants satisfy each requirement of Rule 24(a)(2) as the motion is timely, Movants' interest in the Winder Property is direct, substantial, and legally protectable under Georgia law, the receivership's planned disposition of that property will extinguish their interest, and no existing party adequately represents Movants' position. In the alternative, Movants satisfy Rule 24(b)(1)(B). Eleventh

Circuit precedent confirms that the Procedures Order cannot extinguish Movants' pre-existing state-law property rights through summary procedure.

For the foregoing reasons, Movants respectfully request that this Court:

(1) **GRANT** this Motion to Intervene as of right under Rule 24(a)(2), or in the alternative, grant permissive intervention under Rule 24(b)(1)(B);

(2) **DEEM FILED** the Proposed Intervenor Petition attached hereto as Exhibit 27;

(3) **MODIFY** the litigation stay set forth at paragraphs 32–34 of the Order Appointing Receiver [Doc. 6] for the limited purpose of permitting this intervention and the assertion of the relief described in the Proposed Intervenor Petition; and

(4) **GRANT** such further relief as the Court deems just and proper.

Respectfully submitted this 28th day of May, 2026.

> **EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC**
>
> **BY:** _/s/ Kevin E. Epps_
> Kevin E. Epps
> Georgia Bar No. 785511
> _Attorney for Petitioners Lisa Brown and_
> _Haven Real Estate Holdings of Winder, LLC_

1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000
kevin@ehdhlaw.com

25