# EXHIBIT 3

PROMISSORY NOTE

**$600,000.00**

November 17, 2022

Haven Memory Care of Athens, LLC, a Georgia limited liability company ("Borrower") whose address is 705 Whitehead Road, Athens, GA 30606 and FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company (hereinafter, together with any subsequent holder hereof, sometimes called "Lender" or "Holder"), whose address is 14 Greenville Street, Newnan, GA 30263, agree as follows:

A.    Borrower has requested that Lender make a loan in the original principal amount of Six Hundred Thousand and 00/100 Dollars ($600,000.00) (the "Loan").

B.    Lender has agreed and hereby agrees to make the Loan to Borrower upon the terms and conditions contained herein.

THEREFORE, FOR VALUE RECEIVED, Borrower hereby promises to pay to the order of Lender or Holder, the principal sum of Six Hundred Thousand and 00/100 Dollars ($600,000.00), together with interest from the date hereof until paid in full, on the unpaid principal balance from time to time outstanding at the rate hereinafter set out, payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. Said principal and interest shall accrue and be payable as follows:

1.    **Interest.**    Simple Interest shall accrue at the rate of eighteen percent (18%) per annum. Simple Interest shall be computed by multiplying the principal amount by the per annum rate set forth above.

2.    **Payments.**

a.    **Monthly Payments.**  Borrower shall make monthly payments of interest only on the outstanding principal balance in the amount of $9,000.00, commencing on January 1, 2023, and continuing on the 1st day of each month thereafter until May 16, 2024  (the "Maturity Date") at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges due hereunder shall be due and payable for all purposes in full in a single BALLOON PAYMENT.  All such payments shall be made at the office of Lender by federal wire transfer or electronic funds transfer, or such other place and to such other person as the Lender or any subsequent holder hereof may from time to time designate in writing.  The November, 2022 partial month's interest payment of $3,900 will be paid at closing of the loan.

b.    **Minimum Interest.** Borrower may prepay this Note at any time, provided however, that Borrower agrees to pay a minimum of six month's interest, as calculated above, plus outstanding principal and any other unpaid charges hereunder, if prepaid prior to the seventh month.  During and after the seventh month, prepayment shall require payment of outstanding principal plus accrued interest and any other unpaid charges due hereunder.

3.    **Late Charge/Post Default Interest.**    Borrower further agrees to pay a "late charge" of five percent (5%) of any amount due hereunder (but not in excess of the maximum amount allowed by any applicable law, rule or regulation) if paid more than three (3) days after the due date thereof, to cover the extra expense involved in handling delinquent payments.  These provisions shall not be deemed to excuse a late payment or be deemed a waiver of any other rights Lender may have including the right to

declare the entire unpaid principal and interest immediately due and payable. Notwithstanding any provision to the contrary herein, from and after the maturity of this Note (whether by acceleration or otherwise) or an Event of Default, interest on principal (but not on unpaid interest) shall be computed at the rate of 24.0% (the "Default Rate").

4.    **Loan Documents**. Borrower represents, warrants, covenants and agrees that this Note is and shall at all times be secured and supported by (i) Guaranty Agreement of Lisa Brown, (ii) Security Agreement from Borrower conveying security interest in the two memory care facilities in Athens, GA and in Snellville, GA and in Lisa Brown's personal residence in Greensboro, GA,(iii) an Assignment to First Liberty Capital Partners, LLC an Option to Buy the properties for the amount of the outstanding debt in case of default, (iv) other agreements, documents and instruments executed by or on behalf of the Borrower in connection herewith.

**Events of Default**. The principal sum evidenced by this Note, together with all accrued but unpaid interest thereon and all other agreed charges owing by Borrower hereunder, shall become immediately due and payable at the option of Lender upon the occurrence of any "Event of Default", as used and defined in any Loan Document, each of which shall constitute an "Event of Default" hereunder, *provided however*, that Borrower shall have five (5) days following notice of a monetary default in which to cure, and thirty (3) days following notice of a non-monetary in which to cure. Not in limitation of the foregoing but in addition thereto, the following shall constitute events of default under this Note: failure of Borrower (Borrower and each other person primarily or secondarily liable to Lender for the indebtedness evidenced by this Note hereinafter collectively referred to as "Obligors") to make any payment of principal or interest or any other amount under this Note when due or failure of Borrower to perform or observe any promise or agreement contained in this Note; the death of (if an individual), death of a general partner (if a partnership), or dissolution of (if a partnership or corporation), insolvency of, general assignment for the benefit of creditors by, any Obligor; the commencement of a voluntary proceeding under any law relating to bankruptcy, insolvency, reorganization, arrangement, composition or readjustment of debt, dissolution, liquidation or debtor relief law or statute of any jurisdiction, whether now or hereafter in effect, including without limitation the filing of a petition under any chapter of the federal bankruptcy code by or against, or acquiescence in writing to same by, or failure to timely and diligently controvert any such involuntary proceeding by, any Obligor; the filing of a proceeding for the appointment of a receiver, custodian, trustee, liquidator or similar official for Obligor or Obligor's property or consenting to the appointment of same; the failure of an involuntary petition for relief under the Federal Bankruptcy Code, as amended, to be dismissed within thirty (30) days after the commencement thereof or in which an order for relief is entered; the making by any Obligor of a conveyance fraudulent as to creditors under any state or federal law; entry of any judgment against, or issuance of a levy or writ of execution, attachment or garnishment against any of the property of, any Obligor; the inability of any Obligor to pay debts as they become due or admit in writing to such effect; the transfer by any Obligor of all or substantially all of his, her or its assets outside the ordinary course of business, or the waste, loss or dissipation of a substantial part of such person's assets; if any Obligor is a partnership, the withdrawal or removal of any general partner of such partnership; if any Obligor is a corporation, the transfer, directly or indirectly (including through any voting trust, irrevocable proxy, or the like), of the ownership or power to vote more than thirty percent (30%) of the voting stock of such corporation; the suspension of the operation of any Obligor's present business; the occurrence of any default or event authorizing acceleration as provided under any promissory note or other evidence of debt, loan agreement, security agreement, pledge agreement, assignment, mortgage, deed to secure debt, deed of trust, lease agreement or other agreement or contract between any Obligor and Lender or any third party; any statement, representation or warranty of any Obligor made orally or in writing in any document evidencing, securing or otherwise relating to the indebtedness evidenced by this Note or in any other writing or statement at any time furnished or made by any Obligor to Lender is false or misleading in a material respect as of the date furnished or made; revocation or termination of any guaranty executed in

2

favor of Lender guaranteeing the indebtedness evidenced by this Note; the financial responsibility of any Obligor becomes impaired at any time in the sole opinion of Lender; or, the determination by Lender that it otherwise deems itself to be insecure.   Default under that Lease Purchase Agreement between A Place in Time, Inc., as Landlord, and Haven Real Estate Holdings of Athens, LLC and Haven Real Estate Holdings of Snellville, LLC, as Tenants, executed by Landlord on August 14, 2022 and by Tenants on September 27, 2022."

5.

6.      **Remedies.**  If this Note is payable on demand, all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall be due and payable in full upon demand by Lender, whether or not any event of default has occurred and whether or not Lender reasonably deems itself to be insecure.  If any event of default under this Note should occur, all unpaid amounts of any or all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall, at the option of Lender and without notice or demand, become immediately due and payable and Lender shall have and be entitled to exercise, from time to time, all the rights and remedies available to it as provided elsewhere in this Note, in any other agreement or contract between Borrower and Lender and under applicable law.  All of Lender's rights and remedies shall be cumulative, and any failure of Lender to exercise any such right or remedy shall not be construed as a waiver of the right to exercise the same or any other right or remedy at any time and from time to time thereafter.

7.      **Notices.**  Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Note shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or three (3) days after being deposited in the United States mail, postage prepaid, certified with return receipt requested, if mailed to the addresses set forth  in the beginning of this Note or at such other address within the continental United States for either party as such party may designate by notice to the other given in accordance with the provisions of this paragraph; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt.  Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice has been received shall also constitute receipt.

8.      **Acceleration.**  Time is of the essence in the performance of all obligations under this Note. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at its option and as often as it may desire, may declare all liabilities, obligations and indebtedness due Lender, including without limitation this Note to be immediately due and payable without demand, notice or presentment, and may exercise any other remedy available to Lender hereunder, at law or in equity.

9.      **Costs of Collection.**      Borrower agrees that if, and as often as, this Note is given to an attorney for collection or to defend or enforce any of Lender's arising from or relating to this Note, Borrower will pay to Lender its reasonable attorney's fees actually incurred, together with all court costs and other expenses paid or incurred by Lender; provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

10.      **Maximum Legal Rate.** Borrower and Lender agree that no payment of interest or other consideration made or agreed to be made by Borrower to Lender pursuant to this Note shall, at any time, be in excess of the maximum rate of interest permissible by law.  In the event such payments of interest or other consideration provided for in this Note shall result in an effective rate of interest which, for any period of time, is in excess of the limit of the usury or any other law applicable to the loan evidenced

3

hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied to principal immediately upon receipt of such monies by Lender hereof with the same force and effect as though the payer had specifically designated such and Lender had agreed to accept such extra payments as a principal payment, without premium. This provision shall control every other obligation of the Borrower and Lender under this Note.

11.    **Miscellaneous.**

(a)    With respect to any and all obligations, to the extent permitted by applicable laws Borrower waives the following: (1) all rights or exemption of property from levy or sale under execution or other process for the collection of debts under the constitution or laws of the United States or any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold Borrower on any obligation; (3) all statutory provisions and requirements for the benefit of the Borrower now or hereafter in force (to the extent that same may be waived); (4) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Lender and Borrower shall be adverse parties. Borrower agrees to pay all filing fees and taxes and all costs of collecting or securing or attempting to collect or secure any obligations, including but not limited to reasonable attorney's fees.

(b)    The obligations and liabilities of Borrower under this Note are continuing, absolute, and unconditional, and shall remain in full force and effect until all amounts due hereunder have been paid in full and all obligations of Borrower have been discharged without regard to and without being released, discharged, impaired, modified or in any way affected by, the occurrence from time to time of any event, circumstance or condition, including without limitation any one or more of the following, whether or not with notice to or consent of Borrower: (1) any assignment or transfer this Note or of any interest hereunder; (2) any consent, extension, indulgence or other action or inaction (including without limitation any lack of diligence or failure to mitigate damages) under, or in respect of, this Note or other agreement, or any exercise or non-exercise of any right, remedy, power or privilege under, or in respect of, this Note or agreement; or (5) the failure, omission, delay or lack of diligence on the part of the Holder or any assignee or successor thereto, to enforce, assert or exercise any right, power, privilege or remedy conferred upon the Lender by this Note or other agreement.

(c)    The Lender, may, but shall not be required to, apply to the payment of the debt evidenced hereby, on or after the maturity of said debt, whether by acceleration or otherwise, any money or credit held by the Lender on deposit, in trust or otherwise, for the account of the Borrower or any of them.

(d)    Lender shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid, unless in writing and signed by the Holder. All rights and remedies of the Lender under the terms of this Note and under any statutes or rules of law shall be cumulative and may be exercised successively or concurrently. Borrower agrees that the Lender shall be entitled to all the rights of a holder in due course of negotiable instruments. Any provision of this Note which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof.

(e)    The liabilities and obligations of each person or entity who or which is a Borrower are joint and several.

4

(f)    Borrower warrants and agrees that the proceeds of this Note will be used for business purposes (other than agricultural purposes) only, and not for personal, family or household purposes.

(g)    Borrower and Lender intend and believe that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of Borrower and Lender that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender hereof under the remainder of this Note shall continue in full force and effect.

12.    **Governing Law**. This Note shall be governed by and construed in accordance with the laws of the State of Georgia.

13.    **Waiver of Jury Trial**. TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION WITH THIS NOTE OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF EITHER PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. BORROWER AGREES THAT LENDER MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT OF BORROWER TO IRREVOCABLY WAIVE BORROWER'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN BORROWER AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

14.    **Venue**. Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Note or any agreements or transactions contemplated hereby may be brought in the courts of the State of Georgia or of the United States of America for the Northern District of Georgia and hereby expressly submits to the personal jurisdiction and venue of such courts for the purposes thereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum. Borrower hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by

(Signature on next page)

5

registered or certified mail, postage prepaid, to the address of Borrower last provided to Holder in connection with the Loan, such service to become effective ten (10) days after such mailing.

IN WITNESS WHEREOF, Borrower has caused this Note to be executed, sealed, and delivered as of the date first set forth above.

BORROWER

Haven Memory Care of Athens, LLC

By:_____(Seal)
        Lisa Brown, Manager

6

## GUARANTY AGREEMENT

**THIS GUARANTY AGREEMENT** (hereinafter referred to for convenience as the "Guaranty") is entered as of the 16th day of November, 2022, by **Lisa Brown** (hereinafter referred to for convenience as the "Guarantor"), in favor of **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (the "Lender").

### A. RECITALS

**WHEREAS**, Lisa Brown (the "Borrower"), has obtained a loan from Lender in the amount of Six Hundred Thousand Dollars and 00/100 ($600,000.00) (the "Loan");

**WHEREAS**, in connection with the making and closing of the Loan, and in order to evidence and secure the Loan, the Borrower will execute a Promissory Note (hereinafter referred to for convenience as the "Note"), this document, a Security Agreement, evidencing, securing, or otherwise relating to the Loan; and

**WHEREAS**, Lender is willing to make the Loan only if the Guarantor executes and delivers this Guaranty.

**NOW, THEREFORE**, in consideration of the premises and to induce Lender to extend the credit referred to above, the Guarantor hereby agrees as follows:

### B. REPRESENTATIONS AND WARRANTIES

The Guarantor hereby represents and warrants that:

1.    The execution, delivery and performance of this Guaranty, and the agreements, documents, and instruments to be given by the Guarantor as security for the Loan and any other documents or instruments executed and delivered by the Guarantor pursuant hereto or thereto, or in connection herewith or therewith (collectively, the "Guarantor Documents"), are within the Guarantor's powers, have been duly authorized, do not violate any law, rule, or regulation, and will not conflict with, result in a breach of, or constitute a default under, any contractual obligations of the Guarantor;

2.    There is no judgment, decree, or order of any court or other governmental authority binding on the Guarantor which would be contravened by the execution, delivery, performance or enforcement of the Guarantor Documents; and

3.    Each of the Guarantor Documents is a legal, valid, and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its respective terms.

