# EXHIBIT 17

eFiled and eRecorded
DATE: 07/08/2025
TIME: 12:11 PM
LIEN BOOK: 152
PAGE: 309 - 310
FILING FEES: $25.00
RECORDED BY: DC
CLERK: Janie J. Jones
Barrow County, GA

After Recording Please Return to:
Tyler M. Gaines
Epps, Holloway, DeLoach & Hoipkemier, LLC
1220 Langford
Building 200-101                                          Cross-Reference Book 2819, Page 638
Watkinsville, Georgia 30677                               Barrow County, Deed Records

## IN THE SUPERIOR COURT OF COWETA COUNTY
## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| HAVEN REAL ESTATE HOLDINGS OF WINDER, LLC, | : | |
| | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| | : | SUV2025000831 |
| v. | : | |
| | : | |
| FIRST LIBERTY CAPITAL PARTNERS, LLC, | : | **Jury Trial Demanded** |
| | : | |
| Defendant. | : | |
| | : | |

## LIS PENDENS NOTICE

Notice is hereby given pursuant to O.C.G.A. § 44-14-610 that the above-styled action was filed on July 7, 2025 in the Office of the Clerk of Superior Court of Coweta County, Georgia.

Relief is sought against the property described as:

ALL THAT TRACT OR PARCEL OF LAND lying and being in the 243rd District, G.M., Barrow County, Georgia, being identified as Tract 2, containing 1.817 acres, as shown by that certain plat of survey entitled "Survey for Habitat/Prudential, Inc.", prepared by W.T. Dunahoo and Associates, Inc., certified by W.T. Dunahoo, Georgia Registered Surveyor No. 1577, dated October 10, 1988, revised November 29, 1988, and further revised December 16, 1988, and being of record in the Office of the Clerk of Superior Court of Barrow County, Georgia in Plat Book 32, page 107, which said plat and the recording thereof are by reference hereto incorporated herein for a more complete and detailed description.

AND ALSO:

ALL THAT TRACT OR PARCEL OF LAND lying and being in the 243rd District, G.M., Barrow County, Georgia, being identified as Tract 1, containing 2.149 acres,

as shown by that certain plat of survey entitled "Survey for Habitat/Prudential, Inc.", prepared by W.T. Dunahoo and Associates, Inc., certified by W. T. Dunahoo, Georgia Registered Surveyor No. 1577, dated October 10, 1988, revised November 29, 1988, and further revised December 16, 1988, and being of record in the Office of the Clerk of Superior Court of Barrow County, Georgia in Plat Book 32, page 107, which said plat and the recording thereof are by reference hereto incorporated herein for a more complete and detailed description.

The relief sought against said property is the granting of specific performance and conveyance of the property to Haven Real Estate Holdings of Winder, LLC.

This 8th day of July, 2025.

**EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC**

BY: */s/ Tyler M. Gaines*
    Tyler M. Gaines
    Georgia Bar No. 855701

1220 Langford Drive
Building 200-101
Watkinsville, GA 30677
706-508-4000
tyler@ehdhlaw.com

⏚ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
COWETA COUNTY, GEORGIA

**SUV2025000831**

**JUL 08, 2025 12:03 PM**

*Niki Sewell*
Niki Sewell, Clerk
Coweta Superior Court

**IN THE SUPERIOR COURT OF COWETA COUNTY
STATE OF GEORGIA**

| | | |
|---|---|---|
| HAVEN REAL ESTATE HOLDINGS OF WINDER, LLC, | : | |
| | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| | : | _____ |
| v. | : | |
| | : | |
| FIRST LIBERTY CAPTIAL PARTNERS, LLC, | : | **Jury Trial Demanded** |
| | : | |
| Defendant. | : | |
| | : | |

## VERIFIED COMPLAINT FOR SPECIFIC PERFORMANCE

COMES NOW Plaintiff Haven Real Estate Holdings of Winder, LLC ("Plaintiff"), by and through counsel, and files this Verified Complaint for Specific Performance against Defendant First Liberty Capital Partners, LLC ("Defendant"), respectfully showing the Court as follows:

PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff is a Georgia limited liability company and submits itself to the jurisdiction and venue of this Court with respect to the matters discussed herein.

