# EXHIBIT 18

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,     Plaintiff, <br><br> v. <br> EDWIN BRANT FROST IV and <br> FIRST LIBERTY BUILDING & LOAN, LLC, <br>    Defendants, and <br> FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC, <br>    Relief Defendants. | Civil Action File No. <br> 1:25-cv-3826-MLB |

**RESPONSE TO COURT'S ORDER DATED DECEMBER 3, 2025 AND MOTION BY RECEIVER TO ESTABLISH PROCEDURES TO ENTER ACTION TO RESOLVE CLAIMS ARISING FROM LOAN OBLIGATIONS <u>DUE TO THE RECEIVERSHIP</u>**

S. Gregory Hays, as Court-Appointed Receiver ("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in the above-captioned case (the **"Case"** or "**Receivership**"), by and through counsel, hereby files this *Response to Court's Order dated December 3, 2025 and Motion by Receiver to Establish Procedures to Enter Action to Resolve Claims Arising From Loan Obligations Due to the Receivership*, and respectfully states as follows:

1

**INTRODUCTION**

1. Since the Receiver was appointed, significant progress has been made in identifying, securing, and recovering assets for the benefit of the estate arising from the Receivership (the "**Receivership Estate**"). The primary asset of the Receivership consists of approximately sixty (60) individual, defaulted loans (the "**Loans**") that were made with investor funds to certain borrowers (the "**Borrowers**"). In some cases, individual Borrowers hold several loans in their name or through one or more of their affiliates. The Receiver has spent most of his efforts to date on working to untangle and administer the Loans.

2. In response to collection efforts by the Receiver to recover amounts due under the Loans, certain Borrowers have attempted to avoid honoring their loan obligations and disputing their liability to pay back investor funds. Certain Borrowers have also asserted claims and challenged amounts due and documentation underlying the Loans and even sought to intervene in this Receivership. More specifically, Riverdawg, LLC ("**Riverdawg**"), No Free, LLC ("**No Free**"), and Holt Knob Holdings, LLC ("**Holt Knob**" and collectively with Riverdawg and No Free, the "**Williams Parties**") filed a certain *Motion for Leave of Court to Initiate Action Against Receivership Estate* [Doc. No. 29] (the "**Williams Motion**") among other pleadings to seek relief [Doc. Nos. 34 and 36] and to otherwise enter this action. Full

Circle LLC ("**Full Circle**"), Timeless Acquisitions LLC ("**Timeless Acquisitions**"), David Pike, David Pike II, and Christie Pike (collectively the "**Full Circle Parties**") filed a certain *Motion for Leave to Initiate Action Against Receivership Estate* [Doc. No. 44] (the "**Full Circle Motion**") to seek to enter this action. An investor, Bay Point Capital Partners II, LP ("**Bay Point**") has also sought to intervene in this Receivership pursuant to *Bay Point Capital Partners II, LP's Motion to Intervene* [Doc. No. 18] (the "**Bay Point Motion**") that was filed by Bay Point.

3.     Given the recent filing of these Motions, the Court scheduled a hearing for December 15, 2025, at 10:00 a.m., in Courtroom 1906, Richard B. Russell Federal Building, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303 to consider procedures for third parties to intervene in this action. This Response and Motion is in response to the direction in the December 3 Order that the Receiver attend the hearing prepared to discuss procedures.

4.     This Motion seeks to establish procedures to resolve Borrower loans. The procedures proposed herein are intended to apply only to Borrowers and affiliated parties only and not to investors. The Receiver anticipates that litigation with the Borrowers to enforce the loans and recover monies received by them will be the most pressing matter in the immediate future in this case.

5.     The Receiver does not request that procedures be established for investor

claims since a claims process will ultimately be established in this case for investor claims. In particular, the Receiver does not propose that these procedures apply to Bay Point, which is an investor and not a borrower. The Receiver continues to request that the Motion to Intervene filed by Bay Point be denied or stayed.

6. Neither this Motion nor any later appearance, pleading, claim, or suit is intended to or shall waive: a) any stay or injunction arising from the appointment of the Receiver; or b) any other sanctions, rights, claims, actions, defenses, setoffs, or recoupments to which Receiver is or may be entitled, under agreements, in law, in equity, or otherwise, all of which rights, claims, actions, defenses, setoffs, and recoupments are expressly reserved.

