**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

SECURITIES AND EXCHANGE COMMISSION,:
                                             :
   Plaintiff,                                :        Civil Action File No.
                                             :        1:25-cv-3826-MLB
       v.                                    :
                                             :
                                             :
EDWIN BRANT FROST IV and                     :
FIRST LIBERTY BUILDING & LOAN, LLC,          :
                                             :
   Defendants, and                           :
                                             :
FIRST LIBERTY CAPITAL PARTNERS               :
LLC, et. al.,                                :
                                             :
   Relief Defendants.                        :

**MOTION BY RECEIVER FOR: 1) AUTHORIZATION TO EMPLOY**
**AUCTIONEER; AND 2) APPROVAL OF SALE OF CERTAIN**
**RECEIVERSHIP ASSETS LOCATED IN WINDER, GEORGIA FREE AND**
**CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**

S. Gregory Hays, not individually, but as Court-Appointed Receiver

("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc.

No. 6] ("**Appointment Order**") that was entered in the above-captioned case (the

"**Case**" or "**Receivership**"), hereby files this *Motion by Receiver for: 1)*

*Authorization to Employ Auctioneer; and 2) Approval of Sale of Certain*

*Receivership Assets located in Winder, Georgia Free and Clear of All Liens, Claims,*

*Interests, and Encumbrances*[1] to: 1) employ Bullseye Auction & Appraisal, LLC ("**Bullseye**" or "**Auctioneer**") to auction certain Receivership Assets (as defined in the Appointment Order) in the form of certain real property located at 169 W. Athens St., Winder, Georgia (the "**Winder Property**"); and 2) sell the Winder Property via auction sale free and clear of all liens, claims, interests, and encumbrances. In support thereof, the Receiver states as follows:

## BACKGROUND

1.     The Case commenced on July 11, 2025, with the filing of a complaint by the Securities and Exchange Commission (the "**SEC**") against Defendants Edwin Brant Frost IV ("**Frost**") and First Liberty Building & Loan, LLC (together, "**Defendants**") and Relief Defendants First Liberty Capital Partners LLC ("**FLCP**"), First National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC (collectively, the "**Relief Defendants**").

2.     Based on the record in the Case, the Court determined that the appointment of a receiver in this action was necessary and appropriate for the purposes of marshaling and preserving all assets of First Liberty Building & Loan, LLC, FLCP, First National Investments LLC, MyHealthAI Capital LLC, The

---

[1] The Receiver has consulted with the Plaintiff Securities and Exchange Commission prior to filing this Motion and the Plaintiff has advised the Receiver that it does not oppose the relief sought herein.

Legacy Advisory Group Inc., and The Liberty Group LLC ("**Receivership Assets**") and the assets of Defendant Frost that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; and/or (c) may otherwise be includable as assets of the estates of the Defendants (collectively, the "**Recoverable Assets**"). *See* Appointment Order, p. 1.

3.    The Receivership Assets include the Winder Property and the security interest in the Winder Property arising from a defaulted loan that was granted by the prior owner.

4.    On July 11, 2025, the Court entered the Appointment Order to appoint the Receiver.

5.    The Appointment Order provides that the District Court takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated of the Receivership Entities, including the Defendant in this case. *See* Appointment Order, p. 2. The Appointment Order further defines "Receivership Property" as all "property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind." *See* Appointment Order ¶ 6(A). The Receivership Property includes the Winder Property.

6. The Appointment Order includes essential provisions to empower the Receiver to analyze and investigate any Receivership Property, administer assets for the benefit of the Receivership, and otherwise fulfill the duties of the Receiver.

