| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | : | |
| COMMISSION, | : | Civil Action File No. |
|     Plaintiff, | : | 1:25-cv-3826-MLB |
|         v. | : | |
| EDWIN BRANT FROST IV and | : | |
| FIRST LIBERTY BUILDING & LOAN, LLC, | : | |
|     Defendants, and | : | |
| FIRST LIBERTY CAPITAL PARTNERS | : | |
| LLC, et. al., | : | |
|     Relief Defendants. | : | |

## RESPONSE IN OPPOSITION TO MOTION TO INTERVENE OF LISA BROWN AND HAVEN REAL ESTATE HOLDINGS OF WINDER, LLC

S. Gregory Hays, not individually, but as Court-Appointed Receiver ("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in the above-captioned case (the "**Receivership**"), by and through counsel, hereby files this *Response in Opposition to Motion to Intervene of Lisa Brown and Haven Real Estate Holdings of Winder, LLC* (the "**Objection**") to object to *MOVANTS LISA BROWN'S AND HAVEN REAL ESTATE HOLDINGS OF WINDER, LLC'S MOTION TO INTERVENE AS OF RIGHT, OR IN THE ALTERNATIVE, PERMISSIVELY, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24, AND FOR LIMITED MODIFICATION OF THE LITIGATION STAY* [Doc. No. 92] (the "**Motion**") that was filed by Lisa Brown

("**Brown**") and Haven Real Estate Holdings of Winder, LLC ("**HREHW**" and collectively with Brown, the "**Movants**"), respectfully showing as follows:

## I.  INTRODUCTION

1.     In this Receivership involving investors who advanced funds received by parties such as the Movants, the Receiver is charged with acting in the best interests and maximizing the value of the assets of the Receivership.  Incident thereto, the Receiver has negotiated in good faith with Brown and entities owned and controlled by Brown—who obtained millions in loans based on agreed terms—to address their outstanding obligations to the Receivership and they have failed and refused to make arrangements to resolve their indebtedness even as their counsel represented that they were seeking bank loans to satisfy such indebtedness.   Indeed, the promises of imminent payment from the Movants go back to December 15, 2025 (See Exhibit "A" --- "goal would be to pay it of this week").

2.     The Motion, which is larded with hundreds of pages of irrelevant, unnecessary and superfluous documents exemplifies their failure to make arrangements to satisfy their legal obligations and the unreasonable positions of the Movants that have delayed and interfered with the sale of certain property of the Receivership located at 169 W. Athens St., Winder, Georgia (the "**Property**") that is: a) owned by First Liberty Capital Partners, LLC ("**FLCP**"); b) was previously security for an outstanding obligation due to FLCP; and c) not subject to any

legitimate interest of the Movants based on any written contract.[1]

3.     With regard to obligations due to the Receivership, Movants have sought to avoid full payment of such obligations and failed to provide a legitimate basis to avoid interest and other charges due under the agreed terms. Notwithstanding the baseless argument by Movants that amounts due are unsubstantiated, the payoffs provided by the Receiver, which are included with the Motion, clearly detail the amounts due and are based on the agreed terms. *See* Doc. No. 92-16, Exhibit 15.   There is no dispute that the Movants received millions of dollars of investor funds from First Liberty and signed agreements promising to pay such amounts back.

4.     To the extent that Movants seek to address any disputes regarding their obligations, the Court has already considered and established mandatory procedures to address such matters pursuant to the *Order Establishing Procedures to Enter Action to Resolve Claims Arising from Loan Obligations Due to the Receivership*

---

[1] Despite the numerous unsubstantiated representations in the Motion regarding a purported right of Movants to the Property, *see* Motion, p. 2 ("FLCP's written commitment to deed the property"), 3 ("HREHW's purchase of the property" and "FLCP's express written representations that title would be conveyed to HREHV upon completion of renovations and closing of a Small Business Administration ('SBA') refinancing loan"), 8 ("FLCP's prior written commitment to deed the property to HREHW"), 9 ("FLCP's original deeding commitment"), 10 ("original deeding commitment"), 16 ("Frost's written promise to deed"), 19 ("FLCP's pre-receivership deeding commitment") and 21 (the Property is "not property of the Receivership Estate"), the Motion fails to include a written contract for the transfer of the Property to Movants.

