**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | |
| | : | 1:25-cv-03826-MLB |
| EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC, | : | |
| | : | |
| Defendants, and | : | |
| | : | |
| FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC, | : | |
| | : | |
| Relief Defendants. | : | |

**MOVANTS LISA BROWN'S AND HAVEN REAL ESTATE HOLDINGS OF WINDER, LLC'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO INTERVENE [DOC. 92]**

Movants Lisa Brown ("Brown") and Haven Real Estate Holdings of Winder, LLC ("HREHW" and, together with Brown, "Movants") submit this reply in support of their Motion to Intervene [Doc. 92] (the "Motion") and in response to the Receiver's Response in Opposition [Doc. 96] (the "Response"). Concurrently with this Reply, Movants submit the proposed First Amended Verified Intervenor Petition

1

(the "Amended Petition"), attached as Exhibit A, which supersedes the Proposed Verified Intervenor Petition filed at Doc. 92-28. A proposed Order granting the Motion is submitted herewith.

## INTRODUCTION

The Response answers a Rule 24 motion with a summary-judgment brief. Nearly all of it, including the statute of frauds, fraud, constructive trust arguments, disputes the *merits* of the claims in Movants' Proposed Verified Intervenor Petition [Doc. 92-28]. Those are defenses to be tested *after* intervention. The narrower question now is whether Movants have asserted a legally protectable interest in property the Receiver proposes to liquidate. They have. The interest they assert is ownership of the Property itself, an equitable interest in the res, not a monetary claim arising from their loans, and that distinction governs the Rule 24 analysis that follows.

The Response also confirms why intervention is necessary. Ms. Brown is a registered nurse of more than twenty-five years who builds and operates memory-care communities for seniors. Doc. 92-28 ¶ 1. Her entities have already paid more than $2.5 million toward the related loan obligations, Resp. ¶ 5 n.2, and spent months seeking payoff figures, Doc. 92-15; Doc. 92-16. When a number was finally within reach, her counsel wrote that "our goal would be to pay it off this week." Doc 96, Ex. A.

In a single filing day, June 11, 2026, the Receiver opposed Ms. Brown's right to be heard, filed an ancillary complaint seeking more than $4 million from her, Resp. ¶ 5, and moved to auction the property she took possession of and improved [Doc. 95], free and clear of her interest, with no floor against the $3,955,000 the market offered. Because the Receiver bills the Estate by the hour, Doc. 6 ¶¶ 57–64, each front he opens, i.e., a paid auctioneer, new litigation against Ms. Brown, and a future claims process, charges professional fees against the corpus ahead of the investors, Doc. 95 ¶ 10, while the payoff Movants were pursuing would have retired the loans without any of them. That course depletes the very estate this receivership exists to protect and serves neither the investors nor the parties who improved the Property and have been trying to pay.

## ARGUMENT

### I.    The Receiver's Merits Defenses Are Premature.

A Rule 24(a)(2) movant need only assert, not prove, an interest that is "direct, substantial, [and] legally protectible." *Chiles*, 865 F.2d at 1213–14. Whether Movants ultimately prevail on their constructive-trust, part-performance, and estoppel theories is the subject of the Amended Petition, which even the Procedures Order says is tested by motion after filing. Doc. 70 ¶¶ 3–4. The Receiver may move against the Amended Petition once Movants are parties. He may not win dismissal of claims never allowed to be filed.

3

**II.    Section 21(g) Does Not Bar Intervention.**

The Receiver devotes one conclusory paragraph to 15 U.S.C. § 78u(g), Doc. 96 ¶ 36, and cites no authority. The statute bars only the *consolidation or coordination* of an SEC action "with other actions not brought by the Commission" without its consent. It says nothing about intervention.

The only court of appeals to decide the question agrees that the subsection's purpose "is simply to exempt the Commission from the compulsory consolidation and coordination provisions applicable to multidistrict litigation," and that it "does not say that no one may intervene in an action brought by the SEC without its consent." *SEC v. Flight Transp. Corp.*, 699 F.2d 943, 950 (8th Cir. 1983) (reversing denial of intervention to a creditor and to a spouse holding a property interest in the receivership). This District has already adopted that holding, in the very receivership the Receiver cites.

In *SEC v. Torchia*, third parties moved to intervene to stop the receiver's sale of assets they claimed to own, over the SEC's § 21(g) objection. Noting that "[t]he Eleventh Circuit has not addressed the issue," the court held "that, under these particular circumstances, Section 21(g) does not bar intervention," and granted intervention as of right. No. 1:15-cv-3904-WSD, 2016 U.S. Dist. LEXIS 186075, at 5–9 (N.D. Ga. July 1, 2016) *(following SEC v. Kings Real Estate Inv. Trust*, 222

4

F.R.D. 660 (D. Kan. 2004)); *accord SEC v. Prudential Sec. Inc.,* 171 F.R.D. 1, 3–4 (D.D.C. 1997).

