UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| Plaintiff, | : | Civil Action File No. |
| | : | 1:25-cv-3826-MLB |
| v. | : | |
| EDWIN BRANT FROST IV and | : | |
| FIRST LIBERTY BUILDING & LOAN, LLC, | : | |
| Defendants, and | : | |
| FIRST LIBERTY CAPITAL PARTNERS LLC, et. al., | : | |
| Relief Defendants. | : | |

## FOURTH QUARTERLY REPORT OF RECEIVER

S. Gregory Hays, as Court-Appointed Receiver ("**Receiver**") pursuant to the

*Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment**

**Order**") that was entered in the above-captioned case (the **"Case"** or

"**Receivership**"), by and through counsel, hereby files this *Fourth Quarterly Report*

*of Receiver* (the "**Repor**t") for the period of April 1, 2026, through June 30, 2026

(the "**Reporting Period**") and respectfully shows as follows:[1]

### I. INTRODUCTION

1.  The Receiver continues to progress in the administration of the

---

[1] The Receiver previously filed a report on July 21, 2025 [Doc. No. 14] and quarterly reports on October 30, 2025 [Doc. No. 32], October 30, 2025 [Doc. No. 73], and April 30, 2026 [Doc. No. 85] (the "**Third Quarterly Report**" and collectively, the "**Reports**"). Capitalized, but undefined terms used herein shall have the meaning ascribed to such terms in the Reports.

Receivership and identifying, securing, and recovering assets for the benefit of the estate arising from the Receivership (the "**Receivership Estate**"). To date, the Receiver has taken possession of funds in bank accounts of the Receivership Entities, seized and sought the liquidation of certain Receivership Assets, analyzed, evaluated, and initiated collection efforts with regard to the loans made by the Receivership Entities. At the conclusion of the Reporting Period, the Receivership Estate held $4,234,812. This sum includes the amount of $2,397,680.61 that was wired to the Receivership by 2406 Cancer Care LLC ("**Cancer Care**"). The circumstances surrounding this tender were explained in the last quarterly report.

2.      During the Reporting Period, the Receiver and the professionals of the Receiver continued to communicate with parties with knowledge of Receivership Assets.

3.      The Receiver continues to maintain a website for this Case at www.firstlibertyreceivership.com (the "**Website**") where parties-in-interest can obtain free access to all pleadings in the Case and subscribe to receive recurring notifications of pleadings filed on the docket in the Case.[2]

---

[2] To limit costs and administrative burdens, all parties are encouraged to search the Website before attempting to contact the Receiver directly. If inquiries are not addressed by referencing the Website, the Receiver has established an email and phone number incident to which investors and other parties can communicate with the Receiver: FirstLibertyInquiries@stretto.com and 404-926-0060.

4. The prior reports filed by the Receiver contain detailed reports regarding the Receiver's activities prior to the Reporting Period and contain a listing and description of all assets known to the Receiver that is supplemented by this Report. This Report should be read in conjunction with prior reports and is intended to supplement same. The Receiver has attempted to avoid here repetition and duplication from the prior reports.

5. The Receiver continues to search for additional assets and will report on the discovery of additional assets to the Court in subsequent reports.

6. The Receiver will continue to investigate the claims that the Receivership Estate may have against third parties, gather relevant information and documents among records of the Receivership Entities and report efforts and activities in status reports and other court filings until such time as the Court may discharge the Receiver of his duties.

## II. SIGNIFICANT DEVELOPMENTS SINCE THE FILING OF THE THIRD QUARTERLY REPORT.

### A. Accounting and Funds Tracing Database.

7. As noted in prior reports, it was necessary for the Receiver to reconstruct information from records from financial institutions and various third parties and to import this information into a database (the "**Funds Tracing Database**") that currently has data from 19 bank accounts and approximately 48,000

separate transactions. While the Receiver continues to organize the records of the Receivership Entities, obtain information from third parties, and update the Funds Tracing Database as appropriate, the Receiver has largely completed the preparation of the Funds Tracing Database which has been used to understand the operations and transactions of the Receivership Entities with various third parties, insiders and affiliates, prepare the liquidation plan filed [Doc. No. 88] on May 7, 2026 as well as other reports filed by the Receiver, and allow the Receiver to make substantial progress in the administration of the Receivership.

