**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| **SECURITIES AND EXCHANGE** | : | |
| **COMMISSION,** | : | |
| Plaintiff, | : | **Civil Action File No.** |
| | : | **1:25-cv-3826-MLB** |
| v. | : | |
| **EDWIN BRANT FROST IV and** | : | |
| **FIRST LIBERTY BUILDING & LOAN, LLC,** | : | |
| Defendants, and | : | |
| **FIRST LIBERTY CAPITAL PARTNERS** | : | |
| **LLC, et. al.,** | : | |
| Relief Defendants. | : | |

**MOTION TO APPROVE CLAIMS PROCESS AND BRIEF IN SUPPORT**
**THEREOF**

S. Gregory Hays, not individually, but as Court-Appointed Receiver

("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc.

No. 6] ("**Appointment Order**") that was entered in the above-captioned case (the

"**Case**" or "**Receivership**"), by and through counsel, hereby files this *Motion to*

*Approve Claims Process and Brief in Support Thereof* (the "**Motion**"), and states as

follows:

## I.     INTRODUCTION

Since his appointment on July 11, 2025, the Receiver has administered the

assets subject to the Receivership (the "**Estate**") and recovered funds from various

sources, including the bank accounts of First Liberty Building & Loan, LLC, First

Liberty Capital Partners LLC, First National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC (collectively, the "**Receivership Entities**"), the liquidation of assets purchased with investor funds, third parties who received property and funds from the Receivership Entities, and loans to third parties. The Receiver has liquidated some of the assets of or due to the Receivership Entities and continues to market for sale certain other assets in addition to seeking to recover amounts due. After payment of the expenses to maintain and preserve the assets remaining in the Receivership and court-approved administrative expenses, the Estate holds $3,969,183.21 in cash on hand as of the date of July 31, 2026.

In light of the amount of funds presently in the Estate and the dire financial condition of many investors, the Receiver believes that commencement of the proposed claims administration process (the "**Claims Process**") is appropriate at this time. The Receiver proposes to conduct one Claims Process for all investors and creditors of the Estate and to make distributions to investors and other creditors with allowed claims based on the determinations made in that Claims Process. After the claims process phase of the receivership has been concluded, the Receiver will propose to the Court a plan of distribution to disburse available funds in the Estate to investors and other creditors who are determined to have allowed claims. The fund

from which the disbursement will be made to investors and creditors, net of Court-approved fees and costs and other administrative expenses, shall be referred to as the "First Liberty Recovery Fund." A proposed Order granting this Motion and approving the Claim Process is attached as Exhibit "A".

## II.    BACKGROUND

### A.    INJUNCTION, STAY, AND APPOINTMENT OF RECEIVER

On July 11, 2025, Securities and Exchange Commission (the "**SEC**") filed a complaint (the "**Complaint**") against Defendants Edwin Brant Frost IV ("**Frost**") and First Liberty Building & Loan, LLC (together, "**Defendants**") and Relief Defendants First Liberty Capital Partners LLC, First National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC (collectively, the "**Relief Defendants**"). In the Complaint, the SEC alleges that Frost engaged in investment fraud through one or more of the Receivership Entities to the detriment of potentially hundreds of investors and other parties and further alleges that the Receivership Entities raised funds through the publicly advertised offerings and either misappropriated such funds or used such funds to pay existing investors in conjunction with making short-term bridge loans. *See* Doc. No. 1.

The SEC also filed *Plaintiff's Emergency Motion for Asset Freeze and Other Equitable Relief* seeking an asset freeze, the appointment of a receiver over the

Receivership Entities, and a preliminary injunction to prevent the dissipation of assets and the continued defrauding of investors [Doc. No. 2] (the "**Freeze Motion**").

On July 11, 2025, the Court entered the Appointment Order to appoint the Receiver. The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets of the Receivership Entities. *See* Appointment Order, at p. 1. Based on the record in the Case, the Court determined that the appointment of a receiver in this action was necessary and appropriate for the purposes of marshaling and preserving all assets of the Receivership Entities and the assets of Defendant Frost that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; and/or (c) may otherwise be includable as assets of the estates of the Defendants (collectively, the "**Recoverable Assets**"). *See* Appointment Order, p. 1.

On May 19, 2026, the Court entered an Order Granting Motion by Receiver to Expand Receivership [Doc. No. 89] (the "**Expansion Order**") incident to which the Receivership was expanded to include the following ten (10) entities as Receivership Entities (as that term is defined in the Appointment Order) in this case, *to wit*: (i) Legacy Family Partners LLC; (ii) MyHealth AI LLC; (iii) First Liberty Capital, LLC; (iv) FLC Holdings LLC; (v) Family Financial Partners LLC ("**FFP**");

(vi) Liberty Healthcare Technology LLC; (vii) First Liberty Leasing Stone SPE; (viii) SBA Loan Services LLC; (ix) First Liberty Leasing LLC; and (x) an unincorporated entity named First Liberty Capital Funding together with a bank account held in that entity's name at Truist Bank (collectively, the "**Additional Parties**"). The Additional Parties are incorporated in the term "Receivership Entities" for purposes of the Claims Process. After the entry of the Expansion Order, FFP filed a motion [Doc. No. 90] to intervene and set aside the Expansion Order as to its inclusion in the Motion to Expand.

On May 28, 2026, the Court entered on order [Doc. No. 93] setting aside the Expansion Order only as it pertains to FFP and establishing a briefing schedule to address whether FFP is to be included in the Receivership. Although the Court has not made a final determination as to whether to include FFP in the Receivership, the Receiver will solicit claims against this entity in order to run an efficient claims process. The Receiver will report and account to the Court and to FFP for all FFP claims whether or not FFP is included in the Receivership.

The Appointment Order provides that the District Court takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated of the Receivership Entities, including the Defendant in this case. *See* Appointment Order, p. 2. The Appointment Order further defines "**Receivership Property**" as all

"property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind." *See* Appointment Order ¶ 6(A).

The Appointment Order includes essential provisions to empower the Receiver to analyze and investigate assets, administer assets for the benefit of the Receivership and harmed investors and creditors, and develop a fair and reasonable liquidation plan for all investors. Incident thereto, the Receiver is tasked with securing assets all property interests of the Receivership Entities, managing the estate, and liquidating assets of the Receivership Estate. *Id*. ¶¶ 4-7.

To provide the Receiver with the ability to fulfill the duties of the Receiver without being hindered or obstructed by litigation against property of the Receivership, in addition to freezing the Receivership Property, the District Court entered an injunction against interference with the Receiver (the "**Injunction**") and stay (the "**Stay**") of all civil legal proceedings involving any Receivership Property or the Receivership Entities until further order of the District Court. *See* Appointment Order ¶¶ 32-34. The Injunction protects against action that would "[d]issipate or otherwise diminish the value of any Receivership Property." See Appointment Order ¶ 32(C). Furthermore, the Stay under Section VII of the

6

Appointment Order stays all litigation matters other than the litigation subject to the Receivership and clearly provides that no further actions should be taken against any assets or entities subject to the Appointment Order until further order of the District Court.

