**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | **Civil Action File No. 1:25-cv-3826-MLB** |
| **Plaintiff,** | : | |
| **v.** | : | |
| **EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC,** | : | |
| **Defendants, and** | : | |
| **FIRST LIBERTY CAPITAL PARTNERS LLC, et. al.,** | : | |
| **Relief Defendants.** | : | |

**MOTION FOR AN ORDER APPROVING FULL CIRCLE SETTLEMENT**

S. Gregory Hays, not individually, but as Court-Appointed Receiver ("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in the above-captioned case (the "**Receivership**"), by and through counsel, hereby files this *Motion for an Order Approving Full Circle Settlement* (the "**Motion**") in which the Receiver seeks approval of a settlement resolving the obligations to the Receivership of Full Circle LLC ("**Full Circle**" or "**Borrower**"), Timeless Acquisitions, LLC, ("**Timeless**"), David Pike, David Pike II ("**DPII**"), and Christie Pike Nelson ("**CPN**" and collectively with DP and DPII, the "**Guarantors**" with each individually a "**Guarantor**"). In support of the Motion, the Receiver respectfully shows the Court as follows:

## PROCEDURAL BACKGROUND

1. After the United States Securities and Exchange Commission (the "**SEC**") filed a complaint (the "**Complaint**") on July 11, 2025, against Defendants Edwin Brant Frost IV ("**Frost**") and First Liberty Building & Loan, LLC (together, "**Defendants**") and the Relief Defendants (as defined in the Appointment Order), the District Court entered the Appointment Order to appoint the Receiver for the purposes of marshaling and preserving all assets of the Receivership Entities and the assets of Defendant Frost that: a) are attributable to funds derived from investors or clients of the Defendants; b) are held in constructive trust for the Defendants; and/or c) may otherwise be includable as assets of the estates of the Defendants.

2. The Appointment Order includes essential provisions to empower the Receiver to analyze and investigate assets, administer assets for the benefit of the Receivership and harmed investors and creditors, and develop a fair and reasonable liquidation plan for all investors.

3. The Appointment Order provides that the District Court takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated of the Receivership Entities, including the Defendant in this case. *See* Appointment Order, p. 2. The Appointment Order further defines "Receivership Property" as all "property interests of the Receivership Entities, including, but not limited to, monies,

funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind." *See* Appointment Order ¶ 6(A). Obligations due to the Receivership Entities are Receivership Property.[1]

## OBLIGATIONS SUBJECT TO SETTLEMENT

4. Since being appointed, the Receiver has endeavored to marshal and preserve the assets of the Receivership Entities. Incident thereto, the Receiver investigated the loans made by the Receivership Entities, including transfers to or for the benefit of Full Circle.

5. Full Circle entered into a certain Promissory Note (the "**Note**") dated February 10, 2023, incident to a loan (the "**Loan**") in the principal amount of

[1] To provide the Receiver with the ability to fulfill the duties of the Receiver without being hindered or obstructed by litigation against property of the Receivership, in addition to freezing the Receivership Property, the District Court entered an injunction against interference with the Receiver (the "**Injunction**") and stay (the "**Stay**") of all civil legal proceedings involving any Receivership Property or the Receivership Entities until further order of the District Court. *See* Appointment Order ¶¶ 32-34. The Injunction protects against action that would "[d]issipate or otherwise diminish the value of any Receivership Property." *See* Appointment Order ¶ 32(C). Furthermore, the Stay under Section VII of the Appointment Order stays all litigation matters other than the litigation subject to the Receivership and clearly provides that no further actions should be taken against any assets or entities subject to the Appointment Order until further order of the District Court.

$2,750,000.00 that was funded by First Liberty Capital Partners, LLC ("**First Liberty**" or "**Lender**").

6. Incident to the Loan, each of the Guarantors guaranteed the repayment of the Loan and each entered into a Guaranty Agreement (collectively, the "**Guarantees**") dated January 26, 2023, as security for the Loan.

7. Pursuant to their respective Guarantees, CPN, DP, and DPII absolutely and unconditionally guaranteed the full payment to Lender of all Obligations (as defined in each of the Guarantees), including, without limitation, any indebtedness, liability, obligation to Lender in connection with the Loan.

8. The Loan was also secured by certain real property in Walton County, Georgia of: a) Full Circle pursuant to a certain Deed to Secure Debt; Assignment of Rents and Security Agreement dated February 10, 2023, and filed February 16, 2023, in Deed Book 5270, Pages 14-24 in the Walton County, Georgia real property records; and b) Timeless pursuant to a certain Deed to Secure Debt; Assignment of Rents and Security Agreement dated February 10, 2023, and filed February 16, 2023, in Deed Book 5270, Page 25-38 in the Walton County, Georgia real property records (collectively, the "**Pre-Receivership Collateral**").

9. Full Circle and Timeless are owned and controlled by one or more of the Guarantors.

10. Full Circle is in default under the Note and CPN, DP, and DPII are in default under the Guarantees.

11. The obligations due under the Loan are now past due and the Note and Guarantees are in default.

12. The Receiver has the right to collect on behalf of the Lender pursuant to the Appointment Order.

13. After the Receiver investigated the amount due incident to the Loan, Note, and Guarantees, on or about December 5, 2025 the Receiver issued a payoff and notice of default regarding the Loan indicating that the balance due as of December 4, 2025, was $2,110,774.29 with interest and attorney's fees continuing to accrue (the "**Estate Claims**").

## SETTLEMENT

14. After significant arms-length negotiations, the Parties desire to settle (the "**Settlement**"), upon the terms set forth in the Settlement Agreement as **Exhibit "A"** hereto (the "**Agreement**"), any and all disputes, claims, issues and controversies arising from the Loan and the Estate Claims. The Agreement is contingent upon and shall not be enforceable against the Receiver until the entry of a final and non-appealable order approving the Agreement. *See* Agreement ¶ 1.

15. Pursuant to the Settlement, Full Circle, Timeless, CPN, DP, and DPII (collectively, the "**Full Circle Parties**") shall pay the Receiver the sum of One Million, Three Hundred Thousand ($1,300,000.00) (the "**Settlement Payment**") and further agree that they are jointly and severally liable for the Settlement Payment. *See* Agreement ¶ 2.

16. Pursuant to paragraph 2 of the Agreement, the Settlement Payment shall be paid as follows: a) the amount of One Million, One Hundred Thousand Dollars ($1,100,000.00) shall be paid to the Receiver at the closing (the "**Initial Payment**"); and b) the amount of Two Hundred Thousand Dollars ($200,000.00) shall be paid to the Receiver as follows: i) $20,000 within 30 days of the Effective Date (the "**30 Day Payment**"); and ii) $180,000 within six months of the Effective Date (the "**6 Month Payment**" and collectively with the 30 Day Payment, the "**Installment Payments**"). The Installment Payments shall be secured by: a) a Secured Promissory Note and Pledge (the "**Secured Note**") incident to which Timeless Acquisitions, LLC (the "**Pledgor**") shall execute and deliver to Holder (as defined in the Secured Note) a Deed to Secure Debt, Assignment of Rents and Security Agreement (the "**Security Deed**") conveying to Holder a lien upon certain real property comprised of two contiguous tracts, commonly known as 2230 Harry Arnold Road, Monroe, GA 30655 (Tax Parcel C1640107) and 2272 Bethany Church Road, Monroe, GA

30655 (Tax Parcel C1640108) to be recorded in the real property records of Walton County, Georgia; and b) the Guarantees being modified by the Modified Guaranty Agreements to include the guaranty the payment of the Installment Payments.

17. At the closing of the Settlement, the Receiver shall execute and deliver a cancellation of the Pre-Receivership Collateral pursuant to paragraph 10 of the Settlement Agreement.

18. Under the Agreement, the receipt of the Settlement Payment by the Receiver will constitute full and final settlement of the liability under the Loan. *See* Agreement, ¶ 3.

19. Any conflict between the Agreement and the averments of this Motion are intended to be construed as provided in the Agreement attached hereto.

**REQUESTED RELIEF AND BASIS FOR SUCH RELIEF**

20. "The district court has broad powers and wide discretion to determine relief in an equity receivership." *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted).

21. Pursuant to this Motion, the Receiver seeks: a) the approval of the Settlement; and b) authority to enter into the Settlement.

22. The Receiver believes, in an exercise of the good faith business judgment of the Receiver, that the Settlement is in the best interests of the

Receivership and its creditors under the circumstances and that it should be approved by this Court.

