UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC,** <br><br> **Defendants, and** <br><br> **FIRST LIBERTY CAPITAL PARTNERS LLC, et. al,** <br><br> **Relief Defendants.** | : | **Civil Action File No. 1:25-cv-3826-MLB** |

**REPLY TO RESPONSE OF FAMILY FINANCIAL PARTNERS, LLC ("FFP") AND KRISTA FROST TO RECEIVER'S MOTION TO ADD FFP TO THE RECEIVERSHIP**

S. Gregory Hays, not individually, but as Court-Appointed Receiver ("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in the above-captioned case (the "**Case**" or "**Receivership**"), by and through counsel, hereby files this *Reply to Response of Family Financial Partners LLC ("**FFP**") and Krista Frost to Receiver's Motion to Add FFP to the Receivership* in reply to the *Response of Family Financial Partners LLC ("**FFP**") and Krista Frost to Receiver's Motion to Add*

*FFP to the Receivership* [Doc. No. 105] and in further support of the *Motion by Receiver to Expand Receivership With Brief in Support Thereof* [Doc. No. 84] (the "**Motion**") with regard to the request to add FFP to the Receivership as a Receivership Entity in accordance with the Appointment Order and that the expansion of the Receivership include FFP along with any and all assets of FFP. In support thereof, the Receiver respectfully states as follows:

## I. INTRODUCTION

1. Expansion of the Receivership to include FFP and the property of FFP, including any shares in Old Glory Bank (the "**Old Glory Shares**"), is necessary and appropriate as FFP is an affiliate that was formed by Brant Frost IV for the benefit of his family and funded with commingled proceeds that were diverted away from investors by Mr. Frost. Since the funds were transferred to an affiliate managed by an insider and used to purchase the Old Glory Shares, the relief requested in the Motion does not prejudice an innocent third party.

2. The Response readily acknowledges that FFP received funds from other entities subject to the Receivership that were used by FFP to purchase the Old Glory Shares and fails to cite any authority that would prohibit the expansion of the Receivership to include FFP and the Old Glory Shares.

3. While Paragraph 1 of the Response references the availability of Ms.

Frost to manage the affairs of FFP as its Manager, such availability is irrelevant as the wife of Mr. Frost is not an independent third-party and is instead an insider closely related to Mr. Frost. Focusing on the management of the FFP is also a red herring as evidence indicates that property of FFP was obtained with funds from other entities subject to the Receivership.

4. Although Paragraph 2 of the Response alleges that the discussion of FFP in the Motion is inaccurate, the Response fails to provide the purported correct information to fully explain the source of all of the assets of FFP. Indeed, the Response fails to identify any property of FFP that was not obtained with funds from other entities subject to the Receivership.

5. In an apparent effort to paper over FFP using funds of the other entities subject the Receivership, Paragraph 3 of the Response readily admits that FFP was a newly formed entity that required funds from the entities subject to the Receivership in order to acquire the Old Glory Shares. More specifically, Paragraph 3 of the Response indicates that, at a time when FFP was a newly formed entity, "a significant part of the cost of acquiring the Old Glory shares was funded by issuing a promissory note payable to First Liberty. FFP used the proceeds of that promissory note to purchase Old Glory shares." This is not true as evidenced by the Receiver's tracing analysis attached hereto.

6. Further, the Response ignores that the purported obligation due under the Note ($500,000) is only 12.5% of the potential value of the Old Glory stock.

7. Even if this was a legitimate loan, a loan may serve as the basis for expanding a receivership to include the recipient where the recipient received tainted proceeds. *See S.E.C. v. Nadel*, No. 8:09-CV-87-T-26TBM, 2013 WL 2291871, at *2 (M.D. Fla. May 24, 2013) (use of scheme proceeds via loan to purchase property subjected party to inclusion in receivership despite the fact that not all of the funding came from scheme proceeds)..

## II. FACTS

### A. Relevant Background Regarding the Receivership.

8. On July 11, 2025, Securities and Exchange Commission (the "**SEC**") filed a complaint (the "**Complaint**") against Defendants Mr. Frost and First Liberty Building & Loan, LLC ("**First Liberty**" and together with Mr. Frost, the "**Defendants**") and certain Relief Defendants. In the Complaint, the SEC alleges that Mr. Frost engaged in investment fraud to the detriment of potentially hundreds of investors and other parties and further alleges that the Receivership Entities raised funds that were subsequently misappropriated. *See* Doc. No. 1.

