**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC,<br><br>Defendants, and<br><br>FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC,<br><br>Relief Defendants. | : | CIVIL ACTION NO.<br><br>1:25-cv-03826-MLB |

**EMERGENCY MOTION OF LISA BROWN AND HAVEN REAL ESTATE HOLDINGS OF WINDER, LLC FOR A STATUS CONFERENCE AND FOR INTERIM ORDERS TO SECURE AND PRESERVE THE WINDER PROPERTY**

Lisa Brown and Haven Real Estate Holdings of Winder, LLC (together, the "Haven Parties"), whose motion to intervene [Doc. 92] this Court held in abeyance on July 22, 2026 [Doc. 106] and who are defendants in the related action *Hays v.*

*Brown, et al.*, No. 1:26-cv-03283-MLB (N.D. Ga.), respectfully move the Court on an emergency basis, pursuant to Local Rule 7.2(B) and the Court's inherent supervisory authority over its Receiver, for (i) a status conference at the Court's earliest availability and (ii) interim orders directing the Receiver to secure, insure, remediate, preserve, and account for the real property at 169 W. Athens Street, Winder, Georgia (the “Winder Property”), and confirming that no sale or auction of the Winder Property proceeds pending the conference. The grounds are as follows.

## I. BACKGROUND

1. The Court appointed S. Gregory Hays as Receiver on July 11, 2025 [Doc. 6]. On August 6, 2025, the Receiver's counsel wrote that the Winder Property “was unsecured” when he drove through it the prior evening and demanded that keys or access codes be turned over to the Receiver; the Haven Parties’ counsel provided the lockbox code to the Receiver's real estate manager that same day. From that date, the Receiver held exclusive possession and control of the Winder Property, a senior living facility that stood at approximately 85% completion, and excluded the Haven Parties from it. (July 22, 2026 Hr'g Tr. (“Tr.”) 32.) The Winder Property is among the most valuable hard assets of the receivership estate: the Receiver's own August 18, 2026 settlement correspondence priced it at $2,750,000, and Ms. Brown had prospective purchasers prepared to pay more than $3,900,000 for the completed project.

2. On July 22, 2026, the Court heard argument on the Receiver's motion for an order of sale [Doc. 95] and the Haven Parties' motion to intervene [Doc. 92], held both motions in abeyance, and directed the parties to spend thirty days determining whether the matter could be resolved. [Doc. 106; Tr. 34.] The Court framed the governing principle: the Receiver "is entitled to no better situation than Frost would have been in," and Ms. Brown is "entitled to be in the position she was supposed to be in, but no worse and no better." (Tr. 36-37.) Since the hearing, the parties have exchanged detailed written settlement proposals dated August 3 and August 18, 2026, and agreed to reciprocal inspections, which the Court encouraged. (Tr. 38-39.) The Haven Parties' written response to the August 18 proposal was finalized for delivery on August 20, when the events described below intervened.

3. The inspections took place on August 20, 2026. The Receiver's representative inspected the operating Haven Athens facility without incident, and then met Ms. Brown and her brother at the Winder Property.

## II. THE AUGUST 20, 2026 INSPECTION OF THE WINDER PROPERTY

4. The Winder Property was found occupied by trespassers. Persons were living in the buildings, and individuals were found using drugs inside. Hypodermic needles and other drug paraphernalia were present, and bedding had been set up in the cottages. The Winder Police Department had to be dispatched to clear the buildings before the inspection could proceed safely, and arrests were made. Officers

directed those present, including Ms. Brown's brother and the Receiver's representative, to stand back while the buildings were searched because of the quantity of drug materials inside. Contemporaneous video, whose embedded device metadata records August 20, 2026 at 2:52 p.m. and geolocates the recording to the Property, shows three marked City of Winder police vehicles on site.

5. The physical condition of the Winder Property reflects prolonged neglect. The HVAC systems have been stripped of their copper and destroyed. The commercial kitchen equipment has been broken apart and ruined. A water pipe burst inside the facility during the Receiver's custody and was not properly remediated; mold followed, and the lower portions of drywall, baseboard, and molding have been cut away through substantial portions of the interior, which remains open, exposed, and unrestored. The grounds are overgrown to the point that buildings are barely visible from the drive. Photographs from the inspection, together with still frames from the contemporaneous video, are attached as Exhibit B; the video itself will be provided as the Court directs.

