**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC,<br><br>Defendants, and<br><br>FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC,<br><br>Relief Defendants. | : | CIVIL ACTION NO.<br><br>1:25-cv-03826-MLB |

**<u>HAVEN PARTIES' STATUS REPORT AND RESPONSE TO THE RECEIVER'S STATUS REPORT [DOC. 121]</u>**

Lisa Brown and Haven Real Estate Holdings of Winder, LLC (together, the "Haven Parties"), whose motion to intervene [Doc. 92] the Court held in abeyance on July 22, 2026 [Doc. 106], respectfully submit this status report at the close of the thirty-day window the Court set at the July 22, 2026 hearing (July 22, 2026 Hr'g Tr.

(“Tr.”) 34), and respond to the Receiver's *Status Report Regarding Sale of Winder Property and Request for Hearing on Sale Motion* [Doc. 121], filed this afternoon.

## I. THE PARTIES' EFFORTS DURING THE THIRTY-DAY WINDOW

1. At the July 22 hearing, the Court held the Receiver's motion for an order of sale [Doc. 95] and the Haven Parties' motion to intervene [Doc. 92] in abeyance and directed the parties to use the next thirty days to determine whether the matter could be resolved. [Doc. 106; Tr. 34.] Since the hearing, the parties have exchanged detailed written proposals: the Haven Parties' August 3, 2026 offer; the Receiver's August 10, 2026 rejection and request for seven categories of financial information; and the Receiver's August 18, 2026 counteroffer, the “revised payoff” referenced at paragraph 3 of his report.

2. The Receiver's statement that the Haven Parties “refused to provide” financial information [Doc. 121 ¶ 3] requires correction. The Haven Parties finalized a comprehensive written response to the Receiver's August 18 counteroffer, including a revised offer supported by a complete line-item schedule and a commitment to deliver the requested financial information, including 2025 financial statements, 2026 year-to-date financial statements, the 2026 general ledger, the current rent roll, current lender correspondence, and Ms. Brown's updated personal financial statement, by August 26, 2026. That response was finalized for delivery on August 20, 2026. What the parties found at the Winder Property that afternoon

intervened. The production commitment stands, and the materials will be delivered as stated.

3. As to the "Winder Resolution" described at paragraph 2 of the Receiver's report: the commitment made in open court was to pay the documented payoff of the Winder construction loan together with the $750,000 prior owner obligation. (Tr. 31, 33-34.) The two-million-dollar component was counsel for the Receiver's estimate of that loan's balance (Tr. 10), and the Haven Parties remain prepared to pay every documented dollar a loan-level accounting shows. That accounting, requested throughout this dispute, has not been provided.

4. The parties also agreed to reciprocal inspections, which the Court encouraged. (Tr. 38-39.) The inspections took place on August 20, 2026, not "August 19, 2022" as the Receiver's report states. [Doc. 121 ¶ 5.] Contemporaneous video taken during the Winder inspection carries embedded device metadata recording August 20, 2026 at 2:52 p.m. and geolocating the recording to the Property. The Receiver's representative inspected the operating Haven Athens facility at 1:00 p.m. without incident; as the Receiver acknowledges, the Haven Parties "fully cooperated." [Doc. 121 ¶ 5.] The Receiver's representative then met Ms. Brown and her brother at the Winder Property.

## II. WHAT THE AUGUST 20 INSPECTION OF THE WINDER PROPERTY FOUND

5. The Winder Property was found occupied. Persons were living in the buildings, and individuals were found using drugs inside. Hypodermic needles and other drug paraphernalia were present, and bedding had been set up in the cottages. The Winder Police Department responded with multiple units and cleared and searched the buildings before the inspection could proceed safely; officers directed those present, including Ms. Brown's brother and the Receiver's representative, to stand back during the search because of the quantity of drug materials inside, and arrests were made. The contemporaneous video shows three marked City of Winder police vehicles on site. The Receiver's report itself acknowledges the police response, the confiscation of drug paraphernalia, and the recovery of an identification card belonging to a person “already jailed on other charges.” [Doc. 121 ¶ 6.]

