UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>Plaintiff,<br>v.<br>EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC,<br>Defendants, and<br>FIRST LIBERTY CAPITAL PARTNERS LLC, et. al.,<br>Relief Defendants. | : | Civil Action File No.<br>1:25-cv-3826-MLB |

**FIFTH QUARTERLY REPORT OF RECEIVER**

S. Gregory Hays, as Court-Appointed Receiver ("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in the above-captioned case (the "**Case**" or "**Receivership**"), by and through counsel, hereby files this *Fifth Quarterly Report of Receiver* (the "**Report**") for the period of July 1, 2026 through September 30, 2026 (the "**Reporting Period**") and respectfully shows as follows:[1]

[1] The Receiver previously filed a report on July 21, 2025 [Doc. No. 14] and quarterly reports on October 30, 2025 [Doc. No. 32], October 30, 2025 [Doc. No. 73], April 30, 2026 [Doc. No. 85], and April 1, 2026, through June 30, 2026 [Doc. No. 110] (the "**Fourth Quarterly Report**" and collectively, the "**Reports**"). Capitalized, but undefined terms used herein shall have the meaning ascribed to such terms in the Reports.

## I. INTRODUCTION

1. The Receiver continues to progress in the administration of the Receivership and identifying, securing, and recovering assets for the benefit of the estate arising from the Receivership (the "**Receivership Estate**"). To date, the Receiver has taken possession of funds in bank accounts of the Receivership Entities, seized and sought the liquidation of certain Receivership Assets, analyzed, evaluated, and initiated collection efforts with regard to the loans made by the Receivership Entities. At the conclusion of the Reporting Period, the Receivership Estate held $4,831,779.41. This sum includes the amount of $2,397,680.61 that was wired to the Receivership by 2406 Cancer Care LLC ("**Cancer Care**"). The circumstances surrounding this tender were explained in prior Reports.

2. During the Reporting Period, the Receiver and the professionals of the Receiver continued to communicate with parties with knowledge of Receivership Assets. Incident thereto, the Receiver cooperated with the investigation of the Georgia Secretary of State, the Assistant U.S. Attorney, and the SEC.

3. The Receiver continues to maintain a website for this Case at www.firstlibertyreceivership.com (the "**Website**") where parties-in-interest can obtain free access to all pleadings in the Case and subscribe to receive recurring

notifications of pleadings filed on the docket in the Case.[2]

4. The prior Reports filed by the Receiver contain detailed reports regarding the Receiver's activities prior to the Reporting Period and contain a listing and description of all assets known to the Receiver that is supplemented by this Report. This Report should be read in conjunction with prior reports and is intended to supplement same. The Receiver has attempted to avoid here repetition and duplication from the prior Reports.

5. The Receiver continues to search for additional assets and will report on the discovery of additional assets to the Court in subsequent reports.

6. The Receiver will continue to investigate the claims that the Receivership Estate may have against third parties, gather relevant information and documents among records of the Receivership Entities and report efforts and activities in status reports and other court filings until such time as the Court may discharge the Receiver of his duties.

[2] To limit costs and administrative burdens, all parties are encouraged to search the Website before attempting to contact the Receiver directly. If inquiries are not addressed by referencing the Website, the Receiver has established an email and phone number incident to which investors and other parties can communicate with the Receiver: FirstLibertyInquiries@stretto.com and 404-926-0060.

## II. SIGNIFICANT DEVELOPMENTS SINCE THE FILING OF THE FOURTH QUARTERLY REPORT.

### A. Claims Procedures.

7. The Court has now approved a Claims Process (as defined below) for the administration of claims related to the Receivership Entities. As previously reported, the Georgia Secretary of State announced an agreement with Bankers life to repay certain claims of certain investors (the "**Bankers Life Claims**") who lost money in the collapse of the Receivership Entities. The Receiver has been informed that claim forms were distributed in June and that checks for the Bankers Life Claims were mailed in September, 2026. The payment to the Bankers Life Claims will benefit the remaining investors by reducing the total amount of claims that will ultimately exist in this Case.

8. On August 10, 2026, the Receiver filed a *Motion to Approve Claims Process and Brief in Support Thereof* [Doc. No. 117] seeking an order approving the proposed claims process in the Receivership (the "**Claims Procedures Motion**"). On October 2, 2026, Dorothy Bates filed a response [Doc. No. 130] to the Claims Procedures Motion in which Ms. Bates expressed concerns regarding the consolidation of claims, adjustments to claims, and appeal rights.

9. On October 8, 2026, the Court held a hearing on the Claims Process Motion at which the Court: a) heard from counsel for the Receiver, Ms. Bates, and

other parties; and b) identified certain modifications to be made to the proposed order to be submitted by counsel for the Receiver related to the Claims Procedures Motion. In addition to filing a minute entry [Doc. No. 137] for the proceeding on October 8, 2026, the Court entered an order [Doc. No. 136] identifying an additional revision to the proposed order granting the Claims Procedures Motion.