4.    That he understands that Lender would not make the Loan to Borrower without Guarantor entering into this Guaranty, and there is substantial consideration flowing to Guarantor if the Loan is made equivalent to the potential burden to Guarantor of the obligations assumed hereunder.

The Guarantor agrees that for so long as this Guaranty remains in effect, each of the above representations and warranties and each other representation or warranty of the Guarantor contained herein or in the other Guarantor Documents shall be deemed to be continuing.

## C. GUARANTY

1.      The Guarantor hereby unconditionally, absolutely, and irrevocably guarantees full payment and performance of, and promises to pay to Lender, or to order, without demand, in lawful money of the United States, when due (whether at stated maturity, by acceleration or otherwise), any and all indebtedness, liabilities, obligations and covenants of Borrower to Lender (whether any such indebtedness, liability, obligation or covenant now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such indebtedness, liabilities, obligations and covenants being hereinafter called, collectively, the "Obligations"), arising out of or relating to the Loan, the Note, the Security Agreement, the Pledge and Security Agreement, or any of the other Loan Documents and any and all renewals, re-financings, extensions, amendments, modifications, and consolidations thereof. The word "Obligations" is used in its most comprehensive sense and includes all principal, interest, and other amounts payable under the Note, the Security Agreement, or any of the other Loan Documents and all obligations for fees, indemnities, costs, and expenses under the Note, the Mortgage, or any of the other Loan Documents.

2.      The Guarantor's obligations hereunder are those of a primary obligor, and not merely as a surety or guarantor of collection, and are independent of the Obligations. If there is more than one Guarantor herein, each Guarantor's obligations hereunder are joint and several. In addition, Guarantor agrees that the Guarantor's obligations hereunder are joint and several with the obligations of any and all other obligors (which for purposes of this Agreement includes, without limitation, other guarantors pursuant to separate agreements or instruments) in respect of the Obligations. A separate action or actions may be brought against the Guarantor (or any one Guarantor herein) whether an action is brought against Borrower, another Guarantor herein, or any other obligor in respect of the Obligations or whether Borrower, another Guarantor herein, or any other obligor in respect of the Obligations be joined in any such action or actions; and the Guarantor waives the benefit of any statute of limitations affecting his or her liability hereunder or the enforcement hereof.

3.      The obligations of the Guarantor under this Guaranty are continuing, absolute, and unconditional, and the Guarantor guarantees that the Obligations will be paid in full when due (whether at stated maturity, by acceleration or otherwise) in accordance with the terms of the Note, the Mortgage, and the other Loan Documents regardless of any law, regulation, or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto or any other circumstance which might otherwise constitute a defense available to, or a legal or equitable discharge of, a borrower or guarantor.

4.      This Guaranty is irrevocable with respect to all Obligations which arise out of or relate to the Loan, the Note, the Security Agreement, the Pledge and Security Agreement or any of the other Loan Documents. All of the liabilities of the Guarantor under this Guaranty shall remain in full force and effect until all Obligations (including any amendments, modifications,

2

extensions, renewals, restructurings, re-financings, and re-fundings of any thereof) shall have been finally paid in full in cash.

This Guaranty shall in all respects continue in full force and effect or shall be reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Obligations is rescinded or must otherwise be restored or returned for any reason, including without limitation, because of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower or any other obligor in respect to the Obligations (including without limitation, the Guarantor) or upon or as a result of the appointment of a custodian, receiver, trustee or other officer with similar power with respect to Borrower or any such other obligor or any material part of his or its assets, or otherwise, all as though such payment had not been made. If an event permitting the acceleration of the Obligations shall at any time have occurred and be continuing and such acceleration shall at such time be prevented by reason of the pendency against Borrower of a case or proceeding under any bankruptcy or insolvency law, the Guarantor agrees that, for purposes of this Guaranty and his obligations hereunder, the Obligations shall be deemed to have been accelerated, and the Guarantor shall forthwith pay such Obligations, and the other obligations hereunder, without any further notice or demand.

Without limiting the foregoing, the Guarantor authorizes Lender, without notice or demand, and without affecting the Guarantor's liability hereunder, from time to time to (a) renew, extend, accelerate, compromise, settle, restructure, refinance, refund, or otherwise change the amount and time for payment of any of the Obligations, or otherwise change the terms of the Obligations or any part thereof, including, without limitation, amend, modify, supplement, waive, or consent to a departure from the terms and conditions of the Note and the other Loan Documents; (b) take and hold security for the payment of this Guaranty or the Obligations or the obligations of other obligors in respect of the Obligations, and enforce any such security; (c) apply such security and direct the order or manner of sale thereof or sell, exchange, release, compromise, settle, waive or surrender any such security; and (d) take, hold, exchange, release, compromise, settle, amend, or waive, or consent to the departure from any of the terms of, any guaranty or other agreement relating to the obligations of any other obligor in respect to the Obligations. Lender shall have no obligation to perfect, secure, protect, or insure any collateral, and the Guarantor's liability hereunder shall not be affected by the non-perfection, invalidity, or unenforceability of any agreement, instrument, or document securing or purporting to secure the Note or the other Loan Documents.

5.     Guarantor hereby unconditionally and irrevocably: (a) waives and relinquishes any right of subrogation or other right of reimbursement from the Borrower or the Borrower's estate, and any other right to payment from the Borrower or the Borrower's estate, arising out of or on account of any sums paid or agreed to be paid by Guarantor under this Guaranty, whether any such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; (b) agrees that if at any time all or any part of any payment previously applied by Lender to any of the Obligations must be returned by Lender for any reason, whether upon the claim of a preference, fraudulent transfer, or other claim of a debtor-in-possession, trustee in bankruptcy, or other representative of creditors of Borrower, or otherwise, and whether by court order, administrative order, or non-judicial settlement, this Guaranty shall continue in effect or shall be reinstated, as the case may be, and Guarantor shall remain liable for the full amount returned as if such amount had never been received by Lender,

3

notwithstanding any termination of this Guaranty or cancellation of any promissory note or other instrument or agreement evidencing or securing any of the Obligations; (c) agrees that the liability of the Guarantor under this Guaranty shall not be affected or impaired by, and this Guaranty shall remain fully enforceable against Guarantor for the full amount of the Obligations less only payments thereon actually received and retained by Lender irrespective of and without reduction on account of: (i) any defenses which Borrower may have or assert with respect to any of the Obligations, including, but without limitation, filing of a petition in bankruptcy, discharge in bankruptcy, confirmation of a plan of reorganization (whether Lender voted for or against such plan), composition with creditors (whether or not including Lender), failure of consideration, breach of warranty, statute of frauds, statute of limitations, accord and satisfaction, waiver, estoppel, release, usury, or fraud or misrepresentation; or (ii) dissolution or insolvency of Borrower.

6.    The Guarantor unconditionally and irrevocably waives any right to require Lender to (a) proceed against Borrower or any other obligor in respect to the Obligations; (b) proceed against or exhaust any security held directly or indirectly on account of the Obligations; (c) pursue any other remedy of Lender whatsoever; (d) give the Guarantor prior or subsequent notice of the disposition of any security; or (e) give the Guarantor notice of any information concerning Borrower's business, operations, or condition (financial or otherwise) known to Lender. The Guarantor unconditionally waives any defense arising by reason of any disability or other legal or equitable defense of Borrower by reason of the cessation from any cause whatsoever of the liability of Borrower other than final payment in full in cash of the Obligations. The Guarantor waives all diligence, presentments, protests, notices of protest, notices of dishonor, notices of non-payment, acceptance and notices of acceptance of this Guaranty.

7.    Any debt of Borrower now or hereafter held by or owed to the Guarantor is hereby absolutely and totally subordinated in right of payment and in all other respects to the Obligations and all other obligations of the Borrower to Lender in any way relating to the Note or the other Loan Documents, and in the event an event of default under the Note or the other Loan Documents shall have occurred, and there is a default in the debt of Borrower to the Guarantor, if Lender so requests, such debt shall be collected, enforced and received by the Guarantor as trustee for Lender and shall be paid over to Lender on account of the Obligations and any such other obligations.

8.    Upon the occurrence of any Event of Default, as defined in the Note, Security Agreement or any other Loan Document, in the payment or performance of the Note or any of the other Loan Documents, the Lender is hereby authorized at any time and from time to time to set-off and apply all deposits (general or special, time or demand, provisional or final) at any time held and other obligations at any time owing by the Lender to or for the credit or the account of the Guarantor against any and all of the obligations of the Guarantor now or hereafter existing under this Guaranty, irrespective of whether or not, the Lender shall have made any demand under this Guaranty and although such obligations may be contingent and unmatured. The rights of the Lender under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Lender may have.

9.    The Guarantor will keep at all times full, true and accurate books and records of account of the financial affairs of the Guarantor sufficient to reflect accurately and correctly the

4

results of all income and expense activities and to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles (or another method approved by Lender). The Guarantor will deliver to the Lender, upon such times as may be requested by the Lender, and in no event more than three (3) months after the end of every calendar year from date hereof, whether or not requested by the Lender, financial statements reflecting the foregoing information, including, but not limited to, balance sheets, profit-and-loss statements and all schedules and exhibits thereto as are customarily required by generally accepted accounting principles or as may be requested by Lender. Unless otherwise consented or agreed to by Lender in writing with respect to any particular year, such statements and information shall be prepared by a certified public accountant approved by the Lender in advance of delivery of such statements and information. The Guarantor further covenants and agrees to furnish to Lender, within 10 days after the date of any request by Lender, such other information and documents (financial or otherwise, including without limitation income tax returns) concerning or relating to the Guarantor or any collateral securing this Guaranty as the Lender may request at any time or from time to time.

10. The Guarantor assumes full responsibility for keeping fully informed of the financial condition of the Borrower and all other circumstances affecting the Borrower's ability to perform its obligations to the Lender, and agrees that the Lender will have no duty to report to Guarantor any information which the Lender receives about the Borrower's financial condition or any circumstances bearing on Borrower's ability to perform.

11. No amendment or wavier of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom, shall in any event be effective unless the same is signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose given. No failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any provided by law or at equity.

12. Any provision of this Guaranty which may be prohibited by law or otherwise held invalid shall be ineffective only to the extent of such prohibition or invalidity and shall not invalidate or otherwise affect the remaining provisions of this Guaranty.

13. The Lender may, without notice to or consent from the Guarantor, assign or otherwise transfer, or grant a participation in, the Note or the other Loan Documents, the Obligations, or any interest therein, or the collateral, in whole or in part, without affecting in any manner whatsoever the Guarantor's liability hereunder. Any assignee or other transferee, or participant in, any of the Note or the other Loan Documents or the Obligations shall thereupon become vested with all rights in respect thereof granted to Lender herein to the same extent as if such assignee or transferee was the original guaranteed party hereto, and all Obligations shall be and remain Obligations for purposes of this Guaranty. This Guaranty shall be binding upon the Guarantor and Guarantor's heirs, executors, personal representatives, successors and assigns and inure to the benefit of Lender and its respective heirs, executors, personal representatives, successors, assigns and other transferees; provided, however, that the Guarantor shall not assign

5

or transfer any of Guarantor's rights or obligations hereunder without the express written consent of Lender.

14.     Guarantor agrees that this Guaranty, the Note, and the other Loan Documents, and the rights and obligations of the parties hereunder and thereunder shall be governed by and be construed in accordance with the laws of the State of Georgia, unless otherwise provided therein or except where required to be governed by the laws of another jurisdiction to be enforceable. Guarantor acknowledges that the negotiation of the provisions of this Guaranty, the Note and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give, nor shall Guarantor, Borrower or any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Guaranty or said Loan Documents to become effective and valid and binding obligations of the Borrower, the Guarantor or any other obligor. Guarantor acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Guarantor acknowledges further that the negotiation, execution, and delivery of this Guaranty, the Note and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Guarantor hereby submits himself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with this Guaranty, the Loan or any of the Loan Documents, agrees that venue for any such action shall be in the state or federal courts in Georgia, and waives any and all rights under the laws of the United States or any state to object to jurisdiction or venue within the state or federal courts in Georgia. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a wavier by Lender of any of the foregoing.

15.     Guarantor hereby waives all rights of exemption under the constitution and laws of the United States and all states therein, including, but not limited to, the State of Georgia. Guarantor agrees to pay all cost of collection, including a reasonable attorney's fee, if the services of an attorney are utilized whether or not suit is filed. In that connection, Guarantor agrees that if, and as often as, this Guaranty Agreement is given to an attorney for collection or to defend or enforce any of Lender's rights hereunder, Guarantor will pay to Lender its reasonable attorney's fees actually incurred, together with all court costs and other expenses paid or incurred by Lender. Provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

16.     The undersigned hereby waives the right to require the holder of the obligations guaranteed to take any action against the principal as provided for in O.C.G.A. § 10-7-24. At the option of the Bank, this may be treated as a guaranty or as a suretyship, with the right to proceed against the guarantor without first proceeding against the Borrower.

17.     TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM,

COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY, THE LOAN OR THE LOAN DOCUMENTS OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR BORROWER AND GUARANTOR WITH RESPECT TO THE LOAN DOCUMENTS OR IN CONNECTION WITH THIS GUARANTY OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS GUARANTY OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. GUARANTOR AGREES THAT LENDER MAY FILE A COPY OF THIS GUARANTY WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED-FOR AGREEMENT OF GUARANTOR IRREVOCABLY TO WAIVE GUARANTOR'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN GUARANTOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty effective as of the date first written above.