2.

Defendant is a Georgia limited liability company with a principal office address of P.O. Box 2567, Newnan, Georgia 30264. Defendant can be served by delivering a copy of this Complaint and the Summons upon its registered agent, Keith Logue, at 3423 Weymouth Court, Marietta, Georgia 30062 or wherever else he may be found.

3.

Jurisdiction and venue are proper with this Court.

**FACTUAL ALLEGATIONS**

4.

Plaintiff is a real property holding company affiliated with Haven Memory Care—Northeast Georgia's only exclusive Alzheimer's and dementia care community. Haven Memory Care places great emphasis on person-centered care, crafting individualized programs to cater to the unique needs of every resident, including tailored memory care therapies and engaging activities.

5.

At all times material to this Complaint, Defendant was in the business of lending.

6.

In October 2022, Defendant's Manager, Brant Frost IV, reached out to a representative for Plaintiff, Lisa Brown, to gauge interest in purchasing the real property subject to this action—approximately 3.966 acres commonly known as 169 W. Athens St., Winder, Georgia and more particularly described in Exhibit "A" (the "Subject Property").

7.

Frost explained that the Subject Property's then-owner was struggling to make mortgage payments to Defendant. Frost sent Ms. Brown a text explaining that the balance of the loan was approximately $750,000.00 and the property's estimated value was $1,700,000.00. Frost later explained that the then-owner was willing to sell for the loan balance. Ms. Brown declined to purchase the property at that time.

-2-

8.

In July 2023, Frost reached out to Ms. Brown again to urge that she consider the Subject Property because the facility there was "floundering w/o good leadership and there is $1M+ in future value for you there if you can help me." See Exhibit "B."

9.

Frost subsequently proposed that Plaintiff obtain a construction loan to finance Plaintiff's purchase and renovations of the Subject Property. Plaintiff agreed.

10.

In reliance on the parties' agreement, in January 2024, Plaintiff took a $2 million loan ("Loan") from Defendant for the express purpose of purchasing and financing renovations for the Subject Property, among other things. Plaintiff executed a corresponding Promissory Note which observed that the "loan shall be devoted to the purpose of Haven Real Estate Holdings, LLC, buying and converting the existing 22 unit personal care home in Winder, GA, and converting it into a 36 unit assisted living facility." See Exhibit "C."

11.

Just a couple weeks later, Defendant obtained the Subject Property via a Warranty Deed in Lieu of Foreclosure, recorded at Deed Book 2819, Pages 638-40 of the real property records of the Clerk's Office of the Superior Court of Barrow County.

12.

Defendant wanted to hold record title to the Subject Property in trust until Plaintiff paid off the Loan. In reliance of the parties' agreement, Plaintiff completed the construction at Subject Property.

-3-

13.

On May 23, 2025, Plaintiff executed a contract to sell the Subject Property to non-party North Georgia Recovery Center, LLC ("NSRC") for $3,955,000.00.

14.

Since entering the PSA with NSRC, Plaintiff discovered that despite Plaintiff's substantial improvements to the Subject Property, Defendant had not conveyed the Property to Plaintiff.

15.

Ms. Brown reached out to Frost expressing the buyer's concern with the title still being in Defendant's name.  On June 3, 2025, Frost represented that he spoke with the broker for NSRC and that it was worked out.  Nevertheless, Defendant still did not promptly convey the Subject Property to Plaintiff.

16.

To Plaintiff's surprise, Defendant closed its doors on Friday, June 27, 2025.

17.

Since then, Plaintiff has been unable to contact Frost or any other representative of Defendant to discuss the matter. Defendant has posted that its employees "are not authorized to make any further communications at this time regarding the ongoing situation, and no one at the company will be available to answer phone calls or respond to email inquiries." See Exhibit "D."

18.