## BACKGROUND

7. On July 11, 2025, the a) Securities and Exchange Commission (the "**SEC**") filed a complaint (the "**Complaint**") against Defendants Edwin Brant Frost IV ("**Frost**") and First Liberty Building & Loan, LLC (together, "**Defendants**") and Relief Defendants (as defined in the Appointment Order); and b) District Court entered the Appointment Order to appoint the Receiver for the purposes of marshaling and preserving all assets of the Receivership Entities (as defined in the Appointment Order) and the assets of Defendant Frost that: i) are attributable to funds derived from investors or clients of the Defendants; ii) are held in constructive

4

trust for the Defendants; and/or iii) may otherwise be includable as assets of the estates of the Defendants.

8.    The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets of the Receivership Entities. *See* Appointment Order, at p. 1. Based on the record in the Case, the Court determined that the appointment of a receiver in this action was necessary and appropriate for the purposes of marshaling and preserving all assets of the Receivership Entities and the Recoverable Assets (as defined in the Appointment Order). *See* Appointment Order, p. 1.

9.    The Appointment Order provides that the District Court takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated of the Receivership Entities, including the Defendant in this case. *See* Appointment Order, p. 2. The Appointment Order further defines "Receivership Property" as all "property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind." *See* Appointment Order ¶ 6(A).

10.    The Appointment Order includes essential provisions to empower the Receiver to analyze and investigate assets, administer assets for the benefit of the

5

Receivership and harmed investors and creditors, and develop a fair and reasonable liquidation plan for all investors. Incident thereto, the Receiver is tasked with securing assets all property interests of the Receivership Entities, managing the estate, and liquidating assets of the Receivership Estate. *Id*. at ¶¶ 4-7.

11.     To provide the Receiver with the ability to fulfill the duties of the Receiver without being hindered or obstructed by litigation against property of the Receivership, in addition to freezing the Receivership Property, the District Court entered an injunction against interference with the Receiver (the "**Injunction**") and stay (the "**Stay**") of all civil legal proceedings involving any Receivership Property or the Receivership Entities until further order of the District Court. *See* Appointment Order ¶¶ 32-34. The Injunction protects against action that would "[d]issipate or otherwise diminish the value of any Receivership Property." See Appointment Order ¶ 32(C). Furthermore, the Stay under Section VII of the Appointment Order stays all litigation matters other than the litigation subject to the Receivership and clearly provides that no further actions should be taken against any assets or entities subject to the Appointment Order until further order of the District Court.

12.     The Receiver also has the power to engage professionals, issue subpoenas, and take any legal actions necessary to recover assets and protect the

6

Receivership Estate. *Id*. at ¶ 7(F).

13.     As the Receiver was charged with marshalling all Receivership Property, it is necessary and appropriate for the Receiver to collect and otherwise resolve obligations due as a result of the Loans and resolve any claims related thereto. To accomplish this task, it is necessary for the Receive to have information and documents related thereto.

14.     Certain Borrowers have been unwilling to resolve their obligations arising from their respective loan agreements without litigation and have disputed liability to the Receivership Estate.   These Borrowers not only seek to escape from the obligations imposed by the agreements they voluntarily executed, but further ignore that if the funds they received were not valid loans, as alleged, then they are almost certainly voidable fraudulent conveyances.  Alternatively, if the Borrowers are indeed "victims" of what may ultimately determined to be a ponzi-type scheme, then they are net winners having received substantial payments without making any contributions and will be obligated to return their net winnings to the Receivership Estate.

15.     Although the Receiver believes that the Borrowers will ultimately be required to pay back their loans and/or return the monies received by them as well as pay all interest and other charges on these loans, the Receiver recognizes that the

Borrowers are entitled to have their claims heard and that it is necessary to modify the stay and injunction in the Appointment Order for the limited purposes set forth herein and to establish a procedure pursuant to which Borrowers may seek to have their disputes resolved in an expedited process. To the extent that any Borrowers are allowed to enter this case, such entry should be conditioned on such parties acting in good faith and providing the Receiver with information to allow the Receiver and the Court to document, understand, analyze, and address all obligations related to the Loans and to efficiently resolve such disputes.

## **PROPOSED PROCEDURES**

16. The Receiver proposes the following procedures with respect to claims to be asserted by Borrowers to modify the stay contained in the Appointment Order to allow Borrowers to enter the case in a uniform and fair manner without unnecessary burden on the Receivership (the "**Procedures**").

17. Prior to filing this Motion, the Receiver discussed this matter with the SEC. One of the primary concerns of the SEC was the potential cost to the Receivership Estate in litigating these claims. The Receiver has therefore proposed that any Borrower seeking to intervene provide substantial initial disclosures and provide a detailed statement of claims or defenses as a condition of intervening in this case. Further, the Receiver proposes expedited discovery procedures.