7. To provide the Receiver with the ability to fulfill the duties of the Receiver without being hindered or obstructed by litigation against property of the Receivership, in addition to freezing the Receivership Property, the District Court entered an injunction against interference with the Receiver (the "**Injunction**") and stay (the "**Stay**") of all civil legal proceedings involving any Receivership Property or the Receivership Entities until further order of the District Court. *See* Appointment Order ¶¶ 32-34. The Injunction protects against action that would "[d]issipate or otherwise diminish the value of any Receivership Property." See Appointment Order ¶ 32(C). Furthermore, the Stay under Section VII of the Appointment Order stays all litigation matters other than the litigation subject to the Receivership and clearly provides that no further actions should be taken against any assets or entities subject to the Appointment Order until further order of the District Court.

8. Pursuant to paragraph 6(F) of the Appointment Order, the powers and duties of the Receiver shall include to "engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but

not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers."

9.     Pursuant to paragraph 58 of the Appointment Order, the Receiver is further authorized to solicit persons and entities ("**Retained Personnel**") to assist the Receiver in carrying out the duties and responsibilities described in the Appointment Order with the understanding that the "Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement."

10.     Professionals engaged by the Receiver are—with court approval— "entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the 'Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission' (the '**Billing Instructions**') agreed to by the Receiver." (emphasis added).

## REQUESTED RELIEF

11.     In an exercise of the discretion of the Receiver, the Receiver determined that an auctioneer is necessary to assist the Receiver in carrying out the duties and responsibilities of the Receiver. Indeed, carrying out the duties and responsibilities of the Receiver will require the sale of the Winder Property via a public auction.

12.    Pursuant to the Appointment Order, Receiver seeks the authorization from the Court to enter into a contract with, retain, and engage Bullseye to assist the Receiver in carrying out the duties of the Receiver under the Appointment Order by auctioning the Winder Property. The professional services that Bullseye is to render include, but are not limited to, the following:

a.  to perform an inspection of the Winder Property;

b.  to conduct public auction(s) of the Winder Property for the benefit of the Receivership; and

c.  such other work as may be appropriate at the discretion of the Receiver.

13.    By this Motion, the Receiver requests authority to sell the Winder Property via public auction operated by Bullseye free and clear of all liens, claims, interests, and encumbrances. The Receiver requests authority to enter a contract with, retain, and engage Bullseye to auction the Winder Property pursuant to the terms and conditions set forth herein.

14.    The sales pursuant to the terms and conditions set forth herein are just and proper under the circumstances of this Case and necessary for the Receiver to discharge the duties and obligations assigned to the Receiver by this Court. Further, the Receiver respectfully submits that a separate memorandum of law is not required since this Motion does not seek resolution of an issue of law.

15.    This Motion is supported by all pleading and matters of record in this Case.

## QUALIFICATIONS OF BULLSEYE

16.    The Receiver shows that Bullseye is well qualified to perform the work required in this case and is experienced in the matters for which auctioneer services are required. Scott Schwartz, of Bullseye, will assume primary responsibility as auctioneer in this Receivership. Mr. Schwartz regularly served as an auctioneer and has extensive experience auctioning assets.

17.    Under the circumstances, Bullseye is well-equipped to represent the Receiver as auctioneer in the sale of the Winder Property.

18.    Upon information and belief, Bullseye is bonded in the amount of $250,000.00.

## COMPENSATION OF AUCTIONEER

19.    In consideration for Bullseye aiding the Receiver, the Receiver proposes to pay, and Bullseye has agreed to perform auction services for a commission of four (4%) percent of the sale price of the Winder Property sold by the Auctioneer, plus reimbursement for any actual out-of-pocket marketing expenses not to exceed $1,000.  If the purchaser of real property is represented in the purchase by a licensed real

estate agent, the Receiver will pay a two (2%) percent commission to the buyer's agent. There shall be no buyer's premium paid for the sale of any property.

20.    The Receiver proposes that Bullseye retain from the proceeds of the sale of the Winder Property the fees and expenses due to the Auctioneer and shall remit the remaining proceeds to the Receiver for the benefit of the Receivership.

## NO ADVERSE INTEREST

21.    Bullseye has informed the Receiver that Bullseye does not have any conflict with serving as auctioneer in this Receivership.

## SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUBRANCES

22.    "The district court has broad powers and wide discretion to determine relief in an equity receivership." *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted). This "includes the power to authorize the sale of real property free and clear of liens, claims, interests and encumbrances." *Sec. & Exch. Comm'n v. Kapoor*, No. 23-CV-24903-CIV-JB, 2024 WL 5264414, at *2 (S.D. Fla. Nov. 7, 2024) (granting motion to approve sale free and clear). Indeed, "'it has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims.'" *Sec. & Exch. Comm'n v. Harbor City Cap. Corp.*, No. 6:21-CV-694-CEM-DCI, 2023 WL 1105282, at *7 (M.D. Fla. Jan. 30, 2023)

(citation omitted). The Receiver seeks authority to sell the Winder Property free and clear of all liens, claims, interests, and encumbrances with any lien, claim, interest or encumbrance to attach to the proceeds.

23.    To the best of the knowledge, information and belief of the Receiver, the only potential encumbrance to the Winder Property is an assertion that Haven Real Estate Holdings of Winder, LLC ("**Haven Winder**") filed on July 8, 2025, a certain *Verified Complaint for Specific Performance* (the "**Complaint**") against FLCP to initiate Case No. 2025000831 in the Superior Court of Coweta County (the "**Winder Action**"). The Complaint was not served prior to the entry of the Appointment Order. The Receiver submits that the service of the Complaint after the entry of the Appointment Order was in violation of the Stay and Injunction entered by this Court.

24.    Haven Winder also filed a Notice of Lis Pendens (the "**Lis Pendens**") related to the Winder Property in conjunction with the Complaint.

25.    Pursuant to paragraph 18 of the Complaint, the Complaint and Lis Pendens were purportedly filed to protect an unidentified interest in the Winder Property.  The Complaint itself seeks to compel the transfer of the Winder Property to Haven Winder without: a) identifying any enforceable option to purchase the Winder Property or even identifying the specific purchase price to be paid by Haven

9

Winder to acquire the Winder Property; or b) indicating that Haven Winder is able to promptly pay the purchase price in full. Instead of including a written purchase agreement signed by the owner of the Winder Property to allow Haven Winder to acquire the Winder Property for a particular amount, the Complaint includes an outstanding promissory note by Haven Winder for a construction loan in the amount of $2 million (the "**Construction Loan**") that is due to FLCP. The Receiver has determined that: a) Haven Winder received funds incident to the Construction Loan; b) no amount of the Construction Loan was allocated for the purchase of the Winder Property; and c) the Construction Loan remains outstanding. Upon information and belief, Haven Winder may have intended to obtain a loan—in addition to the Construction Loan—in order to obtain the funds to acquire the Winder Property, but Haven Winder never obtained financing to acquire the Winder Property and does not presently have sufficient funds to purchase the Haven Property.

26.    Although Haven Winder has never had any ownership interest in the Winder Property, paragraph 13 of the Complaint also indicates that Haven Winder entered a contract (the "**Sale Contract**") to sell the Winder Property to North Georgia Recovery Center, LLC ("**NSRC**") for $3,955,000.00 that did not include as a party or provide for payment to FLCP. Section 5.1.6 of the Sale Contract includes as a delivery condition that all renovations would be completed and that the Winder

Property would be ready for immediate occupancy and operation. It is undisputed that the renovations at the Winder Property are still not complete and that the Winder Property was not ready for immediate occupancy and operation when NSRC cancelled the Sale Contract.

27. Since the appointment of the Receiver, the Receiver has maintained, secured and insured the Winder Property and has further paid outstanding real estate taxes on the Winder Property.

28. The Receiver submits that the Sale Contract, Complaint and the Lis Pendens are invalid and are causing the Receivership to incur damages. To help limit the damages caused by the conduct of Haven Winder, the Receiver submits that a sale of the Winder Property free and clear of all liens, claims, interests, and encumbrances with any such claim to attach to the proceeds pending final disposition of litigation concerning such claims is appropriate as the claims involving Haven Winder should not further delay this matter.