[Doc. No. 70] (the "**Procedures Order**"). The Motion completely ignores the requirements of the Procedures Order and the Movants make no effort to comply with it. The Movants should not be treated differently than other borrowers and should comply with the Procedures Order to enter the Receivership and seek relief herein.

5. Further, in order to bring this matter forward, the Receiver has contemporaneously filed an Ancillary Complaint (the "**Ancillary Complaint**") against Lisa A. Brown ("**Brown**"), Haven Memory Care of Snellville, LLC ("**HMCS**"),[2] Haven Memory Care of Athens, LLC ("**HMCA**" as a borrower and collectively with Brown and HMCS as guarantors, the "**Guarantors**" with each individually a "**Guarantor**"), Haven Real Estate Holdings of Winder LLC ("**HREHW**"), and Haven Real Estate Holdings of Athens LLC wherein the Receiver seeks to enforce the rights of the Receivership with respect to the Movants' Loan Obligations.[3] Among other forms of relief, the Receiver requests a judgment against Ms. Brown on account of her personal guaranty for over $4 Million  To the extent that the Movants intend to seek relief against the Receivership, such counter-claims

---

[2] Brown caused a related entity, Haven Real Estate Holdings of Snellville, LLC, to enter a loan dated July 31, 2024, in the amount of $1,750,000.00. The records available to the Receiver indicate that there was a payment on May 19, 2025, in the amount of $2,502,247.75 related to this loan.

[3] A Case Number has not been assigned as of the filing of this Response. Once a case number is assigned, a copy of the filed Ancillary Complaint will be filed in support of this Response.

can be made directly in the Ancillary Case, subject to compliance with the Procedures Order and there is simply no need to permit general intervention.

6. With regard to the Winder Property, the underlying premise of the Motion is that Movants want to use proceeds from the sale of the Property to satisfy the obligations due to the Receivership. Such premise is flawed for several reasons, including, but not limited to, because Movants have not actually purchased and do not own the Property, the price for which Movants would acquire the Property is unknown, and the underlying transaction would constitute a fraudulent transfer as the transfer would be for less than reasonable equivalent value and provides Movants with a windfall at the expense of creditors without Movants ever actually purchasing the Property.

7. While Movants allege that the Property was under contract to the Movants, the Motion does not include—and Movants have yet to identify to the Receiver—any written agreement to convey the Property to the Movants for any price. In a vain attempt to overcome the fact that no sale of the Property to Movants was documented, Page 6 of the Motion references a January 31, 2024 email (the "**1/31 Email**") from Frost to Brown in which Frost indicates that he would deed property "after the renovations are complete and at the close of the SBA loan." Even if such communication is considered notwithstanding that material terms such as price remain unknown, the Property would not be deeded to Movants unless the

5

renovations were completed and the SBA loan closed as the SBA loan was clearly required to make FLC whole from its loss on the Property that was security for the defaulted loan from the prior owner. It is undisputed that such conditions were not satisfied as the renovations were never completed and Movants failed to obtain a new loan to provide the funds for Movants to acquire the Property.

8.      Notwithstanding attempts by the Movants to confuse the situation, the only written agreement between HREHW and any of the Receivership Entities is related to a construction loan in the principal amount of $2 million (the "**Construction Loan**"). *See* Doc. No. 92-6 which is currently in default. The Receiver has determined that: a) HREHW received funds incident to the Construction Loan; b) no amount of the Construction Loan was allocated for the purchase of the Property; c) the Construction Loan remains outstanding; d) Movants never completed construction of a building on the Winder Property as contemplated by the Parties and e) despite a request from the Receiver, HREHW has failed and refused to account for its uses of those funds.

9.      Before HREHW consummated any alleged acquisition of the Property, HREHW claims it entered a contract (the "**Sale Contract**") to sell the Property to North Georgia Recovery Center, LLC ("**NSRC**") for $3,955,000.00. The Sale Contract did not include FLC as a party or provide for payment to FLCP. Section 5.1.6 of the Sale Contract includes as a delivery condition that all renovations would

be completed and that the Property would be ready for immediate occupancy and operation. It is undisputed that the renovations at the Property are still not complete and that the Property was not ready for immediate occupancy and operation when NSRC cancelled the Sale Contract.[4]

10. Shortly before the Receivership, HREHW filed a Complaint (as defined below) seeking to force the transfer of the Property to HREHW even though the Complaint does not include any written agreement to convey the Property to HREHW for any price. HREHW also files a Lis Pendens (as defined below). Since the conduct of the Movants, including the Complaint and the Lis Pendens are invalid and are causing the Receivership to incur damages, the Receiver has requested the Movants to: a) cease and desist from asserting an interest in the Property; and b) release the Lis Pendens as HREHW does not appear to have any right to seek relief with regard to the Property. The failure of Movants to comply has delayed the sale of the Property.