### III. Movants Assert a Legally Protectable Interest Under Georgia Law.

Much of the Response rests on the mistaken premise that, because this is an equity receivership, the Court may set Georgia law aside. The Receiver invokes the court's "broad powers and wide discretion to determine relief in an equity receivership" and argues that equity may "deny state law remedies as inimical to the receivership." Doc 96 ¶ 25 (quoting *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992)). However, the Eleventh Circuit has held otherwise.

Quoting that same *Elliott* language, the Eleventh Circuit ruled that although a district court has "wide-ranging authority to supervise a receivership," it "does not have the authority to extinguish a creditor's pre-existing state law" property right. *SEC v. Wells Fargo Bank, N.A.*, 848 F.3d 1339, 1343–44 (11th Cir. 2017). That follows from the settled rule that "a receiver appointed by a federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the state." *Marshall v. New York*, 254 U.S. 380, 385 (1920). The Receiver thus takes the Winder Property subject to the interests that burdened it in FLCP's hands and gains no greater right than FLCP held.

The Response's centerpiece, that no signed writing states a price, Doc 96 ¶¶ 27–30, attacks a claim Movants do not make. Movants assert an *equitable* interest

arising from possession, valuable improvements, and documented reliance on FLCP's written commitments. Georgia law protects that interest.

The Receiver's premise that the absence of a stated price means the absence of consideration, Doc 96 ¶¶ 6, 20, 30, misreads Georgia law. Consideration need not be a cash price. A bargained-for performance suffices, and it may consist of "an act other than a promise," "a forbearance," or "the creation . . . of a legal relation." O.C.G.A. § 13-3-42(c). In exchange for FLCP's commitment to convey, HREHW took over a failing facility, incurred a $2,000,000 construction loan, and devoted that borrowed capital and Ms. Brown's labor to the renovations. That it financed the work with a loan rather than paying FLCP a lump sum does not negate consideration. It is consideration, and a substantial one. *See Brack v. Brownlee*, 246 Ga. 818, 819 (1980) (financing contingency did not defeat enforceability, as "the precise manner in which the funds are obtained is irrelevant to the vendors").

The statute of frauds "do[es] not extend" to cases "[w]here there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance." O.C.G.A. § 13-5-31(3); *See also Dobbs v. Dobbs*, 270 Ga. 887, 888 (1999) (affirming specific performance of an oral contract to convey land where the buyer's continuous possession and valuable improvements made in reliance on the contract were sufficient part performance under O.C.G.A. § 23-2-131). HREHW undisputedly took possession in February

2024 and spent substantial sums improving the Property, improvements reflected in the $3,955,000 price the Receiver himself cites. Doc. 96 ¶¶ 9, 15. Possession coupled with valuable improvements made in reliance on the promise is the classic case of part performance, and under § 13-5-31(3) it takes the agreement out of the statute of frauds rather than being barred by it.

A constructive trust under O.C.G.A. § 53-12-132(a) is not, as the Receiver suggests, confined to express misrepresentations. By its terms the statute reaches a titleholder who, "either from fraud or otherwise, cannot enjoy the beneficial interest . . . without violating some established principle of equity," thus no showing of fraud is required at all. O.C.G.A. § 53-12-132(a). Where fraud is implicated, it may be constructive as well as actual, reaching "any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed." O.C.G.A. § 23-2-51. The Receiver's lead authority holds only that a constructive trust "is not a remedy for a simple breach of contract or breach of a promise." *In re Int'l Mgmt. Assocs., LLC*, No. 06-62966-PWB, 2016 WL 552491, at *6 (Bankr. N.D. Ga. Feb. 10, 2016), quoted at Resp. 18. This is not a simple-broken-promise case. HREHW took possession, executed joint vacate notices with Frost, carried the renovations substantially toward completion, and placed the Property under a $3,955,000 contract.

7

The Receiver's conditions argument, that title was to pass only on completed renovations and a closed SBA loan, Doc. 96 ¶¶ 7, 28, ignores the rule that a party may not exploit the nonoccurrence of a condition its own conduct frustrated. "[I]f the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance." O.C.G.A. § 13-4-23. A debtor's performance is likewise excused where the lender's conduct "made performance useless or impossible." *L.D.F. Family Farm, Inc. v. Charterbank*, 326 Ga. App. 361, 366 (2014); *Ott v. Vineville Mkt., Ltd.*, 203 Ga. App. 80 (1992). That is what happened here.