**B.  Expansion of Receivership and Family Financial Partners.**

8.      On April 30, 2026, the Receiver filed a *Motion by Receiver to Expand Receivership With Brief in Support Thereof* [Doc No. 84] (the "**Motion to Expand**") in which the Receiver proposed to add ten (10) entities to the Receivership to be treated as Receivership Entities under the Appointment Order. While the Motion to Expand was granted pursuant to an order [Doc No. 89] (the "**Expansion Order**") of this Court, the Court subsequently entered an order [Doc No. 93] to: a) set the Expansion Order aside only as to Family Financial Partners LLC ("**FFP**"); b) allow FFP to intervene in the Case; and c) establish a briefing schedule for the determination of whether the Receivership should be expanded to include FFP. Such schedule was subsequently modified pursuant to an order [Doc No. 101] entered on

July 8, 2026.

9.    It is the Receiver's understanding that FFP's challenge to the Expansion Order, as it pertains to FFP, is being directed by Mrs. Krista Frost, the wife of Brant Frost IV, a defendant in this case, who asserts an ownership interest in FFP. The primary asset of FFP, based on the information available to the Receiver, is stock in Old Glory Bank which may have significant value. The Receiver continues to investigate this matter and will seek to preserve the value of any assets, acquired using investor funds, for the benefit of investors.

### C. Claims Against Dr. Jerry Williams and Related Entities

10.    As detailed in prior reports, Riverdawg, LLC ("**Riverdawg**") and No Free, LLC ("**No Free**"), entities owned or controlled by Jerry K. Williams ("**Dr. Williams**"), received a significant amount of proceeds from the Receivership Entities and agreed that such obligations would be repaid pursuant to the terms of the documents underlying their obligations. Such obligations are secured by guarantees by Dr. Williams and Urgent Care 247, LLC aka Urgent Care 24/7 ("**UC**"), another entity owned or controlled by Dr. Williams, and collateral identified in pertinent documents.

11.    The total amount owed to the Receivership Estate by the Williams Parties is in excess of $4 Million and is one of the largest claims held by the

Receivership. Based on the investigation conducted by the Receiver, the Receiver believes that the value of the collateral securing these loans is more than sufficient to pay the full amount owed to the Receivership Entities. The Receiver and his professionals devoted significant effort to the enforcement of these loans during the most recent quarter.

12.     On March 11, 2026, the Receiver filed an Ancillary Complaint against Dr. Williams, UC, No Free, and Riverdawg to initiate Ancillary Case No. 1:26-cv-01349-MLB (the "**Williams Receiver Action**"). On that same date, Riverdawg, No Free, and Holt Knob Holdings, LLC ("**Holt Knob**"), another entity owned or controlled by Dr. Williams, filed a complaint against the Receiver to initiate related case no. 26-CV-1353 (the "**Williams Action**"). The Receiver filed a motion to dismiss that Complaint on March 31, 2026 alleging that the Williams Parties were not in compliance with the Procedures Order and that certain claims failed to actually state a claim.[3] In response to that Motion, Riverdawg, No Free, Holt Knob, UC and Dr. Williams (collectively, the "**Williams Parties**") filed an Amended Verified Complaint [Doc. No. 5-1] (as amended, the "**Williams Complaint**"). The Receiver

---

[3] The Procedures Order is an Order [Doc No. 70] entered by the Court in January, 2026, which sets forth the requirements for borrowers to assert counterclaims in connection with their loans or to dispute loan amounts. The Procedures Order has been discussed in prior reports.

submits that the Williams Complaint remains deficient.

13. In particular, the Procedures Order requires parties asserting counterclaims or disputing loan balances to make certain disclosures, including with respect to the uses of funds loaned to them by the Receivership Entities. The Receiver has asserted that the loan documents executed by the Williams Parties required that the funds loaned be used for legitimate business purposes and, in the case of the final loan made to the Williams and No Free, to construct a spec house in Highlands, North Carolina. When they initially filed their Complaint, the Williams Parties made no disclosures of their uses of the funds and, in response to the initial Motion to Dismiss, made only limited disclosures.

14. However, these limited disclosures showed that the Williams Parties used funds received by them for the purpose of constructing the spec house were instead used purchase an interest in a private plane, to pay personal credit card bills, to purchase an automobile and for other personal uses. The Receiver then moved, on May 5, 2026, to dismiss the Williams Action in a Renewed Motion to Dismiss.

15. In addition, on May 5, 2026, the Wiliams Parties filed a Motion for (A) Temporary Restraining Order and Preliminary Injunction, or (B) in the Alternative, Equitable Relief [Doc. No. 9] (the "**TRO Motion**"). In the TRO Motion, the Williams Parties essentially sought to prohibit the Receiver, first from enforcing the

cross-collateralization provisions of the loan documents and, second, to compel releases of collateral in exchange for putting funds in escrow while then continuing the litigate the loan balances. The Receiver filed an opposition to the TRO Motion on May 19, 2026.