As the Receiver was charged with marshalling certain assets derived from investors or clients of one or more of the Receivership Entities and with liquidating such assets for the benefit of the defrauded investors, for the ultimate purposes of distributing funds to those investors, it is necessary and appropriate for the Receiver to identify those investors, confirm the amounts they invested with any of the Receivership Entities and lost, and eventually return funds to the investors based on the amounts of their losses. To do so, the Receiver first needed to gather information and information and documents from bank records and the records of the Receivership Entities' reflecting their investments and losses, which the Receiver has done with the assistance of professionals engaged in the Receivership, as reported in the Receiver's quarterly Status Reports. Then, the Receiver and the professionals engaged in the Receivership worked on formulating a claims process through which investor losses could be confirmed. Because the Appointment Order does not expressly authorize the Receiver to administer a claims process, the Receiver seeks the Court's approval and authority to administer the Claims Process

7

proposed herein.

### C.       KNOWN INVESTORS AND CREDITORS

Based on the Receiver's review of the bank records of the Receivership Entities, records of the Receivership Entities, and a bank reconstruction prepared by the Receiver's forensic accountant, the Receiver is aware of approximately 200 investors who transferred more than $155,000,000 to the Receivership Entities. The Receiver and his forensic accountant have substantially completed the forensic reconstruction of accounts of the Receivership Entities, which reflect payments back to investors of approximately $89,000,000 and investor losses of at least $66,000,000.

The Receiver has attempted to confirm each investor's identity and contact information through a data collection portal to all known investors. The Receiver has reviewed the Receivership Entities' records along with the bank reconstruction prepared by his forensic accountant and calculated a loss amount for each investor who has suffered a loss as a result of their investment with one or more of the Receivership Entities.

The Receiver is aware that the Receivership Entities have non-investor creditors. Based on the information currently available to the Receiver, these creditors consist primarily of professionals who were not paid for services just prior

to the appointment of the Receiver or borrowers attempting to assert counterclaims against loan claims made by the Receiver. To the extent that the Receiver has been unable to calculate the exact amounts owed to certain creditor, the Receiver and/or professionals engaged in the Receivership will send those trade creditors a blank claim form to complete and require that they returned the completed claim form with supporting documentation. The Receiver will address issues regarding the payment of these claims and the priority of these claims vis a vis investor claims when he files his Plan of Distribution.

## IV.    PROPOSED NOTICING AND CLAIMS PROCESS

### A. The Notice and Claim Form

To commence the proposed Claims Process, the Receiver has conducted an exhaustive review of his records to identify all investors and creditors in this matter. The Receiver proposes to send notice of the proposed Claims Process to all potential claimants without regard to whether the Receiver believes such claimants actually have claims. *See* proposed Legal Notice of Claims Process ("**Notice**"), attached as **Exhibit B**. Moreover, the Receiver proposes also send a Proof of Claim Form ("**Claim Form**") to: 1) investors in substantially the form attached as **Exhibit C** hereto ("**Investor Claim Form**"); and 2) creditors in substantially the form attached as **Exhibit D** attached hereto ("**Creditor Claim Form**").

9

With respect to the Investor Claim Form, to the extent the Receiver is able to reconcile the claim of the investor, a detailed transaction report will be included with the Investor Claim Form which will also calculate the allowed amount of the Claim. If the Investor agrees with the transaction report and calculation of claim amount the claim form includes options for the investor to either accept the determination of their loss as calculated by the Receiver or to dispute the Receiver's calculation and submit the investor's determination of their claim. Second, if the Receiver is not able to calculate the investor's claim or believes that such Investor does not have any claim, the amount of the claim will be left blank in the Investor Claim Form requiring the investor to calculate their claim and submit supporting documentation. The Receiver believes that the vast majority of Investors will receive a claim form containing a calculation of the Allowed Amount of the Claim and that only a small number of investors will receive a blank Claim Form.

The Receiver will deliver by mail to all known investors and creditors the Notice (Exhibit B) and Claim Form (Exhibit C or Exhibit (D) (collectively, the **"Claims Package"**).

All investors and creditors with claims in the Receivership are required to timely submit the Claim Form, together with documentation supporting the stated claim amount. Submissions must be made to the Receiver by mail to First Liberty

10

Claims, c/o Hays Financial Consulting, LLC, 2964 Peachtree Rd. NW, Suite 555, Atlanta, GA 30305. Upon receipt of a claim, the Receiver will confirm receipt of such claim to each claimant via first class mail and email (if available). The deadline by which Claim Forms must be received by the Receiver shall be sixty (60) days from the date of the Order approving this motion. The Receiver will calculate and insert the exact Claims Bar Date (as defined below) into Exhibits B and D upon entry of an Order approving this Motion.

**B. Calculating the Allowed Claim Amount**

If the Receiver can calculate the claim of the investor, the Receiver will pre-fill the Claim Form with each investor claimant's net loss amount (the "**Allowed Claim Amount**"), as calculated by the Receiver using the bank account records and company records of the Receivership Entities, the forensic reconstruction of bank accounts of the Receivership Entities prepared by the Receiver's forensic accountant The Receiver will calculate the Allowed Claim Amount by subtracting the total amount of transfers (regardless of how those transfers were categorized by the Receivership Entities) that an investor or creditor received from one or more of the Receivership Entities from the total amount of transfers that such investor made to one or more of the Receivership Entities (*i.e.*, a simple money-in, money-out

11

calculation).[1] The Receiver proposes that an investor's allowed claim amount be equal to the investor's net loss. If the Claims Process proposed herein is approved by the Court, each known investor will receive notice of the Claims Process and a pre-filled claim form stating the Receiver's determination of the investor's Allowed Claim Amount with a breakdown of that investor's deposits to and withdrawals from one or more of the Receivership Entities. Investors will have the opportunity to confirm and/or dispute each deposit and withdrawal and the resulting net loss (allowed claim) amount, as calculated by the Receiver, and, if disputed, submit a claim against the Estate for a different amount with supporting documentation. The Receiver will carefully consider such claims and supporting documentation in making a determination regarding the amount of each investor's Allowed Claim Amount.

If the Receiver is not able to calculate the claim of the investor using the bank account records and company records of the Receivership Entities, the Claim Form will not include the investor claimant's net loss amount and investor will be required to submit supporting documentation with the Claim Form. For purposes of the Claim

---

[1] This net loss calculation is only for purposes of setting the Allowed Claim Amount. For purposes of making distributions to claimants, the Receiver will, subject to further Court approval, employ the "rising tide" method, taking into account each claimant's recovery of funds from so that most claimants recover the same percentage of their investments. *See* Section VI, *infra*.

Form, the Receiver's calculation of a claimant's Allowed Claim Amount will not include any interest, profit, or fees promised, but not paid, to an investor or creditor. Further, the Claim Form will calculate a claimant's net loss on a consolidated basis as appropriate to serve equitable ends, so that if a claimant has multiple or related accounts, including personal accounts held individually or jointly with a spouse, individual retirement accounts, trust accounts, and/or sole-owned limited liability company accounts, the Allowed Claim Amount will be the total deposits in all accounts minus the total withdrawals from all accounts. The Receiver will require claimants to report any amounts recovered from third parties so that those amounts may be deducted from the Allowed Claim Amount. At any point in the Claims Process or during implementation of the plan of distribution, an Allowed Claim Amount may be increased or decreased if the Receiver discovers additional information, deposits, withdrawals, or recovery of losses from a third party. The investor or creditor will be promptly notified of any change in Allowed Claim Amount and given an opportunity to dispute that change.