23. The evaluation of any lawsuit or claim can be quite problematic and calls for a certain degree of speculation. Here, there has been an adequate and intelligent consideration of the merits of the claims, the difficulties of pursuing them, the potential harm or benefit to the Receivership caused by delay, and the fairness of the terms of the Settlement. The Receiver submits that the probability of success in litigation regarding the Estate Claims is uncertain. The complexity of the litigation and the expense, inconvenience, and delay involved in litigating the Estate Claims weigh in favor of settlement. The Settlement does not negatively impact any right of the Receivership while enabling the Receivership to obtain a substantial recovery without significant addition litigation expense. The Settlement Payment will provide immediate funds for the benefit of the Receivership without incurring substantial litigation expenses. Since the Settlement provides the Receivership with a high proportion of the funds requested by the Receiver, it is in the best interests of the Receivership to recover the Settlement Payment in an efficient manner pursuant to the Settlement rather than litigating further for a minimal gain. Continued prosecution of the Estate Claims will be expensive due to the costs attendant to conducting depositions, calling witnesses, and otherwise litigating the claims of the

Receivership and any defenses to a verdict that may not be as favorable to the Receivership. Creditors of the Receivership should support the Settlement since the Settlement will enhance the possibility and amount of a dividend to creditors generally.

24. In light of the foregoing, the Receiver submits that consideration of this Motion at the earliest convenience of the Court is justified under the facts and circumstances presented and is in the best interests of the Receivership.

WHEREFORE, Receiver requests that this Court enter the Order, substantially in the form as the proposed order attached as **Exhibit B** hereto, to: a) grant this Motion; b) approve and authorize the Settlement; c) authorize the Receiver to enter the Settlement on behalf of the Receivership; d) authorize and empower the Receiver to take all actions necessary to implement the relief granted in such order; and e) grant the Receiver such other and further relief as the Court deems just and proper.

Respectfully submitted this 10th day of August, 2026.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq. (Georgia Bar No. 636265)
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
hsewell@sewellfirm.com; Phone: (404) 926-0053
*Counsel for Receiver*

**CERTIFICATE OF COUNSEL REGARDING FONT SIZE AND**
**<u>CERTIFICATE OF SERVICE</u>**

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D), and the attachments are consistent with Local Rule 5.1(B).

Counsel further certifies that I have this day electronically filed the foregoing *MOTION FOR AN ORDER APPROVING FULL CIRCLE SETTLEMENT* with the Clerk of Court via the CM/ECF system, which provides a link to a copy of the same electronically to all parties registered in this case.

This 10th day of August, 2026.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*<u>/s/ Henry F. Sewell, Jr.</u>*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com
Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
*Counsel for Receiver*

**EXHIBIT A**

**SETTLEMENT AGREEMENT**

**<u>SETTLEMENT AGREEMENT</u>**

This Settlement Agreement (the "**Agreement**") is entered into on the date a final and non-appealable order approving its terms is entered by the Court, or the date the Agreement is executed, whichever occurs later (the "**Effective Date**") by and between: (i) S. Gregory Hays, not individually, but as Court-Appointed Receiver ("**Receiver**") on behalf of First Liberty Capital Partners, LLC ("**First Liberty**" or "**Lender**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in Case No. 1:25-cv-3826-MLB (the "**Receivership**") to create the Receivership Estate (the "**Estate**"); (ii) Full Circle LLC ("**Full Circle**" or "**Borrower**"); Timeless Acquisitions, LLC, ("**Timeless**"); (iii) David Pike ("**DP**"); (iv) David Pike II ("**DPII**"); and (v) Christie Pike Nelson ("**CPN**" and collectively with DP and DPII, the "**Guarantors**" with each individually a "**Guarantor**"). The Receiver, Full Circle, Timeless, DP, DPII, and CPN are individually referred to herein as a "**Party**" and collectively as the "**Parties**." The following introductory provisions are true and correct and form the basis of this Agreement:

**WITNESSETH**

**WHEREAS**, Full Circle entered into a certain Promissory Note (the "**Note**") dated February 10, 2023, incident to a loan in the principal amount of $2,750,000.00 that was funded by First Liberty (the "**Loan**").

**WHEREAS**, Full Circle and Timeless are owned and controlled by one or more of the Guarantors.

**WHEREAS**, incident to the Loan, CPN, DP, and DPII guaranteed the repayment of the Loan and each entered into a Guaranty Agreement (collectively, the "**Guarantees**") dated January 26, 2023, as security for the Loan.

**WHEREAS**, pursuant to their respective Guarantees, CPN, DP, and DPII absolutely and unconditionally guaranteed the full payment to Lender of all Obligations (as defined in each of the Guarantees), including, without limitation, any indebtedness, liability, obligation to Lender in connection with the Loan.

**WHEREAS**, the Loan is also secured by certain real property in Walton County, Georgia of: 1) Timeless pursuant to a certain Deed to Secure Debt; Assignment of Rents and Security Agreement dated February 10, 2023, and filed February 16, 2023, in Deed Book 5270, Page 25-38 in the Walton County, Georgia real property records; and 2) Full Circle pursuant to a certain Deed to Secure Debt; Assignment of Rents and Security Agreement dated February 10, 2023, and filed February 16, 2023, in Deed Book 5270, Pages 14-24 in the Walton County, Georgia real property records (collectively, the "**Pre-Receivership Collateral**").

**WHEREAS**, Full Circle is in default under the Note and CPN, DP, and DPII are in default under the Guarantees.

**WHEREAS**, the obligations due under the Loan are now past due and the Note and Guarantees are in default.

**WHEREAS**, the Receiver has the right to collect on behalf of the Lender pursuant to the Appointment Order.

**WHEREAS**, the Receiver investigated the amount due incident to the Loan, Note, and Guarantees.

**WHEREAS**, on or about December 5, 2025 the Receiver issued a payoff and notice of default regarding the Loan indicating that the balance due as of December 4, 2025, was $2,110,774.29 with interest and attorney's fees continuing to accrue (the "**Estate Claims**").

**WHEREAS**, after significant arms-length negotiations, the Parties desire to settle (the "**Settlement**"), upon the terms set forth herein, any and all disputes, claims, issues and controversies arising from the Loan and the Estate Claims pursuant to the terms of this Agreement.

**NOW THEREFORE**, in consideration of the promises, releases, agreements, and covenants set forth in this Agreement, the Parties hereby stipulate and agree as follows:

1. **Agreement Subject to Approval by the Court.** The Receiver will file a motion (the "**Approval Motion**") seeking an order of the Court in the Receivership (the "**Approval Order**") that approves this Agreement. This Agreement is contingent upon and shall not be enforceable against the Receiver or the Estate until the entry of a final and non-appealable order approving the Agreement. Other than as provided herein, this Agreement shall have no force and effect against the Receiver or the Estate unless and until the Court enters a final order granting the Approval Motion to approve this Agreement. The closing (the "**Closing**") shall occur within three (3) days of the entry of the Approval Order; provided, however, that the Parties may, by mutual written agreement, schedule and conduct the Closing in advance of the entry of the Approval Order, with the Initial Payment and executed closing deliveries held in escrow by counsel for the Receiver pending entry of the Approval Order, in which case the escrow shall be released to the Receiver, and the Pre-Receivership Collateral released, upon entry of the Approval Order.

2. **Settlement Payment.** In settlement of the Estate Claims, Full Circle, Timeless, CPN, DP, and DPII (collectively, the "**Full Circle Parties**") shall pay the Receiver the sum of One Million, Three Hundred Thousand ($1,300,000.00) (the "**Settlement Payment**"). The Full Circle Parties agree that they are jointly and severally liable for the Settlement Payment. The Settlement Payment shall be paid as follows:

a. The amount of One Million, One Hundred Thousand Dollars ($1,100,000.00) shall be paid to the Receiver at the closing (the "**Initial Payment**"). The Full Circle Parties

represent that the Initial Payment is currently being held in escrow by the counsel for the Full Circle Parties. Upon receipt of the Initial Payment, the Receiver shall release the Pre-Receivership Collateral; and

b. The amount of Two Hundred Thousand Dollars ($200,000.00) shall be paid to the Receiver as follows: i) $20,000 within 30 days of the Effective Date (the "**30 Day Payment**"); and ii) $180,000 within six months of the Effective Date (the "**6 Month Payment**" and collectively with the 30 Day Payment, the "**Installment Payments**"). The Installment Payments shall be secured by (a) the Secured Promissory Note and Pledge (the "**Secured Note**") attached as **Exhibit A-1** hereto; (b) a Deed to Secure Debt, Assignment of Rents and Security Agreement (the "**Security Deed**"), attached as **Exhibit A-2** hereto; and (c) the Guarantees being modified by Modified Guaranty Agreements, in substantially the form attached hereto as **Exhibit A-3**, to include the guaranty of payment of the Installment Payments.

3. **Consideration.** In full and final resolution of the claims between the Parties with regard to the Estate Claims, the Full Circle Parties shall provide the Receiver with full possession and control of the full amount of the Settlement Payment.

4. **Default**. If the Full Circle Parties fail to make any payment required under this Agreement, the Receiver shall have the right to recover any amount due from the Full Circle Parties and liquidate any collateral pledged under the Secured Note.