9. Pursuant to the Appointment Order, the Receiver was originally appointed to marshal and preserve all assets of certain entities (collectively, the

"**Original Receivership Entities**") and the assets of Mr. Frost that: (a) are attributable to funds derived from investors or clients of Frost or First Liberty; (b) are held in constructive trust for the Defendants; and/or (c) may otherwise be includable as assets of the estates of the Defendants (collectively, the "**Recoverable Assets**"). *See* Appointment Order, p. 1.

10. Pursuant to the Appointment Order, the Receiver took control of the assets and books and records of the Original Receivership Entities, commenced an investigation of the assets and liabilities of the Receivership Assets and otherwise carried out the duties and obligations set forth in Appointment Order. Incident to such investigation, the Receiver identified certain affiliates, including FFP, as possible recipients of tainted funds derived from investors or clients of Mr. Frost or entities subject to the Receivership. Based on such information, the Receiver filed the Motion to include 10 such entities, including FFP, in the Receivership. While the Motion was granted as to the other nine entities, FFP was granted an opportunity to address the relief sought in the Motion.

11. On July 20, 2026, FFP filed the Response to the request in the Motion to add FFP to the Receivership.

B. **FFP and purchase of Old Glory Shares.**

12. FFP is not an innocent third-party and is instead an affiliate that is

managed by an insider. The Response acknowledges that the wife of Mr. Frost is currently the Manager of FFP. As the wife of Mr. Frost, Ms. Frost is not an independent third-party and is instead an insider closely related to Mr. Frost.

13. Indeed, the Receiver believes that Mr. Frost (not Mrs. Frost) exercised control over FFP prior to the appointment of the Receiver. As a preliminary matter, the subscription agreements for the Old Glory stock were signed by Mr. Frost as the "Manager" of FFP.[1] Further, attached hereto as **Exhibit "A"** is an email from Mr. Frost to his son in which he directs his son to transfer money from FFP to Old Glory Bank for the purchase of stock. Finally, attached hereto as **Exhibit "B"** is an email dated October 21, 2024, nine months prior to the appointment of the Receiver, in which Michael Ring, the principal of Old Glory, summarizes the status of the issuance of the Old Glory Stock. This email is addressed to Mr. Frost (who is referred to as "My Brother" by Mr. Ring) and Mr. Ring refers to Mr. Frost as the owner using such terms as "your shares", "you purchased" and "you were issued". Further, Mr. Ring even proffers to take direction from Mr. Frost as to the disposition of the stock. Mrs. Frost is not copied on these emails and there is no indication that she ever

[1] The Receiver is uncertain as to whether to he has authority to file these documents on the public record. The Receiver will make them available to counsel for FFP and introduce them as exhibits as may be necessary at an evidentiary hearing on this Motion.

exerted control over the Old Glory Stock or FFP.

14. Although the Response alleges that funds were received by FFP pursuant to a purported promissory note, no promissory note is included with the Response and FFP has failed to produce it to the Receiver. Instead, FFP has produced to the Receiver a document titled Memorandum of Understanding that provides for monthly interest payments and a due date of June 22, 2023. Even if such document is considered, FFP never paid any interest, failed to satisfy its obligations and has otherwise failed to produce evidence to the Receiver indicating that FFP was even capable of satisfying such obligations, except out of the proceeds of the Old Glory Stock. FFP has failed to demonstrate that the issuance of stock to it was the result of a legitimate, good faith, and arm's length transaction.

15. In an effort to further document the source of the funds used to purchase the Old Glory Shares, the Receiver has performed an extensive tracing analysis regarding the tainted investors proceeds that FFP from entities subject to the Receivership. Attached hereto as **Exhibits C - E** are five tracing reports regarding the Old Glory Shares which show that funds were transferred from Receivership Entities to FFP to purchase the Old Glory Stock. The back up documentation supporting these charts is – or will be – made available to counsel for FFP and will be submitted as exhibits should this matter require an evidentiary hearing.