6. The cause and the timeline were supplied on site by the Receiver's own representative. He told Ms. Brown during the inspection that the pipe burst in March 2026, and that the Receiver learned of it only when the owner of the neighboring hotel called to report water running through the building. He attributed the flood cuts, which removed newly installed drywall and finished trim, to mold that had

already taken hold by the time anyone responded. The Receiver never disclosed the casualty to the Haven Parties. On August 18, 2026, with the loss known to the estate for months, the Receiver's counsel priced the Winder Property at $2,750,000 in settlement correspondence while demanding the Haven Parties' financial disclosures and proof of their ability to close.

7. The Receiver's team had represented to Ms. Brown that the Winder Property was being physically inspected once each week. The conditions found on August 20, and the five months the March water loss went undetected until a neighbor reported it, cannot be reconciled with that representation. The Haven Parties' preliminary assessment is that restoring the Winder Property to the condition in which the Receiver received it will approach $1,000,000.

8. On the morning of August 21, 2026, counsel for the Receiver wrote to the undersigned: “In light of the discovery yesterday at Winder, the Receiver needs to move forward with a sale, either to your client or at auction.” (Ex. C.) That is, the Receiver proposes to respond to the deterioration of an asset in his exclusive custody by forcing an immediate sale of it, at a price fixed before the damage was known, or by auctioning it in its present stripped and unremediated condition. The Haven Parties' committed third-party financing is underwritten against the Winder Property itself; appraisal access was first requested on August 3, 2026, and no appraisal had occurred as of the August 20 inspection.

9. That afternoon, the Receiver filed a status report asking the Court to establish a hearing schedule on the sale motion. [Doc. 121.] The report describes the August 20 findings as the discovery that “a vagrant had broken into the building,” states that “it appears that the vagrant entered the property sometime in the past week,” reports approximately $500 in maintenance “to address vandalism issues,” and represents that the Receiver's “maintenance and management of the Winder Property has been frequent and consistent.” [Doc. 121 ¶¶ 6, 8, 9.] It does not mention the March 2026 water loss, the mold, or the demolition. It gives the inspection date as “August 19, 2022” [Doc. 121 ¶ 5] and describes the police response as “a police officer.” [Doc. 121 ¶ 6.] The photographs at Exhibit B, and the statements of the Receiver's own representative on August 20, cannot be reconciled with that account.

10. After the Receiver's report was filed, the undersigned sent the Receiver's counsel a demand letter, attached as Exhibit A, requesting that the Receiver immediately secure the Property, notify the estate's insurance carrier and remediate the water and mold damage, preserve all inspection and custody records, and stand down on the auction demand. The letter advised that this motion would follow and was copied to the Commission's counsel of record.

## III. GROUNDS FOR EMERGENCY RELIEF

11. A receiver is an officer of the Court charged with preserving and protecting the property committed to his custody, for the benefit of the estate and all

interested parties. The Appointment Order [Doc. 6] vests the Receiver with custody and control of the Receivership Parties' assets for exactly that purpose. The conditions documented on August 20 show that the estate's principal hard asset has instead been left unsecured, uninhabitable in part, open to trespass and criminal activity, and physically wasting. The record now also indicates that the estate knew of the March 2026 water loss for months, undertook demolition in response to it, and disclosed none of it to the Haven Parties while negotiating a price for the same asset. Every dollar of value lost at the Winder Property is a dollar lost to the defrauded investors for whose benefit the Commission sought this receivership, and to the Haven Parties, whose payoff obligations, collateral, and equity depend on the same asset.

12. The July 22 framework also presupposed an intact asset. Every commitment the Haven Parties made at the hearing, including the willingness to pay the documented Winder loan payoff and the $750,000 prior owner obligation, was made in the belief that the Winder Property stood as it was tendered to the Receiver in August 2025, and the Receiver's own pricing assumed the same. By his representative's account, the estate knew otherwise. Ms. Brown cannot be kept “no worse and no better” (Tr. 37) by measuring her rights against a destroyed asset: as between an innocent borrower and the custodian in whose exclusive control the asset

was destroyed, the loss falls on the estate. Interim relief preserves the Court's ability to allocate that loss on a full record.