6. The physical condition of the Property reflects prolonged neglect, not a single week of vandalism. The HVAC systems have been stripped of their copper and destroyed. The commercial kitchen equipment has been broken apart and ruined. A water pipe burst inside the facility during the Receiver's custody and was not properly remediated; mold followed, and the lower portions of drywall, baseboard, and molding have been cut away through substantial portions of the interior, which remains open, exposed, and unrestored. The grounds are overgrown to the point that

buildings are barely visible from the drive. Photographs from the inspection, together with two still frames from the contemporaneous video, are attached as Exhibit 1. The video itself, including the police response, will be lodged with the Court on request.

7. The cause and the timeline were supplied on site by the Receiver's own representative. He told Ms. Brown during the inspection that the pipe burst in March 2026, and that the Receiver learned of it only when the owner of the neighboring hotel called to report water running through the building. He attributed the flood cuts, which removed newly installed drywall and finished trim, to mold that had already taken hold by the time anyone responded. None of this was ever disclosed to the Haven Parties: not when it happened, not in the months of correspondence that followed, and not in the Receiver's August 10 or August 18 settlement letters, the latter of which priced the Winder Property at $2,750,000 twelve days before this report. The Haven Parties' preliminary assessment is that restoring the Property to the condition in which the Receiver received it will approach $1,000,000.

8. The Receiver took exclusive control of the Winder Property in the receivership's first weeks. On August 6, 2025, his counsel wrote that the Property "was unsecured" when he drove through it the prior evening and demanded that keys or access codes be turned over; the Haven Parties' counsel provided the lockbox code to the Receiver's real estate manager that same day. The Property was then

approximately 85% complete, and the Haven Parties were locked out of it. (Tr. 32.) Ms. Brown had prospective purchasers prepared to pay more than $3,900,000 for the completed project. (Tr. 26.)

## III. THE RECEIVER'S REPORT UNDERSTATES THE CONDITION OF THE PROPERTY

9. The Receiver's report describes the events of August 20 as the discovery that "a door was unlocked, a side door plywood board had been removed, and a vagrant had broken into the building," states that "it appears that the vagrant entered the property sometime in the past week as the last confirmation that all doors were locked was on August 17, 2026," and reports approximately $500 in maintenance "to address vandalism issues." [Doc. 121 ¶¶ 6, 8.] It represents that "the Receiver's maintenance and management of the Winder Property has been frequent and consistent," that a representative "visits the [Winder] Property periodically," that "the landscaper checks all doors every time services are performed," and that "neighbors routinely check on the property." [Doc. 121 ¶¶ 6, 9.]

10. The photographs at Exhibit 1 are the response. Bedding in the cottages, needles and methamphetamine paraphernalia throughout, stripped mechanical systems, a destroyed commercial kitchen, walls cut open since a March water loss and never restored, and grounds so overgrown that the buildings are hard to find are not one week of vandalism by one vagrant, and $500 will not address them. The

report likewise describes the police response as "a police officer" who "toured the Winder Property" [Doc. 121 ¶ 6]; the contemporaneous video shows three marked City of Winder police vehicles on site. As for the neighbors: the one documented instance of a neighbor checking on the Property is the March 2026 call from the adjoining hotel owner reporting water running through the building, a call that was necessary because the estate's own visits had not discovered the loss.

11. Most significantly, the Receiver's report does not mention the March 2026 water loss, the mold, or the demolition at all, though his own representative described them to Ms. Brown on site the day before the report was filed. The Court is being asked to schedule a sale of this asset on an account of its condition that omits the central casualty affecting its value. The report does confirm [Doc. 121 ¶ 8] that the estate carries insurance on the Property; the Haven Parties are aware of no claim noticed for the water loss, and the Receiver's proposal to remedy site security going forward is to offer the buildings to the City of Winder for "weekly canine training." [Doc. 121 ¶ 7.]