10. On October 27, 2026, the Court entered an *Order Approving the Claims Process* [Doc. No. 139] (the "**Order Approving Claims Process**") to authorize the Receiver implement the claims process (the "**Claims Process**") as set forth in the Order Approving Claims Process. The schedule applicable to the Claims Process, pursuant to the Order, is as follows:

| | |
|---|---|
| **Day 0** | **Order Approving Claims Process (10/27/2026)** |
| **Day 10** | **Receiver to send out Claims Packages (11/6/2026)** |
| **Day 60** | **Claims Bar Date (12/26/2026)** |
| **Day 90** | **Receiver's Final Determination Date (1/25/2027)** |
| **Day 110** | **Deadline to Appeal Final Determinations (2/14/2026)** |
| **Day 140** | **Receiver's Deadline to File Responses to Appeals (3/16/2027)** |
| **TBD** | **Deadline to File Motion to Approve Plan of Distribution and Initial Distribution Amounts** |

11. Claims Packages will be sent on or before November 6, 2026 as directed in the Order Approving Claims Process.

**B. Sale of Assets**

12. As further detailed in prior Reports, Tie and Timber Technologies, LLC

("**T3**") received a significant amount of proceeds from the Receivership Entities and agreed that such obligations would be repaid pursuant to the terms of the documents underlying the obligations of T3 to the Receivership Entities. The Receiver marshaled control of certain real property and improvements located at 301 S. Cyprus St., Mullins, SC that include a sawmill (the "**T3 Plant**") and certain equipment (the "**T3 Equipment**") that were owned by T3 and pledged as security for the obligations due by T3.

13. As further detailed in prior Reports, FibRETech LLC ("**FibRETech**") entered a loans secured by certain property and a guaranty by Rendell Schmidt. The collateral includes a certain 16700B Horizontal Peterson Grinder (Serial Number 31-53-1301, the "**Grinder")** that was owned by FibRETech.

14. On July 16, 2026, the Receiver filed a motion [Doc. No. 103] to employ an auctioneer to sell the Grinder in conjunction with the sale of the T3 Plant and the T3 Equipment. This Motion was granted pursuant to an order [Doc. No. 109 entered by the Court on July 28, 2026.

15. On September 8, 2026, the Receiver filed a Report of Sale [Doc. No. 128] detailing the sale of the T3 Equipment and Grinder for a gross sales price of $927,375.00 which has been paid into the Receivership Estate.

16. The Receiver anticipates that the T3 Plant itself will be auctioned in the

Fourth Quarter of 2026.

### C. Accounting and Funds Tracing Database.

17. As noted in prior Reports, it was necessary for the Receiver to reconstruct information from records from financial institutions and various third parties and to import this information into a database (the "**Funds Tracing Database**") that currently has data from 19 bank accounts and approximately 48,000 separate transactions. The Funds Tracing Database has been completed by the Receiver and has been used to understand the operations and transactions of the Receivership Entities with various third parties, insiders and affiliates and allowed the Receiver to make substantial progress in the administration of the Receivership. The Receiver will use this database in reviewing claims and continuing to search for assets.

### D. Full Circle LLC Settlement

18. As further detailed in prior Reports, Full Circle LLC aka Normal Recovery ("**Full Circle**") incurred certain obligations secured by certain real property of Timeless Acquisitions LLC and Full Circle in Walton County, Georgia at the intersection of George Pike Sr. Parkway and Bethany Church Road (the "**Walton Collateral**"), all property of Full Circle, and guarantees by David Pike, David Pike II and Christie Pike Nelson.

19. On August 10, 2026, the Receiver filed a *Motion for an Order Approving Full Circle Settlement* [Doc. No. 118] seeking an order approving a settlement of the obligations of Full Circle (the "**Full Circle Settlement**"). On September 23, 2026, the Court entered an order [Doc. No. 129] approving the Full Circle Settlement that provides for the payment of $1,300,000 to the Receivership in accordance with the terms of the Full Circle Settlement. The Receiver anticipates that the Full Circle Settlement will close in early November and that the Estate will receive the first payment of $1 Million in November, 2026.

**E. Family Financial Partners LLC as a Receivership Entity.**

20. As detailed in prior Reports, the Court: a) previously entered an order [Doc No. 89] (the "**Expansion Order**") granting a certain *Motion by Receiver to Expand Receivership With Brief in Support Thereof* [Doc No. 84] (the "**Motion to Expand**") in which the Receiver proposed to add ten (10) entities, including Family Financial Partners LLC ("**FFP**"), to the Receivership to be treated as Receivership Entities under the Appointment Order; and b) subsequently entered an order [Doc No. 93] to: i) set the Expansion Order aside only as to FFP; and ii) allow FFP to intervene in the Case for the determination of whether the Receivership should be expanded to include FFP.