_____(Seal)
Lisa Brown

Signed, sealed and delivered in my presence by **Lisa Brown**, known to me, or who produced official picture identification, this __18__ day of November, 2022.

_____
Notary Public

(Notary Seal)



7

## OPTION FOR ASSIGNMENT OF LEASE PURCHASE AGREEMENT

This Option for Assignment of Lease Purchase Agreement (the "Option Agreement") is made and entered into this __18th__ day of November, 2022, by and between A Place in Time, Inc. ("Landlord"), Haven Real Estate Holdings of Athens, LLC and Haven Real Estate Holdings of Snellville, LLC ("Tenants"); Haven Memory Care of Athens, LLC ("Borrower" or "Operator") and Lisa Brown ("Owner") as parties of the first part, and First Liberty Capital Partners, LLC, ("Lender"), as party of the second part.

WHEREAS, Landlord has entered int a Lease Purchase Agreement (the "Agreement") with Tenants dated September 27, 2022, a true copy of which is attached hereto and incorporated herein as Exhibit A; and

WHEREAS, under the Agreement Tenants have agreed to lease real property located in Clarke and Gwinnett Counties (the "Property") identified therein on specified terms and conditions, including assumption and payment of a promissory note having a current balance of approximately $1,600,000.00 from Landlord to Bank OZK secured by the Property, and assumption and payment of an unsecured promissory note from Landlord to Vickie Robinson in the amount of $240,000.00, said assumption evidenced by a promissory note from Tenants to Vickie Robinson; and

WHEREAS, Lender has agreed to make a loan in the amount of $600,000.00 (the "Loan") to Borrower for purposes including improvements to the Property; and

WHEREAS, Borrower is also the operator responsible for the day-to-day operations of the Property as memory care facilities; and

WHEREAS, as a condition for making the Loan, Lender requires, *inter alia*, that in the event of default by Tenants under the Agreement, or a default by Borrower under the Loan, that Owner and Tenants grant to Lender the option to assume the obligations of Tenants under the Agreement and the right to be conveyed Tenants' rights under the Agreement; and

WHEREAS, Owner is the sole member of Tenants and Borrower, and Owner, Operator and Tenants are guarantors of the Loan; and

WHEREAS, Landlord, Owner, Operator, Tenants and Borrower agree that it is beneficial to each of them that the Loan be made and that the parties enter into this Option Agreement; and

THEREFORE, for Ten Dollars ($10.00) and other good and valuable consideration including the Loan and agreement to assume rights and obligations of Tenants under the Agreement, the sufficiency of which is hereby acknowledged, the parties agree as follows.

1.0    Grant of Option. Landlord and Tenants grant to Lender, its successors and/or assigns, the right and option, but not the requirement, to assume the obligations of Tenants under the Agreement, and further grant and convey to Lender all rights of Tenants under the Agreement, including, but not limited to, the right of the conveyance of the Property by Landlord to Lender by limited warranty deeds upon the payment in full of the Bank OZK loan as provided in the Agreement. This grant is a current conveyance and grant of the option with exercise of rights under the option subject to the condition subsequent of an event of default by Tenants under the terms of the Agreement or an event of a default by Borrower under the terms of the Loan. Until an event of default occurs under the Agreement or under the Loan, Landlord and Tenants shall be obligated to fully perform all of their obligations under the Agreement. Upon an event of default occurring, the rights of Lender hereunder may be fully exercised instanter without qualification.

2.0.    Landlord's Obligations to Lender. Landlord shall provide Lender on a regular and recurring basis with information regarding the status of Tenants compliance with the terms of the Agreement, including but not limited to, payments made to Bank OZK, insurance and tax payments, and shall promptly respond to requests made by Lender for additional information regarding compliance.        .

3.0    Notification of Default Under the Agreement.        Upon the occurrence of any event of default under the Agreement, Landlord shall promptly notify Lender of such event. Lender shall have ten (10) business days 10 to notify Landlord of its response to such notice, during which time Landlord shall not have the right to call a default under the Agreement.

2

3.1    Rights of Lender Upon Notification of Event of Default Under the Agreement.
Upon being notified of the occurrence of any event of default under the Agreement (the "Event"), Lender shall have the right to respond as follows.

(A). If the Event is the failure to timely make a payment to Bank OZK, or the failure to make insurance payments or pay ad valorem taxes as required by the Agreement, Lender shall have the right but not the obligation to make such payment, without assuming the obligation to make future payments, in which event the Landlord shall not have the right to call a default based on such Event; or, if the Event is failure to pay the Bank OZK loan, Lender shall have the right but not the obligation to fully pay said loan, in which event Landlord shall promptly convey the Property by limited warranty deed to Lender or its assigns as provided in the Agreement; or, Lender shall have the right to decline to take any action relating to the Event, and Landlord shall be free to take such action as allowed under the Agreement.

(B)    If the Event is the failure of Tenant to comply with repair and maintenance obligations Lender shall have the right but not the obligation to elect to make such repairs as reasonably necessary for the proper operation of the Property as memory care facilities, in which case the Landlord shall not have the right to call a default based on such Event; or, Lender shall have the right to decline to take any action relating to the Event, and Landlord shall be free to take such action as allowed under the Agreement.

3.2    Rights of Lender Upon Notification of Event of Default Under the Loan.

A default under Loan shall be a default under the Agreement, and shall entitle, but not require Lender to pay the balance of the Bank OZK, in which event Landlord shall convey the Property to Lender or its assigns by limited warranty deed as provided in the Agreement. Notwithstanding that an event of default under the Loan is an event of default under the Agreement, Landlord shall not have the right to call a default under the Agreement because of an event of default under the Loan.

4.0    Obligation of Borrower/Operator/Owner in the Event of Default.  Borrower, Operator and Owner agree that in the event Lender exercises this Option, they will cooperate to

3

the fullest extent in fulfilling their obligations under the Agreement to insure the continued operation of the Properties as memory care facilities..

5.0    Landlord Warranties.    Landlord warrants that no facts exist as of the date of this Option upon which an instance of default could be based, and further warrants that in no event shall Landlord call a default based in whole or in part on facts, known or unknown, which existed prior to the date of the Loan.

6.0    Notices.    Notices hereunder shall be delivered by next-day delivery, together with emailed copies to the parties as follows:

Landlord:

A Place in Time, Inc.
Vickie Robinson
3042 E. Marlette Avenue
Phoenix, AZ 85016
Vickie.robinson@am.jll.com

Tenants/Borrower/Owner/Operator

Haven Real Estate Holdings of Athens, LLC
Haven Real Estate Holdings of Snellville, LLC,
Haven Memory Care of Athens, LLC
Lisa Brown
705 Whitehead Road
Athens, GA 30606
Doraville1128@gmail.com

Lender:

First Liberty Capital Partners, LLC
Brant Frost IV
14 Greenville Street
Newnan, GA 30263

7.0    Amendment.    The parties agree that notwithstanding any conflict between this Option Agreement and the Agreement, this Option Agreement shall control and any conflicting provisions under the Agreement shall be deeded amended to give full force and effect to this Option Agreement.

4

8.0    Time of Essence.  Time is of the essence of this Option Agreement.

9.0    Electronic Signatures Valid.  Execution of this Option Agreement by electronic signature by DocuSign or similar service shall have the same legal effect as original pen and ink signature.  Delivery of executed copy by facsimile or email shall have the same legal effect as an original.

Signatures on following pages

Landlord:

A Place in Time, Inc.

By:_____
    Vicki Robinson, President

        (Corporate Seal)

Tenants:

Haven Real Estate Holdings of Athens, LLC

By:_____
    Lisa Brown, Manager

Haven Real Estate Holdings of Snellville, LLC

By:_____
    Lisa Brown Manager

5

Haven Real Memory Care of Athens, LLC

By: _____
Lisa Brown, Manager

Owner:

_____
Lisa Brown

Lender:

First Liberty Capital Partners, LLC

By: _____
Brant Frost, IV, Manager

6

Exhibit A

7

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

STATE OF GEORGIA
COUNTY OF ATHENS-CLARKE

## LEASE PURCHASE AGREEMENT

THIS LEASE PURCHASE AGREEMENT (referred to herein as the "Lease Purchase Agreement"), binding on the parties on the date the last of the parties shall execute it, with an agreed Effective Date as of the date the term "Effective Date" is defined in the Interim Operations Transfer Agreement executed by the parties hereto contemporaneously herewith, such definition being incorporated herein by reference, this Lease Purchase Agreement being established by and between A Place in Time, Inc., a Georgia corporation (hereinafter referred to as "Landlord" or "Seller"), and Haven Real Estate Holdings of Athens, LLC, with respect to the real property located at 705 Whitehead Road, Athens, Clarke County, Georgia 30606, and Haven Real Estate Holdings of Snellville, LLC, with respect to the real property located at 2106 McGee Road, Snellville, Gwinnett County, Georgia 30078, each being a Georgia limited liability company (hereinafter referred to as "Tenant" or "Purchaser" collectively and separately, with respect to each respective property, as the context requires or permits).

## WITNESSETH:

1. **PREMISES.** Landlord, for and in consideration of the rents, covenants, agreements, and stipulations hereinafter mentioned, reserved, and contained, to be paid, kept and performed by Tenant, has leased and rented, and by these presents does lease and rent, unto Tenant, and Tenant hereby agrees to lease and take upon the terms and conditions which hereinafter appear, the premises consisting of: (i) approximately 10.68 acres per Athens-Clarke County, Georgia Tax Assessor records with improvements located at 705 Whitehead Road, Athens, Clarke County, Georgia 30606, as is more particularly described on Exhibit A, attached hereto and made a part hereof (hereinafter referred to as the "Athens Premises"), leased to Haven Real Estate Holdings of Athens, LLC as Tenant; and (ii) approximately 2.97 acres per Gwinnett County, Georgia Tax Assessor records with improvements located at 2106 McGee Road, Snellville, Gwinnett County, Georgia 30078, as is more particularly described on Exhibit B, attached hereto and made a part hereof (hereinafter referred to as the "Snellville Premises"), leased to Haven Real Estate Holdings of Snellville, LLC as Tenant (the Athens Premises and Snellville Premises collectively referred to herein as the "Premises"). So long as Tenant observes and performs the covenants and agreements contained herein, Tenant shall at all times during the term of this Lease Purchase Agreement and any renewals thereof, peacefully and quietly have and enjoy possession of the Premises subject to the terms hereof. Tenant hereby expressly acknowledges and agrees that the Premises is in acceptable condition as of the date hereof, that Tenant accepts possession of the Premises "AS IS," with all faults, and that Tenant has been afforded an ample opportunity to conduct any examinations of the Premises it deemed necessary.

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

2. **LEASE TERM**. The term of this Lease Purchase Agreement shall be for a period commencing at 12:01 A.M. on the Effective Date, defined above (also referred to in this Lease Purchase Agreement as the "Commencement Date"), and shall continue until all required Lease Purchase payments are paid and the Bank OZK Loan is paid in full, as described in Sections 3 and 4 below, unless sooner terminated in accordance with the provisions hereof ("Term").

3. **LEASE PURCHASE SALE TRANSACTION**. Landlord and Tenant agree that the legal relationship of the parties shall be landlord and tenant and the legal ownership of the Premises shall not change until all lease purchase payments required under this Lease Purchase Agreement (the "Lease Purchase Payments") are paid. However, Landlord and Tenant also agree that the economic reality of this Lease Purchase Agreement is that the entire transaction reflected herein should be treated, and shall be reported for all income tax purposes, as an installment sale from Landlord as seller to Tenant as purchaser, as of the Commencement Date. Accordingly, the parties agree that the Lease Purchase Payments will be considered installment sale payments for the purchase of the Premises, for all tax purposes, rather than rent payments. With respect to the Seller, the principal portion of each Lease Purchase Payment shall be treated as the principal portion of an installment sale payment received, subject to capital gain income treatment, and the interest portion of each Lease Purchase Payment shall be treated as interest income received, with the interest paid to Bank OZK also being deductible, thereby resulting in zero net income or deduction for the interest payments "received" by Landlord and "paid" on Landlord's behalf. With respect to Purchaser, the principal portion of each Lease Purchase Payment shall be treated as a principal payment towards the purchase of the Premises, and the interest portion of each Lease Purchase Payment shall be deductible as interest "paid" to Landlord.

4. **LEASE PURCHASE PAYMENTS**. Landlord and Tenant agree that they are entering into this Lease Purchase Agreement as part of a larger transaction that includes various documents, including a Letter of Intent dated June 29, 2022, an Interim Operations Transfer Agreement, this Lease Purchase Agreement, and an Asset Purchase Agreement, all of which shall collectively serve to transfer ownership of the memory care facility businesses located on the Premises, as well as ownership of the Premises, from Landlord and Landlord's affiliated companies to Tenant and Tenant's affiliated companies (the "Transaction Documents"). This Lease Purchase Agreement, structured as a lease purchase installment sale as described in Section 3 above, and the payment of the Lease Purchase Payments as described herein, are a material part of the consideration exchanged between the parties with respect to the entire larger transaction. The Lease Purchase Payments shall be paid as provided below in this Section 4. Landlord agrees that it may not sell or lease the Premises to any third party during the Term of this Lease Purchase Agreement.