Accordingly, Plaintiff has no choice but to bring this action to protect its interest in the Subject Property.  Without this action and a lis pendens, Plaintiff's interest in the Subject

Property may be at risk if Defendant attempts to sell the property to a bona fide purchaser for value.

**COUNT ONE – BREACH OF CONTRACT AND
REQUEST FOR SPECIFIC PERFORMANCE**

19.

Plaintiff incorporates the preceding paragraphs as if they are incorporated fully herein.

20.

Plaintiff and Defendant have an enforceable agreement regarding Plaintiff's purchase of—and improvements to—the Subject Property.

21.

The material terms reflected in the parties' agreement are fair, certain, definite, capable of being performed, and backed by adequate consideration.

22.

Plaintiff has fully performed its obligations under the parties' agreement, but Defendant has breached the agreement by refusing to provide Plaintiff with an updated payoff on the Loan to allow Plaintiff to purchase the Subject Property for that amount, plus the balance of the previous owner's loan when Defendant obtained the Subject Property via the deed in lieu of foreclosure.

23.

There has been substantial performance on Plaintiff's side, accepted by Defendant's side in accordance with the parties' agreement.  It would render it a fraud of the Defendant to refuse to comply if the court did not compel a performance.

24.

This Court is authorized to declare and decree that the parties' contract be specifically performed. See O.C.G.A. § 23-2-130. Damages recoverable at law would not be an adequate compensation for Defendant's nonperformance of the terms under the parties' agreement.

25.

Plaintiff is entitled to a decree that directs Defendant to convey good and marketable title to the Subject Property, free of encumbrances, to Plaintiff. As such, Plaintiff respectfully requests that this Court enter an Order of Specific Performance requiring Defendant to convey the Subject Property to Plaintiff for the amount of the Loan payoff, plus the balance of the previous owner's mortgage at the time of the Deed in Lieu of Foreclosure.

26.

Plaintiff is entitled to such other and further equitable and injunctive relief as may be required to implement the requested order.

**COUNT TWO – UNJUST ENRICHMENT**

27.

Plaintiff incorporates the preceding paragraphs as if they are incorporated fully herein.

28.

As a result of the offer and acceptance exchanged between them, Plaintiff entered into the Loan with Defendant, renovated the Subject Property pursuant to the parties' agreement, and entered an agreement to sell the Subject Property to a third party for a significant profit.

29.

If the Court does not award specific performance, Defendant would be unjustly enriched if it is permitted to reap each of these benefits without adequately compensating Plaintiff.

-6-

30.

Accordingly, if the Court does not award specific performance, Plaintiff is entitled to damages for Defendant's unjust enrichment in an amount to be determined at trial.

## COUNT THREE – ATTORNEYS' FEES

31.

Plaintiff incorporates the preceding paragraphs as if they are incorporated fully herein.

32.

Plaintiff is entitled to recover all of its expenses and attorneys' fees pursuant to O.C.G.A. § 13-6-11 because Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

## NOTICE OF LIS PENDENS

33.

Plaintiff gives notice that it is recording a Notice of Lis Pendens regarding this action in the real property records of the Clerk of the Superior Court in Barrow County and will request that the clerk cross index the Notice to relevant instruments in the chain of title of the Subject Property.

WHEREFORE, Plaintiff prays for a judgment against Defendant for the following:

1) That Defendant be required to specifically perform its obligations under the parties' agreement and convey the Subject Property to Plaintiff in exchange for payment from Plaintiff equal to the payoff of the Loan, plus the balance of the previous owner's mortgage at the time of the Deed in Lieu of Foreclosure.

2) That, in the alternative, Plaintiff be awarded its damages for the amounts for which the Defendant has been unjustly enriched;

3)      That Plaintiff be awarded its attorneys' fees pursuant to O.C.G.A. § 13-6-11; and

4)      That Plaintiff have such other relief as this Court deems just and appropriate

under the circumstances.

Respectfully submitted this 8th day of July 2025.