8

18. The Receiver has also discussed this issue with counsel for the Williams Parties and 2406 Cancer Care. The Receiver believes that these parties will agree with some, but not all, of the proposed procedures. The Receiver has also discussed his position with respect to the Bay Point Motion with counsel for Bay Point.

19. The Receiver reserves the right to amend, modify, or supplement the Procedures based on the business judgment and at the discretion of the Receiver and approval by the Court. The initial proposed Procedures are as follows.

20. If sued by the Receiver in this Court, a Borrower may assert counterclaims against the Receivership Estate without having to seek leave of this Court and may assert such counterclaims pursuant to and in compliance with these Procedures if established by the Court.

21. A Borrower shall be entitled to initiate litigation against the Receivership Estate, without first seeking permission from this Court pursuant to and in compliance with these Procedures if established by the Court. The Receiver will file an Answer or, if the Verified Complaint is not in compliance with these Procedures, a Motion to Dismiss within twenty (20) days of the filing of the Verified Complaint.

22. The proposed Procedures are as follows:

a) All relief shall be sought through either a Verified Complaint or Verified Counterclaim filed with this Court. The stay contained in the Appointment

Order will remain in place for any litigation in any other Court;

b) The Verified Complaint or Verified Counterclaim must comply with the Federal Rules of Civil Procedure and rules of this Court and must further include the following:

i. A complete set of all loan documents, term sheets, promissory notes, guarantees and related documents executed by the Borrower and any related parties, including guarantors, attached as an Exhibit(s) to the Verified Complaint or Verified Counterclaim along with an attestation that such documents constitute a complete set of all documents executed by such Borrower and any related parties including guarantors in connection with any loans made by any of the Receivership Entities to such Borrower;

ii. A list of all payments or advances, by date and amount, received from any of the Receivership Entities;

iii. A list of payments, by date and amount, made to any of the Receivership Entities;

iv. To the extent that a Borrower received direct advances from any of the Receivership Entities, an accounting for the uses of such funds by the Borrower and documents evidencing such uses attached as an

Exhibit to the Verified Complaint or Verified Counterclaim or separately provided to the Receiver;

v.	To the extent that Borrower alleges that a Receivership Entity breached any agreements with Borrower, a detailed statement of each and every breach of any obligations related to any Loans of such borrower, including the identification of any specific provision of any loan document that was allegedly breached and documents evidencing such defenses attached as an Exhibit to the Verified Complaint or Verified Counterclaim or separately provided to the Receiver;

vi.	A detailed statement of the factual basis for any defenses asserted by Borrower to the claims of the Receiver and documents evidencing such defenses attached as an Exhibit to the Verified Complaint or Verified Counterclaim or separately provided to the Receiver;

vii.	In the event that a Borrower asserts fraud on the part of any of the Receivership Entities or its principals, fraud shall be plead with particularity in accordance with F.R.C.P. 9, including, but not limited to, the identification of each and every fraudulent statement or act on which Borrower relied together with supporting documents attached as an Exhibit to the Verified Complaint or Verified Counterclaim or separately provided

to the Receiver. It shall not be allowed or sufficient to simply reference or rely upon fraud generally or the general circumstances or general fraud underlying or asserted in the Complaint filed by the SEC that led to the appointment of the Receiver;

viii. A detailed and specific itemization and calculation of damages for which offset or other relief is sought together with supporting documents for such calculation attached as an exhibit to the Verified Complaint or Verified Counterclaim or separately provided to the Receiver. It shall not be allowed or sufficient to generally state that such damage claims offset all or part of the Receiver's claim, specific damage amounts and calculations must be provided;

ix. Confirmation and proof that any collateral, including real property and personalty, provided by Borrower in support of the loans made by the Receivership Entities, is insured with the Receiver named as a loss payee under such insurance policy;

x. Confirmation and proof for any collateral, including real property and personalty, that the Borrower is current on all property or *ad velorem* taxes for such collateral;

xi. To the extent that a Borrower seeks injunctive relief against

the Receiver including to suspend or enjoin any collection activities of the Receiver, such relief shall be sought in accordance with F.R.C.P. 65 and must further include a statement as to what security or bond will be provided by such Borrower during any proposed stay or injunction as well as proof that the Borrower can post such security or bond.