29. On May 28, 2026, Haven Winder and its owner, Lisa Brown (collectively, the "**Brown Parties**"), filed *MOVANTS LISA BROWN'S AND HAVEN REAL ESTATE HOLDINGS OF WINDER, LLC'S MOTION TO INTERVENE AS OF RIGHT, OR IN THE ALTERNATIVE, PERMISSIVELY, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24, AND FOR LIMITED*

11

*MODIFICATION OF THE LITIGATION STAY* [Doc. No. 92] (the "**Motion to Intervene**") that seeks: a) to interfere with a sale of the Winder Property; b) to abscond with and/or impact the sale of the Winder Property without the Brown Partes paying fair market value for the Winder Property; and c) other vague relief related to the Winder Property and the obligations due by the Brown Parties.

30.    While the Brown Parties allege that the Winder Property was under contract to the Brown Parties, the Motion to Intervene does not include—and the Brown Parties have yet to identify to the Receiver—any written agreement to convey the Winder Property to the Brown Parties for any price and, indeed, First Liberty was the owner of record of the Winder Property. In a vain attempt to overcome the fact that no sale of the Winder Property to the Brown Parties was documented and the Brown Parties have no legal basis to enforce a sale to the Brown Parties, Page 6 of the Motion to Intervene references a January 31, 2024 email (the "**1/31 Email**") from Frost to Brown in which Frost indicates that he would deed property "after the renovations are complete and at the close of the SBA loan." Even if such communication is considered notwithstanding that material terms such as price remain unknown, the Winder Property would not be deeded to the Brown Parties unless the renovations were completed and the SBA loan closed as the SBA loan was clearly required to make FLCP whole from its loss on the Winder Property that

12

was security for a defaulted loan from the prior owner. It is undisputed that such conditions were not satisfied as the renovations were never completed and the Brown Parties failed to obtain a new loan to provide the funds for the Brown Parties to acquire the Winder Property.

31.     Notwithstanding that the Motion to intervene fails to demonstrate that the Brown Parties any interest in the Winder Property, the Motion to Intervene also fails to demonstrate why the Brown Parties—who have no specialized experience marketing and selling real estate—should be formally involved in the sale of the Winder Property.[2] In this Receivership involving real victims in the form of investors who advanced the funds received by parties such as the Brown Parties, the Receiver is already charged with acting in the best interests and maximizing the value of the assets of the Receivership. While the Brown Parties are welcome to submit a competitive offer to purchase the Winder Property and/or bring the sale to the attention of parties who may be interested in purchasing the Winder Property, the Brown Parties should not be allowed to interfere with such sale, which should be managed by the professionals already engaged to maximize the value of the assets of the Receivership.

---

[2] The Motion to Intervene is addressed in more detail in the response filed or to be filed by the Receiver in opposition to Motion to Intervene.

**SALE PROCEEDS**

32.    After payment of fees and expenses due to the Auctioneer as a result of the sale the Winder Property, the Receiver proposes to hold the net proceeds from such sale in segregated account and to not commingle such funds with other funds of the Receivership pending further order of this Court.

WHEREFORE, the Receiver respectfully requests that this Court enter an order, substantially in the form as the proposed Order attached as **Exhibit A** hereto, that: 1) grants this Motion; 2) authorizes the Receiver to enter into a contract with, retain and engage Bullseye as Auctioneer pursuant to the terms and conditions set forth herein, and the retention of Bullseye as Auctioneer; 3) authorizes the Receiver to consummate the transactions and agreements contemplated herein; 4) authorizes the Receiver to sell the Winder Property free and clear of all liens, claims, interests, and encumbrances as requested herein via public auction; and 5) grants the Receiver such other and further relief as is just and proper.