11. The Motion fails to demonstrate why Movants—who have no

---

[4] It is unclear why the Motion indicates that Movants increased the value of the Property by 300% based on the Sales Contract that failed to close. Even if the amount offered in the Sale Contract is deemed fair market value, the Motion fails to provide a prior valuation of the Property. Page 6 of the Motion references a text message dated October 11, 2022, that references the amount of the FS obligation and provides a value of the Property of $1,700,000. There is no indication as to how such amount was determined; however, it appears to be a minimum estimate based on the message at Doc. No. 92-10 indicating that there was "$1M+ in future value."

specialized experience marketing and selling real estate—should be involved in the sale of the Property. Notably absent from the Motion is any indication that Movant would: a) act to protect interests that are not already protected by the Receiver; or b) serve a purpose other than to disrupt the administration of the Property.

12. However, the Receiver has also contemporaneously herewith filed his *Motion by Receiver for: 1) Authorization to Employ Auctioneer; and 2) Approval of Sale of Certain Receivership Assets located in Winder, Georgia Free and Clear of All Liens, Claims, Interests, and Encumbrances* (Doc. No.95)(the "Motion to Sell Winder Property"). The Receiver proposes to sell the Winder Property at auction and to employ the same auctioneer who successfully auctioned First Liberty's headquarters building in Newnan with the proceeds from the sale to be held in segregated account pending final resolution of Movants' claims.

13. The Motion fails to demonstrate a unilateral right to intervene in this Receivership and should be denied with Movants limited to seeking relief in the Ancillary Proceeding.

## II.  FACTUAL BACKGROUND

### a. Pre-Receivership Events.

14. On or about April 20, 2022, Four Seasons Living Center, LLC ("**Four Seasons**"), an entity unrelated to the Movants, entered a promissory note for the benefit of First Liberty in the principal amount of $750,00.00 (the "**FS Obligation**")

and pledged the Property as security for repayment of the FS Obligation. Four Seasons subsequently failed to make payments and defaulted on the FS Obligation.

15. On or about, January 24, 2024, Ms. Brown, who is the Manager of HREHW, caused HREHW to enter the Construction Loan that had a maturity date of January 23, 2025.[5] The closing statement for the loan allocates funds for construction and does not allocate any proceeds to be used to acquire the Winder facility owned by FLCP. While HREHW may have intended to obtain a loan—in addition to the Construction Loan—in order to obtain the funds to acquire the Property, Movants failed to obtained such financing or does not appear to otherwise have sufficient funds to purchase the Property.

16. FLCP acquired the Property incident to a Warranty Deed in Lieu of Foreclosure dated February 9, 2024, on account of the FS Obligation. Title remained in FLCP to and through the date of the Appointment Order.

17. On May 23, 2025, HREHW entered into the Sale Contract before HREHW consummated any purchase of the Property. The Sale Contract does not include FLCP and appears to misrepresent that HREHW: a) is the owner of the Property; and b) would provide clear title even though no payment to FLCP is

---

[5] Ms. Brown caused other entities owned and controlled by Ms. Brown, Haven Memory Care of Athens, LLC and Haven Real Estate Holdings of Athens LLC, to enter other loans that are not addressed herein as such borrowers are not included as Movants. The discussion of such loans in the Motion causes confusion related to the relief sought.

referenced therein. While it is unclear as to why HREHW believes that it should be allowed a windfall from the Sale Contract to the detriment of other creditors of FLCP, the Sale Contract is evidence that HREHW was aware that written documentation is needed to transfer an interest in real property.

18. The attempt by HREHW to quickly extract profit incident to the Sale Contract is in contrast to the original purported intent referenced in the Complaint for HREHW to come in to manage and provide leadership for the Property.