The Receiver withheld statutorily required payoff figures for months, demanded roughly $1,334,197 in unsubstantiated charges over the admitted balance, and refused clear title, destroying the $3,955,000 sale and the refinancing through which the renovations would have been completed and the conditions satisfied. Doc. 92-12, 14–17, 21. To the extent the Receiver faults Movants for not having paid the purchase price, Doc. 96 ¶ 34, a debtor facing a disputed demand must tender only "such sums as are admittedly due," not the inflated total, and need not tender at all where the creditor would refuse it. *Grebel v. Prince*, 232 Ga. App. 361, 366 (1998). Having frustrated the conditions himself, the Receiver cannot invoke their nonoccurrence.

The Response also fixates on the January 31, 2024 email while ignoring the 2025 communications explaining the intent of the parties arrangement. It says nothing about Frost's June 2, 2025 email, sent *after* substantial renovation work and *after* the third-party sale contract, confirming to Ms. Brown that the Property was "in our name and u/c to you" and that the buyer's broker "saw no issues as long as his buyers receive the title at closing free of encumbrances." [Doc. 92-8]. That message lays out the very mechanics the Receiver says are missing. FLCP would hold title, HREHW would sell to a third-party buyer, and title would pass at closing free of encumbrances, retiring the loans and compensating HREHW. FLCP thus understood the structure weeks before this Receivership. That is a matter for the trier of fact, not an opposition brief.

Finally, the Receiver's own characterizations cut against him. He brands the proposed conveyance a "fraudulent transfer," Doc. 96 ¶¶ 6, 20, even as he assures the Court there is "no evidence of fraud before the Court," Resp. ¶ 34, all while serving as Receiver over an estate the Commission alleges operated as a Ponzi scheme since at least 2021. Doc. 1 ¶¶ 13, 64–65. He cannot brand the transaction fraudulent to defeat it and then declare fraud absent to defeat the constructive trust.

The "windfall" label likewise inverts the equities. The estate took this asset for a defaulted $750,000 obligation of a stranger, and the value above that figure exists only because Movants built it with borrowed money they still owe.

Recognizing their interest prevents the estate's unjust enrichment, not its depletion. *SEC v. Elliott*, concerns parity *among defrauded investors* seeking "restitution and/or reclamation of specific assets," not enriching the estate at the Movants' expense or stripping them of their rights to real property. 953 F.2d 1560, 1566 (11th Cir. 1992). The *Torchia* order the Receiver quotes, Doc. 96 ¶ 25, is that receivership's "Pooling Order" governing distribution among *investors*, 2016 U.S. Dist. LEXIS 68420 (N.D. Ga. May 25, 2016), entered by the same court that, five weeks later, *granted intervention* to third parties claiming the specific assets the receiver proposed to sell. *See Torchia*, 2016 U.S. Dist. LEXIS 186075 (N.D. Ga. May 25, 2016).

## IV.    Movants Have Article III Standing.

*Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017), requires an intervenor to show standing only where it "pursue[s] relief that is different from that which is sought by a party with standing." Movants satisfy any such requirement. The imminent extinguishment of their claimed interest through a free-and-clear sale, Doc. 95, is a concrete injury traceable to the Receiver's requested relief and redressable by the relief they seek. The Receiver's only answer, that no interest "appear[s] to exist," Resp. ¶ 39, is circular, denying standing by denying the merits, the inquiry that follows rather than precedes intervention.

10

## V.    The Motion Is Timely.

"[T]imeliness is not a word of exactitude" and "must have accommodating flexibility." *Chiles*, 865 F.2d at 1213. Under *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977), the clock runs not from the movant's knowledge that the suit is pending, but from when she knew or should have known her interests "would no longer be protected" without intervention.

The Receiver's own filings prove Movants' diligence. They show more than $2.5 million already paid toward the loan obligations, Doc. 96 ¶ 5 n.2, and active payoff negotiation through at least December 15, 2025. *Id.*, Ex. A. Movants pursued resolution while the Receiver delayed payoff statements for months and then asserted approximately $1.33 million in unsubstantiated charges. Doc. 92-14–15, 20. A party who negotiates in good faith and moves only when negotiation fails acts exactly as Rule 24 contemplates.

Nor would intervention prejudice anyone. No sale has occurred and no claims bar date has passed. The claims process the Receiver says will protect Movants does not yet exist. Doc. 96 ¶ 35. The timing confirms diligence. Movants moved on May 28, 2026. Not until June 11 did the Receiver file his ancillary complaint and move to auction the Property. The events making intervention necessary postdate the Motion, and a movant who acts before them is not dilatory. *Torchia* found intervention timely when it followed the order authorizing the receiver's sale. Here,

11

Movants moved before the Receiver even sought authority to sell. 2016 U.S. Dist. LEXIS 186075, at *8.