16. Both the TRO Motion and the Renewed Motion to Dismiss were heard by the Court on June 16, 2026 (the "**Williams Hearing**"). The TRO Motion was denied by the Court. Further, the Court made clear to the Williams Parties that they were not in compliance with the Procedures Order. In response, the Williams Parties requested 30 days to provide additional documents. The Court further urged the Williams Parties to: a) obtain funds to pay the amount due to the Receivership; and b) figure out a resolution and further requested that the parties let the Court know if the matter is not resolved in 60 days to allow for the consideration of the consolidation of the Williams Receiver Action and Williams Action.

17. After the June 16 hearing, the Receiver provided the Williams Parties with an updated loan pay off demand.

18. On July 16, 2026, the Williams Parties made an additional production of documents regarding their uses of the funds received from the Receivership Entities. The Receiver has advised the Williams Parties that this production was also deficient and has demanded compliance.

19. The Receiver has done everything possible to keep legal fees and expenses to a minimum in this matter; however, if the Williams Parties do not produce additional documents and/or refinance the debt, the Receiver will seek relief through the Court. The Receiver intends to vigorously enforce the rights of the Receivership Entities in the pending litigation. Default interest is accruing and legal collection fees will be added to the amount due. Moreover, Dr. Williams testified at the June 16, 2026 hearing that he has sufficient financial wherewithal to pay the full amount due and owing. The Receiver anticipates significant additional activities on this matter if the loan is paid shortly.

### D. Claims Against Lisa Brown and the Haven Entities

20. As detailed in prior reports by the Receiver, Lisa Brown caused certain entities owned and controlled by Ms. Brown (collectively, the "**Haven Parties**"), including Haven Memory Care of Athens, LLC ("**HMCA**") and Haven Real Estate Holdings of Athens LLC ("**HREHA**") to enter certain loans secured by certain collateral and guarantees.

21. As further detailed in prior reports, one of the assets held by the Receivership is certain real property located at 169 W. Athens St., Winder, Georgia (the "**Winder Property**"). Although titled in the name of a Receivership Entity, an entity owned by Ms. Brown, Haven Real Estate Holdings of Winder, LLC

("**HREHW**") asserts an ownership interest in that property and filed a lis pendens with respect to the Winder Property (prior to the appointment of the Receiver).

22. On May 28, 2026, Lisa Brown and HREHW filed a motion [Doc. No. 92] (the "**Haven Motion**") on May 28, 2026, seeking to intervene in the Receivership and to seek certain relief with respect to the Winder Property. The Receiver filed an opposition to the Haven Motion and further asserted that the moving parties had failed to comply with the Procedures Order. The Receiver also filed two other pleadings with respect to this matter.

23. First, on June 11, 2026, the Receiver filed a motion [Doc. No. 95] (the "**Winder Sale Motion**") to employ an auctioneer to sell the Winder Property free and clear of all liens, claims, interests, and encumbrances. Essentially, the Receiver sought to sell this property pending the resolution of any disputes with the Haven Parties with the proceeds of the sale to be held in escrow pending resolution of the disputes between the Haven Parties.

24. Second, on that same date, the Receiver filed an Ancillary Complaint against Haven Memory Care of Snellville, LLC, HMCA, HREW, and HREHA to initiate Case No. 1:26-cv-03283-MLB (the "**Haven Collection Action**"). In this Complaint, the Receiver sought to recover certain outstanding loans which had been guaranteed by Ms. Brown.

25. The Court held a hearing on the Haven Motion and Winder Sale Motion on July 22, 2026. At such hearing, Brown and HREW offered to purchase to the Winder Property in conjunction with satisfying the loan related to HREW. If the issues related to the Winder Property and the loan related to HREW are not resolved by Friday, August 21, 2026, the Court will proceed to determine whether the Winder Property should be sold by the Receiver.

26. However, a sale of the Winder Property to Ms. Brown would still leave unresolved certain claims made in the Haven Collection Action including, in particular, a loan made by the Receivership Entities related to a health care facility in Athens, Georgia. In order to provide the Parties with time to determine whether these outstanding issues could be resolved, the Court also stayed the Haven Collection Action for thirty days. The Receiver's intent is to resolve these matters without additional significant attorney's fees if possible and the Receiver is awaiting confirmation from the Haven Parties as to the purchase of the Winder Property as well as a possible offer to resolve the Athens loan. In the event these issues cannot be resolved, the Receiver anticipates further litigation between the Receiver and the Haven Parties.