**Nothing herein shall limit or prohibit any investor from asserting any claim to which such creditor believes he or she is entitled for review and consideration by the Receiver and the Court. The Receiver will make every effort possible to resolve all claims without Court intervention and will further**

13

**seek to treat all similarly situated investors the same in calculating and determining their claims.**

### C. Requirements for Completing the Claim Form

The proposed Claim Form will solicit confirmation of: (a) details regarding the claimant's identity and contact information, including an email address; (b) details regarding the amount, timing, and transfer of the claimant's investment into one or more of the Receivership Entities or details regarding the debt(s) of one or more of the Receivership Entities to the claimant, and the amount and timing of any goods or services from the claimant to one or more of the Receivership Entities; (c) details regarding the amount, timing, and transfer of funds received by the claimant from one or more of the Receivership Entities and/or its affiliates; (d) the claimant's Allowed Claim Amount; and (e) how the claimant learned about or discovered First Liberty. *See* Exhibits C-D. As explained above, claimants will also be required to report any recovery from third parties, and they will have a continuing obligation to report any such recovery to the Receiver. In addition, claimants will need to provide supporting documentation. Further, the Claim Form will require the claimant to, *inter alia*, certify the accuracy of the information provided and certify that each of the three factors of an Allowed Claim (set forth in Section V(A) below) are satisfied.

The Claim Form will also require that claimants provide their payment details to streamline the distribution process.

### V.   RECEIVER'S CLAIMS DETERMINATIONS

**A. Requirements for an Allowed Claim**

The claim form shall require that each Claimant make the following representations to the Receiver:

(i)    that such claimant invested funds with, and/or provided goods or services or a loan *directly* to, one or more of the Receivership Entities;

(ii)    that the total amount that such claimant transferred, or the value of the goods or services the claimant provided, to one or more of the Receivership Entities, exceeds the total amount that one or more of the Receivership Entities or its affiliates transferred back or paid to such claimant; and

(iii)    that such claimant (a) was not a member, owner, officer, director, or other insider of one or more of the Receivership Entities, (b) was not a member, owner, officer, director, or other insider of any entity owned in full or in part by one or more of the Receivership Entities, and (c) did not knowingly assist one or more of the Receivership Entities or Defendant Frost to effectuate, perpetuate, or promote any investment

scheme(s) of one or more of the Receivership Entities or have knowledge of the fraudulent nature of such scheme at the time of the investment, loan, or other transaction underlying the claim.[2]

If an investor or creditor cannot prove all three of the foregoing factors to the Receiver's satisfaction, that claimant's claim may be disallowed, subject to notice and an opportunity for a hearing, and such investor or creditor may receive no distribution.

Claimants who accept the Receiver's Allowed Claim Amount as stated on the pre-filled Claim Form will only need to complete the certification to have an allowed claim.

Creditors will need to complete the Claim Form because their form will not be pre-filled and will need to provide supporting documents evidencing the value of the goods and services provided to one or more of the Receivership Entities and the unpaid nature of their invoices or purported debt of one or more of the Receivership Entities.

---

[2] Upon receipt of a Claim Form from agent-investors who suffered a net loss, the Receiver will review the relationship between that agent and any of the Receivership Entities and determine whether the agent can properly certify that he/she is not an insider of any of the Receivership Entities as stated in this subsection (ii). To the extent the Receiver determines that an agent can properly certify the statements in subsection (ii), that agent will be treated as a non-agent investor in this Claims Process.

### B. Disputing the Allowed Claim Amount

Claimants who dispute the Allowed Claim Amount stated in the pre-filled claim form must follow the objection process as set forth herein. The Receiver will review each disputed claim and supporting documentation and make a final determination (the "**Final Determination**") as to the amount, if any, to be allowed for each claim. To the extent the Receiver decides to reject a claim in whole or in part, the Receiver will send the claimant a letter via first class mail or email, if available, setting forth the Receiver's Final Determination and identifying: (i) the reasons the Receiver has rejected or not accepted the full amount of the claim; and (ii) the classification of the claim. The letter to claimants will also state the deadline to appeal the Receiver's Final Determination.

### C. Appealing Receiver's Final Determination of Allowed Claim Amount

A claimant may appeal the Receiver's Final Determination to the Court for final adjudication. The Receiver will file with the Court a response to any such appeal. In its discretion, the Court would conduct a hearing, if deemed necessary, to consider any objection to the Receiver's Final Determination before entering an order establishing the appropriate Allowed Claim Amount. Upon completion of the claims determination phase, the Receiver will file a motion submitting all Final Determinations of Allowed Claim Amounts to the Court and seek approval of a

17

distribution plan and the proposed distributions to all claimants holding an Allowed Claim.

### D.    Proposed Sequence and Timing of Claims Process

The Receiver proposes that the Claims Process proceed in accordance with the following schedule:

a. Claims Process Approval: The date upon which this Court grants this motion and approves the Receiver's proposed Claims Process shall be referred to herein as the "**Approval Date**";

b. Receiver's Sending Out Claims Packages: The Receiver would send the Claims Package to known investors and creditors of one or more of the Receivership Entities U.S. mail within ten (10) days after the Approval Date;

c. Claims Bar Date: Investors and creditors would then have until sixty (60) days from the Approval Date (the "**Claims Bar Date**") to return the completed Proof of Claim to the Receiver indicating agreement with the Allowed Claim Amount or disputing the Allowed Claim Amount. The Receiver will calculate this date and insert it into the Notice and Claims Forms attached as Exhibits B – D hereto. Any completed Proof of Claim not submitted by trackable physical mail delivery postmarked by the

Claims Bar Date would be barred, and claims submitted after the Claims Bar Date will not be allowed except for good cause shown, to be determined in the Receiver's sole discretion;

d. Receiver's Final Determination of Allowed Claims: The Receiver will have until thirty (30) days after the Claims Bar Date ("**Receiver's Final Determination Date**") to approve or reject, in whole or in part, all disputed claims received. In the event the Receiver decides to reject any disputed claim, in whole or in part, the Receiver would apprise the claimant of the rejection of the claim, the basis for that rejection, and the process for appealing such rejection to this Court.

e. Claimant's Appeal of Receiver's Final Determination: Any claimant whose claim was partially or wholly rejected by the Receiver may appeal the Receiver's Final Determination to the Court by filing with the Court a written appeal of the Receiver's Final Determination, which must be filed with this Court by mailing such appeal to the Clerk of Court for the United States District Court for the Northern District of Georgia and postmarked within twenty (20) days after the Receiver's Final Determination Date (the "**Appeal Deadline**"), and which must state the basis of the claim, provide

19

supporting documentation, and set forth the claimant's response to the Receiver's Final Determination.

f.  Receiver's Response to Appeals: The Receiver's Response to all appeals filed with this Court shall be due within thirty (30) days after the Appeal Deadline. Following this deadline, the Court may make a final determination or may set the matter for hearing. A final determination by the Court is final for all purposes. There shall be no further appeal of such determination or proceedings.

g.  Receiver's Motion to Approve Plan of Distribution and Proposed Distribution Amounts: The Receiver shall file his motion to approve a plan of distribution and proposed distribution amounts to claimants with Allowed Claims, apprising the Court of the Allowed Claims and the rejected claims, the proposed plan of distribution, the proposed methodology for calculating the initial distributions, and the proposed distribution amounts, by no later than thirty (30) days after final adjudication of all appeals to Final Determinations filed with the Court.