5. **Notices**. To be effective, all notices and other communications to any Party herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail, or e-mail as follows:

For each of the Full Circle Parties: Full Circle, LLC and Timeless Acquisitions, LLC
2238 George L. Pike Parkway
Monroe, GA 30655
Attn: David Pike

With a required copy to: Tim Guilmette
1355 Peachtree St NE, Ste 1125
Atlanta, GA 30309
tim@guilmettehenderson.com

To the Receiver: S. Gregory Hays
Hays Financial Consulting, LLC
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
ghays@haysconsulting.net

With a required copy to: LAW OFFICES OF HENRY F. SEWELL JR., LLC
Henry F. Sewell, Jr.
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
hsewell@sewellfirm.com

Any Party may change its mailing address or email address for notices and other communications hereunder by written notice to the other Parties. It shall be the responsibility of each of the Parties to update their mailing and email addresses. Absent written notifications of a new mailing or email address, service on the addresses set forth herein shall constitute proper notice under this Agreement.

All such notices and other communications shall be effective (i) if tendered to an overnight courier service, upon the first Business Day after the date deposited with such courier service for overnight (next-day) delivery, (ii) if mailed from the United States to an address within the United States, upon the third Business Day after the date deposited into the mail with the Unites States Postal Service, (iii) if delivered by hand, upon delivery, or (iv) if sent by e-mail, upon the sender's receipt of an acknowledgement from the intended recipient (such as by the "return receipt requested" function, as available, or return email or other written acknowledgement). A copy of all notices shall be sent via email to counsel for the Full Circle Parties as listed above.

6. **Denial of Approval Order**. In the event that the Court denies approval of this Agreement, then, unless otherwise agreed to by the Parties, this Agreement shall terminate and be null and void and of no further force or effect, the Parties shall be restored to their respective factual and legal positions that existed immediately prior to the execution of this Agreement.

7. **Release by Full Circle Parties.** For and in consideration of among other benefits set forth in this Agreement, Full Circle, Timeless, CPN, DP, and DPII hereby release, waive and completely discharge the Receiver, the Estate, First Liberty or any other entities or property subject to the Receivership and each of their respective current and former related entities, affiliates, successors, subsidiaries, parents, officers, directors, assigns, members, managers, attorneys, and financial advisors (collectively, the "**Estate Parties**"), of and from any and all claims, rights, choses in action, duties and causes of action of every kind and character, that the Full Circle Parties may now have or hereafter may have arising in the future, or may assert against any or all of the Estate Parties for any reason, under any theory or pursuant to any cause whatsoever, whether known or unknown, suspected or unsuspected, existing or not existing, accrued or not accrued, either arising out of, asserted or that could have been asserted by the Full Circle Parties that relate, directly or indirectly, to the Estate Claims, the Receivership, or any matters specifically attendant thereto that the Full Circle Parties may presently possess; provided, however, that the obligations, agreements and rights created or expressly preserved in this Agreement are not released, discharged or waived.

8. **Release by Receiver.** For and in consideration of among other benefits set forth in this Agreement, and upon receipt by the Receiver of the full amount of the Settlement Payment, the Receiver hereby releases, waives and completely discharges Full Circle, Timeless, CPN, DP, and DPII and each of their respective current and former related entities, affiliates, successors, subsidiaries, parents, officers, directors, assigns, members, managers, attorneys, and financial

advisors (collectively, the "**FC Parties**"), of and from any and all claims, rights, choses in action, duties and causes of action of every kind and character, that the Receiver may now have or hereafter may have arising in the future, or may assert against any or all of the FC Parties for any reason, under any theory or pursuant to any cause whatsoever, whether known or unknown, suspected or unsuspected, existing or not existing, accrued or not accrued, either arising out of, asserted or that could have been asserted by the Receiver that relate, directly or indirectly, to the Estate Claims or any matters specifically attendant thereto that the Receiver may presently possess; provided, however, that the obligations, agreements and rights created or expressly preserved in this Agreement are not released, discharged or waived, and this release shall not become effective as to any then-unpaid portion of the Settlement Payment until such portion is paid; provided further, that in no event shall the aggregate liability of the Full Circle Parties, whether arising under this Agreement, the Secured Note, the Modified Guaranty Agreements, the Security Deed, or otherwise in connection with any default in payment of the Settlement Payment, exceed the unpaid balance of the Settlement Payment (up to the full amount of $1,300,000.00, less any amounts actually received by the Receiver), together with the Receiver's reasonable attorneys' fees and costs of collection or enforcement, and in no event shall the Receiver or the Estate reinstate, revive, or pursue the original, unsettled Estate Claims against the Full Circle Parties.

9. **Resolution of Claims Between Parties.** This Agreement is intended to fully resolve and settle all claims between the Parties that exist, whether known or unknown at this time, and could have been asserted with regard to the Loan, the **Pre-Receivership Collateral**, and the Guarantees.

10. **Release of Full Circle Collateral**. At Closing, the Receiver shall execute and deliver to counsel for the Full Circle Parties, in recordable form, full cancellations of (i) the Deed to Secure Debt, Assignment of Rents and Security Agreement recorded in Deed Book 5270, Pages

14-24, Walton County, Georgia records, and (ii) the Deed to Secure Debt, Assignment of Rents and Security Agreement recorded in Deed Book 5270, Pages 25-38, Walton County, Georgia records, together with UCC-3 terminations of any related financing statements, releasing all lien, claim or interest of First Liberty or the Estate in the Pre-Receivership Collateral.

11. **Assignment, Transfer, or Conveyance.** The Parties each warrant, covenant and agree that they have made no assignment, transfer, or conveyance, and hereafter will make no assignment, transfer, or conveyance in any manner of all or any part of their legal claims, causes in action, legal rights of action, or any other right released pursuant to this Agreement.

12. **Costs and Expenses.** The Parties shall each bear their respective costs, expenses, and attorneys' fees relating to the settlement negotiations with regard to any cause of action hereby settled and released, and/or the preparation and implementation of this Settlement Agreement; provided, however, if any action is commenced by any Party hereto to enforce the provisions of this Settlement Agreement, the prevailing party shall be entitled to an award, in addition to any other claims or damages, of its costs and expenses including attorneys' fees, in connection with said action. In the event of any default, the Full Circle Parties further agree to be jointly and severally responsible for all costs, expenses, and attorneys' fees relating to any efforts by the Receiver related to the Loan or to collect the outstanding amount of the Settlement Payment.

13. **Further Documentation.** The Parties agree to execute, exchange, and/or file, and/or to have their agents execute, exchange, and/or file, any further documents necessary to effectuate the terms of this Agreement.

14. **Execution.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together, shall constitute one Agreement that shall be binding on the Parties hereto. Signature pages provided by facsimile and electronic signatures shall have the same force and effect as original signatures.

15. **Entire Agreement.** This Agreement embodies the entire understanding and terms of the agreement between the Parties with respect to the Settlement between the Parties and supersedes any prior written and/or verbal agreements between the Parties. No understanding or oral representation not incorporated in this Agreement shall survive this Agreement and no promises or representations not expressly stated in this Agreement are included by implication. No such promises or representations have been made by either of the Parties to any other party nor is either of the Parties relying upon any such promise or representation in signing this Agreement. The terms of this Agreement shall not be construed against either of the Parties. There are no other agreements between the Parties other than this Agreement; all prior agreements between the Parties other than this Agreement shall be deemed terminated and released.

16. **Modification.** This Agreement may not be revised, superseded or otherwise modified, except in a written document that: a) explicitly refers to this Agreement; b) states explicitly therein that the writing is intended to modify this Agreement; and c) is signed by all Parties.

17. **Interpretation, Enforcement and Controlling Law.** Any action to enforce or interpret this Agreement shall be brought before the Court. The Parties hereto hereby consent and agree: a) to the jurisdiction of the Court in that regard; and b) that this Agreement shall be governed and construed in accordance with the laws of Georgia. The Parties further agree and represent to each other that this Agreement is valid, binding, and enforceable under Georgia law on the terms set forth herein.

18. **Authority to Execute and Review by Counsel.** The Parties hereby represent and warrant that the Parties: a) are authorized, or will be authorized by the Approval Order, to execute and enter this Agreement and all matters covered by and relating to the Agreement; b) had the opportunity to obtain the advice of counsel with regard to this Agreement; c) have read the terms

and provisions of the Agreement and understand the terms of the Agreement; d) voluntarily accept the terms of the Agreement; and e) have entered into this Agreement for reasons of their own and not based upon representations of any other Party hereto. The signatories expressly warrant that they have carefully read this Agreement and understand its contents and sign this Agreement as their own free act.

19. **Effect of Captions**. Captions of the paragraphs of this Agreement are for convenience and reference only, and the words contained therein shall in no way be employed to explain, modify, amplify or aid in the interpretation, construction or meaning of the provisions of this Agreement.

20. **Terms and Recitals.** The terms of this Agreement are contractual and not mere recitals. The recitals themselves at the beginning of this Agreement constitute substantive, bargained for provisions that are integral to this Agreement. This written Agreement and the documents executed in connection herewith represent the final agreement between the Parties, and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements by the Parties. There are no unwritten oral agreements between the Parties.

21. **Time is of the Essence**. Time is of the essence with respect to the rights and the performance of the obligations set forth herein.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the latest date set forth below.