16. Exhibit C provides a tracing summary for Round 1 in which 552,750 shares were purchased for $552,750 in December 2021. The funds to purchase these shares did not actually go through FFP and instead went directly from Legacy Family Partners LLC, a Receivership entity, to Old Glory Bank. This transaction also included 50,000 from Billy Lovett, resulting in a total of 602,750 for Class A.

17. Exhibit D provides two tracing summaries regarding the 100,000 shares of Class B that were received as a result of being a founder with 50,000 coming from Billy Lovett. The first page of Exhibit D traces the $50,000 purchase in April 2022 for 50,000 founder shares and the second page of Exhibit D traces the $50,000 purchase in November, 2023 for 50,000 round 1 shares, all funded by Receivership Entities.

18. Exhibit E provides two tracing summaries for the purchase of pre-IPO shares. The first page of Exhibit C traces the $60,000 purchase in September, 2024 for 10,000 pre-IPO shares and the second page of Exhibit C traces the $240,000 purchase in October, 2024 for 40,000 pre-IPO shares. Evidence indicates that there may also be a warrant to purchase 50,000 shares at $6.00 per share, exercisable for 10 years.

19. The Receiver believes that evidence shows that: FFP: a) received and was unjustly enriched by receiving investor proceeds from the scheme giving rise to

this Receivership; b) the Old Glory Shares were purchased with investors funds held by the other entities subject to the Receivership and that the transfers to FFP were fraudulent conveyances; and c) that Mr. Frost remained in control of FFP and directed the purchase of the Old Glory stock.

20. Given that FFP received tainted proceeds that were used to purchase the Old Glory Shares, the history of commingling, and the fact that there is not a non-insider available to manage FFP other than the Receiver, the Receiver recommends that FFP be added to the Receivership as one of the Receivership Entities as that term is used in the Appointment Order.

## III. LEGAL ANALYSIS AND CITATION OF AUTHORITY

21. In pursuing the case underlying the Receiver under the federal securities law, the SEC appears "not as an ordinary litigant, but as a statutory guardian charged with safeguarding the public interest in enforcing the securities laws." *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975). "The primary purpose of the equitable receivership is the marshaling of the estate's assets for the benefit of aggrieved investors and other creditors of the receivership entities." *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019). Incident thereto, as noted in the Motion, a "Receiver's primary objective . . . is to ensure that all available assets are brought within the Receivership and may then be

properly distributed to creditors." *S.E.C. v. Elmas Trading Corp.*, 620 F. Supp. 231, 234 (D. Nev. 1985), *aff'd*, 805 F.2d 1039 (9th Cir. 1986).

22. This Court has "broad powers and wide discretion to determine relief in an equity receivership . . .. This discretion derives from the inherent powers of an equity court to fashion relief." *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citation omitted). While the Court may appoint a receiver over an entity that has violated securities laws and regulations, the "court may also exercise its equitable powers over an entity that has not engaged in wrongdoing, but nonetheless '(1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds.'" *Sec. & Exch. Comm'n v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 4362729, at *4 (N.D. Tex. Sept. 12, 2018) (citation omitted). Furthermore, a receivership may be expanded to include assets of insiders. *See In re W. Com. Funding, Inc.*, No. 87-4-3034, 1989 WL 11792, at *1 (Bankr. D. Md. Feb. 7, 1989).

23. Here, the Receiver has investigated the assets of the Receivership in order to gain an understanding of the use of the funds and assets of the parties subject to the Receivership. As set forth in the Motion, such investigation revealed commingling of funds, similar ownership in the different entities, absence of corporate assets, failure to maintain arm's length relationships among entities, and manipulation of assets and liabilities between entities in order to benefit insiders.

With regard to FFP specifically, such investigation revealed that FFP: a) received commingled proceeds of other entities subject to the Receivership that were diverted away from investors by Mr. Frost and used to purchase the Old Glory Shares; and b) did not have a legitimate claim to those funds. The Response readily admits that FFP received such funds for the purchase of the Old Glory Shares.