13. The emergency is present and continuing. The Property remains unsecured and exposed; trespassers were removed only upon the August 20 police response; ongoing water, mold, and weather intrusion compounds the damage daily; and the Receiver has announced his intent to force an immediate sale or auction notwithstanding the Court's July 22 abeyance of the sale motion [Docs. 95, 106], before the Property is secured, remediated, insured against the loss, or appraised. The Receiver's report confirms that the estate carries insurance on the Property [Doc. 121 ¶ 8], yet identifies no claim for the water loss, and its proposal for security going forward is to offer the buildings to the City of Winder for weekly canine training. [Doc. 121 ¶ 7.] The thirty-day window the Court set at the July 22 hearing closed on August 21, 2026; the Receiver's report is on file, and the Haven Parties' status report, filed contemporaneously with this motion, sets out the record in full.

14. Interim relief lies squarely within the Court's broad equitable authority to supervise its receiver and to protect receivership property. The Haven Parties do not ask the Court to resolve any disputed claim on this motion. They ask only that the asset be stabilized, that the record of its custody be preserved and disclosed, and that no irreversible disposition occur while the Court considers the matter.

## IV. RELIEF REQUESTED

The Haven Parties respectfully request that the Court:

(a) Set the conference the Receiver has requested [Doc. 121 ¶ 12] at the Court's earliest availability;

(b) Direct the Receiver immediately to secure the Winder Property (including lawful removal of any occupants in coordination with the Winder Police Department, new locks, secured points of entry, and monitored security), to engage a licensed water and mold remediation contractor, to give notice of the loss to the estate's insurance carrier, and to confirm that the Property has been continuously insured since July 11, 2025;

(c) Direct the Receiver to file, within seven days, a report describing the condition of the Winder Property, the dates and persons involved in every inspection of the Property during the receivership, the date the Receiver first learned of the March 2026 water loss and the identity of the person who reported it, the demolition and remediation undertaken in response, the insurance maintained on the Property and any claims made, and an itemized accounting of all amounts spent to maintain, secure, insure, or repair the Property since July 11, 2025;

(d) Direct the Receiver and his professionals to preserve all records relating to the custody, inspection, maintenance, security, insurance, and marketing of the Winder Property;

(e) Confirm that the Receiver's motion for an order of sale [Doc. 95] remains in abeyance and that no sale, auction, or marketing for sale of the Winder Property will proceed pending the status conference; and

(f) Direct the Receiver to provide access to the Winder Property for the appraiser retained by the Haven Parties' lender, and grant such other relief as the Court deems just.

Pursuant to Local Rule 7.2(B), the Haven Parties submit that the facts set forth above constitute the requisite emergency. The Receiver's counsel and the Commission's counsel of record received the Exhibit A letter, with the photographs, on August 21, 2026, and were advised that this motion would be filed.

Respectfully submitted, this 21st day of August, 2026.

**EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC**

**BY:** *_/s/ Kevin E. Epps_*
Kevin E. Epps
Georgia Bar No. 785511
*Attorney for Lisa Brown and*
*Haven Real Estate Holdings of Winder, LLC*

1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000
kevin@ehdhlaw.com

## LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned certifies that the foregoing has been prepared in Times New Roman, 14 point, one of the font and point selections approved by the Court in Local Rule 5.1(C).


**EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC**

BY: *<u>/s/ Kevin E. Epps</u>*
Kevin E. Epps
Georgia Bar No. 785511
*Attorney for Lisa Brown and*
*Haven Real Estate Holdings of Winder, LLC*

1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000
kevin@ehdhlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record, including counsel for the Receiver and counsel for the Securities and Exchange Commission.

**EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC**

BY: *<u>/s/ Kevin E. Epps</u>*
Kevin E. Epps
Georgia Bar No. 785511
*Attorney for Lisa Brown and*
*Haven Real Estate Holdings of Winder, LLC*

1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000
kevin@ehdhlaw.com