## IV. THE HAVEN PARTIES' POSITION AND REQUESTS

12. The Haven Parties do not oppose a conference; they join the Receiver's request for one [Doc. 121 ¶ 12] and ask that it be set at the Court's earliest availability. By emergency motion filed contemporaneously with this report, the Haven Parties ask the Court to enter interim orders directing the Receiver to secure

the Property, engage licensed water and mold remediation, notice the insurance claims, preserve all custody and inspection records, file a report accounting for the Property's condition and custody since July 11, 2025, and provide access for the appraiser retained by the Haven Parties' lender, and to confirm that no sale, auction, or marketing for sale proceeds pending the conference.

13. To be clear about the Haven Parties' position: every commitment made in open court on July 22, including the willingness to pay the documented payoff of the Winder construction loan and the $750,000 prior owner obligation, was made in the belief that the Winder Property stood in the condition in which it was turned over to the Receiver in August 2025: secure, sound, and approximately 85% complete. The $2,750,000 discussed at the hearing, and the "Winder Resolution" framing of the Receiver's report, rest on the same assumption. By the account of the Receiver's own representative, the estate had known since March that the assumption was false. At the hearing itself, the Receiver's counsel disputed the Property's completion, described it as "an empty shell" with "all the finishing work" remaining, and told the Court "I've got pictures." (Tr. 31.) If the lower walls had by then been cut away because of the March water loss, that description had an explanation the Court and the Haven Parties were never given.

14. What was found on August 20 therefore changes the premise of the resolution, not merely its schedule. The Court's framing at the hearing remains the

touchstone: the Receiver “is entitled to no better situation than Frost would have been in,” and Ms. Brown is “entitled to be in the position she was supposed to be in, but no worse and no better.” (Tr. 36-37.) Holding Ms. Brown to commitments premised on an intact asset, while the estate tenders a destroyed one, would leave her materially worse off through no fault of her own and would leave the estate better off for its own custodial failure. As between an innocent borrower and the custodian in whose exclusive control the asset deteriorated, that difference falls on the estate. The Haven Parties remain ready to resolve this matter. Their third-party financing, underwritten against the Winder Property itself, remains in place, and the financial production described above will be delivered by August 26, 2026. But no sale, whether to the Haven Parties or at auction, can responsibly proceed until the estate discloses the full extent of the casualty and its custody records, the Property can be appraised as it actually stands, and the allocation of that loss is before the Court.

15. The Haven Parties reserve all rights, claims, and defenses, including their claims arising from the waste, loss, and diminution in value of the Winder Property, from the impairment of the collateral underlying their financing, and from the nondisclosure of the March 2026 casualty during the parties' negotiations, and their objections to any sale of the Property. This report is not a waiver of any of them.

Respectfully submitted, this 21st day of August, 2026.

**EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC**

BY: */s/ Kevin E. Epps*

Kevin E. Epps
Georgia Bar No. 785511
*Attorney for Lisa Brown and*
*Haven Real Estate Holdings of Winder, LLC*

1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000
kevin@ehdhlaw.com

## LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned certifies that the foregoing has been prepared in Times New Roman, 14 point, one of the font and point selections approved by the Court in Local Rule 5.1(C).

**EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC**

BY: */s/ Kevin E. Epps*
Kevin E. Epps
Georgia Bar No. 785511
*Attorney for Lisa Brown and*
*Haven Real Estate Holdings of Winder, LLC*

1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000
kevin@ehdhlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record, including counsel for the Receiver and counsel for the Securities and Exchange Commission.


**EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC**

BY: */s/ Kevin E. Epps*
Kevin E. Epps
Georgia Bar No. 785511
*Attorney for Lisa Brown and*
*Haven Real Estate Holdings of Winder, LLC*

1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000
kevin@ehdhlaw.com