21. On July 20, 2026, FFP and Ms. Frost filed a response [Doc. No. 105]

to the Motion to Expand in which FFP and Ms. Frost: a) contested the addition of FFP to the Receivership; and b) indicated that FFP will be prepared to produce documentation at a hearing on the matter to show how FFP acquired its assets.

22. On August 19, 2026, the Receiver filed a reply [Doc. No. 120] that demonstrated that the assets of FFP, which primarily consists of stock in Old Glory Bank, were acquired with proceeds of the Receivership Entities. Neither FFP nor Mrs. Frost contested the analysis presented by the Receiver.

23. On October 8, 2026, the Court held a hearing on the Motion to Expand as to FFP at which counsel for the Receiver announced a resolution of Mrs. Frost's objection. (the "**FFP Settlement**"). Pursuant to this settlement, Mrs. Frost withdrew her objection to the expansion of the Receivership to include FFP as a Receiver Entity and the Receiver agreed to provide notice to Mrs. Frost of any proposed disposition of the Old Glory Bank stock owned by FFP.

24. The Receiver has filed a proposed consent order to expand the Receivership to include FFP in accordance with the FFP Settlement.

### F. Claims Against Dr. Jerry Williams and Related Entities

25. As detailed in prior Reports, Riverdawg, LLC ("**Riverdawg**") and No Free, LLC ("**No Free**"), entities owned or controlled by Jerry K. Williams ("**Dr. Williams**"), received a significant amount of proceeds from the Receivership

Entities and agreed that such obligations would be repaid pursuant to the terms of the documents underlying their obligations. Such obligations are secured by guarantees by Dr. Williams and Urgent Care 247, LLC aka Urgent Care 24/7 ("**UC**"), another entity owned or controlled by Dr. Williams, and collateral identified in pertinent documents.

26. The total amount owed to the Receivership Estate by the Williams Parties is in excess of $4 Million and is one of the largest claims held by the Receivership. Based on the investigation conducted by the Receiver, the Receiver believes that the value of the collateral securing these loans is more than sufficient to pay the full amount owed to the Receivership Entities.

27. As further discussed in prior Reports, the Receiver filed an Ancillary Complaint against Dr. Williams, UC, No Free, and Riverdawg to initiate Ancillary Case No. 1:26-cv-01349-MLB (the "**Williams Receiver Action**") and Riverdawg, No Free, and Holt Knob Holdings, LLC ("**Holt Knob**"), another entity owned or controlled by Dr. Williams, filed a complaint against the Receiver to initiate related case no. 26-CV-1353 (the "**Williams Action**"). After the Receiver filed a motion to dismiss that complaint filed in the Williams Action, Riverdawg, No Free, Holt Knob, UC and Dr. Williams (collectively, the "**Williams Parties**") filed an Amended Verified Complaint [Doc. No. 5-1] (as amended, the "**Williams Complaint**") that

the Receiver submits is still deficient. Among other deficiencies, the Receiver alleges that the Williams Parties have failed to comply with the Procedures Order [Doc No. 70] entered by the Court in January, 2026, that sets forth the requirements for borrowers to assert counterclaims in connection with their loans or to dispute loan amounts. The Procedures Order has been discussed in prior Reports.

28. On July 16, 2026, the Williams Parties made an additional production of documents regarding their uses of the funds received from the Receivership Entities. The Receiver has advised the Williams Parties that this production was also deficient and has demanded compliance.

29. The Williams Receiver Action and Williams Action have largely been tolled as Receiver has continued negotiations with the Williams Parties during the Reporting Period. While the Receiver has endeavored to keep legal fees and expenses to a minimum in this matter, the Receiver will seek relief through the Court if the Williams Parties do not produce additional documents and/or refinance the debt. The Receiver intends to vigorously enforce the rights of the Receivership Entities in the pending litigation. Default interest is accruing and legal collection fees will be added to the amount due. Moreover, Dr. Williams testified earlier in this Receivership has sufficient financial wherewithal to pay the full amount due and owing. The Receiver anticipates significant additional activities on this matter if the

loan is paid shortly.

## G. Claims Involving Lisa Brown and the Haven Parties

30. As detailed in prior Reports, Lisa Brown caused certain entities owned and controlled by Ms. Brown (collectively, the "**Haven Parties**"), including Haven Memory Care of Athens, LLC ("**HMCA**"), Haven Real Estate Holdings of Athens LLC ("**HREHA**"), and Haven Real Estate Holdings of Winder, LLC ("**HREHW**") to enter certain loans secured by certain collateral and guarantees. HREHW filed a lis pendens shortly before the appointment of the Receiver with respect to certain real property located at 169 W. Athens St., Winder, Georgia (the "**Winder Property**") that is titled in the name of one of the Receivership Entities and has alleged that HREHW has an interest in the Winder Property. The Receiver has disputed the interest asserted the Winder Property.