(a) **Lease Purchase Payments, Assumed Loans, Allocation of Purchase Price, and Title to Premises.** Landlord and Tenant agree and acknowledge that the Premises are owned by Landlord subject to a security deed in favor of Bank OZK as lender, and that the principal balance is approximately $1,600,000.00 as of the Commencement

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

Date (the "Bank OZK Loan"). Landlord and Tenant also agree that Tenant will assume one or more loans owed by Landlord to Vicki Robinson in the total amount of Two Hundred Forty Thousand Dollars ($240,000.00) as part of the purchase transaction described in this Lease Purchase Agreement (collectively referred to as the "Assumed Loans"). The Assumed Loans shall be paid by Tenant to Vicki Robinson pursuant to the promissory note attached to this Lease Purchase Agreement as Exhibit C. The exact principal balance of the Bank OZK Loan as of September 1, 2022 (after the August 2022 payment is made by Seller), plus the sum of $240,000.00 representing the total Assumed Loans, shall be considered by the parties to be the purchase price for the Premises (the "Purchase Price"). The Purchase Price shall be allocated between the 705 Whitehead Road and the 2106 McGee Road properties based on their 2022 respective county tax assessed values as follows: 45.6% of the Purchase Price shall be allocated to the 705 Whitehead Road property and 54.4% of the Purchase Price shall be allocated to the 2106 McGee Road property. The monthly loan payments due on the Bank OZK Loan are due on the twenty-sixth (26th) day of each calendar month in the amount of approximately $23,483.82. Landlord and Tenant agree that Tenant shall make all required monthly payments to Bank OZK beginning with the September 2022 payment (due September 26, 2022) until the Bank OZK Loan is paid in full. These payments are referred to herein as the Lease Purchase Payments. As soon as the Bank OZK Loan is paid in full, Landlord agrees that Landlord shall promptly execute Limited Warranty Deeds in favor of Tenant (the Athens Premises to Haven Real Estate Holdings of Athens, LLC and the Snellville Premises to Haven Real Estate Holdings of Snellville, LLC, respectively) to transfer title to the Premises to Tenant. Tenant shall pay all expenses related to preparation and recordation of the Limited Warranty Deeds, including real estate transfer tax. Landlord agrees that Landlord will keep the title to the Premises free and clear of any liens other than the security deed for the Bank OZK Loan, and Landlord will not increase the principal balance of the Bank OZK Loan in any manner without prior written approval of Tenant, which approval may be withheld by Tenant for any reason. Landlord and Tenant further acknowledge and agree that certain recorded Assignments of Leases, Rents, Profits and Contract Rights in favor of Georgia Mountains Regional Economic Development Corporation N/K/A Small Business Access Partners, Inc. and or the United States Small Business Administration, Inc., dated April 26, 2005 and recorded at Deed Book 2858, Page 173, Athens-Clarke County Records, and at Deed Book 42557, Page 44, Gwinnett County Records, may not have been properly cancelled of record, even though the associated secured debt appears to have been paid in full on or about December 20, 2012 when the properties were refinanced by CertusBank (Bank OZK is successor to CertusBank). Landlord agrees to cooperate with Tenant after the Effective Date to assist with taking necessary steps to have these instruments cancelled to clear title, to the extent Tenant determines is necessary or advisable. Tenant shall bear any costs related to preparing and recording these cancellation instruments, and any other instruments, that may be deemed necessary or advisable by Tenant to clear title.

The parties hereto mutually acknowledge and agree that the agreement of Landlord to promptly execute the Limited Warranty Deeds referenced above upon payment in full of the Bank OZK Loan is an essential part of the consideration exchanged by the parties with respect to this Lease Purchase Agreement and the Transaction Documents. The parties therefore agree that any failure of Landlord to execute the Limited Warranty Deeds as agreed will cause

3

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

loss and harm to Tenant and Landlord agrees to indemnify Tenant against any liabilities, costs, expenses (including reasonable attorneys' fees and expenses), damages or injuries arising out of or resulting from any failure of Landlord to promptly execute the Limited Warranty Deeds as agreed. Landlord agrees to keep its business entity, A Place in Time, Inc., in good standing and compliance with the State of Georgia until the Limited Warranty Deeds are executed and recorded.

(b) **Triple Net Lease.** In addition to the Lease Purchase Payments described in Section (a) above, Tenant shall pay all other expenses related to the Premises during the Term of this Lease Purchase Agreement, except for (i) prior liabilities of Landlord that have not been assumed by Tenant and (ii) expenses that arise which are the responsibility of Landlord or are required to fulfill a representation or warranty of Landlord made to Tenant as expressly provided in the Transaction Documents. The expenses to be paid by Tenant include but are not limited to all expenses described in Sections 5, 6, 7, 8 and 9 below, including those items delineated in subparagraph (c) below. Notwithstanding the other provisions in this subparagraph (b), Landlord shall at all times bear all expenses related to Landlord's tax preparation and legal professional advisors prior to and during the Term of this Lease Purchase Agreement.

5. **INSURANCE AND TAX PAYMENTS.** Landlord and Tenant agree and acknowledge that Tenant shall be solely responsible for and agrees to pay the cost of insurance to be maintained by Tenant covering the Premises as delineated in Section 6 below during the Term of this Lease Purchase Agreement, all ad valorem property taxes for the Premises during the Term of this Lease Purchase Agreement as set forth in Section 7 below, and all maintenance and repairs of the Premises as delineated in Section 9 below during the Term of the Lease Purchase Agreement.

6. **INSURANCE.** Tenant shall maintain, at its sole expense, during the Term of this Lease Purchase Agreement and all extensions thereof, public liability insurance covering the Premises in an amount of $1,000,000.00 for injury or death to any one person and $2,000,000.00 for injury and/or death to any number of persons in any one accident with an insurance company reasonably satisfactory to Landlord, said policy naming the Landlord as an additional insured. Tenant may, in its discretion, obtain insurance for Tenant's property, including, but not limited to, inventory, trade fixtures, furnishings and other personal property. Tenant will cause such insurance policies to name Landlord as an additional insured and to be written so as to provide that the insurer waives all right of recovery by way of subrogation against Landlord in connection with any loss or damage covered by the policy. In addition, Tenant shall keep in force workers' compensation or similar insurance to the extent required by law. Tenant shall deliver said policies or certificates thereof to Landlord within ten (10) days of the Commencement Date of this Lease Purchase Agreement. Should Tenant fail to keep in effect the required insurance called for herein, Landlord may, at its sole option, obtain said insurance and pay the requisite premiums, in which event Tenant shall pay all sums so expended by Landlord, together with interest thereon at the Default Rate of Interest, as additional rent, following invoice therefor. Each insurer, under the policies required hereunder, shall agree by endorsement on the policy issued by it or by independent instrument furnished to Landlord,

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

that it will give Landlord fifteen (15) days prior written notice before the policy or policies in question shall be altered or canceled. During the Term of this Lease Purchase Agreement and all extensions thereof, Tenant shall also maintain, at its sole expense, an all risk fire and extended coverage insurance policy for the full replacement value of the Premises, with an insurance company reasonably satisfactory to Landlord, said policy naming the Landlord as an additional insured.

7.  **PROPERTY TAXES**.  Tenant shall be responsible for payment of all ad valorem property taxes and assessments assessed against the Premises during the Term of the Lease Purchase Agreement, including without limitation all stormwater fees and charges. Tenant shall pay all ad valorem property taxes on or before the applicable due date.  If Tenant fails to make such payments when due, Landlord shall have the right to make such payments on behalf of Tenant and collect any amount so paid from Tenant as Additional Rent, together with interest at the Default Rate of Interest from the date Landlord makes such payment.

8.  **UTILITIES**.  Tenant shall promptly pay all charges for utilities and other services furnished to the Premises and used by Tenant during the Term of this Lease Purchase Agreement, or any extension thereof.

9.  **OBLIGATIONS OF TENANT**.

(a)    **General Obligations.**  The prompt payment by Tenant of the Lease Purchase Payments and any Additional Rent, if applicable, the faithful observance by Tenant of all terms and conditions herein, and the performance by the Tenant of its other obligations under this Lease Purchase Agreement, are the conditions upon which this Lease Purchase Agreement is made and accepted.

(b)    **Repair and Maintenance Obligations.**  During the Term of this Lease Purchase Agreement, Tenant shall, at its sole cost and expense, make or cause to be made all repairs, maintenance, restorations and replacements (collectively referred to as "Repairs") which are necessary to keep the Premises and all improvements, appliances and fixtures, including all operating systems located within the Premises such as plumbing, electrical, Heating, Ventilation, and Air Conditioning ("HVAC") and lighting, together with all additions and alterations thereto, in good condition and working order, whether or not such Repairs are ordinary or extraordinary or foreseen or unforeseen at this time. Landlord gives to Tenant exclusive control of the Premises and shall be under no obligation to inspect the Premises.  Tenant accepts the Premises in their present condition and as suited for the uses intended by Tenant.  Tenant shall use all reasonable precautions to prevent waste, damage, or injury to the Premises.  In the event Tenant fails to make said repairs, then Landlord may, but shall not be required to, make such repairs in which event Tenant shall promptly reimburse Landlord for all expenses incurred thereby, and those expenses shall constitute additional rent hereunder.

(c)    **Obligations Upon Conclusion of Lease Purchase Agreement Term.**  When the Bank OZK Loan is paid in full and the Limited Warranty Deeds described in

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

Section 4(a) arc properly executed and recorded, the Term of this Lease Purchase Agreement shall be deemed concluded. If this Lease Purchase Agreement is terminated by Landlord prior to the Bank OZK Loan being paid in full, due to default of Tenant pursuant to the provisions of Section 21 of this Lease Purchase Agreement, then upon termination, Tenant shall peaceably and quietly surrender and deliver the Premises to Landlord, free of sub-tenancies, including all buildings, additions and fixtures then located on the Premises together with all improvements constructed or placed thereon by Tenant, except moveable trade fixtures placed on the Premises by Tenant after the Commencement Date that are removed by Tenant prior to termination, all in comparably the same condition as found at the commencement of the Lease Purchase Agreement, less and except normal wear and tear. All trade fixtures or personal property belonging to the Tenant, if not removed at the time of termination, and if the Landlord shall so elect, shall be deemed abandoned and may become the property of the Landlord without any payment or offset therefore. Landlord may remove such fixtures or property from the Premises and store them at the risk and expense of the Tenant if the Landlord shall so elect. On or before the termination of this Lease Purchase Agreement, Tenant shall repair and restore all damage to the Premises caused by removal of equipment, trade fixtures, and personal property to Landlord's reasonable satisfaction.

10. **LANDLORD'S REPAIR OBLIGATIONS.** Landlord shall not have any obligations to repair the Premises, other than repairs that any insurance policy covering the Premises will pay. Tenant accepts the Premises in their present condition and as suited for the uses intended by Tenant.

11. **USE OF PREMISES**. The Premises shall be used for the purpose of operating memory care facilities and for no other purpose. The Premises shall not be used for any illegal purposes; nor to create any nuisance or trespass; nor to vitiate the insurance or increase the rate of insurance on the Premises. Tenant agrees not to abandon or vacate the Premises during the Term of this Lease Purchase Agreement.

12. **ENVIRONMENTAL CONDITIONS.**

(a)    **Tenant's Indemnity Regarding Hazardous Material.** Tenant shall not cause or permit any Hazardous Material (hereinafter defined) to be manufactured, stored or otherwise placed or maintained in or about, or treated at the Premises, except for small amounts of Hazardous Materials which are customarily used in a memory care facility setting, which Hazardous Materials shall be used, stored and disposed of in compliance with all applicable local, state, and federal laws. As used in this Lease Purchase Agreement, "Hazardous Material" shall mean any hazardous, toxic, or radioactive substance, material, matter or waste which is regulated by any federal, state, or local law, ordinance, order, rule, regulation, code, or any other governmental restriction or requirement, and shall include asbestos, petroleum products and the terms "Hazardous Substance" and "Hazardous Waste" as defined in the Comprehensive Environmental Response, Compensation and Liability Act ("CERLA", as amended, 42 U.S.C. 6901 et. seq., the Resource Conservation and Recovery Act ("RCRA"), as amended, 42 U.S.C. 6901 et seq.

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

Should Tenant breach any of its duties and obligations as set forth above: 1) Tenant shall at its sole expense, promptly take all actions as are necessary to return the Premises to the condition existing prior to the introduction of any such Hazardous Material by Tenant, its employees, agents, and contractors; and 2) Tenant shall indemnify, defend and save harmless Landlord and its successors, assigns, and mortgagees, if any, from any and all claims, demands, damages, expenses, fees, costs, fines, penalties, suits, proceedings, actions, causes of action, and losses of any and every kind and nature, including without limitation, costs and expenses, incurred in connection with investigation of site conditions and any cleanup, remedial, removal or restoration work required by any federal, state or local governmental agency or political subdivision, which results therefrom.

(b)    **Landlord's Representation Regarding Hazardous Material.** Landlord represents, to its best knowledge and belief and without specific investigation, that no Hazardous Materials are contained on the Premises; and the Premises is not in violation of, and is not subject to, any pending or threatened proceedings or investigations relating to any federal, state or local environmental or health laws or regulations applicable to the Premises.

## 13. <u>ALTERATIONS AND REMOVAL OF TRADE FIXTURES</u>.

(a)    Tenant may make any alterations, additions, or improvements in and to the Premises to benefit and improve the use of the Premises as a memory care facility in the Tenant's discretion. Tenant shall keep Landlord reasonably informed of major alterations, additional or improvements during the Term of this Lease Purchase Agreement. All such alterations shall be performed in a workmanlike manner and shall not weaken nor impair the structural strength, or lessen the value, of the Premises, or change the purposes for which the Premises or any part thereof may be used.

(b)    At any time prior to the expiration or earlier termination of the Term of this Lease Purchase Agreement, Tenant may remove any or all of its trade fixtures in such a manner as will not damage the Premises. In the event Tenant shall elect to make any such permitted removal, Tenant shall restore the Premises, or the portion or portions affected by such removal, to the same condition as existed prior to the making of such alteration, addition or installation, ordinary wear and tear, damage or destruction by fire or other unavoidable cause excepted. All alterations, additions or installations not so removed by Tenant shall become the property of Landlord in the event of Tenant's default and Landlord's termination of this Lease Purchase Agreement as provided herein, without obligation on Landlord's part to pay for the same.

14. **DAMAGE OR DESTRUCTION**. If the Premises are damaged or destroyed by storm, fire, lightning, earthquake or other casualty, the Premises shall be repaired or reconstructed by Tenant and at Tenant's expense with the benefit of all insurance policies and proceeds covering the loss and the full cooperation of Landlord.