**EPPS, HOLLOWAY, DELOACH
& HOIPKEMIER, LLC**

By:        _/s/ Kevin E. Epps_
           Kevin E. Epps
           Georgia Bar No. 785511

By:        _/s/ Tyler M. Gaines_
           Tyler M. Gaines
           Georgia Bar No. 855701
           ***Attorneys for Plaintiff***

1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000
kevin@ehdhlaw.com
tyler@ehdhlaw.com

## <u>VERIFICATION</u>

Personally appeared before the undersigned officer duly authorized to administer oaths,

**Lisa Brown of Haven Real Estate Holdings of Winder, LLC,** who states that the facts set forth

in the within and foregoing Pleading are true and correct and based on my personal knowledge.

This __8th__ day of ____July____ 2025.

_____
Lisa Brown, _____
of Haven Real Estate Holdings of Winder, LLC

Sworn to and subscribed before me
this ___ day of ___July___ 2025.

_____
Notary Public
My Commission Expires:___May 25, 2027___

# EXHIBIT A

## EXHIBIT "A"

### Legal Description of Subject Property

ALL THAT TRACT OR PARCEL OF LAND lying and being in the 243rd District, G.M., Barrow County, Georgia, being identified as Tract 2, containing 1.817 acres, as shown by that certain plat of survey entitled "Survey for Habitat/Prudential, Inc.", prepared by W.T. Dunahoo and Associates, Inc., certified by W.T. Dunahoo, Georgia Registered Surveyor No. 1577, dated October 10, 1988, revised November 29, 1988, and further revised December 16, 1988, and being of record in the Office of the Clerk of Superior Court of Barrow County, Georgia in Plat Book 32, page 107, which said plat and the recording thereof are by reference hereto incorporated herein for a more complete and detailed description.

AND ALSO:

ALL THAT TRACT OR PARCEL OF LAND lying and being in the 243rd District, G.M., Barrow County, Georgia, being identified as Tract 1, containing 2.149 acres, as shown by that certain plat of survey entitled "Survey for Habitat/Prudential, Inc.", prepared by W.T. Dunahoo and Associates, Inc., certified by W. T. Dunahoo, Georgia Registered Surveyor No. 1577, dated October 10, 1988, revised November 29, 1988, and further revised December 16, 1988, and being of record in the Office of the Clerk of Superior Court of Barrow County, Georgia in Plat Book 32, page 107, which said plat and the recording thereof are by reference hereto incorporated herein for a more complete and detailed description.

# EXHIBIT B



# EXHIBIT C

PROMISSORY NOTE

**$2,000,000.00**

**January 24, 2024**

**First Liberty Capital Partners, LLC, a Georgia limited liability Company** ("Borrower"), whose address is PO Box 2567, Newnan, GA 30264, and **Haven Real Estate Holdings of Winder, LLC, a Georgia limited liability company**, thereinafter, together with any subsequent holder hereof, sometimes called "**Lender**" or "**Holder**"), whose address is 705 Whitehead Road, Athens, GA 30606 agree as follows:

A.       Borrower has requested that Lender make a loan in the principal amount of **Two Million and 00/100 Dollars ($2,000,000.00)** (the "Loan").

B.       Lender has agreed and hereby agrees to make the Loan to Borrower upon the terms and conditions contained herein.

C.       This loan shall be devoted to the purpose of Haven Real Estate Holdings, LLC, buying and converting the existing 22 unit personal care home in Winder, GA, and converting it into a 36 unit assisted living facility.  The loan shall be documented by Promissory Notes, and other documents as determined by First Liberty Capital Partners, LLC.