c)     Any party seeking to enter the case pursuant to these Procedures agrees that entry shall not waive: i) any stay or injunction arising from the appointment of the Receiver; or ii) any other sanctions, rights, claims, actions, defenses, setoffs, or recoupments to which Receiver is or may be entitled, under agreements, in law, in equity, or otherwise, all of which rights, claims, actions, defenses, setoffs, and recoupments are expressly reserved;

d)     Any party seeking to enter the case shall agree that interest, costs, and fees, including attorney's fees, continue to accrue pursuant to the respective documents underlying the Loans, unless otherwise subsequently determined or modified by the Court, and shall continue to accrue until the obligations underlying the respective Loans are satisfied, unless otherwise subsequently determined or modified by the Court;

e)     Any party seeking to enter the case shall agree that entry shall not be used to: i) limit the investigation of the Receiver; ii) harm any interests in any Receivership Property; or iii) preclude the recovery of obligations due to the

Receivership;

f)        Any Borrowers seeking to enter the case pursuant to these Procedures shall, contemporaneously with entering the case, provide the Receiver with; i) all written or electronic documents available to the borrower related to any Loans of the borrower; ii) any written or electronic communications available to the Borrower with any of the Receivership Entities or related to any Loans of the borrower; iv) a written report as to the status, location and condition of any collateral of the Receivership Entities that belongs to borrower, any affiliates of such borrower, or any party who owns or controls such borrower; v) financial information related to the borrower, any affiliates of such borrower, and any party who owns or controls such borrower, including federal tax returns, for the last two years; vi) evidence of title insurance or any other insurance which may be available which might provide coverage for any of the claims asserted by the Receiver; and vii) shall upon request of the Receiver make all collateral, including real property and operating businesses, available for inspection by the Receiver;

g)        Any Borrowers seeking to enter the case shall promptly comply in good faith with requests by the Receiver for documents or information;

h)        Any Borrowers entering the case agree that: i) the entry is part of efforts by the Receiver to collect amounts due under the Loans; and ii) the collection matter should be resolved in the same manner as other defaulted obligations due to the

14

Receivership Entities without the borrower receiving preferential treatment;

i) Any Borrowers seeking to enter the case shall not be allowed to enter the case unless all parties responsible for the Loans of such borrower, including any guarantors, also enter the case with them;

j) The initial discovery period for any Verified Complaint or Verified Counterclaim filed by a Borrower herein shall be limited to two (2) months with no more than three (3) depositions allowed per party unless otherwise directed by the Court;

k) The Parties may request summary judgment at the conclusion of the discovery period in accordance with the local rules of this Court;

l) Borrowers must agree (i) to accept and comply with all prior jury trial waivers provided to the Receivership Entities or (ii) to waive any rights to a jury trial;

m) To the extent that the Court finds that any damage claim by a Borrower exceeds the amount necessary to offset the Receiver's claim, the Receivership Estate shall not be required to pay such excess amount and the priority and payment of such excess amount shall be held in abeyance pending the establishment of claims procedures in this case and the establishment of a plan of liquidation in this Case and shall only be paid in connection with such claims process; and

n) The modification of the Appointment Order as set forth herein is the

only modification of same and the Appointment Order shall remain in place in all other respects.

## ARGUMENT

23.     The Receiver believes that the foregoing proposed Procedures will provide a fair, equitable, and efficient method for allowing Borrowers to enter this case without allowing Borrowers to: a) elevate their position over other interested parties in this Receivership; b) avoid valid obligations due to the Receivership; or c) disrupt the Receivership and cause an inequitable administration and perhaps unnecessary expense to the Receivership.

24.     "The district court has broad powers and wide discretion to determine relief in an equity receivership." *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted). Indeed, "'a court sitting in equity has the discretionary authority to deny state law remedies as inimical to the receivership' . . . It is well-established that 'equitable principles may supersede rights an investor would have under other law to recover its assets.'" *Sec. & Exch. Comm'n v. Torchia*, No. 1:15-CV-3904-WSD, 2016 WL 2996902, at *4 (N.D. Ga. May 25, 2016) (citation omitted). Here, the claims sought to be pursued by certain Borrowers are inimical to the Receivership. The Receiver; however, recognizes that addressing the claims of Borrowers in the proceeding for the collection of the Loans may facilitate the

16

administration of the Loans.

25.     Accordingly, the Receiver submits that this Court should exercise its discretion to approve the proposed Procedures as detailed herein.

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court enter an order: 1) approving the proposed procedures; and 2) granting the Receiver such other relief as this Court deems just and appropriate.

Respectfully submitted this 14th day of December, 2025.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Counsel for the Receiver
Law Offices of Henry F. Sewell, Jr.
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

## <u>CERTIFICATE OF SERVICE, FONT AND MARGINS</u>

I hereby certify that I electronically filed the foregoing using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record.

I further certify that I prepared this document in 14-point Times New Roman font and complied with the margin and type requirements of this Court.

Dated: December 14, 2025.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Counsel for the Receiver
Law Offices of Henry F. Sewell, Jr.
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com