Dated: June 11, 2026.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr. (Georgia Bar No. 636265)
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053; hsewell@sewellfirm.com
*Counsel for the Receiver*

**EXHIBIT A**
**(PROPOSED ORDER)**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

SECURITIES AND EXCHANGE COMMISSION,:
                                                                :
        Plaintiff,                                              :        Civil Action File No.
                                                                :        1:25-cv-3826-MLB
        v.                                                      :
                                                                :
EDWIN BRANT FROST IV and                                        :
FIRST LIBERTY BUILDING & LOAN, LLC,                             :
                                                                :
        Defendants, and                                         :
                                                                :
FIRST LIBERTY CAPITAL PARTNERS                                  :
LLC, et. al.,                                                   :
                                                                :
        Relief Defendants.                                      :

**ORDER GRANTING MOTION BY RECEIVER FOR: 1)**
**AUTHORIZATION TO EMPLOY AUCTIONEER; AND 2) APPROVAL**
**OF SALE OF CERTAIN RECEIVERSHIP ASSETS LOCATED IN**
**WINDER, GEORGIA FREE AND CLEAR OF ALL LIENS, CLAIMS,**
**INTERESTS, AND ENCUMBRANCES**

This matter came before the Court on the *Motion by Receiver for: 1)*

*Authorization to Employ Auctioneer; and 2) Approval of Sale of Certain*

*Receivership Assets located in Winder, Georgia Free and Clear of All Liens, Claims,*

*Interests, and Encumbrances*[1] [Docket No. ___] (the "**Motion**") that was filed by S. Gregory Hays, not individually, but as Court-Appointed Receiver ("**Receiver**") in the above-captioned case to: 1) employ Bullseye Auction & Appraisal, LLC ("**Bullseye**" or "**Auctioneer**") to auction certain Receivership Assets (as defined in the Appointment Order) in the form of certain real property located at 169 W. Athens St., Winder, Georgia (the "**Winder Property**"); and 2) sell the Winder Property via auction sale free and clear of all liens, claims, interests, and encumbrances. The Plaintiff in this Case, the United States Securities and Exchange Commission, does not oppose the relief sought in the Motion and the Defendants have not filed any opposition to the Motion.

Having considered the Motion the arguments set forth therein, and the record in this case, this Court finds that:

1. This Court has jurisdiction over the subject matter of this case and there is good cause to believe it has jurisdiction over the parties.

2. This Court is the proper venue for this case.

3. The Receiver was appointed in the Appointment Order.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion.

4.     The Motion requests authority to employ Bullseye as Auctioneer and sell the Winder Property free and clear of all liens, claims, interests, and encumbrances.

5.     Public auction of the Winder Property pursuant to the terms and conditions set forth in the Motion is just and proper under the circumstances of this case and is necessary for the Receiver to discharge the duties and obligations assigned to the Receiver by this Court.

6.     The Receiver has or will comply with the requirements necessary for a public auction of the Winder Property free and clear of all liens, claims, interests, and encumbrances.

7.     The Motion was served upon Defendants at their last known address and all counsel who have appeared in this case.

8.     The Receiver shall give notice to all parties known to the Receiver with an alleged lien or interest in the Winder Property with the understanding that such notice does not indicate that such lien or interest is valid.

9.     No opposition to the Motion has been filed.

10.     Due and adequate notice of the Motion has been provided to the Defendants and no other or further notice or opportunity for a hearing is necessary or required under the circumstances of this case.

3

ACCORDINGLY, having determined that the relief requested in the Motion is just and proper; and based upon the Motion and all of the proceedings before this Court and after due deliberation and finding that cause exists to grant the Motion and no objection the Motion having been filed, it is hereby:

ORDERED that the Motion is GRANTED; and it is further

ORDERED that the Receiver is authorized to enter into a contract with, retain, and engage Bullseye as Auctioneer pursuant to the terms and conditions set forth in the Motion to assist the Receiver in fulfilling the duties of the Receiver under the Appointment Order and any other orders of this Court; and it is further