19. On July 8, 2025, HREHW filed a certain *Verified Complaint for Specific Performance* (the "**Complaint**") against FLCP to initiate Case No. 2025000831 in the Superior Court of Coweta County (the "**Winder Action**"). HREHW also filed a Notice of Lis Pendens (the "**Lis Pendens**") related to the Property in conjunction with the Complaint.

20. Paragraph 8 of the Complaint alleges that FLCP and HREHW agreed (the "**Purported Agreement**") for HREHW to acquire the Property. Notwithstanding that the Complaint in essence seeks to inappropriately enforce a fraudulent conveyance as it seeks to procure a transfer for less than fair market value, the Complaint fails to identify any written sale agreement for the transfer of the Property to HREHW or even identify the amount that would be paid to FLCP for the acquisition of the Property. Instead of providing details as to how HREHW was supposed to acquire the Property, Paragraph 10 of the Complaint oddly references

the note underlying the Construction Loan even though such note only provides for a construction loan and does not provide any evidence as to how HREHW would acquire the Property, include the address or a legal description of the Property, or provide a purchase price or any details regarding the acquisition of the Property. The absence of such details is consistent with the Loan Closing Packet related to the Construction Loan that does not allocate any funds for the acquisition of the Property or address any specific details as to how HREHW would actually acquire the Property. The Complaint fails to set state a claim by HREHW to the Property.

21.     Pursuant to paragraph 18 of the Complaint, the Complaint and Lis Pendens were purportedly filed to protect an unidentified interest in the Property. The Complaint itself seeks to compel the transfer of the Property to HREHW without: a) identifying any enforceable option to purchase the Property or even identifying the specific purchase price to be paid by HREHW to acquire the Property; or b) indicating that HREHW is able to promptly pay the purchase price in full. Instead of including a written purchase agreement signed by FLCP to allow HREHW to acquire the Property, the Complaint includes the outstanding promissory note for the Construction Loan.

### b.  Appointment of Receiver and Review of loans.

22.     On July 11, 2025, this Court entered the Appointment Order to appoint the Receiver for the purposes of marshaling and preserving all assets of the

Receivership Entities and the assets of Defendant Frost that: i) are attributable to funds derived from investors or clients of the Defendants; ii) are held in constructive trust for the Defendants; and/or iii) may otherwise be includable as assets of the estates of the Defendants. The Appointment Order includes essential provisions to empower the Receiver to analyze and investigate assets, administer assets for the benefit of the Receivership and harmed investors and creditors, and develop a fair and reasonable liquidation plan for all investors

23. To provide the Receiver with the ability to fulfill the duties of the Receiver without being hindered or obstructed by litigation against property of the Receivership, the Court entered an injunction against interference with the Receiver (the "**Injunction**") and stay of all civil legal proceedings involving any Receivership Property [as defined in the Appointment Order] or the Receivership Entities until further order of this Court. *See* Appointment Order ¶¶ 32-34. The Injunction protects against action that would "[d]issipate or otherwise diminish the value of any Receivership Property." *See* Appointment Order ¶ 32(C).

24. Since being appointed, the Receiver has endeavored to marshal and preserve the assets of the Receivership Entities. Incident thereto, the Receiver investigated the Property and Construction Loan that is past its maturity date and in default.

**ARGUMENT AND CITATION OF AUTHORITY**

25. "The district court has broad powers and wide discretion to determine relief in an equity receivership." *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted) (noting that to "'allow any individual to elevate his position over that of other investors similarly 'victimized' by asserting claims for restitution and/or reclamation of specific assets . . . would create inequitable results, in that certain investors would recoup 100% of their investment while others would receive substantially less . . .'"). Indeed, "'a court sitting in equity has the discretionary authority to deny state law remedies as inimical to the receivership' . . . It is well-established that 'equitable principles may supersede rights an investor would have under other law to recover its assets.'" *Sec. & Exch. Comm'n v. Torchia*, No. 1:15-CV-3904-WSD, 2016 WL 2996902, at *4 (N.D. Ga. May 25, 2016) (citation omitted). Here, the claims alleged by Movants are inimical to the Receivership.