### VI.   Disposition of This Action Will Impair Movants' Interest.

Rule 24(a)(2) asks only whether the disposition may impair or impede the movant's ability to protect its interest. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1308–09 (11th Cir. 2004). The impairment here is structural. The Receiver proposes to sell the *res* free and clear, converting Movants' claimed interest in the Property into a contested claim against proceeds, to be resolved in a claims process that does not yet exist, in an action Movants cannot even oppose absent intervention. A party whose property interest can be extinguished in a proceeding she cannot join is the textbook intervenor. *See Flight Transp.*, 699 F.2d at 947–49; *Torchia*, 2016 U.S. Dist. LEXIS 186075, at *8.

The Receiver's reliance on the eventual claims process, Doc. 96 ¶¶ 35, 45–46, and the just-filed ancillary action, Resp. ¶ 5, misses the point the same way. The Procedures Order's process is a vehicle for *Borrowers* to bring an affirmative "Verified Complaint" against the Estate on "claims arising from loan obligations" or to counterclaim if sued, Doc. 70 ¶¶ 2–4, which are the monetary claims Movants have expressly *reserved*, Doc. 92 ¶¶ 45–47. The separate investor claims process, by the Order's own terms, "will ultimately be established" and does not yet exist, Doc. 70 ¶ 2. Neither gives Movants any voice over what will moot their property claim,

including whether, when, and at what floor price the Property is sold, and what becomes of the proceeds. Movants do not seek to litigate a loan obligation. They assert an ownership interest in the res itself, which those Procedures do not reach and which a free-and-clear sale would extinguish. That the Procedures Order lets Borrowers enter the Case to resolve disputes regarding their Loans through a Verified Complaint the Receiver may then test by motion, Doc. 70 ¶¶ 4–5, only confirms what Rule 24 requires here: a party claiming the Property itself must be allowed to enter and be heard before it is sold, not turned away to a process built for loan disputes that cannot protect an interest in the res.

A no-reserve auction does not protect value. It risks a sale well below the $3,955,000 the market has already offered, in tension with the Receiver's own mandate to sell "with due regard to the realization of the true and proper value" of the property, Doc. 6 ¶ 38, and with the Injunction against measures that "diminish the value of any Receivership Property," *id.* ¶ 32(C). Because the Receiver is paid hourly, *id.* ¶¶ 57–64, that satellite litigation and auction also draw fees from the very proceeds Movants' interest reaches. Movants, by contrast, stand ready to bring a qualified purchaser and apply the proceeds to the loans, which the Receiver's segregation proposal would accommodate.

### VII.  No Existing Party Adequately Represents Movants.

Any presumption of adequate representation arises only "when applicants . . . seek to achieve the same objectives as an existing party," *United States v. City of Miami*, 278 F.3d 1174 (11th Cir. 2002), is "weak and can be overcome" with "some evidence to the contrary," *Stone*, 371 F.3d at 1311, and never applies where the representative holds "an interest adverse to the proposed interven[o]r," *id.* (citing *Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999)).

The same day he filed the Response, the Receiver sued Movants for more than $4 million, Doc. 96 ¶ 5, moved to sell the property they claim, and branded their claims "invalid," Resp. ¶ 10. That is not imperfect representation. It is adversity *per se*. *Torchia* found representation inadequate on facts far less stark.

In *Torchia*, the receiver and the SEC merely sought to sell the disputed assets, and that alone made them inadequate representatives of the claimants. 2016 U.S. Dist. LEXIS 186075, at *9*. Here the Receiver has gone further and sued. The SEC, too, "does not oppose" the sale, Doc. 95 at 2 n.1, the precise alignment *Torchia* held inadequate. The Receiver's authorities, *Eustace* and *Callahan*, Resp. ¶ 47, presume only that receivers and the SEC represent aligned investors. Movants are not investors aligned with the estate. They are the parties it is suing. No presumption survives that posture. The Receiver's hourly compensation, Doc. 96 ¶¶ 57–64,

14

widens the gap, since the litigation he pursues enlarges the Estate's fees rather than the investors' net recovery.

## CONCLUSION

For the reasons above and in the Motion, the Court should grant leave to intervene as of right under Rule 24(a)(2), or permissively under Rule 24(b)(1)(B) on the terms in Section VIII, deem the Proposed First Amended Verified Intervenor Petition filed, and modify the stay accordingly.

Respectfully submitted this 25th day of June, 2026.

**EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC**

**BY:** */s/ Kevin E. Epps*
Kevin E. Epps
Georgia Bar No. 785511
*Attorney for Lisa Brown and*
*Haven Real Estate Holdings of Winder, LLC*

1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000
kevin@ehdhlaw.com

15

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(C) in 14-point New Times Roman type face.

**EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC**

BY:   */s/ Kevin E. Epps*
        Kevin E. Epps
        Georgia Bar No. 785511
        *Attorney for Lisa Brown and*
        *Haven Real Estate Holdings of Winder, LLC*

1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000
kevin@ehdhlaw.com