## III. STATUS OF CLAIMS PROCESS

27. **THE RECEIVER HAS NEARLY COMPLETED A CLAIMS PROCEDURE MOTION WHICH WILL BE FILED WITHIN THE NEXT WEEK. INVESTORS SHOULD BE RECEIVING A MAILING ON THIS SHORTLY AND ARE ENCOURAGED TO SUBSCRIBE TO THE RECEIVER WEBSITE TO ENSURE THEY RECEIVE NOTICES.**

28. As previously reported, the Georgia Secretary of State announced an agreement with Bankers life to repay certain claims of certain investors (the "**Bankers Life Claims**") who lost money in the collapse of the Receivership Entities. The Receiver will account for such restitution in the claims process to be administered in the Receivership. The payment to the Bankers Life Claims will benefit the remaining investors by reducing the total amount of claims that will ultimately exist in this Case.

## IV. STATUS OF LOAN COLLECTION EFFORTS

29. As further detailed in prior reports, the primary asset of the Receivership consists of approximately sixty (60) individual, defaulted loans. In some cases, individual borrowers hold several loans in their or affiliate names.

30. The primary activity of the Receiver will continue to be the enforcement and collection of these loans. The Receiver continues to anticipate that

the process of collecting these loans will be an expensive and protracted process which will take many months and will require litigation. The Receiver anticipates that many of the borrowers and guarantors will have not sufficient assets to pay back their loans to the Receivership.

31. All of the loan agreements reviewed to date by the Receiver provide for default interest, the collection of attorney's fees and litigation expenses and the Receiver will seek to recover those expenses to the fullest extent possible along with default interest. The Receiver cannot predict, at this point, the amounts which may be recovered on these loans.

32. As previously indicated by the Receiver, borrowers and guarantors who owe money to the Receivership Entities should continue to make required payments on their loans and otherwise comply with any other obligations to the Receivership Entities. Such parties should expect the Receiver to fully enforce and collect all loans to the fullest extent possible. All payments should be sent directly to the Receiver at Suite 555, 2964 Peachtree Road NW, Atlanta, Georgia 30305. Wire instructions are also available upon request. **The Receiver expects and demands strict compliance by the Borrowers and any guarantors with the terms of the documentation underlying their obligations.**

33. The Receiver has continued to focus efforts on larger loans that appear

to be collectible. There are a number of loans that the Receiver is still evaluating and for which he is collecting information. Certain loans have received far more attention than other loans for this reason and the Receiver will continue to manage his enforcement activities (and related expenses) based on likelihoods of recovery.

## A. Curepoint LLC (CP 1), Daniel Dooley, Philip Miles, Mark Miles, and Physician Financial Partners, LLC

34. As further detailed in the Third Quarterly Report, the Receiver reached a settlement with Liquidating Bankruptcy Trustee for Curepoint LLC ("**Curepoint**") that: a) has been approved by this Court and the Bankruptcy Court in the Curepoint Bankruptcy Case; and b) left a substantial deficiency after the settlement distribution of $205,358.97. The Receiver has now received all disbursements to which the Receivership Estate is entitled from the Bankruptcy Trustee and is investigating possible actions against guarantors for the remaining deficiency.

## B. 2406 Cancer Care LLC, Erich G. Randolph, and Philip Miles (CP 2)

35. As detailed in prior reports by the Receiver, Cancer Care entered certain loans secured by certain collateral and guarantees by Eric Randolph, Aaron Williams, and Philip Miles and tendered a payment to the Receiver on December 30, 2025, in the amount of $2,397,680.61 that Cancer Care alleges was in satisfaction of claims held by the Receivership Entities. The Receiver disputes that the payment resolves all issues. As of the fling of this Report, this dispute remains unresolved,

however, the Receiver anticipates taking steps to enforce remedies in this matter during this next quarter.

**C. Urohealth, LLC and Philip Miles**

36.     As detailed in prior reports by the Receiver, UroHealth, LLC ("**Uro**"), another entity owned or controlled by Philip Miles, entered loans secured by certain collateral and a guaranty by Philip Miles. The Receiver anticipates taking steps to enforce remedies in this matter during this next quarter.

**D. ZeroHolding, LLC, Mark Miles, and Philip Miles**

37.     As detailed in prior reports by the Receiver, ZeroHolding, LLC (the "**Zero**"), which is the debtor in Chapter 11 Case No. 22-56502-JWC pending in the United States Bankruptcy Court for the Northern District of Georgia, entered a loan that references guarantees by Mark Miles and Philip Miles. The Receiver continues to investigate this obligation.

**E. Lisa Brown and related Haven Entities**

38.     This matter is addressed above.

**F. Product Design Innovations LLC-Chisel Fit**

39.     As detailed in prior reports by the Receiver, Product Design Innovations LLC entered a loan secured by a second lien on an Ocala FL residence owned by Mr. and Ms. Ellis and adjoining commercial property owned by Margaret

Brown and a guaranty by Joseph K. Ellis. The Receiver is currently attempting to determine whether any recovery is possible on this loan.