The foregoing schedule is reflected in the following summary timetable:

| Day 0 | Order Approving Claims Process |
|---|---|
| Day 10 | Receiver to send out Claims Packages |
| Day 60 | Claims Bar Date |

| Day 90 | Receiver's Final Determination Date |
| Day 110 | Deadline to Appeal Final Determinations to the Court |
| Day 140 | Receiver's Deadline to File Responses to Appeals |
| TBD | Deadline to File Motion to Approve Plan of Distribution and Initial Distribution Amounts |

## VI. <u>PLAN OF DISTRIBUTION</u>

Within thirty (30) days after the Court's final adjudication of all appeals of the Receiver's Final Determinations, the Receiver will file a motion seeking this Court's approval of a plan of distribution that employs the rising tide method to provide the most equitable outcome for investors and creditors of one or more of the Receivership Entities.[3] This Motion will be served upon all creditors and investors who filed Proofs of Claim and will be subject to review and approval by the Court. The proposed rising tide method will take into account each claimant's pre-receivership recovery of funds from one or more of the Receivership Entities. In particular, pre-receivership withdrawals and payments to a claimant will be considered part of the distribution received by a claimant and subtracted from the amount of receivership funds to which a claimant would have been entitled had there been no pre-receivership withdrawals or payments. For this reason, the Receiver

---

[3] The Receiver reserves the right to continue to investigate and consider the fairest method of distributions in this Case and reserves the right to modify or use a different method)s) of distribution.

designed the Claims Process to allow investors to confirm the pre-receivership transfers they received from one or more of the Receivership Entities.

The rising tide, which aims to ensure that no investor will recover a greater percentage of their investment than any other investor, appears to be the most equitable distribution method in cases, such as this one, in which numerous claimants received significant payments from the defendant prior to the commencement of the receivership. Courts in this District have approved the rising tide distribution method "as it provides a more equal level of recovery for all Investors, taking into account returns realized prior to the Receivership. Case law also supports the selection of the rising tide theory. 'Rising tide appears to be the method most commonly used (and judicially approved) for apportioning receivership assets.'" *Sec. & Exch. Comm'n v. Torchia*, No. 1:15-CV-3904-WSD, 2018 WL 11357226, at *4 (N.D. Ga. Aug. 24, 2018) (citation omitted). Moreover, a receiver has the discretion to implement a rising tide method of distribution, which provides for *pro rata* distributions based on net losses to those claimants who suffered the greatest losses and then, only after those claimants' losses are brought to the level of those who suffered the less significant losses, subsequent *pro rata* distributions based on net losses to all investors on that level, and so on until all receivership assets are distributed or all claimants are paid in full. *See S.E.C. v.*

*Huber*, 702 F.3d 903, 904 (7th Cir. 2012) (approving the use of the rising tide method to allocate compensation and losses).

Moreover, in the motion to be filed by the Receiver to approve a plan of distribution, the Receiver reserves the right to propose an initial distribution of a portion of available funds to claimants with Allowed Claims (in accordance with the rising tide method), with the remaining sum to be held by the Receiver as the Receiver continues to marshal and liquidate assets of the Estate with additional amounts in the First Liberty Recovery Fund to be disbursed through a future interim or final distribution to claimants holding Allowed Claims. The Receiver will file supplemental motion(s) for approval of the subsequent distributions following the recovery of significant additional amounts from the liquidation of assets and/or the Estate's claims against third parties, insiders, and affiliates of one or more of the Receivership Entities.

## VII. <u>ARGUMENT AND CITATION TO AUTHORITY</u>

The Receiver believes that the foregoing proposed Claims Process employing the money-in-money-out method of calculating each claimant's net loss will provide a fair, equitable, and efficient method for determining each claimant's Allowed Claim Amount.

Generally, the District Court has broad powers and wide discretion to grant relief in an equity receivership, including in approval and implementation of a claims process and plan of distribution. *See SEC v. Infinity Group Co.*, 226 Fed. Appx. 217, 218 (3d Cir. 2007) (noting that "District Courts have wide equitable discretion in fashioning distribution plans in receivership proceedings") (citations omitted).

District Courts have approved the use of the net investment method, which is the same as net loss, of determining allowed claim amounts proposed by the Receiver herein. "Courts have employed this net investment methodology in receiverships both at the claims-calculation stage and as part of proposed plans of distribution." *Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, No. 20-CV-81205-RAR, 2024 WL 3816613, at *13 (S.D. Fla. June 26, 2024) (holding that application of the net investment methodology is fair, reasonable, and appropriate for calculating the claims of investors in receivership and approving the Receiver's proposed net investment methodology) (citation omitted); *see also S.E.C. v. v. Illarramendi*, No. 3:11CV78 JBA, 2013 WL 6385036, at *1 (D. Conn. Dec. 6, 2013) (approving use of "net investment method" at claims administration stage, through which the Received calculated "a claimant's net investment on a consolidated basis, so that if a claimant has multiple accounts, any fictitious profits withdrawn from one account will be subtracted from the claimant's Allowed Amount in another

24

account"). Accordingly, the Receiver submits that this Court should exercise its discretion to approve the proposed Claims Process as detailed herein.

## IX. <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court enter an order similar in form to the proposed order attached as **Exhibit A**: (1) approving the proposed Claims Process; (2) authorizing the Receiver to send a Claims Package (comprising the Notice and Claim Form) to all known, potential claimants; and (3) granting such other relief as this Court deems just and appropriate.

Respectfully submitted this 6th day of August, 2026.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

<u>*/s/ Henry F. Sewell, Jr.*</u>
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com; Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
*Counsel for Receiver*

## **CERTIFICATE OF SERVICE, FONT AND MARGINS**

I hereby certify that I electronically filed the foregoing motion using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record, and I served the motion on Defendant Edwin Brant Frost IV via e-mail.