RECEIVERSHIP ESTATE OF FIRST LIBERTY CAPITAL PARTNERS, LLC

By:______________________________
S. Gregory Hays, not individually, but as Court-Appointed Receiver on behalf of First Liberty Capital Partners, LLC pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] that was entered in Case No. 1:25-cv-3826-MLB

Date: ____________________________

FULL CIRCLE LLC

By:______________________________
Name: ___________________________
Its: ______________________________
Date: ____________________________

TIMELESS ACQUISITIONS, LLC

By:______________________________
Name: ___________________________
Its: ______________________________
Date: ____________________________

DAVID PIKE

By:______________________________
David Pike

DAVID PIKE II

By:______________________________
David Pike II

CHRISTIE PIKE NELSON

By:______________________________
Christie Pike Nelson

EXHIBIT A1

Exhibit A-1

**SECURED PROMISSORY NOTE AND PLEDGE**

Principal Amount: $200,000.00 Note Date: [Effective Date / Closing Date]

FOR VALUE RECEIVED, Full Circle LLC ("**Full Circle**"; Timeless Acquisitions, LLC, ("**Timeless**"); (iii) David Pike ("**DP**"); (iv) David Pike II ("**DPII**"); and (v) Christie Pike Nelson ("**CPN**" and collectively with Full Circle, Timeless, DP and DPII, the "**Makers**"), jointly and severally and unconditionally promise to pay on or before the date that is six (6) months after the Note Date (the "**Maturity Date**") to the order of S. Gregory Hays, not individually, but as Court-Appointed Receiver ("**Receiver**") on behalf of First Liberty Capital Partners, LLC ("**First Liberty**" or "**Lender**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in Case No. 1:25-cv-3826-MLB (the "**Receivership**") to create the Receivership Estate (the "**Estate**") or his transferees and assigns (referred to herein as the "**Payee**" and, together with any holder hereof, the "**Holder**"), the principal sum of TWO HUNDRED THOUSAND DOLLARS AND 00/100 CENTS ($200,000), together with interest on any unpaid principal balance from the date hereof at the rate of zero percent (0%) per annum. Whenever used in this Secured Promissory Note and Pledge (the "**Secured Note**"), the word "Holder" shall be deemed to include the Payee named in this paragraph and their respective successors, legal representatives, and assigns.

The Makers expressly agree that the amount of Two Hundred Thousand Dollars ($200,000.00) due under this Secured Note shall be paid to the Receiver as follows: i) $20,000 within 30 days of the Note Date (the "**30 Day Payment**"); and ii) $180,000 within six months of the Note Date (the "**6 Month Payment**" and collectively with the 30 Day Payment, the "**Installment Payments**").

The payments of principal and interest required by this Secured Note shall be payable in immediately available lawful money of the United States of America at such place or by wire transfer as the Holder hereof may designate in writing to the Maker. Makers may prepay the principal sum due under this Secured Note without premium or penalty or payment of interest beyond the date of any such prepayment as to the amounts prepaid. Interest is payable in arrears and shall be computed on the entire outstanding principal balance on the basis of a 365-day year for the actual number of days elapsed. All payments received shall be applied first to interest accrued and due, and the remainder, if any, to reduction of principal. All prepayments of principal, at the option of the Holder, shall be applied in inverse order of maturity.

As security for the full and punctual payment and performance of all of the obligations under this Secured Note, **Timeless Acquisitions, LLC** (the "Pledgor") shall execute and deliver to Holder, contemporaneously herewith, a Deed to Secure Debt, Assignment of Rents and Security Agreement (the "**Security Deed**"), in form and substance reasonably acceptable to Holder, conveying to Holder a lien upon the real property described in **Exhibit A** attached hereto (the "Collateral"), to be recorded in the real property records of Walton County, Georgia, securing the Obligations. Such lien shall be a first-priority lien, subject only to such prior encumbrances, if any, as are expressly approved by Holder in writing at Closing. Because the Pledgor is one of the Makers, the Pledgor's liability under the Security Deed and this Secured Note is NOT limited to the Collateral; the Pledgor is already personally, jointly and severally liable, as a Maker, for the

Installment Payments, any deficiency, and all other obligations of the Makers, and nothing in this Secured Note or the Security Deed limits, reduces, or is intended to limit or reduce such liability. The Makers shall pay all reasonable costs of preparing, recording and maintaining the Security Deed and any related instruments.

The Makers agree not to sell, lease, license or otherwise transfer (including by granting security interests, liens, or other encumbrances in) all or any part of the Collateral or the interest of the Makers in the Collateral without the prior written approval of Payee or the then Holder of this Secured Note. The Makers shall not allow any default for which it is responsible to occur under and in respect of the Collateral, and shall fully perform or cause to be performed when due all of its obligations under and in respect of the Collateral.

If the Makers default in the payment of this Secured Note when due, the Holder has and may exercise any and all rights granted to a secured creditor under the Georgia Uniform Commercial Code or as otherwise provided by law, including, but not limited to, the right to sell any of the Collateral via a public or private sale on ten (10) days written notice to the Makers for the highest and best price. Any deficiency remaining after application of the proceeds of such sale to the expenses thereof and to payment of the Secured Note may be recovered from the Makers.

The following events shall constitute an event of default ("**Event of Default**") under this Secured Note:

(1) Failure of the Makers to make a payment when due hereunder (regardless of the reason for same, including any purported setoff, deduction or the like), whether at maturity or by acceleration or otherwise, which failure to pay shall continue for a period of five (5) days after the due date;

(2) If any of the Makers become bankrupt or insolvent or if bankruptcy proceedings are commenced by or against any of the Makers, and not discharged within sixty (60) days thereafter, or if the Makers are unable generally to pay debts when due;

(3) Upon an assignment for the benefit or creditors, or the appointment of, or consent to, a receiver, trustee or liquidator for any of the Makers or a substantial part of their assets or property;

(4) Should any of the obligations, covenants, conditions or agreements to be performed by any of the Makers under or pursuant to this Secured Note not be performed strictly according to the terms hereof; or

(5) Should any of the Makers default under, violate or breach any term, condition or provision of, or fail to perform any obligation, condition, covenant or agreement to be performed by the Makers under this Secured Note.

Should an Event of Default occur, the Holder may immediately, without demand or notice, declare the entire remaining balance of the principal and accrued interest due and payable forthwith, and while in default, the entire principal balance of this Secured Note shall bear interest

at a rate of five percent (5%) per annum in excess of the interest rate stated in the first paragraph of this Secured Note. TIME IS OF THE ESSENCE IN THE PERFORMANCE OF EACH AND EVERY OBLIGATION UNDER THIS SECURED NOTE.

The Makers agree to pay a delinquency and collection charge on any amount unpaid after a period of five (5) days after the due date in an amount equal to five percent (5.0%) of the past due amount of principal and interest. Makers further agree that Makers shall pay all costs of collection, including attorney's fees and court costs, including appellate fees and costs, and any other expenses incurred by Holder as a result of any failure of Makers to pay any principal or interest when due.

No delay or failure on the part of the Holder in exercising any power or right under this Secured Note shall operate as a waiver of any power or right, nor shall any single or partial exercise of any power or right preclude further exercise of that power or right. The rights and remedies specified in this Secured Note are cumulative and not exclusive of any rights or remedies that the Holder may otherwise possess. The terms of this Secured Note shall not be varied, waived or modified except by a writing signed by the party to be charged.

The Makers hereby waive presentment for payment, protest and notice of protest and nonpayment of this Secured Note, demand, or notice of maturity, and further consent that the Holder may from time to time extend the time for payment of any installment or any part thereof. Makers hereby waive and renounce any and all exemption rights Makers may have under or by virtue of the Constitution or law of Georgia, or any other State, or the United States, as against this debt or any renewal thereof.

**NOTWITHSTANDING ANYTHING TO THE CONTRARY SET FORTH HEREIN, THE MAKERS SHALL NOT HAVE, WHETHER DIRECTLY OR INDIRECTLY, ANY SET-OFF, DEDUCTION, ACTION, COUNTER-CLAIM, WITHHOLDING OR SIMILAR RIGHTS WHATSOEVER UNDER OR IN CONNECTION WITH THIS SECURED NOTE WITH RESPECT TO ANY CLAIM WHATSOEVER AND MAY NOT AND SHALL NOT ATTEMPT TO EXERCISE ANY SUCH RIGHTS WHATSOEVER.**

This Secured Note has been duly authorized by all necessary action, does not conflict with any applicable agreement or restriction, and shall be construed and enforced in accordance with the laws of the State of Georgia without regard to principles of conflicts of law thereunder. The Makers specifically consent to personal jurisdiction in the United States District Court for the Northern District of Georgia (or, if such court declines jurisdiction, the Superior Court of Fulton County, Georgia), which courts shall constitute the exclusive forum in which disputes under or in connection with this Secured Note are to be resolved. Makers specifically submit to personal jurisdiction and waive all objections to jurisdiction and waive any claim of forum non conveniens and specifically consent to venue and jurisdiction in the referenced courts for any action instituted in connection with this Secured Note.