A. **The Receivership may be expanded to include FFP by use of the alter ego doctrine.**

24. As noted in the Motion, "Receiverships have been expanded by use of the alter ego doctrine to include entities related to defendants where funds have been commingled or corporate assets used for personal purposes." *See Sec. & Exch. Comm'n v. Torchia*, No. 1:15-CV-3904-WSD, 2016 WL 6212002, at *3 (N.D. Ga. Oct. 25, 2016) (citation omitted)(finding expansion appropriate where evidence was sufficient to determine that defendants and target entities were alter egos or at the very least the target entities were substantially funded with proceeds from the scheme of the defendants where assets were commingled in the same under the direction of the same party). Indeed, expansion of a receivership is also appropriate upon a finding that entities outside the receivership were not separate and distinct from the receivership entities. *See SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233-34 (D. Nev. 1985) (adding additional entities under the doctrines of alter ego doctrine and piercing the corporate veil where certain factors are found like

commingling of funds and personal use of assets).

25. Under the circumstances, expansion to the Receivership is appropriate as FFP was substantially funded with investor proceeds from the entities subject to the Receivership and funds were commingled under the direction of the same party.

### B. The Receivership may be expanded to include FFP because FFP receiving tainted proceeds that were used to purchase the Old Glory Shares.

26. FFP need not be determined to be an alter ego of the other entities to be included in this Receivership. *See Nadel*, 2013 WL 2291871, at *2 (noting that "Quest need not be determined to be an alter ego of Valhalla or Viking Oil to be included in this receivership"). Indeed, a receiver may also exercise control of property purchased or improved with scheme proceeds. *See Sec. & Exch. Comm'n v. Kirkland*, No. 606-CV183-ORL-28KRS, 2006 WL 2639522, at *3 (M.D. Fla. Sept. 13, 2006) (expanding receivership to include property "[b]ecause the evidence tends to show that the property was purchased with funds from receivership entities"). In *Nadel*, a party, Quest, who purchased property with scheme proceeds was subjected to inclusion in a receivership where a receivership entity loaned Quest over $1.1 million of scheme proceeds that were subsequently used to certain purchase property. *See Nadel*, 2013 WL 2291871, at *1-2. While certain funding in *Nadel* did not come from a receivership entity, the court indicated that the "fact that not all of

the funding for Quest came from [a receivership entity] . . . does not change the outcome. The vast majority of the initial funding . . . was tainted." *Id*. at *2.

27. Here, expansion of the Receivership to include FFP is appropriate as FFP is an affiliate that received tainted proceeds that were diverted away from investors by Mr. Frost and used to purchase the Old Glory Shares. Even if FFP could identify any funding for the Old Glory Shares that did not originate from any entities subject to the Receivership, the vast majority of the funding was tainted.

C. **Expansion is necessary to safeguard assets and guard against potential dissipation.**

28. As noted in the Motion, the "expansion of an equity receivership may be appropriate where the requested expansion 'is necessary to effectively safeguard assets for the benefit of investors . . . and to guard against potential dissipation.'" *CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, No. 21-CV-60462, 2021 WL 1738764, at *2–3 (S.D. Fla. May 3, 2021) (citation omitted). Here, expansion of the Receivership to include FFP is appropriate to effectively safeguard assets for the benefit of investors and to guard against potential dissipation. The proposal by FFP to leave an insider and the wife of Mr. Frost in charge of such assets is insufficient and ignores that the Old Glory Shares were purchased with tainted funds from the other entities subject to the Receivership.

D. **Expansion is Necessary to Prevent a Profoundly Unfair and Inequitable Result.**

29. The Receiver's preliminary estimate is that the Old Glory shares owned by FFP could be worth as much as $4 Million. This will be a significant recovery in this case which should inure to the benefit of investors, whose funds were used to purchase this stock. Should expansion be denied, the Frost family could well receive a windfall profit at the expense of investors. Indeed, it is apparent from reviewing the flow of funds outlined in **Exhibits C – E** attached hereto and the emails attached hereto, that Mr. Frost's intent from the start was to divert investor funds for the benefit of his family. Such a result would be profoundly unfair to the investors who have already been damaged by the misconduct that led to appointment of the Receiver.

## IV. <u>CONCLUSION</u>

30. Under the circumstances, the court is authorized to expand the Receivership to include FFP and the Receiver recommends that FFP be added to the Receivership. Incident thereto, the Receiver requests that the Court extend any orders currently applicable to the Receiver, the Defendants, and the Relief Defendants in Receivership, regarding Receivership, to similarly apply to FFP.

For the foregoing reasons, the Receiver requests that this Court grant the Motion as to FFP and grant the Receiver such other and further relief as is just and

proper.