31. On July 22, 2026, the Court held a hearing on: a) a motion [Doc. No. 92] (the "**Haven Motion**") by Ms. Brown and HREHW seeking to intervene in the Receivership and certain relief with respect to the Winder Property; b) the opposition of the Receiver to the Haven Motion; and c) a motion [Doc. No. 95] (the "**Winder Sale Motion**")[3] by the Receiver to employ an auctioneer to sell the Winder Property

[3] On the same date that the Receiver filed the Winder Sale Motion, the Receiver filed an Ancillary Complaint against Haven Memory Care of Snellville, LLC, HMCA, HREW, and HREHA to initiate Case No. 1:26-cv-03283-MLB (the "**Haven**

free and clear of all liens, claims, interests, and encumbrances that essentially sought to sell the Winder Property pending the resolution of any disputes with the Haven Parties.

32. The Court held a hearing on the Haven Motion and Winder Sale Motion on July 22, 2026. At such hearing, Ms. Brown and HREW offered to purchase the Winder Property in conjunction with satisfying the loan related to HREW. The proposed a sale of the Winder Property to Ms. Brown would still leave unresolved certain claims made in the Haven Collection Action including, in particular, a loan made by the Receivership Entities related to a health care facility in Athens, Georgia, and ultimately did not move forward prior to the deadline of Friday, August 21, 2026.

33. Shortly before this matter was scheduled to come before the Court again at a hearing on October 8, 2026, the Haven Parties and the Receiver agreed, subject to approval by the Court, to a proposed resolution (the "**Haven Settlement**") of the disposition of the Winder Property and the obligations of the Haven Parties to the Receivership. The Haven Settlement was announced at the hearing on October 8, 2026, and will be submitted to the Court for formal approval. The gross settlement

---

**Collection Action**") in an effort to recover certain outstanding loans that were guaranteed by Ms. Brown.

amount is $3.6 Million to be paid to the Receivership Estate in exchange for which the Receiver will release the Haven Parties and Ms. Brown and convey title to the Winder Property to the Haven Parties if a closing occurs by the closing date. In the event that the Winder Property is not conveyed to Haven Parties by the closing date, the Haven Parties shall release their claim to the Winder Property and the Winder Property shall be sold to another party by the Receiver.

### H. Cooperation of Brant Frost IV

34. On October 26, 2026, Mr. Frost was sentenced to fifteen years in prison as a result of a guilty plea entered by him in response to certain criminal charges filed against him in a separate federal case. At that sentencing hearing, Mr. Frost announced that he would fully cooperate with the Receiver to provide the Receiver with information necessary to collect assets for the benefit of investors. The Receiver had previously been advised that Mr. Frost would assert his fifth amendment rights against self-incrimination in response to questions from the Receiver. The Receiver intends to hold Mr. Frost to this promise and will seek further information from him.

## III. STATUS OF LOAN COLLECTION EFFORTS

35. As further detailed in prior reports, the primary asset of the Receivership consists of approximately sixty (60) individual, defaulted loans. In some cases, individual borrowers hold several loans in their or affiliate names.

36. The primary activity of the Receiver will continue to be the enforcement and collection of these loans. The Receiver continues to anticipate that the process of collecting these loans will be an expensive and protracted process which will take many months and will require litigation. The Receiver anticipates that many of the borrowers and guarantors will have not sufficient assets to pay back their loans to the Receivership.

37. All of the loan agreements reviewed to date by the Receiver provide for default interest, the collection of attorney's fees and litigation expenses and the Receiver will seek to recover those expenses to the fullest extent possible along with default interest. The Receiver cannot predict, at this point, the amounts which may be recovered on these loans.

38. As previously indicated by the Receiver, borrowers and guarantors who owe money to the Receivership Entities should continue to make required payments on their loans and otherwise comply with any other obligations to the Receivership Entities. Such parties should expect the Receiver to fully enforce and collect all loans to the fullest extent possible. All payments should be sent directly to the S. Gregory Hays, Receiver at Hays Financial, Consulting, LLC, Suite 555, 2964 Peachtree Road NW, Atlanta, Georgia 30305. Wire instructions are also available upon request. **The Receiver expects and demands strict compliance by the Borrowers and any**

**guarantors with the terms of the documentation underlying their obligations.**

39. The Receiver has continued to focus efforts on larger loans that appear to be collectible. There are a number of loans that the Receiver is still evaluating and for which he is collecting information. Certain loans have received far more attention than other loans for this reason and the Receiver will continue to manage his enforcement activities (and related expenses) based on likelihoods of recovery.

**A. Curepoint LLC (CP 1), Daniel Dooley, Philip Miles, Mark Miles, and Physician Financial Partners, LLC**

40. As further detailed in prior Reports, the Receiver reached a settlement with Liquidating Bankruptcy Trustee for Curepoint LLC ("**Curepoint**") that left a substantial deficiency after the settlement distribution of $205,358.97. The Receiver continues to investigate possible actions against guarantors for the remaining deficiency.