7

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

15. **PERSONAL PROPERTY TAXES**. Tenant shall pay, or cause to be paid before delinquency, any and all taxes levied or assessed, or which become payable during the term hereof upon all Tenant's leasehold improvements, equipment, furniture, fixtures and any other personal property located in the Premises. Tenant shall pay all taxes levied against its personal property or levied on account of Tenant's business.

16. **CONDEMNATION**.

(a)     In the event of a taking of all or substantially all of the Premises, the Tenant shall relocate and/or restructure the operation of its businesses, and as long as Tenant continues to make all Lease Purchase Payments required herein, all awards, damages, compensation or proceeds payable by reason of any taking of the demised Premises shall be used to pay down the balance of the Bank OZK Loan. If this Lease Purchase Agreement is terminated due to default of Tenant, all awards, damages, compensation or proceeds payable by reason of any such taking shall belong to Landlord.

(b)     For the purposes of this Paragraph:

(i)     "taking" shall mean any condemnation or exercise of the power of eminent domain by any public authority vested with such power or any taking in any other manner for public use, including a private purchase in lieu of condemnation, by any public authority vested with the power of eminent domain;

(ii)     the "date" of any taking shall mean the earlier of the date upon which title to the Premises or portion thereof taken is vested in the condemning authority, or the date upon which possession of the Premises or portion thereof is taken by the condemning authority; and

(iii)     "substantially all of the Premises" shall mean so much of the Premises as, when taken, leaves the untaken portion unsuitable for the continued feasible and economic operation of the Premises by Tenant for substantially the same purposes as immediately prior to such taking.

17. **INDEMNITY**. Tenant shall indemnify and save harmless Landlord for, from and against all liabilities, obligations, damages, penalties, claims, costs, charges and expenses, including reasonable attorney's fees, which may be imposed upon or incurred by or asserted against Landlord by reason of any accident, injury or damage to any person or property arising out of Tenant's use, occupancy or maintenance of the Premises or any part thereof on or after the Commencement Date, unless caused by the intentional wrongful act or negligence of Landlord or their agents, contractors or employees. In case any action or proceeding is brought against Landlord by reason of any such claim, Tenant, upon written notice from Landlord shall at Tenant's sole cost and expense, defend such proceeding.

18. **GOVERNMENTAL REGULATIONS**. Tenant agrees, at its sole expense, to promptly comply with all requirements of any legally constituted public authority made necessary by reason of Tenant's use or occupancy of the Premises.

8

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

19. **ASSIGNMENT AND SUBLETTING**. Tenant may sublet a portion of the Premises in Tenant's discretion, as long as any such sublease is fully subject to this Lease Purchase Agreement, Tenant continues to satisfy all requirements under this Lease Purchase Agreement, and the majority of the Premises continues to be used by Tenant as a memory care facility.

20. **LANDLORD'S RIGHT TO ACT FOR TENANT**. If Tenant fails to make any payment or to take any action when and as required under this Lease Purchase Agreement, Landlord may, except in the case of emergency, upon written notice to Tenant giving a 30-day cure period and without waiving or releasing Tenant from any duty, obligation or liability under this Lease Purchase Agreement, pay any such rent, make any such other payment or take any such other action required of Tenant. The actions which Landlord may take shall include, but are not limited to, the performance of maintenance or repairs and the making of replacements to the Premises, the payment of insurance premiums which Tenant is required to pay under this Lease Purchase Agreement and payment of assessments which Tenant is required to pay under this Lease Purchase Agreement. Landlord may pay all incidental costs and expenses incurred in exercising its rights hereunder, including, without limitation, reasonable attorneys' fees and expenses, penalties, re-instatement fees, late charges and interest. All amounts paid by Landlord pursuant to this Paragraph, and all costs and expenses incurred by Landlord in exercising Landlord's rights under this Paragraph, shall bear interest at the Default Rate of Interest from the date of payment by Landlord and shall be payable by Tenant to Landlord upon demand.

21. **DEFAULT**.

(a)    Each of the following events shall constitute an "Event of Default" by Tenant under this Lease Purchase Agreement.

(i)    if Tenant shall fail to pay when due any Lease Purchase Payment or other payment to be made by Tenant hereunder and shall not cure such failure within thirty (30) days after written notice thereof from Landlord; or

(ii)    if Tenant shall violate or breach, or shall fail fully and completely to observe, keep, satisfy, perform and comply with, any agreement, term, covenant, condition, requirement, restriction or provision of this Lease Purchase Agreement, and shall not cure such failure within thirty (30) days after Landlord gives Tenant written notice thereof; or

(iii)    if the Premises are deserted or abandoned; or

(iv)    if Tenant's leasehold interest in the Premises is levied upon; or

(v)    if Tenant becomes "insolvent," as defined in the Georgia Uniform Commercial Code, or makes an assignment for the benefit of creditors or makes a transfer in fraud of its creditors; or if any action is brought by Tenant seeking its dissolution or

9

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

liquidation of its assets or seeking the appointment of a trustee, interim trustee, receiver or other custodian for any of its property; or if Tenant commences a voluntary proceeding under the Federal Bankruptcy Code; or if any reorganization or arrangement proceeding is instituted by Tenant for the settlement, readjustment, composition or extension of any of its debts upon any terms; or if any action or petition is otherwise brought by Tenant seeking similar relief or alleging that it is insolvent or unable to pay its debts as they mature; or if any action is brought against tenant seeking its dissolution or liquidation of any of its assets, or seeking the appointment of a trustee, interim trustee, receiver or other custodian for any of its property, and any such action is consented to or acquiesced in by Tenant or is not dismissed within thirty (30) days after the date upon which it was instituted; or if any proceeding under the Federal Bankruptcy Code is instituted against Tenant and (i) an order for relief is entered in such proceeding or (ii) such proceeding is consented to or acquiesced in by Tenant or is not dismissed within thirty (30) days after the date on which it was instituted; or if any reorganization or arrangement proceeding is instituted by Tenant for the settlement, readjustment, composition or extension of any of its debts upon any terms, and such proceeding is consented to or acquiesced in by Tenant or is not dismissed within thirty (30) days after the date upon which it was instituted; or if any action or petition is otherwise brought against Tenant seeking similar relief alleging that it is insolvent or unable to pay its debts as they mature or generally not paying its debts as they become due, and such action is consented to or acquiesced in by Tenant or is not dismissed within thirty (30) days after the date upon which it was brought.

(b)    Upon the occurrence of any Event of Default, Landlord may terminate this Lease Purchase Agreement by written notice delivered to Tenant, thereby terminating the lease purchase arrangement described in Sections 3 and 4 of this Lease Purchase Agreement, and Tenant shall forfeit all rights to any payments made hereunder and shall remain liable to Landlord for all additional rent and all other obligations under this Lease Purchase Agreement arising up to the date of such termination. Upon notice of termination from Landlord, Tenant shall vacate the Premises pursuant to Section 9(c) within thirty (30) days of receipt of Landlord's notice of termination.

Landlord's forbearance in pursuing or exercising any one or more of its remedies shall not be deemed or construed to constitute a waiver of any Event of Default or of any remedy. No waiver by Landlord of any right or remedy on one occasion shall be construed as a waiver of that right or remedy on any subsequent occasion or as a waiver of any other right or remedy then or thereafter existing. No failure of Landlord to pursue or exercise any of Landlord's powers, rights or remedies or to insist upon strict and exact compliance by Tenant with any agreement, term, covenant, condition, requirement, provision or restriction of this Lease Purchase Agreement, and no custom or practice at variance with the terms of this Lease Purchase Agreement, shall constitute a waiver by Landlord of the right to demand strict and exact compliance with the terms and conditions of this Lease Purchase Agreement.

22.  **RIGHTS CUMULATIVE**.  All rights, remedies, powers and privileges conferred under this Lease Purchase Agreement on Landlord or Tenant shall be cumulative of and in addition to, but not restrictive of or in lieu of, those conferred by law.

10

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

23. **LIENS**. Tenant hereby indemnifies Landlord against and shall keep the Premises free from all liens for any work performed, material furnished, or obligations incurred by Tenant. Should any liens or claims be filed against the Premises by reason of Tenant's acts or omissions, Tenant shall cause same to be discharged by bond or otherwise within ten (10) days after filing. If Tenant fails to cause any such lien or claim to be discharged within the required time, Landlord may cause same to be discharged and may make any payment that Landlord, in its sole judgment, considers necessary, desirable or proper in order to do so. All amounts paid by Landlord shall bear interest at the Default Rate of Interest from the date of payment by Landlord and shall be payable by Tenant to Landlord upon demand.

24. **LIABILITY FOR ADDITIONAL RENT**. Any payments due from Tenant to Landlord as additional rent shall be due within thirty (30) days of written notice of the same received by Tenant from Landlord. If additional rent is not paid within thirty (30) days of receipt of notice, the balance due shall bear interest at fifteen percent (15%) per annum (the "Default Rate of Interest") until paid. No termination of this Lease Purchase Agreement prior to the normal expiration hereof shall affect Landlord's right to collect additional rent, if applicable.

25. **SUBORDINATION AND ATTORNMENT**.

(a)    Except as provided in subparagraph (c) below, this Lease Purchase Agreement and all rights of Tenant hereunder are and shall be subject and subordinate to the lien or any mortgage instruments or deeds to secure debt which are now or shall at any future time be placed upon the Premises, and to Landlord's rights hereunder, and to any and all renewals, extensions, rearrangements, modifications or consolidations of any such instruments or deeds to secure debt.

(b)    While subparagraph (a) above is self-operative, and no further instrument of subordination shall be necessary, Tenant shall, in confirmation of such subordination, upon demand, at any time or times, execute, acknowledge and deliver to Landlord or the holder of any such instruments or deeds to secure debt, without expense, any and all documents requested by either of them to evidence the aforesaid subordination of this Lease Purchase Agreement.

(c)    Tenant shall, upon demand, at any time or times, execute, acknowledge and deliver to Landlord or the holder of any of such instruments or deeds to secure debt, without expense, any and all documents that may be necessary to make this Lease Purchase Agreement subject to the lien of any of the same.

(d)    If the holder of any of said instruments or deeds to secure debt shall hereafter succeed to the rights of Landlord under this Lease Purchase Agreement, Tenant shall, at the option of such holder or a purchaser at any foreclosure or sale under power, attorn to and recognize such successor as Tenant's landlord under this Lease Purchase Agreement and shall promptly execute, acknowledge and deliver any instrument that may

11

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

be necessary to evidence such attornment. Upon such attornment, this Lease Purchase Agreement shall continue in full force and effect as a direct lease between each successor Landlord and Tenant, subject to all of the terms, covenants and conditions of this Lease Purchase Agreement.

(e)    If Tenant fails at any time to execute, acknowledge and deliver any of the documents provided for by this Section, within ten (10) days after Landlord's notice to do so, in addition to the remedies allowed by Section 21 hereof, Landlord may execute, acknowledge and deliver any and all such documents as the attorney-in-fact of Tenant in its name, place and stead and Tenant hereby appoints Landlord, his successors and assigns as such attorney-in-fact, such power of attorney coupled with an interest and being irrevocable in death, dissolution or merger of Tenant.

(f)    Landlord shall execute, and Landlord shall use commercially reasonable efforts to cause any holder of any mortgage instruments or deeds to secure debt which shall at any future time be placed upon the Premises to execute a subordination, non-disturbance and attornment agreement with Tenant.

26. **ESTOPPEL CERTIFICATE**. At any time and from time to time, Tenant, on or before the date specified in a request therefor made by Landlord, which date shall not be earlier than ten (10) days from the making of such request, shall execute, acknowledge and deliver to Landlord a certificate evidencing whether or not (i) this Lease Purchase Agreement is in full force and effect, (ii) this Lease Purchase Agreement has been amended in any way, (iii) there are any existing defaults on the part of Landlord hereunder, to the knowledge of Tenant, and specifying the nature of such defaults, if any, and (iv) the date to which amounts due hereunder have been paid. Each certificate delivered pursuant to this Section may be relied on by any prospective purchaser or transferee of Landlord's interest hereunder or by any holder or prospective holder of any mortgage instrument or deed to secure debt now or hereafter encumbering the Premises.

27. **LANDLORD AND TENANT RELATIONSHIP**. This Lease Purchase Agreement shall create the relationship of Landlord and Tenant between the parties hereto; no estate shall pass out of Landlord until the Bank OZK Loan is paid in full. Tenant has only a usufruct, not subject to levy and sale, and not assignable by Tenant except by Landlord's consent. Nothing contained in this Lease Purchase Agreement shall be deemed or construed by the parties hereto or by any third person as creating the relationship of principal and agent or a partnership or joint venture between the parties hereto, it being expressly understood and agreed that no provision contained herein nor any act of the parties hereto shall be deemed to create any relationship between the parties other than the relationship of landlord and tenant.

28. **ATTORNEY'S FEES**. If any party to this Lease Purchase Agreement brings an action to enforce the terms of the Lease Purchase Agreement or declare rights hereunder, the prevailing party in any such action, trial or appeal thereon shall be entitled to its reasonable attorneys' fees and other expenses of litigation to be paid by the losing party as

12

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

fixed by the court in the same or separate suit, and whether or not such action is pursued to decision or judgment.

29. **NOTICES.** Any notice, request, instruction or other document given hereunder by any party to the others shall be in writing and delivered personally, or by certified mail, postage prepaid, return receipt requested (such mailed notice to be effective three (3) business days after deposit), or by overnight courier (to be effective the business day following deposit), by facsimile transmission or e-mail (to be deemed received when sent unless sent after 5:00 p.m. on any business day or on the weekend, in which event it will be deemed received on the next business day, unless a "bounce-back" e-mail error message is received), as follows:

> Lisa A. Brown
> 705 Whitehead Road
> Athens, GA 30606
> doraville1128@gmail.com
>
> With a copy to (which shall not be considered notice):
> C. David Rowe, Esq.
> 3651 Mars Hill Rd., Suite 500-A
> Watkinsville, GA 30677

All notices to Landlord shall be addressed to:

> Vicki Robinson
> 3042 E. Marlette Avenue
> Phoenix, AZ. 85016
> Vicki.Robinson@am.jll.com

Either party may, at any time, designate by written notice to the other party a change in the above address or addresses, but such change shall be binding upon the person to who it is sent only from and after the date of receipt by such person.