**THEREFORE, FOR VALUE RECEIVED,** Borrower hereby promises to pay to the order of Lender or Holder, the principal sum of **Two Million and 00/100 Dollars** together with interest from the date hereof until paid in full, on the unpaid principal balance from time to time outstanding at the rate hereinafter set out, payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment.  Said principal and interest shall accrue and be payable as follows:

1.       **Payments.**

Borrower shall make payments of interest only monthly at the rate of **18%** annually, paid monthly.  January, 2024, partial month's interest is paid at closing.  Beginning on March 1, 2024, the monthly amount of $30,000.00 will be paid from a reserve account set up for the interest payments. **The Maturity Date for the loan is January 23, 2025,** when all Principal and Interest shall be due and payable for all purposes in full in a single **BALLOON PAYMENT.**  A six month extension is available for an additional 2.5% fee.  In addition, there will be a **4% annualized bonus** paid at the exit of the loan. These payments shall be made to the Lender by federal wire transfer or electronic funds transfer, or such other place and to such other person as the Lender or any subsequent holder hereof may from time to time designate in writing.

2.       **Late Charge/Post Default Interest.**       Borrower further agrees to pay a "late charge" of five percent (5%) of any amount due hereunder (but not in excess of the maximum amount allowed by any applicable law, rule or regulation) if paid more than five (5) days after the due date thereof, to cover the extra expense involved in handling delinquent payments.  These provisions shall not be deemed to excuse a late payment or be deemed a waiver of any other rights Lender may have including the right to declare the entire unpaid principal and interest immediately due and payable.  Notwithstanding any provision to the contrary herein, from and after the maturity of this Note (whether by acceleration or otherwise) or an Event of Default, interest on principal (but not on unpaid interest) shall be computed at the rate of 24.0% (the "Default Rate").

3.       **Loan Documents and Collateral.** Borrower represents, warrants, covenants and agrees that this Note is and shall at all times be secured and supported by: (i) Liens on three separate senior

living facilities in Snellville, GA, Athens, GA, and Winder, GA, (ii) Guaranties from principal, and corporate entities, (iii) instruments executed by or on behalf of the Borrower in connection herewith.

4. **Events of Default**. The principal sum evidenced by this Note, together with all accrued but unpaid interest thereon and all other agreed charges owing by Borrower hereunder, shall become immediately due and payable at the option of Lender upon the occurrence of any "Event of Default", as used and defined in any Loan Document, each of which shall constitute an "Event of Default" hereunder, *provided however,* that Borrower shall have thirty (30) days following notice of a monetary default in which to cure, and thirty (30) days following notice of a non-monetary in which to cure. Not in limitation of the foregoing but in addition thereto, the following shall constitute events of default under this Note: failure of Borrower (Borrower and each other person primarily or secondarily liable to Lender for the indebtedness evidenced by this Note hereinafter collectively referred to as "Obligors") to make any payment of principal or interest or any other amount under this Note when due or failure of Borrower to perform or observe any promise or agreement contained in this Note; the death of (if an individual), death of a general partner (if a partnership), or dissolution of (if a partnership or corporation), insolvency of, general assignment for the benefit of creditors by, any Obligor; the commencement of a voluntary proceeding under any law relating to bankruptcy, insolvency, reorganization, arrangement, composition or readjustment of debt, dissolution, liquidation or debtor relief law or statute of any jurisdiction, whether now or hereafter in effect, including without limitation the filing of a petition under any chapter of the federal bankruptcy code by or against, or acquiescence in writing to same by, or failure to timely and diligently controvert any such involuntary proceeding by, any Obligor; the filing of a proceeding for the appointment of a receiver, custodian, trustee, liquidator or similar official for Obligor or Obligor's property or consenting to the appointment of same; the failure of an involuntary petition for relief under the Federal Bankruptcy Code, as amended, to be dismissed within thirty (30) days after the commencement thereof or in which an order for relief is entered; the making by any Obligor of a conveyance fraudulent as to creditors under any state or federal law; entry of any judgment against, or issuance of a levy or writ of execution, attachment or garnishment against any of the property of, any Obligor; the inability of any Obligor to pay debts as they become due or admit in writing to such effect; the transfer by any Obligor of all or substantially all of his, her or its assets outside the ordinary course of business, or the waste, loss or dissipation of a substantial part of such person's assets; if any Obligor is a partnership, the withdrawal or removal of any general partner of such partnership; if any Obligor is a corporation, the transfer, directly or indirectly (including through any voting trust, irrevocable proxy, or the like), of the ownership or power to vote more than thirty percent (30%) of the voting stock of such corporation; the suspension of the operation of any Obligor's present business; the occurrence of any default or event authorizing acceleration as provided under any promissory note or other evidence of debt, loan agreement, security agreement, pledge agreement, assignment, mortgage, deed to secure debt, deed of trust, lease agreement or other agreement or contract between any Obligor and Lender or any third party; any statement, representation or warranty of any Obligor made orally or in writing in any document evidencing, securing or otherwise relating to the indebtedness evidenced by this Note or in any other writing or statement at any time furnished or made by any Obligor to Lender is false or misleading in a material respect as of the date furnished or made; revocation or termination of any guaranty executed in favor of Lender guaranteeing the indebtedness evidenced by this Note; the default under any financial obligation to a third party creditor which has a security interest in the collateral securing the Note; the financial responsibility of any Obligor becomes impaired at any time in the sole opinion of Lender; or, the determination by Lender that it otherwise deems itself to be insecure.