ORDERED that, in accordance with the Appointment Order, Bullseye shall be compensated for such services and reimbursed for the reasonable expenses and costs incurred in providing such services as set forth in the Motion; and it is further

ORDERED, that the Court authorizes the Receiver to: 1) sell the Winder Property free and clear of all liens, claims, interests, and encumbrances via public auction(s); 2) consummate the transactions and agreements contemplated in the Motion; 3) enter into a contract with, retain, and engage the Auctioneer to sell the Winder Property free and clear of all liens, claims, interests, and encumbrances; and 4) take all actions necessary to effectuate and close a sale of the Winder Property free and clear of all liens, claims, interests, and encumbrances and to execute and

4

deliver such other and further documents as may be required to fully effectuate and close a sale of the Winder Property free and clear of all liens, claims, interests, and encumbrances; and it is

FURTHER ORDERED that the Auctioneer is authorized to retain from the proceeds of the sale of the Winder Property the fees and expenses due to the Auctioneer and shall remit the remaining proceeds to the Receiver for the benefit of the Receivership; and it is

FURTHER ORDERED, after payment of fees and expenses due to the Auctioneer or otherwise related to the sale of the Winder Property, the net proceeds from the sale of the Winder Property will be held by the Receiver in a segregated account and not commingled with other funds of the Receivership pending further order of this Court; and it is

FINALLY ORDERED, that within ten (10) days of the closing of the sale(s) authorized herein, the Receiver shall file a Report of Sale with this Court reporting to this Court all amounts received, disbursed and held by the Receiver in connection with such sale; and it is

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

SO ORDERED, this ___ day of _____, 2026.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT COURT JUDGE


Copies to:   All Counsel of Record

Prepared and Presented by:
LAW OFFICES OF HENRY F. SEWELL JR., LLC
*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com
COUNSEL FOR THE RECEIVER

6

## CERTIFICATE OF SERVICE, FONT AND MARGINS

I hereby certify that I electronically filed the foregoing using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record, electronically sent the foregoing to Joshua Mayes at joshua.mayes@robbinsfirm.com, Don Sammuel at dfs@gsllaw.com, Kevin E. Epps at kevin@ehdhlaw.com, and Adam N. Struletz at Adam@struletzfirm.com and served the foregoing via First Class, U.S. Mail with adequate postage to ensure delivery to the following (via certified mail as indicated):

Haven Real Estate Holdings of Winder LLC
c/o C. David Rowe, P.C. Registered Agent
3651 Mars Hill Rd., Ste 500A
Watkinsville, GA, 30677          via certified mail

Lisa A. Brown
1128 Phelps Road
Greensboro, GA 30642          via certified mail

EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC
c/o Kevin E. Epps
1220 Langford Drive, Building 200-101
Watkinsville, Georgia 30677    via certified mail

Anna Childs
City Clerk for the City of Winder
25 E. Midland Ave
Winder, GA 30680          via certified mail

Jessica Garrett
Tax Commissioner, Barrow County
30 N. Broad Street
Winder, GA 30680          via certified mail

North Georgia Recovery Center, LLC
c/o The Struletz Firm, LLC, Attn: Adam N. Struletz, Esq.
675 Ponce de Leon Avenue, NE, Suite 8500
Atlanta, Georgia 30308          via certified mail

EDWIN BRANT FROST IV
35 BROOKSIDE DRIVE
NEWNAN GA 30263

EDWIN BRANT FROST IV AND FIRST LIBERTY BUILDING & LOAN, LLC
C/O ROBBINS ALLOY BELINFANTE LITTLEFIELD LLC
500 14TH STREET, NW
ATLANTA GA 30318
ATTN: JOSHUA MAYES

I further certify that I prepared this document in 14-point Times New Roman font and complied with the margin and type requirements of this Court.

Dated: June 11, 2026.

Respectfully submitted,

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr. (Georgia Bar No. 636265)
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053; hsewell@sewellfirm.com
COUNSEL FOR THE RECEIVER

2