26. This Receivership involves more than 70 individual loans involving various borrowers and parties who entered loan agreements and investor notes. Rather than focusing on untangling and administering such loans and other property of the Receivership such as the Property, the Receiver has been is being distracted by Movants seeking to divert the Property away from the Receivership. The Receiver submits that granting the Motion would cause further disruption, cause conflict, confusion and unnecessary expense in the administration of the Receivership, harm the Receivership and otherwise cause injustice. Under the circumstances, the Motion

13

fails to assert a legitimate basis for the relief sought by Movants.

**A. Movants Fail to Demonstrate an Interest in the Property.**

27. The Motion is premised on an interest of the Movants in the Property that does not exist. Despite the numerous unsubstantiated representations in the Motion regarding a purported right of Movants to the Property, the Motion does not include any written contract for Movants to purchase the Property.

28. Under Georgia law, a "'contract cannot be enforced if its terms are incomplete, vague, indefinite[,] or uncertain.'" *Douglas Asphalt Co. v. Martin Marietta Aggregates*, 339 Ga. App. 435, 437 (2016) (citation omitted). "If a contract fails to establish an essential term, and leaves the settling of that term to be agreed upon later by the parties to the contract, the contract is deemed an unenforceable 'agreement to agree.'" *Kreimer v. Kreimer*, 274 Ga. 359, 363 (2001) (citation omitted). Here, the Purported Agreement for HREHW to acquire the Property is too indefinite and uncertain to be enforced as it provides no information as to how HREHW would actually acquire the Property. Even if the 1/31 Email is considered for purposes of argument, such correspondence adds two conditions for the consummation of a sale and it is undisputed that such conditions were not satisfied and the amount to be paid remains an undetermined material term. Under the circumstances, there is no promise to be enforced via equitable estoppel or any other theory.

29.     Notwithstanding the foregoing, the statute of frauds requires that any contract for sale of lands, or any interest in, or concerning lands "must be in writing and signed by the party to be charged." O.C.G.A. § 13-5-30(4). "Such a writing must include every essential element of the contract, including the identity of the parties, a legally adequate description of the property, the consideration, and the terms of payment." *Est. of Ryan v. Shuman*, 288 Ga. App. 868, 871 (2007) (citation omitted). With regard to price, an agreement to sell "at an 'actual cost' to be determined later is simply too vague to be enforced." *Discovery Point Franchising, Inc. v. Miller*, 234 Ga. App. 68, 71, 505 S.E.2d 822, 824 (1998) (finding that fax was "legally insufficient because it lacks all essential terms including a legal description of the land, a sales price, and the specifics of payment"). Furthermore, to "comply with the Statute, an agreement for the sale of land 'must be in writing and must provide a sufficiently definite description of the property to be sold. Specifically, such a contract must describe the property . . . with the same degree of certainty as that required in a deed conveying realty.'" *Salim v. Solaiman*, 302 Ga. App. 607, 609, 691 S.E.2d 389, 391 (2010) (noting that "the failure of the parties to agree to the specifics of payment is fatal to the agreement where it is sought to be enforced on that basis"). Here, it should be undisputed that no such writing exists as Movants have failed to produce a writing: a) signed by the owner of the Property for any sale to HREHW; b) with a legally adequate description of the Property; c) stating the

15

consideration for any transfer of the Property to HREHW; or 4) the terms of payment by HREHW to the owner of the Property.

30. Under the circumstances, there is no evidence as to how HREHW was to actually acquire the Property and the alleged Purported Agreement is too uncertain and indefinite in all essential particulars to be enforced. Notably, the deficiencies in the purported agreement are not cured by performance because the Purported Agreement relied upon is so vague, indefinite and uncertain as to make it impossible to determine what, if anything, was agreed upon. Indeed, the note underlying the Construction Loan can only serve as evidence that HREHW agreed to repay the Construction Loan. Under the circumstances, it impossible to determine whether there had been performance to remove the matter from the statute of frauds.

**B. Movants fail to allege fraud.**

31. The claim of Movants for fraud based upon unidentified representations regarding SBA financing present no actionable cause of action for at least four reasons. First, such representations are not detailed appropriately and do not reference any specific financing from a third-party more than a year in the future and, as such, are disputed and should be given no weight. Second, a "fraud claim cannot, as a matter of law, be founded on a promise that fails to satisfy the statute of frauds." *Breckenridge Creste Apartments, Ltd. v. Citicorp Mortg., Inc.*, 826 F. Supp. 460, 466 (N.D. Ga. 1993) (finding that oral promise relating to commitment to lend

money failed to satisfy statute of frauds as such promises "are only enforceable if the essential terms are reduced to a writing"). Although financing may have been an option for repayment of the obligations and was an express condition for a transfer of the Property to Movants, repayment was not conditioned upon refinancing and the Movants fail to identify any writing that details the terms of such financing or even any specific promise that Movants would be able to secure SBA financing.