**G. Dr. Jerry Williams, No Free, LLC and Riverdawg LLC**

40. These matters are detailed above.

**H. <u>Tie and Timber Technologies, LLC</u>**

41. As further detailed in prior reports, Tie and Timber Technologies, LLC ("**T3**") received a significant amount of proceeds from the Receivership Entities and agreed that such obligations would be repaid pursuant to the terms of the documents underlying the obligations of T3 to the Receivership Entities. Such obligations are secured by certain equipment and real property located at 301 S. Cyprus St., Mullins, SC (the "**T3 Collateral**"). On July 16, 2026, the Receiver filed a motion [Doc. No. 103] to employ an auctioneer to sell the T3 Collateral which was granted by the Court on July 28, 2026. The Receiver anticipates conducting an auction of the real and personal property located in Mullins, South Carolina during the next quarter and will file a report of such auction with the Court.

**I. David Pike and Full Circle LLC aka Normal Recovery**

42. As further detailed in prior reports, Full Circle LLC aka Normal Recovery ("**Full Circle**") incurred certain obligations secured by real property of Timeless Acquisitions LLC and Full Circle in Walton County, Georgia at the

intersection of George Pike Sr. Parkway and Bethany Church Road (the "**Walton Collateral**"), all property of Full Circle, and guarantees by David Pike, David Pike II and Christie Pike Nelson. The Receiver has finalized a settlement with these parties which will be submitted to the Court before August 5, 2026.

## J. FibRETech LLC and Rendell Schmidt

43. As further detailed in prior reports, FibRETech LLC ("**FibRETech**") entered a loans secured by certain property and a guaranty by Rendell Schmidt. The only piece of collateral remaining is a horizontal grinder in North Carolina. (the "**Grinder**"). Counsel retained by the Receiver in North Carolina assisted the Receiver in recovering the Grinder. On July 16, 2026, the Receiver filed a motion [Doc. No. 103] to employ an auctioneer to sell the Grinder in conjunction with the sale of the T3 Collateral. This Motion was granted by the Court on July 28, 2026. The Receiver anticipates auctioning off the Grinder during this upcoming quarter and will file a report of the auction with the Court.

## K. Christopher Ridgeway and Stone Capital Group LLC

44. As further detailed in prior reports, Stone Capital Group LLC ("**Stone**") entered loans secured by two personal residences of Christopher Ridgeway in Alys Beach, FL and Matarie LA, and all assets of Stone, a guaranty of Christopher Ridgeway and certain medical equipment A foreclosure was started on Alys Beach

FL home and the matter is now tied up in arbitration. The Receiver continues to investigate the Receivership Estate's options for a recovery here.

**L. Specialty Surgery Center Inc., Harvey Cole, Atlanta Oculoplastic Surgery, Scott Honan**

45. As further detailed in prior reports, Specialty Surgery Center Inc. (**"Specialty"**) entered loans that are secured by certain collateral and guarantees. A guarantor, Harvey Cole, has sought bankruptcy protection. The Receiver continues to investigate the Receivership Estate's options for a recovery here.

**M. Honan Preferred Equity and Scott C. Honan**

46. As further detailed in prior reports, entities owned by, controlled by, and/or related to Scott C. Honan, Honan Preferred Equity, L&S Regional One MOB I, LLC – Memphis, and Glenridge Point SPE LLC, a DE LLC (or Glenridge Lifehope SPE, a DE LLC), entered certain loans secured by certain collateral and guarantees. The Receiver is currently analyzing his enforcement options and is weighing the cost of further enforcement actions against the availability of recoverable assets.

**N. 11680 Royal Ridge SH, LLC and Scott C. Honan**

47. As further detailed in prior reports, 11680 Royal Ridge SH, LLC entered certain loans that are among the number of loans in which Mr. Honan is involved. The Receiver is currently analyzing his enforcement options and is

weighing the cost of further enforcement actions against the availability of recoverable assets.

**O. Conquest Commercial Funding, LLC**

48.     As further detailed in prior reports, Conquest Commercial Funding, LLC ("**Conquest**") entered a loan guaranteed by Jorge Martinez. Mr. Martinez sought bankruptcy protection in Florida. The Receiver has been in contact with the Bankruptcy Trustee appointed to liquidate Mr. Martinez's assets and, based on currently available information, it does not appear that there will be any assets available for distribution. However, the Bankruptcy Trustee continues to investigate this matter and the Receiver has filed a proof of claim in the bankruptcy case of Mr. Martinez. At present, the Receiver is uncertain about the collectability of this loan.