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com; Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
*Counsel for Receiver*

# EXHIBIT A

# PROPOSED ORDER

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : | |
| Plaintiff, | : : | **Civil Action File No.** |
| | : | **1:25-cv-3826-MLB** |
| v. | : | |
| EDWIN BRANT FROST IV and | : | |
| FIRST LIBERTY BUILDING & LOAN, LLC, | : | |
| Defendants, and | : | |
| FIRST LIBERTY CAPITAL PARTNERS | : | |
| LLC, et. al., | : | |
| Relief Defendants. | : | |

**ORDER APPROVING CLAIMS PROCESS**

THIS MATTER came before the Court on the *Motion to Approve Claims Process and Brief in Support Thereof* (the "**Motion**").[1] With the Court having considered the Motion and the court file in the above-captioned case, noting that no objections have been filed to the relief requested therein, and being otherwise duly advised in the premises, the Court finds there is good cause to grant the Motion.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.    The Motion is granted in its entirety. The form of Legal Notice of Claims Process (the "**Notice**") attached as Exhibit B to the Motion is approved. The

---

[1] All capitalized terms used herein shall have the meanings ascribed to them in the Motion.

Proof of Claim (the "**Claim Form**") forms attached as Exhibit C and Exhibit D to the Motion are approved. The Receiver is authorized to implement the claims process as set forth in the Motion and below (the "**Claims Process**"):

## 2.    NOTICE OF CLAIMS PROCESS

The Receiver shall notify each known potential claimant of the Claims Process, the Claims Bar Date (as defined below), and their right to submit a Claim Form as provided herein by sending the Notice in a form substantially similar to Exhibit B to the Motion. The Notice shall be sent by first class United States mail to the last known address of all known potential claimants, by no later than ten (10) days after the date of this Order. The Receiver will also post the Notice, a copy of this Order, and any other information the Receiver deems appropriate on the receivership website.

## 3.    FILING OF CLAIMS

**3.1    Allowed Claim:** The claim of an investor or creditor will be allowed (an "**Allowed Claim**"), such that the claimant will be *entitled* to receive a distribution from the First Liberty Recovery Fund (as defined in the Motion) based on that claimant's loss of principal investment, the value of the goods or services rendered, or the amount owed to claimant, provided that the claimant sufficiently

29

demonstrates to the satisfaction of the Receiver through documentation and/or sworn statements, among other things:

(iv)    that such claimant invested funds with, and/or provided goods or services or a loan *directly* to First Liberty;

(v)    that the total amount that such claimant transferred, or the value of the goods or services the claimant provided, to First Liberty, exceeds the total amount that First Liberty or its affiliates transferred back or paid to such claimant;

AND

(vi)    that such claimant (a) was not a member, owner, officer, director, or other insider of First Liberty, (b) was not a member, owner, officer, director, or other insider of any entity owned in full or in part by First Liberty, and (c) did not knowingly assist First Liberty or Defendant Frost to effectuate, perpetuate, or promote any of First Liberty's investment scheme(s) or have knowledge of the fraudulent nature of such scheme at the time of the investment, loan, or other transaction underlying the claim.[2]

---

[2] Upon receipt of a Claim Form from agent-investors who suffered a net loss, the Receiver is hereby authorized to review the relationship between each agent-investor and any of the Receivership Entities and determine whether the agent-investor can

The Receiver may consider other factors in determining whether a claim is an Allowed Claim.[3] If an investor or creditor cannot prove all three of the foregoing factors to the Receiver's satisfaction, the Receiver may disallow such Claims, and such investor or creditor will receive no distribution.

**3.2    Allowed Claim Amount:** To the extent such information is available, the Receiver will pre-fill the Claim Form with each investor claimant's net loss amount (the "**Allowed Claim Amount**"), as calculated by the Receiver using First Liberty's bank account records, the forensic reconstruction of First Liberty's bank accounts prepared by the Receiver's forensic accountant, and the documents provided by investors. The Receiver will calculate the Allowed Claim Amount by subtracting the total amount of transfers (regardless of how those transfers were categorized by First Liberty) that an investor or creditor received from First Liberty from the total amount of transfers that such investor made to First Liberty (*i.e.*, a

---

properly certify that he/she is not an insider of any of the Receivership Entities as stated in this subsection (ii). To the extent the Receiver determines that an agent-investor can properly certify the statements in subsection (ii), that agent-investor shall be treated like a non-agent investor in this Claims Process.

[3] Notwithstanding these factors for determining whether a claim should be allowed, the Receiver is hereby authorized to analyze each claim and the circumstances surrounding each investor's investment in or transfers to any of the Receivership Entities, and relationship with, any of the Receivership Entities and/or Defendant Frost and the corporate entities owned by any of the Receivership Entities and/or Defendant Frost and object to and seek to disallow any claim based on any information or circumstances.

simple money-in, money-out calculation). An investor's allowed claim amount will be equal to the investor's net loss. Each known investor will receive notice of the Claims Process and a claim form stating, to the extent such information is available, the Receiver's determination of the investor's Allowed Claim Amount with a breakdown of that investor's deposits to and withdrawals from First Liberty. Investors will have the opportunity to confirm and/or dispute each deposit and withdrawal and the resulting net loss (allowed claim) amount, as calculated by the Receiver, and, if disputed, submit a claim against the Estate for a different amount with supporting documentation. The Receiver will consider such claims and supporting documentation in making a determination regarding the amount of each investor's Allowed Claim Amount.

In the event the Receiver is unable to calculate the amount of the Allowed Claim, such Investor shall be required to complete the claim form and provide supporting documentation for such Investor's claim.

The calculation of a claimant's Allowed Claim Amount will not include any interest, profit, or fees promised, but not paid, to an investor or creditor and will be calculated on a consolidated basis as appropriate to serve equitable ends, so that if a claimant has multiple accounts, including personal accounts held individually or jointly with a spouse, individual retirement accounts, trust accounts, and/or sole-

owned limited liability company accounts, the Allowed Claim Amount will be the total deposits in all accounts minus the total withdrawals from all accounts. Claimants are required to report any amounts recovered from third parties related to First Liberty so that those amounts may be deducted from the Allowed Claim Amount. At any point in the Claims Process or during implementation of the plan of distribution, an Allowed Claim Amount may be increased or decreased if the Receiver discovers additional information, deposits, withdrawals, or recovery of losses from a third party. The investor or creditor will be promptly notified of any change in Allowed Claim Amount and given an opportunity to dispute that change.

**3.3** **Filing Claims**: Any claimant asserting a claim against any of the Receivership Entities regardless of whether that claim has been acknowledged by the Receiver shall submit a Claim Form to the Receiver on or before sixty (60) days after the date of this Order (the "**Claims Bar Date**").

**3.4** **Place to File Claims**: All Claim Forms shall be completed and submitted to the Receiver by mail to First Liberty Claims, c/o Hays Financial Consulting, LLC, 2964 Peachtree Rd. NW, Suite 555, Atlanta, GA 30305. Upon receipt of a claim, the Receiver will confirm receipt of such claim. The Receiver will mail each investor claimant a pre-filled Claim Form containing the claimant's identifying information and the proposed Allowed Claim Amount. Claimants will

33

have the option to dispute or reject the Allowed Claim Amount stated on the Claim Form. Any completed Proof of Claim not submitted by trackable physical mail delivery postmarked by the Claims Bar Date shall be barred, and claims submitted after the Claims Bar Date will not be allowed except for good cause shown, to be determined in the Receiver's sole discretion.

**3.5    Prohibition Against Filing Claims with Court**: No Claim Form shall be filed with the Court, and any such Claim Form so filed shall not be considered properly filed as required under this Order.