NOTWITHSTANDING ANYTHING TO THE CONTRARY, NOTHING IN THIS AGREEMENT SHALL BE DEEMED OR OPERATE TO PRECLUDE HOLDER FROM

BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE OBLIGATIONS, OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER IN FAVOR OF HOLDER.

IN WITNESS WHEREOF, and intending to be legally bound, the undersigned has executed this Secured Note under hand and seal on the date first above written.

FULL CIRCLE LLC

By:______________________________
Name: ___________________________
Its: _____________________________
Date: ____________________________

Sworn to and subscribed before me
this the ____ day of July, 2026.

_________________________________
Notary Public

TIMELESS ACQUISITIONS, LLC

By:______________________________
Name: ___________________________
Its: _____________________________
Date: ____________________________

Sworn to and subscribed before me
this the ____ day of July, 2026.

_________________________________
Notary Public

DAVID PIKE

By:______________________________
David Pike

Sworn to and subscribed before me
this the ____ day of July, 2026.

_________________________________
Notary Public

DAVID PIKE II

By:______________________________
David Pike II

Sworn to and subscribed before me
this the ____ day of July, 2026.

_________________________________
Notary Public

CHRISTIE PIKE NELSON

By:_____________________________
Christie Pike Nelson

Sworn to and subscribed before me
this the ____ day of July, 2026.

________________________________
Notary Public

**EXHIBIT A**

**LEGAL DESCRIPTION OF THE PROPERTY**

**TRACT ONE:** All that tract or parcel of land lying and being in Land Lot 162, 3rd District, Walton County, Georgia, shown as Tract 10B, containing 1.112 Acres on a plat of survey prepared by William J. Gregg, Sr., Registered Professional Land Surveyor No. 143B dated June 13, 1978, and recorded in Plat Book 23, Page 154, Clerk's Office Walton Superior Court. Reference is hereby made to said plat of survey, and the same is incorporated herein for a more complete description of the property conveyed. Said Tract also being known as 2230 Harry Arnold Road, according to the current system of numbering streets in Walton County, Georgia. **Tax Parcel Identification Number: C1640107**

**TRACT TWO:** All that tract or parcel of land lying and being in the State of Georgia, County of Walton, in the 3rd Land District, in Mountain G.M.D., being FARM NO. ELEVEN (11), PHASE I, MONROE FARMS, containing 1.93 Acres, more or less, and being more particularly described according to plat and survey dated March, 1969, prepared by William J. Gregg, Sr., Surveyor No. 143B, and recorded in Plat Book 14, page 110, Clerk's Office, Walton County Records, reference to which record is hereby made for more complete description. Said Tract also being known as 2272 Bethany Church Road, according to the current system of numbering streets in Walton County, Georgia. **Tax Parcel Identification Number: C1640108**

EXHIBIT A2

**DEED TO SECURE DEBT, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT**

**STATE OF GEORGIA**
**COUNTY OF WALTON**

After recording, return to:
Henry F. Sewell, Jr., Esq.
Law Offices of Henry F. Sewell Jr., LLC
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305

THIS DEED TO SECURE DEBT, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT (this "Security Deed") is made and entered into as of [EFFECTIVE DATE/CLOSING DATE], by TIMELESS ACQUISITIONS, LLC, a Georgia limited liability company, with a mailing address of 2238 George L. Pike Parkway, Monroe, GA 30655 (the "Grantor"), in favor of S. GREGORY HAYS, not individually but solely in his capacity as Court-Appointed Receiver on behalf of First Liberty Capital Partners, LLC, pursuant to the Order Appointing Receiver dated July 11, 2025 [Doc. No. 6] entered in Case No. 1:25-cv-3826-MLB (the "Grantee" or "Holder").

The Property is comprised of two contiguous tracts, commonly known as 2230 Harry Arnold Road, Monroe, GA 30655 (**Tax Parcel C1640107**) and 2272 Bethany Church Road, Monroe, GA 30655 (**Tax Parcel C1640108**).

**RECITALS**

**A.** FULL CIRCLE, LLC, TIMELESS ACQUISITIONS, LLC, DAVID PIKE, DAVID PIKE II, and CHRISTIE PIKE NELSON (collectively, the "Makers") have executed and delivered to Holder a Secured Promissory Note and Pledge dated of even date herewith, in the original principal amount of TWO HUNDRED THOUSAND AND 00/100 DOLLARS ($200,000.00) (the "Secured Note"), the payment of which is being secured in part by this Security Deed pursuant to a Settlement Agreement among the Makers, Grantor, and Holder of even date herewith (the "Settlement Agreement").

**B.** Grantor is one of the Makers under the Secured Note and, as such, is already jointly and severally liable for the Secured Obligations. Grantor has agreed to grant this Security Deed as additional collateral to further secure the Secured Obligations for which Grantor is already

personally liable as a Maker, and nothing in this Security Deed limits, reduces, or is intended to limit or reduce such liability.

**C.** Grantor desires to secure the payment of the Secured Note and the performance of all obligations of the Makers thereunder (collectively, the "Secured Obligations").

**GRANT**

NOW, THEREFORE, for and in consideration of the sum of TEN AND 00/100 DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to secure the Secured Obligations, Grantor hereby grants, bargains, sells, conveys and confirms unto Holder, its successors and assigns, the following property (collectively, the "Property"):

All that tract or parcel of land lying and being in Walton County, Georgia, containing in the aggregate approximately 3.042 acres, comprising (i) Tract One, identified as **Tax Parcel C1640107**, containing 1.112 acres, and (ii) Tract Two, identified as **Tax Parcel C1640108**, containing 1.93 acres, more particularly described on **Exhibit A** attached hereto and incorporated herein by this reference;

TOGETHER WITH all buildings, structures and other improvements now or hereafter erected on the Property; all easements, rights of way, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and water stock now or hereafter a part of the Property; all fixtures now or hereafter attached to the Property; and all proceeds (including insurance proceeds and condemnation awards) of any of the foregoing.

TO HAVE AND TO HOLD the Property unto Holder, its successors and assigns, in fee simple forever, THIS CONVEYANCE BEING INTENDED AS A DEED PASSING TITLE pursuant to O.C.G.A. § 44-14-60 et seq., and not as a mortgage, and being given to secure the Secured Obligations.

**1. Lien Priority**

This Security Deed shall be a first-priority lien on the Property, subject only to such prior encumbrances, if any, as are expressly approved by Holder in writing at the time of recordation. Grantor represents that the existing security deed encumbering the Property in the original principal amount of $49,000, recorded in Deed Book 4130, Page 208-211 of the Walton County, Georgia records shall be paid off in full and cancelled of record at or before the recording of this Security Deed.

**2. Grantor's Covenants**

Grantor covenants and agrees that:

(a) Grantor will not commit or permit waste on the Property;

(b) Grantor will keep the Property insured against loss by fire, hazards and such other risks as Holder may reasonably require, with Holder named as mortgagee/loss payee;

(c) Grantor will pay all taxes, assessments and other governmental charges levied against the Property before delinquency;

(d) Grantor will not sell, transfer, lease (other than in the ordinary course), or further encumber the Property, in whole or in part, without Holder's prior written consent; and

(e) Grantor will comply with all applicable laws, ordinances and regulations affecting the Property.

**3. Assignment of Rents**

Grantor hereby absolutely and presently assigns to Holder all rents, issues and profits of the Property, subject to Grantor's license to collect and retain the same so long as no Event of Default exists. Upon the occurrence and during the continuance of an Event of Default, such license shall automatically terminate.

**4. Security Agreement**

This Security Deed also constitutes a security agreement under the Georgia Uniform Commercial Code with respect to all personal property and fixtures constituting a portion of the Property.

**5. Events of Default**

The occurrence of any "Event of Default" under the Secured Note shall constitute an Event of Default hereunder.

**6. Remedies; Power of Sale (O.C.G.A. § 44-14-162)**

Upon the occurrence of an Event of Default, Holder may, at its option, exercise any or all of the following remedies:

(a) Power of Sale. Holder is hereby granted a POWER OF SALE with respect to the Property, and may, after advertisement of the time, place and terms of sale once a week for four (4) weeks immediately preceding the sale in the newspaper in which the sheriff's advertisements for Walton County, Georgia are published, sell the Property at public outcry to the highest bidder for cash, before the courthouse door of Walton County, between the hours of 10:00 a.m. and 4:00 p.m. on the first Tuesday of any month, all in accordance with O.C.G.A. § 44-14-162 et seq. Holder may execute and deliver to the purchaser a sufficient deed conveying the Property. The proceeds of any such sale shall be applied as set forth in O.C.G.A. § 44-14-162 et seq.;

(b) Pursue judicial foreclosure or any other remedies available at law or in equity against the Property; and

(c) All remedies are cumulative and non-exclusive.

**7. Attorneys' Fees**

If this Security Deed is enforced through an attorney, Grantor shall pay all attorneys' fees and costs in accordance with O.C.G.A. § 13-1-11.