Respectfully submitted this 19th day of August, 2026.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*

Henry F. Sewell, Jr.
Georgia Bar No. 636265
Counsel for the Receiver
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053; hsewell@sewellfirm.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | **Civil Action File No.** |
| **Plaintiff,** | : | **1:25-cv-3826-MLB** |
| **v.** | : | |
| **EDWIN BRANT FROST IV and** | : | |
| **FIRST LIBERTY BUILDING & LOAN, LLC,** | : | |
| **Defendants, and** | : | |
| **FIRST LIBERTY CAPITAL PARTNERS LLC, et. al,** | : | |
| **Relief Defendants.** | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing *REPLY TO RESPONSE OF FAMILY FINANCIAL PARTNERS, LLC ("FFP") AND KRISTA FROST TO RECEIVER'S MOTION TO ADD FFP TO THE RECEIVERSHIP* with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

This 19th day of August, 2026.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053; hsewell@sewellfirm.com
Counsel for the Receiver

## EXHIBIT A

**Subject:** $240k wire out today
**Date:** Friday, October 18, 2024 at 4:14:03 PM Eastern Daylight Time
**From:** Brant Frost IV
**To:** Brant Frost V

Son,

Please send a wire to from our Family Financial Partners account ending 5469, in the amount of $240,000.00, to Old Glory Bank using the information on the text I just sent you.

Needs to go out by 4:30pm sharp please, not a minute later; let me know once it's gone.

Thanks Son.

Brant Frost, IV
***First Liberty Building & Loan***
Newnan, GA
770-253-4300-office
404-664-9086-cell

**EXHIBIT B**

---

**Subject:** Your Shares
**Date:** Monday, October 21, 2024 at 8:42:24 AM Eastern Daylight Time
**From:** Michael P. Ring
**To:** 'Brant Frost IV (bf4@firstlibertyga.com)'

Hello My Brother,

Here is a summary of your shares. Please let me know if you see anything incorrect:

1. In Round #1, you purchased 552,750 shares, plus you purchased 50,000 from Billy. Thus, a total of 602,750 Class A in Round #1. $50k of this is for Brant V, but we *never* broke these out and they are still in Family Financial Partners, LLC. If you want to now break them out, let me know the name of the vehicle for Brant V (or confirm he'll hold them personally) and I'll do an assignment and document.

2. As a founder, you were issued 100,000 (bonus) shares of Class B, of which 50k came from Billy.

3. In this Pre-IPO, you purchased 10,000 shares and then an additional 40,000 shares, for a total of 50,000 shares. Plus, you have a warrant to purchase 50,000 shares at $6.00 per share, exercisable for 10 years.

In summary, this is what I show you have:

1. Class A Shares – 652,750 (including 50k you are holding for Brant V)

2. Class B Shares – 100,000

3. Class B 10-Year warrant at $6.00 – 50,000

All sound right?

Thanks!

Ringer

The Ring Firm, P.C.
3350 Riverwood Parkway
Suite 1900
Atlanta, Georgia 30339
Direct: 678.608.2790
Fax: 678.608.2791
RingM@RingFirm.com

# EXHIBIT C

$552,750 for Purchase of 552,750
Round 1 Shares from Old Glory
December 2021




[1] Using the concept of first dollar in is the first dollar out. A review of First Liberty Capital Funding bank statement for account # xxx2852 shows that between 12/1/2021 and 12/22/2021 (the day before the transfer to Legacy Family Partners for the purchase of 552,750 shares of Old Glory Stock) a total of $3,000,276.56 was withdrawn from this account. The source of the funds for the $3,000,276.56 was the 12/1/2021 opening balance of $1,722,621.36 plus additional credits/deposit from investors and loan repayment to the account of $1,277,655.20 through a portion of 12/21/21. Deposits into acct #2852 on 12/21/21 and 12/22/21, which were solely investor funds and a loan repayment, were the source of funds for the $500,000 transfer to Legacy Family Partners on 12/23/21 for the purchase of the Old Glory stock.

2 The funds for the transfer from the Liberty Group $50,000 to Legacy Family Partners account was a deposit from Brant Frost IV's Coinbase account.

[3] Legacy Family Partners, LLC is a Receivership Entity.