**B. 2406 Cancer Care LLC, Erich G. Randolph, and Philip Miles (CP 2)**

41. As detailed in prior Reports, Cancer Care entered certain loans secured by certain collateral and guarantees by Eric Randolph, Aaron Williams, and Philip Miles and tendered a payment to the Receiver on December 30, 2025, in the amount of $2,397,680.61 that Cancer Care alleges was in satisfaction of claims held by the Receivership Entities. The Receiver disputes that the payment resolves all issues. As of the fling of this Report, this dispute remains unresolved.

**C. Urohealth, LLC and Philip Miles**

42. As detailed in prior Reports, UroHealth, LLC ("**Uro**"), another entity owned or controlled by Philip Miles, entered loans secured by certain collateral and a guaranty by Philip Miles. The Receiver is investigating the availability of assets to satisfy these claims.

**D. ZeroHolding, LLC, Mark Miles, and Philip Miles**

43. As detailed in prior Reports, ZeroHolding, LLC (the "**Zero**"), which is the debtor in Chapter 11 Case No. 22-56502-JWC pending in the United States Bankruptcy Court for the Northern District of Georgia, entered a loan that references guarantees by Mark Miles and Philip Miles. The Receiver continues to investigate this obligation.

**E. Product Design Innovations LLC-Chisel Fit**

44. As detailed in prior Reports, Product Design Innovations LLC entered a loan secured by a second lien on an Ocala FL residence owned by Mr. and Ms. Ellis and adjoining commercial property owned by Margaret Brown and a guaranty by Joseph K. Ellis. The Receiver continues to investigate whether any recovery is possible on this loan.

**F. FibRETech LLC and Rendell Schmidt**

45. The liquidation of the Grinder is addressed above. The Guarantor has

been given sufficient time to resolve this matter and the Receiver now intends to pursue remedies on this debt against the guarantor and the remaining collateral.

**G. Christopher Ridgeway and Stone Capital Group LLC**

46. As further detailed in prior Reports, Stone Capital Group LLC ("**Stone**") entered loans secured by two personal residences of Christopher Ridgeway in Alys Beach, FL and Matarie LA, and all assets of Stone, a guaranty of Christopher Ridgeway and certain medical equipment. The Receiver is pursuing the enforcement of a second-priority security deed against the Alys Beach house should be pursued by the Receivership.

**H. Specialty Surgery Center Inc., Harvey Cole, Atlanta Oculoplastic Surgery, Scott Honan and Honan Preferred Equity and Scott C. Honan, and 11680 Royal Ridge SH, LLC and Scott C. Honan**

47. As further detailed in prior Reports, First Liberty made several loans involving entities controlled by Scott Honan. These loans were also guaranteed by Scott Honan. Although the Receiver continues to investigate these loans and claims, it appears that there are limited assets available to satisfy these loans or the Honan guaranty. The Receiver is proceeding carefully with these loans to ensure that estate funds are not used pursuing loans with little to no likelihood of recovery.

**I. Conquest Commercial Funding, LLC**

48. As further detailed in prior reports, Conquest Commercial Funding,

LLC ("**Conquest**") entered a loan guaranteed by Jorge Martinez. Mr. Martinez sought bankruptcy protection in Florida. The Receiver has been in contact with the Bankruptcy Trustee appointed to liquidate Mr. Martinez's assets and, based on currently available information, it does not appear that there will be any assets available for distribution. However, the Bankruptcy Trustee continues to investigate this matter and the Receiver has filed a proof of claim in the bankruptcy case of Mr. Martinez to the extent any monies are available for distribution.

**J. Ecofusion LLC, Ernest E. Jones, Jr. Joseph MA Coalla, and Ralph Reed**

49. As further detailed in prior Reports, Ecofusion LLC ("**Ecofusion**") entered a loan secured by all assets of the borrower and guarantees by Ernest E. Jones, Jr. Joseph Coalla, and possibly others. The Receiver is currently analyzing his enforcement options and continues to weigh the cost of further enforcement actions against the availability of recoverable assets.

**K. 2304 GP LLC, Brandi Kirkland, and Bret Tomlinson**

50. As further detailed in prior reports, 2304 GP LLC ("**Grand Prairie**") entered loans secured by certain collateral and guarantees by Brandi Kirkland and Bret Tomlinson. This matter had been settled prior to the appointment of the Receiver pursuant to which First Liberty was to be paid $100,000 out of a sale of the collateral and to receive certain replacement collateral. This agreement was breached

by Ms. Kirkland and no money or substitute collateral was paid. The Receiver has had discussions with Ms. Kirkland regarding a resolution of this matter which have not resulted in any resolution of this matter and the Receiver continues to weigh his options in this matter.

**L. DI Development LLC, Brent E. Myers and Timothy L. Miller**

51. As further detailed in prior reports, DI Development LLC entered a loan secured by real estate in Gainesville GA and Port St. Lucie FL and guarantees by Brent E. Myers and Timothy L. Miller. The Receiver continues to seek a resolution of this matter.