30. **TIME OF ESSENCE.** Time is of the essence of this Lease Purchase Agreement.

31. **SUCCESSORS AND ASSIGNS.** The provisions of this Lease Purchase Agreement shall inure of the benefit of and be binding upon Landlord and Tenant and their respective heirs, executors, administrators, legal representatives, successors and assigns, subject, however, in the case of Tenant, to the restrictions on assignment and subletting contained in this Lease Purchase Agreement.

32. **NO BROKERS.** Landlord and Tenant hereby represent each to the other that they have not disclosed this Lease Purchase Agreement or subject matter hereof to any real estate broker, agent or salesman so as to create any legal right or claim for a real estate commission or compensation with respect to the negotiation of this Lease Purchase Agreement. In the event that a Broker makes a claim for commission against either one of

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

the parties, that party shall indemnify and hold harmless the other party from any costs involved in defending against said claim.

33.    **HEADINGS**. The descriptive headings of the several articles, sections and paragraphs contained in this Lease Purchase Agreement are inserted for convenience only and shall not control or affect the meaning or construction of any provision hereof.

34.    **WAIVER**. No waiver of any condition or legal right or remedy shall be implied by the failure of either party to declare a forfeiture, or for any other reason, and no waiver of any condition or covenant shall be valid unless it be contained in writing signed by both parties, nor shall the waiver of a breach of any condition be claimed or pleaded to excuse the future breach of the same condition or covenant.

35.    **AUTHORITY OF SIGNATORY**. The party or parties executing and delivering this Lease Purchase Agreement on behalf of Landlord and Tenant have full power and authority to enter into this Lease Purchase Agreement and bind their respective entity and shall provide adequate evidence of such authority, such as resolutions or consents, to the party requesting same.

36. **ELECTRONIC SIGNATURES VALID; COUNTERPARTS**. This Lease Purchase Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Lease Purchase Agreement delivered by facsimile, e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Lease Purchase Agreement. Further, execution by electronic signature via DocuSign or similar service shall have the same legal effect as an original pen and ink signature.

37. **MISCELLANEOUS**. This Lease Purchase Agreement, in addition to the Transaction Documents reflecting a combined overall agreement and transaction, contain the entire agreement of Landlord and Tenant, and no representations, warranties, inducements, promises or agreements, oral or otherwise, between the parties not provided in this Lease Purchase Agreement and the Transaction Documents shall be of any force or effect. If any clause or provision of this Lease Purchase Agreement is illegal, invalid or unenforceable, under applicable present or future laws or regulations effective during the Term of this Lease Purchase Agreement, the remainder of this Lease Purchase Agreement shall not be affected. In lieu of each clause or provision of this Lease Purchase Agreement which is illegal, invalid or unenforceable, there shall be added as a part of this Lease Purchase Agreement a clause or provision as nearly identical as may be possible and as may be legal, valid and enforceable. This Lease Purchase Agreement shall not be amended or modified, and no waiver of any provision hereof shall be effective, unless and until set forth in a written instrument authorized and executed with the same formality as this Lease Purchase Agreement. This Lease Purchase Agreement shall be governed by, construed under and interpreted and enforced in accordance with the laws of the State of Georgia. Should any provision of this Lease Purchase Agreement require judicial interpretation, it is agreed that the court interpreting or construing the same shall not apply a presumption

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

that the terms hereof shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed more strictly against the party who itself, or through its agent, prepared the same. Landlord and Tenant shall be excused from the performance of any of its obligations under this Lease Purchase Agreement for the period of any delay resulting from any cause beyond its control, including, without limitation, all labor disputes, governmental regulations or controls, fires or other casualties, inability to obtain any material or services or acts of God; provided, however, in no event shall Tenant be excused from any monetary payments required to be made under this Lease Purchase Agreement due to causes beyond its control.

**IN WITNESS WHEREOF**, the undersigned have executed this Lease Purchase Agreement as of the dates listed below.

LANDLORD:

A Place in Time, Inc.

By: _Vicki Robinson_         8/14/2022
Name:  Vicki Robinson, President         Date

TENANT:

Haven Real Estate Holdings of Athens, LLC

By: **Lisa Brown**         9/27/2022
B570FA789B164D3
Name:  Lisa A. Brown, Manager         Date

Haven Real Estate Holdings of Snellville, LLC

By: **Lisa Brown**         9/27/2022
B570FA789B164D3
Name:  Lisa A. Brown, Manager         Date

15

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

# EXHIBIT A

## Legal Description of the Athens Premises

See attached



Bt 02835    Pt 0355

"Exhibit A"

<u>Legal Description of Land</u>

All that lot, tract or parcel of land lying, situate and being in GMD 1347, City of Athens, Clarke County, Georgia, being all of that property shown on a survey for "A Place in Time, Inc., et. al.," prepared by Barry D. Lord, Georgia Registered Land Surveyor, dated March 15, 2005, and being more fully described according to said survey as follows:

BEGINNING at an iron pin located on the southeastern right of way of Whitehead Road (80 foot right of way), said iron pin being located south 69 degrees 21 minutes 30 seconds east 40.65 feet from the centerline intersections of Whitehead Road and Hunt Road; thence from said beginning iron pin running along the southeastern right of way of Whitehead Road the following courses and distances:   north 20 degrees 07 minutes 54 seconds east 287.29 feet to an iron pin; north 24 degrees 36 minutes 51 seconds east 233.97 feet to an iron pin; thence leaving said right of way and running south 63 degrees 22 minutes 21 seconds east 124.92 feet to an iron pin; thence running south 63 degrees 09 minutes 51 seconds east 612.03  feet to an iron pin; thence running south 06 degrees 00 minutes 15 seconds east 623.79 feet to an iron pin; thence running north 62 degrees 57 minutes 10 seconds west 666.49 feet to an iron pin; thence running north 62 degrees 50 minutes 27 seconds west 366.14 feet to the beginning iron pin.

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

# EXHIBIT B

### Legal Description of the Snellville Premises

See attached

42033
00144

BK 42033 PG 0144

"Exhibit A"

Legal Description of Land

All that lot, tract or parcel of land lying situate and being in the 5th District, 8th Land Lot, City of Snellville, Gwinnett County, Georgia, being all of that property described on a survey for "A Place in Time, Inc., et. al." prepared by Barry D. Lord, Georgia Registered Land Surveyor, dated March 15, 2005, and being more fully described according to said survey as follows:

To find the True Point of Beginning, begin at an iron pin located on the northeastern right of way of McGee Road (80 foot right of way) at the point where it intersects with the common line of Land Lot 8 and Land Lot 7; thence leaving said right of way and running north 61 degrees 16 minutes 47 seconds east 580.99 feet to the TRUE POINT OF BEGINNING. Thence from said true point of beginning running along the centerline of a creek the following courses and distances: north 23 degrees 10 minutes 17 seconds west 62.55 feet; north 05 degrees 42 minutes 56 seconds west 37.86 feet; north 09 degrees 36 minutes 57 seconds west 40.51 feet, north 08 degrees 47 minutes 06 seconds west 53.26 feet; north 12 degrees 48 minutes 41 seconds west 46.84 feet; north 02 degrees 39 minutes 04 seconds west 44.25 feet; north 03 degrees 02 minutes 17 seconds east 37 feet; thence leaving the centerline of said creek and running north 54 degrees 34 minutes 50 seconds east 341.52 feet to an iron pin; thence running south 29 degrees 53 minutes 27 seconds east 341.62 feet to an iron pin; thence running south 61 degrees 16 minutes 47 seconds west 450.19 feet to the TRUE POINT OF BEGINNING.

ALSO CONVEYED HEREIN is Grantor's rights, title and interest in and to the following:
   a) Sanitary Sewer Easement dated January 24, 1996 recorded in Deed Book 12314, page 58, Gwinnett County, Georgia Deed Records;
   b) Agreement for Cross-Sanitary Sewer on Ingress/Egress Easement dated November 16, 1995, recorded in Deed Book 12000, page 243, Gwinnett County, Georgia Deed Records and re-recorded in Deed Book 12142, page 74, Gwinnett County, Georgia Deed Records

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

EXHIBIT C

**Promissory Note**

**$240,000.00**                                                      **August 1, 2022**

        **FOR VALUE RECEIVED,** the undersigned makers (herein collectively called "Maker") jointly and severally promise to pay to the order of **Vicki Robinson** at 3042 E. Marlette Avenue, Phoenix, AZ 85016, or at such other place as the Lender from time to time may designate in writing, in lawful money of the United States of America, **the principal amount of Two Hundred Forty Thousand and 00/100's Dollars ($240,000.00) (the "Loan"), with no interest accruing as long as the balance is paid in full on or before February 1, 2025.**

        <u>Payments</u>. Maker shall pay the entire principal balance on or before February 1, 2025 (the "Due Date").

        <u>Prepayment</u>. Maker may prepay any of the outstanding principal balance prior to the Due Date at any time without penalty.

        <u>Default</u>. Maker will be in default if any of the following events occur: (a) Maker fails to make any payment when due and such failure shall remain uncured for a period of ten (10) days after the date of written notice from Lender to Maker, or (b) Maker fails to comply with or to perform when due any other term, obligation, covenant, or condition contained in this Note and such breach or failure shall remain uncured for a period of ten (10) days after the date of written notice from Lender to Maker. If a default under the Note occurs and the Note is given to an attorney for collection or enforcement, or if it is collected or enforced through probate, bankruptcy or other judicial proceeding, then Maker shall pay to Lender all costs of collection and enforcement, including reasonable attorneys' fees and court costs.

        <u>Remedies</u>. Upon default, interest shall continue to accrue, subject to the specific terms hereof, and Lender may declare the entire unpaid principal balance of this Note and all accrued unpaid interest immediately due, without demand or notice of any kind, and then Maker will pay that amount. The waiver of Lender of any default shall not operate as a waiver of any other default or of the same default on a future occasion. Acceptance by Lender of payment of less than the entire unpaid balance after default and acceleration of this Note shall not waive the acceleration, and Lender may proceed with its rights and remedies.

        <u>General</u>. Except as expressly required herein, all parties to this Note hereby waive presentment for payment, demand, protest, notice of protest, notice of acceleration of maturity, notice of nonpayment, notice of dishonor, and diligence in the collection of this Note, and agree that their liability for the payment hereof shall not be affected or impaired by any extension of time for the payment or all or any part of the principal and interest due hereunder. Lender may delay or forego enforcing any of Lender's rights or remedies

18

DocuSign Envelope ID: E0D73A3B-6668-4891-9303-569BC93FDC96

without losing them. Any notice required to be made hereunder shall be deemed sufficiently given or made if given by personal service or by certified mail, return receipt requested, addressed at the party's address first written above. Either party may change its address by written notice provided to the other party.

Any late payments shall bear interest at the rate of fifteen percent (15%) per annum, from the date when such payment was due until paid. Notwithstanding any other provision of this Note to the contrary, the holder of this Note shall not charge a rate of interest greater than that which is permitted by applicable law. The interest rate provided for in this Note shall apply, to the extent allowed by applicable law, to any indebtedness due following the entry of a judgment relating to the collection of this Note.

This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any change, modification, termination, waiver or discharge is sought. The obligations under this Note are joint and several. This means that the term "Maker" means each and all of the persons and/or entities signing below, if more than one party signs this Note. The term "Lender" means the holder of this Note. This Note is binding upon Maker and Maker's successors and assigns and shall inure to the benefit of and be enforceable by Lender and Lender's successors, transferees and assigns. This Note shall be deemed to have been made under and shall be construed and enforced in accordance with the laws of the State of Georgia.

The parties agree and acknowledge that this Note is given in order to assume debt owed to Vicki Robinson and the principal balance of this Note, as well as the payments made hereunder, shall be deemed to be part of the Purchase Price for the real properties located at 705 Whitehead Road, Athens, Clarke County, Georgia 30606 and 2106 McGee Road, Snellville, Gwinnett County, Georgia 30078, pursuant to the Lease Purchase Agreement between the parties executed concurrently herewith.

IN WITNESS WHEREOF, Maker has caused this instrument to be executed in its name by a person or persons duly authorized, intending this to be a binding instrument, all by authority duly given, as of the date first above written.