5. **Remedies.** If this Note is payable on demand, all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall be due and payable in full upon demand by Lender, whether or not any event of default has occurred and whether or not Lender reasonably deems itself to be insecure. If any event of default under this Note should occur, all unpaid amounts of any or all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall, at the

2

option of Lender and without notice or demand, become immediately due and payable and Lender shall have and be entitled to exercise, from time to time, all the rights and remedies available to it as provided elsewhere in this Note, in any other agreement or contract between Borrower and Lender and under applicable law. All of Lender's rights and remedies shall be cumulative, and any failure of Lender to exercise any such right or remedy shall not be construed as a waiver of the right to exercise the same or any other right or remedy at any time and from time to time thereafter.

6. **Notices**. Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Note shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or three (3) days after being deposited in the United States mail, postage prepaid, certified with return receipt requested, if mailed to the addresses set forth in the beginning of this Note or at such other address within the continental United States for either party as such party may designate by notice to the other given in accordance with the provisions of this paragraph; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice has been received shall also constitute receipt.

7. **Acceleration**. Time is of the essence in the performance of all obligations under this Note. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at its option and as often as it may desire, may declare all liabilities, obligations and indebtedness due Lender, including without limitation this Note to be immediately due and payable without demand, notice or presentment, and may exercise any other remedy available to Lender hereunder, at law or in equity.

8. **Costs of Collection**. Borrower agrees that if, and as often as, this Note is given to an attorney for collection or to defend or enforce any of Lender's arising from or relating to this Note, Borrower will pay to Lender its reasonable attorney's fees actually incurred, together with all court costs and other expenses paid or incurred by Lender; provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

9. **Maximum Legal Rate**. Borrower and Lender agree that no payment of interest or other consideration made or agreed to be made by Borrower to Lender pursuant to this Note shall, at any time, be in excess of the maximum rate of interest permissible by law. In the event such payments of interest or other consideration provided for in this Note shall result in an effective rate of interest which, for any period of time, is in excess of the limit of the usury or any other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied to principal immediately upon receipt of such monies by Lender hereof with the same force and effect as though the payer had specifically designated such and Lender had agreed to accept such extra payments as a principal payment, without premium. This provision shall control every other obligation of the Borrower and Lender under this Note.

10. **Miscellaneous.**

(a) With respect to any and all obligations, to the extent permitted by applicable laws Borrower waives the following: (1) all rights or exemption of property from levy or sale under execution or other process for the collection of debts under the constitution or laws of the United States or any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other

3

requirements necessary to charge or hold Borrower on any obligation; (3) all statutory provisions and requirements for the benefit of the Borrower now or hereafter in force (to the extent that same may be waived); (4) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Lender and Borrower shall be adverse parties.  Borrower agrees to pay all filing fees and taxes and all costs of collecting or securing or attempting to collect or secure any obligations, including but not limited to reasonable attorney's fees.