32. Third, the "general rule is that fraud cannot be predicated upon statements which are promissory in their nature as to future acts." *Hornsby v. First Nat. Bank of Atlanta*, 154 Ga. App. 155, 157 (1980). Even if First Liberty promised something related to SBA refinancing, "'a promise, even a false promise, to perform an act in the future is not a false pretense or false representation, and does not constitute the basis for an action for fraud.'" *Est. of Smith v. CitiMortgage, Inc.*, No. 113CV02809RLVJFK, 2014 WL 12859296, at *5 (N.D. Ga. Jan. 28, 2014) (citation omitted). Fourth, Plaintiffs fails to cite any authority indicating that this allegation could serve as the basis of any claim.

33. Under the circumstances, Movants fail to allege a fraud claim and are unable to avoid responsibility for procuring the funds to purchase the Property.

**C. The Motion Fails to Allege a Claim for a Constructive Trust.**

34. "Absent a clear and compelling reason, . . . courts are and should be reluctant to impose a constructive trust on the property in a debtor's estate. While

Georgia law recognizes that a constructive trust may be imposed upon property acquired by fraud, a constructive trust is not a remedy for a simple breach of contract or breach of a promise." *In re Int'l Mgmt. Assocs., LLC*, No. 06-62966-PWB, 2016 WL 552491, at *6 (Bankr. N.D. Ga. Feb. 10, 2016). Here, there is no evidence of fraud before the Court as to the Property as FLCP was within its rights to liquidate the security interest of FLCP in the Property and Movants have not transferred payment to consummate any sale of the Property. Even if Movants could, for purposes of argument, establish a contract for a sale of the Property to the Movants and a breach of such contract, the simple breach of contract or breach of a promise claim would not result in a constructive trust on the Property or any of the proceeds of a sale thereof. Under the circumstances, any claim based on a constructive trust fails as a matter of law.

### D. Allowing Movants to Intervene As Demanded Would Disrupt the Receivership.

35. This Court has already established an efficient process for the administration of the Receivership and for parties such as the Movants to enter the Receivership. Indeed, the Receiver is a third-party fiduciary acting in the best interests of the Receivership, there will be a claims process in which Movants can assert whatever claim that Movants believes that it may have prior to any distribution to creditors that may ordered by the Court, and the Procedures Order allows Movants a meaningful opportunity to argue the facts and their claims and defenses. Allowing

Movants favored treatment that short-circuits the established process by further delaying the sale of the Property to which Movants have no legitimate interest would be counter-productive and disruptive to the orderly and efficient administration of the Receivership. Moreover, the Receiver has contemporaneously herewith filed a lawsuit against the Brown entities in which their counter-claims can be heard (assuming compliance with the Procedures Order) as well as a Motion to engage in an orderly sale of the Winder Property. Simply put, a separate process has been established for the Movants to seek relief and there is no reason to grant the relief sought in the Motion.

### E. Intervention in SEC Enforcement Actions is Prohibited.

36. Section 21(g) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78u(g) prohibits intervention in SEC Enforcement Actions without the consent of the SEC. This threshold issue is not addressed in the Motion even though the SEC has not consented.

### F. Movants Do Not Have Standing to Intervene.

37. An "intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017). Here, the SEC initiated this proceeding to obtain relief arising from three claims for violations of securities laws and sought an asset freeze and the appointment of the Receiver. Such relief is

different than the relief sought by Movants to interfere with the sale of an asset of the Receivership.

38.     "The well-settled test for establishing Article III standing includes three basic requirements." *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1290 (11th Cir. 2017). First, the party "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotations, citations, and footnote omitted). Second, the party "must establish a causal connection between its injury and the defendant's conduct. Third, the [party] . . . must show that it is likely—and not merely speculative—that a favorable decision by the court will redress the injury." *Duty Free Americas, Inc. v. Estée Lauder Cos.*, 797 F.3d 1248, 1271 (11th Cir. 2015) (citation omitted).