**P.  Ecofusion LLC, Ernest E. Jones, Jr. Joseph MA Coalla, and Ralph Reed**

49.     As further detailed in prior reports, Ecofusion LLC ("**Ecofusion**") entered a loan secured by all assets of the borrower and guarantees by Ernest E. Jones, Jr. Joseph Coalla, and possibly others. The Receiver is currently analyzing his enforcement options and continues to weigh the cost of further enforcement actions against the availability of recoverable assets.

**Q. 2304 GP LLC, Brandi Kirkland, and Bret Tomlinson**

50.     As further detailed in prior reports, 2304 GP LLC ("**Grand Prairie**")

entered loans secured by certain collateral and guarantees by Brandi Kirkland and Bret Tomlinson. This matter had been settled prior to the appointment of the Receiver pursuant to which First Liberty was to be paid $100,000 out of a sale of the collateral and to receive certain replacement collateral. This agreement was breached by Ms. Kirkland and no money or substitute collateral was paid. The Receiver has had discussions with Ms. Kirkland regarding a resolution of this matter which have not resulted in any resolution of this matter and the Receiver continues to weigh his options in this matter.

**R. DI Development LLC, Brent E. Myers and Timothy L. Miller**

51. As further detailed in prior reports, DI Development LLC entered a loan dated secured by real estate in Gainesville GA and Port St. Lucie FL and guarantees by Brent E. Myers and Timothy L. Miller. The Receiver continues to seek a resolution of this matter.

**S. Emergent Testing Labs, LLC dba Lux Diagnostics, Jonathan Goss, and Kraken Enterprises, LLC**

52. As further detailed in prior reports, Emergent Testing Labs, LLC dba Lux Diagnostics, ("**ETL**") and Kraken Enterprises, LLC ("**Kraken**"), entities owned by, controlled by, and/or related to Jonathan Goss, entered loans secured by certain collateral and guarantees by Jonathan Goss with the obligation of Kraken also being guaranteed by ETL. Mr. Goss has contacted the Receiver about resolving

this matter and the Receiver is hopeful that this matter can be resolved in the next quarter.

**T. Undocumented**

53. The Receiver continues to investigate whether additional loans exist or can be documented.

**U. My Health AI**

54. The Receiver continues to investigate the loans involving My Health AI that were detailed in prior reports of the Receiver.

**V. Other Assets**

55. As noted in prior reports, the Receiver has identified a number of contributions to political candidates. The Receivership Entities appears to have directly, indirectly or through the Frost family made almost 1,000 political "donations" totaling over $1 million using investor funds. There has been extensive media coverage of these campaign contributions since the appointment of the Receiver. With regard to such contributions, Secretary of State Brad Raffensperger has urged any political entity that accepted contributions from Receivership Entities, the Frost Family, or any of their affiliates to return those contributions to the Receiver so that victims may be made whole.

56. Over $300,000 in campaign or charitable contributions have already

been returned to the Receiver. Any politician wishing to return campaign contributions or other disbursement received from the Receivership Entities or Frost family should return them directly to the Receiver at Suite 555, 2964 Peachtree Road NW, Atlanta, Georgia 30305. The Receiver has deposited all such funds in a segregated account. When the Receiver has obtained sufficient information to report on these campaign contributions, the Receiver will file a report detailing the campaign contributions and the extent to which such contributions have been voluntarily returned.

57. The Receiver is also scrutinizing the improper use of investor funds used as charitable donations or campaign contributions and will seek the return of all such funds to the fullest extent permitted by applicable law.

58. The Receiver and the professionals of the Receiver also continue to examine assets that may be recovered from Frost and other parties, including, but not limited to assets: a) attributable to funds derived from investors or clients of the Receivership Entities or the Defendants; b) held in constructive trust for the Receivership Entities; and/or c) that may otherwise be includable as Recoverable Assets, as that term is defined in the Appointment Order.

59. The Receiver and his professionals will continue to analyze potential sources of recovery and gather evidence for purposes of developing and pursuing

claims the Receivership Estate may have to recover funds or other assets belonging to or improperly transferred from the Receivership Entities, including without limitation turnover and fraudulent transfer actions, as is appropriate and authorized by the Court. Further, the Receiver is investigating the potential claims of the Receivership Entities against professionals and institutions that may have facilitated the alleged misconduct of Defendants or otherwise contributed to the damages alleged to have been sustained by investors. The Receiver will complete the investigation of those claims, and after consultation with the SEC, pursue those claims that the Receiver believes are meritorious and likely to result in a significant recovery for the Receivership Estate.