**3.6    Disputing the Receiver's Determination of Allowed Claim Amount**: Claimants who dispute the Allowed Claim Amount stated in the pre-filled Claim Form must complete a blank Claim Form and provide documentation supporting their purported Allowed Claim Amount. That supporting documentation should be comprised of bank account statements, brokerage account statement, Individual Retirement Account statements, wire transfer receipts, and/or cancelled checks evidencing transfers to and withdrawals and/or distributions from First Liberty. The Receiver will not rely on any documents prepared by First Liberty or Defendant Frost in calculating a claimant's Allowed Claim Amount.

**3.7    Creditor Claims**: Creditors will need to complete the Claim Form because their Claim Forms will not be pre-filled and must provide supporting

documents evidencing the value of the goods and services provided to First Liberty and the unpaid nature of their invoices or First Liberty's purported debt to the creditor.

**3.8** **Processing of Claims**: The Receiver will conduct a preliminary review of the Claim Forms, determine whether the claimant is accepting or disputing the Allowed Claim Amount stated on the Claim Form and whether disputed claims lack supporting documents, and request such documents from claimants. The Receiver will further determine the Allowed Claim Amount as evidenced by supporting documentation for all disputed claim amounts.

## 4.    THE CLAIMS DETERMINATIONS

**4.1** **Receiver's Final Determinations of Claims**: The Receiver will make a final determination (the "**Final Determination**") as to the amount, if any, to be allowed for each claim. To the extent the Receiver decides to reject a claim in whole or in part, the Receiver will provide claimant with the Receiver's Final Determination and identify: (i) the reason(s) the Receiver has rejected or not accepted the full amount of the claim; and (ii) the classification of the claim. The Receiver will also provide the deadline to appeal the Receiver's Final Determination to this Court.

**4.5    Court's Final Adjudication of Claims**: A claimant with a partially or wholly disallowed claim may appeal the Receiver's Final Determination to this Court for final adjudication by no later than 20 days after the Receiver sends the Final Determination to the claimant. The Receiver will file with the Court a response to any such appeal by no later than 30 days after the appeal is filed with the Court. The Court shall have sole jurisdiction and serve as the exclusive venue to consider the appeal of any claimant who objects to any part of the Receiver's Final Determination. This Court's determination on a claimant's appeal is final for all purposes.

**4.6    Proposed Distribution Plan**: Upon completion of the Claims Process, by no later than 30 days after the Court enters an Order regarding all pending appeals of the Receiver's Final Determinations, the Receiver shall submit to the Court for approval all Final Determinations of Allowed Claims and a proposed distribution plan providing the amount of the proposed initial distribution to each claimant holding an Allowed Claim.

**4.7    Claims Process Schedule:** The Claims Process schedule is reflected in the following summary timetable:

| Day 0 | Order Approving Claims Process |
|-------|-------------------------------|
| Day 10 | Receiver to send out Claims Packages |
| Day 60 | Claims Bar Date |
| Day 90 | Receiver's Final Determination Date |

36

| Day 110 | Deadline to Appeal Final Determinations to the Court |
|---------|------------------------------------------------------|
| Day 140 | Receiver's Deadline to File Responses to Appeals |
| TBD | Deadline to File Motion to Approve Plan of Distribution and Initial Distribution Amounts |

**4.8    Modification of the Claims Process:** The Receiver is authorized to modify, without further order of this Court, the Claims Process and the approved forms as necessary to complete the objectives of such process consistent with this Order.

**SO ORDERED**, this _____ day of _____, 2026.

_____
HON. MICHAEL L. BROWN
UNITED STATES DISTRICT COURT JUDGE

Copies to:    All Counsel of Record

Prepared and Presented by:

LAW OFFICES OF HENRY F. SEWELL JR., LLC
*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com
*Counsel for the Receiver*

# Exhibit B

This page will be printed to go in a windowed envelope for mailing.

First Liberty Claims
c/o Hays Financial Consulting LLC
2964 Peachtree Rd NE, Ste 555
Atlanta, GA 30305

<<Claimant name>>
<Address1>>
<Address1>>
<<City>><<State>><<Zip>>

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | **Civil Action File No.** |
| | : | **1:25-cv-3826-MLB** |
| v. | : | |
| | : | |
| EDWIN BRANT FROST IV and | : | |
| FIRST LIBERTY BUILDING & LOAN, LLC, | : | |
| | : | |
| Defendants, and | : | |
| | : | |
| FIRST LIBERTY CAPITAL PARTNERS | : | |
| LLC, et. al., | : | |
| | : | |
| Relief Defendants. | : | |

**LEGAL NOTICE
OF CLAIMS PROCESS**

**IF YOU TRANSFERRED FUNDS TO FIRST LIBERTY AND/OR PROVIDED GOODS OR SERVICES OR A LOAN TO FIRST LIBERTY, YOU MAY BE ENTITLED TO RECEIVE A PAYMENT FROM FUNDS RECOVERED IN THE SEC ENFORCEMENT ACTION.**

**NOTICE OF BAR DATE AND INSTRUCTIONS**

**DEADLINE FOR ALL INVESTORS AND CREDITORS TO SUBMIT CLAIMS TO THE RECEIVER: [INSERT], 2026.**

If you don't submit your claim by **[INSERT], 2026, you will waive your claims against the First Liberty Receivership Estate.**

**How to Submit a Claim:**

1. Enclosed with this Notice is a Proof of Claim Form which contains a

transaction ledger.

2. Carefully read the instructions on the Proof of Claim Form, fill out the Form and mail the completed, signed Claim Form and Supporting Documentation, if required, to the Receiver's office as follows:

> First Liberty Claims
> c/o Hays Financial Consulting LLC
> 2964 Peachtree Rd NE, Ste 555
> Atlanta, GA 30305

3. Contact the Receiver's office with any questions at FirstLibertyInquiries@stretto.com or by calling 404-926-0060.

## **BACKGROUND INFORMATION**

**What Happened in the SEC Enforcement Action?** The Case commenced on July 11, 2025, with the filing of a complaint (the "Complaint") by the Securities and Exchange Commission (the "SEC") against Defendants Edwin Brant Frost IV and First Liberty Building & Loan, LLC (together, "Defendants") and Relief Defendants First Liberty Capital Partners LLC, First National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC (collectively, the "Relief Defendants"). In the Complaint, the SEC alleges that Frost engaged in investment fraud through First Liberty and associated entities to the detriment of potentially hundreds of investors and other parties.

Also on July 11, 2025, the Court entered the Appointment Order appointing S. Gregory Hays as the Receiver.

The Receivership was later expanded and now includes the following entities: First Liberty Building & Loan, LLC; First Liberty Capital Partners LLC; First National Investments LLC; MyHealthAI Capital LLC; The Legacy Advisory Group Inc.; The Liberty Group LLC; Legacy Family Partners LLC; MyHealth AI LLC; First Liberty Capital, LLC; FLC Holdings LLC; Liberty Healthcare Technology LLC; First Liberty Leasing Stone SPE; SBA Loan Services LLC; First Liberty Leasing LLC; and (x) an unincorporated entity named First Liberty Capital Funding (the "**Receivership Entities**" or "**First Liberty**"). The Court subsequently excluded Family Financial Partners LLC, subject to further proceedings, from the expansion, but it is included herein solely to determine whether any claims exist against it.