**8. Future Advances**

This Security Deed shall not secure future advances and is given solely to secure the Secured Obligations existing as of the date hereof.

**9. Governing Law**

This Security Deed shall be governed by and construed in accordance with the laws of the State of Georgia.

**10. Notices**

All notices shall be in writing and delivered to the addresses set forth in the Settlement Agreement and the Secured Note, or as updated by written notice.

**11. Release Upon Payment**

Upon the indefeasible payment in full of the Secured Obligations (including, without limitation, both Installment Payments), Holder shall promptly execute and deliver to Grantor, in recordable form, a full cancellation and release of this Security Deed.

**12. Acknowledgment of Grantor's Liability as a Maker**

Holder acknowledges that Grantor has executed this Security Deed as a Maker to further secure the Secured Obligations for which Grantor is already personally, jointly and severally liable, and not as an accommodation party or non-recourse pledgor.

**13. CONFIRMATION OF GRANTOR'S PERSONAL LIABILITY AS A MAKER**

Grantor acknowledges and agrees that, because Grantor is one of the Makers under the Secured Note, Grantor's liability hereunder and under the Secured Note is NOT limited to the Property. Holder's rights and remedies against Grantor for any default, deficiency, or other obligation arising hereunder or under the Secured Note include, without limitation, the right to seek recovery directly against Grantor personally, in addition to Holder's rights and remedies against the Property, and a judgment may be sought and entered against Grantor personally for the Installment Payments, any deficiency following a foreclosure or sale of the Property, attorneys' fees, costs of collection, or any other obligations of the Makers. Nothing in this Section 13 shall limit, reduce, or discharge the personal liability of Grantor or any other Maker under the Secured Note.

IN WITNESS WHEREOF, Grantor has executed this Security Deed under hand and seal as of the date first above written.

GRANTOR/GRANTOR:

TIMELESS ACQUISITIONS, LLC
______________________________ (SEAL)
By: ________________________
Name: ________________________
Its: ________________________

Signed, sealed and delivered in the presence of:

Unofficial Witness: ______________________

The undersigned Notary Public certifies that the person who signed above personally appeared before me and acknowledged that he/she is the Manager/Member of Timeless Acquisitions, LLC, a Georgia limited liability company, and that he/she signed the foregoing instrument in that capacity, for and on behalf of said company, being first duly authorized to do so.Notary Public
My Commission Expires: ______________
[NOTARY SEAL]

## EXHIBIT A

## LEGAL DESCRIPTION OF THE PROPERTY

**TRACT ONE:** All that tract or parcel of land lying and being in Land Lot 162, 3rd District, Walton County, Georgia, shown as Tract 10B, containing 1.112 Acres on a plat of survey prepared by William J. Gregg, Sr., Registered Professional Land Surveyor No. 143B dated June 13, 1978, and recorded in Plat Book 23, Page 154, Clerk's Office Walton Superior Court. Reference is hereby made to said plat of survey, and the same is incorporated herein for a more complete description of the property conveyed. Said Tract also being known as 2230 Harry Arnold Road, according to the current system of numbering streets in Walton County, Georgia. **Tax Parcel Identification Number: C1640107**

**TRACT TWO:** All that tract or parcel of land lying and being in the State of Georgia, County of Walton, in the 3rd Land District, in Mountain G.M.D., being FARM NO. ELEVEN (11), PHASE I, MONROE FARMS, containing 1.93 Acres, more or less, and being more particularly described according to plat and survey dated March, 1969, prepared by William J. Gregg, Sr., Surveyor No. 143B, and recorded in Plat Book 14, page 110, Clerk's Office, Walton County Records, reference to which record is hereby made for more complete description. Said Tract also being known as 2272 Bethany Church Road, according to the current system of numbering streets in Walton County, Georgia. **Tax Parcel Identification Number: C1640108**

# EXHIBIT B

## WAIVER OF BORROWER'S RIGHTS

This Waiver of Borrower's Rights (this "Waiver") is executed as of [July ___], 2026, by TIMELESS ACQUISITIONS, LLC, a Georgia limited liability company ("Grantor"), in connection with that certain Deed to Secure Debt, Assignment of Rents and Security Agreement of even date herewith (the "Security Deed") from Grantor to S. GREGORY HAYS, not individually but solely in his capacity as Court-Appointed Receiver for First Liberty Capital Partners, LLC ("Holder"), encumbering the real property described in Exhibit A to the Security Deed (the "Property"), and that certain Secured Promissory Note and Pledge of even date herewith executed by Full Circle, LLC, Timeless Acquisitions, LLC, David Pike, David Pike II, and Christie Pike Nelson, in favor of Holder, in the original principal amount of $200,000.00 (the "Secured Note").

## ACKNOWLEDGMENT AND CONSPICUOUS NOTICE

GRANTOR HEREBY ACKNOWLEDGES THAT, BY EXECUTING THIS WAIVER, GRANTOR IS WAIVING IMPORTANT LEGAL AND CONSTITUTIONAL RIGHTS, INCLUDING BUT NOT LIMITED TO THE RIGHT TO ADVANCE NOTICE AND HEARING BEFORE THE HOLDER OF THE SECURITY DEED MAY EXERCISE THE POWER OF SALE AGAINST THE PROPERTY. GRANTOR HAS READ AND UNDERSTANDS THIS WAIVER, HAS HAD THE OPPORTUNITY TO REVIEW IT WITH INDEPENDENT LEGAL COUNSEL OF GRANTOR'S OWN SELECTION, AND EXECUTES THIS WAIVER VOLUNTARILY, KNOWINGLY, AND FOR VALUABLE CONSIDERATION RECEIVED.

### 1. WAIVER OF NOTICE AND HEARING PRIOR TO NON-JUDICIAL FORECLOSURE

GRANTOR EXPRESSLY ACKNOWLEDGES AND AGREES THAT THE SECURITY DEED GRANTS HOLDER A POWER OF SALE PURSUANT TO O.C.G.A. § 44-14-162 ET SEQ. GRANTOR EXPRESSLY, KNOWINGLY, AND VOLUNTARILY WAIVES (A) ANY AND ALL RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES, ARTICLE I, SECTION I, PARAGRAPH I OF THE CONSTITUTION OF THE STATE OF GEORGIA, OR ANY OTHER FEDERAL OR STATE CONSTITUTIONAL OR STATUTORY PROVISION, TO NOTICE OR A JUDICIAL HEARING PRIOR TO THE EXERCISE BY HOLDER OF ANY RIGHT OR REMEDY PROVIDED BY THE SECURITY DEED, INCLUDING WITHOUT LIMITATION THE POWER OF SALE; AND (B) ANY RIGHT TO REQUIRE HOLDER TO PROCEED BY JUDICIAL FORECLOSURE RATHER THAN BY NON-JUDICIAL POWER OF SALE.

## 2. WAIVER OF HOMESTEAD AND EXEMPTION RIGHTS

Grantor hereby expressly waives, disclaims, renounces, and relinquishes all homestead and exemption rights which Grantor has or may have under the Constitution and laws of the State of Georgia, the United States, or any other state, as against the Secured Indebtedness and as against the enforcement of this Deed and the rights of Grantee hereunder, except to the extent such waiver is prohibited by applicable law.

## 3. WAIVER OF TRIAL BY JURY

TO THE FULLEST EXTENT PERMITTED BY LAW, GRANTOR AND GRANTEE EACH HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHT EITHER PARTY MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS DEED, THE NOTE, ANY OTHER LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, OR STATEMENTS (WHETHER ORAL OR WRITTEN) RELATING THERETO. GRANTOR ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) BY INDEPENDENT LEGAL COUNSEL IN CONNECTION WITH THIS WAIVER AND THE OTHER WAIVERS SET FORTH IN THIS DEED. THIS WAIVER IS A MATERIAL INDUCEMENT FOR GRANTEE TO MAKE THE LOAN AND ACCEPT THIS DEED.

## 4. WAIVER OF PRESENTMENT, DEMAND, PROTEST, AND NOTICE

Grantor hereby waives presentment for payment, demand for payment, protest, notice of protest, notice of nonpayment, notice of dishonor, notice of acceleration, notice of intent to accelerate, notice of foreclosure (except such notice as may be expressly required by O.C.G.A. § 44-14-162.2 and the Security Deed), notice of any sale of the Property, and all other notices of every kind and description, except such notices as are expressly required by the Security Deed or by non-waivable applicable law.

## 5. WAIVER OF MARSHALING AND RIGHT OF REDEMPTION

Grantor, for itself and all persons claiming by, through, or under Grantor, hereby waives any and all rights of statutory redemption from any foreclosure sale of all or any portion of the Property which Grantor or such other persons may have under any applicable law now in effect or hereafter enacted, to the fullest extent such waiver is permitted by law. This waiver is in addition to, and not in limitation of, any other waiver contained herein or in any other Loan Document. To the fullest extent permitted by law, Grantor waives any right to require Grantee to marshal assets or to proceed against any person or property in any particular order in enforcing the rights and remedies provided for in this Deed or any other Loan Document. Grantee may proceed against Grantor, the Property, any guarantor, and any other security or collateral in such order and manner as Grantee may determine in its sole discretion.