# EXHIBIT D

$50,000 for Purchase of 50,000 Founder Shares from
Brookwood Capital (Billy Lovett)
April 2022

| Date | Flow | Bank balance at time of |
|---|---|---|
| | First Liberty Building & Loan LLC - Acct xxx2663 | |
| 4/26/2022 | ↓ $50,000.00 ↓ | |
| | The Liberty Group LLC - Acct xxx3854 | $11,327.32 * |
| 4/26/2022 | ↓ $50,000.00 ↓ | |
| | Family Financial Partners LLC - Acct xxx5469 | $9,941.00 |
| 4/26/2022 | ↓ $50,000.00 ↓ | |
| | Check 2003 to Brookwood Capital for 'OGB Stock' | |

* Can be traced to First Liberty Building & Loan LLC Acct # 2663 and First National Investments LLC Acct # 0003

$50,000 for Purchase of 50,000 Round 1 Shares from
William E. Lovett IRA
November 2023

| Date | Transfer | Bank balance at time of |
| --- | --- | --- |
| | First Liberty Building & Loan LLC - Acct xxx2663 | |
| | ↓ | |
| 11/3/2023 | $50,000.00 | |
| | ↓ | |
| | The Liberty Group LLC - Acct xxx3854 | $10,125.82 * |
| | ↓ | |
| 11/3/2023 | $50,000.00 | |
| | ↓ | |
| | Family Financial Partners LLC - Acct xxx5469 | $1,393.00 |
| | ↓ | |
| 11/3/2023 | $50,000.00 | |
| | ↓ | |
| | Check 2004 to William E Lovett IRA for OGB Stock Transfer | |

* Can be traced to First Liberty Building & Loan LLC Acct # 2663

# EXHIBIT E

$60,000 for Purchase of 10,000 Pre-IPO Shares from Old Glory
September 2024

| Date | Flow | Bank balance at time of |
|---|---|---|
| | Various Investors | |
| | ↓ | |
| 9/1/2024 to 9/30/2024 | $2,875,000.00 | |
| | ↓ | |
| | First Liberty Capital Partners LLC (Notes Account) xxx6642 | |
| | ↓ | |
| 9/11/2024 to 9/27/2024 | $2,400,000.00 | |
| | ↓ | |
| | First Liberty Capital - Acct xxx2852 | |
| | ↓ | |
| 9/30/2024 | $50,000.00 | |
| | ↓ | |
| | First Liberty Building & Loan LLC - Acct xxx2663 | |
| | ↓ | |
| 9/30/2024 | $60,000.00 | |
| | ↓ | |
| | The Liberty Group LLC - Acct xxx3854 | $23,591.19 * |
| | ↓ | |
| 9/30/2024 | $60,000.00 | |
| | ↓ | |
| | Family Financial Partners LLC - Acct xxx5469 | $1,384.00 |
| | ↓ | |
| 9/30/2024 | $60,000.00 | |
| | ↓ | |
| | Old Glory Holding Company | |

* Can be traced to First Liberty Building & Loan LLC Acct # 2663

$240,000 for Purchase of 40,000 Pre-IPO Shares from Old Glory
October 2024

| | | |
|---|---|---|
| | Various Investors | |
| | ↓ | |
| 10/1/2024 to 10/18/2024 | $4,225,000.00 | |
| | ↓ | |
| | First Liberty Capital Partners LLC (Notes Account) xxx6642 | |
| | ↓ | |
| 10/18/2024 | $250,000.00 | |
| | ↓ | |
| | First Liberty Capital - Acct xxx2852 | |
| | ↓ | |
| 10/18/2024 | $250,000.00 | |
| | ↓ | |
| | First Liberty Building & Loan LLC - Acct xxx2663 | |
| | ↓ | |
| 10/18/2024 | $250,000.00 | Bank balance at time of Transfer |
| | ↓ | |
| | The Liberty Group LLC - Acct xxx3854 | $40,741.44 * |
| | ↓ | |
| 10/18/2024 | $240,000.00 | |
| | ↓ | |
| | Family Financial Partners LLC - Acct xxx5469 | $1,384.00 |
| | ↓ | |
| 10/18/2024 | $240,000.00 | |
| | ↓ | |
| | Old Glory Holding Company<br>Purchase of 40,000 shares | |

* Can be traced to First Liberty Building & Loan LLC Acct # 2663