**M. Emergent Testing Labs, LLC dba Lux Diagnostics, Jonathan Goss, and Kraken Enterprises, LLC**

52. As further detailed in prior Reports, Emergent Testing Labs, LLC dba Lux Diagnostics, ("**ETL**") and Kraken Enterprises, LLC ("**Kraken**"), entities owned by, controlled by, and/or related to Jonathan Goss, entered a loan in the original principal amount of $135,000.00 secured by certain collateral and guarantees by Jonathan Goss with the obligation of Kraken also being guaranteed by ETL. The loan is secured by a second position in real estate located in the Atlanta area. The Receiver has had discussions with each of Mr. Goss and a party interested in buying out the Receiver's position. The Receiver anticipates some resolution of this credit in the fourth quarter of 2026.

**N. Undocumented**

53. The Receiver continues to investigate whether additional loans exist or can be documented.

## IV. Additional Interests

54. The Receiver continues to investigate the loans and interests involving My Health AI that were detailed in prior reports of the Receiver. Further, the Receiver intends to obtain additional information regarding this entity from Mr. Frost to determine whether any claims exist against third parties arising out of this failed venture.

55. The Receiver is investigating a potential interest related to AGYL AI.

56. The Receiver is investigating the ownership interest of the Receivership Entities in 5,000 shares of Newsmax stock.

57. The Receiver is also investigating an ownership interest of the Receivership Entities in Charleston Cremation Center, LLC ("**Center**") and Charleston Cremation Holdings, LLC ("**Holdings**"; together with the Center, the "**Cremation Companies**"). The Receiver has received an offer to purchase the Receivership's interest in the Cremation Companies and is evaluating that proposal.

## V. Krista Frost

58. The Receiver has completed a funds tracing analysis of transfers made

to or for the benefit of Mrs. Frost. A demand for payment will be made upon Mrs. Frost in the fourth quarter of 2026.

**VI. Tax Recoveries.**

59. The 2025 Qualified Settlement Fund returns (federal Form 1120SF and Georgia Form 600) have been filed and the Receiver is in the process of attempting to recover an overpayment in the estimated amount of approximately $750,000. The timing of this recovery is substantially dependent upon the cooperation of the Internal Revenue Service.

**VII. Life Insurance**

60. Mr. Frost has agreed to turn over life insurance policies procured by him using investor proceeds. The insurance agent who handled the issuance of these policies is preparing the forms necessary to formally convey any policies to the Receivership as well as account for all insurance. The Receiver anticipates resolving this issue in the fourth quarter of 2026.

**VIII. Other Assets**

61. As noted in prior Reports, the Receiver has identified a number of contributions to political candidates. The Receivership Entities appears to have directly, indirectly or through the Frost family made almost 1,000 political "donations" totaling over $1 million using investor funds. There has been extensive

media coverage of these campaign contributions since the appointment of the Receiver. With regard to such contributions, Secretary of State Brad Raffensperger has urged any political entity that accepted contributions from Receivership Entities, the Frost Family, or any of their affiliates to return those contributions to the Receiver so that victims may be made whole.

62. Over $300,000 in campaign or charitable contributions have already been returned to the Receiver. Any politician wishing to return campaign contributions or other disbursement received from the Receivership Entities or Frost family should return them directly to the S. Gregory Hays, Receiver c/o Hays Financial Consulting, LLC, Suite 555, 2964 Peachtree Road NW, Atlanta, Georgia 30305. The Receiver has deposited all such funds in a segregated account. When the Receiver has obtained sufficient information to report on these campaign contributions, the Receiver will file a report detailing the campaign contributions and the extent to which such contributions have been voluntarily returned.

63. The Receiver is also scrutinizing the improper use of investor funds used as charitable donations or campaign contributions and will seek the return of all such funds to the fullest extent permitted by applicable law.

64. The Receiver and the professionals of the Receiver also continue to examine assets that may be recovered from Frost and other parties, including, but

not limited to assets: a) attributable to funds derived from investors or clients of the Receivership Entities or the Defendants; b) held in constructive trust for the Receivership Entities; and/or c) that may otherwise be includable as Recoverable Assets, as that term is defined in the Appointment Order.

65. The Receiver and his professionals will continue to analyze potential sources of recovery and gather evidence for purposes of developing and pursuing claims the Receivership Estate may have to recover funds or other assets belonging to or improperly transferred from the Receivership Entities, including without limitation turnover and fraudulent transfer actions, as is appropriate and authorized by the Court. Further, the Receiver is investigating the potential claims of the Receivership Entities against professionals and institutions that may have facilitated the alleged misconduct of Defendants or otherwise contributed to the damages alleged to have been sustained by investors. The Receiver will complete the investigation of those claims, and after consultation with the SEC, pursue those claims that the Receiver believes are meritorious and likely to result in a significant recovery for the Receivership Estate.