Haven Real Estate Holdings of Athens, LLC

By: **Lisa Brown**
Name: Lisa A. Brown, Manager

9/27/2022

Date

Haven Real Estate Holdings of Snellville, LLC

By: **Lisa Brown**
Name: Lisa A. Brown, Manager

9/27/2022

Date

19

Tax Parcel No. 087-A-00-0-85A

Upon recording, please return to:

Spencer Gandy, Esq.
Spencer Gandy LLC
Suite 355
8302 Dunwoody Place
Atlanta, Georgia 30350

## DEED TO SECURE DEBT,
## ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

THIS DEED TO SECURE DEBT, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT (hereinafter referred to as this "Deed") made this _____ day of November, 2022, by and between LISA A. BROWN, fka Lisa Peterlin ("Grantor"), whose address is 1128 Phelps Road, Greensboro, GA 30642 and First Liberty Capital Partners LLC ("Grantee"), whose address is P. O. Box 2567, Newnan, GA 30264

### WITNESSETH:

THAT, WHEREAS, Grantor is justly indebted to Grantee in the sum of Six Hundred Thousand Dollars ($600,000.00) in lawful money of the United States, or, if this instrument is a construction mortgage, so much of said sum as may be advanced and outstanding from time to time, and has agreed to pay the same, with interest thereon, according to the terms of a certain Guaranty Agreement given by Grantor to Grantee, guaranteeing a promissory note (hereinafter referred to as the "Note") given by Haven Memory Care of Athens, LLC to Grantee, bearing even date herewith, with final payment being due on _____;

NOW, THEREFORE, in consideration of the premises and of the sum hereinabove set forth and in order to secure the indebtedness and other obligations of Grantor hereinafter set forth, Grantor has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto Grantee and the successors, successors-in-title and assigns of Grantee the following property (the "Property"), to-wit:

That real property described in Exhibit "A" attached hereto and by this reference incorporated herein;

TOGETHER WITH all and singular, the improvements, fixtures, easements, hereditaments, rights, members and appurtenances thereunto belonging or in anywise appertaining, including, without limitation: the buildings and improvements now or hereafter erected thereon, and the fixtures, attachments, appliances, equipment, machinery, furnishings and other articles affixed or attached to said buildings and improvements or used or intended to be used with or in connection with the use, operation or enjoyment of the Property, including, without limitation, all building materials, electrical, plumbing, heating and air conditioning systems (including window units), all built-in appliances, cabinets and lighting fixtures, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of, any of the foregoing (all of the foregoing is hereinafter collectively referred to as the "Improvements and Personal Property"); and all minerals, shrubs, trees or other emblements now or hereafter on said Property or under or

1

above the same or any part or parcel thereof, and all leasehold estates, usufructuary interests, and rights of Grantor in the Property, and all rights of Grantor as lessor or landlord under any lease or sublease letting or demising all or any portion of the Property or the Improvements and Personal Property, including, without limitation, the interest of Grantor in all rents and security deposits paid or to be paid thereunder; and all right of claim of Grantor with respect to the proceeds of insurance which Grantor now has or may hereafter acquire in the Property and the Improvements and Personal Property and any and all awards made for the taking by eminent domain, by any proceeding or purchase in lieu thereof, of the whole or any part of the Property and the Improvements and Personal Property; and if this is a construction mortgage all right, title and interest of Grantor in and to all construction materials, equipment, supplies and contracts.

TO HAVE AND TO HOLD all of the Property, the Improvements and Personal Property, property rights, leases, contract rights, claims and other items set forth in the preceding paragraph (all of which are collectively referred to as the "Premises") to the use, benefit and behoof of Grantee, forever, in fee simple.

Grantor warrants that Grantor has good title to the Premises, and is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that the Premises are unencumbered except as may be herein expressly provided; and the Grantor will forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

This instrument is a deed passing legal title to the Premises pursuant to the laws of the State of Georgia governing loan or security deeds and security agreements and is not a mortgage, as "mortgage" is defined for the purpose of the real property law of the State of Georgia, but does constitute a "construction mortgage" as defined in Section 11-9-313(1)(c) of the Official Code of Georgia if so indicated hereinabove, and is made and intended to secure (i) the payment of the indebtedness evidenced by the Note and any modifications, extensions, renewals or consolidations thereof and substitutions therefor, either in whole or in part; (ii) any and all additional advances made by Grantee to protect or preserve the Premises or the security interest created hereby on the Premises, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Grantor's obligations hereunder or for any other purpose provided herein (whether or not the original Grantor remains the owner of the Premises at the time of such advance); (iii) the performance of all obligations of Grantor under this Deed; (iv) the performance of all obligations of Grantor under any loan agreement (including, without limitation, any construction loan agreement), guaranty and other agreements, documents or instruments evidencing, securing or otherwise relating to the indebtedness evidenced or guarantied by the Note (the Note, this Deed, and any and all other such loan agreements, guarantees, agreements, documents and instruments are hereinafter collectively referred to as the "Loan Documents"); and (v) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Grantee, now existing or hereafter coming into existence, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due to become due, and all renewals, modifications, consolidations and extensions thereof and substitutions therefor, either in whole or in part. All of the foregoing secured hereby are collectively described herein as the "Secured Indebtedness."

AND GRANTOR FURTHER COVENANTS AND AGREES WITH GRANTEE as follows:

1.      Payment of Secured Indebtedness. Grantor shall pay to Grantee the Secured Indebtedness with interest thereon as in the Note, the Loan Documents and this Deed provided.

2.      Payment of Other Items. Grantor shall pay, when due and payable, (a) all taxes, assessments, general or special and other charges levied on, or assessed, placed or made against the Premises, this Deed or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby; (b) premiums on policies of fire and other hazard insurance covering the Premises, as required in Article 3 herein; (c) premiums on all collaterally pledged life insurance policies, if any; (d) premiums for mortgage insurance, if this Deed and the Note are so insured; and (e) ground rents or other lease rentals, if any, payable by Grantor. Grantor shall pay to Grantee, together with and in addition to the payments of principal and interest payable under the Loan Documents, on the installment-paying dates thereof, until the Secured Indebtedness is fully paid or until notification from Grantee to the contrary, an amount reasonably sufficient (as estimated by Grantee) to provide Grantee with funds on hand to pay taxes, assessments, insurance premiums, rents and other charges next due so that Grantee will have sufficient funds on hand to pay same thirty (30) days before the date on which they become past due. In no event shall Grantee be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided. Grantor shall furnish to Grantee, at least thirty (30) days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums and rents next due, and Grantee shall pay said charges to the amount of the then unused credit therefor as and when they become severally due and payable. An official receipt therefor shall be conclusive evidence of such payment and of the validity of such charges. Grantee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefor in excess of the then amount of credit for said charges. The excess amount advanced shall be immediately due and payable to Grantee and bear interest at the rate of 12.50% per annum from date of advancement. Grantee may apply credits held by it for the above charges, on account of any delinquent installments of principal or interest or any other payments maturing or due under this Deed, and the amount of credit existing at any time shall be reduced by the amount so paid or applied. The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under and subject to all of the

2

provisions hereof, provided that nothing contained in this paragraph shall be deemed to authorize or to constitute Grantee's consent to the transfer of the Premises or any portion thereof or any interest therein, including a security interest. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it.

3.      Insurance. (a) Grantor shall keep the Premises insured for the benefit of Grantee against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke, and such other hazards (so-called "All Risk Coverage"), including flood, as Grantee may from time to time require, all in amounts approved by Grantee not to be less than 100% of the full replacement cost. Grantor shall also maintain (1) comprehensive public liability insurance, to include workmen's compensation insurance, covering all liabilities incident to the construction, ownership, possession and operation of the Premises, and naming Grantee as an additional insured thereunder, in an amount acceptable to Grantee; (2) rent insurance against loss of income arising out of any hazard against which the Premises are required to be insured under subparagraph (a) above in an amount not less than one (1) year's gross rental income from the Premises; and (3) such other insurance on the Premises or any replacements or substitutions therefor and in such amounts as may from time to time be reasonably required by Grantee against other insurable casualties which at the time are commonly insured against in the case of properties of similar character and location, due regard being given to the height and type of the improvements, their construction, location, use and occupancy, or any replacements or substitutions therefor including, without limitation, boiler insurance and flood hazard insurance, if applicable. All such insurance shall be written in form and by companies approved by Grantee; and regardless of the types or amounts of insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insurance against any loss or damage to the Premises, with loss payable to Grantee, without contribution by Grantee, pursuant to the New York Standard or other mortgagee clause satisfactory to Grantee. If Grantee, by reason of such insurance, receives any money for loss or damage, such amount may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the repair or replacement of the Premises or any part thereof, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the proper application of any amount paid over to Grantor.

(b)      Not less than 30 days prior to the expiration date of each policy of insurance required of Grantor hereunder, and of each policy of insurance held as additional collateral to secure the Secured Indebtedness, Grantor shall deliver to Grantee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Grantee.

(c)      In the event of a foreclosure of this Deed, the purchaser of the Premises shall succeed to all the rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Grantee, with respect to the Premises.

4.      Maintenance and Inspection. Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises or any part thereof. Grantor shall promptly repair, restore, replace or rebuild any part of the Premises, now or hereafter encumbered by this Deed, which may be affected by a proceeding of the character referred to in Article 7 herein. No part of the Premises now or hereafter conveyed as security by or pursuant to this Deed, shall be removed, demolished or materially altered without the prior written consent of Grantee. Grantor shall complete, within a reasonable time, and pay for any building, structure or other improvement at any time in the process of construction on the property herein conveyed. Grantor shall not initiate, join in or consent to any change in the private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof. Grantee and any persons authorized by Grantee shall have the right to enter and inspect the Premises at all reasonable times.

5.      Leases and Assignment of Rents. Grantor shall faithfully perform the covenants of Grantor as lessor under any present and future leases, affecting all or any portion of the Premises, and neither do nor neglect to do, nor permit to be done, anything which may cause the termination of said leases, or any of them, or which may diminish or impair their value, or the rents provided for therein, or the interest of Grantor or Grantee therein or thereunder. Grantor, without first obtaining the written consent of Grantee thereto, shall not (a) assign the rents, or any part thereof, from the Premises, (b) consent to the cancellation or surrender of any lease of the Premises, or any part thereof, now existing or hereafter to be made, (c) modify any such lease so as to shorten the unexpired term thereof, or so as to decrease the amount of the rent payable thereunder, or (d) collect rents from the Premises for more than one month in advance. Grantor shall procure and deliver to Grantee at the time of executing this Deed, or at any time within thirty (30) days after notice and demand, estoppel letters or certificates from each lessee, tenant or occupant in possession of the Premises, as required by, and in form and substance satisfactory to, Grantee and deliver to Grantee a recorded assignment of all of the lessor's interest in said leases, in form and substance satisfactory to Grantee (in addition to the conveyance hereunder), and proof of due service of copy of said assignment on each lessee, either personally or by prepaid registered mail, return receipt requested.

3

Grantor hereby absolutely assigns and transfers to Grantee all the rents, issues and profits of the Premises, and hereby gives to and confers upon Grantee the right, power and authority to collect such rents, issues and profits. Grantor irrevocably appoints Grantee its true and lawful attorney-in-fact, at the option of Grantee at any time and from time to time, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in the name of Grantor or Grantee, for all such rents, issues and profits and apply the same to the Secured Indebtedness.

Notwithstanding anything contained herein to the contrary, this assignment is intended and shall be construed to create, an absolute, present assignment from Grantor to Grantee. The rents, issues and profits of the Premises are hereby assigned absolutely by Grantor to Grantee. It is the further intent of Grantee and Grantor that the rents, issues and profits absolutely assigned are no longer, during the term of this Deed, property of Grantor or property of the estate of Grantor as defined in 11 U.S.C. § 541 and shall not constitute collateral, cash or otherwise, of Grantor.

Although this assignment constitutes a present and current assignment of all rents, issues and profits of the Premises, so long as Grantor is not in default hereunder, Grantee shall not demand that such rents, issues and profits be paid directly to Grantee, and Grantor shall have a revocable license to collect, but no more than one (1) month prior to accrual, all such rents, issues and profits from the Premises; provided that such revocable license shall *ipso facto* terminate without further action by Grantee and without notice to Grantor upon the occurrence of a Default.

6.    Additional Documentation. Grantor shall execute and deliver and pay the costs of preparation and recording thereof to Grantee and to any subsequent holder from time to time, upon demand, any further instrument or instruments, including, but not limited to, security deeds, security agreements, financing statements, assignments, and renewal and subscription notes and guaranties, so as to reaffirm, to correct and to perfect the evidence of the obligation hereby secured and the legal security title of Grantee to all or any part of the Premises intended to be hereby conveyed, whether now conveyed, later substituted for, or acquired subsequent to the date of this Deed and extensions or modifications thereof. Grantor, upon request, shall certify by a writing, duly acknowledged, to Grantee or to any proposed assignee of this Deed, the amount of principal and interest then owing on the Secured Indebtedness and whether or not any offsets or defenses exist against the Secured Indebtedness, within 6 days in case the request is made personally, or within 10 days after the mailing of such request in case the request is made by mail.

7.    Condemnation. In the event all or any part of the Premises is taken by eminent domain by any public or quasi-public authority or corporation, or in the event all or any portion of the Premises is purchased from Grantor under threat of such taking, then all of the award of payment arising from said taking or purchase shall be paid to Grantee. Grantee shall have the right to retain said award or payment toward payment of the Secured Indebtedness, or to pay over said amount, in whole or in part, to Grantor, but Grantee shall not be obligated to see to the application of any amount paid over to Grantor. If prior to the receipt by Grantee of such award or payment, the Premises shall have been sold on foreclosure of this Deed, Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this Deed shall have been sought or recovered or denied, and of attorneys' fees in the sum of 15% of the aggregate amount due hereunder, and all costs and disbursements incurred by Grantee in connection with the collection of such award of payment.

8.    Financial Statements. Grantor shall deliver to Grantee, at any time within 30 days after notice and demand by Grantee, (i) a statement in such reasonable detail as Grantee may request, certified by the Grantor or an executive officer of a corporate Grantor, of the leases relating to the Premises, and (ii) a statement in such reasonable detail as Grantee may request certified by a certified public accountant or, at the option of Grantee, by Grantor or an executive officer or treasurer of a corporate Grantor, of the income from and expenses of any one or more of the following: (a) the conduct of any business on the Premises, (b) the operation of the Premises, or (c) the leasing of the Premises or any part thereof, for the last 12 month period prior to the giving of such notice, and, on demand, Grantor shall furnish to Grantee executed counterparts of any such leases and convenient facilities for the audit and verification of any such statement. Grantor and any Guarantor of the Secured Indebtedness shall deliver to Grantee financial reports and statements in form and substance acceptable to Grantee within 90 days following fiscal year end and within 30 days of request(s) made by Grantee from time to time.

9.    Security Agreement. Grantor hereby grants to Grantee a security interest in the Improvements and Personal Property, including without limitation any and all property of similar type or kind hereafter located on or at the Property, for the purpose of securing the Secured Indebtedness. Grantor warrants, represents and covenants that the Improvements and Personal Property are not used or bought for personal family or household purposes. Notwithstanding anything contained herein to the contrary, all covenants and obligations of Grantor contained herein relating to the Premises shall be deemed to apply to the Improvements and Personal Property. This Deed constitutes a Security Agreement as that term is used in the Uniform Commercial Code of Georgia.