(b)    The obligations and liabilities of Borrower under this Note are continuing, absolute, and unconditional, and shall remain in full force and effect until all amounts due hereunder have been paid in full and all obligations of Borrower have been discharged without regard to and without being released, discharged, impaired, modified or in any way affected by, the occurrence from time to time of any event, circumstance or condition, including without limitation any one or more of the following, whether or not with notice to or consent of Borrower:  (1) any assignment or transfer this Note or of any interest hereunder; (2) any consent, extension, indulgence or other action or inaction (including without limitation any lack of diligence or failure to mitigate damages) under, or in respect of, this Note or other agreement, or any exercise or non-exercise of any right, remedy, power or privilege under, or in respect of, this Note or agreement; or (5) the failure, omission, delay or lack of diligence on the part of the Holder or any assignee or successor thereto, to enforce, assert or exercise any right, power, privilege or remedy conferred upon the Lender by this Note or other agreement.

(c)    The Lender, may, but shall not be required to, apply to the payment of the debt evidenced hereby, on or after the maturity of said debt, whether by acceleration or otherwise, any money or credit held by the Lender on deposit, in trust or otherwise, for the account of the Borrower or any of them.

(d)    Lender shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid, unless in writing and signed by the Holder.  All rights and remedies of the Lender under the terms of this Note and under any statutes or rules of law shall be cumulative and may be exercised successively or concurrently.  Borrower agrees that the Lender shall be entitled to all the rights of a holder in due course of negotiable instruments.  Any provision of this Note which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof.

(e)    The liabilities and obligations of each person or entity who or which is a Borrower are joint and several.

(f)    Borrower and Lender intend and believe that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions.  However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of Borrower and Lender that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender hereof under the remainder of this Note shall continue in full force and effect.

11.    <u>Governing Law</u>.  This Note shall be governed by and construed in accordance with the laws of the State of Georgia.

4

12.    <u>Waiver of Jury Trial.</u> TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION WITH THIS NOTE OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF EITHER PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.  BORROWER AGREES THAT LENDER MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT OF BORROWER TO IRREVOCABLY WAIVE BORROWER'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN BORROWER AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

<u>Venue</u>. Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Note or any agreements or transactions contemplated hereby shall be brought in the courts of the State of Georgia or of the United States District Court for the Middle District of Georgia and hereby expressly submits to the personal jurisdiction and venue of such courts for the purposes thereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum. Borrower hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the address of Borrower last provided to Holder in connection with the Loan, such service to become effective ten (10) days after such mailing.

**IN WITNESS WHEREOF,** Borrower has caused this Note to be executed, sealed, and delivered as of the date first set forth above.

**SIGNATURE PAGE TO FOLLOW:**

5

**BORROWER:**

Haven Real Estate Holdings of Winder, LLC
A Georgia limited liability company

By:_____(SEAL)

Lisa Brown/Manager

**LENDER:**

First Liberty Capital Partners, LLC
A Georgia limited liability company

By:_____(SEAL)

Brant Frost IV/Manager

6

# EXHIBIT D

# To All First Liberty Constituents:

We regret to inform you that as of Friday, June 27, 2025, First Liberty has ceased all business operations. First Liberty will no longer be accepting promissory note investments or bridge loan participations, and it will not be making any new bridge loans. Interest payments on existing promissory notes, bridge loan participation interests, and other investment programs are indefinitely suspended. First Liberty is cooperating with federal authorities as part of an effort to accomplish an orderly wind-up of the business. First Liberty employees are not authorized to make any further communications at this time regarding the ongoing situation, and no one at the company will be available to answer phone calls or respond to email inquiries. First Liberty hopes to provide additional information and updates in the near future regarding the status of the company's efforts to effectuate an orderly wind-up of the business.

Copyright © 2025 First Liberty Building & Loan all rights reserved.

Our website uses cookies to give you the best and most relevant experience. By clicking on accept, you give your consent to the use of cookies as per our privacy policy.

Deny     Accept