39.     Here, the Motion fails to identify an invasion of legally protected interest. Instead, the Motion alleges an unsubstantiated interest in the Property that does not appear to exist. Since Movants are unable to demonstrate any concrete and actual injury, Movants are unable to establish any causation or redressability at this juncture.

40.     Under the circumstances, Movants do not have standing to intervene in the Receivership and should comply with the Procedures Order or utilize the claims

process like every other similarly situated party.

### G. Movants Cannot Intervene as a Matter of Right

41. Movants are not entitled to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2).

42. Intervention as of right under Rule 24(a)(2) is only available where the party seeking to intervene demonstrates "that: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (citation omitted). Movants are unable to demonstrate any of the required elements.

43. First, "[t]imeliness is determined by the Court in the exercise of its sound discretion, and is to be determined from all the circumstances and not solely by reference to how far the suit has progressed." *Sec. & Exch. Comm'n v. Marin*, No. 1:19-MC-20493-UU, 2019 WL 3428551, at *3 (S.D. Fla. May 31, 2019) (finding that the timeliness requirement was not satisfied where the movant knew of the SEC case from the beginning and did not seek to intervene until approximately 2 months later). Here, the Motion is untimely as it was filed almost a year after the entry of the Appointment Order and four months after the Court established procedures for

parties like the Movants—who were aware of the Receivership from the beginning—to enter the Receivership. The Court has already established procedures for parties like the movants to enter the Receivership and the Receiver and the SEC have already expended significant time and resources in the Receivership and would be greatly prejudiced from the intervention of a new party entering the Receivership with alternative procedures. Moreover, other claimants in the Receivership would be greatly prejudiced if assets of the Receivership are diverted without fair market value being paid for such assets. Such prejudice greatly outweighs any minimal inconvenience that Movants may encounter if intervention is denied and Movants are treated the same as other borrowers/claimants, especially in light of the fact that any claims of Movants can be addressed during the claims process in the Receivership or by Movants complying with the Procedures Order.

44. Second, Movants do not have any interest in any property of the Receivership and no specific fund exists to pay any claim of the Movants. Any claim of Movants would be paid from a general distribution from the Receivership without regard to any particular property of the Receivership.

45. Third, the disposition of this matter will not impede or impair the ability to protect any interest of Movants as: a) the Procedures Order and claims process in the Receivership provide sufficient protection by allowing Movants an opportunity to demonstrate any claims; and b) Movants will have an opportunity to present

argument related to any proposed sale of the Property and distribution from the Receivership. Indeed, Movants will not be prejudiced by being treated the same as other parties in the Receivership.

46. It is well recognized that the receivership claims process is the appropriate forum for considering interests of creditors and shareholders. *See SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992). Even in receiverships involving secured creditors, "Courts have repeatedly held that a receivership claims process is the appropriate forum for considering interests of secured creditors and allowing secured creditors to protect their interest." *Sec. & Exch. Comm'n v. JCS Enters., Inc.*, No. 14-CV-80468, 2015 WL 13950381, at *1 (S.D. Fla. Nov. 3, 2015) (citation omitted). The attempt by Movants to obtain preferential treatment by avoiding the Procedures Orde and claims process and diverting property of the Receivership to which Movants may not be entitled should be rejected.

47. Finally, any interest of Movants in the Receivership obtaining the highest price for the Property is adequately represented by the existing parties to the Receivership as both the Receiver and the SEC seek to protect and obtain the best price for property of the Receivership. Once "a receiver has been appointed, and the parties seeking relief or intervention have the same goal, i.e., protection of investors, there is a presumption that the receiver will adequately represent all parties." *Commodity Futures Trading Comm'n v. Eustace*, No. CIV.A. 05-2973, 2005 WL

2862945, at *2 (E.D. Pa. Oct. 31, 2005). Likewise, "government entities, like the SEC, that bring enforcement proceedings are mandated to act in the interest of maximizing the recovery to all defrauded individuals and therefore, are often presumed to be adequately representing the interests of non-party investors." *Sec. & Exch. Comm'n v. Callahan*, 193 F. Supp. 3d 177, 206 (E.D.N.Y. 2016). Movants failed to rebut such presumption or that Receiver and the SEC will serve the interests of borrowers/claimants like Movants by seeking to maximize the value of the Property. Furthermore, Movants fails to demonstrate why the Procedures Order and claims procedure in the Receivership are insufficient to protect any legitimate interests Movants. Movants fail to satisfy the prerequisites to intervene as a matter of right, and the Motion should be denied.