## VI.     CASH ON HAND AND ACCRUED EXPENSES OF ESTATE

60.     As of June 30, 2026 (the end of the Reporting Period), the Receiver held a total of $4,234,812 in cash-on-hand in the fiduciary accounts for the Receivership Estate. The Standardized Fund Accounting Report for the Reporting Period, setting forth the receipts and disbursements of the Receivership Estate for the Reporting Period is attached as **Exhibit A.**

61.     During the Reporting Period, the Receivership Estate has incurred administrative expenses in the form of fees and costs of the Receiver and his Court-approved professionals, including Counsel, the Forensic Accountant, and Stretto, for

the work they performed or the costs they incurred in connection with fulfilling the duties of the Receiver under the Appointment Order. The Receivership has also incurred fees and expenses by professionals employed in the ordinary course of business.

62. The Receiver filed on July 16, 2026, a fourth application for approval of certain fees and expenses incurred from April 1, 2026, through June 30, 2026 [Doc. No. 104]. Such application was approved pursuant to an order [Doc. No. 109] that was entered on July 28, 2026. Incident thereto, the Receiver paid $55,640.45 to the Receiver, $91,693.70 to Counsel for the Receiver, $101,892.75 to the Forensic Accountant for the Receiver, and $12,869.03 to Stretto as the administrative and claims agent for the Receiver. The Receiver paid fees and expenses of professionals employed in the ordinary course of business in the total amount of $68,464.69 for the period between from April 1, 2026, through June 30, 2026.

## VII. CONCLUSION

63. The Receiver and the professionals of the Receiver appreciate the opportunity to assist the Court in this matter. Until further order of the Court, the Receiver and the professionals of the Receiver professionals will continue their efforts, as discussed herein, to fulfill the duties of the Receiver under the Appointment Order in the most cost-effective manner while seeking to maximize

the ultimate recovery by the Receivership Estate.

Respectfully submitted this 30th day of July, 2026.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Law Offices of Henry F. Sewell, Jr.
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com
Counsel for the Receiver

# <u>CERTIFICATE OF SERVICE, FONT AND MARGINS</u>

I hereby certify that I electronically filed the foregoing using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record.

I further certify that I prepared this document in 14-point Times New Roman font and complied with the margin and type requirements of this Court.

Dated: July 30, 2026.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Law Offices of Henry F. Sewell, Jr.
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com
Counsel for the Receiver

# Exhibit A

| FUND ACCOUNTING (See Instructions:) | | Detail (for Current Period) | Subtotal (From Prior Period) | Grand Total (All Periods) |
|---|---|---|---|---|
| **Line 1** | **Beginning Balance** | $4,495,642.02 | | $0.00 |
| | *Increases in Fund Balance:* | | | |
| **Line 2** | **Business Income** | $0.00 | $21,141.75 | $21,141.75 |
| **Line 3** | **Cash and Securities** | $0.00 | $1,182,424.66 | $1,182,424.66 |
| **Line 4** | **Interest/Dividends Income** | $13,016.32 | $59,179.77 | $72,196.09 |
| **Line 5** | **Business Asset Liquidation** | $0.00 | $3,201,845.57 | $3,201,845.57 |
| **Line 6** | **Personal Asset Liquidation** | $18,499.00 | $290,750.99 | $309,249.99 |
| **Line 7** | **Third-Party Litigation Income** | $0.00 | $0.00 | $0.00 |
| **Line 8** | **Miscellaneous - Other (Attorney Escrows & Donations)** | $99,298.89 | $581,186.75 | $680,485.64 |
| | *Total Funds Available (Lines 1-8)* | *$4,626,456.23* | | *$5,467,343.70* |
| | *Decreases in Fund Balance:* | | | |
| **Line 9** | **Disbursements to Investors** | $0.00 | $0.00 | $0.00 |
| **Line 10** | **Disbursements for Receivership Operations** | | | |
| *Line 10a* | *Disbursements to Receiver or Other Professionals* | $328,590.35 | $712,379.84 | $1,040,970.19 |
| *Line 10b* | *Business Asset Expenses* | $63,053.79 | $128,507.63 | $191,561.42 |
| *Line 10c* | *Personal Asset Expenses (Includes monthly budget for Defendant(s))* | $0.00 | $0.00 | $0.00 |
| *Line 10d* | *Investment Expenses* | $0.00 | $0.00 | $0.00 |
| *Line 10e* | *Third-Party Litigation Expenses* | | $0.00 | |
| | 1. Attorney Fees | $0.00 | $0.00 | $0.00 |
| | 2. Litigation Expenses | $0.00 | $0.00 | $0.00 |
| | *Total Third-Party Litigation Expenses* | *$0.00* | *$0.00* | *$0.00* |
| *Line 10f* | *Tax Administrator Fees and Bonds* | $0.00 | $0.00 | $0.00 |
| *Line 10g* | *Federal and State Tax Payments* | $0.00 | $0.00 | $0.00 |
| | **Total Disbursements for Receivership Operations** | **$391,644.14** | **$840,887.47** | **$1,232,531.61** |
| **Line 11** | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| *Line 11a* | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administration | $0.00 | $0.00 | $0.00 |
| | Independent Distribution Consultant (IDC) | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | *Total Plan Development Expenses* | *$0.00* | *$0.00* | *$0.00* |
| *Line 11b* | *Distribution Plan Implementation Expenses* | | | |
| | 1. Fees: | | | |
| | Fund Administration | $0.00 | $0.00 | $0.00 |
| | IDC | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Investor Identification | | | |
| | Notice/Publishing Approved Plan | $0.00 | $0.00 | $0.00 |
| | Claimant Identification | $0.00 | $0.00 | $0.00 |
| | Claims Processing | $0.00 | $0.00 | $0.00 |
| | Web Site Maintenance/Call Center | $0.00 | $0.00 | $0.00 |
| | 4. Fund Administrator Bond | $0.00 | $0.00 | $0.00 |
| | 5. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | $0.00 | $0.00 | $0.00 |
| | *Total Plan Implementation Expenses* | *$0.00* | *$0.00* | *$0.00* |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | | |

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| **Line 12** | **Disbursements to Court/Other:** | | | |
| *Line 12a* | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | $0.00 | $0.00 | $0.00 |
| *Line 12b* | *Federal Tax Payments* | $0.00 | $0.00 | $0.00 |
| | **Total Disbursement to Court/Other:** | $0.00 | $0.00 | $0.00 |
| | **Total Funds Disbursed (Line 9-11):** | $391,644.14 | $840,887.47 | $1,232,531.61 |
| **Line 13** | **Ending Balance (As of 06/30/2026):** | $4,234,812.09 | | $4,234,812.09 |
| **Line 14** | **Ending Balance of Fund - Net Assets:** | | | |
| *Line 14a* | *Cash & Cash Equivalents* | $4,234,812.09 | $0.00 | $4,234,812.09 |
| *Line 14b* | *Investments* | $0.00 | $0.00 | $0.00 |
| *Line 14c* | *Other Assets or Uncleared Funds (Frozen Accounts)* | $0.00 | $0.00 | $0.00 |
| | **Total Ending Balance of Fund - Net Assets** | $4,234,812.09 | $0.00 | $4,234,812.09 |

**OTHER SUPPLEMENTAL INFORMATION:**

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | **Report of Items NOT To Be Paid by the Fund:** | | | |
| **Line 15** | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| *Line 15a* | *Plan Development Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | $0.00 | $0.00 | $0.00 |
| | Fund Administrator | $0.00 | $0.00 | $0.00 |
| | IDC | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | *Total Plan Development Expenses Not Paid by the Fund* | *$0.00* | *$0.00* | *$0.00* |
| *Line 15b* | *Plan Implementation Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | $0.00 | $0.00 | $0.00 |
| | IDC | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan | $0.00 | $0.00 | $0.00 |
| | Claimant Identification | $0.00 | $0.00 | $0.00 |
| | Claims Processing | $0.00 | $0.00 | $0.00 |
| | Web Site Maintenance/Call Center | $0.00 | $0.00 | $0.00 |
| | 4. Fund Administrator Bond | $0.00 | $0.00 | $0.00 |
| | 5. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | 6. FAIR Reporting Expenses | $0.00 | $0.00 | $0.00 |
| | Total Plan Implementation Expenses Not Paid by the Fund | $0.00 | $0.00 | $0.00 |
| *Line 15c* | *Tax Administrator Fees & Bonds Not Paid by the Fund* | $0.00 | $0.00 | $0.00 |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | |
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund:** | | | |
| *Line 16a* | *Investment Expenses/CRIS Fees* | $0.00 | $0.00 | $0.00 |
| *Line 16b* | *Federal Tax Payments* | $0.00 | $0.00 | $0.00 |
| | **Total disbursements to Court/Other Not Paid by Fund:** | | | |
| **Line 17** | **DC & State Tax Payments** | $0.00 | $0.00 | $0.00 |
| **Line 18** | **No. of Claims:** | | | |
| *Line 18a* | # of Claims Received This Reporting Period | | | 0 |
| *Line 18b* | # of Claims Received Since Inception of Fund | | | 0 |
| **Line 19** | **No. of Claimants/Investors:** | | | |
| *Line 19a* | # of Claimants/Investors Paid This Reporting Period | | | 0 |
| *Line 19b* | # of claimants/Investors Paid Since Inception of Fund | | | 0 |

Receiver:

By: */s/ S. Gregory Hays*
   (signature)

S. Gregory Hays
(printed name)
Receiver
(title)

Date: July 9, 2026