As part of his duties, the Receiver seeks to pay restitution to investors defrauded by First Liberty and to creditors of First Liberty. To determine allowed claims, the Receiver is mailing Proof of Claim Forms to harmed parties.

**Court Order.** On August 6, 2026, the Receiver filed a *Motion to Establish a Claims Process.* The District Court entered an *Order Approving Claims Process* granting this Motion on _____. These documents are being forwarded to you in connection with the Claims Process established and approved by the District Court in this Order. A copy of the Motion and of the Order is posted on the Receiver's website or can be requested from the Receiver.

**What Do I Have to Do?** To have an allowed claim, you have to fill out and submit the Proof of Claim Form enclosed herewith. When you fill out the Proof of Claim Form, you have to promise under oath that these three things are true:

1. You transferred funds, or you provided goods or services or a loan, to First Liberty;

2. The total amount that you transferred to First Liberty exceeds the total amount that was returned to you, such that you suffered a net loss, OR you are owed money for goods or services, or for a loan, that you provided to First Liberty;

   AND

3. You are not a member, owner, officer, director, or other insider of First Liberty, (b) were not a member, owner, officer, director, or other insider of any entity owned in full or in part by First Liberty, and (c) did not knowingly assist First Liberty or Defendant Frost to effectuate, perpetuate, or promote any of First Liberty's investment scheme(s) or have knowledge of the fraudulent nature of such scheme at the time of the investment, loan, or other transaction related to your claim.

If you do not meet ALL THREE of these requirements, DO NOT submit a Proof of Claim Form.

**How Do I Submit the Proof of Claim Form?**

1. Enclosed is a Proof of Claim Form along with a ledger listing all known transactions between you and First Liberty.

2. Your Proof of Claim Form consolidates all your First Liberty accounts/investments on one form. The Proof of Claim Form lists the total amount paid to and received from Frist Liberty by you as identified by the Receiver using bank and company records. Your claim does not include any interest, profit, or fees promised, but not paid, to you.

3. If you ACCEPT the claim amount as shown on the Proof of Claim and detailed on the Proof of Claim form attached hereto, you only need to review the Certification and sign the Proof of Claim Form to submit it. **You do not need to send any supporting documentation**.

4. If you REJECT the Allowed Claim Amount calculated by the Receiver, then you need to mark the Proof of Claim Form indicating you do not agree with the Receiver's determination (1) complete Exhibit B (Transaction Ledger) itemizing all money sent to and received from First Liberty, (2) attach supporting documentation for all listed transactions, (3) review the Certification, (4) sign the Proof of Claim Form, and (5) then mail the completed Proof of Claim Form and Supporting Documentation to:

   First Liberty Claims
   c/o Hays Financial Consulting LLC
   2964 Peachtree Rd NE, Ste 555
   Atlanta, GA 30305

5. For assistance with the claims process you may contact the Receiver's office at FirstLibertyInquiries@stretto.com or by calling 404-926-0060.

### What is the Deadline to Submit the Proof of Claim Form?

**THE LAST DAY TO FILE A PROOF OF CLAIM IS [INSERT]. PLEASE NOTE THAT THE PROOF OF CLAIM FORM MUST BE SUBMITTED ONLINE OR MAILED SO THAT IT IS POSTMARKED ON OR BEFORE [INSERT] IN ORDER FOR THE PROOF OF CLAIM TO BE CONSIDERED TIMELY.**

Any investor or creditor who does not submit a properly completed Proof of Claim Form, as provided above, on or before [INSERT] shall be forever barred from participation in the distribution of funds held by the Receiver,

unless otherwise ordered by the Court presiding over the SEC enforcement action.

The final approval or disapproval of claims, the determination of priority of claims for distribution, and any distribution will be made by the Court presiding over the SEC enforcement action. By completing a Proof of Claim Form, claimants submit to the jurisdiction of that Court and agree that it is the appropriate venue for final adjudication of all claims against the First Liberty Receivership Estate.

# Exhibit C

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE** | : | |
| **COMMISSION,** | : | |
| Plaintiff, | : | **Civil Action File No.** |
| | : | **1:25-cv-3826-MLB** |
| v. | : | |
| **EDWIN BRANT FROST IV and** | : | |
| **FIRST LIBERTY BUILDING & LOAN, LLC,** | : | |
| Defendants, and | : | |
| **FIRST LIBERTY CAPITAL PARTNERS** | : | |
| **LLC, et. al.,** | : | |
| Relief Defendants. | : | |

## PROOF OF CLAIM FORM

## DEADLINE TO SUBMIT A CLAIM IS [INSERT]

In order to receive a distribution as an eligible claimant in this legal action, you must complete and submit this Proof of Claim. The final approval or disapproval of claims, the determination of priority of claims for distribution, and any distribution amount will be determined by the Court.

By submitting a Proof of Claim, you submit to the jurisdiction of the Court and agree that it is the appropriate venue for final adjudication of your claim against First Liberty Building & Loan, LLC; First Liberty Capital Partners LLC; First National Investments LLC; MyHealthAI Capital LLC; The Legacy Advisory Group Inc.; The Liberty Group LLC; Legacy Family Partners LLC; MyHealth AI LLC; First Liberty Capital, LLC; FLC Holdings LLC; Family Financial Partners LLC; Liberty Healthcare Technology LLC; First Liberty Leasing Stone SPE; SBA Loan Services LLC; First Liberty Leasing LLC; and an unincorporated entity named First Liberty Capital Funding (collectively "**First Liberty**").

**Please mark the statement below to attest that you are an eligible claimant:**

[_____] I hereby swear under oath that:

(i) I transferred funds to First Liberty, OR I provided goods or services or loaned money to First Liberty;

<<Claimant name>>                                                      <<Claimant ID#>>

AND

(ii)    the total amount that I transferred to First Liberty exceeds the total amount that was returned to me, such that I suffered a net loss, OR I am owed money for goods or services, or for a loan, that I provided to First Liberty or I have other claims against First Liberty

AND

(iii)    I am not a member, owner, officer, director, or other insider of First Liberty, (b) was not a member, owner, officer, director, or other insider of any entity owned in full or in part by First Liberty, and (c) did not knowingly assist First Liberty or Defendant Edwin Brant Frost to effectuate, perpetuate, or promote any of First Liberty's investment scheme(s) or have knowledge of the fraudulent nature of such scheme at the time of the investment, loan, or other transaction related to my claim.

**If you cannot attest above that you are an eligible claimant, DO NOT submit a Proof of Claim.**

## A. Identification

**Receiver assigned ID:** <<Claimant ID#>>

                                        Please provide updates below

| Account Name | <<Claimant name>> | |
|---|---|---|
| Address 1 | <<Address1>> | |
| Address 2 | <<Address2>> | |
| Address 3 | <<City>><<State>><<Zip>> | |
| Email | <<Email>> | |
| Phone | <Phone>> | |
| Social Security No /FEIN: | _____ Claim not valid w/o SSN# or Federal ID number for Business) | |

## B. Transactions

Through the reconstruction of First Liberty's bank records, emails, IRS forms 1099, investment ledgers and other sources, the Receiver has prepared the attached report of

<<Claimant name>>    <<Claim amount #>>

transactions between you and First Liberty (Exhibit A) which is summarized below.