**6. WAIVER OF NOTICE OF SALE BEYOND STATUTORY MINIMUM.**

Grantor agrees that, with respect to any nonjudicial foreclosure sale conducted pursuant to the power of sale granted herein, the minimum notice required by O.C.G.A. § 44-14-162 and § 44-14-162.2, if applicable, shall constitute reasonable notice and Grantor hereby waives any right to notice beyond such statutory minimum to which Grantor might otherwise be entitled, except where additional notice is mandated by non-waivable law.

7. **NO WAIVER OR PROVISION INVALIDITY.**

If any provision of this Waiver is held unenforceable, the remaining provisions shall remain in full force and effect. This Waiver shall be governed by and construed in accordance with the laws of the State of Georgia, without regard to its conflict-of-laws principles.

These waivers do not apply to rights that are non-waivable under applicable law, including but not limited to confirmation of foreclosure sales under O.C.G.A. § 44-14-161, consumer protection statutes, the Servicemembers Civil Relief Act, and the U.S. Bankruptcy Code.

IN WITNESS WHEREOF, Grantor has executed this Waiver of Borrower's Rights under hand and seal on the date first above written.

GRANTOR:

________________________________ (SEAL)

TIMELESS ACQUISITIONS, LLC
By: ________________________
Name: ________________________
Its: ________________________

2238 George L. Pike Parkway

Monroe, GA 30655

Signed, sealed and delivered in the presence of:

Unofficial Witness
The undersigned Notary Public certifies that the person who signed above personally appeared before me and acknowledged that he/she is the Manager/Member of Timeless Acquisitions, LLC, a Georgia limited liability company, and that he/she signed the foregoing instrument in that capacity, for and on behalf of said company, being first duly authorized to do so.

Notary Public My Commission Expires: ______________ [NOTARY SEAL]

**GRANTOR'S ACKNOWLEDGMENT OF WAIVERS.**
Grantor acknowledges and agrees that: (a) Grantor has carefully read and reviewed the waivers set forth in this Section [___]; (b) Grantor has had a full and complete opportunity to consult

with legal counsel of Grantor's own choosing regarding the meaning, import, and consequences of such waivers; (c) Grantor has been afforded a reasonable period of time within which to consider such waivers and to negotiate the terms thereof; (d) the waivers are given knowingly, voluntarily, and with full understanding of their significance; and (e) the waivers are a material part of the consideration for Grantee's agreement to make the loan evidenced by the Note and secured by this Deed.

GRANTOR:

_______________________________ (SEAL)

TIMELESS ACQUISITIONS, LLC
By: _______________________
Name: _______________________
Its: _______________________

2238 George L. Pike Parkway

Monroe, GA 30655

EXHIBIT A3

Exhibit A-3

# MODIFIED GUARANTY AGREEMENT

THIS MODIFIED GUARANTY AGREEMENT (this "Modified Guaranty") is made and entered into as of [July __], 2026 (the "Effective Date"), by DAVID PIKE, DAVID PIKE II, and CHRISTIE PIKE NELSON, each an individual resident of the State of Georgia (each, a "Guarantor" and collectively, the "Guarantors"), in favor of S. GREGORY HAYS, solely in his capacity as the Court-Appointed Receiver for FIRST LIBERTY CAPITAL PARTNERS, LLC and the related receivership estate (the "Receiver" or "Holder"), in connection with that certain Settlement Agreement dated as of the Effective Date (the "Settlement Agreement") by and among the Receiver, FULL CIRCLE LLC, TIMELESS ACQUISITIONS, LLC, and the Guarantors.

Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

**RECITALS**

**A.** On or about February 10, 2023, the Guarantors each executed and delivered to First Liberty Capital Partners, LLC ("First Liberty") a separate guaranty agreement (collectively, the "Original Guaranties"), pursuant to which each Guarantor guaranteed certain obligations of Full Circle LLC and Timeless Acquisitions, LLC (collectively, the "Borrowers") under that certain Promissory Note dated February 10, 2023 in the original principal amount of $2,750,000.00 (the "Original Note"), together with the related loan documents.

**B.** First Liberty is currently the subject of a federal receivership in the action styled *[Receivership Case Caption]*, Case No. 1:25-cv-3826-MLB, pending in the United States District Court for the Northern District of Georgia (the "Receivership Case"), pursuant to which the Receiver has been appointed and is authorized to administer the assets and claims of First Liberty.

**C.** The Receiver, the Borrowers, and the Guarantors have entered into the Settlement Agreement, pursuant to which, among other things, the Borrowers have agreed to pay to the Receiver the sum of $1,300,000.00 (the "Settlement Payment"), comprised of (i) an Initial Payment of $1,100,000.00 at Closing and (ii) Installment Payments totaling $200,000.00, consisting of (A) a $20,000.00 installment due within thirty (30) days after the Effective Date and (B) a $180,000.00 installment due within six (6) months after the Effective Date (together, the "Installment Payments").

**D.** The Installment Payments are evidenced by that certain Secured Promissory Note and Pledge of even date herewith executed by the Borrowers in favor of the Receiver (the "Secured Note"), and are secured by that certain Deed to Secure Debt, Assignment of Rents and Security Agreement of even date herewith executed by Timeless Acquisitions, LLC, as Pledgor, in favor of the Receiver, encumbering the real property described therein in Walton County, Georgia (the "Security Deed"; together with the Secured Note, the Settlement Agreement, this Modified Guaranty, and all other documents executed in connection therewith, the "Settlement Documents").

**E.** As a material inducement to the Receiver's execution and delivery of the Settlement Agreement, and as required under Section 2(b) of the Settlement Agreement, the Guarantors have agreed to modify the Original Guaranties to expressly include the unconditional guaranty of payment and performance of the Installment Payments and the other obligations of the Borrowers under the Secured Note, all on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing premises, the mutual covenants contained herein and in the Settlement Agreement, the release of claims by the Receiver against the Guarantors as set forth in the Settlement Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Guarantors hereby agree as follows:

**1. Modification of Original Guaranties; Guaranty of Installment Payments**

Each Guarantor hereby modifies, supplements, and reaffirms his or her Original Guaranty to expressly extend, in addition to the obligations originally guaranteed thereunder, an absolute, unconditional, and continuing guaranty of payment and performance to and in favor of the Receiver of:

(a) the full and punctual payment of the Installment Payments when due under the Secured Note and the Settlement Agreement, whether at stated maturity, by acceleration, or otherwise;

(b) all interest, default interest, late charges, and other amounts payable by the Borrowers under the Secured Note;

(c) all costs and expenses (including reasonable attorneys' fees as provided under O.C.G.A. § 13-1-11) incurred by the Receiver in collecting or enforcing the Secured Note, the Security Deed, or this Modified Guaranty; and

(d) all other obligations of the Borrowers arising under the Settlement Documents (collectively, the "Guaranteed Obligations").

**2. Guaranty of Payment, Not of Collection**

This is a guaranty of payment and performance, not of collection. The Receiver shall not be required to (a) institute suit or exhaust remedies against the Borrowers, Timeless Acquisitions, LLC (the Pledgor), the Collateral under the Security Deed, or any other person or property; (b) join the Borrowers or any other party in any action brought hereunder; or (c) resort to any other means of obtaining payment, before enforcing this Modified Guaranty against any Guarantor.

**3. Joint and Several Liability**

The liability of each Guarantor hereunder is joint and several with the other Guarantors and with the Borrowers. The Receiver may proceed against any one or more Guarantors, jointly or severally, without regard to any action or inaction with respect to any other Guarantor, the Borrowers, the Pledgor, or the Collateral.

**4. Continuing Guaranty**

This Modified Guaranty is a continuing guaranty and shall remain in full force and effect until the Guaranteed Obligations have been indefeasibly paid in full in cash. The release, discharge, or satisfaction of any other Guarantor or the Borrowers shall not release any other Guarantor hereunder except to the extent of any payment actually received and retained by the

Receiver.

**5. Waivers**

To the maximum extent permitted by Georgia law, each Guarantor hereby waives:

(a) presentment, demand, protest, notice of acceptance, notice of dishonor, notice of default, notice of nonpayment, notice of acceleration, and all other notices with respect to the Guaranteed Obligations and this Modified Guaranty (except notices expressly required hereunder, under the Secured Note, or under O.C.G.A. § 44-14-162.2);
(b) any right to require the Receiver to proceed first against the Borrowers, the Pledgor, the Collateral, or any other person or property;
(c) any defense based upon an election of remedies by the Receiver, including any election that destroys or impairs the Guarantor's subrogation rights or right to proceed against the Borrowers for reimbursement;
(d) any defense arising out of the absence, impairment, or loss of any right of reimbursement, contribution, or subrogation, or any other right or remedy of the Guarantor against the Borrowers or the Collateral;
(e) any defense based on any disability, lack of authority, lack of capacity, dissolution, bankruptcy, insolvency, death, or any other event affecting the liability of the Borrowers or any other Guarantor;
(f) any defense based on the modification, extension, renewal, amendment, restructuring, or restatement of the Secured Note, the Security Deed, or any other Settlement Document, whether or not consented to by such Guarantor; and
(g) all rights and benefits, statutory or otherwise, accorded by Georgia law to sureties, accommodation parties, or guarantors, including (without limitation) the rights of a surety under O.C.G.A. §§ 10-7-22 (notice to proceed against principal) and 10-7-24 (release upon increase of risk), it being the express intention of the Guarantors that this Modified Guaranty constitute an absolute and unconditional guaranty of payment.