## IX. CASH ON HAND AND ACCRUED EXPENSES OF ESTATE

66. As of September 30, 2026 (the end of the Reporting Period), the Receiver held a total of $4,831,779.41 in cash-on-hand in the fiduciary accounts for

the Receivership Estate. The Standardized Fund Accounting Report for the Reporting Period, setting forth the receipts and disbursements of the Receivership Estate for the Reporting Period is attached as **Exhibit A.**

67. During the Reporting Period, the Receivership Estate has incurred administrative expenses in the form of fees and costs of the Receiver and his Court-approved professionals, including Counsel, the Forensic Accountant, and Stretto, for the work they performed or the costs they incurred in connection with fulfilling the duties of the Receiver under the Appointment Order. The Receivership has also incurred fees and expenses by professionals employed in the ordinary course of business.

## X. CONCLUSION

68. The Receiver and the professionals of the Receiver appreciate the opportunity to assist the Court in this matter. Until further order of the Court, the Receiver and the professionals of the Receiver professionals will continue their efforts, as discussed herein, to fulfill the duties of the Receiver under the Appointment Order in the most cost-effective manner while seeking to maximize the ultimate recovery by the Receivership Estate.

Respectfully submitted this 30th day of October, 2026.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Law Offices of Henry F. Sewell, Jr.
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com
**Counsel for the Receiver**

**CERTIFICATE OF SERVICE, FONT AND MARGINS**

I hereby certify that I electronically filed the foregoing using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record.

No generative AI was used in the drafting or preparation of the filing (including in any research for the filing).

I further certify that I prepared this document in 14-point Times New Roman font and complied with the margin and type requirements of this Court.

Dated: October 30, 2026.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*

Henry F. Sewell, Jr.
Georgia Bar No. 636265
Law Offices of Henry F. Sewell, Jr.
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com
Counsel for the Receiver

# Exhibit A

**STANDARDIZED FUND ACCOUNTING REPORT for**
**Receivership in SEC v. Edwin Brant Frost IV and First Liberty Building & Loan LLC**
**Receivership; Civil Court Docket No. 1:25-cv-3826-MLB**
**Reporting Period 06/01/2026 to 09/30/2026**

| FUND ACCOUNTING (See Instructions:) | | Detail (for Current Period) | Subtotal (From Prior Period) | Grand Total (All Periods) |
|---|---|---|---|---|
| **Line 1** | **Beginning Balance** | $4,234,812.09 | | $0.00 |
| | ***Increases in Fund Balance:*** | | | |
| **Line 2** | **Business Income** | $0.00 | $21,141.75 | $21,141.75 |
| **Line 3** | **Cash and Securities** | $0.00 | $1,182,424.66 | $1,182,424.66 |
| **Line 4** | **Interest/Dividends Income** | $13,204.73 | $72,196.09 | $85,400.82 |
| **Line 5** | **Business Asset Liquidation** | $891,833.34 | $3,201,845.57 | $4,093,678.91 |
| **Line 6** | **Personal Asset Liquidation** | $0.00 | $309,249.99 | $309,249.99 |
| **Line 7** | **Third-Party Litigation Income** | $0.00 | $0.00 | $0.00 |
| **Line 8** | **Miscellaneous - Other (Attorney Escrows & Donations)** | $0.00 | $680,485.64 | $680,485.64 |
| | *Total Funds Available (Lines 1-8)* | *$5,139,850.16* | | *$6,372,381.77* |
| | ***Decreases in Fund Balance:*** | | | |
| **Line 9** | **Disbursements to Investors** | $0.00 | $0.00 | $0.00 |
| **Line 10** | **Disbursements for Receivership Operations** | | | |
| *Line 10a* | *Disbursements to Receiver or Other Professionals* | $273,167.55 | $1,040,970.19 | $1,314,137.74 |
| *Line 10b* | *Business Asset Expenses* | $34,903.20 | $191,561.42 | $226,464.62 |
| *Line 10c* | *Personal Asset Expenses (Includes monthly budget for Defendant(s))* | $0.00 | $0.00 | $0.00 |
| *Line 10d* | *Investment Expenses* | $0.00 | $0.00 | $0.00 |
| *Line 10e* | *Third-Party Litigation Expenses* | | $0.00 | |
| | 1. Attorney Fees | $0.00 | $0.00 | $0.00 |
| | 2. Litigation Expenses | $0.00 | $0.00 | $0.00 |
| | *Total Third-Party Litigation Expenses* | *$0.00* | *$0.00* | *$0.00* |
| *Line 10f* | *Tax Administrator Fees and Bonds* | $0.00 | $0.00 | $0.00 |
| *Line 10g* | *Federal and State Tax Payments* | $0.00 | $0.00 | $0.00 |
| | **Total Disbursements for Receivership Operations** | **$308,070.75** | **$1,232,531.61** | **$1,540,602.36** |
| **Line 11** | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| *Line 11a* | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administration | $0.00 | $0.00 | $0.00 |
| | Independent Distribution Consultant (IDC) | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | *Total Plan Development Expenses* | *$0.00* | *$0.00* | *$0.00* |
| *Line 11b* | *Distribution Plan Implementation Expenses* | | | |
| | 1. Fees: | | | |
| | Fund Administration | $0.00 | $0.00 | $0.00 |
| | IDC | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Investor Identification | | | |
| | Notice/Publishing Approved Plan | $0.00 | $0.00 | $0.00 |
| | Claimant Identification | $0.00 | $0.00 | $0.00 |
| | Claims Processing | $0.00 | $0.00 | $0.00 |
| | Web Site Maintenance/Call Center | $0.00 | $0.00 | $0.00 |
| | 4. Fund Administrator Bond | $0.00 | $0.00 | $0.00 |
| | 5. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | $0.00 | $0.00 | $0.00 |
| | *Total Plan Implementation Expenses* | *$0.00* | *$0.00* | *$0.00* |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | | |

| | | | | |
|---|---|---|---|---|
| **Line 12** | **Disbursements to Court/Other:** | | | |
| *Line 12a* | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | $0.00 | $0.00 | $0.00 |
| *Line 12b* | *Federal Tax Payments* | $0.00 | $0.00 | $0.00 |
| | **Total Disbursement to Court/Other:** | $0.00 | $0.00 | $0.00 |
| | **Total Funds Disbursed (Line 9-11):** | $308,070.75 | $1,232,531.61 | $1,540,602.36 |
| **Line 13** | **Ending Balance (As of 09/30/2026):** | **$4,831,779.41** | | **$4,831,779.41** |
| **Line 14** | **Ending Balance of Fund - Net Assets:** | | | |
| *Line 14a* | *Cash & Cash Equivalents* | $4,831,779.41 | $0.00 | $4,831,779.41 |
| *Line 14b* | *Investments* | $0.00 | $0.00 | $0.00 |
| *Line 14c* | *Other Assets or Uncleared Funds (Frozen Accounts)* | $0.00 | $0.00 | $0.00 |
| | **Total Ending Balance of Fund - Net Assets** | **$4,831,779.41** | **$0.00** | **$4,831,779.41** |

**OTHER SUPPLEMENTAL INFORMATION:**

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | **Report of Items NOT To Be Paid by the Fund:** | | | |
| **Line 15** | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| *Line 15a* | *Plan Development Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | $0.00 | $0.00 | $0.00 |
| | Fund Administrator | $0.00 | $0.00 | $0.00 |
| | IDC | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | *Total Plan Development Expenses Not Paid by the Fund* | *$0.00* | *$0.00* | *$0.00* |
| *Line 15b* | *Plan Implementation Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | $0.00 | $0.00 | $0.00 |
| | IDC | $0.00 | $0.00 | $0.00 |
| | Distribution Agent | $0.00 | $0.00 | $0.00 |
| | Consultants | $0.00 | $0.00 | $0.00 |
| | Legal Advisers | $0.00 | $0.00 | $0.00 |
| | Tax Advisers | $0.00 | $0.00 | $0.00 |
| | 2. Administrative Expenses | $0.00 | $0.00 | $0.00 |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan | $0.00 | $0.00 | $0.00 |
| | Claimant Identification | $0.00 | $0.00 | $0.00 |
| | Claims Processing | $0.00 | $0.00 | $0.00 |
| | Web Site Maintenance/Call Center | $0.00 | $0.00 | $0.00 |
| | 4. Fund Administrator Bond | $0.00 | $0.00 | $0.00 |
| | 5. Miscellaneous | $0.00 | $0.00 | $0.00 |
| | 6. FAIR Reporting Expenses | $0.00 | $0.00 | $0.00 |
| | Total Plan Implementation Expenses Not Paid by the Fund | $0.00 | $0.00 | $0.00 |
| *Line 15c* | *Tax Administrator Fees & Bonds Not Paid by the Fund* | $0.00 | $0.00 | $0.00 |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | |
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund:** | | | |
| *Line 16a* | *Investment Expenses/CRIS Fees* | $0.00 | $0.00 | $0.00 |
| *Line 16b* | *Federal Tax Payments* | $0.00 | $0.00 | $0.00 |
| | **Total disbursements to Court/Other Not Paid by Fund:** | | | |
| **Line 17** | **DC & State Tax Payments** | $0.00 | $0.00 | $0.00 |
| **Line 18** | **No. of Claims:** | | | |
| Line 18a | # of Claims Received This Reporting Period | | | 0 |
| Line 18b | # of Claims Received Since Inception of Fund | | | 0 |
| **Line 19** | **No. of Claimants/Investors:** | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | | | 0 |
| Line 19b | # of claimants/Investors Paid Since Inception of Fund | | | 0 |

Receiver:
By: /s/ S. Gregory Hays
(signature)

S. Gregory Hays
(printed name)
Receiver
(title)

Date: October 14, 2026