10.    Default. Upon the occurrence of any one of the following events (herein called an "Event of Default" or "Default"):

4

(i) should Grantor fail to pay the Secured Indebtedness, or any part thereof, when and as the same shall become due and payable;

(ii) should any representation or warranty of Grantor (Grantor and each person primarily or secondarily liable to Grantee for the Secured Indebtedness hereinafter referred to as an "Obligor") herein contained, or contained in any instrument given by any Obligor to Grantee with respect to the Secured Indebtedness or the Premises, prove untrue, incomplete or misleading in any material aspect;

(iii) should the Premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the Premises is reduced or diminished in any manner whatsoever;

(iv) should any federal tax lien, execution, or claim of lien for labor or material be filed of record against any Obligor or the Premises and not be removed by payment or bond within 30 days from date of recording;

(v) should any claim of priority superior to this Deed by title, lien or otherwise be asserted in any legal or equitable proceeding;

(vi) should any Obligor become insolvent or should any Obligor make any assignment for the benefit of creditors, or should a receiver, liquidator or trustee of any Obligor or of any of any Obligor's property be appointed, or should any petition for the bankruptcy, reorganization or arrangement of any Obligor, pursuant to the Federal Bankruptcy Act or any similar statute, be filed, or should any proceeding be instituted against or on behalf of any Obligor alleging that any Obligor is insolvent or unable to pay such Obligor's debts as they become due, or should any Obligor be adjudicated a bankrupt or insolvent, or should any Obligor, if a corporation, be liquidated or dissolved or its charter expire or be revoked, or, if a partnership or business association, be dissolved or partitioned, or, if a trust, be terminated or expire;

(vii) should any Obligor fail to keep, observe, perform, carry out and execute in every particular the covenants, agreements, obligations and conditions set out in this Deed, or in the Note, or in any other Loan Document;

(viii) should any event occur under any instrument, deed or agreement, given or made by any Obligor to or with Grantee or any third party, which would authorize the acceleration of any debt owed by such Obligor to Grantee or to any such third party;

(ix) should Grantor sell or transfer the Premises or any portion thereof or any interest therein, including a security interest, without Grantee's prior written consent;

(x) if any Obligor is a corporation, partnership or other artificial entity, if there is any encumbrance, pledge, conveyance, transfer or assignment of any legal or beneficial interest whatsoever in such Obligor; or

(xi) if the financial responsibility of any Obligor becomes impaired in the sole opinion of Grantee or if Grantee otherwise deems itself to be insecure;

then and thereupon:

(i) Grantee may take possession of the Premises without the appointment of a receiver, or an application therefor, employ a managing agent of the Premises and let the same, either in its own name, or in the name of Grantor, and give notice to any lessees or tenants under any existing leases affecting the Premises to make all future payments directly to Grantee or its order and to attorn to Grantee or its order as lessor or landlord, and receive the rents, incomes, issues and profits of the Premises and apply the same, after payment of all reasonable charges and expenses, on account of the Secured Indebtedness.

(ii) Grantee may pay any sums in any form or any manner deemed expedient by Grantee to protect the security of this instrument or to cure any Event of Default other than payment of interest or principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of Grantee shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the rate of 12.5 % per annum, shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Grantee; and Grantee shall be subrogated to any encumbrance, lien, claim or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Grantee under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this Deed;

5

(iii)    Grantee may, at its option, declare the entire Secured Indebtedness immediately due, payable and collectible, without notice to Grantor, regardless of maturity, and thereupon, Grantee may sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises or any part thereof may be, to the highest bidder for cash, in order to pay the Secured Indebtedness, and all expenses of sale and of all proceedings in connection therewith, including 15% of the aggregate amount due as attorneys' fees, first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four consecutive weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which sheriff's advertisements are published in said county, all other notice being hereby waived by Grantor; and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the Default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantee, its agents, representatives, successors or assigns, may bid and purchase at such sale; and Grantor hereby constitutes and appoints Grantee or its assigns, agent or attorney-in-fact to make such recitals, sale and conveyance, and all of the acts of such attorney-in-fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns (and in the event of a deed in lieu of foreclosure, then as to such conveyance), shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, curtesy and all other exemptions of Grantor, or its successors in interest, in and to said Premises; and in the event of such a foreclosure sale, the proceeds of such sale shall be applied, in whatever order Grantee in its sole discretion may decide, to the outstanding principal amount of the Note, and interest then due thereon, and all amounts advanced by Grantee for taxes, assessments, fire insurance premiums and other charges, with interest at the rate of 12.5% per annum thereon from date of payment, together with all costs and charges for advertising, and commissions for selling the Premises, and 15% of the aggregate amount due, as attorneys' fees, and Grantee will pay over any surplus to Grantor (in the event of deficiency Grantor shall immediately on demand from Grantee pay over to Grantee, or its nominee, such deficiency); and Grantor agrees that possession of the Premises during the existence of the Secured Indebtedness by Grantor, or any person claiming under Grantor, shall be that of tenant under Grantee, or its assigns, and, in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily disposed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Grantee may have at law or in equity; and

(iv)    Grantee may exercise any and all of the remedies available to a secured party under the Georgia Uniform Commercial Code.

Grantee, in any action to foreclose this Deed, or upon any Event of Default, may apply for the appointment of a receiver of the rents, profits and other income of the Premises without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due the Grantee, or the solvency of any person or corporation liable for the payment of such amounts.

In case of any sale under this Deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, the Premises or any part thereof, may be sold in one parcel and as entirety, or in such parcels, manner or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless and until the entire Premises are sold or the Secured Indebtedness is paid in full.

11.    Waiver of Homestead; Time of the Essence. Grantor, for himself and family, hereby waives and renounces all homestead and exemption rights provided for by the Constitution and Laws of the United States or the State of Georgia, in and to the Premises as against the collection of the Secured Indebtedness, or any part thereof: and Grantor agrees that where, by the terms of this Deed, the Note, or any of the Loan Documents, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time stated enters into the consideration and is of the essence of the whole contract.

12.    Grantee's Right to Sue. Grantee shall have the right from time to time to sue for any sums, whether interest, principal or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this Deed or any of the Loan Documents, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Grantee thereafter to enforce any appropriate remedy against Grantor, including an action of foreclosure, or any other action, for a Default or Defaults by Grantor existing at the time such earlier action was commenced.

13.    Rights Cumulative. The rights of Grantee, granted and arising under the clauses and covenants contained in this Deed, the Note, and the other Loan Documents shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Grantee may have in law or equity, and none of them shall be in exclusion of the others, and all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under security deeds, and preservation of security as provided at law. No act of Grantee shall be construed as an election to proceed under any one provision herein or under the Note or any of the Loan Documents to the exclusion of any

6

other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

14.    Notice. Any and all notices, elections or demands permitted or required to be given under this Deed shall be in writing, signed by or on behalf of the party giving such notice, election or demand, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt requested, or upon being deposited with an overnight commercial delivery service requiring proof of delivery, to the other party at the address of such other party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response, if given to Grantee, shall be addressed as follows:

> First Liberty Capital Partners LLC
> P. O. Box 2567
> Newnan, GA 30264

and if given to Grantor shall be addressed as follows:

> Lisa A. Brown
> 1128 Phelps Road
> Greensboro, GA 30642

15.    No Waiver. Any indulgence or departure at any time by the Grantee from any of the provisions hereof, or of any obligation hereby secured, shall not modify the same or relate to the future or waive future compliance therewith by the Grantor.

16.    Definitions. The words "Grantor" and "Grantee" whenever used herein shall include all individuals, corporations (and if a corporation, its officers, employees, agents or attorneys) and any and all other persons or entities, and the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes or guaranties and the grammatical construction of sentences shall conform thereto. If more than one party shall execute this Deed, the term "Grantor" shall mean all parties signing, and each of them, all of whom shall be jointly and severally liable hereunder, and each agreement, obligation and Secured Indebtedness of Grantor shall be and mean the several as well as joint undertaking of each of them.

17.    Severability. The parties agree that the provisions of this Deed are severable, and in the event any clause, phrase, sentence or paragraph shall be declared by a court of competent jurisdiction to be invalid or unenforceable, then the parties declare that the remaining clauses, phrases, sentences and paragraphs of this Deed shall remain in full force and effect.

18.    Waiver of Grantor's Rights.  BY EXECUTING THIS INSTRUMENT AND BY INITIALLING THIS PARAGRAPH 18, GRANTOR EXPRESSLY ACKNOWLEDGES THAT UPON GRANTOR'S DEFAULT HEREUNDER, GRANTEE IS GIVEN THE RIGHT TO ACCELERATE THE DEBT SECURED HEREBY AND TO SELL THE PROPERTY CONVEYED HEREBY AT PUBLIC AUCTION PURSUANT TO THE POWER OF SALE CONTAINED HEREIN, AND GRANTOR HEREBY EXPRESSLY WAIVES ANY RIGHTS TO NOTICE AND HEARING BEFORE SUCH SALE UNDER POWER BY GRANTEE, OTHER THAN THE REQUIRED ADVERTISEMENT ONCE A WEEK FOR FOUR WEEKS PLUS GRANTOR'S INHERENT LEGAL RIGHT TO SEEK A COURT INJUNCTION. GRANTOR MAKES THIS WAIVER KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY, AFTER HAVING BEEN GIVEN FULL EXPLANATION OF GRANTEE'S RIGHTS HEREUNDER PLUS THE OPPORTUNITY TO CONSULT AN ATTORNEY OF GRANTOR'S OWN CHOOSING BEFORE EXECUTING THIS INSTRUMENT AND INITIALLING THIS PARAGRAPH.

Approved by Grantor _____(Initials)

19.    Prior Deeds. If a default by Grantor should occur under any one or more of the documents evidencing or securing a debt that is secured by the deeds to secure debt listed below (the "Prior Deeds"), if any, such default shall constitute a Default hereunder, whereupon Grantee, at Grantee's option and without notice or demand to Grantor, may proceed immediately to exercise any and all rights and remedies

7

provided hereunder, or may make any payments or perform any acts necessary to correct any such default, or may pay all or part of the debt secured by any one or more of the Prior Deeds. Any payment so made or costs so incurred in connection with Grantee's action pursuant to this paragraph shall be treated as though made or incurred pursuant to the provisions of Paragraph 2 hereof, shall bear interest as set forth in Paragraph 2 hereof, and shall be secured hereby. Grantor hereby assigns to Grantee all surplus funds which, upon foreclosure of a Prior Deed, may come into the hands of the person performing such foreclosure, and Grantor hereby directs that such surplus funds be paid over to Grantee to be applied upon payment of the debt secured hereby. Grantor will pay or cause to be paid as and when due all payments on the debts and other obligations secured by the Prior Deeds. Grantor represents and warrants to Grantee that as of the date of this Deed, Grantor is not in default under any of the Prior Deeds and no event exists which, with the giving of notice or passage of time, or both, would constitute a default under any of the Prior Deeds.

PRIOR DEEDS:

Security Deed from Lisa Peterlin to USAA Federal Savings Bank recorded in Deed Book 1226, page 563, Greene County records.

20.    Indemnity. Grantor shall protect, indemnify and save harmless Grantee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including attorneys' fees and expenses) imposed upon or incurred by Grantee by reason of (a) any claim for brokerage fees or other such commissions relating to the Premises or the Secured Indebtedness, or (b) the condition of the Premises, or (c) any default by Grantor under this Deed, the Note, or any other Loan Documents, or (d) failure to pay recording, mortgage, intangibles or similar taxes, fees or charges relating to the indebtedness evidenced by the Note or any one or more of the Loan Documents, or (e) the Loan Documents or any claim or demand whatsoever which may be asserted by reason of any alleged action, obligation or undertaking to be performed or discharged by Grantor pursuant to this Deed or any other document evidencing, securing, or in any way relating to the Secured Indebtedness or pursuant to any matter contemplated in the Loan Documents. In the event Grantee incurs any liability, loss or damage by reason of the foregoing, or in the defense of any claim or demand arising out of or in connection with the foregoing, the amounts of such liability, loss or damage shall be added to the Secured Indebtedness, shall bear interest at the interest rate specified in the Note from the date incurred until paid and shall be payable on demand.

IN WITNESS WHEREOF, this Deed has been duly executed and sealed by Grantor the day and year first above written.

Signed, sealed and delivered, this
_18_ day of November, 2022, in
the presence of:

Grantor:

_____
Unofficial Witness  Traci C. Rivers

_____(SEAL)
Lisa A. Brown

_____
Notary Public

(NOTARY SEAL)

My Commission Expires:
_9/13/2026_

8

Exhibit A

All that tract or parcel of land lying and being in the 143rd GMD, City of Greensboro, Greene County, Georgia, containing 4.00 acres according to a plat of survey prepared for Bobby Joe Youngblood and Geraldine P. Youngblood dated December 14, 1998, and recorded at Plat Cabinet I, Slide 433, Page 1, Greene County, Georgia, said plat being incorporated herein by reference.

Also conveyed herewith is the right to access the subject property by virtue of that certain appurtenant 25' Ingress/Egress Easement as depicted on said plat of survey and recorded in Deed Book 500, Page 36, said records.

Subject to all covenants, easements and restrictions of record, if any.

Prior Deed Reference: Deed Book 920, Page 623, said records.

Tax Map/Parcel #: 087-A-00-0 85-A

Known as: 1128 Phelps Rd., Greensboro, GA 30642

This instrument is being executed and recorded to correct and/or clarify the recording reference listed for the subject plat of survey referenced in that certain Limited Warranty Deed recorded in Deed Book 1226, Page 561, said records. Said plat of survey is listed as being recorded in "Plat Slide 433, Page 1," but said plat of survey is actually recorded in "Plat Cabinet 1, Slide 433, Page 1." Furthermore, due to a recent divorce, Grantee is also updating her name to Lisa A. Brown, which is Grantee's maiden name.