**H. Movants Should Not Be Granted Permission to Intervene**

48. It would not be appropriate for the Court to exercise it discretion to allow Movants to intervene permissively under Fed. R. Civ. Proc. 24(b).

49. Permissive intervention under Rule 24(b) is based on: a) timeliness; b) whether the party seeking to intervene "shares with the main action a common question of law or fact[; and c)] . . . whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *See* Fed. R. Civ. Proc. 24(b). "Even when the requirements of Rule 24(b) are satisfied, it is in the court's sole discretion whether to allow intervention." *Am. Fed'n of State, Cnty. & Mun.*

*Emps. (AFSCME) Council 79 v. Scott*, 278 F.R.D. 664, 668 (S.D. Fla. 2011). Indeed, whether "to allow permissive intervention rests in the discretion of this Court." *Orlowski v. Bates*, No. 211CV01396JPMCGC, 2014 WL 12771522, at *5 (W.D. Tenn. Feb. 11, 2014) (citation omitted).  For the reasons set forth herein, this Court should decline to permit intervention by Movants.

WHEREFORE, the Receiver respectfully requests that the Court deny the Motion and award the Receiver such other and further relief as this Court deems just and proper.

Respectfully submitted this 11th day of June, 2026.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq. (Georgia Bar No. 636265)
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
hsewell@sewellfirm.com; Phone: (404) 926-0053
*Counsel for Receiver*

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE AND <u>CERTIFICATE OF SERVICE</u>

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D), and the attachments are consistent with Local Rule 5.1(B).

Counsel further certifies certify that I have this day electronically filed the foregoing *Response in Opposition to Motion to Intervene of Lisa Brown and Haven Real Estate Holdings of Winder, LLC* with the Clerk of Court via the CM/ECF system and further certify that a true and correct copy of the same was sent electrically to kevin@ehdhlaw.com.

This 11th day of June, 2026.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq. (Georgia Bar No. 636265)
Buckhead Centre
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
hsewell@sewellfirm.com
Phone: (404) 926-0053
*Counsel for Receiver*

EXHIBIT A

| Subject: | RE: Haven Athens |
|---|---|
| Date: | Monday, December 15, 2025 at 8:20:18 AM Eastern Standard Time |
| From: | Kevin Epps |
| To: | Henry Sewell |
| CC: | Brittany Lane, zack@georgiamanagementservice.com, Will Riley, Tyler Gaines |
| Attachments: | image001.jpg |

Henry I am going to have Brittany send over everything that was submitted to the bank this morning.

Additionally, we are working on getting an exact figure as to Athens Note Payoff for July 8, 2025, the date of the filing of specific performance complaint.

I know you have court this morning in this case.  Assuming we can come to an agreement on the payoff for Athens Loan, our goal would be to pay it off this week.

Sincerely,

Kevin Edward Epps
Attorney

1220 Langford Drive
Building 200 Suite 101
Watkinsville, Georgia 30677
kevin@ehdhlaw.com
Phone: 706.508.4000
Fax: 706.842.6750



Epps, Holloway, DeLoach & Hoipkemier, LLC

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential, or otherwise legally prohibited from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by email or telephone at 706-508-4000, and delete all copies of the message.

**From:** Henry Sewell <hsewell@sewellfirm.com>
**Sent:** Friday, December 12, 2025 7:47 AM
**To:** Kevin Epps <kevin@ehdhlaw.com>
**Subject:** Haven Athens

I was not able to get back to you last night.

I can talk later this morning.

If you have the specifics of the proposal on Haven Athens please forward the proposal to me along with the financial information for the company so we can move this forward.

Thanks



Henry F. Sewell, Jr.
Law Offices of Henry F. Sewell, Jr., LLC
Suite 555
2964 Peachtree Road NW
Atlanta, Georgia 30305
Direct:  404-926-0053
Cell:     404-822-1785
hsewell@sewellfirm.com