For Claimants who have received or will receive payments from Bankers Life, the payments are not reflected in the below totals. If have or you later receive fund from Bankers Life, your claim may be adjusted.

| | |
|---|---|
| Payments made to First Liberty | $<<Total to FL>> |
| Payments received from First Liberty | $<<Total from FL>> |

Please closely review the ledger and select one of the below boxes.

If the Ledger herein is blank, you must provide a claim amount to the Receiver and provide supporting documents.

Please check one of the following boxes:

[____] I AGREE with your Receiver's report of transactions as reported on Exhibit A.

[____] I DO NOT AGREE with the Receiver's report of transactions and am submitting a claim in the amount of _____ supported by a completed Exhibit B of transactions with First Liberty along with supporting documents identifying all transactions.

[____] IN THE EVENT THE LEDGER IS BLANK. I am submitting a claim in the amount of _____ supported by a completed Exhibit B of transactions with First Liberty along with supporting documents identifying all transactions.

Please fill in the chart below the total amounts from your completed Exhibit B.

Totals from Exhibit B

| | |
|---|---|
| Payments made to First Liberty | $ |
| Payments received from First Liberty | $ |

**CERTIFICATION**

POC Page 3

The undersigned certifies under penalty of perjury under the laws of the United States of America that the information contained in this Proof of Claim, including any attachment(s), is correct and that the undersigned is authorized to make this claim. **Each Claimant listed in this Claim Form must sign below.**

_____        _____

Signature                                Date


_____

Printed Name


_____

Title, if any, of Claimant(s) or other person authorized to file this claim (attach copy of power of attorney, if any)


_____

Mailing Address (if different than above)

Email  Address:  _____

Phone Number:  _____

<<Claim stream #>>

Exhibit A listing all transactions between investor and First Liberty will be printed separately and inserted here

Case 1:25-cv-03826-MLB    Document 117    Filed 08/06/26    Page 50 of 57

Exhibit A

# Exhibit B

## Transaction Ledger To Be Filled in by Investor

| Sending/Receiving Name | Transaction Date | Paid to First Liberty | Received from First Liberty |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

[Print extra copies of this form if necessary]    Exhibit B                    Page _____ of _____

**Reminder Checklist:**

1. Please sign above under penalty of perjury.

2. Remember to attach documentation supporting your claim.

3. Please explain if you are not able to attach supporting documentation.

4. DO NOT MAIL ORIGINAL DOCUMENTS.

5. Keep a copy of your submitted claim form and all supporting documentation for your records.

6. If your contact information changes, please send the Receiver updated information.

7. Mail the claim form to:

    First Liberty Claims
    c/o Hays Financial Consulting LLC
    2964 Peachtree Rd NE, Ste 555
    Atlanta, GA 30305

# Exhibit D

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : | |
| Plaintiff, | : : | **Civil Action File No.** |
| | : | **1:25-cv-3826-MLB** |
| v. | : | |
| EDWIN BRANT FROST IV and | : | |
| FIRST LIBERTY BUILDING & LOAN, LLC, | : | |
| Defendants, and | : | |
| FIRST LIBERTY CAPITAL PARTNERS | : | |
| LLC, et. al., | : | |
| Relief Defendants. | : | |

## PROOF OF CLAIM FORM
## TRADE CREDITOR

## DEADLINE TO SUBMIT A CLAIM IS [INSERT]

In order to receive a distribution as an eligible claimant in this legal action, you must complete and submit this Proof of Claim. The final approval or disapproval of claims, the determination of priority of claims for distribution, and any distribution amount will be determined by the Court.

By submitting a Proof of Claim, you submit to the jurisdiction of the Court and agree that it is the appropriate venue for final adjudication of your claim against First Liberty Building & Loan, LLC; First Liberty Capital Partners LLC; First National Investments LLC; MyHealthAI Capital LLC; The Legacy Advisory Group Inc.; The Liberty Group LLC; Legacy Family Partners LLC; MyHealth AI LLC; First Liberty Capital, LLC; FLC Holdings LLC; Family Financial Partners LLC; Liberty Healthcare Technology LLC; First Liberty Leasing Stone SPE; SBA Loan Services LLC; First Liberty Leasing LLC; and an unincorporated entity named First Liberty Capital Funding (collectively "**First Liberty**").

**Please mark the statement below to attest that you are an eligible claimant:**

[_____] I hereby swear under oath that:

(i)     I transferred funds to First Liberty, OR I provided goods or services or loaned money to First Liberty;

AND

(ii)    the total amount that I transferred to First Liberty exceeds the total amount that was returned to me, such that I suffered a net loss, OR I am owed money for goods or services, or for a loan, that I provided to First Liberty or I have other claims against First Liberty

AND

(iii)   I am not a member, owner, officer, director, or other insider of First Liberty, (b) was not a member, owner, officer, director, or other insider of any entity owned in full or in part by First Liberty, and (c) did not knowingly assist First Liberty or Defendant Edwin Brant Frost to effectuate, perpetuate, or promote any of First Liberty's investment scheme(s) or have knowledge of the fraudulent nature of such scheme at the time of the investment, loan, or other transaction related to my claim.

**If you cannot attest above that you are an eligible claimant, DO NOT submit a Proof of Claim.**

**A.     Identification:**

| | |
|---|---|
| Creditor Name | |
| Mailing Address | |
| Email | |
| Phone | |
| Social Security No /FEIN: | _____<br>Claim not valid w/o SSN# or Federal ID number for Business) |

**B.      Claim:**

Please check next to the below entity which owed you

| | |
|---|---|
| | First Liberty Building & Loan, LLC |
| | First Liberty Capital Partners LLC |
| | First National Investments LLC |
| | MyHealthAI Capital LLC |
| | The Legacy Advisory Group Inc. |
| | The Liberty Group LLC |
| | Legacy Family Partners LLC |
| | MyHealth AI LLC |
| | First Liberty Capital, LLC |
| | FLC Holdings LLC |
| | Family Financial Partners LLC |
| | Liberty Healthcare Technology LLC |
| | First Liberty Leasing Stone SPE |
| | SBA Loan Services LLC |
| | First Liberty Leasing LLC |
| | First Liberty Capital Funding |

Amount of Claim $ _____

Nature of Claim

_____

_____

_____

_____

Please attached documents supporting your claim.

3

## CERTIFICATION

The undersigned certifies under penalty of perjury under the laws of the United States of America that the information contained in this Proof of Claim, including any attachment(s), is correct and that the undersigned is authorized to make this claim.

**Each Claimant listed in this Claim Form must sign below.**

Signature   _____

Title        _____

Date         _____

Mail the claim form to:

First Liberty Claims
c/o Hays Financial Consulting LLC
2964 Peachtree Rd NE, Ste 555
Atlanta, GA 30305

4