Notwithstanding the foregoing, nothing in this Section 5 shall waive any non-waivable statutory right, including any notice required under O.C.G.A. § 44-14-162.2 in connection with foreclosure of the Security Deed.

**6. No Subrogation Until Paid in Full**

Until the Guaranteed Obligations have been indefeasibly paid in full in cash, no Guarantor shall exercise any right of subrogation, reimbursement, indemnity, or contribution against the Borrowers, the Pledgor, the Collateral, or any other Guarantor with respect to any payment made by such Guarantor under this Modified Guaranty.

**7. Reinstatement**

If any payment received by the Receiver from the Borrowers, the Pledgor, or any Guarantor is rescinded, avoided, or required to be returned for any reason (including by reason of any bankruptcy, insolvency, receivership, or reorganization proceeding), the Guaranteed Obligations shall be reinstated as if such payment had not been made.

**8. Representations and Warranties**

Each Guarantor hereby represents and warrants to the Receiver that:
(a) such Guarantor has full power and legal capacity to execute, deliver, and perform this Modified Guaranty;
(b) the execution, delivery, and performance of this Modified Guaranty have been duly authorized and do not violate any agreement, judgment, order, or law applicable to such Guarantor;
(c) such Guarantor has received a copy of, and has reviewed, the Settlement Agreement, the Secured Note, the Security Deed, and all other Settlement Documents;
(d) such Guarantor will derive a direct and material economic benefit from the Settlement Agreement and the transactions contemplated thereby; and
(e) this Modified Guaranty constitutes the legal, valid, and binding obligation of such Guarantor, enforceable in accordance with its terms.

**9. Reaffirmation of Original Guaranties**

Except as expressly modified by this Modified Guaranty, the Original Guaranties remain in full force and effect with respect to any obligations of the Borrowers that survive the Settlement Agreement (including without limitation indemnification and other obligations expressly stated to survive), and each Guarantor hereby reaffirms his or her obligations thereunder; provided, however, that in no event shall the aggregate liability of the Guarantors under the Original Guaranties and this Modified Guaranty, whether arising from the Settlement Agreement, the Secured Note, this Modified Guaranty, the Security Deed, or otherwise in connection with any default in payment of the Settlement Payment, exceed the unpaid balance of the Settlement Payment (up to the full amount of $1,300,000.00, less any amounts actually received by the Receiver), together with the Receiver's reasonable attorneys' fees and costs of collection or enforcement, and in no event shall the Receiver or the Estate reinstate, revive, or pursue the Guarantors' liability for the original, unsettled Estate Claims. To the extent of any conflict between this Modified Guaranty and the Original Guaranties as to the Guaranteed Obligations, this Modified Guaranty shall control.

**10. Default; Remedies**

Upon any default by the Borrowers in the payment or performance of any Guaranteed Obligation that is not cured within any applicable cure period set forth in the Secured Note or Settlement Agreement, the Receiver may, at its option and without notice or demand (except as required by non-waivable law), declare all Guaranteed Obligations immediately due and payable from any one or more Guarantors and pursue any and all rights and remedies available at law, in equity, or under the Settlement Documents, all of which shall be cumulative and not exclusive.

**11. Costs of Enforcement; O.C.G.A. § 13-1-11**

The Guarantors, jointly and severally, shall pay all costs and expenses of collection and enforcement of this Modified Guaranty, including reasonable attorneys' fees. The parties acknowledge that the Guaranteed Obligations include attorneys' fees provisions calculated in accordance with O.C.G.A. § 13-1-11.

**12. Notices**

All notices hereunder shall be in writing and given in accordance with the notice provisions of the Settlement Agreement.

**13. Governing Law; Venue**

This Modified Guaranty shall be governed by and construed in accordance with the laws of the State of Georgia, without regard to its conflict-of-laws principles. Each Guarantor irrevocably submits to the exclusive jurisdiction of the United States District Court for the Northern District of Georgia (or, if such court declines jurisdiction, the Superior Court of Fulton County, Georgia) for any action arising out of or related to this Modified Guaranty, and consistent with the venue established in the Receivership Case.

**14. Waiver of Jury Trial**

EACH GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS MODIFIED GUARANTY, THE SETTLEMENT DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

**15. Miscellaneous**

**(a) Successors and Assigns.** This Modified Guaranty binds the Guarantors and their respective heirs, executors, administrators, successors, and assigns, and inures to the benefit of the Receiver and his successors (including any successor receiver, trustee, or other estate representative).

**(b) Severability.** If any provision of this Modified Guaranty is held invalid or unenforceable, the remaining provisions shall remain in full force and effect.

**(c) Entire Agreement; Amendment.** This Modified Guaranty, together with the other Settlement Documents, constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements or understandings, written or oral, with respect thereto. No amendment or modification shall be effective unless in writing and signed by the party to be charged.

**(d) Counterparts; Electronic Signatures.** This Modified Guaranty may be executed in counterparts, each of which is deemed an original and all of which together constitute one and the same instrument. Signatures delivered by PDF, DocuSign, or other electronic means shall be deemed original signatures for all purposes.

**(e) Court Approval.** This Modified Guaranty is contingent upon entry of the Approval Order in the Receivership Case in accordance with Section 1 of the Settlement Agreement.

[SIGNATURE PAGE]

Exhibit A-3

IN WITNESS WHEREOF, each Guarantor has duly executed and delivered this Modified Guaranty as of the Effective Date, intending to be legally bound hereby.

DAVID PIKE, individually
Signature: _______________________________
Print Name: David Pike
Date: _______________________________
Witness: _______________________________

DAVID PIKE II, individually
Signature: _______________________________
Print Name: David Pike II
Date: _______________________________
Witness: _______________________________

CHRISTIE PIKE NELSON, individually
Signature: _______________________________
Print Name: Christie Pike Nelson
Date: _______________________________
Witness: _______________________________

ACKNOWLEDGED AND ACCEPTED:
S. GREGORY HAYS, solely as Court-Appointed Receiver for First Liberty Capital Partners, LLC
Signature: _______________________________
Date: _______________________________

**Exhibit B**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br>**Plaintiff,**<br>**v.**<br>**EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC,**<br>**Defendants, and**<br>**FIRST LIBERTY CAPITAL PARTNERS LLC, et. al.,**<br>**Relief Defendants.** | : | **Civil Action File No. 1:25-cv-3826-MLB** |

**ORDER APPROVING MOTION FOR AN ORDER APPROVING FULL CIRCLE SETTLEMENT**

This matter is before the Court on the *Motion for an Order Approving Full Circle Settlement* [Doc. No. __] (the "**Motion**") that was filed by S. Gregory Hays, not individually, but as Court-Appointed Receiver ("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in the above-captioned case (the "**Receivership**"). The Motion seeks the entry of an order approving a Settlement[1] of obligations to the Receivership of Full Circle LLC ("**Full Circle**" or "**Borrower**"), Timeless Acquisitions, LLC, ("**Timeless**"), David Pike, David Pike II ("**DPII**"), and

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Christie Pike Nelson ("**CPN**" and collectively with DP and DPII, the "**Guarantors**" with each individually a "**Guarantor**").

Upon the Court having reviewed and considered the Motion and the record in this Case, the Court determined that: 1) the relief requested in the Motion is in the best interests of the Receivership and its creditors; 2) the Court has jurisdiction over this proceeding; 3) the terms of the Settlement are fair and equitable; and 4) good and sufficient cause exist for the relief requested in the Motion, for the entry of this Order, and approval of the Settlement. Finding that no further notice or opportunity for hearing is required, for good cause shown, is it hereby ORDERED as follows:

1. The Motion is GRANTED as set forth herein.

2. The Settlement is hereby approved and authorized.

3. The Receiver is authorized to enter the Settlement on behalf of the Receivership and authorized and empowered to take any and all steps necessary, in the sole discretion of the Receiver, to consummate and perform under the terms of the Settlement and this Order.

4. This Court shall retain jurisdiction to resolve any and all disputes arising from this Order and the Settlement.

**SO ORDERED**, this _____ day of August, 2026.

________________________________
MICHAEL L. BROWN
UNITED STATES DISTRICT COURT JUDGE

Copies to: All Counsel of Record

Prepared and Presented by:

LAW OFFICES OF HENRY F. SEWELL JR., LLC

***/s/ Henry F. Sewell, Jr.***
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com
*Counsel for the Receiver*

**[END OF ORDER]**